ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAY 2 2 2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

      - v. -                        :     INDICTMENT

                              :     19 Cr.

MICHAEL AVENATTI,                   :

           Defendant.              :

- - - - - - - - - - - - - - - - x

**19 CRIM 374**
**JUDGE BATTS**

## OVERVIEW

1.  The charges in this Indictment arise from a scheme in which MICHAEL AVENATTI, the defendant, abused the trust of, defrauded, and stole from a client ("Victim-1") by diverting money owed to Victim-1 to AVENATTI's control and use. As described more fully below, after assisting Victim-1 in securing a book contract, AVENATTI stole a significant portion of Victim-1's advance on that contract. He did so by, among other things, sending a fraudulent and unauthorized letter purporting to contain Victim-1's signature to Victim-1's literary agent, which instructed the agent to send payments not to Victim-1 but to a bank account controlled by AVENATTI.

2.  After receiving the money into that account, MICHAEL AVENATTI, the defendant, used it for his own purposes, including, among other things, to pay employees of his law firm and a coffee business he owned, to make payments to individuals

with whom AVENATTI had personal relationships, to make a luxury car payment, and to pay for hotels, airfare, meals, car services, and dry cleaning. When Victim-1 inquired about the status of Victim-1's advance fees, AVENATTI repeatedly lied to Victim-1, including by stating that he was working on getting the fees from Victim-1's publisher, when, in truth and in fact, AVENATTI had already received the fees and spent them on his own personal and professional expenses. In total, AVENATTI stole approximately $300,000 from Victim-1, and has not repaid Victim-1 half of that money.

## RELEVANT INDIVIDUALS AND ENTITIES

3. At all relevant times, MICHAEL AVENATTI, the defendant, was an attorney licensed to practice in the state of California.

4. Victim-1 is an individual who retained MICHAEL AVENATTI, the defendant, to provide legal services in or about February 2018. That representation continued until in or about February 2019.

5. "Agent-1" is a literary agent, based in Manhattan, New York, who was retained by Victim-1 in or about April 2018 to represent Victim-1 with respect to Victim-1's efforts to write and publish a book.

6. "Publisher-1" is a publisher, based in Manhattan, New York, which, in or about April 2018, entered into a contract

2

(the "Contract") with Victim-1 and Agent-1 for the publication of a book by Victim-1.

## THE BOOK PAYMENT EMBEZZLEMENT SCHEME

*Victim-1's Book Deal*

7.    As noted above, Victim-1 entered into the Contract with Publisher-1 and Agent-1 in or about April 2018. Pursuant to the terms of the Contract, Victim-1 would receive an $800,000 advance, to be paid by Publisher-1 in four installments as follows:

a.    Publisher-1 would pay Victim-1 $250,000 upon the signing of the Contract (the "First Payment").

b.    Publisher-1 would pay Victim-1 $175,000 upon Victim-1's delivery and Publisher-1's acceptance of the final manuscript of Victim-1's book (the "Second Payment").

c.    Publisher-1 would pay Victim-1 $175,000 upon the publication of Victim-1's book and in no event more than six months after delivery and acceptance of the final manuscript, provided certain publicity requirements were met (the "Third Payment").

d.    Publisher-1 would pay Victim-1 $200,000 six months after publication of Victim-1's book or completion of certain publicity requirements and in no event more than twelve months after delivery and acceptance of the final manuscript,

3

provided certain publicity requirements were met (the "Fourth Payment").

8.   Pursuant to Victim-1's agreement with Agent-1, each payment described above would be sent by Publisher-1 to Agent-1, who would then pass the payment on to Victim-1 after withholding Agent-1's fee.

9.   MICHAEL AVENATTI, the defendant, assisted Victim-1 in negotiations regarding the Contract. Although AVENATTI's retainer agreement with Victim-1 provided that he could receive a fee for such assistance, AVENATTI subsequently told Victim-1, in substance and in part, that he would not accept payment or remuneration from Victim-1 for any work relating to Victim-1's book.

10.   As described further below, MICHAEL AVENATTI, the defendant, engaged in a scheme to defraud Victim-1 by which he obtained control over and embezzled the Second and Third Payments.

*The First Payment*

11.   At or around the same time Victim-1 signed the Contract, Publisher-1 sent the initial payment of approximately $250,000 to Agent-1, who sent by wire to a bank account designated by Victim-1 ("Account-1") a payment of approximately $212,500, representing the $250,000 payment less Agent-1's fee.

4

*The Second Payment*

12.  On or about July 19, 2018, Victim-1 opened a new bank account ("Account-2") for the purpose of, among other things, receiving the remaining payments under the Contract. Around this time, Victim-1 told MICHAEL AVENATTI, the defendant, that Victim-1 did not want any further payments under the Contract to be sent to Account-1, and that a new account, i.e., Account-2, was being opened to receive such payments. Victim-1 did not instruct or authorize AVENATTI to receive any payments under the Contract on Victim-1's behalf.

13.  On or about July 29, 2018, by electronic message, Victim-1 asked MICHAEL AVENATTI, the defendant, in substance, whether he knew when Victim-1 would receive the Second Payment. AVENATTI responded that Victim-1 would receive payment "in the next two weeks," because the Second Payment "comes on acceptance [of the manuscript], which should be shortly." Victim-1 had at that time already submitted Victim-1's manuscript to Publisher-1.

14.  On or about July 31, 2018, without Victim-1's knowledge or authorization, MICHAEL AVENATTI, the defendant, told Agent-1, in substance and in part, to send the Second Payment to an account entitled "Avenatti & Associates — Attorney Client Trust ([Victim-1])" (the "Avenatti Client Account"), an

5

account that AVENATTI controlled and of which Victim-1 was not aware.

15.   On or about August 1, 2018, after Agent-1 responded to MICHAEL AVENATTI, the defendant, that Agent-1 could not redirect payment to a new account without authorization from Victim-1, AVENATTI sent Agent-1 by email, which traveled interstate, a letter that purported to be from Victim-1 and appeared to contain Victim-1's signature, instructing Agent-1 to send all advance payments to the Avenatti Client Account (the "False Wire Instructions"). Victim-1 neither authorized nor signed the False Wire Instructions and, in fact, was not even aware of the existence of the False Wire Instructions.

16.   Between on or about August 1 and August 3, 2018, pursuant to the False Wire Instructions, Agent-1 transferred by wire approximately $148,750, i.e., the Second Payment's amount less Agent-1's fee, to the Avenatti Client Account.

17.   MICHAEL AVENATTI, the defendant, did not tell Victim-1 that he had received the Second Payment on Victim-1's behalf. Instead, immediately after receiving the first portion of the Second Payment into the Avenatti Client Account, AVENATTI began transferring money from the Avenatti Client Account to other bank accounts that he controlled for his own personal and business use. The funds were used, among other ways, for the following purposes:

6

        a.    To fund approximately $57,000 of payroll associated with the law firm Eagan Avenatti LLP (through which AVENATTI also practiced law);

        b.    To pay in excess of $20,000 for insurance, airfare, hotels, car services, restaurants and meal delivery, and online retailers;

        c.    To provide $1,900 to an individual ("Client-2") whom AVENATTI had represented in a lawsuit against the County of Los Angeles, California; and

        d.    To fund, in the approximate amount of $12,800, payroll checks for a coffee business controlled by AVENATTI.

    18.  By on or about August 20, 2018, only approximately $625 of Victim-1's Second Payment remained in the Avenatti Client Account.

    19.  In late August 2018, Victim-1 told MICHAEL AVENATTI, the defendant, in substance and in part, that Victim-1 had not received the Second Payment and asked for AVENATTI's assistance in helping to obtain the payment, which Victim-1 believed was late. AVENATTI did not inform Victim-1 that he had already received the Second Payment, which had been sent by Agent-1 into the Avenatti Client Account, or that he had spent the funds for his own purposes. Instead, AVENATTI misleadingly

and fraudulently told Victim-1, in substance and in part, that he would help obtain the payment for Victim-1 from Publisher-1.

20.   On or about September 4, 2018, Victim-1 sent by electronic message to MICHAEL AVENATTI, the defendant, information for Account-2. In that message, Victim-1 stated that the information for Account-2 was "My new account info for publisher," which Victim-1 believed still had not made the Second Payment.

21.   On or about September 5, 2018, MICHAEL AVENATTI, the defendant, received a payment of approximately $250,000 into another account that he controlled designated as the "Michael Avenatti Esq Trust Account," which previously had a near-zero balance. That same day, AVENATTI made a payment from that account to Account-2 in the amount of approximately $148,750, so that Victim-1 would not be aware that AVENATTI had converted and used the proceeds from the Second Payment for his own personal and business purposes.

*The Third Payment*

22.   On or about September 13, 2018, without Victim-1's knowledge or authorization, MICHAEL AVENATTI, the defendant, spoke with Agent-1 and suggested that Publisher-1 should make the Third Payment early, even though the Third Payment was not due until publication of Victim-1's book. Agent-1 relayed the request to Publisher-1, which agreed to make an early payment,

8

and sent the Third Payment to Agent-1, who, on or about September 17, 2018, sent by wire, pursuant to the False Wire Instructions, $148,750, i.e., the Third Payment less Agent-1's fee, to the Avenatti Client Account.

      23.  On or about September 17, 2018, after receiving the $148,750 of the Third Payment into the Avenatti Client Account, MICHAEL AVENATTI, the defendant, began moving the $148,750 out of the Avenatti Client Account into other accounts that he controlled for his own personal and business use. The funds were used, among other ways, for the following purposes:

      a.  To pay approximately $11,000 to individuals with whom AVENATTI had relationships;

      b.  To make a monthly lease payment of approximately $3,900 for a Ferrari automobile;

      c.  To pay more than $15,000 in expenses including but not limited to airfare, dry cleaning, hotels, restaurants and meals, and car services;

      d.  To provide another $1,900 to Client-2;

      e.  To make approximately $56,000 in payroll payments for Eagan Avenatti LLP; and

      f.  To fund approximately $12,000 in payments to an insurance company to cover premiums for AVENATTI's law firm.

      24.  As noted above, the Third Payment was owed to Victim-1 at or around the time of the publication of Victim-1's

9

book, which occurred on or about October 2, 2018. On or about

October 1, 2018, Victim-1, unaware that MICHAEL AVENATTI, the

defendant, had requested and obtained the Third Payment early,

asked AVENATTI, by electronic message, whether, under the

Contract, Victim-1 would be paid the following day, to which

AVENATTI responded, "Yes." The following day, on or about

October 2, 2018, Victim-1 stated to AVENATTI by electronic

message, "publisher owes me a payment today." AVENATTI did not

tell Victim-1 that he had already received the payment into the

Avenatti Client Account more than two weeks earlier, but instead

misleadingly and fraudulently stated, "On it. We need to make

sure we have the publicity requirement met."

        25.   Later in or about October 2018 and in the months

between in or about October 2018 and in or about February 2019,

Victim-1, by phone and by electronic message, repeatedly asked

MICHAEL AVENATTI, the defendant, for assistance in obtaining the

Third Payment. At no time did AVENATTI state or indicate that he

had received the Third Payment, but instead fraudulently stated,

in substance and in part and on multiple occasions, that

Publisher-1 was withholding payment. For example, the following

exchanges occurred by electronic message:

        a.    On or about October 29, 2018, Victim-1 asked

AVENATTI, "did you ask publisher about my payment?" and noted,

"Tomorrow it will be one week late." AVENATTI responded, "Yes, They are on it."

        b.   On or about November 27, 2018, Victim-1 asked AVENATTI, "What about the publisher?" AVENATTI did not state that he had previously received the Third Payment, but instead responded, falsely, in substance and in part, that Publisher-1 needed a list of publicity undertaken by Victim-1 before Publisher-1 would make the Third Payment. AVENATTI also falsely stated, in substance, that Publisher-1 was resisting making the Third Payment due to poor sales of Victim-1's book.

        c.   On or about November 30, 2018, Victim-1, in reference to the Third Payment, stated to AVENATTI, "let's not forget the publisher." AVENATTI did not state that he had previously received the Third Payment, but instead responded, in part, "I haven't."

        d.   On or about December 5, 2018, Victim-1 asked AVENATTI, "When is the publisher going to cough up my money?" AVENATTI did not state that he had previously received the Third Payment, but instead responded, "As for publisher – working them and threatening litigation. They need to pay you the money as you did your part and then some."

        e.   On or about December 27, 2018, Victim-1 stated to AVENATTI, in part, "I'm sending publisher a certified letter demanding payment and firing [Agent-1]. Then I may post

11

it online for fun." AVENATTI did not state that he had
previously received the Third Payment, but instead spoke to
Victim-1 by phone and told Victim-1, in substance and in part,
that Victim-1 should not send a letter and should not fire
Agent-1 because Victim-1 may need Agent-1's help in a lawsuit
against Publisher-1 to recover the Third Payment.

26.   In or around December 2018, Victim-1's manager,
on Victim-1's behalf, sent an email to Publisher-1 and Agent-1
stating, in substance and in part, that Victim-1 had not
received the Third Payment. Agent-1 then spoke to MICHAEL
AVENATTI, the defendant, who told Agent-1, in substance and in
part, that he (AVENATTI) was dealing with Victim-1 directly on
this issue and Agent-1 and Publisher-1 (both of whom believed
that Victim-1 had received the Third Payment and was seeking
early payment of the Fourth Payment) should not respond. Agent-
1, at AVENATTI's request, then relayed AVENATTI's message to
Publisher-1. Victim-1 received no response from Agent-1 or
Publisher-1 until in or about late February 2019, as described
below.

27.   During in or about January 2019 and
February 2019, Victim-1 continued to ask MICHAEL AVENATTI, the
defendant, by phone and by electronic message, about the status
of the Third Payment, and AVENATTI responded, in substance and
in part, that Publisher-1 was resisting making the payment due

to purportedly poor sales, but that he (AVENATTI) was working to resolve the conflict.

28.   In or about late February 2019, Victim-1 made contact with a representative of Publisher-1, who told Victim-1, in substance and in part, that Publisher-1 had previously made the Third Payment to Agent-1. Victim-1 subsequently received from Agent-1 documentation indicating that Agent-1 had sent by wire Victim-1's share of the Third Payment (i.e., $148,750) to the Avenatti Client Account on or about September 17, 2018. Victim-1 also received from Agent-1 the False Wire Instructions.

29.   Prior to receiving the False Wire Instructions from Agent-1 in or about February 2019, Victim-1 had never seen or signed the False Wire Instructions, despite the fact that the False Wire Instructions bore Victim-1's purported signature. Further, Victim-1 had never authorized the drafting or transmittal of the False Wire Instructions, had never authorized MICHAEL AVENATTI, the defendant, to receive or use any of the payments under the Contract, and was not aware of the Avenatti Client Account. Rather, the False Wire Instructions (including the use of Victim-1's signature) were fraudulently created by AVENATTI in order to carry out his scheme to steal funds rightfully owed to his client.

30.   Victim-1 has not received any share of the Third Payment.[1]

## COUNT ONE

(Wire Fraud)

The Grand Jury charges:

31.   The allegations contained in paragraphs 1 through 30 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

32.   From at least in or about July 2018, up to and including in or about 2019, in the Southern District of New York and elsewhere, MICHAEL AVENATTI, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, AVENATTI devised a scheme to obtain payments owing to Victim-1 under Victim-1's book contract by falsely representing to Agent-1, in interstate communications and otherwise, that Victim-1 had given authority

---

[1] On or about February 14, 2019, prior to its due date under the Contract, Publisher-1 sent the Fourth Payment to Agent-1, who, consistent with Victim-1's instructions, sent by wire the Fourth Payment less Agent-1's fee directly to Account-2.

for payments to be sent by wire to an account controlled by AVENATTI, by converting those payments to his own use, and by falsely representing to Victim-1, in interstate communications and otherwise, that the payments had not been made.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT TWO

### (Aggravated Identity Theft)

The Grand Jury further charges:

33.   The allegations contained in paragraphs 1 through 30 above are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

34.   From at least in or about August 2018, up to and including at least in or about February 2019, in the Southern District of New York and elsewhere, MICHAEL AVENATTI, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, AVENATTI, without lawful authority, used Victim-1's name and signature on the False Wire Instructions during and in relation to the offense charged in Count One of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1) and (b), and 2.)

FORFEITURE ALLEGATION

35.   As the result of committing the offense charged in Count One of this Indictment, MICHAEL AVENATTI, the defendant, shall forfeit to the United States, pursuant to Title 18, United States, Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

Substitute Asset Provision

36.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property that cannot be subdivided without difficulty;

16

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

> (Title 18, United States Code, Sections 981; Title 21, United
> States Code, Section 853(p); Title 28, United States Code,
> Section 2461.)

FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

17

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

### - v. -

### MICHAEL AVENATTI,

### Defendant.

## INDICTMENT

19 Cr.

(18 U.S.C. §§ 1028A, 1343, and 2.)

GEOFFREY S. BERMAN
United States Attorney.

Foreperson

May 22, 2019
Filed Indictment. Case assigned to Judge Betts
U.S.M.J. Debra Freeman