```
     J5S9AVEC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                           19 Cr. 374(DAB)

5    MICHAEL AVENATTI,

6                   Defendant.

7    ------------------------------x        Conference

8                                           May 28, 2019
                                            2:04 p.m.
9

10   Before:

11                     HON. DEBORAH A. BATTS,

12                                          District Judge

13

14                          APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     BY:  ROBERT B. SOBELMAN
17        MATTHEW D. PODOLSKY
          ROBERT L. BOONE
18        Assistant United States Attorneys

19
     FEDERAL DEFENDERS OF NEW YORK
20        Attorneys for Defendant
     BY: SYLVIE J. LEVINE
21

22

23   ALSO PRESENT:

24   SPECIAL AGENT DELEASSA PENLAND, U.S. Attorney's Office

25   SPECIAL AGENT CHRISTOPHER HARPER, FBI
```

1  THE COURT:  Good afternoon.  Please be seated.
2  (Case called)
3  MR. PODOLSKY:  Good afternoon, your Honor.
4  Matthew Podolsky, Robert Sobelman and Robert Boone for
5  the government and with us at counsel table are Special Agent
6  Deleassa Penland of the United States Attorney's Office and
7  Special Agent Christopher Harper of the FBI.
8  THE COURT:  Good afternoon to all of you.
9  And on behalf of Mr. Avenatti we have.
10  MS. LEVINE:  Good afternoon, your Honor.  The Federal
11  Defenders of New York by Sylvie Levine.
12  Your Honor this morning I appeared for presentment
13  only and Judge Cott granted that request.  This is a new case
14  Mr. Avenatti was arrested on it this morning and so I'm asking
15  to sit with him today pending his retention of counsel.
16  THE COURT:  Well that request is granted.
17  Does Mr. Avenatti -- Mr. Avenatti, do you plan on
18  retaining counsel for this case?
19  THE DEFENDANT:  I do, your Honor.
20  THE COURT:  Remain seated.  Just use the microphone.
21  THE DEFENDANT:  Your Honor, I do plan on retaining
22  counsel.  I just have not had an opportunity to finalize that
23  arrangement yet, your Honor.
24  THE COURT:  All right.  Fine.
25  Mr. Podolsky, would you talk to me about the case.

1          MR. PODOLSKY:  Yes, your Honor.  This is at its core a
2     very straightforward fraud case.
3          According to the allegations in the indictment,
4     Mr. Avenatti stole several hundred thousand dollars from one of
5     his clients.  He did that in a couple of ways but most notably
6     he took advantage of the trust of his client and business
7     associates of his client by forging a letter purporting to bear
8     his client's signature and directing a business associate of
9     his client to send money that was owed to his client instead to
10    Mr. Avenatti.  He then, in order to continue to carry out the
11    fraud, repeatedly lied both to these business associates and to
12    his client in order to hide the fact that he had diverted the
13    money and converted it to his own use.  Those are the basic
14    allegations of the case.  As I say, it is a straightforward
15    fraud.
16         The government is prepared to produce discovery as
17    soon as defense counsel signs a protective order and can
18    provide the government with an electronic device to put the
19    discovery on.
20         It's fairly limited in terms of discovery, your Honor.
21    There are somewhat extensive financial records in this case,
22    although most of them concern Mr. Avenatti's bank accounts and
23    the bank accounts to which he moved his client's money, and a
24    relatively modest number of electronic communications between
25    Mr. Avenatti and his client and others involved in the case.

1   There are some toll records and various other records but what
2   I've described constitutes the bulk of discovery in this case
3   and, as I say, it can be produced promptly.
4           THE COURT:  All right.  Ms. Levine, it's not clear
5   whether you will remain as counsel in this case and, therefore,
6   it's unfair for me to ask you how much time you would need to
7   review what Mr. Podolsky has said.  You would not be bound to
8   it but give me a guesstimate.
9           MS. LEVINE:  Your Honor, if I may, Mr. Avenatti has
10  retained counsel on another case that's pending in the Southern
11  District in front of Judge Gardephe and that attorney is here
12  and, with the Court's permission, I think has an application
13  with regard to this case.  He's sitting in the front row, if
14  the Court will hear from him.
15          THE COURT:  Who is it?
16          MS. LEVINE:  Scott Srebnick.
17          THE COURT:  I will hear from you.  Come up to the
18  lecturn.
19          MR. SREBNICK:  Thank you, your Honor.
20          Your Honor, may it please the Court, my name is Scott
21  Srebnick.  I'm an attorney from Miami.
22          THE COURT:  Spell your last name, please.
23          MR. SREBNICK:  S-R-E-B-N-I-C-K.
24          THE COURT:  Thank you.
25          MS. LEVINE:  I'm an attorney for from Miami.  I have

1    been retained in the case that's pending in front of Judge
2    Gardephe which is also an indicted case against Mr. Avenatti.
3             The application I'm making before the Court today is
4    to allow me to appear temporarily on a limited basis before the
5    Court -- before this Court for one purpose, and that's to
6    litigate a Rule 21 motion to transfer this case to California.
7    And if the Court will allow me to explain why, I'm happy to
8    explain now. And I've previewed this argument to the
9    government an hour ago so that they're not surprised by it.
10            May I proceed?
11            THE COURT: Please do.
12            MR. SREBNICK: Thank you, Judge.
13            So Mr. Avenatti is now indicted in three cases.
14   There's a case in California and there are two cases in this
15   district. The case before your Honor is, as Mr. Podolsky just
16   described, a case that involves an alleged fraud on a client
17   and a series of acts that the government alleges lulled the
18   client into believing that money was going to be forthcoming
19   that were the proceeds of a settlement or of a transaction and
20   the money did not come when the client expected it.
21            The case in California is essentially the same thing.
22   In that case there are five clients that the government alleges
23   were defrauded by not being provided with the settlement
24   proceeds when they were entitled to them. So that's the
25   government's theory in California.

1  In this case they charge one count of wire fraud and a
2  count of aggravated identity theft. And I'm referring to the
3  case before your Honor.
4  In California, they charge, among other things, ten
5  counts of wire fraud and also a charge of aggravated identity
6  theft under 1028(a).
7  The time period in this case was between -- the case
8  before your Honor -- when I refer to this case I'm talking
9  about the case before your Honor -- was a one-year time period
10  between 2018 and 2019. The case in California alleges between
11  2015 and 2019. So there's an overlap in time period.
12  THE COURT: Are the victims the same?
13  MR. SREBNICK: Well there are -- essentially in
14  California it's five separate clients all joined together in
15  one indictment. And in effect this is a sixth client that the
16  government alleges was defrauded by the same modus operandi
17  which was, the allegation is Mr. Avenatti would either enter
18  into a transaction or receive the proceeds of a settlement of a
19  case and would embezzle, as the government argues, the money
20  for himself and not tender the proceeds to the client. So the
21  theory of prosecution in both cases is exactly the same.
22  And, in fact, in the indictment before your Honor the
23  allegation is that the proceeds that were due to be paid to the
24  client in this case -- and we all know who it is, it's not a
25  secret -- to Ms. Daniels, was, in fact, paid to one of the

1   clients in the California case.  So there's a clear overlap

2   even in the government's own allegation in this case.  And I

3   refer the Court to the indictment in this case before your

4   Honor at page 7, paragraph 17(c) which alleges that --

5          THE COURT:  Bear with me just one second, please.

6          MR. SREBNICK:  Yes, your Honor.

7          THE COURT:  Yes.

8          MR. SREBNICK:  So the allegation is that the money

9   that was owed to Ms. Daniels, that $1,900 was paid to one of

10  the clients who is alleged to be a victim in the California

11  case.

12         Now, Mr. Avenatti has counsel in the California case.

13  He has retained counsel.  He resides in California.  The

14  contract with the client in this case was entered in

15  California.  Monies that were supposedly owed to the client in

16  this case were used to pay expenses in California.  The alleged

17  wire instructions that are at the heart of what the government

18  describes as the fraud, the forged letter, was wired from

19  California.  And this case, essentially the case before your

20  Honor could have been superseded in the California case.

21         So I realize I'm getting more into the merits now than

22  perhaps I had anticipated but I want to just preview for the

23  Court that this is a substantial issue.  And given that a

24  defendant now has to face three indictments, two on the coast

25  that he does not -- where he does not reside, and already has

counsel in the California case which is similar to the case before your Honor, that it just makes eminent sense for this case to be transferred out to California.

And so what I was hoping that the Court would allow me to do is just to enter a limited appearance, a temporary appearance for the purpose of filing a motion before the Court that really goes through the *Platt* factors, talks about judicial efficiency, talks about judicial economy, talks about fairness, talks about due process, and have the Court rule on it before Mr. Avenatti has to go through the expense of retaining separate counsel for this case as well. And so I could do that on a relatively expeditious basis.

THE COURT: Before you do, a couple of things.

Number one, I want to hear from Mr. Podolsky; but, also, why is it for a limited purpose? If it turns out that you are in as counsel in this case and it turns out that you should win your motion, it would be for a limited purpose. I don't understand this concept of coming in with one foot and not both feet.

MR. SREBNICK: So I have not been retained to try a two-week case. I'm a Miami attorney and I have not been retained and I, frankly, don't know Mr. Avenatti's finances but it's not -- I think it's going to be unfair to force him to retain a third counsel or counsel for a separate case that could be tried out in California as part of that case. So that

1   really plays into the whole judicial efficiency and fairness to
2   the defendant argument.
3            THE COURT:  Well I don't understand why you should be
4   permitted to make one limited motion as an attorney in this
5   case and yet not be in this case.
6            MR. SREBNICK:  Because I haven't been retained to see
7   it through.
8            THE COURT:  Well whose choice is that?
9            MR. SREBNICK:  That's why I'm making the application.
10  The Court obviously can deny it, and that's why I'm asking the
11  Court for permission just for that purpose to be creative in
12  this particular instance because of the fact that a defendant
13  is facing three indictments.  So it's a very rare situation.
14  And so what I'm asking for is the Court's discretion.  I
15  realize that it's not a conventional way of doing things.  I
16  realize that it in some way affects the Court's calendar.
17  Certainly.  I understand that.
18           But given the unique circumstances of this case, the
19  fact that a defendant is facing three cases, the fact that a
20  defendant -- that the defendant has a similar case out in
21  California which could have been superseded, the fact that he
22  already has counsel out in that case defending against these
23  type of charges, I want just an opportunity to at least make
24  the motion.  If the Court grants it then it is, as the Court
25  noted, a limited appearance.  The case would then be out in

J5S9AVEC

1  California.  And if the Court denies it, then Mr. Avenatti has
2  to incur the expense of retaining full-time counsel to handle
3  this case and see it through to its conclusion.
4          THE COURT:  Thank you.
5          MR. SREBNICK:  Thank you, your Honor.
6          THE COURT:  Mr. Podolsky.
7          MR. PODOLSKY:  Thank you, your Honor.
8          Let me first just address quickly the notion that this
9  case should have been charged in California or could have been
10 or is similar.  It's just not the case.  And I think the main
11 point is that there is no likelihood of success on the merits
12 of an application to transfer this case.
13         I'm happy to go through the *Platt* factors that the
14 Supreme Court has laid out for transfer of venue.  But the
15 bottomline is this case is not the same case as the cases in
16 California.  We have a separate victim.  There is, as far as I
17 know, no overlapping witnesses whatsoever.  All of the main
18 activities in this case occurred in New York City.  That's
19 where the offices were of the publisher and of the literary
20 agent set forth in the indictment.  So as far as I know almost
21 all of the witnesses in this case are actually located in the
22 New York area.  I think that what Mr. Srebnick said is the
23 theory of prosecution is the same.  But one thing that's
24 notable is that is not one of the ten *Platt* factors.  There is
25 no factor for whether the case is similar in some theoretical

way, whether the conduct was similar to some other case that the defendant is involved in.  There are actually ten factors.  That's not one of them.

So there is no likelihood of success on the merits of this motion, which really goes to the main point, which is the idea of having counsel come in to make some preliminary motion, asking for a motion schedule and only once that motion is denied, then maybe deciding on new counsel and a new motion schedule, is clearly for the sake of delay.  I actually dealt with this same exact request in a case before Judge Caproni.  She denied the requests for a bifurcated motion schedule for this exact reason.  There is no reason that Mr. Avenatti could not have counsel, like every other defendant in this courthouse, set a motion schedule and, if he would like to move to transfer venue along with other motions, he can do so.  And if the Court is inclined to grant that motion -- although for the reasons I said I do not think there's any likelihood of success on the merits -- the Court can simply transfer venue at that time without prejudice to the government or to the public in their interests in a speedy trial.  This is clearly a delay tactic and we're prepared to produce discovery and move forward with this case.

THE COURT:  Well, I must say I -- this is a unique or unusual application and I don't like cases being tried piecemeal.  So it is up to Mr. Avenatti to decide whether or

1    not he wishes to retain counsel to proceed in this case as full
2    counsel or whether he does not.  But the point here is that I
3    am not going to take time to schedule that particular motion
4    with someone who is not in the case.  So the motion to make the
5    motion is denied.
6          Now, let me ask Ms. Levine, how much time will
7    Mr. Avenatti need to get counsel in this case?
8          MS. LEVINE:  Your Honor, I was going to ask I think
9    exactly what the Court is thinking which is if the Court would
10   set a control date of two weeks from now for Mr. Avenatti to
11   retain counsel, it would be most appropriate then for that
12   retained counsel -- counsel retained for all purposes, to set a
13   schedule.
14         THE COURT:  I think that that makes sense.
15   Mr. Podolsky, do you have any objection?
16         MR. PODOLSKY:  No objection to two weeks.
17         I would propose that we actually set a conference down
18   so we can anticipate actually setting a motion schedule and
19   trial date at that time with whoever is --
20         THE COURT:  You may not get a trial date the way I do
21   things at this early stage, but you certainly will get a motion
22   schedule if, indeed, that is what's perceived.  But I also
23   think it's important that the discovery be reviewed before I
24   ask defense counsel, whoever that may be, what type of motions,
25   in addition to the one that was suggested here earlier.

J5S9AVEC

1           So, bear with me just one second.

2           (Pause)

3           THE COURT: I am going to set this down for its next
4  conference on Tuesday, June 18 at 10:30 a.m. at which point I
5  expect the counsel who will represent Mr. Avenatti in this case
6  to have made -- entered a notice of appearance and to be
7  prepared to have -- to discuss with the Court what types of
8  motions. I also expect that as soon as Mr. Avenatti retains
9  counsel that person will immediately get in touch with the
10 government so that the government can make discovery available
11 to them so that this will be a meaningful conference on
12 June 18.

13          In the interests of justice I'm excluding time from
14 today until Tuesday, June 18.

15          Is there anything else we need to do in this case at
16 this time?

17          MR. PODOLSKY: Not from the government your Honor.

18          THE COURT: Ms. Levine.

19          MS. LEVINE: No, your Honor.

20          THE COURT: This matter is adjourned.

21          (Adjourned)

22

23

24

25