UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     v.<br><br>MICHAEL AVENATTI,<br><br>          Defendant. | 19 Cr. 374 |

**DEFENDANT MICHAEL AVENATTI'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO TRANSFER**

H. Dean Steward
107 Avenida Miramar #C
San Clemente, CA 92672
Telephone:  (949) 481-4900
Facsimile:  (949) 496-6753
Email:  deansteward7777@gmail.com

*Attorney for Defendant Michael Avenatti*

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   THE CHARGES ...................................................................................................... 2

III.  ARGUMENT ........................................................................................................... 2

    A.   The Government Could Have Brought this Case in California ........................ 3

    B.   All of the Platt Factors Weigh in Favor of Transfer ...................................... 4

        1.   Location of the Defendants ................................................................. 4

        2.   Location of Potential Witnesses .......................................................... 4

        3.   Location of the Events at Issue ........................................................... 6

        4.   Location of the Documents and Records ............................................ 6

        5.   Disruption of Defendant's Business ................................................... 7

        6.   Expense of the Parties ......................................................................... 7

        7.   Location of Counsel ............................................................................ 8

        8.   Relative Accessibility of Place of Trial ............................................. 8

        9.   Docket Conditions of the District Courts Involved ............................ 8

        10.  Special Elements ................................................................................. 9

IV.  CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Platt v. Minn. Mining & Mfg. Co.*,
376 U.S. 240 (1964)................................................................................1, 3, 4

*United States v. Abdallah*,
840 F. Supp. 2d 584 (E.D.N.Y. 2012) ........................................................3

*United States v. Aronoff*,
463 F. Supp. 454 (S.D.N.Y. 1978) ..........................................................4, 7

*United States v. Bergstein*,
2018 WL 2417845 (S.D.N.Y. 2018)............................................................3

*United States v. Clark*,
360 F. Supp. 936 (S.D.N.Y. 1973) ..............................................................4

*United States v. Gotti*,
593 F. Supp. 2d 1260 (M.D. Fla. 2008)........................................................9

*United States v. Hanley*,
1995 WL 60019 (S.D.N.Y. Feb. 10, 1995)....................................................4

*United States v. Kim*,
246 F.3d 186 (2d Cir. 2001)........................................................................3

*United States v. Maldonado-Rivera*,
922 F.2d 934 (2d Cir. 1990).......................................................................3

*United States v. McDonald*,
740 F. Supp. 757 (D. Alaska 1990) ............................................................8

*United States v. Olen*,
183 F. Supp. 212 (S.D.N.Y. 1960) ..............................................................7

*United States v. Rutigliano*,
790 F.3d 383 (2d Cir. 2015)........................................................................3

*United v. Russell*,
582 F. Supp. 660 (1984) ..........................................................................5, 7

*United States v. Spy Factory, Inc.*,
951 F. Supp. 450 (S.D.N.Y. 1997) ..............................................................6

*United States v. Stephenson*,
  895 F.2d 867 (2d Cir. 1990).................................................................................3

**Other Authorities**

Fed R. Crim. Proc. Rule 8(a) ...............................................................................1

Fed R. Crim. Proc. Rule 13 ..................................................................................1

Fed R. Crim. Proc. Rule 21 .............................................................................1, 3, 8

Defendant Michael Avenatti, through counsel, and pursuant to Fed. R. Crim. P. 21, respectfully submits this memorandum of law in support of his motion to transfer the present matter to the Central District of California.

## I.    <u>INTRODUCTION</u>

This motion seeks the Rule 21 transfer of a pending case in the Southern District of New York to the Central District of California so that it may be consolidated and tried together under Rule 13 with a pending case there that alleges the same basic conduct.  The cases are "of the same or similar character" and, as alleged, "constitute parts of a common scheme or plan" under Rule 8(a).  The United States Attorney for the Central District of California has acknowledged that if a motion to transfer is granted, the government would be prepared to try the charges pending in the SDNY case in a consolidated proceeding.  *See United States v. Avenatti*, No. 19-061-JVS, Dkt. 44 at 25 (attached hereto at Exhibit 1).  Thus, a transfer of this case is in the interest of judicial economy.  It would result in a single trial, with one judge, and one set of prosecutors, and would avoid conflicting schedules (especially given that Mr. Avenatti is now charged in three cases).

Thus, this motion cannot be compared to the typical Rule 21 motion, wherein a defendant, charged in a single case, seeks to transfer the single case to a location more convenient to the defendant.  In such a case, the transfer does not necessarily save resources.  In this case, the transfer makes sense for all parties and the system as a whole.  Beyond that, an analysis of the factors set forth in *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243–44 (1964) heavily favor transfer.  Accordingly, the Court should transfer this case to the Central District of California.

## II.    THE CHARGES

On April 10, 2019, Mr. Avenatti was indicted in the Central District of California in a 36-count indictment for allegedly misappropriating the funds of five of his clients through fraudulent means.  *See United States v. Avenatti*, Case No. 19-061-JVS (C.D. Cal.) (Selna, J.) ("C.D. Cal. Action"), Dkt. 16. (attached as Exhibit 2).  Then, one month later, Mr. Avenatti was indicted in this case, which alleges that Mr. Avenatti misappropriated the funds of a sixth client, Ms. Daniels, through fraudulent means.  Dkt. 1.  *Even a cursory review of the indictments in the two cases reveals that the conduct charged in the S.D.N.Y. indictment is of the same exact species charged in the C.D. Cal. indictment*.  Both indictments allege that Mr. Avenatti received funds related to the settlement of cases on behalf of clients, did not timely remit the full share of the settlement amount owed to his clients, and then lulled clients into believing that the settlement funds had not yet been received.  There is no principled reason that these cases—which both include claims for wire fraud, which both allege misconduct by Mr. Avenatti in the Central District of California, and which will undoubtedly share many of the same issues, documents, and witnesses—should be tried in different federal districts.  And if this case is not transferred, Mr. Avenatti will have to defend himself in largely identical actions brought on opposite ends of the United States while paying for his and his attorneys' living and travel expenses.

Mr. Avenatti thus brings this motion to transfer this case to the courtroom of Judge Selna in the Central District of California.

## III.    ARGUMENT

Fed. R. Crim. P. 21(b) provides for the transfer of a criminal proceeding to other districts "for the convenience of the parties and witnesses and in the interest of justice."  Disposition of a

Rule 21(b) motion is vested in the sound discretion of the district court.  *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990).  The test to be applied to a Rule 21(b) motion to transfer was set out in *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243–44 (1964).  In *Platt*, the Supreme Court articulated factors that the courts must consider when determining whether to transfer a case.  *Id.*  These factors include:  1) the location of the defendant; 2) location of possible witnesses; 3) location of the events at issue; 4) location of documents and records; 5) disruption of defendant's business; 6) expense to the parties; 7) location of counsel; 8) relative accessibility of place of trial; 9) docket condition of the district courts involved; and 10) any other special elements that might affect transfer.  *Id.*  "It remains for the court to try to strike a balance and determine which factors are of greatest importance."  *United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990).

### A.  The Government Could Have Brought this Case in California

Venue for wire fraud offenses is proper "in any district in which the offense began, continued, or concluded."  *United States v. Kim*, 246 F.3d 186, 191 (2d Cir. 2001) (citing 18 U.S.C. 3237(a)).  Also, wire fraud is a continuing offense.  *See United States v. Rutigliano*, 790 F.3d 383, 396 (2d Cir. 2015).  That means venue for wire fraud can be proper in more than one location.  *United States v. Bergstein*, 2018 WL 2417845 at *7 (S.D.N.Y. 2018).

Here, venue is proper in either the Southern District of New York or the Central District of California.  The indictment alleges that Mr. Avenatti, a California resident, wired funds that originated from New York into a California-based trust account of a California law firm and then used those funds for various California businesses and clients.  *See* Dkt. 1.  Accordingly, venue plainly lies in the Central District of California.  *See United States v. Abdallah*, 840 F. Supp. 2d 584, 606 (E.D.N.Y. 2012) (holding that "venue lies for the wire fraud in the districts that are at

either end of the call regardless of whether defendant is in the district or whether defendant initiated the call.").

**B.  All of the *Platt* Factors Weigh in Favor of Transfer**

After determining that the action could have been brought in the Central District of California, the next consideration is whether transfer would be convenient for parties and witnesses and in the interest of justice.  Here, all of the factors weigh in favor of transfer.

1.  <u>Location of the Defendants</u>

The first factor looks at location and inconvenience of parties.  Although the original factor in *Pratt* referred to the location of a "corporate defendant," subsequent cases apply this factor equally to individual defendants.  *See United States v. Clark*, 360 F. Supp. 936, 941 (S.D.N.Y. 1973).

A defendant should normally be tried where he lives.  *See, e.g.*, *United States v. Hanley*, 1995 WL 60019, at *2 (S.D.N.Y. Feb. 10, 1995) ("Therefore, as a matter of policy, a defendant should ordinarily be tried, whenever possible, where he resides."); *United States v. Aronoff*, 463 F. Supp. 454, 457 (S.D.N.Y. 1978) ("It can be a hardship for a defendant to face trial far away from home and from 'appropriate facilities for defense.'"  (quoting *United States v. Johnson*, 323 U.S. 273, 275 (1944)).

Mr. Avenatti lives in the Central District of California.  As such, this factor weighs heavily in favor of transfer.

2.  <u>Location of Potential Witnesses</u>

When the location of both government and defense witnesses are considered, this factor also strongly favors transfer.

The largest number of witnesses for both the government and defense reside in California.  *See United v. Russell*, 582 F. Supp. 660, 662 (1984) (holding that because the "great majority" of witnesses will not come from the New York Metropolitan area, the second factor weighs in favor of transfer).

Upon review of the evidence, it appears that there are only likely two witnesses who reside in New York—Ms. Clifford's literary agent and publisher—one or both of whom are alleged to have initiated the wire transfer.  Ms. Clifford lives in Texas.

The vast majority of the witnesses reside in California.  The government's principal allegations center on Mr. Avenatti's alleged diversion of client funds into an "Avenatti & Associates – Attorney Client Trust."  That account was maintained by a California company and was kept within a bank located in the Central District of California.  The government contends that the client funds were allegedly given to various California residents and businesses, including Eagan Avenatti, a California limited liability partnership, a coffee business owned by Mr. Avenatti located in Washington State, and a client that Mr. Avenatti represented in a Los Angeles-based lawsuit.  The witnesses who will testify to/against these allegations likely also all reside in the Central District of California.

Moreover, since the government brings a fraud charge against Mr. Avenatti, the location of character witnesses is critical.  *Id.* ("Since this case involved allegations of fraud, the *mens rea* of the defendants and their general character will be of some consequent….The availability and convenience of [character] witnesses, while not a controlling factor, is one that should be given considerable weight.").  Mr. Avenatti submits that nearly all of his character witnesses— witnesses that have worked with Mr. Avenatti—are all located in the Central District of California.

3.   Location of the Events at Issue

The allegations in the indictment stem from Mr. Avenatti's purported scheme to divert client funds into a California-based trust account of a California law firm.  The indictment further alleges that Mr. Avenatti used these funds for various California businesses and clients. This factor thus weights heavily in favor of venue in California.  Although Ms. Clifford's literary agent and publicist reside in New York and the money may have also originated there, Mr. Avenatti, his firm, his bank account, and the other relevant witnesses are all based out of California and were in California during the majority of events giving rise to the indictment. Accordingly, this factor also strongly weighs in favor of transfer.

4.   Location of the Documents and Records

The vast majority of the relevant documents are located in California—namely, in the possession of a receiver federally appointed to oversee Eagan Avenatti as well as the U.S. Attorney's Office in the Central District of California.  Indeed, the government seized Mr. Avenatti's documents that are critical to this action.  *See United States v. Avenatti*, Case No. SA-CR-19-61-JVS (C.D. Cal.).  And despite Mr. Avenatti's multiple requests to obtain these documents, the government has refused to provide them.  *See id.* at Dkt. 50.[1]

Even if the Southern District were to later obtain these documents, that would still not weigh against transfer.  *See United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 458 (S.D.N.Y. 1997) ("[W]here the government had seized documents from one location and transferred them to, and consolidated them at, the place of trial, the fact that the documents were to be found there could not properly lie in favor of the Government's opposition to the change of venue.").

---

[1] Mr. Avenatti has moved to compel these documents from the government.  *Id.*  The hearing is set for August 26, 2019. *Id.*

5.   <u>Disruption of Defendant's Business</u>

Mr. Avenatti is a member of the California State Bar, primarily based in California, who represents several clients in civil matters within the Central District of California.  An extended trial in New York would impair Mr. Avenatti's ability to work as he would be unable to attend hearings and meet with his California clients.  Transfer to the Central District of California would allow Mr. Avenatti to represent his California clients during trial—something he will not be able to do if the trial occurs in New York.  *See United States v. Olen*, 183 F. Supp. 212, 219 (S.D.N.Y. 1960) (transfer allowed defendants to use evenings and weekends to maintain accounting practice); *Russell*, 582 F. Supp. at 663 (holding that the fifth factor weighs in favor of transfer because disruption of business was "quite clear" and a transfer would make it "possible for [Defendants] to carry on their business at least to a limited extent…."); *Aronoff*, 462 F. Supp. at 458 ("To a failing business that depends so much on personal involvement, even a few hours each weekday plus weekends could make a substantial difference.").

6.   <u>Expense of the Parties</u>

Mr. Avenatti currently incurs significant financial expense in defending against multiple criminal allegations in California and New York.  This requires Mr. Avenatti and his attorneys, who also reside in Southern California, to travel across the country on a consistent basis.  This financial burden is made worse because it is difficult for him to conduct business when he spends most of his time in a different state or traveling.  The considerable financial burden Mr. Avenatti faces by litigating this matter in New York at the same time as the C.D. Cal. Action thus supports transfer.

7.  <u>Location of Counsel</u>

Mr. Avenatti is represented by the undersigned, H. Dean Steward, whose office is in San Clemente, CA.  Mr. Steward also represents Mr. Avenatti in the action in the Central District of California.  This factor weighs heavily in favor of transfer as well.

8.  <u>Relative Accessibility of Place of Trial</u>

In determining Rule 21(b) transfer motions, courts consider factors such as the relative number of flights, the percentage of direct and connecting flights, and travel times to bring the parties and witnesses to the place of trial.  *See United States v. McDonald*, 740 F. Supp. 757, 763–64 (D. Alaska 1990).  Most of the witnesses are located in California.  Also, Mr. Avenatti and his lawyers currently must travel from New York to California on a regular basis to defend against similar charges in different jurisdictions.  The financial burden on witnesses and Mr. Avenatti to travel from California to New York is substantial.  Hundreds of hours of travel time for these witnesses would be saved, and thousands of dollars in transportation and lodging costs could be saved by both the government and the defense if the Court allows the transfer.

9.  <u>Docket Conditions of the District Courts Involved</u>

This Court and Judge Selna in the Central District of California both have well-managed dockets and the ability to hear this matter.  But there already existed a criminal action against Mr. Avenatti for virtually identical alleged conduct in the Central District of California when this indictment was filed.  Because the allegations in these two cases allegedly stem from similar fraudulent conduct, the cases are likely to be tried together if this case is transferred to the Central District of California, saving judicial resources in the process.  Accordingly, when this factor is viewed through the lens of the federal criminal docket writ large, this factor favors transfer as well.

10. <u>Special Elements</u>

The C.D. Cal. Action constitutes a special element that strongly supports transfer. *United States v. Gotti* is illustrative. 593 F. Supp. 2d 1260 (M.D. Fla. 2008). In *Gotti*, a Florida indictment charged the same RICO conspiracy against which [John] Gotti defended himself three times in New York. *Id.* at 1269. The Court found the Florida indictment troubling because it feared the United States sought to uproot the New York indictments and re-pot the whole operation in Florida, "hoping for more favorable conditions and a more favorable result and dismissing as inconsequential the resulting expense and dislocation visited upon Gotti." *Id.* The Court noted:

> The singular notoriety of this defendant, his apparently acknowledged history of complicity in the malignancies of organized crime … and perhaps the cumulative frustration of law enforcement contribute to the temptation to extend to Florida the "quest" to convict Gotti. Nonetheless, standing before an Article III judge of the United States in a United States District Court governed by the Constitution and laws of the United States, Gotti is merely another defendant, presumed innocent …and unreservedly entitled to the protection of the principles codified in Rule 21(b), which features no exclusion for defendant, even a conspicuous one, charged with participation in organized crime.

*Id.* at 1270. Thus, because "the RICO conspiracy charged in the Florida indictment [was] unmistakably the same RICO conspiracy charged in New York, the court found a "special element" that by itself justified transfer. *Id.* at 1269–71.

Similar to the Florida and New York indictments in *Gotti*, the S.D.N.Y. indictment against Avenatti is virtually identical to certain counts in the C.D. Cal. indictment. Both cases deal with alleged allegations of financial mismanagement stemming from misappropriating client funds through fraudulent means. And both cases allege Mr. Avenatti used the funds to benefit himself or his businesses.

Mr. Avenatti is a high-profile figure who has drawn the wrath of the Executive Branch

and is receiving special negative treatment.  Faced with the fact that the government has

intentionally loaded up the docket with multiple indictments to prosecute Mr. Avenatti in

different jurisdictions for similar conduct, the prudent course is to transfer this case to the Central

District of California.

## IV.    CONCLUSION

Mr. Avenatti's motion to transfer should be granted.


Respectfully submitted,


By:     /s/ H. Dean Steward
        H. Dean Steward
        107 Avenida Miramar #C
        San Clemente, CA 92672
        Telephone:  (949) 481-4900
        Facsimile:  (949) 496-6753
        Email:  deansteward7777@gmail.com

        *Attorneys for Defendant Michael Avenatti*

### CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2019, I caused a true and correct copy of the foregoing

to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to

receive electronic notes.


/s/ H. Dean Steward
H. Dean Steward