# EXHIBIT 1

# EXHIBIT 1

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
JULIAN L. ANDRÉ (Cal. Bar No. 251120)
Assistant United States Attorney
Major Frauds Section
        1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-6683
        Facsimile: (213) 894-6269
        Email:    Julian.L.Andre@usdoj.gov

BRETT A. SAGEL (Cal. Bar. No. 243918)
Assistant United States Attorney
        Ronald Reagan Federal Building
        411 West Fourth Street, Suite 8000
        Santa Ana, California 92701
        Telephone:  (714) 338-3598
        Facsimile:  (714) 338-3708
        Email:    Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,           SA CR No. 19-061-JVS

            Plaintiff,              JOINT REPORT

                 v.                 Hearing Date: July 8, 2019
                                    Hearing Time: 9:00 a.m.
MICHAEL JOHN AVENATTI,              Location:    Courtroom of the
                                                 Hon. James V. Selna
            Defendant.


        Pursuant to the Court's June 19, 2019, Minute Order (CR 43),

plaintiff United States of America, by and through its counsel of

record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Julian L. André and

///

///

1   Brett A. Sagel, and defendant MICHAEL JOHN AVENATTI, by and through

2   his counsel of record, H. Dean Steward, hereby files their Joint

3   Report.

4

5   Dated: July 1, 2019              Respectfully submitted,

6                                    NICOLA T. HANNA
                                     United States Attorney
7
                                     BRANDON D. FOX
8                                    Assistant United States Attorney
                                     Chief, Criminal Division
9

10                                        /s/ *Julian L. André*
                                     JULIAN L. ANDRÉ
11                                   BRETT A. SAGEL
                                     Assistant United States Attorneys
12
                                     Attorneys for Plaintiff
13                                   UNITED STATES OF AMERICA

14
    Dated: July 1, 2019                   /s/ *via email authorization*
15                                   H. DEAN STEWARD

16                                   Attorney for Defendant
                                     MICHAEL JOHN AVENATTI
17

18

19

20

21

22

23

24

25

26

27

28

2

**TABLE OF CONTENTS**

I.    THE COURT'S JUNE 19, 2019, MINUTE ORDER.........................1

II.   GOVERNMENT'S DISCOVERY DISCLOSURES TO DATE......................2

      A.    USAO's Statement..........................................2

            1.    Documents and Interview Reports.....................2

            2.    Digital Search Warrant Evidence.....................3

      B.    Defendant's Statement.....................................4

III.  OUTSTANDING DISCOVERY ISSUES....................................7

      A.    USAO's Statement..........................................7

            1.    Non-Search Warrant Evidence.........................7

            2.    Digital Search Warrant Evidence.....................8

            3.    Hard-Copy Search Warrant Evidence..................11

            4.    Reciprocal Discovery from Defendant................12

      B.    Defendant's Statement....................................12

            1.    Non-Search Warrant Evidence........................12

            2.    Digital Search Warrant Evidence....................12

            3.    Hard-Copy Search Warrant Evidence..................15

            4.    Reciprocal Discovery from Defendant................15

IV.   PROPOSED TRIAL SCHEDULE........................................15

      A.    USAO's Proposed Trial Schedule...........................15

      B.    Defendant's Proposed Trial Schedule......................16

            1.    Significant Discovery Has Yet to Be Produced.......16

            2.    The Government May Supersede the Indictment........17

            3.    Other Cases Pending Against the Defendant Will
                  Delay this Case....................................17

            4.    The Existing Trial Schedule of Defense Counsel.....18

V.    LOGISTICAL ISSUES..............................................19

      A.    The SDNY Extortion Case..................................19

1            1.   Defendant's Statement...............................19
2            2.   Government's Statement..............................20
3       B.   The SDNY Fraud Case.....................................21
4            1.   Defendant's Statement...............................21
5            2.   USAO's Statement....................................21
6  VI.  ESTIMATED LENGTH OF TRIAL.......................................22
7       A.   USAO's Estimate.........................................22
8       B.   Defendant's Estimate....................................22
9  VII. NEED FOR A TIME-QUALIFIED JURY..................................22
10      A.   USAO's Position.........................................22
11      B.   Defendant's Position....................................22
12 VIII.     ADDITIONAL ISSUES TO ADDRESS AT STATUS CONFERENCE.......22
13      A.   Defendant's Position....................................22
14      B.   USAO's Position.........................................23

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                         **JOINT REPORT**

2  **I.    THE COURT'S JUNE 19, 2019, MINUTE ORDER**

3        On June 19, 2019, the Court issued a minute order (CR 43)

4  requiring the United States Attorney's Office for the Central

5  District of California (the "USAO") and defendant MICHAEL JOHN

6  AVENATTI ("defendant") to file a joint report addressing the

7  following:

8        1.   Government discovery disclosures to date.

9        2.   Remaining government discovery disclosures and a timetable

10            for completion.

11       3.   A proposed schedule, including at least:

12            a.   Trial date.

13            b.   Final pretrial conference date.

14            c.   Government witness list disclosure date.

15            d.   Government exhibit disclosure date.

16            e.   Expert witness disclosure date.

17            f.   Last date for filing and hearing motions, including

18                 motions *in limine*.

19            g.   Date for disclosure of Jencks Act materials and

20                 witness statements.

21            h.   Dates(s) for interim status conference(s).

22       4.   Any logistical or other potential problems affecting the

23            proposed schedule.

24       5.   Anticipated length of trial.

25       6.   Use of a jury pool pre-screened for time.

26       7.   Any other matters the parties wish to discuss at the status

27            conference.

28

Case 1:19-cr-00074-JMF Document 19-8 Filed 08/29/19 Page 7 of 28

The parties' respective positions regarding these issues are set forth below.

**II. GOVERNMENT'S DISCOVERY DISCLOSURES TO DATE**

    **A. USAO's Statement**

        1. <u>Documents and Interview Reports</u>

To date, the USAO has made the following discovery disclosures to defendant:

1. On May 22, 2019, the USAO produced approximately 113,000 pages of discovery materials, including, but not limited, the following materials:

    a. Financial records, including bank records reflecting the financial transactions set forth in the indictment;

    b. Documents obtained from third-parties, including various business records, and emails and text messages reflecting communications between defendant and the victim-clients identified in the indictment, employees of defendant's coffee company Global Baristas U.S. LLC ("GBUS"), and other third-parties;

    c. Internal Revenue Service ("IRS") tax records; and

    d. Transcripts of defendant's prior testimony in various legal proceedings.

2. On June 5, 2019, the USAO produced approximately 9,000 pages of additional discovery materials, primarily consisting of additional documents obtained from third-parties, including emails and other records obtained from defendant's former certified public accountant ("CPA").

3. On June 28, 2019, the USAO produced approximately 16,000 pages of additional discovery materials, including additional documents obtained from third-parties, and memoranda summarizing

interviews with most of the potential government witnesses, including
the victim-clients identified in the Indictment.  The USAO has
voluntarily produced these witness statements at an early date in an
effort to ensure that defendant is prepared to proceed to trial as
soon as possible.

To date, the USAO has produced, subject to the Court's May 20,
2019, Protective Order (CR 36), a total of approximately 138,903
pages of discovery materials.

### 2.  Digital Search Warrant Evidence

During the course of its investigation, the Internal Revenue
Service – Criminal Investigation ("IRS-CI") obtained a number of
digital devices from various sources, including pursuant to
judicially-authorized search warrants.

On June 10, 2019, the USAO's Privilege Review Team Assistant
United States Attorney ("PRTAUSA") produced to defendant, subject to
the Court's May 20, 2019, Protective Order (CR 36), complete forensic
copies of the accessible[1] digital devices that were: (1) seized from
defendant's residence; (2) seized during defendant's arrest; and
(3) obtained from former employees of GBUS.[2]

---

[1] As discussed further below, the USAO and another U.S.
Attorney's Office has possession of approximately four digital
devices seized from defendant or his residence, which are currently
inaccessible because they are password-protected.  The government
will continue to attempt to gain access to these devices, but cannot
provide a forensic image of the devices to defendant until they have
been accessed.  To date, defendant has declined to provide the
password(s) for these devices, which would expedite providing him
with the contents of the devices.

[2] The PRTAUSA also produced to defendant a copy of the cell-
phone extraction report for Client 3's cellphone, as well as
approximately 103 emails involving defendant that were extracted from
Client 3's computer.  Because Client 3 executed a limited waiver of
the attorney-client privilege, these documents have already been
provided to the investigation team and will not be subject to a
further privilege review.

As discussed further below, the USAO has not provided defendant with forensic copies of the following digital devices: (1) the computer server belonging to defendant's former law firm, Eagan Avenatti LLP ("EA LLP"); (2) devices seized from the residence of EA LLP's former office manager ("EA Employee 1"), which belong to EA LLP; (3) devices seized from another law firm with which defendant had a business relationship ("Law Firm 1"); and (4) the inaccessible digital devices seized from defendant and defendant's residence.

To date, defendant has produced no discovery.

**B.    Defendant's Statement**

The government's production to date has been woefully inadequate.  While it may appear from the page counts and alleged descriptions referenced above that the government has produced significant amounts of information, on a percentage basis, the information produced to date is far less than five percent (5%) of what is required.

After charging Defendant with 36 counts in a lengthy "speaking" indictment months ago, which purportedly followed a three-year investigation, the government now refuses to produce millions of pages of documents and huge amounts of electronic data (likely well over 20 terabytes) that Defendant needs to defend himself—including potential *Brady* and *Giglio* material.  The government has had this information in its possession for months—perhaps years--and yet still has not produced it (while continuing to grandstand and argue for an early trial date).  The government's refusal to produce this information is even more egregious and inexplicable considering that Defendant had unlimited access to nearly all of this information until the morning of his arrest on March 25, 2019, yet the government

4

now refuses to return even a copy to Defendant, while continuing to access the same data in its own preparation for trial. Simply put, there is no reason why Defendant should not be afforded access to this vast amount of information in connection with preparing his defense, not to mention the fact that he requires this information in order to meet his obligations as a practicing attorney who continues to represent clients.[3]

The government has taken this course of action despite repeated requests for this information from defense counsel and *this Court's clear directives at the last status conference, during which the Court directed the government to promptly return seized items to the Defendant and also expressed skepticism as to why a "privilege review" would have to be done before returning/producing the items to Defendant (an attorney) when the documents were previously in his possession or control.*

As this Court is aware, the indictment charges the Defendant with conduct relating to multiple clients of Defendant, as well as conduct concerning business interests of the Defendant. Despite this, the government has essentially refused to provide Defendant with the entirety of his business files that existed prior to the date of his arrest on March 25, including emails, time records, accounting records, pleadings reflecting work done for clients, documents demonstrating client consent, correspondence with clients, etc. To be clear, the government has refused to provide the following, among other things:

---

[3] In prior communications, the government has been overt in its attempts to interfere with Defendant's attempts to continue to make a living through the practice of law.

> a.  Defendant's correspondence and emails with his clients, including the clients referenced in the indictment.
>
> b.  Defendant's client files, including for those clients referenced in the indictment.
>
> c.  Defendant's accounting, tax and cost records, including for those clients referenced in the indictment.
>
> d.  Defendant's time records, including for those clients referenced in the indictment.
>
> e.  Defendant's settlement communications and documentation, including for those clients referenced in the indictment.
>
> f.  Defendant's emails relating to the charges in the indictment.
>
> g.  Defendant's emails with his tax professionals and others relating to his taxes.

The government's excuse that some of this information belongs to "Eagan Avenatti, LLP" is without merit and is a red herring. Defendant founded EA in 2007 with two other partners. He was the Managing Partner of EA at all relevant times (since 2011) and remains in that role to this day. He presently owns 100% of the law firm and has owned a controlling interest in the firm since 2011. Finally, at all relevant times, all clients of EA were clients of Defendant. Indeed, at all relevant times, no client could become a client of EA without Defendant's knowledge and consent.

Without the return and/or production of the information, it is literally impossible for the Defendant to mount a defense in this case, let alone continue to represent his clients or properly transition those clients to other attorneys.

**III. OUTSTANDING DISCOVERY ISSUES**

    **A.    USAO's Statement**

        1.   <u>Non-Search Warrant Evidence</u>

        The vast majority of documentary evidence and interview reports relating to the charges in the indictment case have already been produced to defendant.  The USAO, however, is still processing additional documents and records it obtained from third-parties, as well as additional interview reports.  The USAO and IRS-CI are also still conducting additional witness interviews and collecting evidence from additional sources.  The USAO will produce any newly obtained documents and records on a rolling basis going forward.  The USAO does not believe that this evidence will be particularly voluminous.

        Additionally, the USAO is scanning additional hard-copy records, including two boxes of records obtained from the IRS Revenue Officer who handled the GBUS payroll tax collection action between October 2016 and March 2018, and three boxes of records obtained from defendant's CPA.  The USAO offered to make these records available for defendant's counsel to review at the USAO or IRS-CI's offices, but defense counsel indicated that he would prefer that the USAO just produce the scanned copies.  Due to the nature of the hard-copy records and how they were stored, the USAO anticipates it could take approximately one month to finish scanning these documents.

        Finally, the USAO is in possession of approximately two boxes of mail relating to GBUS.  The USAO has advised defense counsel that it will not be scanning these documents because they are unlikely to contain any relevant information.  The USAO will, however, make them

1    available for defense counsel to review at the USAO or IRS-CI's

2    offices at a mutually convenient time.

3              2.    Digital Search Warrant Evidence

4                    a.    *The USAO's Review of the Digital Devices*

5         During the course of its investigation, IRS-CI obtained the

6    following digital devices or forensic copies thereof:  (1) the

7    computer server belonging to EA LLP; (2) digital devices seized

8    during defendant's arrest on March 25, 2019; (3) digital devices

9    seized from defendant's residence; (4) digital devices seized from

10   the residence of EA Employee 1; (5) digital devices seized from Law

11   Firm 1; and (6) digital devices obtained from former GBUS employees.

12   The USAO and IRS-CI obtained warrants to search each of these devices

13   for evidence relating to the investigation and defendant's

14   prosecution.  Undersigned government counsel understands that the

15   devices contain a total of approximately 20 TB of data.

16        The USAO and IRS-CI is reviewing the contents of each of these

17   devices, pursuant to the privilege review and other search protocols

18   set forth in the search warrants.  The USAO's Privilege Review Team,

19   which is overseeing the initial scope review and subsequent privilege

20   review, has made substantial progress and expects to complete the

21   privilege review within the next three months.[4]  The USAO will

22   produce any non-privileged documents falling within the scope of the

23   search warrants to the defense on a rolling basis.

24

25

26
_____

27        [4]  Because the victim-clients named in the Indictment and the
     court-appointed bankruptcy trustee for GBUS have already executed
28   limited waivers of the attorney-client privilege, the USAO believes
     privilege disputes, if any, would be quite limited.

b. *Production of Forensic Copies of the Digital Devices to Defendant*

At this time, the USAO has not provided defendant with forensic copies of the following digital devices: (1) the EA LLP computer server; (2) digital devices seized from the residence of EA Employee 1; and (3) digital devices seized from Law Firm 1.

With respect to the EA LLP computer server and the digital devices seized from EA Employee 1's residence (collectively, the "EA Devices"), the USAO understands that the EA Devices belong to EA LLP, which is currently controlled by a court-appointed receiver (the "EA Receiver"), and are not defendant's personal property. The USAO also understands that the EA devices likely contain substantial amounts of attorney-client privileged information relating to third-parties, which defendant is not entitled to access. Accordingly, on May 24, 2019, the USAO informed defendant that it did not believe it would be appropriate for the USAO to provide defendant with complete forensic copies of the EA Devices without obtaining consent from the EA Receiver.[5] The EA Receiver has advised the USAO that it will not consent to the USAO producing complete forensic copies of the EA Devices to defendant.

With respect to the digital devices seized from Law Firm 1, the USAO understands that these devices belong solely to Law Firm 1 and are likely to contain substantial amounts of attorney-client

---

[5] To the extent defendant needs to access any of the materials on the EA Devices in order to represent his remaining legal clients, the USAO has advised defendant that he should address this issue with the EA Receiver or seek relief from the Honorable Karen E. Scott, United States Magistrate Judge, or the Honorable Virginia A. Phillips, United States District Judge, who are overseeing the receivership in In re Eagan Avenatti LLP, No. CV 18-1644-VAP (C.D. Cal.).

1  privileged and confidential information relating to Law Firm 1's

2  clients.  Accordingly, on May 24, 2019, the USAO informed defendant

3  that it did not believe it would be appropriate for the USAO to

4  provide defendant with complete forensic copies of these digital

5  devices without obtaining consent from Law Firm 1.  Counsel for Law

6  Firm 1 has advised the USAO that Law Firm 1 will not consent to the

7  USAO producing complete forensic copies of Law Firm 1's digital

8  devices to defendant.

9       Although the USAO has not produced forensic copies of the

10  digital devices referenced above to defendant, on May 24, 2019, and

11  again during a meet-and-confer on June 26, 2019, the USAO offered to

12  discuss alternative procedures designed to ensure that defendant can

13  access any materials on the EA Devices that may be relevant to his

14  defense.  For example, the USAO requested that defendant's counsel

15  consider whether providing defendant with the results of a broader

16  search for potentially relevant materials on the EA Devices, having

17  defendant and his counsel work with the Privilege Review Team to

18  identify and produce relevant materials on the EA Devices directly to

19  defendant, or allowing defendant's counsel to review the complete

20  forensic copy of the EA Devices at IRS-CI's offices would be

21  sufficient to address defendant's concerns.

22       To the extent defendant does not believe any alternative

23  procedures would be sufficient to address defendant's concerns and

24  that defendant should be provided with complete forensic copies of

25  the EA Devices or Law Firm 1's devices, the USAO requests that the

26  Court set an expedited briefing schedule so that this issue can be

27  resolved as soon as possible.  The USAO would also request that any

28

1  such briefing schedule provide an opportunity for the EA Receiver and
2  Law Firm 1 to be heard regarding defendant's request.

3          c.   *Inaccessible Digital Devices*

4          IRS-CI is currently in possession of an Apple desktop computer
5  seized from defendant's residence, which is password protected and
6  has not yet been accessed.  The USAO understands that the United
7  States Attorney's Office for the Southern District of New York (the
8  "SDNY USAO") is also in possession of an iPhone, an iPad, and an
9  Apple laptop computer, which are password protected and have not yet
10 been accessed.  The USAO will produce to defendant forensic copies of
11 these devices if and when the USAO is able to access the devices.
12 The government, including the SDNY USAO, has advised defendant that
13 if defendant wishes to immediately obtain forensic copies of these
14 digital devices or access materials on these devices defendant will
15 need to provide the government with the passwords for these devices
16 so that the government can create forensic images of the devices.  To
17 date, defendant has not provided the USAO or the SDNY USAO with the
18 passwords for any of the inaccessible devices.

19         3.   <u>Hard-Copy Search Warrant Evidence</u>

20         During the execution of search warrants at defendant's
21 residence, EA Employee 1's residence, and Law Firm 1, IRS-CI seized
22 approximately 15 to 20 boxes of hard copy materials.  These records
23 are currently being reviewed by the Privilege Review Team to ensure
24 that they do not contain any privileged materials.  The USAO will
25 produce scanned copies of these documents to defendant as soon as
26 they are available, likely within the next three weeks.

27

28

1      4.    Reciprocal Discovery from Defendant

2          The USAO has requested that defendant produce reciprocal

3      discovery under Federal Rule of Criminal Procedure 16.  Although

4      defendant has indicated, including through posting numerous messages

5      on Twitter.com, that he is in possession of various documents he

6      intends to use in his defense, including two documents purportedly

7      signed by "Client 1" in the indictment, defendant has not yet

8      produced any reciprocal discovery to the USAO.  The USAO therefore

9      requests that the Court order defendant to produce any known

10     reciprocal discovery within two weeks of the status conference, and

11     set a final deadline for defendant to produce reciprocal discovery

12     approximately two months before trial.

13     **B.   Defendant's Statement**

14          1.    Non-Search Warrant Evidence

15          The Defendant requests that the Court order the government to

16     produce all information referenced above under "Non-Search Warrant

17     Evidence" within two weeks of the status conference.

18          2.    Digital Search Warrant Evidence

19          As stated above, the government has refused, without an adequate

20     basis, to return and/or produce significant amounts of critical data

21     and information to the Defendant, without justification.  This

22     includes: (1) the computer server belonging to EA LLP; (2) digital

23     devices seized during defendant's arrest on March 25, 2019; (3)

24     digital devices seized from defendant's residence; (4) digital

25     devices seized from the residence of EA Employee 1; (5) digital

26     devices obtained from former GBUS employees.  According to the

27     government, these devices contain a total of approximately 20 TB of

28     data.  More importantly, this information constitutes nearly all of

1    the business files of Defendants for the last decade, including close

2    to 100 percent of the information relating to the work performed by

3    Defendant for the clients referenced in the indictment.  Defendant

4    cannot defend this case without full and complete access to this

5    information.

6        To be clear, there can be no privilege issues relating to

7    producing any of this information to Defendant because Defendant is

8    an attorney who was--and in some cases still is, as his

9    representation of those clients is ongoing-- entitled to full access

10   to this information at all relevant times.    Moreover, even if

11   Defendant has since been discharged, Defendant would still be

12   entitled to keep a copy of the information for his records and use,

13   including in connection with defending any civil claim by any client.

        *a.    Production of Forensic Copies of the Digital
               Devices to Defendant*

16       With respect to the EA LLP computer server and the digital

17   devices seized from EA Employee 1's residence (collectively, the "EA

18   Devices"), the government's position lacks all merit.  Defendant

19   founded EA in 2007 with two other founding partners.  He was the

20   Managing Partner of EA at all relevant times (since 2011) and remains

21   the Managing Partner to this day.  He presently owns 100% of the law

22   firm and has owned a controlling interest in the firm since 2011.

23   Further, at all relevant times, all clients of EA were clients of

24   Defendant.  Indeed, at all relevant times, no client could become a

25   client of EA without Defendant's knowledge and consent.

26       In addition, up until his arrest on March 25, 2019, Defendant

27   had virtually unlimited access to the information he now demands be

28   returned/produced.  Accordingly, there can be no legitimate argument

                                    13

that he should not be afforded access now, especially seeing as he has a constitutionally guaranteed right to prepare a defense.

*Moreover, the EA Receiver is not an attorney, cannot service or represent clients, has no right to access attorney-client information on the servers or in EA's files, and has no ownership interest in the firm. More importantly, the Defendant needs full and complete access to the totality of this information immediately.* Indeed, it is quite frankly shocking that the Receiver and the government, both of whom have limited, if any, right to this information, presently enjoy unfettered access while denying Defendant access so he can prepare a defense to these serious criminal charges.

Further, the alleged "alternative" production methods proposed by the government are unworkable and unrealistic, and would result in this case being delayed for years because of the amount of data involved. Defendant should not have to telegraph his defense by revealing which documents he is interested in reviewing, nor should the Defendant and his counsel be required to review over 20 terabytes of data at the offices of the government.

The government must be required to produce complete forensic copies of the EA Devices to Defendant within thirty (30) days of the status conference. Following this production and the review of the discovery produced to date, Defendant will further meet and confer with the government as to Law Firm 1's devices.

b. *Inaccessible Digital Devices*

The warrants permitting the government to access the four inaccessible devices expired long ago. And Defendant is under no obligation to now provide the passwords in exchange for a forensic image of the devices or their return. Defendant requests the return

14

of the four devices within three (3) court days of the status conference so that he may prepare his defense.

### 3. Hard-Copy Search Warrant Evidence

The entirety of the documents seized from defendant's residence and EA Employee 1's residence should be produced immediately as no possible privilege issues exist as to this information for the reasons previously discussed. The government has been in possession of this information for 14 weeks and it should have been produced long ago as Defendant needs this information for his defense.

As for the materials seized from Law Firm 1, Defense counsel will further meet and confer with the government following review of the documents to be produced.

### 4. Reciprocal Discovery from Defendant

Defendant maintains that it is entirely premature for any order of reciprocal discovery, especially considering the lack of timely discovery provided by the government.

## IV. PROPOSED TRIAL SCHEDULE

### A. USAO's Proposed Trial Schedule

The USAO proposes the following trial schedule and other relevant dates:

1. Trial Date – January 28, 2020.

2. Final Pretrial Conference – January 7-11, 2020 (any date that week convenient for the Court).

3. Government Witness List Disclosure – December 30, 2019 (i.e., approximately one month before trial).

4. Government Exhibit Disclosure – January 21, 2020 (i.e., approximately one week before trial).

5.      <u>Expert Witness Disclosures</u> – November 4, 2019 (<u>i.e.</u>, approximately two weeks before pretrial motions are to be filed).

6.      <u>Proposed Pretrial Motions Schedule</u>

    a.      <u>Motions Due</u> – November 18, 2019.

    b.      <u>Oppositions Due</u> – December 2, 2019.

    c.      <u>Replies Due</u> – December 9, 2019.

    d.      <u>Motions Hearing</u> – December 23, 2019 (or any date during the week of December 16-20, 2019, that is convenient for the Court).

7.      <u>Disclosure of Jencks Act Materials and Witness Statements</u> – December 30, 2019 (<u>i.e.</u>, approximately one month before trial).[6]

8.      <u>Interim Status Conferences</u> – August 5, 2019; September 9, 2019; October 7, 2019; and November 4, 2019.[7]

The USAO believes that this schedule is appropriate and will provide defendant and his counsel sufficient time to prepare for trial.

**B.      Defendant's Proposed Trial Schedule**

Defendant maintains that it is far too premature for the Court to set a trial date in this matter, let alone in January, for the following reasons:

1.      <u>Significant Discovery Has Yet to Be Produced</u>

As set forth above, the government has yet to produce well over 95% of the information and data necessary for the defense in this

---

[6] The USAO will agree to produce summaries of any additional witness statements it obtains during trial preparations on a rolling basis thereafter.

[7] The interim status conferences will provide the parties an opportunity to address any issues and/or foreseeable issues with the Court.  If the parties agree in advance of one or more of the status conferences that such a hearing is unnecessary, the parties will inform the Court in advance to vacate the hearing(s).

case, including over 20 terabytes of data. Until this information and data are produced and reviewed, together with the yet to be produced 302s, it is impossible for the defense to adequately determine the total amount of time necessary to prepare for trial, the likely motions and experts required, etc.

### 2. The Government May Supersede the Indictment

The Defense has recently learned that the government is eliciting testimony and evidence concerning Defendant before the Grand Jury. Defendant's counsel has inquired as to whether this will result in further charges and the government has refused to answer. Obviously, any further charges would result in further discovery and the need for more time for proper defense preparation. Defendant should be permitted to know the entirety of the charges against him before committing to a trial date.

### 3. Other Cases Pending Against the Defendant Will Delay this Case

As the Court is aware and as discussed more fully below, rather than charge the Defendant in one case, in one jurisdiction, the Department of Justice made the decision to charge him in three separate cases on two coasts. As a result of this strategic decision, significant delay will result. This delay is not the fault of the defense – it stems directly from the government's approach to charging the Defendant. Accordingly, the Defendant should not be prejudiced in his ability to adequately prepare a defense.

As further discussed below, the Defendant is already scheduled to be tried in New York on November 12, 2019, in the Southern District of New York in United States v. Avenatti, No. 1:19-CR-373 (the "SDNY Extortion Case" or "Nike Case"), a trial that is expected

17

to last two weeks at a minimum. Defendant is represented in that case by separate counsel, whom he is presently assisting in preparing his defense.

It is anticipated that the government will soon be asking the court in the Southern District of New York to set a trial in the third case - <u>United States v. Avenatti</u>, No. 1:19-CR-374 (the "SDNY Fraud Case") for trial immediately following the Nike Case. A status conference is scheduled in New York for July 23, 2019. As noted below, the Defendant will be moving to transfer and likely consolidate the SDNY Fraud Case with this matter.

### 4. The Existing Trial Schedule of Defense Counsel

Even leaving aside a possible trial date in the SDNY Fraud Case, defense counsel's trial schedule does not permit a trial in this case in January as demanded by the government. Presently, that 2019 schedule is as follows:

► **September 17-** *U.S. v. Noori* SA-CR-17-112-DMG (client is very ill- unclear whether he will be well enough for trial in September, which may result in delay)- 2 week bank fraud trial in Los Angles

► **October 22-** *U.S. v. Michaels et. al.* SA-CR-16-76-JVS (client is Jonathan Brightman)- 3-4 week multiple defendant telemarketing fraud trial - Santa Ana

► **November 26-** *U.S. v. Le* SA-CR-18-119-AG - 3 week multiple defendant health care fraud trial- Santa Ana

► **December 3-** *U.S. v. Garcia* (District of Nevada - Las Vegas; conflicts with *U.S. v. Le therefore* likely be continued to January or February, 2020) - 2-3 week multiple defendant mortgage fraud trial.

In addition, following the trial in the *Garcia* matter in Las Vegas in January or February 2020, Defendant's counsel would need at least sixty (60) days to prepare for the trial in this matter, at a minimum, assuming that all of the discovery demanded above is produced immediately (thus allowing for immediate review).

As a result of the above and the need for clarity as to which charges Defendant will face and the content of the discovery, Defendant requests a further status conference on November 8, 2019.

**V.   LOGISTICAL ISSUES**

    **A.   The SDNY Extortion Case**

Defendant is charged in a four-count indictment in the Southern District of New York with offenses relating to an alleged scheme to extort Nike Inc.  United States v. Avenatti, No. 1:19-CR-373 (the "SDNY Extortion Case").  The SDNY extortion case is set for trial on November 12, 2019.  Defendant is represented by separate counsel in the SDNY Extortion Case.

    1.   Defendant's Statement

The Nike case will result in significant delay of this case. Defendant is actively involved in preparing for the trial in the Nike matter, including by regularly meeting with his counsel (located in Miami), reviewing discovery, and researching various issues.  He is highly involved on a daily basis as the case is set for trial in November.  The government is seeking a loss amount of over one billion dollars in connection with the Nike case, which is far greater than the amount here, and may result in significant incarceration if Defendant is found guilty.  Accordingly, until that case is tried to completion, Defendant will be unable to assist in the defense in this case in any meaningful way.  There can be little

19

1  question that this will result in significant delay. Again, this

2  results not from any strategic choice by the Defendant, but rather

3  from the choices made by the government.

4      The government has been investigating this case and seizing and

5  otherwise obtaining massive amounts of data for three years, yet

6  wants to push defendant to trial in 10 months. This is based in part

7  on a general assertion from the government that it will get the

8  discovery it wants to produce, but only that discovery, to the

9  defendant in the next several months. It is apparent that the

10 government is attempting to exert pressure on and disadvantage the

11 Defendant, by failing to produce massive amounts of discovery in a

12 timely manner in this case, proceeding to trial in the Nike case,

13 moving forward on the other case in the SDNY, and pushing to have

14 this case proceed to trial shortly after the Nike case. This is

15 fundamentally unfair, and prejudicial.

16         2. <u>Government's Statement</u>

17     The USAO does not believe that the SDNY Extortion Case should

18 delay the trial in this case. The SDNY Extortion Case is being

19 handled by separate defense attorneys, is based on separate conduct,

20 primarily involves different evidence and witnesses, and presents

21 separate legal issues. The trial in the SDNY Extortion Case should

22 therefore have no impact on defendant's ability to proceed to trial

23 in this case in a timely manner (other than defendant's presence in

24 SDNY during his trial). Accordingly, the USAO has proposed that this

25 case proceed to trial as soon after the SDNY Extortion Case as

26 possible.

27

28

**B.   The SDNY Fraud Case**

Defendant is also charged in a two-count indictment with wire fraud and aggravated identity in the Southern District of New York in United States v. Avenatti, No. 1:19-CR-374 (the "SDNY Fraud Case"). A trial date has not yet been set for the SDNY Fraud Case. A status conference is currently scheduled for July 23, 2019. Defendant is represented by Mr. Steward in the SDNY Fraud Case.

1.   Defendant's Statement

Defendant anticipates filing a motion to transfer venue and/or consolidate as it relates to the SDNY Fraud Case because Defendant believes the case should have been charged in this district. Depending on the outcome of those motions, this case may involve more charges. In the alternative, Defendant will request that the SDNY Fraud Case be tried after the Nike case as it involves fewer witnesses, far less discovery, and can be tried to conclusion long before this case will be ready for trial.

2.   USAO's Statement

The resolution of defendant's anticipated motion to transfer the SDNY Fraud Case to this district should have no impact on the trial date in this case. If such a motion is granted, the government would be prepared to try the charges pending in the SDNY Fraud Case either in a consolidated proceeding with the current charges or immediately after the trial in this case. If such a motion is denied, the USAO believes that this case should proceed to trial prior to the SDNY Fraud Case because this case involves broader alleged criminal conduct and multiple victims, including five of defendant's former clients, who suffered total financial losses of approximately $9

21

million, and the IRS, which is owed at least $3.2 million in unpaid taxes.

## VI. ESTIMATED LENGTH OF TRIAL

### A. USAO's Estimate

The USAO estimates that the trial, including any defense case, can be completed in three to four weeks.

### B. Defendant's Estimate

Defendant estimates that the trial, including the defense case, can be completed in six weeks.  This estimate is a rough estimate and is largely dependent on the remaining discovery to be produced, as well as the outcome in the motions to transfer venue/consolidate.

## VII. NEED FOR A TIME-QUALIFIED JURY

### A. USAO's Position

The USAO believes that a time-qualified jury is likely necessary.

### B. Defendant's Position

Defendant objects to the request for a time-qualified jury. In counsel's experience, time qualified jurors tend to favor the prosecution.

## VIII. ADDITIONAL ISSUES TO ADDRESS AT STATUS CONFERENCE

### A. Defendant's Position

Defendant anticipates raising two additional issues at the Status Conference:  (1) a deadline by which the government must supersede the indictment and (2) the immediate production of any purported waivers of the attorney-client privilege by any of the clients of Defendant.

1     **B.**    **USAO's Position**

2     The parties met-and-conferred telephonically regarding the

3 instant Joint Report on June 26, 2019. Defendant's portion of the

4 Joint Report, which the USAO did not receive until approximately 3:30

5 pm on July 1, 2019 (the day it was due to be filed), raises a number

6 of issues or arguments regarding discovery and other matters for the

7 very first time. Defendant has also taken positions in the Joint

8 Report that are inconsistent with the positions defendant's counsel

9 took during the June 26 meet-and-confer. Because there is

10 insufficient time to respond to these issues prior to filing the

11 Joint Report, the government will be prepared to address all of the

12 issues raised in the Joint Report at the July 8, 2019, status

13 conference.

14     With respect to the specific additional issues defendant

15 identifies above, the USAO cannot comment on grand jury proceedings

16 under Federal Rule of Criminal Procedure 6(e) and believes any

17 deadline regarding the potential filing of a superseding indictment

18 would be inappropriate at this time. As for the attorney-client

19 privilege waivers, defendant is raising this issue for the first time

20 in this Joint Report. Although redacted copies of such waivers were

21 attached as exhibits to the search warrant applications and therefore

22 have already been produced to defendant, the government will gladly

23 reproduce the waivers to defendant on July 2, 2019.

24

25

26

27

28