UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                     :

UNITED STATES OF AMERICA           :

                                     :

     - v. -                   :            19 Cr. 374 (DAB)

                                     :

MICHAEL AVENATTI,              :

                                     :

               Defendant.     :

                                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 

## GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER

 

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

 

Matthew Podolsky
Robert B. Sobelman
Assistant United States Attorneys
- Of Counsel -

## PRELIMINARY STATEMENT

Defendant Michael Avenatti has moved to transfer this case to the Central District of California pursuant to Rule 21 of the Federal Rules of Criminal Procedure.  While acknowledging the various factors set forth by the Supreme Court in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964), governing such a motion—and erroneously arguing those factors weigh in favor transfer—the defendant's principal argument turns on a factually erroneous premise: namely, that transfer of this case to the Central District of California would necessarily result in consolidation of this case with another criminal case currently pending in that district, *see United States v. Avenatti*, No. 19-061-JVS (the "California Prosecution"), such that there would be "a single trial, with one judge, and one set of prosecutors."  (Def. Mem. 1.).

The defendant is doubly wrong.  First, evaluation of the *Platt* factors weighs decisively *against* transfer of this case, as many of those factors, including, most notably, the location of witnesses and the events at issue, strongly favor trial in the Southern District of New York, where the defendant was indicted.  The existence of a separate prosecution in California has no bearing on the *Platt* factors and no relevance to this motion—the fact that the defendant is facing charges for separate crimes committed against other victims in California does not entitle him to forum shop and impose an unnecessary burden on the witnesses and the Government in this case.  Second, even if the fact of the pending charges had any relevance to this motion, transfer of this case would not, as the defendant asserts, simply result in "a single trial, with one judge, and one set of prosecutors."  (Def. Mem. 1.)  It would, at a minimum, result in law enforcement agents, prosecutors, and witnesses from New York traveling to California to try a case in which the fraud and its investigation centered around New York City—an outcome that, as detailed below, would

be contrary to application of the *Platt* factors and in the interests of no one but the defendant himself.

Accordingly, the defendant's motion to change venue should be denied because venue is proper in the Southern District of New York, he cannot overcome the presumption of trial in the venue in which he was charged, and there is no valid basis for transfer to the Central District of California.

## BACKGROUND

On May 22, 2019, a grand jury sitting in this District charged the defendant with wire fraud and aggravated identity theft, in violation of Title 18, United States Code, Sections 1028A, 1343, and 2.  The charges stem from the defendant's efforts to deceive a Manhattan-based literary agent and Manhattan-based publisher, through the use of wires sent to Manhattan, in order to intercept payments intended for the defendant's client ("Victim-1"), who resides in Louisiana and Texas.

As alleged more fully in the Indictment, from August 2018 through February 2019, the defendant, an attorney, engaged in a scheme to defraud Victim-1, who was one of his clients at that time, by diverting money owed to Victim-1 to the defendant's control and use.  (Indictment ¶ 1.)  After assisting Victim-1 in securing a book contract with a publisher in Manhattan, the defendant stole a significant portion of Victim-1's advance on that contract by sending a fraudulent and unauthorized letter purporting to contain Victim-1's signature to Victim-1's literary agent in Manhattan, which instructed the agent to send payments not to Victim-1 but to a bank account controlled by the defendant.  (*Id*. ¶ 1.)

Specifically, prior to Victim-1's literary agent wiring the second of four installment payments due to Victim-1 as part of the book advance, the defendant sent a letter to Victim-1's

literary agent, who is based in and received the letter in Manhattan, purportedly signed by Victim-1 that instructed the literary agent to send all future payments to a client trust account in Victim-1's name and controlled by the defendant.  (*Id.* ¶ 15.)  The literary agent initiated a wire transfer from Manhattan of $148,750 to the account, which the defendant promptly began spending for his own purposes, including on airfare, hotels, car services, restaurants and meal delivery, online retailers, payroll for his law firm and another business he owned, and insurance.  (Indictment ¶¶ 16-17.)  When Victim-1 began inquiring of the defendant as to why Victim-1 had not received the second installment, the defendant lied to Victim-1, telling Victim-1 that he was still attempting to obtain the payment from Victim-1's publisher.  (*Id.* ¶¶ 19-20.)  Approximately one month after diverting the payment, the defendant used funds recently received from another source to pay $148,750 to Victim-1, so that Victim-1 would not realize that the defendant had previously taken and used Victim-1's money.  (*Id.* ¶ 21.)

Approximately one week later, pursuant to the defendant's earlier fraudulent instructions, the literary agent sent from Manhattan another payment of $148,750 of Victim-1's book advance to the client account controlled by the defendant.  (*Id.* ¶ 22.)  The defendant promptly began spending the money for his own purposes, including to make payments to individuals with whom the defendant had a personal relationship, to make a monthly lease payment on a luxury automobile, and to pay for airfare, dry cleaning, hotels, restaurants and meals, payroll, and insurance costs.  (*Id.* ¶ 23.)  Moreover, to conceal his scheme, and despite repeated requests from Victim-1 to the defendant, as Victim-1's lawyer, for assistance in obtaining the book payment that Victim-1 believed was missing, the defendant led Victim-1 to believe that Victim-1's publisher was refusing to make the payment to the literary agent, when, as the defendant knew, the publisher

had made the payment to the literary agent, who had then sent the money to the defendant pursuant to the defendant's fraudulent instructions.  (*Id.* ¶¶ 24-25.)

The California Prosecution involves wide-ranging allegations that the defendant embezzled millions of dollars that should have been paid to clients, failed to file income tax returns and failed to pay the Internal Revenue Service ("IRS") millions of dollars in taxes, submitted fraudulent loan applications that included tax returns never filed with the IRS, and concealed assets from the Bankruptcy Court.  For those crimes, the defendant has been charged with 10 counts of wire fraud, 19 tax-related offenses, two counts of bank fraud, four counts of bankruptcy fraud, and one count of aggravated identity theft.  All five victims in the California Prosecution's case resided within the Central District of California during the events at issue in that case.

## ARGUMENT

In moving to transfer this case to the Central District of California, the defendant would have a case that was fully investigated in this District and witnesses principally based in this District moved to Los Angeles all so that the defendant, an admitted frequent traveler, can avoid spending approximately one week in Manhattan for the trial of this case.  The defendant, who does not dispute that venue is proper in the Southern District of New York, has not met his burden of showing that he is entitled to a transfer.  This motion should be denied.

## I.    Applicable Law

"As a general rule a criminal prosecution should be retained in the original district" where the case was charged.  *United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982); *accord United States v. Kirk Tang Yuk*, 885 F.3d 57, 74 n.5 (2d Cir. 2018).  Discretionary transfers of venue are governed by Federal Rule of Criminal Procedure 21(b), which provides that, "for the

convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district." Fed. R. Crim. P. 21(b). The "burden is on the moving defendant to justify a transfer under Rule 21(b)." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (Sotomayor, J.) (quotation marks omitted).

In *Platt*, the Supreme Court introduced a list of factors that courts routinely consider in analyzing a defendant's motion to transfer venue: (1) location of defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district involved; and (10) any other special elements which might affect the transfer. *Id.* at 455 (citing *Platt*, 376 U.S. at 244). "No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (quotation marks and brackets omitted).

## II.     Discussion

### A.     Location of the Defendant

The first *Platt* factor is the location of the defendant. While there is no dispute that the defendant resides in California, this fact alone does not justify transfer. It is well established that "the inconvenience of having to stand trial outside of one's home district, without more, is insufficient to warrant a transfer." *United States v. Coriaty*, 99 Cr. 1251 (DAB), 2000 WL 1099920, at *2 (S.D.N.Y. Aug. 7, 2000) (internal quotation marks omitted); *see also United States*

*v. Conner*, No. 00 Cr. 7231 (GBD), 2001 WL 114314, at *3 (S.D.N.Y. Feb. 9, 2001) ("inconvenience to the defendant or his business is not, by itself, a sufficient basis for transfer"). While courts in this Circuit have recognized the policy arguments for trying defendants where they reside where possible, *see Spy Factory*, 951 F. Supp. at 456, those same courts have noted that adopting a "'policy' favoring the trial of defendants where they reside" would be "in tension with the more general presumption that 'a criminal prosecution should be retained in the original district,'" *id.* at 464. Indeed, the Supreme Court made clear in *Platt* that a defendant's residence "has no independent significance" and should not be given dispositive weight. 376 U.S. at 245.

Here, while the Government does not dispute that the defendant resides in California—and thus that this factor weighs slightly in favor of transfer—this solitary factor alone cannot and does not overcome the weight of all the other *Platt* factors that counsel strongly in favor of keeping the prosecution in this District. Indeed, the general trend since the 1980's has been for courts to deny motions to transfer venue based principally on the location of the defendant and the proffered need "to mitigate the financial, emotional, or practical burdens of trial in a distant locale," a trend that "is hardly surprising when one considers the massive expansion of technology and the relative decline in costs for long-distance travel over the past few decades." *United States v. Quinn*, 401 F. Supp. 2d 80, 85-86 (D.D.C. 2005) (citing cases and treatises).

Moreover, the trial of this case, and thus any resulting disruption to the defendant's life, is expected to be brief: the Government anticipates its case-in-chief to take approximately one week. The duration of the disruption here is far less than in other cases where motions to transfer based on inconvenience has been denied. *See, e.g.*, *United States v. Christian*, No. 12 Cr. 41 (KBF), 2012 WL 1134035, at *2 (S.D.N.Y. Apr. 2, 2012) (denying motion to transfer where "[t]he

6

government anticipates the trial in this case to last no more than two weeks—a short time of disruption, if any, even considering time defendants may come to New York for trial preparation—and far less than in many criminal trials where transfer was denied"); *United States v. Stein*, 429 F. Supp. 2d 633, 645-46 (S.D.N.Y. 2006) (denying motion to transfer where trial was anticipated to last several months); *United States v. Wilson*, No. 01 Cr. 53 (DLC), 2001 WL 798018, at *3 (S.D.N.Y. July 13, 2001) (denying motion to transfer where trial was estimated to last six to eight weeks notwithstanding the burden on the defendant's family).  Moreover, the defendant's claim that traveling to New York for trial would be inconvenient or burdensome is particularly unpersuasive as he admits he spends much of his time "traveling."  (Def. Mem. 7.)

In sum, although this factor, which is "not dispositive," *Coriaty*, 2000 WL 1099920, at *2, weighs "however slightly," *id*., in favor of transfer to the Central District of California, that fact alone does not warrant transfer given the overwhelming weight of the other factors which support keeping the prosecution in this District, where the case was originally charged.

## B.    Location of Possible Witnesses

The second *Platt* factor is the location of witnesses who are likely to testify at trial.  This factor does not weigh in favor of transfer—indeed, it weighs heavily against transfer.  The defendant claims, incorrectly, that "[t]he largest number of witnesses for both the government and defense reside in California."  (Def. Mem. 5.)  Although the Government has not finalized its trial

witness list,[1] the Government presently does not anticipate calling at trial *any* witnesses who are located in California.[2]  Rather, at trial the Government anticipates calling at least two witnesses from Victim-1's literary agency and at least two witnesses from Victim-1's publisher, all of whom are based in Manhattan.  The Government also anticipates calling as a witness Victim-1, who resides in Louisiana and Texas—not California.

Indeed, in an effort to suggest—erroneously—that the Government's witnesses reside in California, the defendant oddly describes "[t]he government's principal allegations" as centering on the receipt of fraud proceeds into bank accounts held in California-based banks and the manner in which the defendant spent those funds.[3]  (Def. Mem. 5.)  To the contrary, as is apparent from the Indictment, the Government's "principal allegations" concern the manner in which the defendant carried out his scheme to defraud through email, telephonic, text message, and in-person (in meetings that occurred in Manhattan) communications with Victim-1 and individuals associated with Victim-1's literary agency and publisher.  The witnesses to this conduct are based in Manhattan or Louisiana/Texas.

---

[1] Because no trial date has been set and the Government has not begun its trial preparation efforts in earnest, it is possible that the Government will identify one or more witnesses who happen to reside in California that it wishes to call at trial.

[2] If the Government later decides to call as a witness any individuals who are located in California, the Government is prepared to accommodate those witnesses and assume the cost of their travel and incident expenses in connection with the defendant's trial.

[3] The manner in which the defendant spent the proceeds of his crime is readily apparent from documentary evidence, including bank records and is not likely to be the subject significant, if any, testimony in this case.  To the extent a custodian of records is required to offer such records—and such a custodian is required to travel—any modest burden resulting would have no impact on the defendant.

Despite the defendant's claim that he intends to call witnesses at trial who reside in California, he identifies none.  Instead, he refers only to unnamed purported "character witnesses." (Def. Mem. 5.)  This generic assertion is insufficient to counsel in favor of transferring a case from the district in which it was brought.  Courts have recognized that, "generally, a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer . . . . Defendants must offer specific examples of witnesses' testimony and their *inability* to testify because of the location of the trial . . . . the court must rely on 'concrete demonstrations' of the proposed testimony."  *Spy Factory*, 951 F. Supp. at 456 (emphasis added) (alteration, citation, and internal quotation marks omitted); *see also United States v. Juncal*, No. 97 Cr. 1162 (JFK), 1998 WL 473949, at *5 (S.D.N.Y. Aug. 7, 1998) ("there is no basis to grant the motion to transfer" where defendant fails to make "a specific proffer of testimony from specific witnesses to allow the court to make an informed decision about the importance of these witnesses to [the defendant's] case").  Moreover, "in this age of easy air travel, this factor is generally much less relevant than it was in 1964, when the Supreme Court decided *Platt*."  *United States v. Ebbers*, No. S4 02 Cr. 1144 (BSJ), 2004 WL 2346154, at *1 (S.D.N.Y. Oct. 18, 2004).

Here, as noted, in place of specific examples of witnesses who would be unable to testify if this case is tried in New York, the defendant merely offers a general claim that purported character witnesses who allegedly live in California may be important to his case.  The defendant does not identify a single specific witness whom he intends to call at trial, nor does he make any allegation that such a witness would be unable to testify if the trial is held in New York.  In such circumstances, courts in this District repeatedly have found that the location of witnesses in the defendant's home district did not weigh in favor of transfer.  *See, e.g.*, *Christian*, 2012 WL

9

1134035, at *2 (finding that this factor did not support transfer where defendants "address[ed] the convenience of the witnesses with conclusory averments" that trial in this District would be less convenient and "d[id] not put forward any evidence that potential witnesses would be unwilling and unable to travel to the Southern District of New York"); *United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2944626, at *2 (S.D.N.Y. July 31, 2008) (finding that "bare assertion" of hardship was insufficient to tip this *Platt* factor in favor of transfer); *Stein*, 429 F. Supp. 2d at 646 (finding that location of witnesses did not support transfer where defendants failed to put forward any evidence that potential witnesses would be unable or unwilling to travel to this District).

In sum, because the Government's witnesses are not located in California and the defendant has failed to provide a single "specific example[] of witnesses' testimony and . . . inability to testify because of the location of the trial," *Spy Factory*, 951 F. Supp. at 456, he has failed to meet his burden to prove that the location of witnesses compels a transfer to California.

## C.      Location of Events Likely To Be at Issue

The third *Platt* factor, the location of events likely to be at issue, also does not favor transfer.  The defendant characterizes the crimes charged as a "purported scheme to divert client funds into a California-based trust account of a California law firm."  (Def. Mem. 6.)  While it is true that the proceeds of the defendant's fraud were sent to a bank account in a California-based bank, the defendant does not focus on the conduct at issue in this case: false representations the defendant made to Victim-1's literary agency in Manhattan, which resulted in the literary agency sending money to the defendant via wire transfer from Manhattan, of funds the literary agency received from Victim-1's the publisher, also in Manhattan.  The defendant frequently sent emails and made phone calls to Manhattan, as he communicated with representatives of the literary

agency and the publisher in furtherance of his scheme.  He also met with representatives of the literary agency in Manhattan.  Merely pointing out that the defendant instructed the literary agency in Manhattan to send the pilfered funds to him in California is not sufficient to meet his burden with respect to this factor—indeed, the defendant does not point to any "event at issue" that occurred in California, and entirely ignores the events that transpired in New York.

Although he claims that he was present in California "during the majority of events" at issue in this case, the defendant provides no specifics on which this Court can rely.  He does not identify his actual location for any of these supposed "events," he fails to specify to which "events" he is referring, and he names no witness who is based in California.  Moreover, and even assuming the defendant was in California "during the majority of the events," the defendant identifies no reason why *his* location at the time of the events likely to be of relevance at trial—namely, his location when communicating false statements, typically by phone or email, to the publisher and literary agent based in New York or Victim-1 based in Louisiana or Texas—is of any significance, let alone *more* significance than the location where the false and fraudulent statements and representations were received and acted upon.

Indeed, even if some events took place in California in addition to those that took place in this District (and perhaps other places), no one forum could accommodate the case exclusively and therefore the constitutional propriety of venue in this District weighs against transfer.  *See United States v. Hays*, No. 96 Cr. 51, 1997 WL 34666, at *4 (E.D. Pa. 1997) (proper venue satisfies this factor when events took place in multiple districts); *United States v. Bloom*, 78 F.R.D. 591, 609 (E.D. Pa. 1977) (same).  At best, because venue would be "equally proper" in this District and in California, this factor arguably could be "neutral."  *United States v. Pastore*, No. 17 Cr. 343

11

(NSR), 2018 WL 395490, at *4 (S.D.N.Y. Jan. 11, 2018).

### D.    Location of Documents and Records Likely To Be Involved

The fourth *Platt* factor, the location of documents, does not weigh in favor in transfer, particularly when modern developments in electronics and computing render documents readily available to a defendant wherever he or she is located.  *See Brooks*, 2008 WL 2944626, at *2 ("the location of documents and records is not a major concern in these days of easy and rapid transportation"); *United States v. Layne*, No. 05 Cr. 87 (HB), 2005 WL 1009765, at *4 (S.D.N.Y. May 2, 2005); *Coriaty*, 2000 WL 1099920, at *3; *Spy Factory*, 951 F. Supp. at 458.

Remarkably, in support of his argument that documents and records are located in California, the defendant completely ignores all of the documents and records gathered in *this* investigation and the discovery in *this* case—all of which are unquestionably located in the Southern District of New York—and instead claims, without identifying any specific documents or categories of documents, that the "vast majority of the relevant documents are located in California" because they purportedly are located on a server  in the possession of the receiver for his former law firm and the United States Attorney's Office for the Central District of California.[4]

The argument borders on the absurd.  Here, as noted above, all of the relevant documentary

---

[4] The defendant noted in his motion that he had moved in his California case to compel certain of those materials to be produced.  (*See* Def. Mem. 6 n.1.)  That motion has since been denied.  (*See* Ruling on Defendant's Motion to Compel, *United States v. Avenatti*, No. 19 Cr. 61 (JVS) (C.D. Cal. Aug. 26, 2019), Dkt. No. 63.)

evidence, consisting primarily of written communications and financial records, was gathered in this District and has already been produced to the defendant in electronic form.  Moreover, even if the defendant later obtains materials from a California source that he wished to use at trial, modern technology and transportation would not prejudice such use.[5]  Under these circumstances, the location of relevant documents and records does not counsel in favor of transferring this case from the district in which it was brought.  Indeed, given that, as noted above, the physical documents relied upon by the Government in charging the case were gathered and are maintained in Manhattan (such that a transfer of venue would require the Government to transport them to California), this factor weighs against transfer.

### E.       Disruption of Defendant's Business Unless Case Is Transferred

The fifth *Platt* factor, disruption of a defendant's business, does not favor transfer.  The Government understands that the defendant presently is licensed to practice law in California,[6] and he claims, without providing the identities or descriptions of clients or cases, to represent "several clients in civil matters within the Central District of California."  (Def. Mem. 7.)  The defendant complains that he will be "unable to attend hearings and meet with his California clients" during his trial if it is held in this District.

---

[5] To date, the defendant has not produced any materials to the Government in this case pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure.

[6] On June 3, 2019, the State Bar of California filed a petition to place the defendant on involuntary inactive status.  *See* State Bar of California Files to Place Attorney Michael J. Avenatti on Involuntary Inactive Status, *The State Bar of California*, Jun. 3, 2019, http://www.calbar.ca.gov/About-Us/News-Events/News-Releases/state-bar-of-california-files-to-place-attorney-michael-j-avenatti-on-involuntary-inactive-status.  To date, the petition remains pending, and a hearing is scheduled for October 15 and 16, 2019.  *See* Attorney Licensee Profile for Michael John Avenatti #206929, *The State Bar of California*, http://members.calbar.ca.gov/fal/Licensee/Detail/206929.

The defendant's failure to provide any actual *facts* indicating how his business would be affected or disrupted means that this factor cannot favor transfer.  *See Brooks*, 2008 WL 2944626, at *2 (factor does not weigh in favor of transfer where defendant has "not supplied the Court with any facts indicating how his business, job, or career would be disrupted by trial in this district"). But even if the defendant were to provide such details, a criminal trial in any venue invariably "imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities," *United States v. United States Steel*, 233 F. Supp. 154, 156 (S.D.N.Y. 1964), and it is unclear why the time spent in New York for a relatively brief trial would be more harmful than trial time spent in California.  "This is particularly true in the age of cell phones, email, and fax machines." *Coriaty*, 2000 WL 1099920, at *3.  This factor does not favor transfer.

### F.      Expense to the Parties

The sixth *Platt* factor, the expense to the parties, does not favor transfer.  The defendant correctly notes that he is defending other criminal allegations in addition to this case, including another case in this District (in which he did not seek a change of venue).  (Def. Mem. 7.)  But the defendant does not make any effort to detail how the expense of defending this or other the other two cases—to the extent that might be relevant—would materially change if this case were transferred.  The defendant can prepare for trial with defense counsel without the need for travel because the defendant's retained attorney for this case is located in California, near the defendant's residence, and the discovery materials produced by the Government were provided electronically. Moreover, the defendant, who, as noted above, admits to spending much of his time "traveling" (Def. Mem. 7), has not claimed he is unable to afford the costs of transportation or lodging for what the Government expects to be a brief, approximately one-week trial.  *See United States v.*

14

*Canale*, No. 14 Cr. 713 (KBF), 2015 WL 3767147, at *4 (S.D.N.Y. June 17, 2015) ("The 'expense' factor also weighs against transfer: While defendant has represented that it would cost substantially more to defend this case in New York . . ., he has not estimated his projected expenses and has not alleged that he has insufficient funds to cover them."); *United States v. Riley*, 296 F.R.D. 272, 277 (S.D.N.Y. 2014) (expense factor generally afforded serious weight only in cases involving indigent defendants).

Moreover, the defendant's argument ignores entirely the significant expense to the Government of transferring this matter to California. Courts in this District have considered expenses the Government would incur as a result of transfer in deciding venue transfer motions. *See Riley*, 296 F.R.D. at 277; *Brooks*, 2008 WL 2944626, at *3; *Spy Factory*, 951 F. Supp. at 459. Numerous witnesses, including at least two witnesses from Victim-1's literary agency and two witnesses from Victim-1's publisher, who are all based in Manhattan, as well as the prosecution team, would be forced to relocate to California for the duration of the trial. Specifically, the Government would have to relocate several Assistant United States Attorneys and paralegals, and multiple law enforcement agents who investigated this case in the New York area. *See Canale*, 2015 WL 3767147, at *4 (denying transfer where it "would require the Government to transport and house two prosecutors, as well as a paralegal and several case agents"); *Ebbers*, 2004 WL 2346154, at *2 ("It would impose an enormous burden on the government to move the prosecutors, investigators, support staff, court staff, and others familiar with this case . . . to another jurisdiction"); *United States v. Carey*, 152 F. Supp. 2d 415, 422 (S.D.N.Y. 2001) (denying transfer where, *inter alia*, the effect would be "merely to shift the economic burden to the government").

15

This factor weighs against transfer.[7]

### G.   Location of Counsel

The seventh *Platt* factor, the location of counsel, does not favor transfer.  Several weeks after the defendant was charged in this case, and already had previewed for this Court a potential motion to transfer this case to the Central District of California, the defendant made the strategic decision to retain counsel who was based in that district (instead of in this District).  The location of his counsel, to the extent it is inconvenient for the defendant, is an inconvenience occasioned solely by the defendant through his choice of counsel.  However, because the defendant and his counsel are located in the same area, there will be no inconvenience to either in working together to prepare for trial.  The only potential inconvenience would be their appearance for the relatively brief trial in New York, which hardly is an undue burden.

The defendant's interest in a more convenient venue for his counsel "must be balanced against numerous countervailing considerations," including that "a change of venue would burden the Government, whose attorneys are based in New York."  *Pastore*, 2018 WL 395490, at *5. Accordingly, this factor does not weigh in favor of transfer.

### H.   Relative Accessibility of Place of Trial

The eighth *Platt* factor, the relative accessibility of place of trial, does not favor transfer. The defendant conflates this factor with the second and sixth *Platt* factors, claiming—without providing any details or specifics—that "[m]ost of the witnesses are located in California" and that

---

[7] As noted above and discussed further below, to the extent the defendant argues that transfer would result in prosecutors in the Central District of California trying this case in one consolidated proceeding, that argument is simply wrong.

they will suffer the burden of "travel time" and costs of transportation and lodging in the trial of this case is held in New York.  (Def. Mem. 8.)  The defendant again fails to identify any actual witnesses and "provides no documentation in support of these bald assertions" about "the costs of transportation and lodging." *Coriaty*, 2000 WL 1099920, at *3.  His arguments fail to address this factor, and are otherwise without merit.

It is not reasonably subject to dispute that Manhattan is one of the most accessible locations in the United States.  *See United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *17 (S.D.N.Y. Dec. 11, 2017) (denying transfer because, *inter alia*, "New York City is clearly an accessible transportation hub"); *Christian*, 2012 WL 1134035, at *2 (denying transfer because, *inter alia*, "New York is easily accessible by air with three major airports, as well as a variety of other public transportation").  Accordingly, to the extent that any witnesses are required to travel from outside of New York to testify, the inconvenience will be minimal.  This factor does not favor transfer.

## I.       Docket Conditions of the District Courts Involved

The ninth *Platt* factor, the docket conditions of the district courts involved, weighs against transfer.  For the 12-month period ending on June 30, 2019, when compared to the Central District of California, this District had fewer total actions filed per judgeship, fewer weighted actions filed per judgeship,[8] and more trials completed per judgeship:

- 539 actions per judgeship were filed in this District and 645 actions per

---

[8] "Weighted filings statistics account for the different amounts of time district judges require to resolve various types of civil and criminal actions." *Explanation of Selected Terms*, Federal Judicial Center, https://www.uscourts.gov/sites/default/files/explanation-of-selected-terms-september-2014_0.pdf.

> judgeship were filed in the Central District of California (this District had both
> fewer civil and criminal filings per judgeship)

- 587 weighted actions per judgeship were filed in this District and 669 weighted
  actions per judgeship were filed in the Central District of California

- 16 trials completed per judgeship in this District and 12 trials completed per
  judgeship in the Central District of California

*See    Judicial    Caseload    Profile*,    Federal    Judicial    Center,    Jun.    30,    2019,

https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2019.pdf.

The defendant does not argue that the docket conditions in this District are worse than those

in the Central District of California.  (Def. Mem. 8.)  Instead, in purporting to address this factor,

he claims that the criminal case pending against the defendant in the Central District of California

involves "virtually identical alleged conduct."  (Def. Mem. 8; *see also* Def. Mem. 9-10.)  However,

as noted below, that argument is both factually wrong and legally irrelevant.  Indeed, the defendant

does not even attempt to offer any legal authority for the notion that his indictment on charges that

he argues bear factual similarity to the charges here justifies transfer.  In short, the defendant's

assertion that a particular judge in California could also preside over the trial in this case does not

support his claim that docket conditions justify transfer.

### J.    Other Elements

Recognizing that there is no persuasive basis for transfer under the traditional *Platt* factors,

the defendant instead devotes much of his briefing to arguing that because this case is, in his view,

similar to the case pending against him in the Central District of California, this case should be

transferred to that District so that, according to the defendant, it can be consolidated into one bigger

criminal prosecution.  The argument is doubly misplaced.

As an initial matter, this case is *not* a part of or the same as the case pending in California. While both cases superficially involve certain similarities—namely allegations that the defendant in some fashion defrauded a former client—Victim-1 is not a victim of any of the charges in the California case, and the Government does not presently anticipate any overlap in trial witnesses or evidence between this case and the California Prosecution.  Different law enforcement agencies and different prosecutors separately conducted the investigations that led to the two sets of charges. And unlike this case, the California Prosecution *does* focus on conduct centered around California.

This case also is different in structure and scope.  This case is a straightforward fraud case involving one victim, and a relatively narrow course of conduct that lasted for approximately eight months.  The California case, by contrast, was brought as a 36-count Indictment alleging a wide array of criminal conduct, including, but not limited to, tax, bank fraud, obstruction, and false statements offenses, and encompasses a wide-ranging course of conduct over a five-year period that victimized five of his former clients (all of whom reside in the Central District of California). (*See* Def. Ex. 1 at 21; Indictment, *United States v. Avenatti*, 19 Cr. 61 (JVS) (C.D. Cal. Apr. 10, 2019), Dkt. No. 16.)  The defendant has estimated that the trial in the California case will take six weeks (*see* Def. Ex. 1 at 22), while the Government expects this case to be tried in approximately one week.

Second, and related, there is no reason to believe that a transfer of this case to the Central District of California would, as the defendant asserts, "result in a single trial, with one judge, and one set of prosecutors."  (Def. Mem. 1.)  Transfer of this case to another district would accomplish no more than cause a trial of this case by this prosecution team in California—an outcome that,

discussed above, would not be in the interests of justice or any anyone aside from the defendant himself.  In asserting the contrary, the defendant attempts to rely upon a lone statement by the prosecutors in California in a joint scheduling letter submitted regarding the scheduling of a trial date in that case.  In the scheduling letter, the California prosecutors simply noted that if this motion were granted and this case were transferred, such a transfer should not impact scheduling of a trial in the California case because "*the government* would be prepared to try the charges pending in the SDNY Fraud Case either in a consolidated proceeding with the current charges or immediately after the trial in this case."  (Def. Ex. 1. at 21.)  Critically, that letter did not purport to commit—nor could it have—this Office or, more importantly, the district judge presiding over the California case to consolidate the two cases, something that, at a minimum, would impose substantial burdens on the California court and on the Government because, among the other reasons outlined above, "[i]f this action were transferred, the Government's attorneys would be forced to either travel to [California], or transfer their case to colleagues who are wholly unfamiliar with it and who played no role in its investigation."  *Pastore*, 2018 WL 395490, at *5.

The defendant's reliance on *United States v. Gotti*, 593 F. Supp. 2d 1260 (M.D. Fla. 2008), is misplaced.  In that case, the Government had tried the defendant in New York three times on charges brought under the Racketeer Influenced and Corrupt Organization Act ("RICO"), and each trial ended without a verdict.  *Id*. at 1264.  That defendant subsequently was charged in Florida with what the Court found was "precisely the same crime" as that charged in New York.  *Id*. at 1263.  The Court held that because, among other reasons, the cases overlapped completely and it appeared the Government was attempting "forum shop[]" by moving its prosecution from New York to Florida after several failures to convict at trial, transfer to New York was appropriate.  *Id*.

20

at 1268, 1270-71.

This case is nothing like *Gotti*.  As explained above, the Government has not charged the same crime twice.  There is no overlap between the allegations in this case and the allegations in the California case.  The Government brought each case where the primary events occurred and where the investigations of those events took place.  The Government has made no kind of strategic effort to avoid bringing charges in the Central District of California; to the contrary, a number of charges against the defendant are pending in that district.  Indeed, the analysis in *Gotti* is telling: there the case was transferred to New York because the "bulk" of the witnesses were located in and events occurred in New York.  *Id.* at 1269.  So too here.  Simply put, Victim-1 reported the defendant's crime to the United States Attorney's Office for the Southern District of New York, that Office investigated the crime in in partnership with law enforcement agents based in New York, and the case was presented to a grand jury sitting in this District.  The protracted and complex procedural history in *Gotti* has no relevance or similarity to this case, and provides no reason to grant transfer.

Finally, the defendant asserts, again without factual or legal basis, that he "has drawn the wrath of the Executive Branch and is receiving special negative treatment."  (Def. Mem. 10.)  To the contrary, as is clear from the charging instruments in each of the cases currently pending against him, the defendant engaged in multiple criminal schemes, and the victims of those schemes reported his crimes to law enforcement.  The defendant was thereafter charged in the district to which those offenses were reported, and the defendant may not now use the fact that he engaged in multiple, distinct crimes targeting different victims in different parts of the country as a vehicle to forum shop.

* * *

In sum, the defendant has failed to overcome the presumption against transfer of venue and to satisfy his burden to prove that the circumstances of his case warrant a transfer to the Central District of California in the interest of justice.  The case was brought in this District.  The trial in this case will be short and will involve minimal disruption to the defendant.  By contrast, a transfer would result in significant Government expense and inconvenience the Government's anticipated trial witnesses.  For these reasons, the Court should follow the general rule that cases should remain in the district in which they were indicted and deny the defendant's motion.

## III.   CONCLUSION

For the reasons set forth above, the defendant's motion should be denied.

Dated:  New York, New York
         September 11, 2019

                                       Respectfully submitted,

                                       GEOFFREY S. BERMAN
                                       United States Attorney
                                       for the Southern District of New York

                         By:   _____
                                       Matthew Podolsky
                                       Robert B. Sobelman
                                       Assistant United States Attorneys
                                       Tel.: (212) 637-1947/2616

22