```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
United States of America,

                                          19 Cr. 374 (DAB)
                                          MEMORANDUM & ORDER
        v.


Michael Avenatti,

                Defendant.
------------------------------------X
```
DEBORAH A. BATTS, United States District Judge.

Defendant Michael Avenatti ("Defendant") is charged in a two-count Indictment with wire fraud and aggravated identity theft. Defendant now moves to transfer this prosecution to the Central District of California pursuant to Fed. R. Crim. P. 21(b). For the reasons discussed below, Defendant's Motion to Transfer is DENIED.

I. Relevant Background

A. Indictment

On May 22, 2019, the Government filed an Indictment charging Defendant with one count of wire fraud and one count of aggravated identity theft in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1028A (the "Indictment"). (Indictment, ECF No. 1.) The Indictment charges Defendant with a scheme to defraud one of his clients at that time (the "Client") of approximately $300,000.00. (Indictment ¶¶ 1-2.) Defendant is an attorney licensed to practice in the state of California, where he resides. (Id. ¶ 3.) In April 2018,

Defendant and a literary agent based in Manhattan, New York (the "Agent") assisted the Client in securing a book contract with a publisher based in Manhattan, New York. (the "Publisher"). (Id. ¶¶ 5-7.)

Pursuant to the book contract, the Client was to receive four installment payments as part of the book advance. (Id. ¶ 7.) On August 1, 2018, prior to the Agent wiring the second of these four installment payments, Defendant sent a letter, by email, to the Agent purportedly signed by the Client, that instructed the Agent to send all future payments to a client trust account in the Client's name and controlled by Defendant. (Id. ¶ 15.) The Agent allegedly received this letter in Manhattan. (See Government's Mem. ("Govt.'s Mem.") 2, ECF No. 20.) The Client was not aware of and did not authorize or sign this letter. (Indictment ¶ 15.)

Pursuant to the instructions in the letter, the Agent initiated a wire transfer from Manhattan of $148,750.00 to the account controlled by Defendant, which Defendant promptly began spending for his own personal and business uses. (Id. ¶¶ 16-17.) When the Client asked Defendant why the second installment had not been received, Defendant allegedly lied to the Client, telling the Client that he was still attempting to obtain the payment from the Client's publisher. (Id. ¶¶ 19-20.) Approximately one month after diverting the payment, Defendant allegedly used funds recently received from another source to pay $148,750.00 to the Client, so

that the Client would not realize that Defendant had previously taken and used the Client's money. (Id. ¶ 21.)

On September 17, 2018, pursuant to Defendant's earlier fraudulent instructions, the Agent wired another payment of $148,750.00 to the client account controlled by Defendant. (Id. ¶ 22.) This third installment of the Client's book advance was allegedly sent from Manhattan. (See Govt.'s Mem. 3.) The Defendant promptly began spending the money for his own personal and business uses. (Indictment ¶ 23.) To conceal his scheme, Defendant allegedly led the Client to believe that the Publisher was refusing to make the payment to the Agent, even though he knew that the Publisher had made the payment to the Agent, who had then sent the money to Defendant pursuant to Defendant's fraudulent instructions. (Id. ¶¶ 24-25.)

On May 22, 2019, the Government filed the operative Indictment. On August 29, 2019, Defendant moved this Court for an Order transferring this prosecution to the Central District of California. (Def.'s Mot. to Transfer, ECF No. 19.)  On September 11, 2019, the Government filed its opposition to Defendant's Motion to Transfer. (Govt.'s Mem., ECF No. 20.)

B. The California Prosecution

Defendant was also indicted in another criminal prosecution currently pending in the Central District of California, see United

States v. Avenatti, 19 Cr. 61 (JVS) (the "California Prosecution"). In the California Prosecution, Defendant has been charged with 10 counts of wire fraud, 19 tax-related offenses, two counts of bank fraud, four counts of bankruptcy fraud, and one count of aggravated identity theft. (See Govt.'s Mem. 4; California Indictment ("CA Indict."), United States v. Avenatti, 19 Cr. 61 (JVS) (C.D. Cal. Apr. 10, 2019), ECF No. 16.) The California Prosecution involves a wide-ranging course of conduct centered in California over a course of five years. (see generally CA Indict.) The Indictment in the California prosecution alleges that Defendant "embezzled millions of dollars that should have been paid to clients, failed to file income tax returns and failed to pay the Internal Revenue Service ('IRS') millions of dollars in taxes, submitted fraudulent loan applications that included tax returns never filed with the IRS, and concealed assets from the Bankruptcy Court." (Govt.'s Mem. 4.) The five victims in the California Prosecution's case resided within the Central District of California during the events at issue. (Id.)

II.  **DISCUSSION**

Federal Rule of Criminal Procedure 21(b) provides that "[f]or the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant . . . to another district."  This

4

rule vests broad discretion in the trial judge to determine whether the interests of justice dictate a transfer. United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990), cert. denied, 501 U.S. 1211 (1991).  The "burden is on the moving defendant to justify a transfer under Rule 21(b)." United States v. The Spy Factory, Inc., 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (citing United States v. Aronoff, 463 F. Supp. 454, 456 (S.D.N.Y. 1978).

The Supreme Court approved a set of criteria to be employed in deciding whether to transfer a prosecution in the interests of justice: (1) location of the defendant; (2) location of possible witnesses; (3) location of the events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of the defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; (9) docket conditions; and (10) any other special factors. See Platt v. Minnesota Mining Co., 376 U.S. 240, 244 (1964). An examination of each of the Platt factors makes clear that this prosecution should not be transferred.

1. Location of the Defendant

Courts recognize that, "it can be a hardship for a defendant to face a trial far away from home and from appropriate facilities for defense. . . . It has been stated, therefore, that as a matter of policy, a defendant should ordinarily be tried, whenever

possible, where he resides." Aronoff, 463 F. Supp. at 457 (citations and internal quotations omitted); see also Spy Factory, 951 F. Supp. at 455-56 (collecting cases). However, it is also well-established that "the inconvenience of having to stand trial outside of one's home district, without more, is insufficient to warrant a transfer." United States v. Coriaty, No. 99 Cr. 1251, 2000 U.S. Dist. LEXIS 11040, at *5-6 (S.D.N.Y. Aug. 7, 2000) (internal quotation marks and citations omitted).

Defendant baldly asserts that the inconvenience of having to stand trial in this District rather than in California, where he resides, weighs "heavily" in favor of transfer. It does not. He does not claim that he is unable to afford the expenses of defending his case in this District. Defendant is also defending other criminal allegations in addition to this case, including another case in this District in which he did not seek a change of venue. See United States v. Avenatti, 19 Cr. 373 (PGG). Traveling to New York for the trial[1] in this case is not that much more disruptive to Defendant when he is already traveling to New York to defend these other criminal allegations in this District.[2] Thus,

---

[1] The Government estimates its case-in-chief to be one week. (See Govt.'s Mem. 19.) This does not take into account the Defense case or rebuttal case.

[2] The Government is incorrect in arguing that Defendant admits to spending much of his time "traveling." (See Govt.'s Mem. 7). Defendant argues that conducting business would be burdensome if he had to travel to New York to defend the charges in this case. (See Def.'s Mem. 7.) While Defendant's argument does not persuade this Court to grant transfer for the reasons explained in this Memorandum and Order, the Government misconstrues Defendant as "admitting" to

while Defendant's residence favors, however slightly, transfer to the Central District of California, a trial in this case in New York is not so disruptive as to warrant transfer to the location where Defendant resides.

   2. Location of Witnesses

   The second Platt factor, the location of witnesses, disfavors transfer as well. The Government anticipates calling at least two witnesses central to Defendant's conduct at issue – the Agent and the Publisher who are both based in Manhattan.[3] Defendant argues that the "vast majority" of the witnesses in this case reside in California because the fraud proceeds were given to various California residents and businesses. (Def.'s Mem. 5.) However, he incorrectly characterizes the conduct at issue as his receipt and spending of the fraud proceeds. Rather, Defendant's conduct at issue is how he carried out his fraudulent scheme through email, letter, and other communications with the Client, the Agent, and the Publisher. Thus, the witnesses to this scheme, who are based in Manhattan, rather than the witnesses to the receipt and spending of the fraud proceeds will proffer the core testimony at trial.

---

spending most of his time travelling outside of defending the criminal charges in this District.

[3] The Government also indicates that it may call witnesses at trial who reside in California but has not yet decided to do so. (Govt.'s Mem. 8 n. 1.) However, because the Government is prepared to accommodate those witnesses and assume the cost of their travel and incidental expenses in connection with this trial, (see id. at n. 2.), the purported witnesses' burden of travelling to this District to offer testimony is substantially diminished. Thus, these unnamed witnesses do not weigh in favor transfer.

Moreover, the receipt and spending of the fraud proceeds can be shown through documentary evidence, including bank records. To the extent the Government offers evidence regarding the manner in which Defendant spent the fraud proceeds, it would only need to call a custodian of records to offer this documentary evidence at trial.

Finally, Defendant argues that he intends to call unnamed character witnesses at trial who reside in California. He does not explain how many character witnesses he will call or how they will be unable to testify because of the location of the trial. See Spy Factory, 951 F. Supp. at 456 ("[A] naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer. Defendants must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial." (citations and alterations omitted)). Consequently, transfer is unwarranted based on the mere possibility that unnamed, purported character witnesses will be unable to testify because of the location of the trial.

3. Location of Events at Issue

The third Platt factor, the location of the events likely to be in issue, strongly disfavors transfer. Defendant's conduct at issue - his scheme to defraud through email, letter, and other communications with the Client, the Agent, and the Publisher - occurred primarily in Manhattan. The Client entered into a book deal with a Manhattan-based publisher. Defendant allegedly made

false representations, in a fraudulent letter, to the Agent, which the Agent received in Manhattan. Pursuant to Defendant's fraudulent instructions, the Agent and the Publisher, both based in Manhattan, sent money to Defendant via wire transfer from Manhattan. Even though Defendant later diverted fraud proceeds to bank accounts held in California-based banks, the bulk of the alleged crime occurred in Manhattan. Once again, the manner in which the fraud proceeds were spent and to whom they were disbursed are not the Government's principal allegations. Thus, the location of the events in issue strongly disfavors transfer.

### 4. Location of Documents

The fourth Platt factor, the location of relevant documents, is of little consequence. Modern developments in electronics and computers render documents readily available to a defendant wherever he is located. See United States v. Pastore, 2018 U.S. Dist. LEXIS 5349, *10 (S.D.N.Y. January 11, 2018) ("[T]he location of documents and records is not a major concern in these days of easy and rapid transportation[.]" (quoting United States v. Brooks, No. 08-CR-35 (PKL), 2008 U.S. Dist. LEXIS 58101, 2008 WL 2944626, at *2 (S.D.N.Y. July 31, 2008) and citing United States v. Estrada, 880 F. Supp. 2d 478, 484 (S.D.N.Y. 2012))); Coriaty, 2000 U.S. Dist. LEXIS 11040, at *9 (finding that the location of relevant documents "is not a major concern in these days of rapid transportation" (citing Spy Factory, 951 F. Supp. at 458)).

Here, the Government argues that the relevant documentary evidence consists of written communications and financial records which have already been produced to Defendant in electronic form. (See Govt.'s Mem. 12-13.) Because these electronic documents are readily available and portable, this factor does not weigh for or against transfer.

5. Disruption of Defendant's Business

The fifth Platt factor, disruption of Defendant's business, does not favor either retaining of transferring the action. "While loss of business is a factor favoring transfer, . . . a criminal trial invariably imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities." Coriaty, 2000 U.S. Dist. LEXIS 11040, at *9 (internal quotation marks and citations omitted).

Defendant, who is currently a member of the California State Bar, argues that his practice is primarily based in California, that he represents several clients in civil matters within the Central District of California, and that an extended trial in New York would impair his ability to attend hearings and meet with his California clients. (Def.'s Mem. 7.) On the other hand, he has not identified any specific matters or any scheduled hearings that require his presence in California. Moreover, in the age of cell phones, email, and fax machines, Defendant can communicate with his clients while in New York for this case.

While Defendant's membership in the California bar and his California-based practice do weigh slightly in favor of transfer, that he does not identify any reason to be physically present in California to conduct his business during a trial in New York in this case diminishes the weight of this factor in favor of transfer. Thus, this factor, on balance, is also neutral.

6. <u>Expense to the Parties</u>

The sixth <u>Platt</u> factor, the expense to the parties, weighs against transfer. Defendant argues that he will "incur significant financial expense in defending against multiple criminal allegations in California and New York." (Def.'s Mem. 7.) Defendant has not claimed that he is unable to afford the costs of transportation and lodging for a trial in New York for himself or his counsel, nor is he proceeding as indigent in this prosecution. Therefore, his bald assertion that he will incur significant expenses, without more, does not weigh in favor of transfer. <u>See Aronoff</u>, 463 F. Supp. at 459 (finding that transfer is only appropriate where the defendant "cannot afford to travel to New York and live here" during trial).

Moreover, Defendant ignores the significant costs the Government would incur if it were required to prosecute this action in California. Manhattan-based witnesses central to Defendant's conduct at issue as well as the entire prosecution team – including several Assistant United States Attorneys, paralegals, and

11

multiple law enforcement agents - would be forced to relocate to California for the duration of the trial.[4] This factor thus weighs against transfer.

   7. Location of Counsel

The seventh Platt factor, the location of counsel, weighs against transfer as well. Defendant has retained a California-based lawyer. The Government argues that "[t]he location of his counsel, to the extent it is inconvenient for the defendant, is an inconvenience occasioned solely by the defendant through his choice of counsel." (Govt's Mem. 16.) We agree.[5] Thus, defense counsel's location does not favor transfer.

---

[4] To the extent Defendant argues that relocating the prosecution team would not be necessary because the case may be consolidated and tried together with another pending case against him in California, he is wrong. First, even if this Court granted the instant Motion to Transfer, which we do not, consolidation in the Central District of California is not guaranteed. Moreover, as discussed further in the tenth Platt factor's analysis, this case should not be consolidated as the conduct alleged, the structure, and the scope of both cases do not overlap.

[5] Defendant's legal representation history in this case is unusual. In his first appearance before this Court, he had a Federal Defender but sought to have an attorney based in Florida, who had not filed a notice of appearance, to represent him solely for the purpose of filing this instant Motion. That was denied. Defendant then chose to hire an attorney from California even though the charges relate to alleged crimes committed here. Thus, to move to transfer because his attorney is from California is strikingly similar to a defendant who kills both his parents and then throws himself on the mercy of the Court because he is an orphan.

8. <u>Accessibility of Place of Trial</u>

The eight <u>Platt</u> factor, the accessibility of place of trial, does not favor transfer.  Manhattan is clearly one of the most accessible locations in the United States with three major airports and a variety of other public transportation. Therefore, this factor does not weigh in favor of transfer.[6] <u>See</u> <u>United States v. Percoco</u>, No. 16 Cr. 776, 2017 U.S. Dist. LEXIS 203580, at *46 (S.D.N.Y. Dec. 11, 2017) (denying transfer because, inter alia, "New York City is clearly an accessible transportation hub"); <u>United States v. Christian</u>, 2012 U.S. Dist. LEXIS 48527, at *4-5 (denying transfer because, inter alia, "New York is easily accessible by air with three major airports, as well as a variety of other public transportation").

9. <u>Docket Conditions of the District Courts Involved</u>

By Defendant's own admission, this District has a well-managed docket and the ability to hear this matter. (<u>See</u> Def.'s Mem. 8.) This factor thus does not weigh in favor of transfer.

10.    <u>Special Circumstances</u>

Having failed to carry his burden as to transfer in the first nine <u>Platt</u> factors, Defendant argues that the Indictment in this prosecution is "virtually identical" to "certain counts" in the

---

[6] Defendant incorrectly conflates this <u>Platt</u> factor with the sixth <u>Platt</u> factor, expense to the parties, and does not address the accessibility of place of trial. Nevertheless, we have already explained why the expense to the Parties, on balance, disfavors transfer.

13

Indictment filed in the California Prosecution. His argument fails in numerous ways.

First, transferring this case to the Central District of California does not necessarily "result in a single trial, with one judge, and one set of prosecutors," as Defendant argues. Transferring this case to California even for the purpose of consolidation would require the New York prosecution team to relocate to California until any motion for consolidation is decided; consolidation would not be automatic. For the reasons discussed above, relocating the entire Manhattan-based prosecution team would be unduly burdensome to the Government and would be against the interests of justice. Moreover, Defendant's reliance on the Government's joint scheduling letter in the California Prosecution, (Def. Ex. 1 at 21, ECF No. 19-2), is misplaced. That letter did not commit the California prosecutors or the California Court to consolidating the two cases. Indeed, the California prosecutors only noted that the transfer should have no impact on the trial date in the California Prosecution. (<u>Id.</u>)

Second, this case should not be consolidated with the California Prosecution because the prosecutions are not "virtually identical" as Defendant alleges. Confusingly, he argues that the indictments are only "virtually identical" <u>only</u> as to "certain charges" that allege he defrauded a former client in some fashion and used the alleged fraud proceeds to benefit himself or his

14

businesses.[7] The similarities end there. The fraudulent scheme alleged in this case does not overlap with the schemes alleged in the indictment in the California Prosecution. Indeed, the Government alleges that there is no overlap between trial witnesses or evidence between this case and the California Prosecution. Different law enforcement agencies and different prosecutors separately conducted the investigations that led to the two sets of charges. (See Govt.'s Mem. 19.) Moreover, the California Prosecution focuses on conduct centered around California whereas this prosecution focuses on conduct centered in Manhattan.

Moreover, the structure and scope of the California prosecution differs substantially from the structure and scope of the instant prosecution. This case is a straightforward fraud case involving one victim, concerns a narrow course of conduct that lasted for approximately eight months, and was brought as a two-count Indictment. On the other hand, the California Prosecution involves five victims, concerns a wide array of alleged criminal conduct, including, but not limited to, tax, bank fraud, obstruction, and false statements offenses that lasted over a five-year period, and was brought as a 36-count Indictment.

---

[7] It is not uncommon for an alleged swindler to have used his fraud proceeds to benefit himself or his businesses. Thus, using fraud proceeds for personal and business uses is not a basis for similarity between schemes to defraud. Moreover, as we discussed earlier, how Defendant spent the fraud proceeds is not central to the Government's principal allegations regarding Defendant's conduct at issue in this prosecution.

Therefore, Defendant's appeal to special circumstances, having failed to carry his burden with the traditional, nine Platt factors, fails as well.[8]

After careful consideration of each Platt factor, the Court finds, that, on balance, Defendant has failed to sustain his burden. Only one factor, Defendant's residence weighs slightly in favor of transfer. The remaining named factors are either neutral or weigh against transfer. Moreover, this forum's interest in prosecuting crimes committed, investigated, and charged in this forum outweighs the slight business, travel, and lodging inconveniences for Defendant. Accordingly, Defendant's Motion to Transfer this prosecution to the Central District of California is DENIED.

## III. CONCLUSION

For the reasons stated above, Defendant Avenatti's Motion to Transfer is DENIED.

---

[8] Defendant's reliance on United States v. Gotti, 593 F. Supp. 2d 1260 (M.D. Fla. 2008), is inapposite. The same crime has not been charged more than once in New York, and again in a different District as it was in Gotti. By Defendant's own admission, the Government has not tried the same case twice because the cases bear superficial similarities only as to "certain charges." Moreover, as we discussed above, the indictments have no overlap as to the conduct at issue as it did in Gotti where the "New York indictments encompass[ed] every act alleged in the Florida indictment." Id. at 1264. The Client is not even a victim in the California Prosecution. Indeed, Defendant does not allege that the Government made any strategic effort to avoid bringing charges in the Central District of California but rather, baldly asserts that he is "a high-profile figure who has drawn the wrath of the Executive Branch and is receiving special negative treatment." (Def.'s Mem. 14.) The Court therefore sees no reason to grant transfer based on Defendant's reliance on Gotti.

A status conference is hereby set for Tuesday, October 8, 2019 at 2:30 PM, at which time counsel shall detail any substantive motions that need to be made.

The Court concludes that, pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(A), the interest of justice is served by exclusion of time between the dates of this Memorandum and Order and October 8, 2019, and outweighs the best interests of the Defendant and the public in a speedy trial.

SO ORDERED.

Dated:   September 24, 2019
         New York, New York

*Deborah A. Batts*
Deborah A. Batts
United States District Judge