K2P8AVEC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

         v.                          19 Cr. 374 (JMF)

MICHAEL AVENATTI,

            Defendant.

------------------------------x
                          New York, N.Y.
                          February 25, 2020
                          2:30 p.m.

Before:

                HON. JESSE M. FURMAN,

                          District Judge

                  APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  MATTHEW D. PODOLSKY
     ROBERT B. SOBELMAN
     Assistant United States Attorneys

PIERCE BAINBRIDGE BECK PRICE & HECHT LLP
     Attorneys for Defendant
BY:  THOMAS D. WARREN
     DANIEL DUBIN

Also present:  DELESSA PENLAND, Special Agent, USAO

K2P8AVEC

1           (Case called)

2           THE DEPUTY CLERK:  Counsel, please state your name for

3    the record.

4           MR. PODOLSKY:  Good afternoon, your Honor.  Matthew

5    Podolsky and Robert Sobelman for the government.  And with us

6    at counsel table is Special Agent Delessa Penland of the United

7    States Attorney's Office.

8           THE COURT:  Good afternoon.

9           MR. WARREN:  Good afternoon, your Honor.  Tom Warren

10   and Daniel Dubin of Pierce Bainbridge.

11          THE COURT:  Good afternoon to you as well.

12          All right.  Welcome.  For those of you who don't know

13   me, I am Jesse Furman, a United States district judge here in

14   the Southern District of New York.  This case has been

15   reassigned to me due to the untimely and very sad death of my

16   colleague, Judge Batts.

17          A couple of things I want to go over today, including

18   just figuring out the trial situation, but the first order of

19   business is just sorting out the counsel situation.  I noticed

20   in recent days that Mr. Steward filed a motion to withdraw and

21   there was a notice of appearance filed by a Ms. Miro, neither

22   of them are present today.  So I am trying to figure out

23   precisely who is representing the defendant and what the plans

24   are on that front.

25          MR. WARREN:  Mr. Dubin and I have neither filed a

K2P8AVEC

1    motion to withdraw nor a notice to appear.  So we are counsel

2    of record, and another of our colleagues is likely to join us,

3    and we may have additional counsel as well, but at this point

4    we are counsel of record and intend to proceed.

5            THE COURT:  All right.  In light of that, I guess I

6    don't see any reason not to grant the motion to withdraw.

7    Obviously, I wouldn't want to do that if it would affect the

8    trial schedule, but you're telling me that you are on the case,

9    and that won't be changed I take it.

10           MR. WARREN:  That's correct, your Honor.  And we have

11   no objection to Mr. Steward's withdrawal.

12           THE COURT:  What about Ms. Miro, what is her role?

13           MR. WARREN:  My understanding is she is going to

14   remain on the case, and we have no objection, obviously, to her

15   joining the team.

16           THE COURT:  But she is not here today?

17           MR. WARREN:  That is correct, your Honor.

18           THE COURT:  All right.  Very good.

19           So I will grant the motion to withdraw.  I think that

20   Ms. Miro's notice of appearance was rejected by the clerk's

21   office.  So you may want to just make sure that she refiles

22   that to ensure that that is properly attended to.

23           MR. WARREN:  Yes, your Honor.

24           THE COURT:  Let's talk about the trial date.  At

25   present it is set for April 21st.  I know that Mr. Avenatti has

K2P8AVEC

1   another trial set in California, I think for some time in May,

2   if I am not mistaken.  So I take it that that April 21st date,

3   as far as you all are concerned, is fairly inflexible.  Is that

4   a fair assumption?

5              MR. WARREN:  Give or take a week or two, yes.  We

6   intend to go forward as quickly as possible.

7              THE COURT:  Is it the case that you would expect that

8   this case is going to trial at this stage?  I don't know if

9   recent events have affected the defendant's view.

10             MR. WARREN:  Yes, your Honor.  At this stage, we

11  believe the case is going to trial.

12             THE COURT:  Mr. Podolsky, anything on either of those

13  fronts that you want to share?

14             MR. PODOLSKY:  Well, with respect to the trial date,

15  we are prepared to proceed as scheduled on April 21st.  We

16  don't see any reason to change the trial date at this point,

17  provided that date is convenient for your Honor.

18             With respect to whether the trial will proceed, we are

19  certainly intending to proceed to trial that day.  Of course,

20  there have been recent events and if anything changes on that

21  front, we will notify the Court immediately, but we have been

22  in touch with defense counsel and at this stage we do

23  think -- we are beginning to prepare for trial, we will put it

24  that way.

25             The one small request I would make with respect to the

K2P8AVEC

trial date, Judge Batts set it to start, I believe, on a

Tuesday.  We think it may be beneficial to start on a Monday,

given our experience with jury selection in the defendant's

last case, just to ensure we have a sufficient venire and can

get through jury selection expeditiously.  So it may make sense

simply to move the trial to the 20th, I believe, instead of the

21st, but we are certainly prepared to begin whenever is

convenient to the Court.

THE COURT:  And based on the transcripts that I have

reviewed in the proceedings before Judge Batts, the government

had estimated its case in chief would be about a week, and any

defense case, if there were one, would be up to a week as well.

I will confess that, having read the indictment, those

estimates seem a little long to me, that is to say, I would

think that this case can and should be tried more quickly than

that, but what is your latest assessment on that front?

MR. PODOLSKY:  Your Honor, in the ordinary course, I

would absolutely agree with you.  I will say, just based on our

recent trial against the same defendant, this may be an

entirely different case.  We are before a new judge so I don't

want to put too much weight on that.  But I will say that

cross-examinations were quite lengthy in that case, and if that

translates to this case, I could see the government's case

certainly being a week, or even a week and a half.  But from

our perspective, a typical case dealing with this subject

K2P8AVEC

1    matter, I agree, your Honor, I think a week would be more than

2    sufficient.

3          The last thing I would note on that, it doesn't go

4    directly to the government's case in chief, but just to return

5    to jury selection for a moment, it did take about three days to

6    select a jury in our last trial.  We used a jury questionnaire,

7    and I am not sure what your Honor intends to do with respect to

8    that, but I just put that forward as we are thinking about

9    scheduling.

10          THE COURT:  I will have more to say on that in a

11    moment.

12          Defense counsel on the trial point?

13          MR. WARREN:  In terms of starting on Monday versus

14    Tuesday, we are obviously fine with starting on the 20th as

15    opposed to the 21st.

16          I would note that Mr. Avenatti has just recently been

17    transferred out of the SHU into Gen-Pop, and for 30 days we had

18    almost no access to him whatsoever.  So as we begin to prepare

19    for trial, we may come back to the Court and ask the Court's

20    dispensation for another week or two, but at this point we

21    wouldn't want to indulge the Court in that respect and

22    certainly wouldn't be more than a week or two.

23          THE COURT:  Let me say a couple of things.

24          First of all, when I set a trial date, it is pretty

25    much a firm date, that is to say, you should assume it is a

K2P8AVEC

1    firm date.  So I am not going to budget by a week or even two.

2         I am also concerned, if Mr. Avenatti has a trial

3    date -- correct me if I am wrong, I feel like I read somewhere

4    that the trial date in California is late May -- I would think

5    that adjourning it a week or two would potentially encroach on

6    that, and I would not want to do that to my colleague out in

7    California.

8         MR. WARREN:  We obviously don't want to bump up

9    against that trial date either, your Honor.

10        THE COURT:  I actually have another criminal trial

11   scheduled to start on April 21st, but it's with a defendant who

12   is not in custody, and for that reason I am inclined to

13   prioritize this one.  So I am going to stick with the trial

14   date that Judge Batts set.

15        We will revisit the Monday versus Tuesday issue in a

16   moment because my plans with respect to jury selection and a

17   jury questionnaire, I do have some thoughts on that that I will

18   share in a moment and that may have some bearing on how we

19   proceed on that front.

20        I will review the trial schedule in more detail at the

21   final pretrial conference, but you should all be aware, if

22   you're not already, that I generally sit for a truncated trial

23   day, that is, follow the practice of some judges in this

24   courthouse in sitting, after jury selection, from approximately

25   9 in the morning, or really promptly at 9 in the morning, until

1   2:30 in the afternoon, with one and only one half-hour break in

2   the middle of the day.  Again, that doesn't start until after

3   jury selection, but that is my practice thereafter so you

4   should be aware of that.  And I do sit all five days of the

5   week.

6          Now, let's talk about pretrial deadlines and

7   procedures.  My practices are a little bit different than Judge

8   Batts' were, and in that regard, I would ask you to make sure

9   that you look at my individual rules and practices for criminal

10  cases and for trials, both of which are available on the

11  court's website.

12         I will be revising the pretrial deadlines a little

13  bit, and unlike Judge Batts, I do have both sides submit

14  requests to charge and proposed voir dire, etc. simultaneously.

15  So I will be setting those deadlines and procedures anew.

16         I do want to start with the question of jury selection

17  and a jury questionnaire though.  I know that the defendant had

18  previously filed a motion for a jury questionnaire, which was

19  then withdrawn based, as I understand it, on discussions with

20  the government that the matter could be addressed more closely

21  to trial.  Having said that, I am inclined to address it now

22  because we are approaching trial.

23         In general, I am not a huge fan of jury questionnaires

24  because I think they can cause delay, but I think given the

25  identities and histories of the defendant and the victim in

K2P8AVEC

1    this case, I do think that this is an appropriate case for a

2    jury questionnaire and will probably serve to make jury

3    selection more efficient and fair.  I don't know if either of

4    you disagrees or if you agree with that.

5              Mr. Podolsky.

6              MR. PODOLSKY:  Your Honor, we are inclined to follow

7    whatever procedure the Court prefers.  We did use one in the

8    last trial.  It seemed to provide some advantages

9    efficiency-wise.  And we would be happy to confer with the

10   defense as to a proposed questionnaire, if your Honor is

11   inclined to use one.

12             MR. WARREN:  Yes, your Honor.  Given the nature of the

13   defendant in this case, we believe a questionnaire is

14   appropriate, as it was in the prior trial.

15             THE COURT:  All right.  So we will use a

16   questionnaire.  What I will ask you to do is to confer with one

17   another in an effort to reach agreement on a proposal.  I want

18   to do this sooner rather than later, so by March 13 you should

19   submit either an agreed upon questionnaire, or to the extent

20   that you disagree over anything, you can submit competing

21   proposals.  I want a redline from the government indicating

22   what the differences are between the two, and simultaneously

23   you should file or submit by e-mail to chambers Word versions

24   of your expected proposals just so we have those as well.

25             Now, in my view, the questionnaire, and I did look at

K2P8AVEC

1    the one that Judge Gardephe used, I would propose potentially

2    to go a little bit beyond what he did to make jury selection

3    run more smoothly in my view.

4         First of all, I would propose to include background

5    questions with respect to the jurors -- occupation, what they

6    like to read, where they get their news -- those sorts of

7    questions that I would ordinarily ask in jury selections,

8    because I think if you have them in advance, we don't need to

9    go through them individually.

10        Second, hardship questions.  I don't expect this to be

11    a particularly long trial, but we may as well ask those

12    questions.  And then ask, most importantly, questions about

13    knowledge or opinions of the defendant, the victim, and the

14    case generally.

15        I haven't used a questionnaire in a criminal case as a

16    judge, but I did use questionnaires in the trials that I have

17    done in the *General Motors Ignition Switch Litigation*, so you

18    may want to look at the questionnaire that I used in that case.

19    One example is -- and this is in docket 14 MD 2543 -- if you

20    look at docket number 4116, I docketed one of the

21    questionnaires that I used in that case, and that may be

22    helpful to you as a template as you discuss and submit your

23    proposals.

24        If it would be helpful to you, I am sure that

25    somewhere on our network we have a Word version of that

K2P8AVEC

1    questionnaire.  So if you want to get in touch with my staff, I

2    am sure we can provide that to you if that would be helpful as

3    you develop your own proposals, but again, docket number 4116

4    in 14 MD 2543.

5         By the same date, I don't know what happened in Mr.

6    Avenatti's last trial on this front, but I do want to give some

7    thought to whether or to what extent the questionnaires would

8    be made public or available to the press, in the event that

9    there was interest in that.  So what I am going to ask you to

10   do is by that same deadline -- namely, March 13 -- I would like

11   both sides to submit a letter brief addressing that issue,

12   namely, whether and to what extent and when the completed

13   questionnaires would be made available to the press.  I have no

14   problem and do intend to make the blank questionnaire available

15   publicly.  I don't see any reason not to do that.  But my

16   question is whether the prospective jurors' answers should be

17   made available.  Again, I think there is a timing question and

18   an extent to which it should be made available.

19        More broadly, I would ask you to address your views on

20   the procedures to be used in connection with jury selection

21   vis-a-vis press and public access.  Again, I don't know what

22   happened before Judge Gardephe, but you can give me your

23   thoughts with respect to the procedures we should follow on

24   that score.  Obviously, with respect to sidebars and the like,

25   I would be curious to get your thoughts and give those some

K2P8AVEC

1    thought in advance.

2         I would in that regard draw your attention, there are

3    at least a few cases that I have found that discuss those

4    issues:  *United States v. King*, the Don King case, that's 140

5    F.3d 76; *ABC, Inc. v. Stewart*, the Martha Stewart case, 360

6    F.3d 90; *United States v. Pirk*, 284 F.Supp.3d 445; *United*

7    *States v. Loera*, the El Chapo case, 2018 WL 5624143; *United*

8    *States v. Shkreli*, 260 F.Supp.3d 257; and the *Joseph Bruno*

9    case, 700 F.Supp.2d 175.

10        So you may want to look at those cases.  And I would

11   invite any responses to your submissions, in the event that

12   there are members of the press, for instance, who wish to be

13   heard on this, within a week of your submission.  So by March

14   20th so that I can give that some thought as to how to approach

15   those issues here.

16        Any questions on that front?

17        MR. PODOLSKY:  No, your Honor.

18        MR. WARREN:  No, your Honor.

19        THE COURT:  Great.

20        I should say, beyond that invitation for submissions

21   from members of the public, or press for that matter, in

22   general, press inquiries, just for those who are present here

23   who read this transcript, should not be made directly to my

24   chambers.  I don't expect the press to be calling or contacting

25   my chambers.  Those inquires should go to the District

K2P8AVEC

1    Executive's office in the normal course.

2        All right.  With respect to procedures of jury

3    selection and the questionnaire, what I propose to do is the

4    following.  Based on my experience in the *General Motors* cases

5    and my discussions with the jury department, would be to have

6    prospective jurors complete the questionnaires on the morning

7    of Wednesday, April 15, so the Wednesday prior to trial.  And

8    then have the parties review the questionnaires, and by 10 a.m.

9    on Friday the 17th, submit a list of jurors that both sides

10    agree should be struck for cause, whether because of hardship

11    or knowledge or opinions of the case or what have you.  And

12    those jurors would be excused without further review from me; I

13    wouldn't even look at their questionnaires.  And by the same

14    time, a list from each side of whatever jurors that you believe

15    should be struck for cause that the other side does not agree

16    with, and whatever explanation or argument you want to make

17    with respect to those.  I would then review those and make a

18    decision about whether any should be struck for cause on the

19    papers, so to speak.  And anyone who is not struck in that

20    manner -- that is, who is not flagged by you and/or I

21    disagree -- would be brought here on the first day of trial for

22    further inquiry in jury selection.

23        Any questions about that?

24        MR. PODOLSKY:  No, your Honor.

25        MR. WARREN:  No, your Honor.

K2P8AVEC

1          THE COURT:  There is one catch with respect to that

2     April 15 date, which is it is a religious holiday so I will not

3     be here, and, indeed, won't even be available.  My view is that

4     that part of the process can be conducted without a judicial

5     officer by the jury department.  So long as the questionnaire

6     is clear on its own terms, I think the jury department can

7     provide relevant instructions and handle that part of the

8     process.  If you disagree, number one, we can potentially try

9     to change the schedule, but that may be complicated.  The

10    second option would be for me to enlist a judicial officer,

11    perhaps a magistrate judge, to preside over that part of the

12    process, but I don't know if you have any thoughts about that.

13         MR. PODOLSKY:  Certainly not as far as your presence,

14    your Honor.  I suppose it does just raise the question of

15    whether there are potential jurors for whom the schedule will

16    pose a problem, which would maybe militate in favor of a

17    different date for the juror's sake.  But certainly from your

18    Honor's perspective, I am not aware of any reason you have to

19    be present for them to receive and fill out the questionnaires.

20         THE COURT:  Defense counsel.

21         MR. WARREN:  I would concur with that.

22         THE COURT:  I will talk to the jury department to

23    figure out if there are other options, but I think the answer

24    is going to be no, just because of the number of jurors that

25    need to be called and other proceedings that jurors are needed

K2P8AVEC

1   for on other days and so forth, I have already had this

2   conversation with them and I think there is relatively limited

3   flexibility.  I don't think there are a whole lot of jurors who

4   would be impacted by that being a religious holiday, and I am

5   one of the few judges who is impacted by it, but I think it is

6   what it is.

7          I guess that returns us to the first trial date

8   question.  My understanding is, in the Judge Gardephe case,

9   that that process began on the first day of trial, that is, the

10  questionnaire was filled out on the first day of trial, which

11  may explain why that process took as long as it did.  So I

12  guess my question is, given what I just described, do you have

13  a view on whether we start Monday or Tuesday?

14         MR. PODOLSKY:  First of all, you're correct, we spent

15  the first day of trial dealing with the questionnaires, and

16  then the selection process took about a day and a half or so,

17  maybe a little bit more.  So with that in mind, we don't have a

18  preference as to whether we actually start on Monday with the

19  jurors who are being voir dired or Tuesday.  We defer to the

20  Court on that.

21         THE COURT:  In light of that, I am going to leave the

22  Tuesday start date as is.  Particularly given the holiday of

23  the week before, that gives us Monday to work things out, if

24  need be, and I will have more to say on that in a moment.

25         I will, by the way, issue an order memorializing these

K2P8AVEC

1    dates and setting forth some more particular instructions.

2    Among other things, I am going to task the government with

3    taking responsibility for copying the questionnaires and making

4    them available in electronic fashion to the defense and to me,

5    my chambers, because I won't be there that day, as you know.

6    Again, I will spell all this out in an order.  So that's how we

7    will proceed generally.

8            Beyond that, let me give you some other pretrial

9    deadlines.  Any proposed voir dire beyond the questionnaire,

10   any proposed jury selection instructions and proposed verdict

11   forms, as well as any motions in limine by either side, shall

12   be filed by March 25, again, that's March 25.  I know that's a

13   few days before the deadline that Judge Batts had given you,

14   but I think it makes sense for any number of reasons.  Any

15   opposition to a motion in limine would be due by April 1st at

16   noon.  Again, initial filings by March 25, any opposition to a

17   motion in limine by April 1st at noon.

18           I am going to set a final pretrial conference.  It's a

19   little complicated because of the Jewish holiday, and for that

20   reason, I am going to actually give you two dates to hold, with

21   the possibility that we will have two conferences, or,

22   alternatively, once I see what, if anything, is filed

23   on -- some things will be filed -- when I see what is filed on

24   March 25, that may have some bearing on whether there is a need

25   for both conferences or some bearing on whether to do it sooner

K2P8AVEC

1  rather than later.

2  So to that end, I will set two dates.  One on April

3  7th at 10 a.m., and then one on April 20th, that is the day

4  before trial, at 10 a.m. as well.  Again, I think odds are I

5  will end up canceling one and having only one final pretrial

6  conference, but I will wait and see what is filed on March 25th

7  to make that determination, and issue an order in the event

8  that we don't need to appear on both dates.  Again, I will set

9  that forth in a forthcoming order.

10  I will also say this, and my deputy, Ms. Smallman,

11  will correct me if this is wrong.  The April 7th date, if it

12  occurs, will be in this courtroom.  The April 20th conference,

13  if it occurs on that date, would be in the courtroom where

14  trial will be held, which will be courtroom 110, which is on

15  the first floor of the courthouse, which is a larger courtroom

16  than this.

17  As I have said a couple of times, I will issue an

18  order with all these dates and some further details, which you

19  should review with care.  I would also again ask you to review

20  my individual rules and practices for both criminal cases and

21  trials.  Among other things, that also describes the method of

22  jury selection, which is the struck panel method.

23  Anything else?

24  MR. PODOLSKY:  Your Honor, Judge Batts excluded time

25  through April 21st, so I don't believe we have any applications

K2P8AVEC

1    with respect to that at this time.  Nothing else from the

2    government.

3            THE COURT:  All right.  Anything else for the defense?

4            MR. WARREN:  Yes, your Honor, some discovery-related

5    materials.

6            Mr. Avenatti had been promised a laptop with a copy of

7    the discovery on it, and he has not been provided that yet.  He

8    has had no access to his discovery in this case.  So I would

9    like to raise that with the Court and see if we can have that

10   worked out.

11           We also need a confirmation from the government that

12   the discovery in this case is complete.  And I guess I, as an

13   attorney who typically practices in the Central District of

14   California, I am not familiar with when Jencks material is

15   produced, and so I have a question about that as well.

16           THE COURT:  All right.  Well, in answer to the last

17   question, the general practice in this district is for the

18   government to produce Jencks Act material by the Friday before

19   trial.  That's sort of the norm, and there are cases that

20   deviate from that, but I don't know if this is a case that

21   would warrant that.  I also have limited authority to order the

22   government to disclose Jencks Act material earlier than the

23   statute requires.

24           Mr. Podolsky, do you want to address that?

25           MR. PODOLSKY:  Yes, your Honor.  We had intended after

K2P8AVEC

today's conference and dates were set to confer with the

defense to agree upon a comprehensive schedule for pretrial

disclosures, including 3500.  We were able to reach such an

agreement with the defendant's counsel in the last case and it

worked effectively.  So we will certainly confer with defense

counsel about dates for all of our disclosures, including any

expert disclosure and 3500 material as well.

THE COURT:  Do you expect expert disclosure?  I

wouldn't necessarily think that is appropriate here.

MR. PODOLSKY:  I don't know, your Honor.  It's a topic

that we certainly haven't conferred with defense counsel about.

We are conferring internally.  It's not something that I think

is necessarily likely, but we want to just make sure that we

give appropriate disclosure in case there is.  That's all.

THE COURT:  So why don't you guys talk to one another

and try to reach agreement.  I would think in either case you

should submit a letter to me, hopefully with agreed upon dates

that I could adopt.  And if there is any disagreement, you can

let me know, and again, assuming I have authority to do so, I

will tell you what we are going to do.

The other two issues, Mr. Podolsky.  First, I would

hope and assume that discovery has been complete.  Obviously,

as you get closer to trial, you may come into possession of new

materials, and I would imagine you understand your obligations

are continuing in nature and would produce those promptly, but

K2P8AVEC

1    can you just confirm that discovery is complete?

2              MR. PODOLSKY:  That's exactly right, your Honor.  We

3    have disclosed and produced all of the discovery we have to

4    date, including material that was generated in the run-up to

5    the last trial.  All of that has been produced to defense

6    counsel.  I know there has been some change with respect to the

7    defendant's counsel.  We have already been in touch with them

8    to make sure they have all the discovery.  To the extent we

9    come upon additional discovery as we continue to investigate

10   and prepare for trial, we will certainly produce that promptly,

11   as we did in the last trial.  But as of today, we have

12   completed discovery of the materials, certainly Rule 16

13   materials that we have in our possession.

14             THE COURT:  All right.

15             Then I don't know what the reference to a laptop was,

16   who made that promise or what the story is on that front, but

17   can you tell me what the story is?

18             MR. PODOLSKY:  Sure, your Honor.  As Mr. Warren

19   referenced earlier, the defendant was being kept in, as I

20   understand it, conditions that had limited access to the prison

21   library and other resources.  We had worked with his prior

22   counsel to do whatever the government could to assist his

23   preparation for the last trial.  The defendant's move to

24   general population, that we understand was effected, I believe,

25   last week, changes what he is allowed to keep with him in his

K2P8AVEC

1  cell.  So we will confer with defense counsel and make sure

2  that he has access to discovery the same way any other person

3  at MCC is.  Our understanding, and I think this is the reason

4  defense counsel is raising it, is that he is not allowed to

5  have a laptop in his cell in general population.  With that

6  said, as you know, many defendants awaiting trial are at the

7  MCC, and we will provide discovery just as we do with other

8  defendants who are at the MCC.

9          THE COURT:  All right.  Great.  Why don't you guys

10  discuss this and see if you can sort it out.

11          I don't think the defendant is entitled to any special

12  privileges, that is to say, he should get whatever access a

13  defendant at the MCC gets in any case.  But that being said, it

14  is important to me that the defendant is able to review and

15  access the materials in connection with his case to ensure that

16  he can work with counsel to prepare for trial, and in that

17  regard he is no different than any other defendant as well.  So

18  I have no doubt that you guys can work this out and figure out

19  some way to ensure that Mr. Avenatti has appropriate access.

20  And if you have any applications on that front, Mr. Warren, you

21  should bring them to my attention sooner rather than later, but

22  again, my hope is that you can sort that out with each other

23  and with the MCC.

24          All right.  Anything else?

25          MR. WARREN:  Your Honor, with respect to discovery,

K2P8AVEC

1    and I appreciate the government's representation with respect

2    to the completion of discovery, I would just point out, and

3    obviously your Honor knows, the complaining witness in this

4    case, the government's primary witness, has represented

5    publicly that there are 472 text messages between her and Mr.

6    Avenatti that relate to the book deal that is at the center of

7    this case.  We don't have them.  So while I appreciate the

8    government's representation, there are certain things that have

9    been represented that exist that we don't have.

10           THE COURT:  Well, I have reviewed the transcript of

11    the proceedings before Judge Batts.  I know this was previously

12    aired and the government made the representation that it has

13    turned over all texts that it has certainly.  I have no reason

14    to doubt that representation and obviously trust and assume

15    that the government knows its obligations on that front.  So I

16    don't think that warrants further discussion, but I certainly

17    would want to make sure the government understands its

18    obligations.

19           MR. PODOLSKY:  We do, your Honor.  The only thing I

20    will add to that, and I believe it was aired at the last

21    conference, as your Honor referenced, I am frankly, just as we

22    were last time, confused by the insistence about these hundreds

23    of text messages.  We have handed over the entirety of the text

24    message exchange between the victim in this case and the

25    defendant.  It includes many hundreds of text messages,

K2P8AVEC

1    including text messages about the book deal, far more than 472

2    or whatever number defense counsel just represented.  So we

3    have handed over those text messages; they do reference the

4    subject matter in this case, and the defense has them.  And we

5    certainly handed over all the discovery that we have to date.

6         THE COURT:  For what it is worth, on October 8th,

7    there seemed to be 672.  So I don't know what the number is,

8    but I trust that the government has turned over everything and

9    understands its obligations.

10        The last thing is just to emphasize again that that

11   April 21st date is a firm date; it's not going to change.  So

12   everybody should be aware of that and proceed accordingly.  You

13   know how to find me in the event that there are any issues.  I

14   gave you the relevant deadlines that I will memorialize in an

15   order.  And unless there is anything else, I think we are done

16   with our business today.

17        So with that, we are adjourned.  Thank you very much.

18        (Adjourned)

19

20

21

22

23

24

25