

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 13, 2020

<u>BY ECF</u>

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *United States v. Michael Avenatti*, 19 Cr. 374 (JMF)

Dear Judge Furman:

  The Government respectfully submits this letter jointly with the defendant pursuant to the Court's Scheduling Order dated February 26, 2020 (Dkt. No. 41) to address certain issues related to the juror questionnaires and oral *voir dire*.  The Government also submits herewith jointly on behalf of both parties, pursuant to the same Scheduling Order, a proposed juror questionnaire for the Court's consideration.

**I. Background**

**A. The Extortion Case**

  From January 27, 2020, until February 14, 2020, the defendant was tried before the Honorable Paul G. Gardephe, United States District Judge for the Southern District of New York, for extortion and honest services wire fraud offenses.  *See United States v. Michael Avenatti*, 19 Cr. 373 (PGG).  Judge Gardephe used a juror questionnaire that the jurors completed prior to oral *voir dire*.  The following day, Judge Gardephe followed up at sidebar with potential jurors regarding issues raised in their juror questionnaires, before proceeding with traditional *voir dire* in open court, other than when a potential juror requested to answer a question at sidebar.  Judge Gardephe permitted the defendant and a member of the media from the *New York Post* to be present at sidebar discussions with potential jurors.

  The juror questionnaires and *voir dire* process were the subject of several press reports, some of which appear to be based on Judge Gardephe's reading of certain responses to juror questionnaires in open court and another appears to arise from the *New York Post* reporter's attendance at a sidebar conference.  *See, e.g.*, Emily Saul, *'Notorious Scumbag': Potential jurors tossed for bashing Michael Avenatti* N.Y. Post, Jan. 27, 2020, https://nypost.com/2020/01/27/notorious-scumbag-potential-jurors-tossed-for-bashing-michael-avenatti/ (describing questionnaire responses, and explaining that jurors dismissed based on their questionnaires "were kept anonymous"); *Michael Avenatti Greets Prospective Jurors at NYC*

Honorable Jesse M. Furman
United States District Judge
March 13, 2020
Page 2

*Courtroom for Extortion Trial*, NBC New York, Jan. 27, 2020, https://www.nbcnewyork.com/news/local/crime-and-courts/michael-avenatti-greets-prospective-jurors-at-nyc-courtroom-for-extortion-trial/2269253/ (describing questionnaire responses); Stewart Bishop, *Harsh Words For Avenatti As Jury Selection Kicks Off*, Law360, Jan. 27, 2020, https://www.law360.com/articles/1237994 (same); Emily Saul, *Lawyer linked to Jared Kushner cut from jury pool in Michael Avenatti case*, N.Y. Post, Jan. 28, 2020, https://nypost.com/2020/01/28/lawyer-linked-to-jared-kushner-cut-from-jury-pool-in-michael-avenatti-case/ (describing sidebar colloquy regarding potential juror).

### B. The Fraud Case

Both the defendant and the victim in this case are public figures who some find controversial due to, among other things, their past involvement in the political arena. Indeed, this case has received extensive coverage from the news media. *See, e.g.*, Erica Orden, *Michael Avenatti charged with stealing $300,000 from former client Stormy Daniels*, CNN, May 23, 2019, https://www.cnn.com/2019/05/22/politics/michael-avenatti-stormy-daniels-indictment/index.html; Andrew Denney & Theo Wayt, *Avenatti wants to move case against him from New York to California*, N.Y. Post, July 23, 2019, https://nypost.com/2019/07/23/avenatti-wants-to-move-case-against-him-from-new-york-to-california/; Associated Press, *April Trial Date Set for Avenatti in Stormy Daniels' Case*, U.S. News & World Report, Oct. 8, 2019, https://www.usnews.com/news/us/articles/2019-10-08/april-trial-date-set-for-avenatti-in-stormy-daniels-case; Gabrielle Fonrouge, *Court date set for Michael Avenatti's Stormy Daniels trial*, N.Y. Post, Feb. 12, 2020, https://nypost.com/2020/02/12/court-date-set-for-michael-avenattis-stormy-daniels-trial/; Associated Press, *Avenatti's lawyer to put Stormy Daniels' credibility on trial*, Fox Business, Feb. 27, 2020, https://www.foxbusiness.com/lifestyle/avenatti-lawyer-stormy-daniels-trial.

## II.   Applicable Law

The Second Circuit has held that there is a qualified "'right to attend criminal trials . . . implicit in the guarantees of the First Amendment.'" *ABC, Inc. v. Stewart*, 360 F.3d 90, 98 (2d Cir. 2004) (quoting *Richmond Newspapers, Inc. v. Virginia*, 488 U.S. 555, 580 (1980)). That right of access can extend to the examination of prospective jurors as part of the *voir dire* process. *Id.* (citing *Press Enter. Co. v. Superior Court*, 464 U.S. 501, 504-10 (1984) ("*Press Enter. I*")).

But the right of access to the proceedings in criminal trials is not absolute, and "must, in certain circumstances, give way . . . to other rights or interests, such as the defendant's Sixth Amendment right to a fair trial or the privacy interests of prospective jurors." *See id.* (citing *Press Enter. I*, 464 U.S. at 510-11 (internal citation and quotation marks omitted)). In the particular context of *voir dire*, the Supreme Court in *Press Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press Enter. II*") created a two-part balancing test to determine whether closure, such as precluding the press from *voir dire*, is appropriate: "[T]he [proceeding] shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the

Honorable Jesse M. Furman
United States District Judge
March 13, 2020
Page 3

defendant's right to a fair trial will be prejudiced by publicity that closure would prevent, and second, alternatives to closure cannot adequately protect the defendant's fair trial rights." *Id*. at 14.

In applying these standards, the Second Circuit has emphasized that "different circumstances call for different cures," and that there are "no prescriptions to be applied formulaically" when a district court decides whether to close *voir dire* to the press. *Stewart*, 360 F.3d at 104. In one case, *United States v. King*, 140 F.3d 76, 80 (2d Cir. 1998), the Second Circuit affirmed a limited closure of *voir dire* proceedings whereby the district court conducted individual follow-up questions during *voir dire* outside of the presence of the public and the press, and denied access to the transcripts of *in camera* individual *voir dire* until the jury was impaneled. *See id*. at 80. In implementing those limitations, the district court had found that they were necessary in order to ensure that the prospective jurors would be fully candid concerning their views of the defendant and case, boxing promoter Don King, in light of the considerable press attention that the case had received, as well as the strong likelihood that voir dire would explore the "delicate area of possible racial bias." *United States v. King*, 911 F. Supp. 113, 117 (S.D.N.Y. 1995). *See also United States v. King*, No. 94 Cr. 455 (LMM), 1998 WL 50221, at *2 (S.D.N.Y. Feb. 5, 1998) ("[C]andor on the part of prospective jurors is of particularly great importance in this case and [], absent a degree of juror privacy, such candor is likely to be restricted. Prospective jurors, if made aware that their views will be publicly disseminated in the next day's newspapers or radio or television broadcasts, will be under pressure not to express unpopular opinions relevant to their choice as trial jurors."). Thus, the Second Circuit concluded, "[i]n light of the widespread and largely negative publicity concerning King and the racial tensions heightened by some aspects of that publicity, [the district court was] entitled to conduct individual juror questioning in the absence of the press." 140 F.3d at 82.

In the criminal trial of former pharmaceutical executive Martin Shkreli, the district court, after receiving briefing from the press and the parties in that case, permitted press access to the individual portions of *voir dire*—*i.e.*, sidebar questioning, in the particular manner that jury selection was conducted for that case—but limited access to a single press pool reporter, with the court also retaining the ability to excuse the reporter if a juror requested or if the court otherwise determined that the presence of the reporter would inhibit the prospective juror's candor. *See United States v. Shkreli*, 260 F. Supp. 3d 257, 259 (E.D.N.Y. 2017) (KAM).[1] As Judge Matsumoto explained, "*voir dire* can be a uniquely uncomfortable experience" for the venire, and that in high-profile cases, in particular, "prospective jurors may be subject to having their answers reported and disseminated that same day." *Id*. at 260. The court also noted that the defendant in that case had "attracted a tremendous amount of negative publicity and notoriety," that "certain of the issues to be probed at *voir dire* relate to beliefs and actions . . . concerning polarizing topics, such as race, gender, politics, and class," and that "disclosure of juror names would increase the risk that jurors would not be candid." *Id*. at 261-62.

---

[1]      In *Stewart*, the Second Circuit noted that pool reporters at *voir dire* had been employed in other high-profile cases. 360 F.3d at 94-95.

Honorable Jesse M. Furman
United States District Judge
March 13, 2020
Page 4

Thus, Judge Matsumoto concluded that a single pool reporter would be permitted at sidebar for individual questioning of the venire persons.[2]  *See id.* at 263.  The court noted, however, that it would ensure that jurors would be made aware that they could "request[] that the reporter be excused from sidebar" and that the court could also excuse the reporter on its own initiative if it determined that a juror did not "appear fully comfortable answering questions fully and honestly in the presence of a reporter."  *Id.*  The court also restricted the parties' use of the jurors' names in order to preserve the jury's anonymity and protect the jurors from harassment.  *See id.* at 264.

### III.    Proposed Procedures For Juror Questionnaires and Oral *Voir Dire*

In this case, the concerns regarding the defendant's right to a fair trial and the privacy interests of potential jurors are similar to those presented in *King* and *Shkreli*.  *See King*, 140 F.3d at 83 ("[T]his is that unusual case where the fairness of a trial, or at least the *voir dire* phase, that is usually promoted by public access is seriously at risk of being impaired unless some modest limitation on access is imposed.").  Accordingly, the parties propose that the Court adopt procedures substantially similar to those adopted in *Shkreli* and that impose modest and reasonable restrictions on the press and public's access to certain information and proceedings in order to adequately protect the rights of the defendant and potential jurors, while making the proceedings as accessible as possible in light of the circumstances.

#### A.   Juror Questionnaires

The parties propose that completed juror questionnaires be available only to the Court and the parties until the jury has been impaneled.  After the jury is impaneled, the Court, upon request, would provide to the public and/or the press copies of the completed juror questionnaires.  This procedure is identical to part of the protocol that the Second Circuit affirmed in *King*, 140 F.3d at 80 ("Filled out questionnaires will be available only to the Court and the parties until the jury has been impaneled."), and is less restrictive than the procedure employed in some other high-profile cases, *see, e.g.*, *United States v. Bruno*, 700 F. Supp. 2d 175, 178 (N.D.N.Y. 2010) (explaining that juror questionnaires were only "disseminated to the parties subject to an order precluding further disclosure").  Here, like in *King*, such a restriction is necessary to avoid potential disruption of the jury selection process, though here the risk relates principally to the potential for politically charged views, rather than racially charged views.  *See id.* at 83 ("Prospective jurors hearing from friends and neighbors about racially charged views of other jurors as reported by press and TV, often dramatically and without necessary details, will often not read for themselves that names were redacted (even if the news report mentions that fact) nor recall all the details of the trial judge's first-day explanation of the jury selection procedure.  The risk, deemed unacceptable by Judge McKenna, is that in this particular case of a defendant of unusually high visibility, already subject to extraordinary hostile publicity, the airing of jurors' responses will significantly inhibit the candor necessary to assure a fairly selected jury and therefore a fair trial.").  Indeed, in these circumstances, there is clear evidence juror responses may be subject to press

---

[2]      Judge Matsumoto did not make use of jury questionnaires, so the court employed both general, open questioning as well as individualized sidebar questioning.

Honorable Jesse M. Furman
United States District Judge
March 13, 2020
Page 5

commentary—and thus candid responses may be chilled—given that that is precisely what happened with respect to the juror questionnaires and *voir dire* in the defendant's trial before Judge Gardephe.

### B.  Oral *Voir Dire*

The parties propose that the defendant and, assuming more than one member of the press requests to be present at sidebar discussions, a single pool reporter be permitted to be present at sidebar discussions with potential jurors.  In addition, the parties ask that the Court ensure that jurors are aware that they can request that the reporter be excused from sidebar and that the Court excuse the reporter on its own initiative if it determines that a juror does not appear fully comfortable answering questions fully and honestly in the presence of the reporter.  This is the same procedure that was employed in *Shkreli*, 260 F. Supp. 3d at 263 & n.3, is similar to that which was used in *United States v. Loera*, No. 09 Cr. 466 (BMC), 2018 WL 5624143, at * 5 (E.D.N.Y. Oct. 30, 2018) ("The Court will inform each prospective juror that the five individuals in the jury box are reporters, and that, if at any point the prospective juror would like to speak with the Court *in camera* so that the press cannot overhear, the prospective juror may request a sidebar."), and is less restrictive than the procedure that the Second Circuit affirmed in *King*, 140 F.3d at 80 ("Individual follow-up questioning of prospective jurors will be conducted out of the presence of the public and the press.").  Finally, transcripts of oral *voir dire* should only be made available following the impanelment of a jury, *see King*, 140 F.3d at 80 (affirming district court's decision to conduct individual follow-up questioning out of presence of the public and press, and to make transcripts of jury selection available only after jury was impaneled), and should jury selection take more than a day, the members of the venire should be instructed not to review any press reporting about the case, including the previous days' jury selection.

These proposed procedures will protect the interests in juror privacy, the defendant's trial right to fully examine the juror, and the prevention of juror taint, while also providing access to the press except in narrow circumstances where such access would compromise the aforementioned interests that the Court must protect.

Honorable Jesse M. Furman
United States District Judge
March 13, 2020
Page 6

**IV.     Conclusion**

In light of the foregoing, the Government respectfully requests jointly with the defendant that the Court adopt the procedures set forth above with respect to juror questionnaires and oral *voir dire*, as well as the proposed jury questionnaire attached hereto.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:     _____
Matthew D. Podolsky
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-1947/2616

cc:     Thomas D. Warren, Esq. (by ECF)
Daniel Dubin, Esq. (by ECF)
Mariel Colon Miro, Esq. (by ECF)

Juror ID: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                             :

UNITED STATES OF AMERICA                   :

                                             :

        -v-                               :               19 Cr. 374 (JMF)

                                           :

MICHAEL AVENATTI,                    :          JURY QUESTIONNAIRE

                                           :

                        Defendant.           :

                                           :

----------------------------------------------------------------------X

## PRELIMINARY INSTRUCTIONS

Please read the following instructions carefully before completing any portion of this questionnaire.  Please print your juror number in the space provided at the top of each page.  Please answer each and every question by circling your response or by providing the information requested.  Please answer each question fully.  Some questions have more than one part.

**YOU ARE SWORN TO GIVE TRUE AND COMPLETE ANSWERS TO ALL QUESTIONS IN THIS QUESTIONNAIRE**.  This questionnaire is designed to help simplify and shorten the jury selection process.  The purpose of the questionnaire is to determine whether prospective jurors can decide this case impartially based upon the evidence presented at trial and the legal instructions given by the presiding judge.  The questions are not intended to inquire unnecessarily into personal matters.  Although some of the questions may appear to be of a personal nature, please understand that the Court and the parties must learn enough information about each juror's background and experiences to select a fair and impartial jury.

Please answer all questions to the best of your ability.  If you do not know the answer to a question then write, "I don't know."  There are no "right" or "wrong" answers, only truthful answers.  If you have strong feelings about this case in general, please do not hesitate to share them.  Although you may be a perfectly good juror in another case, this may or may not be the right case for you to sit on as an impartial juror.  Both parties have the right to get honest answers and to hear your true opinions.  Do not discuss the case or your answers with anyone.  It is important that the answers be yours alone.  Remember, you are sworn to give true and complete answers to all questions.

If you need extra space to answer any question, please use the extra blank sheets of paper included at the end of the questionnaire.  Be sure to indicate on the blank page the number of the question you are answering.  Do not write anything on the back of any page.

**DO NOT DISCUSS YOUR QUESTIONS AND ANSWERS OR THE CASE WITH ANYONE, NOW OR UNTIL FURTHER INSTRUCTED BY THE COURT.**  You should not discuss the questions or answers with fellow jurors.  It is very important that your answers be

your own individual answers.  More broadly, do not discuss the case with anyone, including the lawyers (except in the presence of the Court), your fellow jurors, your family, your friends, or anyone else.  Do not communicate about the case in any way, including telephone, e-mail, any social media app or website (such as Facebook), any communications app or website (such as Twitter).  You must also avoid reading or hearing about the case (or anyone participating in the case) in newspapers, in magazines, on the radio or television, or on the Internet.

**DO NOT DO YOUR OWN RESEARCH ON THE CASE.**  Do not conduct any research into the case (or anyone participating in the case) at any time before your entire jury service has been completed.  That includes performing Internet searches, asking other people about the case, reading news stories, books, or reports about the case, or watching films or television programs that relate to the case.  Do not read, watch, or listen to any information about this case.

If you believe that any of your answers contain private information that could embarrass you or otherwise seriously compromise your privacy and wish to request that the Court keep them confidential and not distribute them beyond the judge and counsel, you may indicate that on one of the blank pages at the end of this form.  (Please identify the <u>specific</u> answer or answers that you believe should remain confidential.)  After a jury has been selected, all copies of your responses to the questionnaire will be returned to the Court.

## <u>SUMMARY OF THE CASE</u>

**The Court is selecting a jury for a two- to three-week trial commencing on Tuesday, April 21, 2020.  Thus, it should end no later than about Friday, May 8, 2020.**

This is a criminal case.  The defendant, Michael Avenatti, has been charged in an indictment with wire fraud and aggravated identity theft.  The indictment is not evidence.  It simply contains the charges—referred to as "counts"—that the Government intends to prove to the jury at trial beyond a reasonable doubt.

The indictment contains two counts.  Count One charges that Mr. Avenatti devised a scheme to defraud his client, Stephanie Clifford, who is also known as "Stormy Daniels," by taking for himself payments due to Ms. Daniels pursuant to her book contract.  The Government further alleges that Mr. Avenatti then used those payments for his own purposes but falsely represented to Ms. Daniels that the payments had not been made.  Count Two charges that Mr. Avenatti used Ms. Daniels's identity—and, more specifically, her name and signature—without her permission, on a document in which he falsely represented to Ms. Daniels's book agent that Ms. Daniels had given authorization for the payments to be sent by wire to an account controlled by Mr. Avenatti.

Mr. Avenatti has pled not guilty to both charges.  Mr. Avenatti is presumed innocent, and before he can be found guilty on any charge, the jury must find that the Government has proven each element of that crime beyond a reasonable doubt.

**(Please turn the page and read and complete the questionnaire.)**

Juror ID: _____

**PLEASE ANSWER THE FOLLOWING QUESTIONS:**

**<u>TRIAL SCHEDULE AND PERSONAL HARDSHIP</u>**

**Potential jurors will be called back for further questioning and jury selection on Tuesday, April 21, 2020.**  The trial will commence immediately thereafter.  Generally, trial will be held five days per week, Monday through Friday, from 9:00 a.m. until 2:30 p.m., with one (and only one) half hour break during the day.  **The trial is expected to last two to three weeks (that is, ending no later than Friday, May 8, 2020).**

If you are selected as a juror, you will be required to be present for the taking of testimony and evidence for as long as the trial lasts.  There are no plans to sequester the jury, which means you will go home every day after court.

The Court views service on a jury to be one of the highest duties a citizen owes to the United States.  Mere inconvenience or the usual financial hardship of jury service will not be sufficient to excuse a prospective juror.  You must show extraordinary personal or financial hardship to be excused from service.

1.  Do any circumstances exist such that serving on the jury in this case would entail <u>serious</u> hardship or <u>extreme</u> inconvenience?  (Please circle.)

       Yes                          No

2.  If the answer to Question #1 was yes, please briefly describe the undue hardship or extreme inconvenience:

    _____

    _____

    _____

3.  Do you have any difficulty reading, speaking, or understanding English?  (Please circle.)

       Yes                          No

4.  Do you have any mental or physical condition or illness that makes you unable to serve on a jury?  (Please circle.)

       Yes                          No

5.  If the answer to Question #4 was yes, please briefly describe the condition or illness:

    _____

    _____

    _____

**Whether or not you claim a hardship, you
must complete the rest of this questionnaire.**

## <u>BACKGROUND</u>

6.     How old are you?     _____

7.     Are you a citizen of the United States?  (Please circle.)

          Yes                        No

8.     In what county of New York do you live?     _____

9.     Approximately how long have you lived in that county?     _____

10.    In what other county or counties, if any, have you lived in the last five years?

       _____

       _____

       _____

11.    Who are the other members of your household, if any, and what, if anything, do they do for work?

       _____

       _____

       _____

12.    Do you have grown children?  If so, how many and what, if anything, do they do for work?

       _____

       _____

       _____

13.    What newspapers or magazines do you read on a regular basis?

       _____

       _____

       _____

14.    What television channels or shows, websites, radio stations, magazines, newspapers, or applications do you visit, use, watch, or read on a regular basis to get the news?

       _____

       _____

       _____

**Juror ID:** _____

15.    What television channels or shows do you watch on a regular basis?

_____

_____

_____

16.    Do you belong to or volunteer your time to any associations, organizations, clubs, or unions?  If so, please list the group and explain your involvement and list any titles or roles you may have or have had in the leadership of such group.

_____

_____

_____

17.    What do you like to do in your spare time?

_____

_____

_____

18.    Have you ever served as a juror?  (Please circle.)

              Yes                                        No

19.    <u>If the answer to Question #18 was yes</u>, please complete as appropriate (**but please do not state what the verdict in any case was).**

           a.    Civil Cases

           Number of times:            _____

           Number of:          _____   Federal cases          _____   State cases

                   1.    For each:  Was the jury asked to reach a verdict?  (Please circle; continue answers to the right as necessary.)

                                Yes                No

                   2.    For each:  If so, did the jury reach a verdict?  (Please circle; continue answers to the right as necessary.)

                                Yes                No

                   3.    For each: Were you the foreperson?  (Please circle; continue answers to the right as necessary.)

                                Yes                No

    b.      Criminal Cases

Number of times: _____

Number of: _____ Federal cases _____ State cases

    1.      For each:  Was the jury asked to reach a verdict?  (Please circle; continue answers to the right as necessary.)

          Yes        No

    2.      For each:  If so, did the jury reach a verdict?  (Please circle; continue answers to the right as necessary.)

          Yes        No

    3.      For each: Were you the foreperson?  (Please circle; continue answers to the right as necessary.)

          Yes        No

    c.      Grand Jury

Number of times: _____

Number of: _____ Federal cases _____ State cases

20.    This is a criminal case.  Among other things, that means that the burden of proof differs from the burdens of proof that apply in a civil case or in the grand jury.  <u>If you have previously served as a juror in a civil case or on a grand jury</u>, would you be able to follow the Court's instructions with respect to the burdens that apply in this case?  (Please circle.)

       Yes                No

21.    <u>If you have previously served as a juror</u>, was there anything about your jury experience that would make you unable to be fair and impartial in this case?  (Please circle.)

       Yes                No

22.    <u>If the answer to Question #21 was yes</u>, please describe why it would be difficult for you to be impartial:

_____

_____

**Juror ID:** _____

## <u>EDUCATION & EMPLOYMENT</u>

23. How far did you go in school?

   _____

24. <u>If you attended graduate or professional school</u>, please specify your area of study and what degree you received, if any:

   _____

25. <u>If you are currently employed</u>, please tell us about your job:

   Do you work more than one job?   _____

   What is your job description?   _____

   How long have you worked at your job?   _____

   <u>If you have held your job for fewer than five years</u>, what did you do previously?

   _____

   _____

26. <u>If you are retired</u>:

   When did you retire?   _____

   How long did you work at your last job?   _____

   What was your title or job description?   _____

27. <u>If you are not employed outside the home</u>, are you:

   _____ A student?  Where do you attend school?   _____

       How many days a week do you attend?   _____

   _____ A homemaker?

   _____ Between jobs?  If so, what is your usual employment?   _____

   _____ Disabled?  What is the nature of the disability that prevents you from working?

   _____

   _____ Other:   _____

   How long has it been since you were last employed outside the home?

   _____

Juror ID: _____

## KNOWLEDGE AND OPINIONS OF THE CASE AND PARTIES

**Background information**:  The Defendant in this case is Michael Avenatti.  The alleged victim in this case is Stephanie Clifford, who is also known as "Stormy Daniels."

28.   Do you or does any member of your family or a close friend <u>personally</u> know or have past or present dealings with Mr. Avenatti or any of his family members?

    Yes           No

29.   <u>If the answer to Question #29 was yes</u>, please state how you, a member of your family, or a close friend personally know Mr. Avenatti or any of his family members, and whether your relationship with him or any of his family members might make it difficult for you to be a fair and impartial juror in this case.

   _____

   _____

30.   Before today, had you read, seen, or heard anything about criminal charges brought against Mr. Avenatti?

    Yes           No

31.   <u>If the answer to Question #31 was yes</u>, please state what you remember hearing, and how or from whom you may have heard (*e.g.*, a friend, the newspaper, a website).

   _____

   _____

32.   Aside from anything you may have read, seen, or heard about criminal charges brought against Mr. Avenatti, before today, had you read, seen, or heard anything about Mr. Avenatti?

    Yes           No

33.   <u>If the answer to Question #33 was yes</u>, please state what you remember hearing and how or from whom you may have heard about Mr. Avenatti (*e.g.*, a friend, the newspaper, a website) and what you remember hearing.

   _____

   _____

34.   Based on anything that you have read, seen, or heard about Mr. Avenatti, including anything about criminal charges against Mr. Avenatti, have you formed any opinions about Mr. Avenatti that might make it difficult for you to be a fair and impartial juror in this case?

      Yes    No     Not applicable, I have not read/seen/heard about Mr. Avenatti

-8-

35.   If the answer to Question #34 was yes, please explain why it might be difficult for you to be a fair and impartial juror in this case.

_____

_____

36.   Based on anything you have read, seen, or heard about Mr. Avenatti, including anything about criminal charges brought against Mr. Avenatti, would you be able to follow the Court's instruction to put that information out of your mind and decide this case based only on the evidence presented at trial?

        Yes            No           Not applicable, I have not read/seen/heard about Mr. Avenatti

37.   Do you or does any member of your family or a close friend personally know or have past or present dealings with Ms. Daniels or any of her family members?

        Yes                         No

38.   If the answer to Question #37 was yes, please state how you, a member of your family, or a close friend personally know Ms. Daniels or any of her family members, and whether your relationship with her or any of her family members might make it difficult for you to be a fair and impartial juror in this case.

_____

_____

39.   Before today, had you read, seen, or heard anything about Ms. Daniels?

        Yes                         No

40.   If the answer to Question #39 was yes, please state what you remember hearing, and how or from whom you may have heard (*e.g.*, a friend, the newspaper, a website).

_____

_____

41.   Based on anything that you have read, seen, or heard about Ms. Daniels, have you formed any opinions about Ms. Daniels that might make it difficult for you to be a fair and impartial juror in this case?

        Yes             No           Not applicable, I have not read/seen/heard about Ms. Daniels

42.   If the answer to Question #41 was yes, please explain why it might be difficult for you to be a fair and impartial juror in this case.

_____

_____

Juror ID: _____

43.   Based on anything you have read, seen, or heard about Ms. Daniels, would you be able to follow the Court's instruction to put that information out of your mind and decide this case based only on the evidence presented at trial?

        Yes            No          Not applicable, I have not read/seen/heard about Ms. Daniels

44.   Do you know or have you heard of any of the following people or entities, which include the lawyers in this case, people who may testify at the trial, and other names that may be mentioned during the course of the trial?  (Please circle any for whom or which the answer is yes.)

- Pamela Baez
- Elizabeth Beier
- Geoffrey Berman
- Christine Carlin
- Dmitri Chitov
- Dwayne Crawford
- Daniel Dubin
- Madison Dunbar
- Melissa Galicia
- Mark Geragos
- Jack Guiragosian
- Christopher Harper
- Luke Janklow
- Janklow & Nesbit Associates
- Geoffrey Johnson
- Global Baristas
- Sean Macias
- Macmillan Publishers

- Susan McClaran
- Benjamin Meiselas
- Travis Miller
- Mareli Miniutti
- Mariel Colon Miro
- Denver Nicks
- David Padilla
- Brandon Parraway
- DeLeassa Penland
- Matthew Podolsky
- Pro Tech Security and Automation
- Judy Regnier
- Sally Richardson
- Security and Automation LLC
- St. Martin's Press
- Robert Sobelman
- Jessica Volchko
- Thomas Warren

45.   <u>If you circled any of the entries in Question #44</u>, please describe your familiarity with that person or entity:

_____

_____

_____

46.   <u>If you circled any of the entries in Question #44</u>, would your familiarity with that person or entity it difficult for you to be impartial to the parties in this case and to decide the case based solely on the evidence presented at trial?  (Please circle.)

        Yes                        No

**Juror ID:** _____

47.  <u>If the answer to Question #46 was yes</u>, please describe why it would be difficult for you to be impartial.

_____

_____

_____

## **<u>DECLARATION</u>**

I, _____ (***print name***) declare under penalty of perjury that the foregoing answers set forth in this Jury Questionnaire are true and correct to the best of my knowledge and belief.  I have not discussed my answers with others, or received assistance in completing the questionnaire.

Signed this _____ day of April, 2020

_____

(*signature*)

**Juror ID:** _____

**You may use these pages to finish any answers that you could not fit in the spaces provided above.  If you write anything below, please indicate the number of the relevant question.**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Juror ID:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Juror ID:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____