**WARREN TERZIAN LLP**
Thomas D. Warren (*pro hac vice*)
*tom.warren@warrenterzian.com*
Daniel Dubin (*pro hac vice*)
*daniel.dubin@warrenterzian.com*
700 S. Flower St., Suite 1000
Los Angeles, CA 90017
T: (213) 410-2620

*Attorneys for Defendant*
*Michael John Avenatti*

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. |
| Plaintiff, | |
| v. | **LODGING OF OBJECTION TO OCTOBER 13, 2020 TRIAL DATE** |
| **MICHAEL JOHN AVENATTI**, | |
| Defendants. | |

Defendant Michael Avenatti, by and through his counsel of record, hereby lodges an objection to the October 13, 2020 trial date set by the Court in its May 20, 2020 scheduling order. (Dkt. 55)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.......................................................................iii

ARGUMENT ........................................................................................ 1

A.    Trial during a deadly, highly contagious pandemic would impair the defendant's right to effective assistance of counsel ......................................................................... 2

B.    Trial during a deadly pandemic would deprive the defendant of trial before a fair cross-section of the community ............... 7

C.    Trial during a deadly pandemic would compromise the defendant's right to meaningful confrontation ............... 10

D.    Trial during a deadly pandemic would compromise the defendant's right to compulsory process, to present evidence, and to testify ........................................... 11

E.    Trial during a deadly pandemic would compromise the defendant's right to be present and to be judged without the effect of a prejudicial face covering ................................... 13

F.    Trial during a deadly pandemic would compromise the defendant's right to be tried by an impartial jury and be free of coercive verdicts .......................................... 14

G.    Trial during a deadly pandemic would compromise the defendant' right to be free of coercive pressure to plead guilty ............................................................... 15

H.    Trial during a deadly pandemic would violate the defendant's due process right to the exercise of reasonable care toward the health and safety of persons confined by state action .......................................................... 16

CERTIFICATE OF SERVICE ............................................... 18

**Lodging of Objection to October 13, 2020 Trial Date**

WARREN
TERZIAN LLP

1

# TABLE OF AUTHORITIES

2

**CASES:**                                                              **Page**

3

*Brady v. United States,*
4 397 U.S. 742 (1970) ................................................................. 15

5

*Burdine v. Johnson,*
6 262 F.3d 336 (5th Cir. 2001) ....................................................... 3

7

*California v. Green,*
8 399 U.S. 149 (1970)................................................................... 10

9

*Chambers v. Florida,*
10 309 U.S. 227 (1940)................................................................... 15

11

*Chambers v. Mississippi,*
12 410 U.S. 284 (1973) .................................................................. 11

13

*Coy v. Iowa,*
14 487 U.S. 1012 (1988)................................................................. 10

15

*Deck v. Missouri,*
16 544 U.S. 622 (2005)................................................................... 13

17

*DeShaney v. Winnebago County Dep't of Social Services,*
18 489 U.S. 195 (1989)................................................................... 16

19

*Duren v. Missouri,*
20 439 U.S. 357 (1976)..................................................................... 7

21

*Estelle v. Williams,*
22 425 U.S. 501 (1976)................................................................... 13

23

*Freeman v. Ferguson,*
24 911 F.2d 52 (8th Cir.1990) ........................................................ 16

25

*Geders v. United States,*
26 425 U.S. 80 (1976).................................................................. 4–5

28

Lodging of Objection to October 13, 2020 Trial Date

WARREN
TERZIAN LLP

*Gregory v. City of Rogers, Ark*,
974 F.2d 1006 (8th Cir. 1992) ................................................................ 16

*Jones v. Phyfer*,
761 F.2d 642 (11th Cir. 1985) ................................................................ 16

*Jordan v. Massachusetts*,
225 U.S. 167 (1912) ................................................................ 14

*Kercheval v. United States*,
274 U.S. 220, 223 (1927) ................................................................ 15

*Kirby v. Illinois*,
406 U.S. 682 (1972) ................................................................ 2

*Machibroda v. United States*,
368 U.S. 487 (1962) ................................................................ 15

*Maryland v. Craig*,
497 U.S. 836 (1990) ................................................................ 10

*Mattox v. United States*
156 U.S. 237 (1896) ................................................................ 10

*Montejo v. Louisiana*,
556 U.S. 778 (2009) ................................................................ 2

*Morris v. Slappy*,
461 U.S. 1 (1983) ................................................................ 7

*Perry v. Leeke*,
488 U.S. 272 (1989) ................................................................ 3

*Powell v. Alabama*,
287 U.S. 45 (1932) ................................................................ 3

*Rock v. Arkansas*,
483 U.S. 44 (1987) ................................................................ 11–12

**Lodging of Objection to October 13, 2020 Trial Date**

WARREN
TERZIAN LLP

*Smith v. Robbins,*
528 U.S. 259 (2000)................................................................. 2

*State v. Long,*
499 A.2d 264 (N.J. 1985) ........................................................ 9

*Tanner v. United States,*
483 U.S. 107 (1987)................................................................ 14

*Taylor v. Illinois,*
484 U.S. 400 (1987)................................................................ 11

*United States v. Cronic,*
466 U.S. 648 (1984)................................................................. 3

*United States v. DeJesus-Castaneda,*
705 F.3d 1117 (9th Cir. 2013) ................................................ 10

*United States v. El-Mezain,*
664 F.3d 467 (5th Cir. 2011) .................................................. 10

*United States v. Hemmingson,*
157 F.3d 347 (5th Cir. 1998) .................................................... 7

*United States v. Kennedy,*
548 F.2d 608 (5th Cir. 1977). ................................................... 7

*United States v. Kimmel,*
777 F.2d 290 (5th Cir. 1985) .................................................. 15

*United States v. Snarr,*
704 F.3d 368 (5th Cir. 2013). ................................................... 9

*Waley v. Johnston,*
316 U.S. 101 (1942)................................................................ 15

*Walker v. Johnston,*
312 U.S. 275 (1941)................................................................ 15

**Lodging of Objection to October 13, 2020 Trial Date**

WARREN
TERZIAN LLP

*Washington v. Texas,*
88 U.S. 14 (1967).................................................................... 11

*Weatherford v. Bursey,*
429 U.S. 545 (1977)................................................................. 5

*Wells v. Walker,*
852 F.2d 368 (8th Cir. 1988) ................................................. 16

## **OTHER AUTHORITIES:**

U.S. Const. Amend. VI .................................................passim

**Lodging of Objection to October 13, 2020 Trial Date**

WARREN
TERZIAN LLP

**ARGUMENT**

The trial in this matter is likely to last for approximately two to three week, depending on the extent to which the Court permits the government to try its case through 404(b) evidence.

Mr. Avenatti files this notice because the defense has serious concerns about Mr. Avenatti's right to a fair trial on October 13, 2020 or anytime soon thereafter in light of the coronavirus and its effects on the defense and counsel.

As of the date of this filing, there are over 2 million confirmed cases of COVID-19 in the United States, with nearly 120,000 deaths. New York alone accounts for over 400,000 cases and 30,000 deaths. And many experts, including renowned expert Dr. Anthony Fauci, are predicting a "second wave" for the pandemic, which may result in a more dangerous set of circumstances than the first wave and produce a larger percentage of cases and deaths in the fall and winter. Dr. Ashish Jha, director of the Harvard Global Health Institute, opined on June 11, 2020 that by this September, more than 200,000 Americans will have lost their lives.[1]

Simply put, there is nothing that presently suggests that the pandemic will be "over" by October or that any degree of true normalcy will be restored by that date.

To the contrary, Dr. Fauci recently stated that there will likely be no return to normalcy before the summer of 2021. "I would hope to get to some

---

[1] Maura Hohman, *Coronavirus deaths could reach 200,000 by early fall, Harvard doctor warns* (June 11, 2020), available at https://www.today.com/health/us-coronavirus-deaths-could-reach-200-000-september-harvard-doctor-t183984 (last accessed June 14, 2020).

**Lodging of Objection to October 13, 2020 Trial Date**

WARREN
TERZIAN LLP

degree of real normality within a year or so. But I don't think it's this winter or fall," he said only yesterday.[2]

A trial in October, in the middle of the COVID-19 pandemic, would have a significant, negative and dramatic impact on Mr. Avenatti's rights, including (a) his rights to effective assistance of counsel, including pre-trial preparation, trial performance, and midtrial consultation with counsel, (b) to be tried entirely on properly admitted evidence; (c) to be tried by a fair cross-section of the community; (d) to meaningful confrontation; (e) to compulsory process; (f) to an impartial jury that can reasonably be expected to hear the evidence with the appropriate attention, and to be free of coercive verdicts; (g) to be free of coercive pressure to plead guilty; and (h) to the exercise of reasonable care for the safety of those endangered by state action.

## A.   Trial during a deadly, highly contagious pandemic would impair the defendant's right to effective of assistance of counsel.

Defendants enjoy a right to the assistance of counsel at all critical stages of a criminal proceeding. *See Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). Both the trial itself and the post-indictment period before trial constitute critical stages. *See Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (right to counsel attaches "at or after the time adversary judicial proceedings have been initiated against him"). When defendants suffer the impairment of counsel by a state-created barrier, they need not show that the inadequate performance affected the outcome—they need only show that such barriers affected counsel's performance. *See Smith v.*

---

[2] Lisette Voytko, *Fauci Says 'Real Normality' Unlikely For A Year As U.S. Continues Pandemic Slog* (June 14, 2020), available at https://www.forbes.com/sites/lisettevoytko/2020/06/14/fauci-says-real-normality-unlikely-for-a-year-as-us-continues-pandemic-slog/#322489d51855 (last accessed June 14, 2020).

**Lodging of Objection to October 13, 2020 Trial Date**

WARREN
TERZIAN LLP

*Robbins*, 528 U.S. 259, 287 (2000) ("various kinds of state interference with counsel's assistance' can warrant a presumption of prejudice.")(internal quotations omitted); *Perry v. Leeke*, 488 U.S. 272 (1989)(recognizing that while most claims of ineffectiveness require a showing of prejudice, "direct governmental interference with the right to counsel is a different matter.") And in some circumstances, the effective performance of counsel is so unlikely as to amount to the functional equivalent of a complete denial of counsel. *See United States v. Cronic*, 466 U.S. 648 (1984); *Burdine v. Johnson*, 262 F.3d 336, 347 (5th Cir. 2001) (en banc).  In these cases, reversal is automatic. *See Cronic*, 466 U.S. at 659.

Trial under the current circumstances would destroy the defendant's right to counsel in multiple ways and would constitute both the state interference with the duties of counsel and the constructive denial of counsel altogether.

> 1. <u>Trial in October would so compromise counsel's trial performance as to constitute a complete denial of counsel; it would also destroy any meaningful right to mid-trial attorney-client consultation.</u>

Trial in a setting that gravely threatens his or her own physical well-being—as well as that of his or her client and family—amounts to the constructive denial of counsel. *See Powell v. Alabama*, 287 U.S. 45, 53 (1932) (demand that counsel try a capital case on short notice and under thinly veiled threat of mob violence effectively deprived defendants of counsel).  Conducting a jury trial always requires immense and sustained focus. Under the best of circumstances, even a simple criminal trial presents innumerable moving parts that require the full, rapt attention of one or more attorneys. And if an attorney stumbles on any point, such a

**Lodging of Objection to October 13, 2020 Trial Date**

1   misstep may rightfully become scrutinized on appellate review, in habeas
2   petitions, and even bar complaints.

3       Unfortunately, even skilled and experienced trial attorneys would
4   find it impossible to maintain the necessary sustained focus in the current
5   environment. During a deadly pandemic, every step an attorney takes,
6   every pen they pick up, every person that wants to converse, and every
7   cough they hear, could mean infection with a deadly virus.  And they will
8   also be seriously concerned about who will be exposed to the virus when
9   they leave court each day.  Preserving Mr. Avenatti's rights, moreover, will
10  require some effort to put on the record at least the most serious occasions
11  of such distractions.

12      Quite apart from the question of divided attention, trying the case
13  under COVID-19 protocols will undermine counsel's ability to perform
14  other basic functions. Counsel—like the jury and judge—probably will not
15  understand all of the testimony of masked witnesses and will be unable to
16  evaluate their demeanor. Nor will counsel be able to judge the reactions of
17  jurors or the Court.  Indeed, a crucial part of being an effective trial
18  advocate is the ability to gauge the reaction of jurors to the evidence and
19  witness testimony in real time and adjust your presentation and trial
20  strategy accordingly.  If the jurors are forced to wear masks covering a
21  significant portion of their faces, the ability of trial counsel to perform this
22  critical task is eliminated.  Communication with co-counsel, witnesses, and
23  paralegals will likewise be impaired.

24      Most critically, counsel will have to choose between their own safety
25  and consultation with Mr. Avenatti, who faces years in prison. The
26  defendant possesses an unqualified right to consult with his attorney
27  throughout his trial.  *See Geders v. United States*, 425 U.S. 80 (1976).
28  Indeed, that right prevails over even very weighty concerns of trial

1    administration, such as the witness sequestration rule.  *See Geders*, 425
2    U.S. at 88-92.

3        The current setting burdens this right in several ways. The efficacy
4    of attorney-client consultation diminishes at a distance. If the defendant
5    and counsel can hear each other at this distance, they probably cannot
6    speak privately, as contemplated by the Sixth Amendment. *See*
7    *Weatherford v. Bursey*, 429 U.S. 545, 554 n. 4 (1977).  And because such
8    conversations cannot be conducted safely, privately, and effectively, they
9    will inevitably be conducted less frequently than necessary. Nor, of course,
10   could such consultations be safely conducted at shorter distances.

11       Conceivably, the Court could recess the trial each time the defendant
12   and his counsel wished to confer, to permit a private conversation. This
13   would exact a massive toll on the trial's efficiency, and likely generate
14   frustration and resentment by jurors toward the defendant. Further, it
15   would call heightened attention to the defendant's conferences with his
16   lawyer, and increase the risk that the jury draws factual inferences of guilt
17   from his behavior at counsel table. The defendant's consultation with his
18   lawyer, like his conduct at counsel table generally, constitutes an improper
19   basis for conviction.

20       2.   <u>Trial in October would effectively deprive the defendant</u>
21            <u>of the right to counsel in the period of pretrial</u>
22            <u>preparation.</u>

23       The Supreme Court has recognized "that the assistance of counsel
24   cannot be limited to participation in a trial; to deprive a person of counsel
25   during the period prior to trial may be more damaging than denial of
26   counsel during the trial itself." *See Weatherford v. Bursey*, 429 U.S. 545,
27   554 n. 4 (1977). Here, an October trial would compromise several
28   important forms of pre-trial preparation.

1   First, counsel cannot reasonably make strategic decisions without

2   basic knowledge about how it will be conducted, including as it relates to

3   voir dire. It is anticipated that due to Mr. Avenatti's notoriety and the

4   media attention surrounding his arrests and recent conviction, an initial

5   panel of at least 125-150 prospective jurors will be required.[3]

6   Trial attorneys should be expert in the rules and procedures that

7   govern the trial. Without a detailed recitation of the trial protocols, the

8   defense can neither prepare evidence for the trial nor challenge its

9   processes. Cross-examination strategies, for example, may depend on

10   whether a witness will be wearing a mask. Counsel cannot responsibly

11   decide how much evidence to present without knowing how uncomfortable

12   or fearful the jury will be when hearing it.  Nor can the defense know how

13   to display its exhibits or demonstrative aids without knowing where and

14   how the jury will sit, or what technology is available.  Further, witnesses

15   cannot be prepared without being able to tell them how they will testify:

16   in a mask, over closed-circuit TV, at the far side of the room.  Most

17   critically, the defendant's own choice to testify may well be affected by the

18   Court's decision about whether he is going to do so in a mask.

19   There is also the question of how discussions at the bench will occur

20   during the trial.  Oftentimes during a trial, the parties need to discuss a

21   matter out of earshot of the jury and those discussions take place huddled

22   at the bench. Will the jury be excused each time a discussion needs to occur

23   with the Court so the parties may remain some distance from each other?

24   Pretrial consultation has also been significantly affected.  Beyond the

25   inability to review discovery with the defendant as discussed above,

26

27

28

---

[3] If social distancing requirements are to be met, this will require a contiguous space of at least 14,125 square feet (125 individuals x 113 square feet per individual (area of a circle with a 6 foot radius), not accounting for Court staff and attorneys.

**Lodging of Objection to October 13, 2020 Trial Date**

WARREN
TERZIAN LLP

counsel cannot converse with the defendant or the defense witnesses live, in face-to-face confrontation, in order to judge demeanor for possible testimony.

Put simply, the assistance of counsel that the defendant would receive in these circumstances would not be what the Constitution demands.  Insistence on proceeding with a lengthy trial under these circumstances would represent an "unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Morris v. Slappy*, 461 U.S. 1, 11–12, (1983) (citing *Ungar*, 376 U.S. at 589). It would therefore violate the constitution.

## B.   Trial during a deadly pandemic would deprive the defendant of trial before a fair cross-section of the community.

The Sixth Amendment and 28 U.S.C. §1861 et seq. (the "Jury Selection Act") guarantee a party a trial before a fair cross-section of the community. In order to show a violation of the statute, a defendant must prove a "substantial failure" to comply with its provisions. A substantial failure is one that destroys the "random nature or objectivity of the selection process." *United States v. Hemmingson*, 157 F.3d 347, 358 (5th Cir. 1998)(internal citations omitted, quoting 28 U.S.C. § 1867(a)), and *United States v. Kennedy*, 548 F.2d 608, 612 (5th Cir.1977).

To show a Sixth Amendment violation, the defendant must show that (1) "the group alleged to be excluded [from the jury system] is a 'distinctive' group in the community," (2) "the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community," and (3) "this underrepresentation is due to systematic exclusion of the group in the jury selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1976).

Jury summonses issued during the pandemic cannot produce a lawful cross-section of the community. Neither the coronavirus nor the economic dislocation it has occasioned have affected the community uniformly. Some portions of the Southern District have suffered higher infection rates, and experience greater risks of serious illness or death than have others.  Nor is fear of the virus uniform along ethnic or racial lines.  Because of significant racial and ethnic differentials in infection rates and access to health insurance, different racial and ethnic groups within our community may feel greater vulnerability to the virus in the event it is contracted.

As to the economic effects, some segments of our community have experienced elevated rates of occupational dislocation, and graver risks to family finances upon losing a job or paycheck.  Further, some ethnic and racial groups have higher concentrations of employment in critical industries.  Women are also concentrated in these industries.  Finally, the age structure of each ethnic and racial grouping in our community varies significantly.  Moreover, the virus's disruption of childcare arrangements will certainly affect different ethnic and racial groupings, and their ability and willingness to serve on a jury, differently. These differences will almost certainly manifest themselves in differential response rates to summons.

The magnitude and breadth of social and economic change in the immediate wake of the virus is absolutely vast. Predictions about the precise ways that the virus will skew summons response rates are therefore dangerous and unknown. Certainly, however, the group of people who answer the summons will not resemble a typical, representative jury pool in the Southern District.

WARREN
TERZIAN LLP

1    That suffices to show a violation of the Jury Selection Act and the
2  Constitution. The act of sending summons at the peak of a pandemic
3  "destroys the random nature" of jury selection.  For instance, just as a jury
4  summons issued for service on a major religious holiday observed by a
5  plurality of the community would not produce a "random" selection of its
6  residents, nor would a summons issued during a pandemic that affects
7  large ethnic groups more severely than its white, conservative, Republican
8  residents.

9    The issuance of a summons for jury duty in October will likely skew
10  the venire by large margins along multiple cognizable cleavages.  Further,
11  the unequal probabilities for jury service among each group will result
12  from systemic, rather than random, factors. The decision to convene a jury
13  trial in this short moment of intense social dislocation represents a
14  "procedure[] in the jury selection process that work(s) to exclude class
15  members." *United States v. Snarr*, 704 F.3d 368, 385 (5th Cir. 2013).

16    Finally, even if every cognizable group in the District had the same
17  probability of jury selection, COVID-19 notwithstanding, it would still
18  violate the Jury Selection Act and Sixth Amendment. *If we can predict*
19  *nothing else about jury selection in a pandemic, one thing is almost certain:*
20  *the response rate will be abnormally low*. Because an adequate sample size
21  is essential to random selection, this fact alone will "destroy the random
22  nature" of the selection process. Further, it will significantly increase the
23  likelihood that the responding population underrepresents someone, and
24  hence increase the likelihood of a homogenous or statistically outlying
25  jury. This is not a fair cross-section.  *See State v. Long*, 499 A.2d 264, 272
26  (N.J. 1985) (a system that produces homogenous venires does not produce
27  a fair cross-section, even if each resident has an equal chance of service).
28

WARREN
TERZIAN LLP

1    **C.    Trial during a deadly pandemic would compromise the**
2          **defendant's right to meaningful confrontation.**

3    The Constitution guarantees the defendant the right to confront
4    witnesses against him.   *See* U.S. Const. Amend. VI.   An essential
5    component of that right is:

6           [T]he opportunity, not only of testing the recollection
7           and sifting the conscience of the witness, but of
8           compelling him to stand face to face with the jury in
9           order that they may look at him, and judge by his
10          demeanor upon the stand and the manner in which he
11          gives his testimony whether he is worthy of belief.

12   *Mattox v. United States*, 156 U.S. 237, 242 (1896); *accord Maryland v.*
13   *Craig*, 497 U.S. 836, 845 (1990); *Coy v. Iowa*, 487 U.S. 1012 (1988);
14   *California v. Green*, 399 U.S. 149 (1970).   Compelling witnesses to testify
15   in a face covering would obviously impair the jury's capacity to judge the
16   witnesses' facial expressions and demeanor when "standing face to face"
17   and "looking at" the witnesses.

18   In some cases, courts have permitted witnesses to testify in facial
19   covering to protect their safety. *See, e.g., United States v. DeJesus-*
20   *Castaneda*, 705 F.3d 1117, 1120 (9th Cir. 2013); *see also Craig*, 497 U.S. at
21   851 (closed circuit testimony); *United States v. El-Mezain*, 664 F.3d 467,
22   491-494 (5th Cir. 2011) (pseudonymous witness).   But in those cases, the
23   witnesses feared retaliation, and no alternative measure could assure
24   their safety.   *See DeJesus-Castaneda*, 705 F.3d at 1120; *El-Mezain*, 664
25   F.3d at 491-494.     Thus, facial coverings furthered an important
26   government interest and did not render the testimony unreliable.   *See*
27   *DeJesus-Castaneda*, 705 F.3d at 1120; *see also Craig*, 497 U.S. at 850
28   (recounting this test).   Here, by contrast, nothing more is at stake than a

WARREN
TERZIAN LLP

delay in the trial date—unmasked testimony will be perfectly safe after the pandemic. Further, if the witnesses cannot be understood, their testimony – as comprehended by the jury—is not reliable.

Finally, the right of confrontation may be drained of its value even if the witnesses do not testify in coverings. If the jury finds that government witnesses appear nervous or concerned about their answers, this fact may have little probative value in a pandemic. Large numbers of the trial participants will be scared to be in public during a deadly infection, a matter wholly independent of the truth of their testimony. Accordingly, a continuance is necessary to protect the core of the defendant's confrontation right.

**D.    Trial during a deadly pandemic would compromise the defendant's right to compulsory process, to present evidence, and to testify.**

The Sixth Amendment promises Mr. Avenatti "compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1987); *accord Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Moreover, "the right is a fundamental element of due process of law." *Taylor*, 484 U.S. at 409; *accord Washington v. Texas*, 388 U.S. 14, 19 (1967). These rights carry special force when the defendant himself seeks to testify. *See Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987). The defendant's right to testify overcomes even strong public policy concerns about the reliability of evidence, and may defeat even less than absolute prohibitions on giving testimony. *See Rock*, 483 U.S. at 56-62. That right arises from dignitary concerns—the personal nature of the right to be heard "in his own

Lodging of Objection to October 13, 2020 Trial Date

1  words"—and not solely on constitutional protections against unreliable
2  verdicts.  *Id.* at 52.

3        Trial during a pandemic would undermine this complex of
4  fundamental rights.  Assuming defense investigators can make service of
5  subpoenas, the pandemic creates a serious risk of witness non-compliance.
6  And if defense witnesses do appear, the jury cannot evaluate their
7  credibility, whether positively or negatively, if they testify in facial
8  coverings.   Further, causing witnesses to testify in a state of fear
9  significantly prejudices Mr. Avenatti.

10        If nothing else, the need to testify in facial coverings will seriously
11  abridge the defendant's right to be heard. This is true in a literal sense—
12  early experience with speaking through facial coverings suggests that it is
13  often incomprehensible. But it is also true in another sense -- the jury will
14  not be able to see and evaluate Mr. Avenatti's face if he testifies. Speech is
15  more than expulsion of sound waves; it is a full presentation of the self,
16  especially through facial expression.  Accordingly, a defendant compelled
17  to testify behind a mask is no more heard "in his own words" than one
18  compelled to deliver testimony in writing.

19        Finally, causing Mr. Avenatti and other witnesses to appear in Court
20  while they are nervous about health issues unrelated to guilt or innocence,
21  or the facts of the case, prejudices the defendant.  Jurors will observe Mr.
22  Avenatti while the trial is proceeding and if he appears nervous, they could
23  unfairly interpret that as consciousness of guilt.  Likewise, they could
24  interpret the nervousness of a defense witness as a sign of lacking
25  credibility or belief in their own testimony.

26
27
28

1
2
3

**E.    Trial during a deadly pandemic would compromise the defendant's right to be present and to be judged without the effect of a prejudicial face covering.**

4
5
6
7
8
9
10

Ultimately, the defendant will either attend the trial in a mask or without one. Neither option is fair to him. Due process requires courts to consider whether the appearance of the defendant will prejudice the jury, and to take care to avoid such prejudice. *See Estelle v. Williams*, 425 U.S. 501 (1976). Thus, defendants may not be tried in prison garb, *see Williams*, 425 U.S. at 505, nor in shackles barring clear threats to the safety or good order of the proceedings. *See Deck v. Missouri*, 544 U.S. 622 (2005).

11
12
13
14
15
16
17
18
19

Our culture very frequently associates masks with villainy. Train bandits, Hannibal Lecter, and Klansman, figures now etched into the contemporary American subconscious, all wear masks. And there may well be a segment of the population that dislikes not merely the mask but the people who wear them.[4] Indeed, there are already signs that wearing a mask is becoming widely politicized, with media reports of "mask shaming" in the United States and conservative supporters of the President labeling individuals who wear masks as "left wing liberals who don't respect individual freedoms."

20
21
22
23

Alternatively, Mr. Avenatti's presence without a mask could prejudice the jury against him, inviting inferences that he is selfish and reckless towards the lives of others. Some jurors may agree with New York

24
25
26
27
28

---

[4] *See* Ryan Lizza and Daniel Lippman, *Wearing a mask is for smug liberals. Refusing to is for reckless Republicans* (May 1, 2020) ("On the right, where the mask is often seen as the symbol of a purported overreaction to the coronavirus, mask promotion is a target of ridicule, a sign that in a deeply polarized America almost anything can be politicized and turned into a token of tribal affiliation."), available at *https://www.politico.com/news/2020/05/01/masks-politics-coronavirus- 227765* (last accessed May 26, 2020).

1   Governor Andrew Cuomo, a major public figure in the country's COVID-
2   19 response, who said publicly that mask refusal "is insensitive, it is
3   arrogant, it is self-destructive, it is disrespectful to other people."[5]   The
4   Court should wait until a time that it does not have to make this choice.

5   **F.    Trial during a deadly pandemic would compromise the**
6   **defendant's right to be tried by an impartial jury and to**
7   **be free of coercive verdicts.**

8   Trial during a deadly pandemic would compromise the defendant's
9   right to be trial by an impartial jury and to be free of coercive verdicts.  The
10  Supreme Court "has recognized that a defendant has a right to a tribunal
11  both impartial and mentally competent to afford a hearing." *Tanner v.*
12  *United States*, 483 U.S. 107, 126 (1987); *Jordan v. Massachusetts*, 225 U.S.
13  167, 176 (1912). Moreover, the jury should be reasonably attentive.  And it
14  cannot be coerced into rendering a premature verdict.

15  A trial in October cannot be accomplished consistently with these
16  principles. Jurors will not likely devote their full attention to the testimony
17  and evidence while they worry about their safety and that of loved ones.
18  Nor can they be expected to remain neutral in these circumstances, free of
19  any resentment toward the prosecution for bringing the case, or, more
20  likely, the defendant for insisting on a jury trial. Finally, when the jury
21  returns for deliberations, the Court should not be surprised by a quick
22  verdict to terminate the proceedings. Other than avoiding service through
23  voir dire or simple non-compliance with a summons, which should both be
24  expected as jurors seek to avoid potentially deadly exposure to the virus,
25  the speed of the verdict will be the one way that jurors can control the
26

27  ---
    [5] George Back, *Andrew Cuomo on 'selfish' New Yorkers not wearing masks: 'I just don't*
28  *get it'*, Yahoo Entertainment (May 7, 2020), available at *https://sports.yahoo.com/*
    *andrew-cuomo-on-selfish-new-yorkers-not-wearing-masks-i-just-dont-get-it-*
    *074031942.html* (last accessed May 26, 2020).

**Lodging of Objection to October 13, 2020 Trial Date**

WARREN
TERZIAN LLP

1    duration of their viral exposure. In deciding whether a verdict is coerced,
2    "the real question is whether the jury was required to deliberate an
3    unreasonable length of time or for unreasonable intervals or was
4    threatened with the prospect of such unreasonably lengthy deliberations."
5    *United States v. Kimmel*, 777 F.2d 290, 295 (5th Cir. 1985).  In the midst
6    of a pandemic, nearly any amount of time is "an unreasonable length of
7    time."

8    **G.    Trial during a deadly pandemic would compromise the**
9    **defendant's right to be free of coercive pressure to plead**
10   **guilty.**

11   The choice between trial and a plea of guilty must be made entirely
12   voluntarily, and without any threats or promises of unlawful action. *See*
13   *Brady v. United States*, 397 U.S. 742, 748 (1970); *Machibroda v. United*
14   *States*, 368 U.S. 487, 493 (1962); *Waley v. Johnston*, 316 U.S. 101, 104
15   (1942); *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Chambers v. Florida*,
16   309 U.S. 227 (1940); *Kercheval v. United States*, 274 U.S. 220, 223 (1927).
17   Scheduling a trial in October would undermine the voluntary character of
18   this choice in two ways.

19   First, proceeding with a trial in October undermines the value of the
20   jury trial as a means for obtaining exoneration or acquittal upon less than
21   proof beyond a reasonable doubt. Even if the government fails to present
22   proof beyond a reasonable doubt, Mr. Avenatti may be convicted for
23   improper reasons: because defense counsel is too distracted to mount an
24   effective cross-examination, because the jury lacks the accumulated
25   wisdom and experience of a diverse cross-section, because the jury cannot
26   see a witness smirk beneath his mask, because a crucial defense witness
27   ignores a subpoena rather than risk his or her life to the virus, because the
28   jury feels prejudice toward the defendant because he is or is not wearing a

15

WARREN
TERZIAN LLP

mask, because the jury is too distracted to notice the holes in the government's case, because the jury resents Mr. Avenatti's insistence on a trial, or because the last hold-out juror surrenders her honest convictions to get out of a hot zone.

Second, proceeding with a trial in October would force the defendant to choose between his right to trial and his personal safety. The decision to waive trial by jury is not voluntary if the trial could result in death or permanent lung damage to the defendant or another participant.

## H. Trial during a deadly pandemic would violate the defendant's due process right to the exercise of reasonable care toward the health and safety of persons confined by state action.

The due process clause "imposes a duty on state actors to protect or care for citizens when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Gregory v. City of Rogers, Ark*, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc). Due process imposes a duty on state actors to protect or care for citizens in two situations: first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second, when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced. *See Wells v. Walker*, 852 F.2d 368, 370 (8th Cir.1988); *see also DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 195 (1989); *Freeman v. Ferguson*, 911 F.2d 52, 55 (8th Cir.1990). The government violates an individual's right to due process when it (1) "affirmatively place[s] [the] individual in danger," or (2) by "acting with 'deliberate indifference to [a] known or obvious danger.'" *Jones v. Phyfer*, 761 F.2d 642 (11th Cir. 1985) (a constitutional right to protection by the state exists when there is a

WARREN
TERZIAN LLP

1  showing that the victim faces a special danger distinguishable from that
2  of the public at large).

3      Barring a plea of guilty, Mr. Avenatti is compelled to attend his own
4  trial.  And as argued above, the trial, however conducted, and certainly if
5  conducted in a way that respects any of Mr. Avenatti's procedural rights,
6  will expose him to a serious risk of contracting the virus. Accordingly,
7  proceeding with a trial in October will deprive him of the due process right
8  to physical security in the face of state-created danger.

9

10  Dated: June 15, 2020                         Respectfully submitted,

11

12                                              **WARREN TERZIAN LLP**

13

14                                              /s/ Thomas D. Warren
                                                Thomas D. Warren (*pro hac vice)*
15                                              Daniel Dubin (*pro hac vice*)
                                                700 South Flower Street
16                                              Suite 1000
                                                Los Angeles, CA 90017
17                                              Telephone:  (216) 304 4970
                                                tom.warren@warrenterzian.com
18                                              daniel.dubin@warrenterzian.com
19
                                                *Attorneys for Defendant*
20                                              *Michael Avenatti*
21

22

23

24

25

26

27

28

**Lodging of Objection to October 13, 2020 Trial Date**

WARREN
TERZIAN LLP

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on June 15, 2020, I caused a true and correct

3

4

copy of the foregoing to be served by electronic means, via the Court's

5

CM/ECF system, on all counsel registered to receive electronic notes.

6

/s/ Thomas D. Warren

7

Thomas D. Warren

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28