UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

UNITED STATES OF AMERICA          :

                                    :

     - v. -                    :           19 Cr. 374 (JMF)

                                    :

MICHAEL AVENATTI,            :

                                    :

               Defendant.     :

                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S RENEWED MOTION TO TRANSFER


AUDREY STRAUSS
Acting United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007


Matthew Podolsky
Robert B. Sobelman
Assistant United States Attorneys
- Of Counsel -

## PRELIMINARY STATEMENT

Defendant Michael Avenatti has renewed his motion to transfer this case to the Central District of California pursuant to Rule 21 of the Federal Rules of Criminal Procedure.  As the Honorable Deborah A. Batts already correctly concluded, evaluation of the *Platt* factors weighs decisively against transfer of this case, as many of those factors, including, most notably, the location of witnesses and the events at issue, strongly favor trial in the Southern District of New York, where the defendant was indicted.  Far from being undercut, this conclusion is further bolstered by public health concerns created by the COVID-19 pandemic, which counsel against requiring witnesses, law enforcement agents, and prosecutors to travel from New York to California to try a case in which the fraud and its investigation centered around New York City. Such an outcome would be contrary to application of the *Platt* factors and in the interest of no one but the defendant himself.

Moreover, much like his first motion to transfer, the defendant's argument turns on a single, faulty premise: that transfer of this case to the Central District of California would necessarily result in consolidation of this case with another criminal case currently pending in that district, *United States v. Avenatti*, No. 19 Cr. 61 (JVS) (the "California Prosecution").  (Dkt. No. 56-1 ("Def. Mem.") at 2.[1])  This premise was previously rejected by Judge Batts in denying the defendant's initial motion to transfer and the defendant offers no basis to revisit that conclusion. *See generally United States v. Avenatti*, No. 19 Cr. 374 (DAB), 2019 WL 4640232 (S.D.N.Y. Sept. 24, 2019).  To the contrary, as described below, the defendant's own recent litigation strategy in

---

[1]   Because the defendant's memorandum in support of his motion does not contain page numbers, page references for the defendant's memorandum in support of his renewed motion to transfer are to the ECF pagination of Dkt. No. 56-1.

the California Prosecution—where he intends to seek severance of the counts already pending against him—substantially undercuts any notion that the defendant intends to and would ultimately proceed with a single trial on all of the charges pending against him in both districts.

Accordingly, the defendant's motion to change venue should be denied because venue is proper in the Southern District of New York, the defendant cannot overcome the presumption of trial in the venue in which he was charged, and there is no valid basis for transfer to the Central District of California.

## **BACKGROUND**

### I.     **The Charges**

On May 22, 2019, a grand jury sitting in this District charged the defendant with wire fraud and aggravated identity theft, in violation of Title 18, United States Code, Sections 1028A, 1343, and 2.  The charges stem from the defendant's efforts to deceive a Manhattan-based literary agent and Manhattan-based publisher, through the use of wires sent to Manhattan, in order to intercept payments intended for the defendant's client ("Victim-1"), who resides in Louisiana and Texas. Specially, and as alleged more fully in the Indictment, from August 2018 through February 2019, the defendant, an attorney, engaged in a scheme to defraud Victim-1, who was one of his clients at that time, by diverting money owed to Victim-1 to the defendant's control and use.  (Indictment ¶ 1.)  After assisting Victim-1 in securing a book contract with a publisher in Manhattan, the defendant stole a significant portion of Victim-1's advance on that contract by sending a fraudulent and unauthorized letter purporting to contain Victim-1's signature to Victim-1's literary agent in Manhattan.  (*Id.*)  That letter instructed the agent to send payments not to Victim-1 but to a bank account controlled by the defendant.  (*Id.*)

The California Prosecution involves wide-ranging allegations that the defendant embezzled millions of dollars that should have been paid to various other clients, failed to file income tax returns and failed to pay the Internal Revenue Service ("IRS") millions of dollars in taxes, submitted fraudulent loan applications that included tax returns never filed with the IRS, and concealed assets from the Bankruptcy Court.  For those crimes, the defendant has been charged with 10 counts of wire fraud, 19 tax-related offenses, two counts of bank fraud, four counts of bankruptcy fraud, and one count of aggravated identity theft.  All of the victims relevant to the California Prosecution's case resided within the Central District of California during the events at issue in that case.  The defendant's trial in the Central District of California is scheduled to commence on December 8, 2020.  (*See United States v. Avenatti*, 19 Cr. 61 (JVS) (C.D. Cal.), Dkt. No. 171.)

## II.     The Defendant's Prior Motion to Transfer

On August 29, 2019, the defendant filed a motion seeking to transfer this case to the Central District of California under Federal Rule of Criminal Procedure 21 (Dkt. No. 19.)  The defendant argued, in substance, that the California Prosecution and this case were of the same or similar character and transfer to California would be efficient because it would result in the cases being tried together.  (*Id.* at 1.)

On September 24, 2019, the Judge Batts denied the defendant's motion.  *See generally Avenatti*,  2019 WL 4640232.  Judge Batts examined each of the factors for discretionary transfer of venue set out by the Supreme Court in *Platt v. Minnesota Mining Co.*, 376 U.S. 240 (1964), and concluded that "[a]n examination of each of the *Platt* factors makes clear that this prosecution should not be transferred," *Avenatti*, 2019 WL 4640232, at *2.  Judge Batts found that the only

factor favoring transfer was the defendant's place of residence, though in the circumstances the weight of this factor was "slight[]." *Id.* at *3. On the other hand, Judge Batts found (1) that the location of witnesses weighed against transfer because trial witnesses were located predominantly in New York and not in California, *id.*; (2) that, because "the bulk of the alleged crime occurred in Manhattan," "the location of the events in issue strongly disfavors transfer," *id.* at *4; and (3) that, due to the costs of requiring both witnesses and the prosecution team to travel and relocate to California during the trial, the expense to the parties "weighs against transfer," *id.* at *5.

Judge Batts also carefully considered the defendant's arguments that the "the Indictment in this prosecution is 'virtually identical' to 'certain counts' in the Indictment filed in the California Prosecution," and concluded that "[h]is argument fails in numerous ways." *Id.* First, Judge Batts observed that there could be no assurance that a transfer to the Central District of California would result in the consolidation of the charges. *Id.* at *6. Second, Judge Batts held that "this case should not be consolidated with the California Prosecution because the prosecutions are not 'virtually identical' as Defendant alleges," noting the lack of overlap and dissimilarities between the charges and evidence in this case and the California Prosecution. *Id.*

As this Court recently noted, Judge Batts's findings, in addition to being manifestly correct, constitute the law of the case. (*See* Dkt. No. 53.)

## III.    Recent Proceedings

On March 23, 2020, following a joint proposal by the parties (*see* Dkt. No. 48), the Court adjourned the start of trial, which had previously been scheduled to commence on April 21, 2020, to July 14, 2020, in light of the public health conditions created by the COVID-19 pandemic (*see* Dkt. No. 49). The Court also directed the parties to advise the Court by May 15, 2020, as to

whether public health concerns required a further adjournment of trial.  (*See* Dkt. No. 49.)

On April 27, 2020, the Honorable James V. Selna, United States District Judge for the Central District of California, presiding over the California Prosecution, held a telephonic status conference, a transcript of which is attached hereto as Exhibit A.  The defendant and his counsel in the California Prosecution appeared by telephone (*see* Ex. A at 3), and at one point during the proceedings, the defendant himself spoke (*see id.* at 6).  During that status conference, the defendant's attorney represented that he intended to file a motion for "severance of the counts as dissimilar."  (*Id.* at 9.)

On May 15, 2020, the parties jointly filed a letter in this case, as directed by the Court, stating that the parties agreed that ongoing public health concerns mandated a further adjournment of trial in this case.  (*See* Dkt. No. 50.)  The Court adjourned the trial to October 13, 2020, and directed the parties again to advise the Court 60 days prior to the scheduled beginning of trial as to whether the parties believed that a further adjournment of trial was warranted by public health conditions. (Dkt. No. 51.)  Also on May 15, 2020, the defendant filed a separate letter announcing his intention to renew his motion for a transfer of this case to the Central District of California, "[i]n light of the COVID-19 pandemic, the alleged loss amount, and the significant judicial and juror resources (and risk) associated with a separate trial in this matter."  (Dkt. No. 52.)

On June 1, 2020, Judge Selna held a further telephonic status conference in the California Prosecution, a transcript of which is attached hereto as Exhibit B.  The defendant and his counsel in the California Prosecution both appeared by telephone, and the defendant himself spoke on multiple occasions.  (*See* Ex. B at 3, 5, 6.)  During that telephone conference as well, the defendant's attorney stated his intention to move for a severance in the California Prosecution.

5

(*Id.* at 17.)

On June 11, 2020, the defendant filed the instant renewed motion for transfer of venue. The defendant argues that, in light of the COVID-19 pandemic, this case should be transferred "to the Central District of California so that it may be consolidated and tried together" with the California Prosecution, which, the defendant contends, would conserve "judicial and juror resources, as well as . . . protect[ ] . . . the public from exposure to" COVID-19. (Def. Mem. 2.)

## ARGUMENT

The defendant's renewed motion to transfer rests entirely on a faulty premise: that transfer of this case to the Central District of California would result in consolidation of this case with the California Prosecution, and therefore only one trial (with one jury) instead of two. In fact, this argument has already been rejected by Judge Batts—a conclusion that the defendant offers no basis to revisit—and is undermined by the defendant's own litigation strategy in the California Prosecution, where he endeavors to sever the counts already pending against him in that case into multiple trials. What is more, the conditions created by the COVID-19 pandemic, the only basis the defendant relies upon in support of renewal of his motion, counsel against transferring this case to California, a result which would force witnesses principally based in this District, as well as the prosecution team, to travel to California. The defendant, who does not dispute that venue is proper in the Southern District of New York, has still not met his burden of showing that he is entitled to a transfer. The defendant's motion should be denied.

## I.       Applicable Law

"As a general rule a criminal prosecution should be retained in the original district" where the case was charged. *United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982); *accord*

*United States v. Kirk Tang Yuk*, 885 F.3d 57, 74 n.5 (2d Cir. 2018). Discretionary transfers of venue are governed by Federal Rule of Criminal Procedure 21(b), which provides that, "for the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district." Fed. R. Crim. P. 21(b). The "burden is on the moving defendant to justify a transfer under Rule 21(b)." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (quotation marks omitted).

In *Platt*, the Supreme Court introduced a list of factors that courts routinely consider in analyzing a defendant's motion to transfer venue: (1) location of defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district involved; and (10) any other special elements that might affect the transfer. *Spy Factory, Inc.*, 951 F. Supp. at 455 (citing *Platt*, 376 U.S. at 244). "No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (quotation marks and brackets omitted).

## II.   Discussion

The defendant contends that "[t]he COVID-19 pandemic implicates two aspects of the *Platt* analysis"—the docket condition of each district involved and any other special elements that might affect the transfer—and further asserts that re-balancing the factors in light of such implications should result in transfer of this case, notwithstanding Judge Batts's prior conclusion

to the contrary.  (Def. Mem. 4.)  The defendant's arguments as to each factor turn on the claim that transfer of this case to the Central District of California would necessarily result in consolidation with the California Prosecution and one trial on all of the charges currently pending in both cases. (*See id.*)  According to the defendant, such a transfer would therefore have the effect of reducing strain on the combined dockets of the two districts involved and would protect potential jurors by obviating the need for jurors to be called only for this case.

That argument is wrong.  First, Judge Batts previously explained that that there could be no assurance that a transfer of this case to the Central District of California would result in the consolidation of the charges, and, indeed, held that "this case should not be consolidated with the California Prosecution because the prosecutions are not 'virtually identical' as Defendant alleges." *Avenatti*, 2019 WL 4640232, at *6.  The defendant offers no argument, let alone a sufficient basis, for reconsidering this conclusion, which represents the law of the case.  (*See* Dkt. No. 53.)  Second, the defendant's own litigation strategy in the California Prosecution only further confirms the accuracy of Judge Batts's conclusion.  The defendant, though counsel, has repeatedly announced his intention to seek severance of the counts he currently faces in the Central District of California (which, of course, would result in multiple venires for the California Prosecution even without the addition of the charges in this case).  It is impossible to reconcile the defendant's argument here that a transfer would accomplish the goal of a single trial with his position before Judge Selna in the California Prosecution.  (*See* Ex. A at 9; Ex. B at 17.)

Moreover, the defendant's assessment of the effect of the COVID-19 pandemic on this case ignores the *Platt* factors that weigh heavily in favor of retaining venue of this case in the Southern District of New York, and with more force in light of the current pandemic.  With respect

8

to the second *Platt* factor—location of witnesses—Judge Batts observed that the witnesses to the defendant's scheme who will provide "the core testimony at trial" are largely based in Manhattan, rather than California, and concluded that that factor disfavored transfer. *Avenatti*, 2019 WL 4640232, at *3. Indeed, although the Government has identified some potential witnesses in California, the majority live either in the New York City area or in Louisiana and Texas, not in California. The defendant offers no argument as to how or why Judge Batts' finding in this respect was erroneous or has changed in light of the pandemic. Similarly, with respect to the final *Platt* factor—special circumstances—Judge Batts noted that "relocating the entire Manhattan-based prosecution team would be unduly burdensome to the Government and would be against the interests of justice." *Id.* at *6. Again, the defendant is notably silent as to the finding, and relocation of witnesses and the prosecution team to California only weighs more heavily against transfer in light of the risks associated with travel during the COVID-19 pandemic.

Nor, for that matter, does the ninth *Platt* factor—docket conditions of the districts involved—weigh in favor of transfer in light of current circumstances, as the defendant contends. Transfer of this matter to the Central District of California—even if consolidated with the California Prosecution, and then tried together in one trial (despite the defendant's request for severance)—would not only result in extending trial there by adding new, entirely separate conduct, but would naturally cause further delay of that prosecution. The COVID-19 pandemic has undoubtedly complicated the conduct of proceedings in this and other courts, as it has for all manner of work, but as Judge Batts explained, "this District has a well-managed docket and the ability to hear this matter," *id.* at *5, and there is no reason now to conclude that docket conditions favor transfer of this case to the Central District of California.

Finally, with respect to the defendant's professed concern for the potential jury pool (*see* Def. Mem. 2-4), notwithstanding his apparent efforts to sever the counts against him in the Central District of California, the possible number of venires does not favor transfer.  Protection of potential jurors—much like witnesses—is of course of central concern at all times, and particularly in light of the current pandemic, but as this Court has made abundantly clear, the Court has already taken and is continuing to take the safety of all parties, including jurors, witnesses, litigants, and court personnel, into account when scheduling and preparing for this trial, as is the Government. (*See* Dkt. Nos. 47, 49, 51, 58.)  The defendant offers no reasons to believe a court in another district will be better equipped to protect the safety of potential jurors, nor is the Government aware of any.  Trial in this District will therefore proceed as safely as possible and there is no reason to believe that transfer to another district of this case, or any other case, is warranted in these circumstances.

\*   \*   \*

In sum, the defendant has offered nothing to disturb Judge Batts's well-considered findings, which apply with even greater force in light of current public health concerns.  Nor should the Court exercise its discretion to transfer this case on the basis that it might be consolidated with the California Prosecution when such a consolidation is both unwarranted, *Avenatti*, 2019 WL 4640232, at \*6, and counter to the defendant's apparent litigation strategy in the Central District of California (*see* Ex. A at 9; Ex. B at 17).  The defendant has failed to overcome the presumption against transfer of venue and to satisfy his burden to prove that the circumstances of his case warrant a transfer to the Central District of California in the interest of justice.

## III.   CONCLUSION

For the reasons set forth above, the defendant's motion should be denied.

Dated:  New York, New York
        June 25, 2020

                            Respectfully submitted,

                            AUDREY STRAUSS
                            Acting United States Attorney
                            for the Southern District of New York

                    By:     _s/ Matthew Podolsky_____
                            Matthew Podolsky
                            Robert B. Sobelman
                            Assistant United States Attorneys
                            Tel.: (212) 637-1947/2616

# EXHIBIT A

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

– – –

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

UNITED STATES OF AMERICA,      ) CERTIFIED TRANSCRIPT
                    Plaintiff, )
      vs.                      )
                               )  SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,         )
                    Defendant. )
------------------------------)

(Per telephonic conference)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

April 27, 2020

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

2

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     JULIAN L. ANDRE
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   H. DEAN STEWARD
     H. DEAN STEWARD LAW OFFICES
15   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
16   (949) 481-4900

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| | 1 | SANTA ANA, CALIFORNIA; MONDAY, APRIL 27, 2020; 9:00 A.M. |
| 08:49 | 2 | (Per telephonic conference) |
| 09:00 | 3 | THE CLERK:  Item No. 1, SACR-19-00061-JVS, United |
| 09:00 | 4 | States of America versus Michael John Avenatti. |
| 09:00 | 5 | Appearances from the government, please. |
| 09:00 | 6 | MR. ANDRE:  Good morning, Your Honor.  Julian |
| 09:00 | 7 | Andre and Brett Sagel on behalf of the United States. |
| 09:00 | 8 | MR. STEWARD:  Good morning, Your Honor.  Dean |
| 09:00 | 9 | Steward for Mr. Avenatti.  He has a waiver on file but is |
| 09:00 | 10 | with us by telephone. |
| 09:00 | 11 | THE COURT:  Good morning.  This is Judge Selna. |
| 09:00 | 12 | Preliminarily I find that it is appropriate to |
| 09:00 | 13 | conduct this status conference via telephone given the |
| 09:00 | 14 | current circumstances.  As noted, Mr. Avenatti has a waiver |
| 09:00 | 15 | of physical presence and is also on the line. |
| 09:00 | 16 | I would also note on the docket a telephone |
| 09:00 | 17 | call-in number and the access code were public.  I find that |
| 09:00 | 18 | that meets the public's interest in being able to monitor |
| 09:01 | 19 | and listen to this proceeding.  I find that the public's |
| 09:01 | 20 | interest has been satisfied given these unusual |
| 09:01 | 21 | circumstances. |
| 09:01 | 22 | Okay, let's proceed.  We have apparently in place |
| 09:01 | 23 | a schedule which leads to a trial at the end of the summer. |
| 09:01 | 24 | My first question is what is the status of |
| 09:01 | 25 | discovery? |

09:01   1          MR. ANDRE:  Your Honor, this is Julian Andre.

09:01   2          The status of discovery is largely the same as it

09:01   3   was in the report we filed on February 18, 2020.  The

09:01   4   Privilege Review Team did complete the productions to the

09:01   5   defense that we had identified in that report in early

09:01   6   March 2020.  So at this point the defense should have either

09:02   7   access to all the devices or the materials that the

09:02   8   Privilege Review Team identified as being within the scope

09:02   9   from the devices such as the server or EA Employee 1

09:02   10  computers that were found at that residence.

09:02   11         We do anticipate there may be some additional

09:02   12  discovery in terms of materials that are generated in

09:02   13  preparation for trial, and we anticipate that the

09:02   14  prosecution team as to materials that have been released to

09:02   15  us will be providing some additional productions.  Those

09:02   16  will be largely duplicative of the materials that the

09:02   17  defense already has access to.

09:02   18         THE COURT:  Mr. Steward.

09:02   19         MR. STEWARD:  Yes, Your Honor.  We have a couple

09:02   20  of issues.  One of them and the most important from my

09:02   21  perspective is that Mr. Avenatti has been unable to review

09:02   22  anything since his arrest back in January, so we have in

09:03   23  essence lost about three-and-a-half months where he has been

09:03   24  unable to work on this case at all.  The logistics of

09:03   25  getting him material and information in his current

09:03  1   situation I am thinking about and going to try and come up

09:03  2   with some solutions.

09:03  3         We also have a protective order in place on a

09:03  4   great deal of material.  Him being able to review the

09:03  5   various devices is again something that I'm trying to figure

09:03  6   out what's the most expeditious way to do it giving him

09:03  7   access and at the same time recognizing the constraints of

09:03  8   the protective order.

09:03  9         In terms of the material that is in Los Angeles

09:03  10  with the filter team, specifically we had looked at e-mails

09:04  11  some months back on two different occasions, and how we're

09:04  12  going to accommodate that now I'm not sure.  What we did the

09:04  13  very first time was to give their IT person a list of names.

09:04  14  They ran those names and gave us whatever e-mails were

09:04  15  attached to those names.  We may be able to do something

09:04  16  similar now, not just names but also organizations or dates

09:04  17  or whatever, but that needs to be worked out as well.

09:04  18         I will say that the filter team has been very

09:04  19  accommodating.  Unfortunately, they only have one IT guy for

09:04  20  their entire office, which is the Los Angeles Office of the

09:04  21  Criminal Division of the IRS, so the poor gentleman is

09:04  22  stretched pretty thin.  But they have been cooperative, and

09:04  23  my intent is to work with them in the coming days and try to

09:05  24  get whatever it is that Mr. Avenatti and I feel is relevant

09:05  25  and helpful to the defense.

6

| | | |
|---|---|---|
| 09:05 | 1 | That's kind of where we are right now.  We're |
| 09:05 | 2 | going to take it at a day at a time and do the best we can, |
| 09:05 | 3 | and we will see where we are. |
| 09:05 | 4 | MR. ANDRE:  Your Honor, this is Julian Andre.  May |
| 09:05 | 5 | I respond briefly to a couple of points raised by Mr. |
| 09:05 | 6 | Steward? |
| 09:05 | 7 | THE COURT:  Go ahead. |
| 09:05 | 8 | MR. ANDRE:  First of all, with respect to the |
| 09:05 | 9 | protective order -- and I believe we put this in a response |
| 09:05 | 10 | to their continuance request -- there is nothing in the |
| 09:05 | 11 | protective order that precludes the defendant from accessing |
| 09:05 | 12 | any of these materials. |
| 09:05 | 13 | I would also note that in the conditions of |
| 09:05 | 14 | release that the government proposed and the defendant |
| 09:05 | 15 | agreed to there were certain ways that he would still be |
| 09:05 | 16 | able to review materials.  I also don't think it's accurate |
| 09:06 | 17 | to say that it was impossible for Mr. Avenatti to review |
| 09:06 | 18 | discovery or work on this case since January.  I just wanted |
| 09:06 | 19 | to raise this point because there should be not be any |
| 09:06 | 20 | impediment to Mr. Avenatti being able to review materials in |
| 09:06 | 21 | this case.  He has had quite some time with these materials. |
| 09:06 | 22 | THE DEFENDANT:  Your Honor, this is Mr. Avenatti. |
| 09:06 | 23 | Is it appropriate for me to provide some background |
| 09:06 | 24 | information? |
| 09:06 | 25 | MR. STEWARD:  No, Mr. Avenatti, it is not.  This |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

7

| | | |
|---|---|---|
| 09:06 | 1 | is Mr. Steward.  I'm going to ask you not to speak. |
| 09:06 | 2 | THE DEFENDANT:  Okay. |
| 09:06 | 3 | THE COURT:  Mr. Steward noted that the defense had |
| 09:06 | 4 | lost three-and-a half months.  I also note that we pushed |
| 09:06 | 5 | the trial out. |
| 09:06 | 6 | In terms of the preparation for trial.  I think I |
| 09:06 | 7 | would like to schedule another status conference at the |
| 09:07 | 8 | beginning of June. |
| 09:07 | 9 | MR. SAGEL:  This is Brett Sagel.  I believe we |
| 09:07 | 10 | have one on June 1. |
| 09:07 | 11 | THE CLERK:  We have one on May 26 that I have down |
| 09:07 | 12 | for a telephonic conference at 8:00 a.m.  I will look at the |
| 09:07 | 13 | docket and confirm, but that's what I have. |
| 09:07 | 14 | MR. SAGEL:  The date that I have that was in the |
| 09:07 | 15 | last order is we have expert disclosures on May 26 and then |
| 09:07 | 16 | a status conference at 9:00 a.m. on June 1. |
| 09:07 | 17 | THE CLERK:  I also have one on June 1.  Clearly we |
| 09:07 | 18 | wouldn't need both of them. |
| 09:07 | 19 | THE COURT:  Let's just go to the June 1 date. |
| 09:07 | 20 | Mr. Steward, what is the status of the case in |
| 09:08 | 21 | New York that has yet to go to trial? |
| 09:08 | 22 | MR. STEWARD:  I believe the trial date is in July. |
| 09:08 | 23 | Mr. Avenatti, on this one, I will let you speak. |
| 09:08 | 24 | Is that right as to our trial date on that one? |
| 09:08 | 25 | THE DEFENDANT:  Yes.  The Court vacated the prior |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
| 09:08 | 1  | trial date and set that trial date in July and is expecting  |
| 09:08 | 2  | I believe a status report from counsel, both the government  |
| 09:08 | 3  | and my defense counsel, in May noting whether that trial     |
| 09:08 | 4  | date is realistic in light of everything that's going on,    |
| 09:08 | 5  | including the current stay-away or lockdown orders, et       |
| 09:08 | 6  | cetera, in New York City.                                     |
| 09:08 | 7  |         MR. STEWARD:  Thank you, Mr. Avenatti.                |
| 09:08 | 8  |         THE COURT:  The deadline for filing motions is       |
| 09:08 | 9  | coming up.  Can you give me a preview however brief about    |
| 09:09 | 10 | what you anticipate in terms of pretrial motions?  The       |
| 09:09 | 11 | government.                                                   |
| 09:09 | 12 |         MR. ANDRE:  Your Honor, this is Julian Andre.        |
| 09:09 | 13 |         Currently we anticipate filing at least two         |
| 09:09 | 14 | pretrial motions.  We will be filing a motion to introduce   |
| 09:09 | 15 | other acts evidence.  These are on the basis that it was     |
| 09:09 | 16 | part of the charged conduct but was not specifically         |
| 09:09 | 17 | identified in the Indictment and is inextricably intertwined |
| 09:09 | 18 | with charges in the Indictment or is admissible under        |
| 09:09 | 19 | 404(b).  We provided the defense with a very detailed notice |
| 09:09 | 20 | explaining what evidence we would seek to introduce on I     |
| 09:09 | 21 | believe February 4 of this year.  So that will be the first  |
| 09:09 | 22 | motion.                                                       |
| 09:09 | 23 |         We also are likely going to move to exclude --       |
| 09:09 | 24 | well, we may move to exclude any sort of advice of counsel   |
| 09:10 | 25 | defense.  We have raised this issue with defense counsel     |

| 09:10 | 1 | well over about two months ago whether they intended to |
| 09:10 | 2 | present any sort of advice of counsel defense for any of the |
| 09:10 | 3 | charges.  We have not yet heard a response.  Unless they |
| 09:10 | 4 | provide us with reciprocal discovery and identify that they |
| 09:10 | 5 | are planning to pursue such a defense, we intend to move to |
| 09:10 | 6 | exclude it. |
| 09:10 | 7 | THE COURT:  Okay. |
| 09:10 | 8 | Mr. Steward, in terms of motions. |
| 09:10 | 9 | MR. STEWARD:  At this point, Your Honor, severance |
| 09:10 | 10 | of the counts as dissimilar.  And I am looking at another |
| 09:10 | 11 | Motion to Dismiss, but I don't want to say anything more |
| 09:10 | 12 | than that because I need to further investigate the facts |
| 09:10 | 13 | behind it.  I don't want to shoot my mouth off at this point |
| 09:10 | 14 | without significant facts.  I have it sort of sketched out |
| 09:10 | 15 | in my mind.  It would involve Mr. Stolper, Mr. Sagel, and |
| 09:11 | 16 | perhaps others.  That's all I can say at this point. |
| 09:11 | 17 | THE COURT:  That's fine. |
| 09:11 | 18 | Are there any other matters anyone would like to |
| 09:11 | 19 | take up? |
| 09:11 | 20 | MR. ANDRE:  Your Honor, this is Julian Andre. |
| 09:11 | 21 | One issue that I think will need to be addressed |
| 09:11 | 22 | soon is the matter of reciprocal discovery.  Mr. Avenatti |
| 09:11 | 23 | and Mr. Steward actually are in a situation here where they |
| 09:11 | 24 | have access to a much broader range of evidence and data |
| 09:11 | 25 | than the government does.  I mean, they have complete copies |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:11   1   of many of these devices, and they have more materials in

09:11   2   these devices than what was provided to the government from

09:11   3   the Privilege Review Team.

09:11   4           We think it's going to be critical here that the

09:11   5   defense be required to produce reciprocal discovery in a

09:11   6   timely manner.  So what we would be requesting is that the

09:11   7   Court set a deadline for that.  We are thinking mid June

09:12   8   would be appropriate.  That would give the defense enough

09:12   9   time to identify those materials.

09:12   10          THE COURT:  I understand no reciprocal discovery

09:12   11  has been provided at all by the defense.  Is that accurate?

09:12   12          MR. ANDRE:  That's accurate, Your Honor.

09:12   13          THE COURT:  Mr. Steward, a deadline for --

09:12   14          MR. STEWARD:  That's fine, Your Honor.  Today I

09:12   15  have none.  By mid June, I think we can meet that deadline.

09:12   16          THE COURT:  Why don't we say you will make

09:12   17  reciprocal discovery no later than Friday, June 19.  That

09:12   18  will be reflected in the minutes.

09:12   19          Anything else?

09:12   20          MR. ANDRE:  Nothing from the government at this

09:12   21  time, Your Honor.

09:12   22          MR. STEWARD:  Nothing from the defense, Your

09:12   23  Honor.

09:12   24          THE COURT:  Okay.  Very good.  Thank you.

09:12   25          MR. ANDRE:  Thank you.

11

| | | |
|---|---|---|
| 09:13 | 1 | MR. STEWARD:  Thank you. |
| 09:13 | 2 | (Whereupon, the proceedings were concluded.) |
| 09:13 | 3 | *     *     * |
| 09:13 | 4 | |
| 09:13 | 5 | |
| 09:13 | 6 | |
| 09:13 | 7 | |
| 09:13 | 8 | |
| 09:13 | 9 | |
| 09:13 | 10 | |
| 09:13 | 11 | |
| 09:13 | 12 | |
| 09:13 | 13 | |
| 09:13 | 14 | |
| 09:13 | 15 | |
| 09:13 | 16 | |
| 09:13 | 17 | |
| 09:13 | 18 | |
| 09:13 | 19 | |
| 09:13 | 20 | |
| 09:13 | 21 | |
| 09:13 | 22 | |
| 09:13 | 23 | |
| 09:13 | 24 | |
| 09:13 | 25 | |

12

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  May 26, 2020

/s/   Sharon A. Seffens  5/26/20
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

# EXHIBIT B

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

− − −

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

UNITED STATES OF AMERICA,      )CERTIFIED TRANSCRIPT
                    Plaintiff,  )
     vs.                        )
                                )   SACR−19−00061−JVS
MICHAEL JOHN AVENATTI,          )
                    Defendant.  )
−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−−)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

June 1, 2020

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1−1053
Santa Ana, CA  92701
(714) 543−0870

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     JULIAN L. ANDRE
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   H. DEAN STEWARD
     H. DEAN STEWARD LAW OFFICES
15   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
16   (949) 481-4900

17   ALSO PRESENT:

18   Michael Avenatti, Defendant

19

20

21

08:45   22

08:45   23

08:45   24

08:45   25
```

| | | |
|---|---|---|
| 08:45 | 1 | SANTA ANA, CALIFORNIA; MONDAY, JUNE 1, 2020; 9:01 A.M. |
| 08:45 | 2 | (Per telephonic conference) |
| 09:01 | 3 | THE CLERK: Item No. 1, SACR-19-00061-JVS, United |
| 09:01 | 4 | States of America versus Michael John Avenatti. |
| 09:01 | 5 | Appearances for the government, please. |
| 09:01 | 6 | MR. ANDRE: Good morning. Julian Andre and Brett |
| 09:01 | 7 | Sagel on behalf of the United States. |
| 09:01 | 8 | THE CLERK: For the defendant. |
| 09:01 | 9 | MR. STEWARD: Dean Steward for Mr. Avenatti. We |
| 09:01 | 10 | have a waiver on file. I believe Mr. Avenatti is also |
| 09:01 | 11 | participating in this conference call. |
| 09:01 | 12 | THE COURT: Good morning. This is Judge Selna. |
| 09:01 | 13 | I need to make a couple of preliminary findings. |
| 09:01 | 14 | First, Mr. Avenatti needs to consent to conducting this |
| 09:01 | 15 | status conference via telephone conference. |
| 09:01 | 16 | THE DEFENDANT: Good morning, judge. I do, Your |
| 09:01 | 17 | Honor. |
| 09:01 | 18 | THE COURT: I find it's appropriate to proceed |
| 09:01 | 19 | telephonically given the interests of justice and pressing |
| 09:01 | 20 | forward in this case and considering the public health |
| 09:01 | 21 | factors. As of this weekend, there were more than 6,500 |
| 09:02 | 22 | infections reported in Orange County. With the number |
| 09:02 | 23 | increasing, I believe the public's interest is adequately |
| 09:02 | 24 | recognized under the circumstances given that the docket |
| 09:02 | 25 | posted provides the teleconference number that allows any |

09:02   1    member of the public to dial in and listen to this telephone

09:02   2    conference.

09:02   3             There are a number of topics to cover.  I would

09:02   4    like to begin with the government's recent production of

09:02   5    approximately 600,000 pages of --

09:02   6             Mr. Steward, do you know anything further on that

09:02   7    topic?

09:02   8             MR. STEWARD:  Only that the government seems to

09:02   9    switch back and forth between pages and documents.  It's my

09:02  10    understanding a document could have 100 pages, 200 pages,

09:02  11    and the only relevant description is the page because we are

09:02  12    trying to determine how much time it's going to take the

09:03  13    defense.  If we could speak about only pages, I think that

09:03  14    would be more helpful in talking about documents.

09:03  15             THE COURT:  Did you receive the government's

09:03  16    letter on May 8, 2020, from Mr. Andre to you?

09:03  17             MR. STEWARD:  Yes.

09:03  18             THE COURT:  Doesn't the government point out that

09:03  19    there is substantial duplication of prior production?

09:03  20             MR. STEWARD:  Yes.

09:03  21             THE COURT:  Doesn't the government specifically

09:03  22    provide the Bates number for the duplicate documents?

09:03  23             MR. STEWARD:  No.  The material that we received

09:03  24    from the filter team is not Bate stamped.

09:03  25             THE COURT:  I am looking at Mr. Andre's letter

| 09:04 | 1 | which is attached as Exhibit 1 to the government's most |
| 09:04 | 2 | recent filing over the weekend.  Paragraph two says: |
| 09:04 | 3 | "Please note that almost all of these discovery materials |
| 09:04 | 4 | USAO_00460670 to USAO_O112495 are duplicative of the server |
| 09:04 | 5 | materials that the privilege team previously produced to you |
| 09:04 | 6 | on March 13, 2020."  Then it goes on to provide some |
| 09:04 | 7 | specific references. |
| 09:04 | 8 | In addressing this issue, do you not believe that |
| 09:04 | 9 | the material for the Court's consideration to be advised |
| 09:04 | 10 | that the production is duplicative? |
| 09:04 | 11 | MR. STEWARD:  Yes, absolutely, but the problem is |
| 09:04 | 12 | I can't tell what is duplicated and what's not because of |
| 09:05 | 13 | the lack of Bates numbers on the filter team material. |
| 09:05 | 14 | THE COURT:  Even so, I believe it's material to my |
| 09:05 | 15 | consideration to assess this problem to note that there |
| 09:05 | 16 | is -- I'm troubled by the fact that no where in your filing |
| 09:05 | 17 | did you mention that in your status report updated May 27. |
| 09:05 | 18 | Sir, I expect a greater degree of candor going |
| 09:05 | 19 | forward.  That's a material fact that should have been |
| 09:05 | 20 | presented to the Court along with your concerns about the |
| 09:05 | 21 | production. |
| 09:05 | 22 | MR. STEWARD:  Understood, Your Honor. |
| 09:05 | 23 | THE DEFENDANT:  It was included on Page 4, |
| 09:05 | 24 | Footnote 5, actually. |
| 09:05 | 25 | THE COURT:  Who is that speaking? |

| | | |
|---|---|---|
| 09:05 | 1 | MR. STEWARD: That was my client, Your Honor. |
| 09:05 | 2 | That's the disadvantage of doing this by telephone. He |
| 09:06 | 3 | can't whisper in my ear. But he is correct. If the Court |
| 09:06 | 4 | would take a look at Page 4, Footnote 5, of my |
| 09:06 | 5 | teleconference filing. |
| 09:06 | 6 | THE COURT: Okay. |
| 09:06 | 7 | Remarks. |
| 09:06 | 8 | THE DEFENDANT: Your Honor -- |
| 09:06 | 9 | THE COURT: Mr. Avenatti, you don't get to speak. |
| 09:06 | 10 | THE DEFENDANT: Understood, Your Honor. Sorry |
| 09:06 | 11 | about that. |
| 09:06 | 12 | THE COURT: In the order I sent out, it provided |
| 09:06 | 13 | some thoughts for this hearing and raised the possibility of |
| 09:06 | 14 | providing Mr. Avenatti a disabled laptop with the discovery |
| 09:06 | 15 | on it. I don't see why that can't be done and can't be done |
| 09:06 | 16 | promptly. |
| 09:06 | 17 | MR. STEWARD: This is Mr. Steward. |
| 09:06 | 18 | Your Honor, I agree with the understanding that |
| 09:06 | 19 | it's -- there's too much to load on just one laptop. I |
| 09:07 | 20 | think what we have to do is give him the disks and hard |
| 09:07 | 21 | drives and that sort of thing. But the bottom line is I |
| 09:07 | 22 | agree with that. |
| 09:07 | 23 | MR. ANDRE: This is Julian Andre on behalf of the |
| 09:07 | 24 | U.S. Attorney's Office. |
| 09:07 | 25 | With respect to a computer, we have no objection |

| | | |
|---|---|---|
| 09:07 | 1 | to Mr. Avenatti being provided a computer.  Had this been |
| 09:07 | 2 | raised to us weeks ago, we would have set it up.  We have no |
| 09:07 | 3 | objection to Mr. Steward providing the defendant a disabled |
| 09:07 | 4 | computer.  I think the only thing that we would suggest is |
| 09:07 | 5 | that Pretrial Services be advised of a computer and what |
| 09:07 | 6 | computer he will be using and at least be given an |
| 09:07 | 7 | opportunity to confirm that the computer has been disabled. |
| 09:07 | 8 | THE COURT:  I would expect you to meet and confer |
| 09:07 | 9 | with Mr. Steward with regard to a computer and whatever |
| 09:07 | 10 | external devices you are going to need to have agreed |
| 09:08 | 11 | material loaded so that everybody knows what he gets and |
| 09:08 | 12 | what it's on. |
| 09:08 | 13 | MR. STEWARD:  Yes, Your Honor, I'll do that. |
| 09:08 | 14 | Pretrial Services is not in a position to go out to his |
| 09:08 | 15 | place of residence at this time.  For example, they did the |
| 09:08 | 16 | walk-through with a computer via video.  But the Court's |
| 09:08 | 17 | suggestion is good one, and we can certainly do that. |
| 09:08 | 18 | THE COURT:  I want a report by Friday how this is |
| 09:08 | 19 | going to be accomplished, and I expect this to be |
| 09:08 | 20 | accomplished in no less than seven days from today. |
| 09:08 | 21 | MR. ANDRE:  Your Honor, Julian Andre. |
| 09:08 | 22 | May I briefly back up and respond to a couple of |
| 09:08 | 23 | points Mr. Steward raised regarding the discovery? |
| 09:08 | 24 | THE COURT:  Go ahead. |
| 09:08 | 25 | MR. ANDRE:  First, with respect to the Privilege |

09:08 1  Review Team's production, obviously I never seen it, but our

09:08 2  understanding is that our start team 2020 production was in

09:09 3  fact Bate stamped.  It was produced with database load

09:09 4  files.  It would be fully searchable.  Our understanding is

09:09 5  those documents were in fact Bates labeled and that they

09:09 6  should be able to in addition to the information we provided

09:09 7  quickly confirm that the information we provided was

09:09 8  accurate.

09:09 9       The other issue Mr. Steward mentioned is the

09:09 10  difference between pages and documents.  The reason why we

09:09 11  focused on the number of documents is pretty simple.  What a

09:09 12  lot of these materials included are all the litigation

09:09 13  documents for all of these cases.  For example, if a witness

09:09 14  was deposed in connection with one of the three cases of

09:09 15  victims, that deposition is going to essentially be included

09:09 16  in the government materials.  So it may be a 200-page

09:10 17  document, but it takes only one second to realize that

09:10 18  position of an expert witness is not relevant to the

09:10 19  allegations.

09:10 20       THE COURT:  Okay.  I want to move on to the IRS

09:10 21  terminal.

09:10 22       Mr. Steward, tell me physically what the process

09:10 23  was when you went to the IRS Office.

09:10 24       MR. STEWARD:  We set up an appointment with the

09:10 25  filter team, and we met them at the Federal Building on

09:10   1    Los Angeles Street.  They accompanied us up to the IRS

09:10   2    offices where there was a technical person from IRS.  I

09:10   3    understand he is the only one in the district.  What we did

09:10   4    was give him a list of e-mails -- people's names that we

09:11   5    wanted him to search.  He did that, and after a half hour or

09:11   6    45 minutes, it came he came up with all of these e-mails

09:11   7    connected to the names of relevant people in the case, and

09:11   8    he then put them on a disk for us.  So that was the first

09:11   9    time we did it.

09:11   10         The second time former counsel, Tom Warren, was

09:11   11    with him or his associate, and I don't know how they did it

09:11   12    the second time, but that's the way we did it.

09:11   13         THE COURT:  Why can't that same process be carried

09:11   14    out remotely either by a teleconference or a zoom

09:11   15    conference?  You're in touch with the IRS agent or this

09:11   16    person that works for them, this specialist.  Give him the

09:11   17    search terms, and he produces a disk for you.  Why can't

09:11   18    that be done?

09:11   19         MR. STEWARD:  Well, we can do that, but part of

09:11   20    the problem is follow-up on it.  In other words, we have got

09:12   21    to review it and then see what the follow-up would be.

09:12   22    Another part of the problem is I don't know whether they are

09:12   23    even around.  I know most of the U.S. Attorneys are working

09:12   24    for home.  I don't know whether the IRS or filter team are.

09:12   25    It's certainly something we can inquire about.

| 09:12 | 1 | THE COURT: Well, I will ask Mr. Andre to gather |
|---|---|---|
| 09:12 | 2 | those facts and come back to you. You may have to review |
| 09:12 | 3 | what the search produces, but why can't the process of |
| 09:12 | 4 | providing a search term, getting the results, and then after |
| 09:12 | 5 | providing you a disk with those results go forward? |
| 09:12 | 6 | MR. STEWARD: I think we should absolutely try |
| 09:12 | 7 | that. I don't know whether there are other problems that I |
| 09:12 | 8 | can't anticipate, but we can certainly give that a shot and |
| 09:12 | 9 | see what happens. |
| 09:12 | 10 | THE COURT: Okay. In the report coming back to me |
| 09:12 | 11 | on Friday with regard to the laptop, I'd like you also to |
| 09:12 | 12 | address providing remote access to the IRS terminal. |
| 09:13 | 13 | MR. ANDRE: Your Honor, we have concerns at this |
| 09:13 | 14 | point about their request that they be given kind of free |
| 09:13 | 15 | reign to the EA server. Obviously if they have reasonable |
| 09:13 | 16 | requests, we're happy to discuss that and accommodate them |
| 09:13 | 17 | to the best of our ability. But what they are asking us to |
| 09:13 | 18 | do is to recreate a process that was in place nine months |
| 09:13 | 19 | ago for that. I don't believe they demonstrated that that |
| 09:13 | 20 | is even necessary at this point. |
| 09:14 | 21 | THE COURT: Mr. Andre, you're going to give access |
| 09:14 | 22 | to that terminal. A sufficient showing has been made. You |
| 09:14 | 23 | just need to put in place the tools to allow them to do |
| 09:14 | 24 | that. |
| 09:14 | 25 | MR. SAGEL: This is Brett Sagel. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:14  1          Our concern is Mr. Steward keeps complaining about
09:14  2  duplicative or numerous documents.  Anything he is going to
09:14  3  have access to in that terminal -- which we're not opposing
09:14  4  what you're saying, but what he should look at is the
09:14  5  e-mails -- the references that he has in his 600,000 pages
09:14  6  of material that were produced from that server first to see
09:14  7  what he is missing.
09:14  8          The problem is when he was given access to those
09:14  9  computers and those devices last September and October he
09:15  10  did not have any of that produced in discovery.  That's why
09:15  11  we made it available for him.  The government went to great
09:15  12  expense and resources.  That's not the case right now.
09:15  13  Right now he does have all of that.  He hasn't even
09:15  14  mentioned one thing he thinks he is missing.  I'm not sure
09:15  15  what he has even looked at to know what he thinks he's
09:15  16  missing.
09:15  17          From someone who has looked through most of what's
09:15  18  there, it's pretty voluminous, and it's hard to believe what
09:15  19  else out is out there.  He has got the entire victim folders
09:15  20  that were on the share drives, as well as all the e-mails
09:15  21  between all those individuals.
09:15  22       THE COURT:  Well, Mr. Steward, you're going to
09:15  23  have to make a good-faith effort to analyze what you have
09:15  24  and what you need rather than reinventing a complete wheel
09:15  25  through the IRS terminal.

09:15  1    MR. STEWARD:  I will do that, Your Honor.

09:15  2    THE COURT:  Okay.  Let's talk about a trial date.

09:16  3  The government didn't address that issue in its response.

09:16  4    MR. ANDRE:  Your Honor, we're happy to do it now.

09:16  5  This is Julian Andre.

09:16  6    Our position is that we -- we obviously recognize

09:16  7  COVID-19 is an issue in this district and across the country

09:16  8  and that a further continuance is necessary at this point

09:16  9  and could be necessary again in the future.  Our position is

09:16  10  that right now COVID-19 is a reasonable basis for a

09:16  11  continuance in this case.

09:16  12    THE COURT:  The assumption is that the existence

09:16  13  of COVID-19 has had no impact on the defense's ability to

09:16  14  prepare.  That said --

09:16  15    MR. ANDRE:  Your Honor, I understand the point the

09:16  16  Court is raising.  That being said, the Court has already

09:17  17  fairly recently continued the trial three months.  We would

09:17  18  request that the Court set the earliest trial date that the

09:17  19  Court believes it may be able to hold a criminal jury trial.

09:17  20  I think the Court might have a better sense of that.  We

09:17  21  were thinking September 15, which would be one month.

09:17  22  Obviously we recognize that could change again.

09:17  23    We strongly oppose what they have requested.  They

09:17  24  have given two options, either February 2021 or just vacate

09:17  25  the date and wait until the end of August, which would have

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:17 | 1 | effectively the same impact as waiting until 2021. |
| 09:17 | 2 | This case has been pending for 14 months.  We |
| 09:17 | 3 | understand what COVID-19 does.  It's very challenging.  It |
| 09:17 | 4 | may well create challenges as far as preparation.  It |
| 09:18 | 5 | creates challenges for the government, too.  We bear the |
| 09:18 | 6 | burden here, and we are dealing with the same challenges. |
| 09:18 | 7 | But this case has been pending for 14 months.  There's |
| 09:18 | 8 | plenty that can be done to get ready for trial whether it's |
| 09:18 | 9 | motion practice or other things.  We would request the Court |
| 09:18 | 10 | continue it a month at this point. |
| 09:18 | 11 | Then the other last point I would mention is that |
| 09:18 | 12 | there are victims in this case, and those victims have |
| 09:18 | 13 | statutory rights to proceedings without unnecessary delay. |
| 09:18 | 14 | They have been waiting for their day in court a long time |
| 09:18 | 15 | now, and to just continue this indefinitely would not be |
| 09:18 | 16 | consistent with their rights or the public interests. |
| 09:18 | 17 | So our proposal would be the Court set this for |
| 09:18 | 18 | the next available -- the first possible date the Court |
| 09:18 | 19 | believes we may be able to hold a trial, and that additional |
| 09:19 | 20 | time will hopefully also provide the defendant whatever |
| 09:19 | 21 | additional time he needs to resolve any issues that have |
| 09:19 | 22 | been caused by COVID-19. |
| 09:19 | 23 | THE COURT:  I'm setting the matter down for a jury |
| 09:19 | 24 | trial December 8, 2020, at 8:30 a.m.  We'll do the final |
| 09:19 | 25 | status conference November 23 at 9:00 a.m. |

09:19 1          No one can predict with certainty that there is

09:19 2    probably a high likelihood that we will be able to proceed

09:19 3    in a manner that addresses everyone's concerns about the

09:19 4    logistics and mechanics of a trial.  That's obviously

09:19 5    subject to further change in the conditions in the

09:19 6    United States, subject to further guidance from the Ninth

09:19 7    Circuit which has provided some further guidance from the

09:19 8    United States Judicial Conference and the Administrative

09:19 9    Office of the Courts.

09:20 10         I think we should put the case on a track that

09:20 11   gets that done.  That means people need to get down to

09:20 12   business.  That's why I want promptly in place the disabled

09:20 13   laptop for Mr. Avenatti and a scheme to pursue the IRS

09:20 14   terminal.  So I will look for your report on those two

09:20 15   topics by the end of the week.

09:20 16         I would like to set another 9:00 a.m. next Monday

09:20 17   if that's convenient for everybody.

09:20 18         MR. ANDRE:  9:00 a.m. on Monday is fine for the

09:20 19   government.

09:20 20         THE COURT:  Mr. Steward.

09:20 21         MR. STEWARD:  Same for me, Your Honor, and my

09:20 22   client.

09:20 23         THE COURT:  Okay.

09:20 24         MR. ANDRE:  At this point, would the Court be

09:20 25   willing to take a waiver as to the Speedy Trial Act from the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

15

09:20  1   defendant?

09:20  2           THE COURT:  Oh, yes.  I mean, either -- if I don't

09:21  3   see a written waiver within seven days, advise me that it's

09:21  4   not coming, and I'll make the required judicial findings

09:21  5   under the Speedy Trial Act to continue the trial to that

09:21  6   date.

09:21  7           MR. STEWARD:  That's fine.

09:21  8           MR. ANDRE:  There is one other issue I would like

09:21  9   to flag.  This is Julian Andre.  And it may be more

09:21  10  appropriate to save this to discuss next Monday.

09:21  11          There obviously have been raised some issues with

09:21  12  respect to counsel.  Our view is that those issues need to

09:21  13  be resolved immediately, particularly given that -- although

09:21  14  there's some complications with respect to COVID-19, many of

09:21  15  the issues regarding counsel have been the same since last

09:21  16  July or last August.  We would request that those issues be

09:21  17  addressed next Monday.  We don't want to be three or four

09:21  18  months down the road and be dealing with the same thing

09:21  19  again and again.

09:22  20          THE COURT:  Well, one of the items I noted in the

09:22  21  order I sent out was a date certain for the parties to

09:22  22  provide me the legal research as to the effect of a party

09:22  23  having but failing to apply resources in terms of a speedy

09:22  24  trial and other rights.  So I would ask that I get that

09:22  25  memorandum by Friday separately from each side, and we will

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:22  1    discuss that Monday as well.

09:22  2              MR. ANDRE:  Thank you very much.

09:22  3              MR. STEWARD:  That's fine.

09:22  4              THE COURT:  Mr. Steward, you give some indication

09:22  5    in your supplement, your status report, that additional

09:22  6    assistance is coming on.  You can address that as well in

09:22  7    whatever you put in by Friday.

09:22  8              MR. STEWARD:  I will do that, Your Honor.

09:22  9              THE COURT:  Okay.  With regard to your status

09:23  10   report, Mr. Steward, the local rules limit you to 25 pages.

09:23  11   I realize that when counsel enter briefs in a conventional

09:23  12   fashion it's about 28 lines.  Perhaps the clock could be

09:23  13   alleviated if you did that.  I expect you to file conforming

09:23  14   briefs.  The court's resources are limited, and they're

09:23  15   tasked in a special way as everyone is tasked in performing

09:23  16   their role.

09:23  17              I would ask you to address relevant topics, that

09:23  18   is, relevant to me managing this case and the difficulties

09:23  19   which are presented going forward.  Much of your brief

09:23  20   recounted Mr. Avenatti's experiences at MCC.  While I'm sure

09:23  21   you have accurately described them, they don't assist me in

09:23  22   addressing case management issues in this case.  I would ask

09:23  23   you going forward to concentrate on what we are about here

09:24  24   and present me complete but net expressions of your opinions

09:24  25   on the issues.

09:24  1       MR. STEWARD:  Understood, Your Honor.  The only

09:24  2  reason we included all that was Mr. Andre's statement that

09:24  3  my client would have had access to discovery in this case

09:24  4  while he was at the MCC.  We were just trying to show that

09:24  5  that's not the case.  The Court is very familiar with my

09:24  6  writing.  I am usually very succinct.

09:24  7       THE COURT:  I believe that's all the topics I want

09:24  8  to cover.

09:24  9           Any other matters anyone would like to address?

09:24  10      MR. ANDRE:  This is Julian Andre.

09:24  11          Currently the motion deadline for this case was

09:24  12 actually on Monday.  Our strong preference is that motions

09:24  13 continue forward.  I understand move that off a couple of

09:25  14 weeks.  But our view is motions should continue to proceed,

09:25  15 at least any motions that can be filed as soon as possible.

09:25  16      MR. STEWARD:  Dean Steward.

09:25  17          The only problem is that -- well, a number of

09:25  18 problems, but the main problem is that motions are almost

09:25  19 always dependent on a thorough review of the discovery.  I'm

09:25  20 not going to beat the horse any further, but we still have

09:25  21 an awful lot of work to do.  A motion, for example, like

09:25  22 severance counts, which I intend to bring -- certainly we

09:25  23 can bring that at any time.  But just about any other

09:25  24 motion -- for example, suppression motions are bound to

09:25  25 what's in the discovery, and we certainly have not completed

09:25   1   our review.

09:25   2         THE COURT:  All dates will be continued

09:25   3   commensurate with the trial date which I have announced

09:25   4   based on the intervals of the existing order.

09:26   5         MR. ANDRE:  If the Court is going to keep the

09:26   6   existing schedule in place and just back everything up,

09:26   7   would the Court like the government to file a proposed

09:26   8   order?

09:26   9         THE COURT:  Yes.  Meet and confer and put in a

09:26  10   stip waiving time or otherwise provide me with an order,

09:26  11   yes.

09:26  12         MR. ANDRE:  Thank you, Your Honor.

09:26  13         MR. STEWARD:  That's fine, Your Honor.

09:26  14         THE COURT:  Okay, thank you very much.  We will

09:26  15   visit with you again at 9:00 a.m. on Monday.

09:26  16         (Whereupon, the proceedings were concluded.)

09:26  17              *    *    *

09:26  18

09:26  19

09:26  20

09:26  21

09:26  22

09:26  23

09:26  24

09:26  25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:26
09:26
09:26
09:26
09:26
09:26
09:26
09:26
09:26
09:26
09:26
09:26
09:26
09:26
09:26
09:26
09:26
09:26
09:26

CERTIFICATE


     I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:  June 5, 2020



            /s/  Sharon A. Seffens  6/5/20
            _____
            SHARON A. SEFFENS, U.S. COURT REPORTER