```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                              19 CR 374 (JMF)

5   MICHAEL AVENATTI,

6                Defendant.
                                            Conference
7   ------------------------------x

8                                           New York, N.Y.
                                            August 7, 2020
9                                           2:5 p.m.

10  Before:

11
                        HON. JESSE M. FURMAN,
12
                                            District Judge
13
                            APPEARANCES
14
    AUDREY STRAUSS
15       Acting United States Attorney for the
         Southern District of New York
16  BY:  ROBERT B. SOBELMAN
         MATTHEW D. PODOLSKY
17       Assistant United States Attorneys

18  WARREN TERZIAN LLP (Outgoing Counsel)
         Attorneys for Defendant
19  BY:  THOMAS D. WARREN
         DANIEL DUBIN
20

21  DAVID E. PATTON (Incoming Counsel)
         Federal Defenders of New York, Inc.
22       Attorney for Defendant
    BY:  ROBERT M. BAUM
23       ANDREW DALACK
         TAMARA GIWA
24       Assistant Federal Defenders

25
```

1          THE COURT:  Good afternoon.  This is Judge Furman.

2     Let me confirm first that Kelly, the court reporter, is on the

3     line.

4          THE COURT REPORTER:  Yes.  Good afternoon, your Honor.

5          THE COURT:  Before I ask counsel to enter their

6     appearances, let me set a few ground rules.  First, the thing

7     that anyone should say, when saying anything, is your name,

8     just so the court reporter and I know who is speaking.

9          When you're not speaking, though, please put your

10    phones on mute so there is no background noise distraction,

11    though obviously remember to unmute yourself when you want to

12    say something.

13         I don't think we'll have people coming and going,

14    given that there's a separate line for members of the press and

15    public.  But if you were to hear a chime, that means that

16    someone has either joined or left the conference.  And if

17    you're speaking, pause for a moment so I can figure out exactly

18    who has joined or left.

19         A reminder to everyone that this conference may not be

20    recorded.  It is a violation of law and court order.  At the

21    same time, it is a public conference, as it would be if it were

22    open court.  So everybody should be mindful of that.

23         Finally, in the event that I get disconnected, which

24    certainly could happen, don't panic.  I will make may bay back.

25    Just be patient, and I will be back in a minute or two.  But I

1    will keep my fingers crossed that that doesn't happen.

2              With that, let me take appearances, beginning with the

3    government.

4              MR. SOBELMAN:  This is Robert Sobelman.  You have

5    Robert Sobelman and Matthew Podolsky for the United States.

6    Good afternoon, your Honor.

7              THE COURT:  Good afternoon to you.

8              And for Mr. Avenatti, beginning with current counsel.

9              MR. WARREN:  Yes, your Honor.  You have Tom Warren and

10   Daniel Dubin for Mr. Avenatti.

11             THE COURT:  Good afternoon.

12             Mr. Avenatti, are you on the line?

13             THE DEFENDANT:  Yes.  This is Robert Avenatti.  Good

14   afternoon.

15             THE COURT:  Good afternoon to you.

16             And am I correct that Robert Baum from the Federal

17   Defenders of New York is on the line?

18             MR. BAUM:  Yes, Judge.  Robert M. Baum from the

19   Federal Defenders of New York.  I'm joined by my colleagues

20   Andrew Dalack and Tamara Giwa.

21             THE COURT:  Thank you, and thank you for joining us.

22             Just to confirm, let me ask you, Mr. Warren:  Is

23   Ms. Miro on the line or with us?

24             MR. WARREN:  She is not, your Honor.

25             THE COURT:  I may have questions about that in due

 1   course.

 2          First let me just confirm that I have the defendant's,

 3   Mr. Avenatti's, consent to proceed by telephone today.  I did

 4   receive his written waiver of any right to be present.  It was

 5   docketed I think on August 2 but signed by him on July 31.

 6          Mr. Avenatti, can I just confirm that you did indeed

 7   sign that document.

 8          THE DEFENDANT:  Yes, your Honor.

 9          THE COURT:  Did you read it before you signed it?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And did you confer with your lawyers

12   before you signed it?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  And you do understand that you may, under

15   the Constitution and Federal Rules of Criminal Procedure, have

16   the right to be physically present in court for this conference

17   and with your lawyers by your side?

18          Do you understand that?

19          THE DEFENDANT:  I do, your Honor.

20          THE COURT:  Is it correct that you waive that right

21   and consent to proceed today by telephone in light of the

22   public health situation that we are all contending with?

23          Is that correct?

24          THE DEFENDANT:  I do, your Honor.  Yes.  That's

25   correct.

1          THE COURT:  Mr. Sobelman, do you agree that the

2   defendant has knowingly and voluntarily waived any right to be

3   physically present that he may have?

4          MR. SOBELMAN:  Yes, your Honor.

5          THE COURT:  Mr. Warren, do you agree?

6          MR. WARREN:  I do, your Honor.

7          THE COURT:  All right.  In light of the conditions of

8   Mr. Avenatti's release in the Central District of California,

9   which, as I understand it, prohibit him from using the internet

10  and prevent him from using any video conferencing application

11  or program, I am prepared and do find that video is not

12  reasonably available.

13          In light of that, let me start with the government.

14          Do you agree that under the Cares Act and the chief

15  Judge's orders relating to that act that we can proceed by

16  telephone today?

17          MR. SOBELMAN:  This is Robert Sobelman.  Yes, your

18  Honor.

19          THE COURT:  Mr. Warren, do you agree?

20          MR. WARREN:  I do, your Honor.

21          THE COURT:  I agree and do so find.  With that, we can

22  proceed.  I've called this conference to address the motion to

23  withdraw filed by Mr. Warren and company and also the motion to

24  appoint counsel.

25          Before we get to those matters, however, I am prepared

1    to rule on Mr. Avenatti's motion filed on June 11 to transfer

2    this case to California where his other case is pending.

3            Mr. Avenatti filed an earlier motion to transfer which

4    was denied by Judge Batts on September 24 of last year.  That

5    is docket number 21.

6            Judge Batts held that the so-called "Platt" factors

7    weighed heavily against transfer.  Indeed that only one of the

8    Platt factors, the defendant's residence, weighed in favor that

9    that transfer.

10           In my endorsement of May 18, I noted that that

11   decision was law of the case and that I would not reconsider

12   any arguments that Judge Batts had already rejected.

13           In essence, I said that in any renewed motion,

14   Mr. Avenatti had the burden of demonstrating that COVID 19 or

15   any other changed circumstances warranted transfer or

16   reconsideration of Judge Batts' decision.

17           Mr. Avenatti fails to carry that burden.  His renewed

18   motion is based on the contention that when trials resume here

19   and in California, there will be a backlog and that that

20   backlog will justify consolidation where appropriate.

21           Relatedly, he contends that having two trials poses

22   more of a public health risk than having one and that that risk

23   is particularly unwarranted as he says, given the similarity of

24   this case and the California case.

25           There are several flaws in those arguments.  To name

1    but a few, first, I have no intention of trying this case or

2    any other case, for that matter, until I'm reasonably confident

3    that doing so would not endanger trial participants, including

4    prospective jurors.

5           Second, transferring this case would, in many ways,

6    actually increase public health risks and the risks to

7    participants in the sense that it would require lawyers,

8    agents, witnesses, and perhaps others to travel cross country

9    for a trial in California.

10          And third, as the government notes, the motion rests

11   on a faulty premise that the two cases are similar and would be

12   consolidated if this case were transferred.  Judge Batts

13   explicitly rejected that already argument, a decision that, as

14   noted, I will not revisit but, for what it's worth, also seems

15   right to me.  And indeed Mr. Avenatti himself is apparently

16   seeking or apparently sought severance in California.  So there

17   may be multiple trials there regardless.

18          On top of that and for what it's worth, several of the

19   Platt factors actually weigh more heavily against transfer

20   today than they did at the time of Judge Batts' decision.

21          For example, the first factor, the location of the

22   defendant, as I understand it, Mr. Avenatti has been released

23   only temporarily pursuant to 18 U.S. Code, Section 3142(i),

24   which is to say that at some point when the public health

25   circumstances have changed, he will presumably be remanded back

1    into custody.

2          It follows that his location will be determined by the

3    U.S. Marshals service, not by him.  And that factor therefore

4    no longer weighs in favor of transfer.

5          In addition, the fifth factor, disruption of the

6    defendant's business, by his own admission in the affidavit

7    that he filed in support of his motion for appointment of

8    counsel, he has been suspended from the bar of California and

9    his business is effectively nonexistent at this time.

10          That would be even more so if or when he is taken back

11    into custody by the marshals.  So, again, that factor weighs

12    even more heavily against transfer today.

13          The sixth factor, the expense of parties, if he is in

14    the custody of the Marshal Service, then obviously he wouldn't

15    incur any expenses for travel and lodging.  Those expenses

16    would be incurred by the taxpayers instead.  And so too if I

17    grant his motion for appointment of counsel, legal fees would

18    not be an issue.  So that factor also weighs against transfer.

19          Someone just joined I'm assuming.  Can I just pause

20    for a moment and ask if someone just joined the conference.

21    All right.  I don't know if somebody left then.

22          Ms. Smallman, are you on?

23          THE DEPUTY CLERK:  I am.  While it shows that an 11th

24    person joined the line that we are currently on, the monitor

25    does not.  So I am unsure what has happened.

1          THE COURT:  Let me make sure that everyone is still

2     on, beginning with Mr. Avenatti.

3          Are you on?

4          THE DEFENDANT:  Michael Avenatti.  Yes, your Honor.

5          THE COURT:  Mr. Warren, are you on?

6          MR. WARREN:  Yes, I am, your Honor.

7          THE COURT:  Mr. Sobelman, are you on?

8          MR. SOBELMAN:  Yes, your Honor.

9          THE COURT:  And, Kelly, are you still on?

10          THE COURT REPORTER:  Yes, I'm here.

11          THE COURT:  Very good.  So we can continue, leaving

12     that a mystery.

13          So as I was saying, if I grant the motion for

14     appointment of counsel, then legal fees would no longer be an

15     issue.  So the sixth Platt factor weighs more heavily against

16     transfer today.

17          And then finally, if I grant appointment of counsel,

18     then the location of counsel, the seventh Platt factor, would

19     also weigh more heavily against transfer today.

20          In short, not only has Mr. Avenatti failed to carry

21     his burden of showing that changed circumstances weigh in favor

22     of a different result today, then when Judge Batts decided the

23     issue last September, if anything, the argument for transfer is

24     even weaker today than it was then.  So the renewed motion is

25     denied.

 1          With that, I'll turn to the issues relating to

 2    Mr. Avenatti's representation.  There are two motions pending

 3    on that.  One is a motion to withdraw by the Warren Terzian law

 4    firm on two grounds:  One, that there is an unwaivable conflict

 5    of interest, and the second is that Mr. Avenatti is no longer

 6    paying their fees and no longer can pay their fees, and then

 7    relatedly a motion to appointments the Federal Defenders as

 8    court-appointed counsel.

 9          Before I turn to those motions, though, let me address

10    one related or preliminary matter which is the application to

11    seal the CJA 23 form and Mr. Avenatti's affidavit.

12          I did grant that motion on counsel's application in

13    light of the fact that they had been sealed or similar

14    documents had been sealed by Judge Selna in connection with the

15    application made to him.

16          For what it's worth, I later confirmed that in the

17    normal course, while the fact of a CJA 23 form is noted on the

18    docket, it's not available, at least electronically, on a

19    docket in view of the sensitive, personal, and financial

20    information contained on those forms.

21          Having said that, upon reflection, I think the

22    question of whether those documents should be public in this

23    case warrants further briefing.  I do recognize that they

24    contain private information or information that Mr. Avenatti

25    may not want to share with the public.

1              But at the same time, there is obviously some public

2    interest in ensuring that taxpayer dollars are spent

3    appropriately, that is, that counsel is being appointed

4    appropriately.

5              And in this case in particular, I would think that

6    there might be a public interest, given that not long ago,

7    Mr. Avenatti certainly had sufficient funds to afford plenty of

8    lawyers.

9              The fact that Judge Selna has sealed something similar

10   which was the full basis for the application here does not mean

11   to me that the documents filed independently in this court

12   should remain sealed.

13             Among other things, the law in the Ninth Circuit and

14   the law here on public access may well be different.  But in

15   any event, the fact that one judge thinks that something should

16   be sealed doesn't mean that another judge faced with the same

17   document filed in that case needs to reach the same conclusion.

18             That is to say, if the right to public access calls

19   for those documents to be public, then I think they should be

20   public, without regard for what Judge Selna has done.

21             In light of that, I will direct defense counsel,

22   however that is at the end of this conference, to show cause

23   within two weeks why the two documents, the CJA 23 form and

24   Mr. Avenatti's affidavit, should not be unsealed.

25             And the government can respond within one week of that

1   submission on the theory that there may be third parties,

2   members of the press, or the like who wish to be heard on that.

3   As well, they would have to file something by the government's

4   deadline accompanied by a letter motion seeking leave to be

5   heard.  In the meantime, I'll keep those documents under seal,

6   and they may remain under seal.  But I just think it warrants

7   further consideration.

8          With that, let's turn to the actual motions.

9   Mr. Warren, let me start by just asking and circling back to

10  Ms. Miro, asking what her status is.

11         She has not filed a motion to withdraw.  I guess that

12  leaves me a little puzzled.  Your motion to withdraw may not

13  have any bearing on her status and vice versa.  But certainly

14  the request to appoint counsel seems a little odd as long as

15  there are other counsel remaining on the case.

16         MR. WARREN:  Yes, your Honor.  I anticipate Ms. Miro

17  will seek to withdraw as well.  She was retained for the

18  specific purpose of dealing with custody issues at MCC.  She's

19  a brand new lawyer.  She's a good lawyer, but she's never had a

20  criminal trial.  Her experience in this realm is somewhat

21  fresh.

22         So I anticipate that to the extent that the Court

23  believes that having the Federal Defenders come in is

24  appropriate, that she will withdraw as well.

25         THE COURT:  All right.  Very good.  Let's take these

1  in order.

2          First, the motion to withdraw filed by the Warren

3  Terzian firm is granted.  Upon review of the ex parte affidavit

4  from Mr. Warren, which provided some information regarding the

5  conflict issue, I do agree that there is an unwaivable conflict

6  of interest that would justify withdrawal.  Separate and apart

7  from that, the fact that Mr. Avenatti can no longer pay and is

8  no longer paying their fees justifies withdrawal.

9          That might not have been the case if allowing

10 withdrawal would impact the trial date.  But for reasons that

11 we will discuss in short order and are probably obvious, I

12 don't think that is the case here.  So for a combination of

13 those reasons, the motion to withdraw is granted.

14         That brings me to the motion to appoint the Federal

15 Defenders.  I guess, Mr. Sobelman, I wanted to give you an

16 opportunity to be heard.  Your letter indicated that, in

17 essence, the motion to withdraw should be granted only in the

18 event that a motion to appoint counsel was made in short order.

19         That obviously has now been made.  I don't know if

20 that changes your position on the matter or if you have a view

21 with respect to Ms. Miro's involvement or if you wish to be

22 heard.

23         Mr. Sobelman.

24         MR. SOBELMAN:  Yes.  This is Robert Sobelman.  Thank

25 you, your Honor, for giving us the opportunity to state our

1    view.

2          We take no position at this time on whether the Court

3    should grant the application to appoint the Federal Defenders

4    or perhaps await Ms. Miro's apparent motion to withdraw.  We

5    defer to the Court on this point.

6          THE COURT:  Mr. Warren, let me circle back to you.

7    Let me say that your withdrawal, just to be clear, is

8    conditioned on two things:  One is that you'll provide any and

9    all materials related to the case promptly to new counsel,

10   whoever that is; and secondly, you'll provide any assistance

11   that's needed to get up to speed and ensure the smooth

12   transition of counsel.

13         MR. WARREN:  Understood, your Honor.

14         THE COURT:  Can you just elaborate on the Ms. Mori

15   question.

16         Is it your understanding that she would file a motion

17   to withdraw promptly?  Can I set a deadline for her to do that?

18         On the one hand, I think it would be best,

19   particularly with Mr. Baum being here, to ensure continuity of

20   counsel and that counsel who is more likely it sounds like to

21   try the case is appointed sooner rather than later.

22         As I said, it's a little bit odd to do it in that

23   order.

24         MR. WARREN:  Yes, your Honor.  I don't want to speak

25   for Ms. Miro, and I know she's not on the call.  I certainly

1    think it would be appropriate for the Court to order her to

2    withdraw within a certain period of time so that there is not

3    an overlap between the Federal Defenders and her

4    representation.

5             THE COURT:  All right.  So I think what I will do is

6    set a deadline for her to do that, and I'll issue an order to

7    this effect but trust that you can convey this, to file any

8    motion to withdraw within a week just to clarify things.

9             In the meantime, based on your representation that she

10   was hired principally, if not exclusively, to deal with issues

11   surrounding Mr. Avenatti's detention at the MCC and your

12   representation that she does intend to withdraw, I think I will

13   not wait for that, even if that's sort of the normal course,

14   and I will proceed to appoint Mr. Baum and the Federal

15   Defenders to represent Mr. Avenatti.

16            Let me say a few things about that:  First, I am

17   persuaded by Mr. Avenatti's affidavit that he is eligible for

18   appointment of counsel in the sense that he could not at

19   present afford counsel.

20            But it is a slightly unusual case in the sense that

21   his affidavit acknowledges that he has an ownership interest in

22   certain assets that are essentially undetermined I think is the

23   word that he uses -- their value is undetermined -- and, in

24   particular, things that might yield funds in the future such as

25   contingency lawsuits and the like.

1      It raises the possibility, however remote, that

2  Mr. Avenatti's financial circumstances could change in the

3  future and that he would no longer be eligible for the

4  appointment of counsel.

5      So in light of that, while I will appoint the Federal

6  Defenders to represent him today, number one, I'm going to

7  require Mr. Avenatti to submit an affidavit every four months

8  from today regarding his financial circumstances and noting

9  with specificity any change in those circumstances since the

10  prior affidavit just to ensure that if he comes into any of

11  those funds or wins the lottery or anything of that sort and is

12  able to afford counsel, that I take appropriate steps at that

13  point.

14      And relatedly, Mr. Baum, I'm going to direct you to

15  keep at least rough track of the hours that the Federal

16  Defenders spends on this matter so that in the event that I

17  determine later that Mr. Avenatti should be ordered pursuant to

18  18 U.S. Code, Section 3006A(f) -- that I order him to reimburse

19  the taxpayers for legal fees, that I have an idea what that

20  amount should be.

21      Mr. Baum, do you think you can do that?

22      MR. BAUM:  Yes, Judge.

23      THE COURT:  Very good.

24      All that is to say that I assume Ms. Miro will

25  presumably withdraw in short order and certainly have to file

1    any motion to that effect next week and that Mr. Baum and

2    company will be representing Mr. Avenatti going forward.

3         The last remaining issue on my agenda -- and then I'll

4    hear if you have anything else to raise -- is the question of a

5    trial date.  It is currently -- Mr. Baum, I don't know if

6    you've looked at the docket, but it's.

7         MR. BAUM:  I have looked at the docket.  Thank you.

8         THE COURT:  Trial is currently set for October 13.

9    When I set that date, I indicated that the parties should

10   advise me 60 days before the trial date whether they believed

11   an adjournment was appropriate on account of COVID-19.

12        That deadline, the 60-day deadline, by my calculation,

13   is only about a week or so away.  So I would be inclined to

14   address the issue now since we're all together.

15        To be blunt, I don't think that this case will be

16   triable in October, putting aside the substitution of counsel.

17   I think that we will be lucky if this district resumes jury

18   trials in October, although that is certainly the hope and, at

19   present, the plan.

20        Even if we do, that would be the very beginning of the

21   resumption of trials.  It's my view that this case would not be

22   the appropriate test case for whether a trial is doable in the

23   current public health circumstances.

24        That is to say, given the number of public and press

25   interest in this case and the number of people who might be

1   interested in attending it, it just seems like the wrong case

2   to begin that experiment with.  On top of that, I would imagine

3   that Mr. Baum needs some time to get up to speed and to prepare

4   for trial.

5           We could adjourn to a date specific.  The alternative

6   would be to schedule a conference or a control date, perhaps

7   even the October 13 date on which trial was supposed to begin,

8   at which time we can look at the matter and may have a better

9   sense of when trial would be realistic.

10          The one thing that we do need to decide now though is,

11  as counsel may know, the district recently adopted a plan to

12  deal with the fact that if trials resume, there will only be a

13  handful of courtrooms that are feasible or amenable to have

14  safe, public, socially distanced trials proceedings in.

15          In light of the fact and in light of the fact that

16  there will be indeed be a backlog, there is a protocol and a

17  plan that we have adopted to basically figure out which trials

18  should proceed first and a schedule for whatever cases need to

19  be tried.

20          My deadline for submitting a trial to be considered --

21  sorry.  My deadline for any trial that I want to try this

22  calendar year during 2020 is two weeks away.  So what we do

23  need to decided today is whether we think it is realistic or

24  advisable to try and schedule this case for trial in 2020.  If

25  so, then we should adopt a date certain.  If not, I think we

1    can adopt the pretrial conference control date approach.

2         Mr. Baum, let me start with you and get your thoughts

3    on that.

4         MR. BAUM:  Thank you, Judge.

5         Of course, as you noted, what must happen now from my

6    end is that myself and my colleagues must get up to speed in

7    terms of discovery.  I have no idea how much discovery there is

8    or how long it will take to review that.

9         But I suspect that we might be able to report to the

10   Court by October 13.  Obviously we're starting fresh.  We have

11   virtually no knowledge of the case, other than what I've been

12   able to discover by reviewing the docket sheet and attempting

13   to go through documents that were filed on the docket sheet

14   which do not contain any discovery.

15        On top of that, there are potential witnesses that we

16   would need to interview and discuss with Mr. Avenatti.  I would

17   add, Judge, although I know that you have denied his motion, we

18   would like an opportunity to determine whether there should be

19   any motions going forward, once we complete our review of

20   discovery.

21        So my thoughts, of course subject to your final

22   judgment, is that we should meet again on October 13 or

23   thereabouts and set a trial date at that time, assuming that

24   there are no obstacles to doing that.

25        And I will of course endeavor, along with my

1    colleagues who will be trying this case with me, to go through

2    discovery as expeditiously as possible, to review whether there

3    need be any motions, with all due respect to Mr. Warren, that

4    we think are appropriate to be filed, and of course start the

5    process of determining whether witnesses will be called and

6    what witnesses will be called and start to interview those

7    witnesses.

8          So don't think it's realistic to believe that this

9    case will end up being tried before January 1, again, taking

10   into account what I just said, as well as the protocols which

11   you've gone there which I'm fully aware of.  Mr. Avenatti's

12   case, at least at present, would not receive a preference

13   because he's not incarcerated.

14         Also I'm aware of the list that needs to be submitted,

15   and we're obviously going to miss the deadline if we're given

16   the opportunity to review the discovery about setting a trial

17   date.

18         THE COURT:  Yes.  I would add, among the

19   considerations for why I think this case is probably more

20   difficult to try in the current public health circumstances, we

21   are planning to use a juror questionnaire I presume that the

22   venire panel will have to be larger than it would otherwise

23   would have to be in a case of this nature.  Obviously that is a

24   much more difficult thing to do at present.

25         Mr. Sobelman, let me turn to you.  Do you have any

1    objection to adjourning the trial sine die and scheduling a

2    conference around the date of the trial, so the week of

3    October 12, at which time we can hopefully set a new trial date

4    and hopefully convene in person for that matter?

5            MR. SOBELMAN:  Your Honor, just a couple of responses:

6    First, Mr. Baum mentioned potentially making additional

7    pretrial motions.

8            THE COURT:  Can I stop you there.

9            MR. SOBELMAN:  Yes, your Honor.

10           THE COURT:  I'm obviously not going to preclude

11   Mr. Baum from making an effort.  But as I think he is probably

12   aware, he would have an uphill climb to persuade me that at

13   this point Mr. Avenatti should be granted leave to file any

14   motions.

15           He's had an opportunity to do that.  He had one before

16   Judge Batts.  He was given an opportunity to renew his motion

17   to transfer and has had plenty of time since then to raise

18   other issues.  Given that, he would certainly have to persuade

19   me that a late motion would be appropriate.

20           Let me say that, and then turn it back to you,

21   Mr. Sobelman.

22           MR. SOBELMAN:  Thank you, your Honor.

23           THE COURT:  All right.  Go ahead.

24           MR. SOBELMAN:  I just want to flag one other data

25   point for the Court which the Court may be aware of which is

1   that the Central District of California trial is presently

2   scheduled for December 8, 2020.

3          Of course California is dealing with the same or maybe

4   more difficult circumstances than we currently have in

5   New York.  So we don't know whether that trial will proceed or

6   not.  We just don't have information either way.  We assume it

7   will, unless it's changed.  But I wanted to provide that data

8   point for the Court.

9          With respect to whether the Court should set a date

10  now or simply set a conference, the government understands that

11  defense counsel will need time with the discovery and to speak

12  with their new client and potentially investigate the case.

13         We don't want to rush anyone to trial, particularly in

14  the present circumstances.  However, our concern with setting

15  no date at all, even if it were far away, is that we may have

16  issues getting a spot on your Honor's calendar or on the

17  assignment committee's prioritization at a later point.

18         So if we could ask that the Court set a date, even if

19  it were in 2021, so we can all sort of work around that date,

20  obviously potentially subject to change, if the circumstances

21  require it.

22         MR. WARREN:  Your Honor, it's Mr. Warren.  I have a

23  quick note for your Honor, if I may.  I just wanted to let the

24  Court know that the Central District came out with a new COVID

25  order either yesterday or today in which they said that no

1    criminal trials will be held for the foreseeable future.

2         THE COURT:  I think I am going to just adjourn the

3    trial date sine die and schedule a conference date for mid

4    October.  That is not to say that Mr. Sobelman's points lack

5    force.

6         Indeed, given the way the protocol is drafted, there

7    is a risk that by not setting a trial date, it gets sort of

8    lower in the totem pole if you will.  But the truth is that my

9    backlog and calendar for next year are such a mess right now

10   that I'm not sure I even could realistically give you a date.

11        If trials resume in October, we'll have a much better

12   sense of how quickly things can proceed.  We may know when the

13   California case is going.  On top of all that, we have new

14   counsel who needs to get up to speed.

15        So I just don't think it's realistic to set anything

16   more than a fantasy date.  I'm not really in the practice of

17   setting fantasy dates.  So I'd rather come back and set a date

18   that is more realistic in October.

19        So with that, why don't we plan to convene on

20   October 13 when at least everyone, other than Mr. Baum, was

21   planning to be in my courtroom.  We'll convene let's say at

22   10:00 on the morning of October 13 for a conference, and

23   hopefully we can do that in person and plan to set a trial date

24   at that time.

25        So, counsel, you should confer with one another with

1    respect to setting a trial date.  As I think you know, when I

2    set a trial date, as far as I'm concerned, it is a firm date.

3              But right now that comes with a pretty significant

4    footnote/asterisk given the public health situation.  That is

5    certainly a reason that I would adjourn a date.  But for any

6    other reason, you can probably assume that I would not grant

7    any requests.

8              So you should come prepared to discuss a new trial

9    date with the understanding that COVID aside, it would be a

10   firm date and we can set it at that time.

11             Any questions?  Anything else to discuss?

12   Mr. Sobelman?

13             MR. SOBELMAN:  No, your Honor.  Thank you.

14             THE COURT:  Mr. Warren, I'll check with you.  Anything

15   else?

16             MR. WARREN:  Nothing else, your Honor.

17             THE COURT:  All right.  Mr. Baum, anything else on

18   your end?

19             MR. BAUM:  Just to be sure and to clarify, Judge,

20   you're expecting to hear from me within two weeks of today

21   about publicly filing the eligibility affidavit?

22             Is that what you indicated?

23             THE COURT:  That is correct.  I suppose you should be

24   given a copy of it.

25             MR. BAUM:  Yes.

 1             THE COURT:  Mr. Warren, can I impose on you to provide

 2      a copy of what you filed under seal to Mr. Baum so that he has

 3      that.

 4             MR. WARREN:  Absolutely, your Honor.

 5             THE COURT:  All right.  Again, Mr. Baum, two weeks

 6      from today.  Unless you have no objection to it being unsealed,

 7      you should file something that would show cause why it should

 8      remain sealed, and the government and anyone else who wishes to

 9      be heard can file something a week later.

10             Time is already excluded through October 13.  So I

11      don't need to do anything on that front.  Given all that, I

12      think we have done what we need to do.  So I wish everybody a

13      pleasant, relaxing weekend.  Please stay safe and healthy.  We

14      are adjourned.  Thank you very much.

15             MR. BAUM:  Thank you, your Honor.  Is it.

16             MR. WARREN:  Thank you, your Honor.

17             (Adjourned)

18

19

20

21

22

23

24

25