**Federal Defenders**
**OF NEW YORK, INC.**

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

*David E. Patton*
Executive Director
and Attorney-in-Chief

*Southern District of New York*
Jennifer L. Brown
Attorney-in-Charge

September 2, 2020

**BY EMAIL & ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

  RE: **United States v. Michael Avenatti**
     **19 Cr. 374 (JMF)**

Dear Judge Furman:

  By its own admission, the government has no basis to question Michael Avenatti's indigence and no reason to challenge his eligibility for court-appointed counsel. Nevertheless, in seeking disclosure of Mr. Avenatti's compelled statements about his financial condition, the government insists that Mr. Avenatti's concerns about self-incrimination are "generalized." Gov't Letter (ECF No. 86) at 1. But this is demonstrably false. Based on the Indictment, the government's theory of the case, and the government's aggressive use of Mr. Avenatti's financial condition against him in a prior prosecution (brought by the same prosecutors here), Mr. Avenatti justifiably fears that the government will weaponize his sworn statements about his debts, obligations, and income to advance their investigation and prepare for trial. These circumstances, which bear no resemblance to those the Second Circuit confronted in the cases cited by the government, compel the Court to keep Mr. Avenatti's sworn financial statements sealed and avoid an unconstitutional conflict between his Fifth and Sixth Amendment rights.[1]

---

[1] The defense acknowledges that the Court granted Matthew Lee, a representative of "Inner City Press," leave to be heard on this matter. The defense requests leave to respond to Mr. Lee one week from the timely filing of any substantive brief or letter. For now, it bears emphasizing that the Court's measures requiring the Federal Defenders to keep an accurate record of the hours spent on Mr. Avenatti's defense, and also requiring Mr. Avenatti to regularly update the Court on his finances, are sufficient to protect the public fisc and to ensure that funds for court-appointed counsel are being properly spent. Further,

In the alternative, and to ensure that Mr. Avenatti's statements are at least insulated against use by the government in its case-in-chief, the defense respectfully requests that the Court consider redactions to Mr. Avenatti's CJA 23 Form and its accompanying affidavit, and otherwise delay any disclosure of the documents until after the government rests at trial.

Under the rule announced by the Supreme Court in Simmons v. United States, 390 U.S. 377, 394 (1968), the government cannot use a defendant's sworn statements to obtain court-appointed counsel against him as direct evidence. United States v. Branker, 418 F.2d 378, 380-81 (2d Cir. 1969). With this rule in mind, and particularly where a defendant faces a real and appreciable hazard of self-incrimination should his statements be disclosed to the government, the Third, Fourth, Fifth, Eighth, and Ninth Circuits have persuasively decided that defendants' financial affidavits should be sealed and reviewed by courts in camera. See Defense Letter (ECF No. 80) at 4-6.[2] As set forth in Mr. Avenatti's initial letter, the logic of these cases when applied to his unique circumstances compels the Court to keep his CJA 23 Form and accompanying affidavit under seal.

In urging the Court to unseal Mr. Avenatti's sworn statements about his financial condition, however, the government relies on two cases: United States v. Harris, 707 F.2d 653 (2d Cir. 1983) and United States v. Hilsen, No. 03 Cr. 919 (RWS), 2004 WL

---

"neither the First Amendment nor the common law provides a right of access to financial documents submitted with an initial application to demonstrate a defendant's eligibility for CJA assistance." In re Boston Herald, Inc., 321 F.3d 174, 191 (1st Cir. 2003). And "even if there were a common law presumption of access, then it would be outweighed here … by [Avenatti's] countervailing privacy interests" and rights under the Fifth and Sixth Amendments. Id.

[2] As discussed herein and in Mr. Avenatti's initial letter, the Second Circuit cases setting forth the process for handling and reviewing defendants' financial affidavits to obtain court-appointed counsel do not prevent this Court from reviewing Mr. Avenatti's sworn statements in camera and maintaining them under seal. However, to the extent the Court determines that it cannot consider ex parte or keep under seal Mr. Avenatti's CJA 23 Form and accompanying affidavit under the law in this circuit, there is an obvious circuit split. Indeed, in the case pending against Mr. Avenatti in the Central District of California, the district court granted Mr. Avenatti's motion to seal his financial affidavit regarding CJA counsel under the district's local rules and Ninth Circuit precedent. See Application and Sealing Order, United States v. Michael Avenatti, No. SA-CR-19-61-JVS, Dkt. Nos. 255, 256 (C.D. Ca. Aug. 27, 2020). Consequently, upon any order to unseal in this case, the defense respectfully requests an opportunity to stay such order by at least 14 days to determine the feasibility of pursuing an interlocutory appeal. Cf. United States v. Harris, 707 F.2d 653, 658 (2d Cir. 1983) (order revoking appointment of counsel in a criminal case is immediately appealable).

2284388, at *4 (S.D.N.Y. Oct. 12, 2004).   But these cases do not resolve the present issue against Mr. Avenatti; rather, they simply reveal the Second Circuit's resistance to sealing a defendant's sworn financial statements where his concerns about self-incrimination are speculative, or where there is a genuine dispute over his financial inability.   Because Mr. Avenatti's circumstances are readily distinguishable, Harris and Hilsen are inapposite and unavailing.

As discussed in Mr. Avenatti's opening letter, Harris involved a defendant who was seeking court-appointed counsel over the government's objection and in direct conflict with information in the government's possession that purportedly showed his financial ability.   Given this context, the court refused to seal the defendant's sworn financial statements because sealing would undermine the integrity of the adversarial proceeding triggered by the dispute over the defendant's financial eligibility, and because the defendant had failed to muster anything but speculation that his statements would be used against him.   Similarly, in Hilsen, the government opposed the defendant's motion for the appointment of counsel because "evidence gathered during the course of its investigation" suggested that the defendant had "significant assets" rendering him ineligible for court-appointed representation.   2004 WL 2284388 at * 1.   Given the hotly-contested nature of the defendant's eligibility, and his failure to establish "real and immediate" Fifth Amendment concerns, the court concluded that the defendant had "not established any basis [] to deviate from the adversarial, open approach" preferred by Harris and its progeny.   Id. at *8, *9.

In contrast, the government has been pellucid that there is no basis to question Mr. Avenatti's financial inability; accordingly, there is no dispute to resolve and no adversarial proceeding to protect.   And although the government claims that disclosure is appropriate to assess Mr. Avenatti's truthfulness and to address any perjury concerns (Gov't Letter at 2 n.1 and 2-3), both points miss the mark.

From the outset, the government never opposed Mr. Avenatti's application for the appointment of counsel, and admitted that it has no reason to believe Mr. Avenatti is hiding significant assets or can otherwise afford counsel.   Having effectively conceded Mr. Avenatti's financial inability, the government cannot now offer a credible, non-case-related justification for disclosure.   The Court has already imposed measures to keep a close eye on Mr. Avenatti's financial condition (under penalty of perjury) throughout the entirety of these proceedings—measures that are designed to adequately safeguard the interests of the public and the government in Mr. Avenatti's truthfulness.   Indeed, if the accuracy of Mr. Avenatti's representations is ever credibly

at play, then the government is free to seek disclosure of the documents and to conduct an investigation <u>after</u> this case concludes, without triggering any Fifth Amendment issues.  See, e.g., <u>United States v. Hyde</u>, 208 F. Supp. 2d 1052, 1054 (N.D. Ca. 2002) ("[O]nce a defendant has testified or concluded his testimony, the Government will have a stronger argument for unsealing the affidavit since at that point the Fifth Amendment concern will be greatly diminished…. The government thus maintains the right to investigate possible perjury in the affidavit after trial, [] and ultimately the truth seeking function will not be compromised.").

Further, unlike the defendants in <u>Harris</u> and <u>Hilsen</u> whose Fifth Amendment concerns were deemed premature or insubstantial, there can be no question that disclosing Mr. Avenatti's sworn financial statements to the government would render his right against self-incrimination null and void.  That privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute [Mr. Avenatti] for a federal crime."  <u>Hoffman v. United States</u>, 341 U.S. 479, 486 (1951).  Because the government's allegations are inextricably intertwined with Mr. Avenatti's sources of income and expenditures, and because the government made Mr. Avenatti's financial condition the centerpiece of its prosecution in <u>Avenatti I</u>, allowing the government to scrutinize Mr. Avenatti's CJA 23 form and accompanying affidavit would necessarily assist the government's investigation, providing information on potential leads to extrinsic documentary evidence and even new witnesses.

Critically, it makes no difference that the government may already have much of the information about Mr. Avenatti's finances that he provided the Court through its own "thorough financial investigation of the defendant."  Gov't Letter at 3.  The issue here is not about the information itself, but the source of it.  The government is free to investigate Mr. Avenatti through any lawful means and build a case against him that conforms to the Bill of Rights, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence.  The government is plainly prohibited from using Mr. Avenatti's compelled statements against him, either to obtain "a lead or clue to evidence having a tendency to incriminate" or to check the completeness or accuracy of its investigation.  <u>United States v. Neff</u>, 615 F.2d 1235, 1239 (9th Cir. 1980) (citations omitted).

Given the real and appreciable Fifth Amendment issues at stake for Mr. Avenatti, and the absence of any countervailing concerns that he is in fact able to afford counsel, his CJA 23 Form and accompanying affidavit should remain sealed.  In the alternative,

the Court should delay disclosure of the documents until after the government rests and/or until the defense has had an opportunity to offer redactions for the Court's consideration.

Respectfully Submitted,

/s/
Robert M. Baum
Tamara L. Giwa
Andrew J. Dalack
Assistant Federal Defenders

Counsel for Michael Avenatti

Cc: Government Counsel