**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

April 14, 2021

**BY ECF AND EMAIL**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square, Room 2202
New York, New York 10007

**Re:** United States v. Michael Avenatti,
19 Cr. 374 (JMF)

Dear Judge Furman,

On March 13, 2020, the Government transmitted a letter to the Court to "address certain issues related to juror questionnaires and oral voir dire," in Mr. Avenatti's then upcoming trial. Dkt. No. 46 (the "Letter"). At the time, Mr. Avenatti was represented by Thomas Warren, Esq. In the Letter, the Government represented that the parties (Mr. Warren and the Government) would jointly consent to the presence of a representative of the press during sidebar examinations of jurors throughout voir dire. Dkt. No. 46 at 5. We write to voice our objection to that provision,[1] and to oppose the presence of a reporter at sidebar during voir dire based on information we have learned since the Letter was filed.

The Government's position is as follows: "In light of the revised position by the defendant, the Government defers to the Court's discretion as to whether to allow a pool reporter at sidebar pursuant to the principles set forth in Press Enterprise Co. v. Superior Court, 478 U.S. 1 (1986), and its progeny, as described on pages 2-4 of the parties' prior letter. Dkt. No. 46.

---

[1] Our objection to a reporter's presence during sidebar examinations of prospective jurors is our primary objection to the provisions set forth in the Letter, though we also anticipate opposing the release of completed juror questionnaires until the trial is complete. We understand that the Court has not ruled on the other proposals set forth in the March 13, 2020 Letter, and the Government would not be prejudiced by our current, narrow objection nor have they acted in reliance on that agreement.

1

**Argument**

The defense's "revised position" to a reporter's presence at sidebar during oral voir dire is two-pronged.

First, in the Letter, the issue of whether to allow a reporter to be present at sidebar during voir dire in this case was tethered to what ostensibly occurred before the Honorable Paul G. Gardephe in United States v. Michael Avenatti, 19 Cr. 373 (PGG) (the "Nike case"). According to the Letter, Judge Gardephe had "permitted the defendant and a member of the media from the New York Post to be present at sidebar discussions with potential jurors." Dkt. No. 46 at 1. After consulting with Mr. Warren and scrutinizing the record in the Nike Case, however, we do not agree with this position.

Following the jury's verdict in the Nike case on February 14, 2020, Mr. Avenatti was held in custody at the Metropolitan Correctional Center ("MCC") awaiting trial before this Court. In mid-March 2020, while Mr. Avenatti was inexplicably confined to the most restrictive unit of the MCC,[2] the Government and Mr. Warren conferred on various scheduling and trial-related matters. The attorneys for the Government, who also represent the Government in the Nike case, transmitted a draft version of the Letter to Mr. Warren. Mr. Warren reviewed the Letter and acquiesced to the presence of a reporter at sidebar during voir dire, accepting at face value that Judge Gardephe permitted it based on what was in the Letter, which was principally drafted by the Government.

Mr. Warren was later forced to withdraw due to an unrelated conflict. In August 2020, the Court appointed the Federal Defenders of New York to represent Mr. Avenatti, led by Mr. Robert Baum.

Upon our further scrutiny of the transcript and the docket in the Nike case, we have found nothing that indicates Judge Gardephe "permitted" a reporter to be present during sidebar questioning of prospective jurors during voir dire.[3] In fact, while our review indicates that Judge Gardephe expressly allowed Mr. Avenatti to be present at sidebar discussions with potential

---

[2] Due to Mr. Avenatti being placed in solitary confinement in 10 South for non-disciplinary reasons, multiple lockdowns at MCC resulting from a smuggled firearm, and the pandemic, Mr. Avenatti had limited contact with his counsel in his various matters, including in this case and the Nike case, from approximately the third week of February until late April, at which time he was released to home confinement in California.

[3] We have also communicated with Mr. Avenatti's counsel in the Nike case, who do not recall Judge Gardephe ruling on a reporter's presence at sidebar during oral voir dire.

2

jurors, there is no corresponding ruling from Judge Gardephe granting a reporter from the New York Post or from any other media outlet such access.  Further, no application from any press organization or corresponding order from the Court is reflected on the docket.

Thus, we reject the contention that Judge Gardephe "permitted" a reporter's presence at sidebar during voir dire and otherwise oppose relying on what transpired in the Nike case here.

Second, the weight of the applicable case law and precedent on this topic does not support granting a reporter access to sidebar discussions with prospective jurors during voir dire. To the contrary, allowing a reporter to cover sidebar voir dire of a prospective juror is rare and discouraged, primarily because it undermines a juror's candor and the purpose of entertaining a sidebar discussion in the first instance.[4] In precluding a reporter's presence at sidebar during voir dire, courts seek to balance First Amendment freedoms with the defendant's right to a fair trial and the potential prejudice which may ensue from a reporter's presence at sidebar.

In United States v. King, 140 F.3d 76 (2d Cir. 1988) the Second Circuit affirmed the District Court's decision to deny a request for a reporter to attend sidebar discussions. By protecting from public disclosure the private, sensitive and personal matters of jurors, the Second Circuit agreed that excluding the reporter from sidebar discussions was appropriate and not violative of First Amendment precepts. The Circuit also determined that the district court's decision was commensurate with the defendant's right to a fair trial before jurors who were fully vetted about any potential bias.  The Circuit further noted that although the district court did not consider alternatives to a categorical exclusion of reporters at sidebar (e.g., by excluding a reporter only upon a prospective juror's request for privacy), the court need not have imposed an obligation on prospective jurors to publicly acknowledge that their candor would be inhibited absent questioning in private. Id. at 82.

---

[4] The Government's March 13, 2020 letter cites United States v. Shkreli, 260 F. Supp. 3d 257 (E.D.N.Y. 2017) for the proposition that a reporter may be present at sidebar unless the juror requests their exclusion or the Court in its discretion finds that the presence of a reporter will inhibit the juror's candor.  In Shkreli, while the Court permitted the presence of the reporter, it noted that absent a degree of juror privacy, candor is likely restricted. Id. at 261.  Indeed, and for this reason, courts routinely deny requests to allow a reporter to be present at sidebar during voir dire.

3

Indeed, prospective jurors may request a sidebar for numerous reasons during voir dire, including to be able to speak candidly about issues related to bias that might otherwise prove embarrassing if stated publicly, or to address anything else they may feel uncomfortable discussing in public. Allowing a reporter access to sidebar voir dire runs the unnecessary risk of undermining the purpose of the sidebar, creating an incentive for prospective jurors to self-censor their answers to really important questions. See United States v. Loera, 09 Cr. 466 (BMC), 2018 WL 5624143, at *4 (E.D.N.Y. Oct. 30, 2018)(deeming the request for a reporter at sidebar "unreasonable," noting that the function of sidebar "is to allow the prospective juror to speak candidly about a topic that they do not feel comfortable discussing in public"); See also, Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 598 n.23 (Brennan J., concurring) ("[W]hen engaging in interchanges at the bench, the trial judge is not required to allow public or press intrusion upon the huddle."); United States v. Valenti, 987 F.2d 708 (11th Cir. 1993)(affirming the district court's decision to not allow reporters at bench conferences).

In this case, there is an untenable risk that a reporter's presence at sidebar during voir dire will chill prospective jurors' candid answers to questions about publicity, bias against Mr. Avenatti, and familiarity with pre-trial media coverage of Stephanie Clifford's accusations. Prospective jurors may feel discouraged from offering pertinent information about any prejudices they have against Mr. Avenatti or for the Government, or any preconceived notions about his guilt or innocence based on previous media coverage, out of a justifiable fear that their sensitive answers to certain questions may be publicized.[5]

Of course, if a prospective juror desires (or is subjected to) a sidebar conference during voir dire, it stands to reason that he or she has something of more serious personal concern to disclose, thereby emphasizing the need to err on the side of privacy, not publicity. And while the public certainly has a right to have access to Mr. Avenatti's trial, the public's interest in having contemporaneous access to every aspect of Mr. Avenatti's jury selection is outweighed by his right to be tried before an impartial and carefully selected jury of his peers.

---

[5] There is also the related concern that a reporter's presence at sidebar could reveal to the public comments that could prejudice Mr. Avenatti's right to a fair trial before an impartial jury. For example, in the Nike case, and after attending a sidebar conference with a prospective juror, a New York Post reporter published an article the very same afternoon concerning the prospective juror's private comments at sidebar about Mr. Avenatti in the midst of jury selection.

Moreover, any First Amendment concerns may be addressed by allowing access to transcripts from sidebar voir dire after the jury renders its verdict.

**Conclusion**

We oppose granting a reporter access to sidebar discussions with prospective jurors during voir dire in the above-captioned case, and withdraw any consent to the contrary rendered by Mr. Avenatti's prior counsel. A reporter's presence at sidebar would inhibit jurors from candidly discussing their qualifications and any potential prejudice at the precise time that they have expressed a desire to do so privately and outside of public earshot. Accordingly, the Court should deny this discrete aspect of the Government's March 13, 2020 Letter.

Respectfully Submitted,

*Robert M. Baum*

Robert M. Baum
Tamara L. Giwa
Andrew J. Dalack

Counsel for Mr. Avenatti

cc: Robert Sobelman
Matthew Podolsky

Assistant United States Attorneys

The Government shall file a response to this letter (and the letter filed by Inner City Press, which will be docketed separately) no later than April 22, 2021. SO ORDERED.

April 16, 2021

5