MILLER KORZENIK SOMMERS RAYMAN LLP

THE PARAMOUNT BUILDING • 1501 BROADWAY, SUITE 2015 • NEW YORK, NY 10036
TEL 212-752-9200 • FAX 212-688-3996 • WWW.MKSR.LAW

April 20, 2021

<u>Via Email</u>

Hon. Jesse M. Furman
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    <u>United States v. Avenatti,  No. 1:19-cr-00374-JMF</u>

Your Honor:

      I represent Daily News, L.P., publisher of the New York *Daily News*.  The Daily News respectfully opposes the request from counsel for defendant Michael Avenatti to exclude the press from sidebar discussions during *voir dire* (Docket No. 107) and requests that the Court allow a single pool reporter to attend *voir dire* of potential jurors conducted at sidebar in this case.  This procedure, which has been permitted in various high-profile cases in this Circuit in recent years, would protect the First Amendment and common-law right of the press and the public to observe the jury selection process without in any way infringing on the rights of the defendant or the potential jurors.

      The public and the press have a presumptive First Amendment and common-law right of access to criminal proceedings, including the *voir dire* process.  <u>See</u> <u>Press Enterprise Co. v. Superior Court of California</u>, 464 U.S. 501, 508 (1984) ("<u>Press Enterprise I</u>").  In <u>Press Enterprise I</u>, the Supreme Court noted that the "process of selection of jurors has presumptively been a public process" throughout Anglo-American history.  <u>Id</u>. at 505.  The Court held that the presumption of access to the jury selection process "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  <u>Press-Enterprise I</u>, 464 U.S. at 510.  <u>See also</u> <u>ABC, Inc.  v. Stewart</u>, 360 F. 3d 90 (2d Cir. 2004) (vacating order denying press access to *voir dire* in criminal trial of Martha Stewart).

      In <u>Stewart</u>, the Second Circuit found that the district court erred in conducting *voir dire* proceedings in chambers and in refusing to allow a pool reporter to attend those proceedings, and further held that the release of transcripts of the *voir dire* proceedings was not sufficient to satisfy the First Amendment right of access.  The Court rejected the rationales for closure advanced by the district court, finding, *inter alia*, that "the district court [] did not demonstrate a substantial probability that, absent closure, members of the media would have either disrupted the proceedings or disclosed information that the court had prohibited them from revealing" and that the court "did not point to any controversial issue to be probed in *voir dire* that might have impaired the candor of prospective jurors."

1

Stewart, 360 F.3d at 100.  Finally, the Court noted that "the mere fact that the [case] has been the subject of intense media coverage is not [] sufficient to justify closure."  Id. at 102.

As for the release of transcripts of the *voir dire* proceedings, the Second Circuit held that transcripts are not inherently an adequate substitute for contemporaneous access, since "one cannot transcribe an anguished look or a nervous tic."  Stewart, 36 F.3d at 99.  The Court went on to conclude that "the ability to see and to hear a proceeding as it unfolds is a vital component of the First Amendment right of access . . . '[w]here a right of access exists, a court may not deny access to a live proceeding solely on the grounds that a transcript may later be made available.'"  Id. (citation omitted).

Here, as in Stewart, there is no "overriding interest" in closure sufficient to overcome the right of access.  While the *voir dire* proceedings here are taking place in the courtroom, not in chambers as in Stewart, the right of access to *voir dire* proceedings is meaningless if significant portions of those proceedings are conducted at closed sidebar such that the press and public cannot not hear the proceedings or observe the reaction of prospective jurors to specific questions.

Recognizing this fact, numerous judges in this court and in the Eastern District of New York have permitted the press to designate a pool reporter to be present at sidebar *voir dire* proceedings in high-profile criminal cases.  This procedure was followed, for example, in the trial of former New York State Senator Dean Skelos before Judge Kimba Wood in 2015, as well as the earlier criminal trials of Imelda Marcos, Sheik Omar Abdel Rahman, John Gotti, and Vincent Giganti, among others.[1]  More recently, in 2017, Judge Kiyo Matsumoto in the Eastern District permitted a pool reporter to attend individual *voir dire* of potential jurors at sidebar in the criminal trial of Martin Shkreli, with the caveat that the jurors would not be referred to by name until the end of the trial and that the court would retain the discretion to excuse the pool reporter from limited portions of the *voir dire* if a juror so requested or if the court determined that the presence of the reporter would inhibit the potential juror's candor.  United States v. Shkreli, 260 F.Supp.3d 257 (E.D.N.Y. 2017).  Judge Matsumoto further permitted the press to obtain a transcript of all juror sidebars, including any portion from which the pool reporter was excused.  Id. at 264.

---

[1] Defense counsel's letter states that there is no order on the docket in Mr. Avenatti's prior case, United States v. Avenatti, 19 Cr. 373 (PGG) ("the Nike case"), permitting a pool reporter to attend *voir dire* at sidebar in that proceeding.  But regardless of whether an order was issued on this topic in the Nike case, it appears to be undisputed that a New York Post reporter was, in fact, present at *voir dire* sidebars.  See letter from Mr. Avenatti's counsel (Docket No. 107) at Fn. 5, confirming the presence of a New York Post reporter at *voir dire* sidebar discussions.

Defense counsel relies heavily on United States v. King, 140 F.3d 76 (2d Cir. 1998). But King involved a very different set of concerns than those at issue here. As the Second Circuit later noted in Stewart, the *voir dire* examinations in *King*

> explored the racial views of potential jurors; given the prevailing national consensus concerning the evils of racism, the district judge recognized that potential jurors were unlikely to admit openly to harboring racist views. No similarly sensitive or contentious lines of questioning were here identified by the district court.

Stewart, 360 F.3d at 101. Here, as in Stewart, there does not appear to be any unusually sensitive or contentious lines of questioning that will pervade the *voir dire* process akin to the fraught topic of racism. And the King court itself noted that "we do not mean to suggest that public access to jury *voir dire* questioning may be routinely or even occasionally limited by the mere possibility that public questioning might inhibit the candor of the *voir dire* responses." King, 140 F.3d at 82-83.

Contrary to defense counsel's suggestion, allowing the press to cover *voir dire* sidebar discussions is not "rare and discouraged." Docket 107 at p. 4. Counsel relies on King for this proposition, but in fact the King court simply noted that while it is rare for the press to actually report on *voir dire* proceedings, because such proceedings often are not terribly interesting, "the opportunity of the public and the press to attend criminal proceedings normally makes some contribution to the fairness of trials and the perception that justice is done." Id. Indeed, as noted above, courts in this Circuit frequently allow a pool reporter to attend *voir dire* sidebars.

Accordingly, the *Daily News* respectfully requests that a pool reporter be permitted to attend *voir dire* proceedings at sidebar in this case.[2]

Respectfully submitted,

/s/ Matthew A. Leish

cc: Robert M. Baum, Esq.
Tamara L. Giwa, Esq.
Andrew J. Dalack, Esq.
Robert Sobelman, Esq
Matthew Podolsky, Esq.

The Clerk of Court is directed to docket this letter. Further, Defendant is granted leave to file a reply - responding to the Government's forthcoming letter and to the two letters filed on behalf of members of the press - no later than April 26, 2021. SO ORDERED.

April 21, 2021

---

[2] Defense counsel also note in their letter that they "anticipate opposing the release of completed juror questionnaires until the trial is complete." Docket 107 at Fn. 1. The presumption of access applies to juror questionnaires, and the Daily News therefore requests an opportunity to address this topic and to seek contemporaneous access to the completed questionnaires if and when defense counsel actually raise the issue.