

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 22, 2021

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Michael Avenatti*, 19 Cr. 374 (JMF)

Dear Judge Furman:

    The Government respectfully submits this letter pursuant to the Court's Order dated April 16, 2021 (Dkt. No. 109), directing the Government to respond to the defendant's letter, filed April 14, 2021, regarding the presence of a reporter at sidebar during *voir dire* of prospective jurors (Dkt. No. 107), and the letter of Matthew Russell Lee of Inner City Press, filed on the docket on April 16, 2021, requesting to be present at sidebar during *voir dire* of prospective jurors (Dkt. No. 108).[1] For the reasons set forth below, the Government would not object to the exclusion of the press from sidebar conferences during *voir dire* of prospective jurors should the Court find a sufficient basis to conclude that a substantial probability exists that prospective jurors would not be candid regarding unfair or improper biases were a member of the press to be present.

## Background

    On February 26, 2020, this Court ordered the parties each to submit letter briefs addressing procedures for jury selection, "including but not limited to Defendant's presence at, and press access to, any inquiry of jurors outside the presence of the jury pool generally." (Dkt. No. 41 at 2.) On March 13, 2020, the Government filed, on behalf of the parties, a joint letter regarding procedures for jury selection (the "Joint Letter" (Dkt. No. 46)).[2] In that letter, "the parties propose[d] that the Court adopt procedures substantially similar to those adopted in *Shkreli* and that impose modest and reasonable restrictions on the press and public's access to certain information and proceedings in order to adequately protect the rights of the defendant and potential jurors, while making the proceedings as accessible as possible in light of the circumstances." (Joint Letter 4.) In particular, and as relevant here, "[t]he parties propose[d] that the defendant and,

---

[1] By letter dated April 20, 2021, the Daily News, L.P., filed an opposition to the defendant's request to exclude the press from sidebar conferences during *voir dire* of prospective jurors. (Dkt. No. 110.)

[2] The Joint Letter contains a more extensive recitation of the factual background relevant to jury selection procedures in this case. (Joint Letter 1-2.)

assuming more than one member of the press requests to be present at sidebar discussions, a single pool reporter be permitted to be present at sidebar discussions with potential jurors." (*Id.* at 5.) "In addition, the parties ask[ed] that the Court ensure that jurors are aware that they can request that the reporter be excused from sidebar and that the Court excuse the reporter on its own initiative if it determines that a juror does not appear fully comfortable answering questions fully and honestly in the presence of the reporter." (*Id.*)

On August 7, 2020, new counsel was appointed to represent the defendant. (Dkt. No. 73.) On April 14, 2021, the defendant's new counsel filed a letter objecting to the proposal set forth in the Joint Letter to permit a single pool reporter be present at sidebar discussions with prospective jurors (the "Defendant's Motion" (Dkt. No. 109)). In that letter, counsel for the defendant conveyed the Government's position that "[i]n light of the revised position by the defendant, the Government defers to the Court's discretion as to whether to allow a pool reporter at sidebar pursuant to the principles set forth in *Press Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986), and its progeny, as described on pages 2-4 of the parties' prior letter." (Def.'s Mot. 1.)

## Applicable Law

As set forth in greater detail in the Joint Letter, the Second Circuit has held that there is a qualified "'right to attend criminal trials . . . implicit in the guarantees of the First Amendment.'" *ABC, Inc. v. Stewart*, 360 F.3d 90, 98 (2d Cir. 2004) (quoting *Richmond Newspapers, Inc. v. Virginia*, 488 U.S. 555, 580 (1980)). That right of access extends to the examination of prospective jurors as part of the *voir dire* process. *Id.* (citing *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 504-10 (1984) ("*Press-Enter. I*")).

In evaluating motions to exclude the press from *voir dire* of prospective jurors, courts employ a two-part balancing test: "[T]he [proceeding] shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent, and second, alternatives to closure cannot adequately protect the defendant's fair trial rights." *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 14 (1986) ("*Press-Enter. II*").

The Second Circuit has cautioned that, although in some circumstances availability of a transcript of *voir dire* proceedings may be sufficient, "[t]he provision of a transcript . . . does not somehow allow for a more lenient balancing test." *Stewart*, 360 F.3d at 100. In reversing a district court order precluding the press from all *voir dire*, the Second Circuit in *Stewart* concluded that the district court there had made insufficient factual findings to justify the order because (1) the district court did not find that members of the media violated any order of the court or conducted themselves improperly; (2) the district court's finding that many members of the venire may have prejudged one of the defendants was simply insufficient; and (3) the Court of Appeals could "discern no basis for the district court's conclusion that prospective jurors would have been unwilling to express for publication any preconceptions that they might have had about the defendants." *Id.* at 101. The Second Circuit also observed that the district court in *Stewart* should have considered more narrowly tailored procedures, including excluding the press only from

portions of *voir dire* implicating subject matter for which the district court expressed concern regarding candor on the part of prospective jurors. *Id.* at 104-05.

## Discussion

The Government would not object to the exclusion of the press from sidebar conferences during *voir dire* of prospective jurors should the Court find sufficient basis to conclude that a substantial probability exists that prospective jurors would not be candid regarding unfair or improper biases were a member of the press to be present. *See Stewart*, 360 F.3d at 105 (raising possibility that limited closure as to *voir dire* addressing "certain *voir dire* lines of question" implicating candor concerns would be permissible).

The defendant argues principally that "[a]llowing a reporter access to sidebar *voir dire* runs the unnecessary risk of undermining the purpose of the sidebar, creating an incentive for prospective jurors to self-censor their answers to really important questions" and that "[p]rospective jurors may feel discouraged from offering pertinent information about any prejudices they have against Mr. Avenatti or for the Government, or any preconceived notions about his guilt or innocence based on previous media coverage, out of a justifiable fear that their sensitive answers to certain questions may be publicized."[3] (Def.'s Mot. 4.) As the Second Circuit has explained, however, "prospective jurors are likely to have preconceptions about the defendants in almost every criminal case that attracts media attention," and "[i]f this fact alone were sufficient to warrant closure, then courts could routinely deny the media access to those cases of most interest to the public, and the exception to openness would swallow the rule." *Stewart*, 360 F.3d at 101. Accordingly, the defendant must be able to provide specific, rather than merely hypothetical, facts to establish a basis to exclude the press from *voir dire*. *Id.*

If the defendant can point to such facts, however, and the Court finds that this case implicates particularly sensitive or controversial issues such that there is a substantial probability that prospective jurors would be less candid in order to avoid disclosure to the press of personal biases, then the Government agrees that the Court would have a sufficient basis to preclude the presence of the press at individual *voir dire* addressing these issues. *Press-Enter. II*, 478 U.S. at

---

[3] The defendant also devotes much of his letter to "reject[ing] the contention that Judge Gardephe 'permitted' a reporter's presence at sidebar during *voir dire*" in trial on the Extortion Case. (Def.'s Mot. 2-3.) As the Government has explained to defense counsel, neither party moved to preclude press from sidebar during *voir dire* or to seal the transcript or otherwise close the courtroom, and the Government observed a member of the press move from the press pool to sidebar in open court with apparent acknowledgment and permission by Judge Gardephe's chambers.

The defendant also asserts that "allowing a reporter to cover sidebar *voir dire* of a prospective juror is rare and discouraged." (Def.'s Mot. 3.) The Government is not aware of the basis for this claim and the defendant offers none.

Honorable Jesse M. Furman
United States District Judge
April 22, 2021
Page 4

14; *see also Stewart*, 360 F.3d at 101-02 (distinguishing *United States v. King*, 140 F.3d 76 (2d Cir. 1998), on the basis that *voir dire* in *King* concerned racial bias).

## Conclusion

For the foregoing reasons, the Government submits the following:

(1) The press has a qualified right of access, and therefore a presumptive right to attend, criminal trials, including individual *voir dire* of prospective jurors.

(2) The press's right of access to criminal trials is not absolute, and the press may be excluded from particular proceedings where there is a substantial probability that the defendant's right to a fair trial will be prejudiced, including where the district court finds, on the basis of specific facts, a substantial probability that jurors are unlikely to be candid about their biases in the presence of the press, and that less restrictive alternatives are not available.

(3) The Government would not object to the exclusion of the press from sidebar conferences during *voir dire* of prospective jurors should the Court find sufficient basis to conclude that a substantial probability exists that prospective jurors would not be candid regarding unfair or improper biases were a member of the press to be present.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:  s/ Matthew D. Podolsky
Matthew D. Podolsky
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-1947/2616

cc: Counsel of record (by ECF)