# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

April 26, 2021

**BY ECF AND EMAIL**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re:** United States v. Michael Avenatti,
19 Cr. 374 (JMF)

Dear Judge Furman,

We write in further support of our letter motion dated
April 14, 2021 (Dkt. No. 107), to preclude the media's presence
at sidebar conferences during oral voir dire. In its April 22,
2021 response, the Government stated that it "would not object
to the exclusion of the press from sidebar conferences during
voir dire" provided "a substantial probability exists that
prospective jurors would not be candid regarding unfair or
improper biases were a member of the press to be present." Gov't
Resp. (Dkt. No. 111) at 1.[1] Because there is a sufficient basis
to conclude that a reporter's presence at sidebar conferences
during oral voir dire would likely stifle jurors' candor and
violate Michael Avenatti's Sixth Amendment right to trial before
an impartial jury, the Court should grant the defense's motion.[2]

---

[1] Notwithstanding footnote three to the Government's response
(Dkt. No. 111 at 3 n.3), the defense is still unclear as to the
basis for the Government's assertion to Mr. Warren and in its
March 13, 2020 letter to the Court that Judge Gardephe
"permitted" a reporter to be present at sidebar voir dire in the
Nike case.

[2] The defense also offers this letter in reply to the letters
submitted by Inner City Press and Daily News, L.P., opposing our
motion to preclude the press from sidebar voir dire. Dkt. Nos.
109, 110.

**Michael Avenatti's Sixth Amendment right to a fair trial before an impartial jury and prospective jurors' privacy rights outweigh the public's interest in having media contemporaneously report on sidebar conferences during oral <u>voir dire</u>.**

**A. Legal Framework**

Several competing interests are at stake here: Mr. Avenatti's Sixth Amendment rights to a public and fair trial; the public's First Amendment right to access court proceedings; and prospective jurors' legitimate privacy concerns.[3] Of these, Mr. Avenatti's rights are the most critical. See <u>Presley v. Georgia</u>, 558 U.S. 209, 214 (2010). Indeed, "[n]o right ranks higher than the right of the accused to a fair trial." <u>Press-Enter. Co. v. Super. Ct. of Cal.</u>, 464 U.S. 501, 508 (1984) ("<u>Press-Enter. I</u>"). Accordingly, a defendant's right to a public <u>voir dire</u> process is subject to his "right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." <u>Presley</u>, 558 U.S. at 213 (quoting <u>Waller v. Georgia</u>, 467 U.S. 39, 45 (1984)).

Under the public's First Amendment right of access, the presumption of an open <u>voir dire</u> proceeding is overcome by an "overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." <u>Press-Enter. I</u>, 464 U.S. at 510 (1984); <u>see also</u> <u>Press-Enter. Co. v. Super. Ct. of Cal.</u>, 478 U.S. 1, 13-14 (1986) ("<u>Press-Enter. II</u>"). Where a defendant's constitutional right to a fair trial before an impartial jury is at stake, <u>voir dire</u> "shall be closed only if ... first, there is a substantial probability that a defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." <u>Press-Enter. II</u>, 478 U.S. at 14 (citations omitted).

---

[3] With respect to jurors' privacy concerns, closure of sidebar <u>voir dire</u> is clearly the preference. For example, in <u>Press-Enter. I</u>, the Supreme Court encouraged trial judges to inform jurors of the opportunity to present concerns of a highly personal or embarrassing nature <u>in camera</u>, without reporters present. 464 U.S. at 512. The Court explained that it is the juror's request for a sidebar that ensures a valid basis for a belief that public disclosure infringes on a significant privacy interest. <u>Id.</u>

When it comes to ensuring prospective jurors' candor during oral voir dire, there is no reasonable alternative to excluding the press from sidebar conferences. For example, in United States v. King, 140 F.3d 76, 81 (2d Cir. 1998), the articulated basis for excluding the press from sidebar voir dire was to promote jurors' candor. In affirming the trial court's decision to close sidebar voir dire off from the public, the court rejected the premise that trial courts must first ascertain from each prospective juror, in open court, whether being questioned in public would affect his or her candor: "It is one thing to oblige jurors to state in public that they prefer a closed door session to identify sensitive matters elicited by a questionnaire. It is quite a different matter to expect them to acknowledge in public that their own candor will be inhibited by questioning in public." King, 140 F.3d at 82 (citations omitted).

Here, the overriding interest prejudiced by public sidebar conferences during oral voir dire is Mr. Avenatti's Sixth Amendment right to a fair trial before an impartial jury. Secondary to that overriding interest is prospective jurors' legitimate privacy concerns, which would also be prejudiced by public voir dire sidebar conferences. Based on the facts of this case—one that concerns people at the center of a high-profile, polarizing, and salacious scandal involving former President Donald J. Trump—a reporter's coverage of sidebar voir dire presents a grave risk that jurors will censor themselves out of fear of being judged, harassed, or simply quoted in the press. Because there are no reasonable alternatives to sealing sidebar voir dire off from the media to ensure the empanelment of an impartial jury in this case, the Court should grant the defense's motion.

**B. There is a substantial probability that the presence of a reporter at sidebar voir dire conferences will cause prospective jurors to censor themselves to the detriment of Mr. Avenatti's Sixth Amendment rights.**

It bears reiterating that the defense does not seek to close all of voir dire off from the public or from the press. To the contrary, the defense requests a limited restriction on the press's contemporaneous access to sidebar questioning of prospective jurors. Bench conferences traditionally are not open to the public (see Globe Newspaper Co. v. Superior Ct. for Norfolk Cty., 457 U.S. 596, 609 n.25 (1982)) and any constitutional or common law interest in the eventual release of transcripts of bench conferences "is amply satisfied by prompt

post-trial release of transcripts." <u>In re Associated Press</u>, 172
F. App'x 1, 6 (4th Cir. 2006). Because the privacy of sidebar
<u>voir</u> <u>dire</u> bench conferences (which are otherwise held beyond the
earshot of the public physically present in the courtroom) is
necessary to ensure that prospective jurors in this particular
case candidly raise any prejudices affecting Mr. Avenatti's
Sixth Amendment right to empanel a fair and impartial jury, the
Court should grant the defense's motion.

This case has already attracted significant media attention
that triggers a justifiable concern about jurors' candor during
<u>voir</u> <u>dire</u>. The defense's raising of this issue alone has
compelled at least two media outlets to file formal responses
with the Court, and even mundane scheduling orders generate
substantial media coverage. <u>See, e.g.</u>, Larry Neumeister,
<u>Avenatti's trial over Stormy Daniels book funds sent for 2022</u>,
Associated Press (Jan. 8, 2021, 4:49 PM ET), available at:
https://abcn.ws/3aGfeW7. Thus, while the Second Circuit has held
that intense media attention alone (and the risk that
prospective jurors will self-censor because of it) is not an
adequate basis to <u>completely</u> close <u>voir</u> <u>dire</u> proceedings (<u>see</u>
<u>ABC, Inc. v. Stewart</u>, 360 F.3d 90, 101, 106 (2d Cir. 2004)), the
significant press attention to this case weighs strongly in
favor of a <u>partial</u> closure that keeps oral <u>voir</u> <u>dire</u> sidebar
conferences sealed, at least until after the jury's verdict.

It is also indisputable that this case implicates
controversial issues that might impair the candor of prospective
jurors during <u>voir</u> <u>dire</u> sidebar conferences, particularly if the
press is present. The complainant in this case, Stephanie
Clifford, was at the center of a hush-money political scandal
that culminated in the criminal prosecution of President Trump's
former personal attorney, Michael Cohen, for various campaign-
finance violations. It is widely believed that Mr. Cohen's
primary and unnamed co-conspirator in that case was President
Trump himself. Mr. Avenatti represented Ms. Clifford during this
time and was, for a significant period, one of President Trump's
most outspoken and visible critics. <u>See, e.g.</u>, Emma Brown and
Beth Reinhard, <u>Michael Avenatti is using Trump tactics to battle</u>
<u>Trump, a strategy that comes with risks</u>, The Washington Post
(May 14, 2018, 8:58 PM ET), available at:
https://wapo.st/3gGvzOc.

Against this backdrop, Mr. Avenatti's right to an impartial
jury would be hollow if he were unable to elicit candid answers
from prospective jurors about their Trump-related biases,
particularly in the context of a salacious sex scandal involving

a prominent adult film actress like Ms. Clifford. Simply put, prospective jurors are far less likely to candidly discuss their thoughts on controversial issues regarding President Trump, his extramarital affairs, and Mr. Avenatti's attempted takedown of the 45th President if they know their answers to sensitive questions will be immediately published and subject to public scrutiny. Indeed, according to a September 2020 study conducted by Morning Consult, anonymity appears to play a significant role in whether higher-income voters and college graduates will even express their support for President Trump in the first instance. See Peter Coy, Higher Earners Are More Likely to Be 'Shy' Trump Voters, Bloomberg Businessweek (Sept. 21, 2020, 5:00 AM ET), available at: https://bloom.bg/3t2oJFD.

In addition, previous incidents of questionable conduct by the media in its coverage of Mr. Avenatti's Nike trial further counsel against allowing reporters to be privy to sidebar voir dire. On January 27, 2020, and before oral voir dire commenced the next day, a New York Post reporter published at least one article quoting from prospective jurors' questionnaire responses about Mr. Avenatti. These publicized responses were highly inflammatory and prejudicial, and included calling Mr. Avenatti a "notorious scumbag" and insisting that "he should already be in prison." See Emily Saul, 'Notorious scumbag': Potential jurors tossed for bashing Michael Avenatti, New York Post (Jan. 27, 2020, 7:57 PM ET), available at: https://bit.ly/2QxMQyB. The New York Post later published at least one additional story on the afternoon of January 28, 2020 in the midst of oral voir dire, which included verbatim quotes of private juror comments made at sidebar that she evidently witnessed firsthand (and unbeknownst to the defense). See Emily Saul, Lawyer linked to Jared Kushner cut from jury pool in Michael Avenatti case, New York Post (Jan. 28, 2020, 2:37 PM ET), available at: https://bit.ly/3gHpPnm. Given this experience, the defense is especially wary of the potential for similar tabloid-like coverage of sidebar voir dire in this case that threatens to taint prospective jurors' views of Mr. Avenatti and to make the selection of a truly impartial jury that much more difficult.

**Conclusion**

For the reasons set forth above and for any that become apparent at a subsequent hearing or oral argument, the Court should grant the defense's motion and preclude a member of the press from reporting on the contents of sidebar conferences during oral voir dire.

Respectfully Submitted,

*Robert M. Baum*

Robert M. Baum
Tamara L. Giwa
Andrew J. Dalack

Counsel for Mr. Avenatti

cc:  Robert Sobelman
     Matthew Podolsky

     Assistant United States Attorneys