UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                              :

UNITED STATES OF AMERICA,          :

                              :

         -v-                   :         19-CR-374 (JMF)

                              :

MICHAEL AVENATTI,              :        <u>MEMORANDUM OPINION</u>

                              :           <u>AND ORDER</u>

                Defendant.      :

                              :

---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      On March 13, 2020, the parties submitted a joint letter addressing, among other things, the issue of press access to *voir dire* at trial in this case.  *See* ECF No. 46.  The letter proposed

> that the defendant and, assuming more than one member of the press requests to be present at sidebar discussions, a single pool reporter be permitted to be present at sidebar discussions with potential jurors.  In addition, the parties ask that the Court ensure that jurors are aware that they can request that the reporter be excused from sidebar and that the Court excuse the reporter on its own initiative if it determines that a juror does not appear fully comfortable answering questions fully and honestly in the presence of the reporter. . . .  Finally, transcripts of oral *voir dire* should only be made available following the impanelment of a jury, and should jury selection take more than a day, the members of the venire should be instructed not to review any press reporting about the case, including the previous days' jury selection.

*Id.* at 5 (citation omitted).  Over one year later, on April 14, 2021, the Defendant, represented by new counsel, filed a letter-motion revising his position and objecting to the presence of a reporter at sidebar during *voir dire*.  *See* ECF No. 107 ("Def.'s Ltr.").  Thereafter, two media outlets — the Daily News and Inner City Press — filed letters opposing the Defendant's request to revisit the issue, *see* ECF Nos. 108 and 110; the Government filed a letter expressing its views, *see* ECF No. 111; and the Defendant filed a reply, *see* ECF No. 114 ("Reply").

      Upon review of all these submissions, the Court overrules the Defendant's objection and adopts the proposal set forth in the parties' letter of March 13, 2020, which is consistent with the

procedures followed by Judge Matsumoto in *United States v. Shkreli*, 260 F. Supp. 3d 257 (E.D.N.Y. 2017).  In the Court's view, these procedures strike the right balance between the Defendant's right to a fair trial and the First Amendment right of public access to judicial proceedings, substantially for the reasons explained by Judge Matsumoto.  *See id.* at 260-64; *see also ABC, Inc. v. Stewart*, 360 F.3d 90, 99-106 & n.5 (2d Cir. 2004).  *United States v. King*, 140 F.3d 76 (2d Cir. 1998), and *United States v. Loera*, No. 09-CR-466 (BMC), 2018 WL 5624143 (E.D.N.Y. Oct. 30, 2018) — upon which the Defendants relies — do not call for greater restrictions on public access as the questioning of prospective jurors in this case is not likely to involve the same number or kind of "sensitive and controversial issues" and "politically charged topics" that the questioning of prospective jurors in those cases involved.  *Loera*, 2018 WL 5624143, at *2; *see id.* at *3 (emphasizing the "unique facts" of the case); *King*, 140 F.3d at 83 (emphasizing the "unusual" nature of the case).  Accordingly, in the Court's view, it will suffice for the Court to "ensure that prospective jurors are comfortable requesting that the reporter be excused from sidebar"; to "excuse the reporter if the [C]ourt determines that a juror does not appear comfortable answering questions fully and honestly in the presence of the reporter"; and to "excuse the pool reporter[] if a prospective juror so requests in order to provide a more fulsome, candid answer, when questioning may elicit issues of a personal or private nature." *Shkreli*, 260 F. Supp. 3d at 263 & n.3.

Contrary to the Defendant's suggestion, his trial before Judge Gardephe in early 2020 supports, rather than undermines, the case for press access to sidebars during *voir dire*.  First, it is plain that Judge Gardephe did, in fact, "'permit[]' a reporter's presence at sidebar during *voir dire*" in that trial.  Def.'s Ltr. 3.  Indeed, the Defendant's own letters later reference a reporter's attendance at sidebar.  *See id.* at 4 n.5; *see* Reply 5.  Second, there is no evidence for the

Defendant's assertion that the media engaged in "questionable conduct" during the trial before

Judge Gardephe.  Reply 5.  The Defendant's sole support for that assertion is two articles written

by a reporter regarding jury selection.  *See id.*  But that conduct is not "questionable"; it is core

First Amendment activity and precisely what the right of press and public access to jury selection

is designed to protect.  Finally, and in any event, the Defendant provides zero evidence that the

press coverage of jury selection in his trial before Judge Gardephe affected the fairness of that

trial (or that any concerns could not be addressed through less restrictive measures, such as

admonishing prospective jurors not to read any press about the case).  If anything, the case for

allowing press access at a trial in this case in January 2022 will be much stronger than it was in

the trial before Judge Gardephe in early 2020.  Put simply, given the passage of time; the fact

that Donald J. Trump, the Defendant's erstwhile nemesis, is no longer President of the United

States; and the Defendant's other legal troubles (including but not limited to his conviction

before Judge Gardephe), the Defendant is not quite as high profile as he once was.[1]

> In short, the Court adopts the proposed procedures for press attendance at sidebars during *voir dire* set forth in the parties' letter of March 13, 2020, and overrules the Defendant's more recent objections.  The Clerk of Court is directed to terminate ECF No. 107.

> SO ORDERED.

Dated: May 6, 2021
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[1]     Indeed, for these reasons, a jury questionnaire may not actually be necessary or appropriate in this case.  The Court need not decide that — let alone whether or when the press would be given access to completed jury questionnaires — at this time.