UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                          :

UNITED STATES OF AMERICA,      :     19 Cr. 374 (JMF)

                                            :

             -v-            :

MICHAEL AVENATTI,         :

                                            :

                      Defendant.    :

                                            :
--------------------------------------------------------X

# MICHAEL AVENATTI'S REPLY IN SUPPORT OF HIS PRE-TRIAL MOTIONS

**DAVID E. PATTON, ESQ.**
Federal Defenders of New York, Inc.
Attorney for Defendant
      **MICHAEL AVENATTI**
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8700

Of Counsel:  **Robert M. Baum, Esq.**
                 **Andrew J. Dalack, Esq.**
                 **Tamara L. Giwa, Esq.**
                 Assistant Federal Defenders
                 (212) 417-8760

TO:  **AUDREY STRAUSS, ESQ.**
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, NY 10007

      Attn:  **Matthew Podolsky, Esq.**
               **Robert Sobelman, Esq.**
               Assistant United States Attorneys
               Southern District of New York

TABLE OF CONTENTS

I.      The Court should preclude the government from introducing photographs of Ms. Clifford's purported WhatsApp chats with Mr. Avenatti and otherwise scrutinize the government's handling of Ms. Clifford's cell phone. ................................................................................................................2

II.     The defense never waived a challenge to the government's use of a DOJ filter team to perform a privilege review of Mr. Avenatti's iCloud account. ...................................................4

III.    The government's position that all of the statements in its possession, custody, or control attributable to Ms. Clifford, Mr. Janklow, and Ms. Regnier are discoverable only under Giglio and the Jencks Act suggests it is too narrowly construing its Brady obligations....................................................5

IV.     Conclusion..........................................................................................................................8

The government's opposition to Michael Avenatti's pre-trial motions fundamentally misapprehends the core issues at play and urges the Court to deny Mr. Avenatti relief without even an evidentiary hearing.  But notwithstanding the government's protestations, there remain legitimate concerns about how and why the government obtained incomplete and inauthentic versions of Stephanie Clifford's WhatsApp communications with Mr. Avenatti, and why it also failed to acquire other equally material communications and relevant electronically-stored information from Ms. Clifford's cell phone.  The defense has also never waived an objection to the government's use of a "filter team" to search of Mr. Avenatti's iCloud account—which contained attorney-client communications and attorney work-product relevant to Mr. Avenatti's defense preparation across his three criminal cases—and respectfully submits that the issue demands further scrutiny, particularly since a court-appointed "special master" conducted the privilege reviews of seized devices and files belonging to two other high-profile attorneys investigated in this district.  See generally Alan Feuer, "Special Master Finishes Review of Files in Cohen Case," N.Y. Times (Aug. 9, 2018), available at: https://nyti.ms/3zELkwo; Shayna Jacobs, "Judge orders 'special master' to review Giuliani's phone, computer records," Wash. Post (May 28, 2021 at 5:35 p.m. EDT), available at: https://wapo.st/35yk18X.

Separately, the government's opposition to its prompt disclosure of statements made by three key witnesses (Ms. Clifford, Luke Janklow, and Judy Regnier) misses the crux of Mr. Avenatti's concern: that the government's perspective on what constitutes Brady material is far too conservative, and that delaying the disclosure of materials bearing on Ms. Clifford's veracity prejudices Mr. Avenatti's defense preparation.  In particular, and because her testimony and competence as a witness is central to the government's entire case, Ms. Clifford's statements in the government's possession, custody or control about her book deal and relationship with Michael Avenatti are plainly material to the issue of guilt and should be disclosed without further delay.  And

given Mr. Janklow's and Ms. Regnier's intimate involvement with Ms. Clifford over the time period at issue in the indictment, the Court should at least review <u>in camera</u> these witnesses' statements in the government's possession, custody, or control to determine whether they are helpful to the defense.

I.    **The Court should preclude the government from introducing photographs of Ms. Clifford's purported WhatsApp chats with Mr. Avenatti and otherwise scrutinize the government's handling of Ms. Clifford's cell phone.**

The government does not challenge any portion of Donald Vilfer's declaration, including his statement that the PDFs of Mr. Avenatti's purported WhatsApp chats with Ms. Clifford, which it seeks to introduce at trial, "fall far short of being acceptable as evidence of digital data" and "offer none of the authenticating information found through the use of forensic tools." Ex. D to Motion at ¶4. Instead the government tries to obfuscate the issue by pointing to cases in which screenshots of text communications were admitted, while at the same time blaming the defense for not facilitating its search of Mr. Avenatti's cell phone. These arguments fall short.

As an initial matter, the government's failure to gain access to Mr. Avenatti's cell phone despite having obtained a search warrant is not Mr. Avenatti's problem to solve. Response at 12. Indeed, Mr. Avenatti is under no obligation to help the government unlock his phone because the privilege against self-incrimination does not distinguish between compelling someone to provide his birthdate, <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 598-99 (1990), "the combination to a wall safe," <u>United States v. Hubbell</u>, 530 U.S. 27, 43 (2000), or the password to his electronic device. As long as Mr. Avenatti's passcode might lead to incriminating evidence, the Fifth Amendment protects him from being compelled to provide it.

Separately, the defense acknowledges that it might be acceptable to offer as evidence paper files of electronic text communication between two parties if it is undisputed that the paper files reflect the full text change without any edits, omissions, or alterations. But that is not the case here. Comparing side by side the photographs of Ms. Clifford's cell phone screen (Ex. B to Motion) with

the text file Ms. Clifford provided to the government (Ex. C to Motion), it is clear that there are glaring omissions.  Not only are specific messages from the text file missing from the photographs produced by the government, but the text file also omits, in numerous places, certain communications purportedly exchanged between Mr. Avenatti and Ms. Clifford.  Put differently, neither the photographs of Ms. Clifford's cell phone screen nor the text file she transmitted to the government reflect her entire WhatsApp exchange with Mr. Avenatti.  Accordingly, the representations made by the government and Clark Brewster, Ms. Clifford's counsel, that Ms. Clifford has produced "all of [her] WhatsApp communications" with Mr. Avenatti are demonstrably false.  Response at 4-5; see also Dkt. No. 123-1 (letter from Mr. Brewster claiming "all" WhatsApp communications were provided to the government).  Because the PDF paper files are incomplete and not authenticable, they are inadmissible, and the Court should not allow the government to introduce any WhatsApp communications at trial unless it is offering a forensic copy obtained through an industry-accepted digital forensic tool, like Cellebrite.  Ex. D to Motion at ¶8.

Relatedly, the government's insistence that "[a]t no time" did it have "possession of any other contents of [Ms. Clifford's] cellphone or [] the legal authority to forensically extract or copy any other data from [Ms. Clifford's] cellphone" misses the mark.  Response at 11.

First, based on exchanges with the government related to its handling of Ms. Clifford's cell phone, the defense understands that the photographs attached as Exhibit B to its opening motion were taken by a special agent from the United States Attorney's Office, who literally held Ms. Clifford's cell phone and took photographs of its screen.  Thus, the agent certainly possessed Ms. Clifford's cell phone and simply failed to do anything with it except take pictures of the select text messages Ms. Clifford evidently chose to show the government.[1]

---

[1] Recent developments in U.S. v. Avenatti, 19 Cr. 373 (PGG) indicate that this same special agent failed to preserve one or more text messages she exchanged pre-trial with government witness Judy Regnier, which reinforces why this Court should be concerned about her handling of Ms. Clifford's cell phone.  Dkt. No. 323 at 5-6.

Second, and more to the point, the government undoubtedly had available to it a legal authority that would have facilitated a forensic extraction or copy of Ms. Clifford's cell phone: Ms. Clifford's consent.  The government could have also obtained a search warrant.  But the government has refused to say whether it sought Ms. Clifford's permission to forensically extract data from her phone, including her WhatsApp communications with Mr. Avenatti.  If the agent who possessed Ms. Clifford's phone did not seek her consent to forensically image or extract data from the device, then the government failed (deliberately or not) to preserve evidence.  This includes the best evidence of the WhatsApp communications and also Ms. Clifford's other "conversations with third parties" about Mr. Avenatti and/or the book deal.  Ex. D to Motion at ¶6.

Conversely, if the agent sought Ms. Clifford's consent to forensically copy her phone—or at the very least to digitally extract her WhatsApp chats with Mr. Avenatti—and Ms. Clifford refused, then the notes from that encounter and the basis for Ms. Clifford's refusal must be disclosed immediately under <u>Brady</u>.  Any explanation Ms. Clifford provided to preclude the government's forensic copying of her phone goes to her credibility, truthfulness, and competence as a witness.  Thus, the Court should compel the government to provide additional information about its handling of Ms. Clifford's cell phone and/or hold an evidentiary hearing.

II.  **The defense never waived a challenge to the government's use of a DOJ filter team to perform a privilege review of Mr. Avenatti's iCloud account.**

In opposing Mr. Avenatti's motion to suppress the items seized from his iCloud account because they were obtained through a warrant that improperly delegated the responsibility of a privilege review to a DOJ filter team, the government argues that Mr. Avenatti's prior counsel "waived any objection."  Response at 25-26.  This is inaccurate.

On September 25, 2019, the government apparently produced to Mr. Avenatti's prior counsel the raw, unfiltered data from Mr. Avenatti's iCloud account and noted that the materials had not been shared with the prosecution team.  Two months later, in early December 2019, Mr.

Avenatti's prior counsel were informed by the DOJ's filter team that it had conducted a review and was preparing to share materials it deemed "non-privileged" with the prosecution team. The DOJ's filter team offered to give Mr. Avenatti's prior counsel one or two weeks to review the filter team's designations, which Mr. Avenatti's prior counsel rejected.

Approximately one month later, on January 7, 2020, the DOJ's filter team contacted Mr. Avenatti's prior counsel and stated its intent to imminently disclose the materials it considered non-privileged to the prosecution team. Mr. Avenatti's prior counsel promptly objected to any release of the materials and announced its intent to "reserve all rights."

This exchange, memorialized over e-mail which the defense can provide to the Court upon request, does not indicate that Mr. Avenatti's prior counsel waived or forfeited any challenge to the propriety of the DOJ filter team's privilege review of Mr. Avenatti's iCloud account. To the contrary, the DOJ filter team shared Mr. Avenatti's iCloud search returns with the prosecution team over the defense's objection. The Court should therefore address the merits of Mr. Avenatti's challenge to the government's search warrant for his iCloud account and scrutinize why a "special master" was not appointed to perform the privilege review.

### III.  The government's position that all of the statements in its possession, custody, or control attributable to Ms. Clifford, Mr. Janklow, and Ms. Regnier are discoverable only under <u>Giglio</u> and the Jencks Act suggests it is too narrowly construing its <u>Brady</u> obligations.

The government insists that any witness statements in its possession, custody, or control made by Ms. Clifford, Mr. Janklow, and/or Ms. Regnier are only discoverable under <u>Giglio</u> and 18 U.S.C. § 3500. But this response misses the point of Mr. Avenatti's argument: that given the unquestionable importance of Ms. Clifford's truthfulness to the charges, her statements about a wide range of topics—from Mr. Avenatti to her mental health and condition—must be disclosed under <u>Brady</u> because they are either material to guilt or helpful to Mr. Avenatti's defense. The same

goes for Mr. Janklow and Ms. Regnier's statements about Ms. Clifford, the book deal, and her relationship with Mr. Avenatti.

As discussed in Mr. Avenatti's opening motion, his written contract with Ms. Clifford (Ex. A to Motion) provided for him to be compensated for negotiating a book deal on Ms. Clifford's behalf. And as outlined in the government's complaint, what essentially transforms this case from a contractual dispute into an alleged criminal matter is Ms. Clifford's uncorroborated claim that Mr. Avenatti verbally modified their contract after the fact to decline any remuneration for his work on her book deal. Dkt. No. 1 at ¶9 (alleging that Mr. Avenatti verbally modified his contract with Ms. Clifford and "told [Ms. Clifford], in substance and in part that he would not accept payment or remuneration from [her] for any work related to [her] book"). If Ms. Clifford is lying, and Mr. Avenatti never made any such modification to the express written terms of their original agreement, then the government's entire case falls apart. Accordingly, Ms. Clifford is the government's key witness—the case will rise and fall on her testimony.

Thus, anything in the government's possession, custody, or control that casts doubt on Ms. Clifford's truthfulness, credibility, and mental and emotional state is material to Mr. Avenatti's alleged guilt or helpful to his defense, and must therefore be immediately disclosed under Brady. See also Rule 5(f) Order, Dkt. No. 95. This includes Mr. Janklow and Ms. Regnier's statements about Ms. Clifford's performance (or lack thereof) relating to her obligations under the publishing agreement Mr. Avenatti negotiated and her other dealings with Mr. Avenatti as his client.

It simply strains all credulity for the government to claim that it does not possess any information or witness statements made by or about Ms. Clifford that would qualify as Brady. Since at least early 2019, when Mr. Avenatti terminated his representation of Ms. Clifford by letter (see Ex. G to Motion), and continuing to the present, Ms. Clifford has made any number of bizarre, fantastical claims that call into serious question her truthfulness, mental state, and ability to

6

competently testify. Among many other things, Ms. Clifford has claimed: (1) she "sees dead people" and can communicate with them; (2) she recently helped someone locate a body through her physic powers; (3) in early 2019, she became obsessed by spirits after moving into a "haunted house" in New Orleans; (4) the spirit that came to live inside of her caused her to physically cut on her own body in an apparent effort to harm herself; (5) the same spirit caused her to bleed profusely from the mouth, eyes and ears, but she did not seek any medical attention; (6) the house caused her then manager and live-in boyfriend, also an important witness in this case because he was privy to communications concerning the book deal, to become obsessed and physically attack Ms. Clifford and attempt to strangle her to death after his eyes turned entirely black; (7) she can turn lights on and off through her thoughts alone; (8) she can see inside structures like homes and apartments without ever setting foot inside; (9) her "energy" causes electronic devices to no longer work and the information on those devices to be deleted; (10) she is a "witch" who practices witchcraft and can rid people of spirits (a "service" for which she charges); and (11) she possesses supernatural powers that allow her to serve as a "medium" to the dead and conduct "paranormal investigations." Ms. Clifford has consistently made these various claims during numerous audio and video interviews and on social media.[2]

In addition, since the filing of defendant's pre-trial motions, Ms. Clifford has accused the FBI of manipulating her criminal records in order to make her unemployable and to retaliate against her for going public about former President Trump's hush money payment. In particular, on CNN's program "New Day" on June 7, 2021, Ms. Clifford accused the FBI of falsifying and planting 17 criminal charges on her criminal history.[3] The defense has asked the government to provide

---

[2] See, e.g., G Crew Episode 33, available at: https://m.youtube.com/watch?v=gesklupndgU; BREWtally Speaking, available at: https://m.youtube.com/watch?v=VlR_19C63OM; That Witch Life (recording and transcript), available at: https://thatwitchlife.com/2021/03/08/episode-75-investigating-the-paranormal-with-stormy-daniels/.
[3] See Transcript, available at: http://www.cnn.com/TRANSCRIPTS/2106/07/nday.06.html.

information concerning this accusation, including all information demonstrating its falsity, but the government has not offered a meaningful response.

To be sure, the government is required to disclose all evidence that bears on the credibility of its complaining witness, including evidence of poor mental and emotional health that may be provable on cross-examination. See United States v. Pryce, 938 F.2d 1343, 1345-46 (D.C. Cir. 1991). The government must also reveal psychiatric and medication evidence raising questions about a witness's biases and the reliability of his or her testimony. See Fuentes v. Griffin, 829 F.3d 233, 247-48 (2d Cir. 2016); see also Brady. And the government must disclose its witness's mental health history. See Fuentes, 829 F.3d at 248; Browning v. Trammell, 717 F.3d 1092, 1105-06 (10th Cir. 2013). Indeed, a witness's credibility may always be attacked by showing that her capacity to observe, remember or narrate is impaired. As stated by the Second Circuit in Fuentes: "Based on clearly established fundamental rights and principles, we think it indisputable that if the prosecution has a witness's psychiatric records that are favorable to the accused because they provide material for impeachment, those records fall within the Brady principles, and that the Supreme Court has so recognized." 829 F.3d at 247.

In addition, evidence that impeaches a witness's ability to recollect or perceive events is also always relevant and must be produced. See Benn v. Lambert, 283 F.3d 1040, 1056 (9th Cir. 2002); United States v. Moore, 923 F.2d 910, 913 (1st Cir. 1991). And in this case, all evidence available to the government suggesting Ms. Clifford has fabricated claims of criminal conduct against anyone other than Mr. Avenatti is plainly Brady. Despite each of these well-established legal principles, however, the government has produced none of this information. It should be required to comply with its obligations and produce it now.

## IV.    Conclusion

For the foregoing reasons, and for any that are apparent at any evidentiary hearing or oral

argument, the Court should grant the defense's motions to preclude, suppress, and compel evidence.

Dated:  June 18, 2021
        New York, NY

                                        Respectfully Submitted,


                                        /s/
                                        Robert M. Baum, Esq.
                                        Andrew J. Dalack, Esq.
                                        Tamara L. Giwa, Esq.
                                        Assistant Federal Defenders

                                        Counsel for Michael Avenatti