```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :
                -v-                                               :       19-CR-374-1 (JMF)
                                                                  :
MICHAEL AVENATTI,                                                 :       OPINION AND ORDER
                                                                  :
                Defendant.                                        :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

  Michael Avenatti, a formerly high-profile lawyer, is charged in this case with an alleged scheme to defraud a former client. He previously filed two motions, which the Court denied. But taking advantage of the delay in his trial due to the COVID-19 pandemic and armed with new counsel, he now files an "omnibus" motion raising three issues. *See* ECF No. 115 ("Def.'s Mem."). First, he moves to exclude evidence of WhatsApp messages between him and his former client — in the form of screenshots of certain messages and a document of messages "exported" from the former client's cellphone — on the ground that the Government had an obligation to obtain and produce "the original, electronically stored version" of the messages. *Id.* at 1. Second, relying principally on a recent decision by the Fourth Circuit, he moves to suppress all fruits of the Government's search of his iCloud account on the ground that it was conducted pursuant to a search warrant that improperly delegated to the executive branch responsibility for determining whether information obtained from the iCloud account is protected by the attorney-

client privilege and work-product doctrine.[1]  And third, he moves to compel the Government to promptly produce all prior statements attributable to certain allegedly critical witnesses.

The Court would be on firm ground denying Avenatti's "omnibus" motion as untimely given that he did not seek, let alone obtain, leave of Court to bring another set of motions and there is no reason he could not have made his present arguments earlier.  But as an exercise of its discretion, the Court has reviewed Avenatti's arguments, even though untimely, on the merits.  For the reasons that follow, they are rejected.  Avenatti's first and third requests — to suppress the WhatsApp messages evidence and to compel immediate production of certain witnesses' prior statements — require comparatively little discussion.  With respect to the first, the law is clear that the Government has an obligation to produce only what is in its possession, custody, or control — and the Government complied with that obligation here.  Additionally, so long as the WhatsApp messages are properly authenticated at trial, they can be admitted even if they are not in their "original, electronically stored" format.  With respect to the request for immediate disclosure, the Government has already produced some of the prior statements at issue (in connection with an earlier trial of Avenatti in an unrelated case); to the extent the Government has not yet produced other statements, the law is clear that it is not required to do so at this time.

Avenatti's second argument — that the warrant authorizing a search of his iCloud account improperly delegated to the executive branch responsibility for conducting a privilege review — requires more discussion, if only because it arguably finds some support in a Fourth Circuit decision, which held that a lower court had erred in allowing a government "filter team"

---

[1]  As discussed below, in a letter-motion filed more recently, Avenatti also moves, on the same grounds, to enjoin the Government from searching the contents of his iPad, to which the Government apparently gained access after the "omnibus" motion was fully briefed.  *See* ECF No. 143.

to conduct a privilege review in the first instance of communications that had been seized pursuant to a search warrant from a law firm that did criminal defense work. Ultimately, though, the Court concludes that the unique facts and circumstances of the Fourth Circuit's case distinguish it from Avenatti's case and that the privilege review conducted by a Government filter team in this case does not provide a basis to suppress any, let alone all, evidence obtained from the judicially authorized search of Avenatti's iCloud account. To the extent that the Fourth Circuit's decision is not distinguishable, and can be read to categorically prohibit the use of filter teams to conduct privilege reviews in the first instance of lawfully seized materials, the Court declines to follow it. Courts in this Circuit have long blessed such procedures and rightly so, as they adequately balance the law enforcement (and public) interest in obtaining evidence of crimes with respect for privileged communications. As long as a defendant has the opportunity to seek judicial review before materials are turned over to those involved in his prosecution, as Avenatti did in this case, there is nothing categorically improper about that practice.

## BACKGROUND

In February 2018, Avenatti was hired to represent Stephanie Clifford, an adult entertainer more commonly known by her stage name, Stormy Daniels, "in connection with various matters relating to her previous liaison with the 45th President of the United States," Donald J. Trump. *Id.* at 6. In early 2019, however, Avenatti's life took a dramatic turn. First, in March 2019, he was arrested and charged in this District with crimes related to an alleged scheme to extort Nike ("*Avenatti I*"). *See* Compl., *United States v. Avenatti*, No. 19-CR-373 (PGG) (S.D.N.Y. Mar. 24, 2019), ECF No. 1. Then, in April 2019, he was indicted in the Central District of California on charges stemming from an alleged scheme to defraud and embezzle several of his clients ("*Avenatti II*"). Indictment, *United States v. Avenatti*, No. 8:19-CR-61 (JVS) (C.D. Cal. Apr. 10,

2019), ECF No. 16.  Finally, in May 2019, he was indicted in this case with a scheme to defraud Ms. Clifford.  *See* ECF No. 1 ("Indictment").  In February 2020, after a trial before Judge Gardephe, a jury found Avenatti guilty on three counts in *Avenatti I*.  *See* Verdict, *Avenatti I*, No. 19-CR-373 (PGG) (S.D.N.Y. Feb. 14, 2020), ECF No. 265.  On July 8, 2021, Judge Gardephe sentenced him to thirty months' imprisonment.  Judgment, *Avenatti I*, No. 19-CR-373 (PGG) (S.D.N.Y. July 15, 2021), ECF No. 339.  The California case, meanwhile, was severed into two sets of charges.  Trial on the first set of the charges began July 13, 2021, but it ended in a mistrial.  Minutes, *Avenatti II*, No. 8:19-CR-61 (JVS) (C.D. Cal. July 13, 2021), ECF No. 553; Minutes, *Avenatti II*, No. 8:19-CR-61 (JVS) (C.D. Cal. Aug. 24, 2021), ECF No. 780.  A second trial on those charges is scheduled for November 2, 2021; trial on the other set of charges in the California case is scheduled for May 10, 2022.  Order, *Avenatti II*, No. 8:19-CR-61 (JVS) (C.D. Cal. Sept. 2, 2021), ECF No. 804.

This case was originally assigned to the Honorable Deborah A. Batts.  On August 29, 2019, Avenatti filed a motion seeking to transfer the case to the Central District of California under Rule 21 of the Federal Rules of Criminal Procedure.  *See* ECF No. 19.  By Opinion entered on September 24, 2019, Judge Batts denied the motion.  *See United States v. Avenatti*, No. 19-CR-374 (DAB), 2019 WL 4640232 (S.D.N.Y. Sept. 24, 2019) (ECF No. 21).  After Judge Batts's death, the case was reassigned to the undersigned.  When the Court adjourned trial due to the COVID-19 pandemic, Avenatti filed a second motion to transfer the case to the Central District of California.  *See* ECF No. 56.  On August 7, 2020, the Court denied the motion from the bench.  *See* ECF No. 73; ECF No. 87 ("Aug. 7, 2020 Tr."), at 9.  The same day, the Court appointed new counsel to represent Avenatti and adjourned trial *sine die*.  Aug. 7, 2020 Tr. 15, 23.  New counsel requested "an opportunity to determine whether there should be any

4

motions going forward." Aug. 7, 2020 Tr. 19. The Court responded that it was "obviously not going to preclude [counsel] from making an effort," but, citing the fact that Avenatti had filed two motions already, and had "had plenty of time since then to raise other issues," cautioned that counsel "would have an uphill climb to persuade [the Court] that . . . Avenatti should be granted leave to file any [more] motions" and that counsel "would certainly have to persuade [the Court] that a late motion would be appropriate." *Id.* at 21.

On January 6, 2021, the Court set January 10, 2022, as a new trial date. ECF No. 103, at 2. Avenatti filed this "omnibus" motion on May 1, 2021. *See* ECF No. 115. He did so without leave of Court. Nor did he make any effort to explain why he could not have raised the arguments he now makes earlier.

## DISCUSSION

As noted, Avenatti moves for three forms of relief. First, he argues that any evidence of his WhatsApp communications with Ms. Clifford should be excluded unless the Government obtains and produces "the original, electronically stored version" of the relevant communications. Def.'s Mem. 1, 13-17. Second, he seeks to suppress the fruits of the Government's search of his iCloud account on the ground that the warrant authorizing the search improperly delegated to the executive branch the task of reviewing the material for privilege. *See id.* at 18-26. In a more recently filed letter-motion, he moves, on the same grounds, to bar the Government from searching the contents of his iPad, to which the Government apparently obtained access after briefing on the "omnibus" motion was complete. *See* ECF No. 143. Finally, he moves to compel the immediate production of prior statements made by three allegedly critical witnesses. *See* Def.'s Mem. 26-30. The Court will address each issue in turn.

5

**A. The WhatsApp Message Evidence**

On March 11, 2019, the Government interviewed Ms. Clifford as part of its investigation. According to the Government, during the interview, Ms. Clifford provided "limited consent for the Government to screenshot in her presence certain portions of [her] WhatsApp text messages with the defendant, and an Investigative Analyst with the United States Attorney's Office did so." ECF No. 130 ("Gov't Mem."), at 4. Two weeks later, Ms. Clifford, through counsel, "voluntarily provided to the Government an export of all of the WhatsApp text messages with the defendant that were stored on [her] cellphone, which covered the time period of February 28, 2018 through February 15, 2019." *Id.* at 4-5. The Government's understanding is that the "export" was "generated automatically using an electronic feature that compiles the entirety of a WhatsApp conversation into a printable and shareable electronic file." *Id.* at 5.

Avenatti does not accuse the Government of any discovery impropriety *per se*; that is, he does not suggest, with respect to the WhatsApp messages, that the Government currently has in its possession more than the screenshots and the "export" file, both of which have been produced. *See* Def.'s Mem. 13-14. Nevertheless, Avenatti argues that the Government's "failure to produce the original, electronically stored version of the chats" calls for exclusion of the evidence from trial or, "at a minimum, . . . an evidentiary hearing." *Id.* at 14, 16. More specifically, Avenatti contends that, under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and Rule 16 of the Federal Rules of Criminal Procedure, the Government "has a duty to produce all of [his] communications with Ms. Clifford . . . in their entirety and forensically-collected format" and that "[i]ts failure to do so violates due process and deprives [him] of a meaningful opportunity to defend against the government's evidence and theory of the case." Def.'s Mem.

6

15. Separately, he contends, in substance, that the screenshots and "export" document cannot be properly authenticated or should be excluded pursuant to the "rule of completeness." *Id.* at 15.

Avenatti is wrong. Avenatti provides no basis to believe that there is material, let alone exculpatory, evidence on Ms. Clifford's cellphone or to be found in a "forensic" version of the WhatsApp messages. (That failure is especially noteworthy because, as the Government notes, Avenatti has access to the contents of his iCloud account, "which includes thousands of records of WhatsApp calls and messages" between him and Ms. Clifford, including, presumably, most, if not all, of the messages at issue here. Gov't Mem. 5.) But more fundamentally, it is well established that the Government's "discovery and disclosure obligations extend *only* to information and documents in the government's possession." *United States v. Brennerman*, 818 F. App'x 25, 29 (2d Cir. 2020) (summary order) (emphasis added); *accord United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) ("Clearly the government cannot be required to produce that which it does not control and never possessed or inspected." (internal quotation marks omitted)). Relatedly, the Government has no obligation, under *Brady* or otherwise, "to seek out . . . information like a 'private investigator and valet . . . gathering evidence and delivering it to opposing counsel.'" *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) (quoting *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002)); *accord United States v. Raniere*, 384 F. Supp. 3d 282, 325 (E.D.N.Y. 2019) ("*Brady* does not require the government to search for exculpatory material not within its possession or control." (citation omitted)).

Avenatti suggests that electronic versions of the WhatsApp messages *were* in the Government's possession because "Ms. Clifford's phone was at one point in the government's possession, custody, or control." Def.'s Mem. 16. But he does not dispute that the cellphone

was in the Government's possession only fleetingly and, presented with an argument much like Avenatti's here, the Second Circuit has explicitly "reject[ed] . . . a notion of 'possession' which is so elastic as to embrace materials that the prosecution never had in its files, never inspected, and never knew about." *Hutcher*, 622 F.2d at 1088.  Moreover, Avenatti does not dispute that Ms. Clifford provided only limited consent to take screenshots of certain communications and did not consent to a search of her cellphone or to the creation of a "forensic" copy of its entire contents.  Avenatti cites, and the Court has found, no authority for the proposition that where, as here, a government official is in possession of a person's cellphone, that official even has authority to access or copy the contents of the cellphone without a warrant or the person's consent.  Such a rule would not be consistent with the Fourth Amendment, *see, e.g.*, *Riley v. California*, 573 U.S. 373, 400 (2014), and would undoubtedly discourage victims and witnesses alike from coming forward and cooperating with law enforcement investigations.  In short, the Government was under no obligation to disclose to Avenatti more than it obtained itself, so neither *Brady* nor Rule 16 calls for exclusion of the WhatsApp evidence here.

      Avenatti's arguments about authentication and completeness fall short as well.  For starters, they are premature.  The admissibility of any particular exhibit under the Federal Rules of Evidence is more appropriately addressed at, or (through a motion *in limine*) shortly before, trial.  *See, e.g.*, *United States v. Solomonyan*, 451 F. Supp. 2d 626, 646 (S.D.N.Y. 2006) (denying a pretrial motion to preclude evidence at trial as "premature because the government has not yet decided what evidence they will seek to introduce").  In any event, Avenatti's arguments fail on the merits.  First, by its terms, Rule 106 of the Federal Rules of Evidence, which codifies the "rule of completeness," is a rule of *admissibility*.  It provides that a court should *permit* the introduction of certain writings or statements "that in fairness ought to be considered" when

other writings or statements are offered; it does not call for *exclusion* of the writings or statements that are offered in the first instance.  Second, it is well established that, if properly authenticated (for example, by a witness with knowledge, such as a participant), screenshots of text messages and copies of electronic communications are admissible.  *See, e.g.*, *United States v. Davis*, 918 F.3d 397, 401-04 (4th Cir. 2019) (photographs of text messages); *United States v. Arnold*, 696 F. App'x 903, 906-07 (10th Cir. 2017) (unpublished) (screenshots of text messages); *see also, e.g.*, *In re E.D.T. ex rel. Adamah v. Tayson*, No. 09 Civ. 5477 (FB), 2010 WL 2265308, at *3 n.4 (E.D.N.Y. May 28, 2010) (holding that testimony by a participant in text messages "was sufficient to establish their authenticity").  That is true, as the Second Circuit has held, even if the messages were "cut from . . . electronic communications and then pasted into word processing files" and thus, in theory, "could have been subject to editing by the government" or "even . . . completely fabricated."  *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007).

In sum, Avenatti's motion with respect to the WhatsApp messages must be and is DENIED.  That denial, however, is without prejudice to particularized objections to specific exhibits that the Government seeks to introduce at trial.

**B.  The iCloud and iPad Searches**

Next, Avenatti moves to suppress the fruits of the search of his iCloud account, principally on the ground that "[t]he warrant authorizing" the Government's search of the account, signed by Judge Gardephe on August 13, 2019, "improperly delegated to the Department of Justice — an interested party — the responsibility of identifying and (presumably) walling off from the prosecution team materials protected by the attorney-client privilege and work-product doctrine."  Def.'s Mem. 12; *see* ECF No. 125-2.  This error was compounded, he argues, by the fact that "the warrant was apparently approved ex parte (without

any opportunity for Mr. Avenatti or other interested parties to object)" and because the warrant "failed to set forth the actual procedures to be used by the 'filter team' to prevent disclosure of privileged materials." Def.'s Mem. 12.  In a supplemental letter motion, Avenatti moves on these same grounds to preclude the Government from searching the contents of his iPad, to which the Government gained access after the initial motion had been briefed.  *See* ECF No. 143.

Avenatti's motion is without merit.[2]  First, the use of a "filter team" to review Avenatti's communications in the first instance does not call for suppression of any — let alone all — of the seized communications.  Judge Gardephe approved that procedure in the warrant, and the Government was entitled to rely on that approval.  *See United States v. Leon*, 468 U.S. 897, 920-21 (1984).  More fundamentally, "[t]he use of a filter team is a common procedure in this District and has been deemed adequate in numerous cases to protect attorney-client communications."  *In re Search Warrants Executed on Apr. 28, 2021*, No. 21-MC-425 (JPO), 2021 WL 2188150, at *2 (S.D.N.Y. May 28, 2021) (citing *United States v. Blakstad*, No. 19-CR-486 (ER), 2020 WL 5992347, *8 (S.D.N.Y. Oct. 9, 2020); *United States v. Ceglia*, No. 12-CR-876 (VSB), 2015 WL 1499194, *1 (S.D.N.Y. Mar. 30, 2015)); *see also, e.g.*, *United States v. Yousef*, 327 F.3d 56, 168 (2d Cir. 2003) ("[T]he Government established an effective firewall to prevent disclosures to the Government's trial attorneys of trial strategies or confidential communications between [the defendants] and their attorneys."), *overruled on other grounds by Montejo v. Louisiana*, 556 U.S. 778 (2009); *United States v. Nunez*, No. 12-CR-778-2, 2013 WL

---

[2] The Government makes a forceful argument that Avenatti forfeited the objections he now presses, at least with respect to the earlier search of his iCloud account, because he had an opportunity to raise them before the filter team conducted its search.  *See* Gov't Mem. 19-20.  In fact, as the Government notes, Avenatti's prior counsel actually participated in the filter team's review process.  *See id.* at 13-16.  Nevertheless, the Court need not and does not decide whether the objections were forfeited because Avenatti's motion fails on the merits.

4407069, at *1 (S.D.N.Y. Aug. 16, 2013) (noting that, "[a]t the Court's direction, a Government 'Wall Assistant'" had reviewed seized emails involving the defendant for claims of privilege); *United States v. Winters*, No. 06 Cr. 54 (SWK), 2006 WL 2789864, at *2 (S.D.N.Y. Sept. 27, 2006) (noting that the proposed use of "'wall Assistant' adequately protects the defendant's asserted privilege"); *United States v. Grant*, No. 04-CR-207 (BSJ), 2004 WL 1171258, at *2 (S.D.N.Y. May 25, 2004) (approving review by a filter team in the first instance of documents "lawfully seized pursuant to a valid warrant"). Put simply, where, as here, material is "already in the government's possession . . . the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege." *In re Grand Jury Subpoenas*, 454 F.3d 511, 522-23 (6th Cir. 2006).

In arguing otherwise, Avenatti relies almost exclusively on *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019), in which the Fourth Circuit held that a magistrate judge had erred in permitting the Government to use a filter team to review emails that had been seized from a law firm pursuant to a search warrant. But the facts and circumstances in that case — which one member of the panel stressed were "unique," *id.* at 183 (Rushing, J., concurring) — are very different from those here. There, 99.8% of the 52,000 emails seized did not involve the client whose relationship with a member of the firm was under investigation; the firm involved did criminal defense work and "many" of the seized emails contained privileged information relating to *other* clients, some of whom were potential subjects or targets of investigations by the office conducting the review; the law firm immediately and vigorously objected to review of the seized emails by the filter team; if the filter team determined that a communication was not privileged, the law firm was not given an opportunity to object; and the filter team was prospectively authorized to contact clients of the firm *ex parte* to seek waivers of

11

their attorney-client privileges.³ *Id.* at 165-68, 172.  None of these circumstances are present here.  Most notably, Avenatti was not involved in criminal defense work; he was given an opportunity to review all communications before they were turned over to the prosecution team; and, until this motion, he raised zero objections, either to the review procedures or to the filter team's conclusions.  *See, e.g.*, *In re Sealed Search Warrant & Application for a Warrant*, No. 20-MJ-03278, 2020 WL 5658721, at *5 (S.D. Fla. Sept. 23, 2020) (distinguishing various cases, including the Fourth Circuit's decision in *In re Search Warrant Issued June 13, 2019*, on the ground that they involved searches of lawyers involved in criminal defense work, giving rise to the concern "that members of the filter team might have been involved in or could later become involved in the criminal investigation and or prosecution of other clients"); *cf. United States v. Stewart*, No. 02-CR-395 (JGK), 2002 WL 1300059, at *7, *10 (S.D.N.Y. June 11, 2002) (appointing a special master to review materials seized pursuant to a warrant from a criminal defense lawyer's office where the documents were "likely to contain privileged materials relating not only to unrelated criminal defendants but also to the clients of attorneys other than defendant").

In any event, the Court need not ultimately decide if the Fourth Circuit's decision is distinguishable because it is not binding here and, "to the extent it suggests that the use of a filter team by a federal prosecuting office may violate the constitutional separation of powers," the Court — like Judge Oetken — "respectfully disagrees."  *In re Search Warrants Executed on*

---

³    After the law firm's appeal to the Fourth Circuit was lodged, the district court entered an agreed order modifying the protocols to permit the law firm to review communications deemed not to be privileged before they were shared with the prosecution team. *See id.* at 170.  Notably, the panel did not consider the impact of that modification, let alone suggest that the revised procedures were impermissible; indeed, one member of the panel made a point of emphasizing that the decision "does not suggest that the [modified procedure] . . . impermissibly usurps a judicial function." *Id.* at 184 (Rushing, J., concurring).

*April 28, 2021*, 2021 WL 2188150, at *2 n.3.⁴  The attorney-client privilege "is an important privilege, to be sure."  *Grant*, 2004 WL 1171258, at *2.  But where, as in this case, documents have been "lawfully seized pursuant to a valid warrant, . . . the Government should be allowed to make fully informed arguments as to privilege if the public's strong interest in the investigation and prosecution of criminal conduct is to be adequately protected."  *Id.*

Moreover, it is a *non sequitur* to say that merely because the final adjudication of a privilege dispute — that is, whether materials that are lawfully in the Government's possession pursuant to a seizure warrant are privileged — is a judicial function, a court may not allow the Government to review the materials in the first instance and reserve its power to adjudicate any disputes that may arise.  In most cases, so long as the putative privilege holder (or its designee) has notice and the opportunity to raise objections with the court before potentially privileged materials are disclosed to members of the prosecution team, it offends neither the law of privilege nor the Fourth Amendment to allow the Government to make the first pass.⁵  In fact, in

---

⁴  In support of its holding that the magistrate judge had improperly delegated judicial power to the executive branch, the Fourth Circuit cited the Second Circuit's decision in *In re The City of New York*, 607 F.3d 923, 947 (2d Cir. 2010), for the proposition that "evaluating [a] privilege claim is always a judicial function."  942 F.3d at 176-77.  But the Second Circuit's decision does not suggest, let alone hold, that the use of a filter team in the first instance to review lawfully seized materials for privilege constitutes an improper delegation of judicial power.  In the phrase cited by the Fourth Circuit, the Second Circuit merely observed — ironically, in the course of holding that the district court in that case had improperly *usurped* the power of the executive branch — that "evaluating a claim of law enforcement privilege is unquestionably a proper and important judicial function" —  607 F.3d at 947.  In short, the Second Circuit's decision provides no real support for the Fourth Circuit's separation-of-powers analysis — and certainly does not compel this Court to follow the Fourth Circuit's lead.

⁵  It is worth noting that there is language in the Fourth Circuit's decision that is not inconsistent with that proposition.  *See* 942 F.3d at 176 ("We have recognized that, *when a dispute arises* as to whether a lawyer's communications or a lawyer's documents are protected by the attorney-client privilege or work-product doctrine, the resolution *of that dispute* is a judicial function." (emphasis added)); *see also id.* at 184 (Rushing, J., concurring) (approving of approaches in which the review of potentially privileged seized materials is delayed pending

13

the absence of a dispute, a federal court arguably has no business even exercising judicial power. *Cf. Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (noting that Article III, which grants "courts the power to decide 'Cases' or 'Controversies,'" requires "that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions"). Finally, taken to its logical conclusion, Avenatti's position would require a judicial officer to conduct the initial review of almost any communications seized pursuant to a warrant — including wire communications seized pursuant to a judicially authorized wiretap — because, in theory, any such communications could contain privileged information. The resulting burdens on the courts (even if such review were limited to a subset of cases) would be intolerable. *See, e.g.*, *Grant*, 2004 WL 1171258, at *3 (noting "the burden that magistrates and district court judges would face if they were to routinely review lawfully-seized documents in every criminal case in which a claim of privilege was asserted"). Neither the law of privilege nor the Fourth Amendment mandates that burden.

Avenatti's other objections — to Judge Gardephe's *ex parte* approval of the warrant and to the absence of detailed protocols for the privilege review in the warrant — carry even less weight. As Avenatti himself "acknowledges," the Government, "in the normal course, routinely obtains search warrants in criminal cases *ex parte*, primarily to maintain the integrity of its investigations." Def.'s Mem. 25; *see, e.g.*, *United States v. Abuhamra*, 389 F.3d 309, 322 n.8 (2d Cir. 2004) ("[T]he criminal law does permit *ex parte* submissions in support of arrest and search warrants . . . ."); *In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) ("[H]istorically the process of issuing search warrants involves an *ex parte*

---

adversary proceedings with respect to proposed review protocols and emphasizing that "the burden remains on the parties to voice their objections . . . in the normal course.").

14

application by the government and *in camera* consideration by the judge or magistrate."); *United States v. Cohen*, 366 F. Supp. 3d 612, 632 (S.D.N.Y. 2019) ("History and experience indicate that proceedings to obtain search warrants traditionally involve *in camera* determinations of *ex parte* applications."). And in any event, Avenatti does not (and could not) object to the *ex parte* nature of the seizure; he merely argues that, before blessing a review protocol, the court should have given him an opportunity to be heard. But notably, he had ample opportunity to raise any objections to the review process before any materials were actually disclosed to the prosecution team. For the same reason, his objection that the warrant should have "set forth the actual procedures to be used by the 'filter team' to prevent disclosure of privileged materials" falls short. Def.'s Mem. 12. Yes, it probably would have been better for the Government to propose (and the court to bless) more detailed procedures in the warrant itself. But the fact is that Avenatti had ample opportunity to object to the review and, until this motion, failed to do so. Even now, his categorical objections to the filter team aside, he cites nothing deficient in the way the Government actually conducted its review and identifies no communications that were improperly disclosed to the prosecution team. Thus, there is no basis for suppression.

Accordingly, Avenatti's motion to suppress the fruits of the Government's search of his iCloud account is DENIED. For similar reasons, Avenatti's objections to the filter team's review of the contents of his iPad in the first instance are overruled.[6] That said, before any contents from the iPad are shared with any member of the prosecution team, the Government shall give Avenatti reasonable notice and an opportunity to raise with the Court any objections to the filter

---

[6] Although Avenatti invokes *Brady* in his submissions with respect to the iPad, *see* ECF No. 143, at 2; ECF No. 146, that is no reason to bar the Government's review *ex ante*. As discussed below, the Government has represented that it is aware of its *Brady* obligations, has complied with them, and will continue to comply with them. That is sufficient at this stage.

team's privilege determinations.  *See Grant*, 2004 WL 1171258, at *2 (approving review by a filter team in the first instance because "the Defendant will have the opportunity to make objections to the Court before any documents are turned over to the trial team").

## C. Immediate Disclosure of Witnesses' Prior Statements

Avenatti's final argument — that, pursuant to *Brady* and *Giglio v. United States*, 405 U.S. 150 (1972), the Court should order the Government "to promptly produce all prior statements in its possession, custody, or control (or that could be through due diligence) attributable to Stephanie Clifford, Judy Regnier, and Luke Janklow," Def.'s Mem. 1 — is easily rejected.  To the extent that he seeks evidence pursuant to *Brady*, *Giglio*, and their progeny, the request is denied on the basis of the Government's good faith representation that it has complied with its obligations and will continue to do so.  *See* Gov't Mem. 31; *see, e.g.*, *United States v. Davis*, No. 17-CR-610 (LGS), 2018 WL 4373998, at *10 (S.D.N.Y. Sept. 13, 2018); *see also United States v. Mangano*, No. 16-CR-540, 2018 WL 851860, at *17 (E.D.N.Y. Feb. 9, 2018) ("Courts in the Second Circuit generally do not compel immediate disclosure of *Brady*/*Giglio* materials where (1) the Government represents it is aware of and will comply with its *Brady*/*Giglio* obligations, and (2) the Defense does not provide any reason for suspecting the Government will not comply." (internal quotation marks omitted)).  To the extent that Avenatti seeks early disclosure of the Government's trial materials, including the statements of witnesses and victims, his request is frivolous as 18 U.S.C. § 3500, the Jencks Act, "*prohibits* a District Court from ordering the pretrial disclosure of witness statements." *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001) (emphasis added).[7]  In any event, the Government represents that it

---

[7]     Moreover, as the Government notes, and Avenatti does not dispute, Avenatti "already has possession of all *Giglio* and Jencks Act materials that were produced in advance of the trial in the Extortion Case for Judy Regnier, who testified at that trial." Gov't Mem. 31 n.10.

16

is prepared to stand by its previous commitment to produce all § 3500 material one week before trial (at least if Avenatti stands by his own reciprocal commitments). *See* Gov't Mem. 27-28, 32-33; *see also* ECF No. 55. If the Government does so, that is more than adequate under the law. *See United States v. Noble*, No. 07-CR-284 (RJS), 2008 WL 1990707, at *9 (S.D.N.Y. May 7, 2008) (approving the United States Attorney's Office's agreement "to produce any . . . § 3500 material on the Friday before trial, consistent with its standard practice" (internal quotation marks omitted)). Accordingly, Avenatti's request for immediate disclosure is DENIED.

## CONCLUSION

For the foregoing reasons, Avenatti's "omnibus" motion is DENIED in its entirety. Additionally, his objections to the filter team's privilege review of the contents of his iPad in the first instance are overruled, subject to the requirement that, before any contents are shared with any member of the prosecution team, the Government shall give Avenatti reasonable notice and an opportunity to raise with the Court any objections to the filter team's privilege determinations.

The parties are ordered to confer and, no later than **one week from the date of this Opinion and Order**, submit a proposed order consistent with the Court's earlier scheduling order, *see* ECF No. 55, setting pretrial deadlines. The parties shall file the proposed order on ECF and, simultaneously, email a version in Microsoft Word format to the Court.

The Clerk of Court is directed to terminate ECF Nos. 115 and 143.

SO ORDERED.

Dated: September 9, 2021
      New York, New York

_____
JESSE M. FURMAN
United States District Judge