**Federal Defenders
OF NEW YORK, INC.**

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

October 22, 2021

**BY ECF**
Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

**Re:** United States v. Michael Avenatti,
19 Cr. 374 (JMF)

Dear Judge Furman,

We write in support of our request to use a jury questionnaire in the selection of a petit jury in the above-captioned case.

On March 13, 2020, the Government submitted a letter motion on behalf of the parties requesting that the Court use a written juror questionnaire in this case. Dkt. No. 46. Since then, the propriety of a questionnaire has not diminished. Rather, as detailed herein, Mr. Avenatti's legal battles have garnered, and continue to generate, significant publicity that jeopardizes his right to a fair trial. Mr. Avenatti's conviction and sentence in United States v. Michael Avenatti, 19 Cr. 373 (PGG) (S.D.N.Y.) (hereafter the "Nike case") was front-page news in the New York area and triggered a massive social media response. Similarly, Mr. Avenatti's recent mistrial (due to a brazen Brady violation) in United States v. Michael Avenatti, SA Cr. No. 19-061-JVS (C.D. Ca.) (hereafter the "California case") has also received substantial New York and national press coverage, including in the New York Times. Further, the alleged victim in this case, Ms. Stephanie Clifford, also known as "Stormy Daniels," has continued to publicly comment on this case and attack Mr. Avenatti via podcasts, interviews, and her sizable social media following.

Against this backdrop, it is clear that widespread publicity of Mr. Avenatti's cases, including this one, continues unabated. And unlike the publicity preceding the Nike case, the pre-trial publicity in this case implicates Mr. Avenatti's Fifth and Sixth Amendment rights to a trial before a group of 12

individuals as unaware as possible of his conviction and sentence in the Nike case, and of the charges pending in California. Accordingly, the Court's use of a written questionnaire is even more essential now than it was back in March 2020, and there is no significant countervailing interest justifying a less careful approach to jury selection.

**Jury questionnaires were crucial to making voir dire in Mr. Avenatti's Nike and California cases more fair, equitable, and efficient.**

As the Court is aware, the Government charged Mr. Avenatti in three separate federal indictments across the Southern District of New York and the Central District of California. Two of those cases, the Nike case and the California case, have proceeded to trial. In each, the Government consented to the use of a jury questionnaire, and a questionnaire was indeed used. See California case jury questionnaire (Exhibit A) and Nike case jury questionnaire (Exhibit B).[1] The questionnaires were crucial to the elimination of biased jurors. For example, on January 27, 2020, in the lead-up to the Nike trial, Judge Gardephe distributed 120 questionnaires. After they were submitted and reviewed, Judge Gardephe noted, "By my count we have 35 clean questionnaires. In other words, 35 questionnaires that don't present, at least to me, any issues. That leaves 85 that have problems of one sort or another." See Nike Voir Dire Tr. (Jan. 27, 2020) at 11 (Exhibit C). In other words, nearly 75% of the first 120 potential jurors in the Nike case required additional screening because of their familiarity with Mr. Avenatti, as evidenced by their responses on the questionnaire. Indeed, as Judge Gardephe acknowledged on January 22, 2020 while dealing with several trial-related matters:

> "One of the things I was thinking about back in the robing room was I was trying to think of another lawyer who has as much notoriety now as Mr. Avenatti, and I was having difficulty coming up with anyone....
>
> "The problem is his public persona is inextricably intertwined with his prior representation of Stormy Daniels in the case against the President. And by the way, **I will be shocked if we don't have lots of people in the jury panel who are aware of Mr. Avenatti's prior representation of Stormy Daniels, shocked if there aren't quite a few people that are going to say they've heard Mr. Avenatti's name in connection with his prior representation of her.**"

---

[1] The attached Nike questionnaire is a redacted example of a questionnaire completed by a potential juror.

<u>See</u> Excerpt of Nike Trial Tr. (Jan. 22, 2020) p. 100-101 (Exhibit D) (emphasis added).[2]

Similarly, based on a review of the completed questionnaires in the California case, more than a quarter of the 147 jurors who returned questionnaires admitted a familiarity with Mr. Avenatti. And nearly two-thirds of those jurors acknowledged their familiarity with Mr. Avenatti's connection to Ms. Clifford and Donald Trump. Although this is not as high a percentage as that in the Nike case, it is still substantial and much closer in time to this case, as the California case began on July 13, 2021 and was declared a mistrial on August 24, 2021.

Notably, declining to use jury questionnaires in the Nike and California cases would have needlessly prolonged oral voir dire, as each juror familiar with Mr. Avenatti would have had to be questioned privately, outside the presence of the other jurors. If anything, the use of a questionnaire in both of those cases saved the courts, the parties, and the public significant time and resources. There is no reason to believe that a jury questionnaire would not do the same in this case.

**<u>A written questionnaire is necessary to weed out potential jurors familiar with Mr. Avenatti's prior conviction, sentence, and pending charges.</u>**

In response to the Court's suggestion that the passage of time has diminished the need for a jury questionnaire in this case, the defense respectfully submits that the opposite is true. Namely, because Mr. Avenatti's conviction and sentence in the Nike case and his mistrial in California have received substantial media coverage and publicity, the potential for significant prejudice and bias is now <u>higher</u>, not lower, than it was when the parties in this case first requested the use of a questionnaire. Mr. Avenatti's right to an impartial jury, a jury free of preconceived notions based on his prior record and other criminal allegations, is most effectively vindicated through a written questionnaire.

There can be no reasonable dispute that Mr. Avenatti's conviction and sentence in the Nike case received intense media scrutiny, both nationally and in New York. In January of this year, CNBC ran a widely viewed piece titled, "The Trials of Michael Avenatti," and this past July, after Judge Gardephe

---

[2] Judge Gardephe also observed that the Government's case in the Nike matter centered on Mr. Avenatti's notoriety as a result of his "public following because of his prior representation of Stormy Daniels."

sentenced Mr. Avenatti to 30 months' imprisonment, Mr. Avenatti's face was unceremoniously plastered on the front page of the New York Daily News with the headline, "SLIME GETS HARD TIME." See Exhibit E. Mr. Avenatti's sentence was also the focus of numerous national news articles, including those from the Associated Press, New York Times, USA Today, Wall Street Journal, CNN, CBS, and ABC.[3] In addition, in the hours that followed Mr. Avenatti's sentencing, "Michael Avenatti" was trending as one of the top topics on Twitter (worldwide and in the United States), with literally tens of thousands of tweets about his sentencing being broadcast and re-broadcast.[4] In fact, by 3:00 p.m. on July 8, 2021, over 46,700 tweets concerning Mr. Avenatti had been transmitted that day alone.

Similarly, Mr. Avenatti's recent mistrial in the California case also received substantial media attention and scrutiny, including in the New York Times, Los Angeles Times, New York Daily News, ABA Journal, Axios, NBC, and Politico.[5]

---

[3] See: Today Show (national), July 9: https://www.today.com/video/michael-avenatti-gets-2-5-years-in-prison-for-attempting-to-extort-nike-116464709893; ABC News (national), July 8: https://abcnews.go.com/WNT/video/celebrity-lawyer-michael-avenatti-sentenced-prison-78742926; CBS News (national), July 8: https://www.cbsnews.com/news/michael-avenatti-sentence-nike-extortion/?intcid=CNM-00-10abd1h; CNN, July 8 (national): https://www.cnn.com/2021/07/08/politics/michael-avenatti-prison-nike-extortion/index.html; CBS This Morning (national), July 9: https://www.foxnews.com/media/cbs-news-michael-avenatti; Wall Street Journal (national), July 8: "Michael Avenatti sentenced to 2 ½ years for trying to extort Nike" https://www.wsj.com/articles/michael-avenatti-faces-sentencing-for-trying-to-extort-millions-from-nike-11625743801; Associated Press (national), July 8: "Avenatti sentenced to 2 ½ years in prison for extortion" https://www.wsj.com/articles/michael-avenatti-faces-sentencing-for-trying-to-extort-millions-from-nike-11625743801; New York Times (national), July 8: "Avenatti sentenced to two and a half years in Nike extortion case" https://www.nytimes.com/2021/07/08/sports/michael-avenatti-prison-nike.html; Wall Street Journal (national), July 9: "Stop Creating Avenattis: Will the criminal sentencing of CNN's favorite lawyer lead to any media reform?" https://www.wsj.com/articles/stop-creating-avenattis-11625852839; USA Today (national), July 8: https://www.usatoday.com/story/news/2021/07/08/michael-avenatti-stormy-daniels-lawyer-sentenced-25-m-nike-plot/7906843002/.

[4] See: https://www.exportdata.io/trends/united-states/2021-07-08/20; https://www.exportdata.io/trends/worldwide/2021-07-08/20; https://www.exportdata.io/trends/united-states/2021-07-08/21; https://www.exportdata.io/trends/united-states/2021-07-08/22.

[5] See: https://www.nytimes.com/2021/08/24/us/michael-avenatti-fraud-mistrial.html; https://www.latimes.com/california/story/2021-08-24/michael-avenatti-mistrial-embezzlement; https://www.nydailynews.com/news/national/ny-michael-avenatti-mistrial-20210824-clbyaf6j7jgvvdt3b2bi6lywey-story.html; https://www.abajournal.com/news/article/lawyer-who-once-represented-stormy-daniels-wins-mistrial-on-charges-he-stole-from-clients; https://www.axios.com/michael-avenatti-embezzlement-case-mistrial-0c3d2b33-b6e5-4a75-b950-1698bd61301e.html; https://www.nbcnews.com/news/us-

Unsurprisingly, many of the stories contained headlines referencing Mr. Avenatti's prior representation of Ms. Clifford—a relationship that is at issue in this case. And for her part, Ms. Clifford has regularly wielded her substantial public following to draw attention to this case and her allegations against Mr. Avenatti, including by commenting on the evidence through inflammatory social media posts and at least two podcast appearances (Michael Cohen's podcast titled "Mea Culpa" on February 8, 2021 and September 20, 2021).

Given this context, the passage of time has only amplified the need for a jury questionnaire. Indeed, any prospective juror familiar not only with Mr. Avenatti, but also with his prior conviction, sentence, and/or outstanding charges, would have to be struck for cause. It would be a tremendous waste of time and resources to relegate this necessary inquiry to oral voir dire, as each prospective juror would have to be questioned individually at sidebar (so as to not taint the rest of the venire) and then subjected to a thorough inquiry. Instead, the best way to handle the myriad issues surrounding Mr. Avenatti's persistent notoriety and the public airing of his various cases is through a written questionnaire.

Notably, the Court's comparison to the case recently tried before Judge Oetken involving Lev Parnas, an associate of Rudy Giuliani, in which a jury questionnaire was not used, is inapposite. An analysis of news media interest surrounding Mr. Parnas on Google reveals that it peaked in January of 2020 and flat-lined all the way through October 19, 2021. See Exhibit F at 1. In contrast, news media interest related to Mr. Avenatti has spiked consistently and repeatedly over the same time period, clearly reflecting a difference in each individual's notoriety and name-recognition. This is unsurprising, seeing as Mr. Avenatti was interviewed hundreds of times throughout 2018 and 2019, and also invoked the ire of former president Donald Trump, who still commands a significant national following. Given Mr. Avenatti's multiple criminal cases and the prolonged national media attention they have inspired, declining to use a jury questionnaire in this trial would jeopardize his constitutional rights to an extent that defies comparison to the Parnas case.

**There is no prejudice to the Government associated with a questionnaire, nor is a modest delay in the trial sufficient reason to abandon the use of a questionnaire altogether.**

---

news/michael-avenatti-granted-mistrial-california-embezzlement-case-n1277555; https://www.politico.com/news/2021/08/24/michael-avenatti-embezzlement-case-mistrial-506796.

As explained above, in both of Mr. Avenatti's prior trials, as well as in this very case, the Government has agreed that a questionnaire was appropriate. It would be strange for the Government to claim now that the use of one prejudices it in any way.

Moreover, the benefits of a questionnaire to Mr. Avenatti's right to a trial before a fair and impartial jury far outweigh any competing interest in beginning his trial on January 10, 2022. As the Court acknowledged at the last status conference, using a questionnaire and proceeding to trial in the first quarter of 2022 are not mutually exclusive. Rather, a questionnaire would result in only a modest delay to the start date, from January 2022 to February or March 2022. Mr. Avenatti's right to an unbiased jury, free from preconceived notions about him and his representation of Ms. Clifford, must receive more weight than any preference for commencing trial in January. Put differently, if a questionnaire cannot be used as originally planned without adjourning the trial date by a few months (primarily because of COVID-19), then a brief adjournment would still be warranted. Any desire for expediency must yield to a scrupulous protection of Mr. Avenatti's rights to due process and an impartial jury.

During the last status conference, the Court correctly noted that jury selection is "particularly within the province of the trial judge," which includes the decision whether to use a written jury questionnaire. Skilling v. United States, 561 U.S. 358, 386 (2010). In Skilling, the defendant argued that the district court erred in denying his motion to transfer venue given the widespread community impact of the allegations against Enron's top executives. In determining that the district court did not err, however, the Supreme Court pointed to the lower court's use of a written questionnaire and extensive voir dire as safeguards of the defendant's rights. If the Court were to cast off those safeguards here, Mr. Avenatti's right to a fair trial by an impartial jury would be compromised. The need for an extensive questionnaire in this case is just as legitimate as in Skilling, and the Court should exercise its discretion accordingly.

                Respectfully Submitted,

                /s/

cc: AUSA Robert Sobelman  Robert M. Baum, Esq.
   AUSA Matthew Podolsky  Tamara L. Giwa, Esq.
                Andrew J. Dalack, Esq.