# EXHIBIT C

# In The Matter Of:

*UNITED STATES OF AMERICA, v.*
*MICHAEL AVENATTI*

*January 27, 2020*

*Southern District Court Reporters*

Original File K1RDAVEVDF.txt
Min-U-Script® with Word Index

1

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  -----------------------------x
   UNITED STATES OF AMERICA,
3
                v.                        19 CR 373 (PGG)
4
   MICHAEL AVENATTI,
5
                 Defendant.               Voir Dire
6  -----------------------------x
                                          New York, N.Y.
7                                         January 27, 2020
                                          11:00 a.m.
8  Before:

9
                         HON. PAUL G. GARDEPHE,
10
                                          District Judge
11                                        -and a Jury-

12                          APPEARANCES

13  GEOFFREY S. BERMAN
         United States Attorney for the
14       Southern District of New York
    BY:  MATTHEW D. PODOLSKY
15       DANIEL RICHENTHAL
         ROBERT B. SOBELMAN
16       Assistant United States Attorneys

17  BLACK SREBNICK KORNSPAN & STUMPF, P.A.
         Attorneys for Defendant
18  BY:  HOWARD M. SREBNICK
         -and-
19  SCOTT A. SREBNICK
    JOSE M. QUINON
20       -and-
    PERRY GUHA, LLP
21  BY:  E. DANYA PERRY
         -and-
22  RENATO STABILE

23  Also Present:
    DeLeassa Penland, Special Agent (USAO)
24  Andrew Hamilton, Paralegal
    Juliana Manrique, Paralegal
25  Michael Dunlavy

1            THE COURT:  Good morning, ladies and gentlemen.  I

2    want to thank you each of you for being here this morning.  My

3    name is Paul Gardephe and I'm the judge who will preside over

4    the trial for which you have been summoned.  We are choosing

5    jurors for a criminal case that involves charges of extortion

6    and honest services wire fraud.

7            The defendant, Michael Avenatti, is a lawyer and a

8    member of the California bar.  I expect that during the trial

9    the government will offer evidence that in March 2019, one of

10   Mr. Avenatti's clients told him that certain employees of Nike,

11   Inc., the athletic apparel company, had made illicit payments

12   to the families of certain highly ranked high school basketball

13   prospects.  At issue in this case are certain communications

14   between Mr. Avenatti and representatives of Nike about the

15   client's allegations.

16           The indictment against Mr. Avenatti contains three

17   charges or counts.

18           Count One charges Mr. Avenatti with transmitting

19   interstate communications with intent to extort.  The

20   government claims that Mr. Avenatti transmitted in interstate

21   commerce threats to cause financial harm to Nike and its

22   reputation if Nike did not agree to make multimillion dollar

23   payments to Mr. Avenatti.

24           Count Two charges Mr. Avenatti with attempted

25   extortion.  The government claims that Mr. Avenatti attempted

1 to extort Nike by threatening economic and reputational harm to

2 Nike if it did not make multimillion dollar payments to

3 Mr. Avenatti.

4       Count Three charges Mr. Avenatti with what is known as

5 honest services wire fraud.  The government claims that

6 Mr. Avenatti engaged in a scheme to defraud one of his clients

7 of that client's right to Mr. Avenatti's honest services.

8       According to the government, Mr. Avenatti used

9 confidential information supplied to him by his client to

10 demand that Nike pay Mr. Avenatti millions of dollars and that

11 he did so without his client's knowledge and to his client's

12 detriment.

13       The charges in the indictment are merely allegations.

14 They are proof of nothing.

15       Mr. Avenatti has pled not guilty to these charges.  He

16 is presumed innocent and before he could be found guilty on any

17 charge the jury would have to conclude that the government has

18 proven each element of that crime beyond a reasonable doubt.

19       We are using a jury questionnaire to assist us in

20 picking a jury.  The questionnaire will be distributed to you

21 in just a moment.  The purpose of the questionnaire is for you

22 to provide information to myself, to the prosecutors, defense

23 counsel, and to the defendant to assist all of us in

24 determining whether you can be a fair and impartial juror in

25 this case.

4

1          You must give true and complete answers to every

2    question.  The questionnaire asks, among other things, whether

3    you have read, seen, or heard anything about Mr. Avenatti or

4    the charges against him and whether you will follow my

5    instructions to decide this case based solely on the evidence

6    that will be presented in this courtroom.

7          It is critically important that the jurors' verdict be

8    based solely on the evidence that will be offered and received

9    in this courtroom and not on what might have been written or

10   said in the press or someplace else about Mr. Avenatti.

11   Nothing that has been said or written about Mr. Avenatti in the

12   past matters at all for purposes of this trial.

13         In our country we don't try people in the press or

14   over social media.  Instead, we rely on people like you to

15   listen carefully to the evidence presented here in the

16   courtroom, as well as the judge's instructions on the law, and

17   then come to a verdict that is based solely on that evidence

18   and on that law.

19         The questionnaire also provides information concerning

20   the expected length of the trial as well as the schedule for

21   the trial and asks whether the length or schedule for the trial

22   would prevent you from serving as a juror.

23         Please do keep in mind that jury service is one of the

24   most important obligations of being an American citizen and

25   that all jury service involves some measure of inconvenience.

1    I will tell you now what the rules are for completing

2  the questionnaire.  First, please enter your name and juror

3  number on the front page of the questionnaire and at the top of

4  each page.  Please print your answers to the questions in blank

5  ink.  Where indicated, please check the space for yes or no

6  and, as requested, provide answers, explanations, or details on

7  the lines that are provided.

8    Please don't leave any question unanswered.  You must

9  provide full and accurate information in response to each

10  question.  If you don't understand a question, please write, I

11  don't understand.  Please do not write on the back of any page

12  of the questionnaire.

13    Please don't leave the room while you are completing

14  the questionnaire.  If you need to use the restroom, please

15  hand the questionnaire to one of the clerks and then retrieve

16  it upon your return.

17    Please don't discuss the questions in the jury

18  questionnaire or your answers with anyone, including your

19  fellow prospective jurors.  It is extremely important that your

20  answers be your answers and that your answers not be influenced

21  by those around you.

22    During the jury selection process it is critically

23  important that you not read anything about the case, that you

24  not discuss it with anyone, that you not let anyone talk to you

25  about the case, and that you do not do any research about the

1    case on the Internet or anyplace else.  If you are selected for

2    the jury, I will have more instructions for you later on this

3    topic.

4           If you wish your answers to remain confidential and

5    that they not go beyond the judge, counsel, and the defendant,

6    because the answers would subject you to embarrassment, please

7    so indicate at the end of the questionnaire.  Again, please

8    write your name and juror number at the top of each page of the

9    questionnaire and don't forget to sign the questionnaire at the

10   end.

11          Ladies and gentlemen, thank you for your service.

12   Once you complete the filling out of the questionnaire, you are

13   free to leave for the day.  You must report again tomorrow at

14   9:30 a.m. in this courtroom.  Thank you very much.

15          Mr. Ruocco, would you please distribute the

16   questionnaires and the pens necessary to complete the

17   questionnaires.

18          MR. H. SREBNICK:  Your Honor, while that is done, may

19   the lawyers approach the bench.

20          (Continued on next page)

21

22

23

24

25

```
 1              (At sidebar)
 2              MR. H. SREBNICK:  Judge, I thought it might make sense
 3   for the jury to see Mr. Avenatti.  Some people might not
 4   recognize the name just by the name, but they might recognize
 5   his face, his appearance.  That's all.
 6              THE COURT:  Seems like it makes sense.
 7              MR. PODOLSKY:  Sure.
 8              (Continued on next page)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**K1RMAVEVD1**

8

```
 1            (In open court)
 2            THE COURT:  Mr. Avenatti, would you please just stand
 3   and face the jury panel so they can see you.
 4            THE DEFENDANT:  Yes, your Honor.
 5            THE COURT:  Thank you, Mr. Avenatti.
 6            THE DEFENDANT:  Thank you, your Honor.
 7            (Continued on next page)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

9

1              (At sidebar)

2              THE COURT:  I would like to continue our discussion in

3    room 705.  What I have in mind is all of us segue out the door

4    over here, and then you are welcome to take the public

5    elevators up to 705.  I'll meet you there and we will continue

6    our discussion.

7              (Continued on next page)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           (In open court)

2           THE COURT:  I will continue my discussion with the

3    lawyers with pretrial matters in courtroom 705.  As I said to

4    the members of the jury panel, you are free to leave once you

5    complete the questionnaire, and we will resume with the jury

6    panel at 9:30 tomorrow morning.

7           (Recess)

8           (Continued on next page)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AFTERNOON SESSION

4:00 p.m.

1
2
3          THE COURT:  For the record, let me say that we

4    distributed 120 jury questionnaires this morning.  They were

5    completed by the panel members and the purpose of this session

6    this afternoon is to go through the questionnaires that present

7    problems.

8          By my count we have 35 clean questionnaires.  In other

9    words, 35 questionnaires that don't present, at least to me,

10   any issues.  That leaves 85 that have problems of one sort or

11   another.

12         What we are going to do now is go through the ones

13   that have problems and, where possible, reach agreement on

14   jurors who should be excused without further questioning.

15         What I am going to do is just walk through the

16   questionnaires.  If somebody thinks I've missed one, you will

17   let me know.

18         But the first questionnaire that has a problem is

19   juror no. 2.  Juror no. 2 says that he has seen Mr. Avenatti on

20   TV and in the news.  He also mentions he has seen him in the

21   context as a lawyer representing clients.  He says he can put

22   that aside.  What I intend to do with respect to juror no. 2 is

23   question him further.

24         Next, juror no. 4.  Juror no. 4 reports that she has

25   seen that he was arrested on fraud charges.  She says in

1    response to the question, can you put that out of your mind,

2    she says no.  I don't know whether that's a mistake, or it's

3    without explanation.  Generally speaking, when people write no

4    in response to question No. 3, they explain why they couldn't

5    put it out of their mind.  This person doesn't.  It requires

6    further explanation.

7           Juror no. 5.  Juror no. 5 is one of the jurors who

8    says they can't be fair and, specifically, juror no. 5 says, in

9    response to question 3 that I was just talking about:  From the

10   information I have seen, I don't believe I could be impartial

11   in passing judgment.  And there are other problems with juror

12   no. 5 also.

13          What do the lawyers say about excusing juror no. 5?

14          MR. STABILE:  Your Honor, we would agree that juror

15   no. 5 should be dismissed for cause.

16          THE COURT:  What does the government say?

17          MR. SOBELMAN:  Your Honor, just because this is the

18   first one we are approaching, we just want to have a sense of

19   the Court's willingness to question further.  We do think there

20   are a number kind of similar to this where there is kind of a

21   short, I've read things about it, I am not sure I can be fair.

22   If the person were here, we would probably encourage the Court

23   to inquire further to probe their views.  I think that's our

24   inclination on this.

25          THE COURT:  Let me tell you sort of what my

1    perspective is.  My perspective is, there are people who say

2    they've seen information about Mr. Avenatti in the news, but

3    they can put it aside.  We would have to explore with them what

4    exactly they have seen, and we would have to receive assurance

5    from them that they can put it out of their mind.  That's sort

6    of one bucket.

7          Second bucket is, I've seen a certain amount of

8    material about him in the news.  It might be challenging for me

9    to put it out of my mind, but I try to do my best or things of

10   that sort.

11         And then there is people that flat out say, I don't

12   think I can be fair.  This falls in the category of flat out, I

13   don't believe I can be fair.

14         And the other point about juror no. 5 is, she says:

15   I'm heavily reliant on tips.  If I don't show up to work, I

16   don't make money and it is a financial burden to me to be away

17   from work for this period of time.

18         I will tell you, in every case, not just this one,

19   that where someone is reliant on tip income, and I'm being

20   asked to hold a two and a half week trial where they won't have

21   any other income, setting all the other problems aside, I would

22   likely excuse the person.  That's why it doesn't seem to me to

23   be efficient to have the person come in.  If the lawyers want

24   me to have her come in, I'm happy to question further.  I just

25   want you to understand that's my practice.  Where people tell

1  me they are reliant on tip income in order to pay their rent, I

2  generally don't make them serve as a juror.

3         MR. SOBELMAN:  We agree with respect to the financial

4  hardship, and we are fine with the Court excusing this juror on

5  that basis.

6         THE COURT:  Juror no. 5 will be excused.

7         Juror no. 6.  Juror no. 6 says that they are a single

8  parent of two middle schoolers.  Juror no. 6 also has their own

9  business where they need to be from 9 to 2.  The juror also

10  reports that the juror has a broken foot at the moment for

11  which there is a scheduled doctor's appointment this Friday.

12         Then in response to question No. 4, the juror says,

13  and I quote:  My father was part of a lawsuit that had

14  something to do with extortion and bribery.  I can't read the

15  word before extortion and bribery.  But the father was involved

16  in a lawsuit that raised issues of extortion and bribery.  I

17  feel that it may make it difficult for me to be impartial in

18  this case.

19         Same point.  I'm happy to have the person come in and

20  talk with them further about their problems as well as their

21  father's role in a case that involved extortion and bribery.  I

22  just wonder if that's an efficient use of our time.

23         What does the government say?

24         MR. SOBELMAN:  We have no objection to excusing this

25  juror.

**K1RMAVEVD2**

1              MR. STABILE:  Consent, your Honor.

2              THE COURT:  Juror no. 6 is excused.

3              Juror no. 8.  Juror no. 8 reports that the juror has

4    read a lot about Mr. Avenatti's representation of Stormy

5    Daniels and related matters in the past.  The juror also

6    reports that the juror is involved in editing news stories

7    about Nike, the Nike situation.  I'm having a little trouble

8    reading.

9              Does anyone have better luck reading the response to

10   question No. 2?

11             MR. SOBELMAN:  Your Honor, not much better.  I think

12   it says reading news stories about Nike, not editing.

13             THE COURT:  That could be.

14             MR. SOBELMAN:  The government's view on this juror is

15   that it would be worth bringing that person in to have some

16   additional questioning to clarify, especially in light of their

17   answer to question 3 that they could be fair.

18             THE COURT:  I agree.  We will bring them in.

19             Juror no. 9.  Juror no. 9, in response to the

20   question, have you heard, read, or seen anything about Michael

21   Avenatti, responds yes.  And then the juror writes:  I followed

22   the confirmation process of Justice Brett Cavanaugh.  All of

23   the media covered it.  I don't know if Mr. Avenatti took a

24   position against Mr. Cavanaugh.  Maybe he did.  I don't know.

25             MR. S. SREBNICK:  He did, actually.  It was very

1    public and he represented a woman named Julie Swetnick who had

2    made allegations and it was very controversial.

3               THE COURT:  I'll ask her more.

4               Juror no. 11.  Juror no. 11 reports that she has seen

5    headlines that Mr. Avenatti was charged with fraud.  She says

6    that she can put that out of her mind.  So my intention is to

7    question her further.

8               Juror no. 12 in response to question 2 says:  I have

9    heard the name in general, news items, but did not really pay

10   much attention to them.  Same approach.  I will speak with that

11   juror further to confirm that nothing they have read will

12   prevent an impediment to them being a fair and impartial juror.

13              Juror no. 13 presents a number of issues.  The juror

14   reports that he has some work travel scheduled.  He says that

15   he has followed the news about Mr. Avenatti closely,

16   particularly with respect to Stormy Daniels.  He says he is

17   less familiar with the Nike case.  In response to the question,

18   is there anything about the nature of the charges in the case

19   or the alleged factual circumstances that would make it

20   difficult for you to be a fair and impartial juror, the juror

21   answers yes, and then reports that his spouse is the CEO of a

22   nonprofit organization, currently battling false and defamatory

23   allegations.  And then I have some trouble.  It says, with

24   payment being pursued, and then it says, while not textbook

25   extortion, many of the methods employed by the antagonist feel

**K1RMAVEVD2**

1    like a shake down/extortion.  The episode continues and is

2    taking a toll on my wife.  And then the juror also indicates

3    that it would be difficult for him to follow my instruction not

4    to read news accounts about the case and his answer is:  It's

5    potentially difficult because his line of work is investing,

6    and he is constantly tied to news sources, and he says it would

7    be difficult to say whether he could wholly avoid the news.

8         I think the main problem with juror no. 13 is the

9    response to question 4 in which he says that his wife is the

10   CEO of a nonprofit that's involved in litigation that I guess

11   he and his wife regard as a shakedown and that it's imposed a

12   psychological toll on his wife.

13        What do the lawyers think?

14        MR. SOBELMAN:  Your Honor, we see the issue.  We do

15   think it would be worth having the juror be subject to some

16   questioning about the contours and the details of that, but we

17   understand the issue.

18        MR. STABILE:  Your Honor, we believe this juror has to

19   be removed for cause.  There is no rehabilitating this juror

20   with his wife suffering from what he considers an extortionate

21   or semiextortionate threat.  And also the inability to follow

22   the Court's instructions and not pay attention to the news.

23   There are enough jurors who don't have issues like this that we

24   don't think we should keep this juror, your Honor.

25        THE COURT:  I am going to excuse juror no. 13.

**K1RMAVEVD2**

1          Juror no. 14 responds to the question, have you read

2     or seen or heard anything, responds:  Just general information

3     about what occurred from sport media outlets like ESPN, such as

4     the potential fraud and who was involved (Nike and

5     Mr. Avenatti).  The juror says that the juror is willing to put

6     out of his mind what he has read.  So, therefore, I will be

7     questioning the juror further.

8          Juror no. 16 reports that she is in a new job and two

9     and a half weeks would present a difficulty for her.  She goes

10    on to say:  I have heard of him.  I have heard of Mr. Avenatti

11    as a lawyer for Stormy Daniels and also that he may have

12    considered running for president at one time.  She says she is

13    willing to put out of her mind whatever she has read.  So I'll

14    question juror no. 16 further.

15         Juror no. 18, in response to question have you heard

16    anything about Mr. Avenatti, he responds:  I heard that

17    Avenatti was being accused of trying to extort money from Nike.

18    In response to No. 3 he writes:  I have a bias against Nike for

19    the behemoth organization they are and the manner in which they

20    cater to the elite athletes.  The juror also reports that he is

21    the athletic and security director of a local high school and

22    he is responsible for, he says, 2,000 students and faculty on a

23    daily basis and he doesn't have any assistant, etc.

24         What is the government's view?

25         MR. SOBELMAN:  Your Honor, this juror says he can't be

1  fair and provides a compelling or substantive reason for that,

2  and we take that at face value and think this juror should be

3  struck.

4           THE COURT:  What does the defense say?

5           MR. STABILE:  Consent.

6           THE COURT:  Juror no. 18 is excused.

7           Juror no. 19.  Juror no. 19 reports that she has heard

8  about Mr. Avenatti but doesn't have any of the details of the

9  charges against him.  She says she will put out of her mind

10 whatever she has read.  I'll question juror no. 19 further.

11          Juror no. 21 says that she recognizes his name from

12 reading the New York Times, but I don't recall any of the

13 details.  She is also willing to put what she has read out of

14 her mind.  So I will question her further.

15          Juror no. 22 writes at length about the fact that they

16 are a sole proprietor of a business that has no employees.

17 They have travel obligations, specific commitments that can't

18 be rescheduled.  The juror reports that he has seen

19 Mr. Avenatti on television a number of times representing -- he

20 says representing Michael Cohen, if I'm not mistaken.  He is

21 mistaken.  I think he writes he has heard about the case on

22 television, though he doesn't have a specific recollection of

23 Mr. Avenatti's -- I can't read the next word.  The juror says

24 he is willing to put what he has read out of his mind.  I

25 suspect the main problem with juror no. 22 is he goes on at

1    great length about how this would be a hardship on him, given

2    that he is a sole proprietor that has no employees.

3            What does the government say about juror no. 22?

4            MR. SOBELMAN:  We defer to the Court's view on the

5    financial hardship.  We do think that's the only issue at this

6    point.

7            MR. STABILE:  Defense consents based on hardship.

8            THE COURT:  I'll excuse him.  Juror no. 22 is excused.

9            Juror no. 24 reports that she has time-sensitive

10   commitments at work that have to do with ratings of bonds and

11   the length of the trial would make it difficult for her to meet

12   her work commitments.  She is also speaking at a conference in

13   Austin, Texas the third week in February and must submit her

14   slides by February 14.  I would be inclined to speak further

15   with her.  First of all, given the time schedule we have set, I

16   expect the case to be over by the third week in February.  I am

17   going to question her further.

18           Juror no. 25.  Juror no. 25 reports that last year on

19   TV or radio maybe once or twice he heard something about

20   Mr. Avenatti.  He says he also heard that we were picking a

21   jury today.  I'll question juror no. 25 further.

22           Juror no. 27 reports that she heard about Avenatti's

23   name, nothing about the case.  She is willing to put it out of

24   her mind.  So I'll question her further.

25           Juror no. 29.  She says that she has a full-time job

1    and that the other manager she works with is on vacation.  She

2    herself has vacation plans from February 6 to February 11.  And

3    she complains that she was told that the jury service would

4    only last two weeks.  My inclination would be to have her in

5    and talk with her more about the vacation.

6              Does anyone disagree?

7              MR. SOBELMAN:  No, your Honor.

8              MR. STABILE:  Your Honor, if she is not going to be

9    here, I am not sure.  For people, let's say, that they are on

10   vacation, I don't know --

11             THE COURT:  When someone says that they are on

12   vacation I usually explore with them, did you buy tickets to

13   something, are your tickets refundable, etc.  That's my

14   standard.  It may well be that I end up excusing her, but I

15   just feel like I probably need to ask her a few more questions.

16             MR. STABILE:  OK.

17             THE COURT:  Juror no. 31.  Juror no. 31 recalls that

18   Mr. Avenatti represented a woman who was accusing Donald Trump

19   of sexual misconduct.  He says:  I don't have any personal

20   judgment about Mr. Avenatti as a lawyer or as a person, but my

21   impression of him, and this might be only what was promoted by

22   Mr. Trump, is that he is opportunistic.  In response to the

23   question, can you put out of your mind anything you may have

24   read, seen, or heard about Mr. Avenatti, the juror answers no

25   and writes the following:  The fact that Mr. Avenatti has been

1   so visible in the media could possibly be a distraction for me.
2   And in response to question No. 4, would it be difficult for
3   you to be fair and impartial, the juror answers yes.  And then
4   in response to the question, can you follow the Court's
5   instructions not to read about the case, the question is, would
6   that present any difficulty for you, the juror answers yes.
7   And the juror writes:  I'm employed as an associate
8   producer/senior animator at CBS News.  It is possible that if
9   CBS News covers this story that I could be exposed to details
10  of the trial.
11          What do people think about juror no. 31?
12          MR. STABILE:  Consent to excusing this juror.
13          MR. SOBELMAN:  The government agrees.
14          THE COURT:  31 is excused.
15          33.  The juror indicates they have read quite a bit
16  about Mr. Avenatti in connection with his representation of
17  Stormy Daniels.  Also about the charges in this case.  He said
18  that he has followed it as much as he follows regular current
19  events.  He says:  I've also been aware of media accounts of
20  Mr. Avenatti interacting with President Trump.  In response to
21  the question, can you put it out of your mind, he answered no.
22  He writes:  Based on the various accounts that I have read
23  about Mr. Avenatti of his various business dealings, it would
24  be difficult for me to render an unbiased decision solely on
25  the information presented at trial, and he goes on in a similar

1    vain that it would be difficult for him to be fair and

2    impartial.  And then in response to the question, will you

3    follow the Court's instructions not to read about the case, he

4    responds to the question, would it be difficult for you to

5    follow this rule he answers no, but then he writes:  If asked,

6    I would do my best.  However, as my regular job involves me

7    utilizing the Internet, I might accidentally read an account.

8    I would do my best not to.  The juror basically indicates they

9    have read a fair amount about Mr. Avenatti and then it would be

10   difficult for them to make an unbiased decision.

11           What does the government say?

12           MR. SOBELMAN:  We would consent to excusing this

13   juror.

14           MR. STABILE:  Consent.

15           THE COURT:  Juror no. 33 is excused.

16           Juror no. 34.  Juror no. 34 reports that she has read

17   about and seen news stories and Mr. Avenatti himself on TV.  I

18   know that he was the lawyer for Stormy Daniels and that he's a

19   vocal critic of President Trump and the Trump administration.

20   I have followed Mr. Avenatti on social media.  I have also read

21   and heard about this case and the accusations against

22   Mr. Avenatti.  In response to the question, can you put what

23   you have read out of your mind, the juror answers no.  She

24   writes as follows:  I think it would be difficult.  I have

25   read, heard, and seen a lot about this case and feel that I

1   have preconceived notions about Mr. Avenatti's reputation as a

2   high-profile vocal and brash (smart, though) lawyer.  The juror

3   goes on to report that a close family friend works at Nike and

4   the two of them haven't discussed the case or Mr. Avenatti in

5   any way, but as a result of that relationship, she tends to

6   think of Nike as a reputable company, and, accordingly, she

7   feels there must be some truth to the allegations against

8   Mr. Avenatti.

9           Government's view.

10          MR. SOBELMAN:  We would consent to excusing this

11  juror.

12          MR. STABILE:  Consent.

13          THE COURT:  34 is excused.

14          35 reports that she has seen some news reports

15  regarding the case.  That's all she writes.  She says she put

16  it out of her mind.  I'll question her further.

17          Juror no. 36.  Juror no. 36 reports that he follows

18  the NCAA and other sports and is aware of the under-the-table

19  deals by Nike for endorsements and says:  So a case like this

20  is a connection.  In response to the question, can you put what

21  you've read out of your mind, the juror answers no and writes:

22  It would be difficult to put my bias on the college

23  endorsements industry.  I have strong opinions about the NCAA

24  players being paid for their services, and these crimes are

25  upon an unjust system of collegiate athletes.  The juror

1    expresses fairly strong views.

2             What does the government say?

3             MR. SOBELMAN:  The government would consent to

4    excusing this juror.

5             MR. STABILE:  Consent.

6             THE COURT:  36 is excused.

7             37.  37 reports that she has airline tickets and a

8    vacation scheduled for Saturday, February 15, 2020.  That's the

9    only problem.  My inclination, as I've said, is to explore with

10   the jurors whether there is any flexibility and so that's what

11   I am going to do.

12            Juror no. 38.  Juror no. 38 has a vacation scheduled

13   also.  More importantly, juror no. 38 has heard that

14   Mr. Avenatti is accused of extortion, read an article about it

15   on Facebook.  In response to the question, can you put what you

16   have read out of your mind, the answer is no.  And the juror

17   writes:  I have closely watched Mr. Avenatti defend Stormy

18   Daniels on Rachel Maddow.  I feel that I would be biased for

19   Mr. Avenatti.  In response to the question is there anything

20   about the charges in the case or the alleged factual

21   circumstances that would make it difficult for you to be fair

22   and impartial, the juror says yes and writes:  As mentioned

23   previously, I have watched Mr. Avenatti defend Stormy Daniels

24   and feel I may be biased for him.

25            What does the government say?

1          MR. SOBELMAN:  The government would consent to

2   excusing this juror.

3          MR. STABILE:  Consent.

4          THE COURT:  Juror no. 38 is excused.

5          Juror no. 39.  Juror no. 39 reports that she has read

6   an article online about the charges.  She is capable of putting

7   it out of her mind.  In response to the question, is there

8   anything about the charges or the factual circumstances that

9   would make it difficult for you to be fair and impartial, the

10  juror says yes and gives the following explanation:  My opinion

11  on Mr. Avenatti, I don't think he is true to his word.  His

12  other appearances on TV, I think he likes the attention, and he

13  looks all about the money.  And the juror indicates that it

14  would be difficult for her to follow my rules about reading

15  about the case outside of court, and she writes:  My opinion on

16  the defendant is really strong.  I think he is capable of all

17  the charges.

18          What is the government's view?

19          MR. SOBELMAN:  The government would consent to

20  excusing this juror.

21          MR. STABILE:  Consent.

22          THE COURT:  39 is excused.

23          40.  Juror no. 40 reports that he is familiar with the

24  Stormy Daniels case from the news.  He reports that he will put

25  that out of his mind.  There is no other problem, so I will

1    question juror no. 40 further.

2            Juror no. 41.  Juror no. 41 says he is a clinical

3    social worker psychotherapist.  The bulk of his income comes

4    from private practice and it would be a financial hardship.

5    Also mentions that he would not be able to respond to his

6    clients' needs.  With respect to exposure to news reports says:

7    As to news reports that he has paid vague attention.  He was

8    not aware of the specific charges but that it involved some

9    kind of fraud.  He says he can put that out of his mind.  No

10   other issues.  My inclination would be to speak with him

11   further.

12           42.  Juror no. 42 reports that she is employed by New

13   York 1 News as the station's senior manager of news gathering.

14   Beyond media coverage of Michael Avenatti, specific to this

15   case I have monitored coverage of his work with client Stormy

16   Daniels.  In my role at New York 1 I have received documents

17   specific to this case from the Southern District press office.

18   New York 1 journalists have covered Mr. Avenatti at length.

19   New York 1 journalists will likely be assigned to cover this

20   trial.  She says that she can't put out of her mind what she

21   has read and she writes:  I am already familiar with the

22   defendant through my work and do not feel like I can be

23   entirely partial.

24           What is the government's view?

25           MR. SOBELMAN:  The government consents to excusing

1    this juror.

2            MR. STABILE:  Consent.

3            THE COURT:  42 is excused.

4            43.  43 reports that he has read about the case in the

5    daily papers and he has also seen Mr. Avenatti on TV.  He says:

6    I also work at Eyewitness News and have edited stories about

7    Mr. Avenatti.  I think it would be hard to be impartial.  I

8    think that he's guilty.  He goes on to write:  Besides this

9    case, I have read about the Stormy Daniels case and a case

10   involving someone in a wheelchair.  There seems to be a lot of

11   cases where his clients never received any money.  It would be

12   hard to find him innocent.  I could not be impartial.

13           Government's view?

14           MR. SOBELMAN:  The government consents to excuse this

15   juror.

16           MR. STABILE:  Consent.

17           THE COURT:  43 is excused.

18           49.  49 writes:  I know he threatened to tank the

19   stock price of Nike.  I believe there are also domestic abuse

20   allegations that have been against him as well.  There are

21   other problems.

22           Government's view on 49?

23           MR. SOBELMAN:  The government consents to excuse this

24   juror.

25           MR. STABILE:  Consent.

1        THE COURT:  49 is excused.

2        50.  50 reports that her grandmother is dying in

3  hospice, that she will most likely need to travel out of town

4  for funeral services within the next two weeks.  She is also a

5  teacher and the length of the trial would be a hardship for her

6  students and herself.

7        What is the government's view?

8        MR. SOBELMAN:  The government consents to excuse this

9  juror.

10       MR. STABILE:  Consent.

11       THE COURT:  50 is excused.

12       51.  51 writes:  I heard he tried to con money from

13 Nike, says that she can put that out of her mind.  So I am

14 going to question 51 further.

15       54.  54 reports he heard about it on the news, says he

16 is willing to put it out of his mind.  No other problems.  I'll

17 talk with 54 further.

18       55 reports that he is going on a family vacation on

19 February 13.  With respect to the question, have you read

20 anything, he writes:  As a generally famous person,

21 Mr. Avenatti's trial has been written about by both local

22 papers as well as by national sports platforms.  I have read

23 about the allegations on both types of publications, including

24 ESPN, the New York Post.

25       MR. STABILE:  Deadspin.

**K1RMAVEVD2**

1           THE COURT:  Deadspin.  Thank you.  And others.

2           He says he can put it out of his mind.  I think the

3   question is the family vacation.  I'll have to explore that

4   with the juror.

5           MR. SOBELMAN:  Your Honor, I note it's after the time

6   period that we expect the trial to run.  That's after the third

7   week.

8           THE COURT:  The 13th is the third week.

9           MR. SOBELMAN:  It's the Thursday of the third week.

10          THE COURT:  You are quite right.  That might help.

11          MR. STABILE:  Your Honor, we would suggest that

12   between the vacation and his extensive reading about this case,

13   we would move to remove this juror for cause.

14          MR. SOBELMAN:  Your Honor, our view is this person

15   certainly requires follow-up questioning but that there is not

16   a basis to remove the juror at this stage, based on the answers

17   that have been given.

18          THE COURT:  I am going to talk with him further.

19          56 says that they are going on vacation February 21.

20   I don't think that's a problem.  In response to, have you read

21   anything, the answer is yes.  Everything possible.  Heard,

22   read, seen.  Cable, New York Times, Google, social media,

23   willing to put that out of their mind.  In response to the

24   question, is there anything about the nature of the charges in

25   this case or the alleged factual circumstances that would make

1    it difficult for you to be fair and impartial, the answer is

2    yes.  And then in the explanation writes:  Certainly to be

3    explained in detail.  Seems to be a detailed case.  It's hard

4    for me to read what the juror is writing.  In any event, my

5    inclination would be to talk further with the juror to find

6    out, first of all, to confirm with them that they can put aside

7    what they have read and then have a better understanding of

8    what their answer was to question No. 4, much of which I can't

9    read.

10         Juror no. 57 has some financial hardship issues, has

11   read, heard, and seen reports about Mr. Avenatti on the news,

12   online, social media, etc., knew about the charges against him.

13   She says:  I have read and seen allegations being brought

14   against him from a former client who had accusations against

15   President Trump.  I have also read articles regarding these

16   recent criminal charges of extortion against the defendant.

17   She says she can put it out of her mind.  She also writes that

18   in response to the question, is there anything about the

19   charges or the factual circumstances that would make it

20   difficult for you to be fair and impartial, she says yes.  Then

21   she explains:  I previously worked at a company at which Nike

22   was one of our clients.

23         What is the government's view?

24         MR. SOBELMAN:  Your Honor, the government would be

25   inclined to have her come in and clarify some of these issues.

1    We think the only real issues presented in the questionnaire is

2    the financial hardship.  If the Court thinks that's sufficient

3    to excuse the juror now, then the government defers to the

4    Court on that, but on the other issues the government thinks

5    that follow-up questions would be helpful in order to

6    understand what is happening and what she has read or seen.

7              MR. STABILE:  Your Honor, this juror is identifying

8    question No. 2 that she has specific information about one of

9    the other criminal cases against Mr. Avenatti.  That's

10   different than having general knowledge about hearing him in

11   the newspaper where we agree that jurors like that should come

12   in.  When a juror has specific knowledge of criminal cases that

13   have nothing to do with this criminal case, we think that juror

14   should be removed for cause.

15             (Continued on next page)

16

17

18

19

20

21

22

23

24

25

1           THE COURT:  What does the government say?

2           MR. SOBELMAN:  Your Honor, the government just doesn't

3    read it that way.  It is not clear.  It might be the case, it

4    might not be.  A separate issue is whether we are going to

5    excuse anyone who has simply heard about one of the other cases

6    against the defendant, which the government's view is that that

7    alone would not be sufficient, particularly just to find space

8    in a questionnaire.  So the government would be inclined that

9    the Court ask some additional questions.

10          MR. STABILE:  But it is not just that.  Nike is also

11   one of her clients.  She has a hardship.  I mean, there are

12   multiple factors, but as to question 2, that is one specific

13   factor.  But looking at the questionnaire in total, we think

14   this juror should be excused for cause, your Honor.

15          THE COURT:  I agree.  I think, first of all, there are

16   multiple problems with this juror, but what she brings to the

17   table, which I'm not sure I've seen in any other questionnaire,

18   is knowledge of the other criminal case pending in this

19   district against Mr. Avenatti.  So I'm excusing Juror No. 57.

20          Juror No. 58.  Juror No. 58 basically doesn't know

21   anything more than what I said in the introduction this

22   morning, says that he could put it out of his mind.  So I'LL

23   question Juror No. 58 further.

24          Juror No. 59 just writes "financial hardship" with no

25   explanation.  Then writes that they have read about the

1  accusations in social media and seen reference to them on TV.

2  Then the juror writes, in response to question 3, would you be

3  able to put it out of your mind, the juror says no, and writes,

4  "Mr. Avenatti doesn't seem credible.  I have a difficult time

5  believing him.

6          Government's view?

7          MR. SOBELMAN:  Your Honor, we consent to excusing this

8  juror.

9          MR. STABILE:  Consent.

10          THE COURT:  59 is excused.

11          60.  So there are a couple of ambiguities on 60, and

12  it is hard to know what the person meant.  In response to the

13  question number 1, would the schedule for the trial be a

14  problem, he checks off "yes" but also circles "no," so I guess

15  "yes" was a mistake.  I don't know.

16          And then similarly with respect to question 4, started

17  to write that their father consulted for Nike, then scratched

18  that out and writes that they retract the statement.

19          Anyway, I don't think there is a problem with this

20  juror.  I just need to ask some questions.

21          Juror No. 61.  Juror No. 61 writes, "I may potentially

22  be getting a job offer that would require me to start in

23  February.  With the potential length of this trial, it would be

24  difficult to make that commitment and give proper two weeks

25  notice to my current employer."

1              So I'm going to talk further with Juror No. 61.

2              Juror No. 63 saw TV reports that Mr. Avenatti tried to

3     extort money from Nike.  He'll put that out of his mind.  So

4     I'll question her further.

5              Juror No. 27.

6              MR. STABILE:  I'm sorry.  Did you say Juror No. 27?

7              THE COURT:  I'm sorry.  I don't know why I said that.

8     64.  Sorry.  Juror No. 64, Brian Cohen.

9              Juror No. 64 is orthodox, needs to be home early on

10    Fridays.  Writes that he has been following the matter in The

11    New York Times, Wall Street Journal and mainstream media.  "I'm

12    also familiar with the defendant's representation of Stormy

13    Daniels and followed that matter carefully."  The juror says he

14    can put that out of his mind.  Then the juror says that he

15    could be fair and impartial, but then writes:  "I need to

16    confirm that I don't have a conflict.  I need to confirm that

17    my law firm does not represent Nike or any of it's affiliates

18    in a related matter."

19             And then, finally, the juror says that it would be

20    difficult to follow the rules about not reading about the case

21    because he commonly reads the paper, but then he writes:  "I

22    won't be able to avoid exposure to the case."  I don't

23    understand that.  I really don't understand that.

24             So my inclination is to have him in and talk with him.

25             MR. RICHENTHAL:  I think that's right.  I would just

1    also note, I cannot speak to the contours of this person's

2    religious observance, but, generally speaking, sundown these

3    days is after 5 p.m. and obviously will be coming a minute or

4    two later each evening, so I don't think that is an issue.  But

5    we agree, his arguments with respect to the media question

6    would need to be explored.

7              MR. STABILE:  We think the juror should be excused for

8    cause, your Honor, only because of question number 5, where the

9    juror says, "I won't be able to avoid exposure to the case."  I

10   understand there is some ambiguity, but that last statement

11   seems clear that the juror doesn't think he would be able to

12   follow the Court's instructions.

13             THE COURT:  Yes.  What I'm saying is I don't

14   understand that this person's a lawyer.  I'm going to tell them

15   you can't read the paper about the case.  They can't follow

16   that?  So if they're going to tell me they can't follow that

17   instruction, I'm going to need to explore that.  I'm going to

18   need to understand why a lawyer cannot follow a judge's

19   instruction not to read stories about the case because I don't

20   understand that.  So I'm going to be pursuing that further with

21   the juror.

22             Juror No. 65 says that she read several months ago

23   something about the case on a local news program.  She says she

24   could put it out of her mind, so I'll confirm that with her

25   tomorrow.

1              Juror No. 66.  Juror No. 66 reports that her

2   94-year-old father is being recognized by the State of Alabama

3   on February 6th, and that it would be necessary for her to

4   leave on February 5th to get to Birmingham for the celebration.

5              What do people say about Juror No. 66?

6              MR. RICHENTHAL:  I would note that February 5th is the

7   middle of the second week of trial.  I think something like

8   someone's 94th celebration of some kind seems sufficiently

9   unique that we would consent to excusing this juror.

10              MR. STABILE:  We agree.  Consent.

11              THE COURT:  66 is excused.

12              68 reports that he's a middle school teacher, missing

13   two-and-a-half weeks would have a negative effect on his

14   students.  In response to the question can you follow the rules

15   not to read about the case, the juror writes it would be

16   difficult and says:  Have difficulty?  Sure.  It would

17   certainly be a temptation to research.  I would hope, however,

18   to overcome those temptations."

19              So I'm inclined to speak further with Juror No. 68.

20              69 has an important business meeting the week of

21   February 3rd.  It sounds like it is a monthly meeting.  In

22   response to question number 4 about whether there is anything

23   about the nature of the charges or the alleged factual

24   circumstances that would make it difficult for you to be fair

25   and impartial, the the juror answered yes and writes:  "I don't

1   have specific details about this particular case.  However,

2   I've read similar other cases on the Internet.  These cases

3   sound very similar/related."

4            So my inclination is to speak further with Juror No.

5   69.

6            74 has a trip to Florida planned on

7   February 10th through 12th.  She also needs to be home on

8   Friday afternoon before sunset.  So the problem with her is the

9   trip to Florida.  So my inclination will be to talk to her more

10  about that.

11           Juror No. 75 writes that he saw on TV that

12  Mr. Avenatti was involved in Nike payment scandal, also read

13  about it on the Internet, has also seen Mr. Avenatti on TV in

14  connection with other cases.  "I have followed the case of

15  payments and have followed the resulting convictions by plea to

16  several assistant coaches."  So it sounds like the juror has --

17  the juror followed the Adidas case, that's what it sounds like.

18           In response to the question can you put out of your

19  mind what you've seen, answers:  "no.  Saw extensive coverage

20  of Mr. Avenatti.  Most cast him in a negative light.  Hard to

21  eliminate familiarity with information."

22           what is the government's view?

23           MR. RICHENTHAL:  In light of the answer to number 3,

24  we consent to excuse this juror.

25           MR. STABILE:  Consent.

1             THE COURT:  75 is excused.

2             76 says she's a senior partner in an optician

3   business.  There are only two people that work there.  It would

4   create a serious hardship.

5             In response to "Anything about the nature of the

6   charges and the factual circumstances make it difficult for you

7   to be fair and impartial," answer "Yes."  She writes, "I

8   personally met and have a great deal of respect for Laker

9   legend Kobe Bryant who recently died in a helicopter crash in

10  California.  The possibility that Mr. Avenatti could have

11  extort money and blackmail Nike for alleged payment to highly

12  ranked high school basketball prospects is very bothersome to

13  me and I'm not sure I could be impartial."

14            And then in response to the question will you follow

15  the court's rules, would it be difficult for you, answers

16  "Yes," and the explanation is:  "Because I am a naturally

17  curious person who loves to read and learn as much information

18  as possible."

19            What does the government say?

20            MR. RICHENTHAL:  I think in light of the content of

21  this person's answers, further exploration would be

22  appropriate.  That said, we've consistently taken the view that

23  if someone says that he or she can't be impartial, we do not

24  object to excusing that juror, so we're not going to change

25  that view here.  But these answers do seem different, much more

1  general, frankly not entirely responsive to the questions, and

2  we think if an exception were to be made, this is probably the

3  juror for whom it should be made.

4         MR. STABILE:  Your Honor, we think this person should

5  definitely be excused for cause.  Question number 4, she

6  responds:  "I am not sure I could be impartial."  And then

7  she's saying she is a naturally curious person.  We just -- I

8  don't think there is any rehabilitating this person further.

9         THE COURT:  Look, let me say that I suspect what's

10  really going on here is the juror doesn't want to serve.

11  That's what I actually think is going on.  But the answers are

12  the answers, and they raise a significant question in my mind

13  as to whether the juror is willing to follow the Court's

14  instructions and for that I'm going to have to excuse her.  So

15  76 is excused.

16         77.  77 reports that she works in political media.

17  She has been following the case since it first broke.  She

18  understands from media reports Mr. Avenatti attempted to

19  blackmail Nike for $22 million in exchange for not pursuing a

20  case against Nike's payments to the high school athletes.

21         She writes, in response to the question can you put it

22  out of her mind, she says no.  And she writes, "As I said, I

23  work in political media.  Michael Avenatti is a controversial

24  and unethical person.  His association with Stormy Daniels was

25  a ticket to stardom for him, and CNN was eager to help him to

1  become a media darling because of his attacks on President

2  Trump.  He started to believe his own hype and thought he was

3  above the law."

4          And then she writes that she's married to a TV

5  reporter and it would be impossible for her to completely

6  insulate herself from the news.

7          Government's view?

8          MR. RICHENTHAL:  We of course consent to excluding

9  this juror.

10         MR. STABILE:  Consent.

11         THE COURT:  77 is excused.

12         79.  79 writes that she has read and seen things on

13 the Internet and on TV about Mr. Avenatti.  She doesn't recall

14 the details of the charges but remembers that he was Stormy

15 Daniels' lawyer when she came forward with her Trump stories.

16 And then she writes:  "And then I feel like they had a public

17 falling out, where she may have accused him of ... unfavorable,

18 if I recall."

19         So she has some recollection that while Mr. Avenatti

20 represented Stormy Daniels, the relationship ended and she then

21 made accusations against him.  She does say she's willing to

22 put that out of her mind.

23         What's the government's view?

24         MR. RICHENTHAL:  We think this juror should be

25 questioned further.  She not just says that she can put this

1    out of her mind, it is not clear what is in her mind.  She uses

2    the word "unfavorable," which is obviously not a positive word,

3    but it is a reasonably modest negative word.  She doesn't seem

4    to recall the nature of what the falling out was.  This seems

5    like precisely the kind of juror for which we just need more

6    information in order to make an informed decision.

7              MR. STABILE:  Your Honor, for the same reason as the

8    previous juror who had specific information about a number of

9    cases involving Mr. Avenatti, we think that this juror should

10   be excused for cause.

11             MR. RICHENTHAL:  This is --

12             THE COURT:  There are obvious differences.  So the

13   juror that we discussed previously clearly had knowledge of the

14   second criminal case.  This one doesn't indicate that she does.

15   So I agree with the government that it requires more

16   questioning.

17             Juror No. 80.  Juror No. 80 says:  "I have an

18   appearance in this court, Southern District of New York, as an

19   attorney on February 7th that I would have to seek to adjourn

20   or seek counsel to cover for me."

21             I don't think that is going to be a problem.

22             As to whether the juror has read anything about

23   Mr. Avenatti, writes:  "I don't recall much.  The introduction

24   here refreshed my recollection that I have heard or read about

25   the allegations."  The juror reports that he will put out of

1  his mind whatever it is that he did read.  So I will bring him

2  in to question him further.

3          Juror No. 81 writes, among other things, that:

4  Michael Avenatti is a notorious scumbag who is willing to do

5  anything, including lie and cheat, in order to enrich himself

6  and gain public attention."

7          Government's view?

8          MR. RICHENTHAL:  This juror should be excused.

9          MR. STABILE:  Consent.

10          THE COURT:  81 is excused.

11          82.  82 reports that he has evening classes at

12  Westchester Community College every Tuesday at 6.

13          As to whether he has read anything about Mr. Avenatti,

14  he says:  "all I've read about him is that he's a lawyer who

15  defended a woman that brought suit against the President of the

16  United States."  the juror is willing to put that out of his

17  mind.  No other problems.  So I'll speak further with Juror No.

18  82.

19          83.  She says that she runs a nonprofit.  She can't be

20  out for two-and-a-half weeks.  She has read about Mr. Avenatti

21  in The Times.  She will put it out of her mind.  So I'll talk

22  further with Juror No. 83.

23          84 says that he heard on the news Mr. Avenatti

24  attempted to extort money from Nike.  He will put it out of his

25  mind.  No other issues.  I'll speak with him.

1              Juror No. 85 says that she has some medical
2    appointments coming up.  Also, she has heard over the news the
3    allegations against Mr. Avenatti.  She said, "I have come to a
4    strong opinion as to his character going back prior to this
5    case, when he was representing Stormy Daniels."  She feels that
6    he is not an upstanding individual and that he is a
7    grandstander.  She writes, "In my opinion, he should not
8    practice law any further."  She goes on and on.
9              The government's view on 85?
10             MR. RICHENTHAL:  85 should be excused.
11             MR. STABILE:  Consent.
12             THE COURT:  85 is excused.
13             86.  86 says that she's required to return to work in
14   Los Angeles.  As to what she's read, she said she's read
15   extensive reporting from the New York Times, the LA Times, The
16   Wall Street Journal, other TV and print media.  She writes, "I
17   understand him to be a lawyer who represented Stormy Daniels in
18   a case against President Trump."  She writes, "I also
19   personally hold opinions about his character and his work.  I
20   have read and watched many pieces of media regarding this case
21   and have already formed an opinion."
22             She writes further:  "I'm familiar with and hold
23   strong beliefs about all of the involved parties.  I'm a former
24   NCAA athlete.  I own many Nike products and have a firm brand
25   loyalty for multiple personal reasons."

1            goes on to write:  "I have strong opinions about the

2    defendant.  I have thousands of dollars invested in Nike."

3            the government's view?

4            MR. RICHENTHAL:  We have some concern that this person

5    is trying to get out of jury service.  However, in light of the

6    content of the answers, we believe this juror should be

7    excused.

8            MR. STABILE:  Consent.

9            THE COURT:  86 is excused.

10           88.  88 writes:  "I saw him interviewed on CBS about

11   Stormy Daniels and subsequently heard about federal charges

12   against him, but I don't remember the specifics of the news."

13           No other problems.  I'll speak further with Juror No.

14   88.

15           Juror No. 93.  In response to the question what have

16   you read or seen about Mr. Avenatti, she says:  "Can't remember

17   details.  I remember hearing something about it."  Says she'll

18   put it out of her mind.  Tells us that she wears Nikes.  I'll

19   speak further with Juror No. 93.

20           Juror No. 94 teaches full-time high school, part-time

21   at CUNY, worried about missing classes, is a sports fan, heard

22   that Avenatti was charged with some kind of extortion attempt,

23   is prepared to put it out of his mind.

24           So the main problem I think is the conflict with his

25   work.  I'll have to pursue that with him further.  He will

1    likely be excused given his work obligations.

2            What are the lawyers' views on him, Juror No. 94?

3            MR. PODOLSKY:  Your Honor, I'm sympathetic to the

4    hardship here.  On the other hand, we are looking for a

5    cross-section of jurors, and I am a little reluctant to say

6    that just because someone is a teacher, they should be excused

7    out of hand.  So I would inquire further.  But I do understand

8    there is a hardship concern here.

9            MR. STABILE:  Your Honor, we think it is so likely

10   that he's going to be excused anyway tomorrow, we might as well

11   excuse him.

12           THE COURT:  I don't disagree with you but I will

13   question him further.  It does seem like I will end up excusing

14   him, but I will ask him more questions.

15           Juror No. 95 writes that he has a five-day trip coming

16   up in about a week.  The trip is nonrefundable.  As to stories

17   that he's read, he writes:  "I've seen many stories that

18   painted Mr. Avenatti once presumed to be innocent to now be

19   guilty based on new evidence.  I've also seen coverage that is

20   most often negative when it comes to his past client Stormy

21   Daniels and her claims against Donald Trump."  He goes on to

22   write:  "It would be nearly impossible to put this behind me

23   after years of media exposure to Mr. Avenatti, his clients, and

24   the multiple allegations against him for this case and others."

25           Government's view?

1          MR. PODOLSKY:  I believe that this person doesn't want

2     to serve on this jury and I am reluctant to reward that, but it

3     does seem nearly impossible to think that person will be

4     rehabilitated.

5          MR. STABILE:  Consent.

6          THE COURT:  95 is excused.

7          96.  96 reports that she's leaving for a business trip

8     on the 17th of February.  That doesn't seem like a problem.  So

9     I'll just speak to her about that.

10         In response to question number 4, which is, "Is there

11    anything about the nature of the charges or the alleged factual

12    circumstances that would make it difficult," doesn't answer yes

13    or no, writes:  "Not sure.  My husband is a lawyer and a close

14    friend from business school, works in finance at Nike.  I don't

15    know anything about this case, though.  She has never mentioned

16    it."

17         So I'll speak further with the juror.

18         Juror No. 97 reports:  "I've read several articles

19    online regarding the charges against the defendant.  I've also

20    read many articles and have seen Michael Avenatti speak on the

21    TV regarding the Stormy Daniels case versus Donald Trump."

22         Also writes:  "I was inundated with items in the press

23    regarding Mr. Avenatti's representation of Miss Daniels, but I

24    think it highly unlikely that the image I have of Mr. Avenatti

25    will not cloud my judgment in this" case -- "in this matter no

1    matter how hard I try to ignore it."

2            Government's view?

3            MR. PODOLSKY:  Candidly, your Honor, I don't think

4    this answer is actually sufficient to strike for cause, but he

5    does say that he can't follow the Court's instructions and I

6    don't want to waste everyone's time, so we would defer to the

7    Court on this juror.

8            MR. STABILE:  Your Honor, we believe this juror really

9    should be removed for cause just based on question number 3,

10   that the juror believes that the image he has of Mr. Avenatti,

11   it is unlikely that that won't cloud his judgment no matter how

12   hard I try to ignore it.  It just -- we think this juror should

13   go for cause.

14           THE COURT:  I will excuse Juror No. 97.

15           Juror No. 98 has a family vacation booked starting on

16   February 8th.  Is also going to Austin, Texas.  Says it will be

17   extremely difficult on his wife if she has to take their two

18   young kids by herself.

19           That's the only issue.  What do the lawyers think?

20           MR. PODOLSKY:  Well, your Honor, we have taken the

21   approach of questioning about vacations.  I will say this is

22   fairly concrete, so it is hard to imagine how this person is

23   going to be able to serve on the jury.  So this one we wouldn't

24   object to removing, but if your Honor thinks it is worth

25   questioning, of course that's fine for the government as well.

1          MR. STABILE:  We would join that this does seem very

2    specific and concrete and it is so unlikely that this person

3    would be able to change their plans that we agree this juror

4    should be removed for hardship.

5          THE COURT:  Yes, it doesn't sound like somebody who is

6    trying to come up with an excuse.  It sounds like a trip that

7    has in fact been planned and there are two young children

8    involved, and it just seems highly unlikely that after speaking

9    with the person I'm going to keep them here.  So I think what

10   I'm going to do is excuse Juror No. 98.

11          Juror No. 99 writes that she recalls seeing

12   Mr. Avenatti from the Stormy Daniels case, saw him on

13   television on talk shows, and she has a recollection of other

14   allegations made against him independent of the Stormy Daniels

15   case.  She is willing to put that out of her mind.

16          So I'm going to have her come in.  I'm going to ask

17   her more about what she recalls seeing about Mr. Avenatti.

18          Juror No. 100.  Juror No. 100 writes that she is a

19   teacher of first grade.  Two-and-a-half weeks away from her

20   class, she says, is too long an absence and would have a

21   negative effect on her students.

22          In response to whether there is anything about the

23   charges or the factual circumstances that would make it

24   difficult for her to be fair and impartial, she answers yes.

25   Then she writes:  "I do not have a lot of knowledge in business

1  situations, laws, economics, extortions, etc."

2          I mean, the problem is I can't excuse every teacher.

3  I mean, I don't necessarily disagree that for a teacher to be

4  away from her class for two-and-a-half weeks is going to have a

5  negative effect on the class.  I suspect that's true, sadly.

6  But I can't excuse every teacher on that basis.  So my

7  inclination is to have her come in and talk with her.

8          Juror No. 101, in response to question 4, "Is there

9  anything about the charges or the factual circumstances that

10 would make it difficult to be fair and impartial," she answers

11 yes, and writes:  "I knew of a person who have faced similar

12 circumstances," and also indicates that they's have trouble

13 following the rules about not reading about the case.  And

14 writes:  "I find it difficult to follow these rules based on

15 the fact that the news is frequently played everyplace I

16 attend, along with people I know that will discuss around me

17 what they have seen and heard."

18         So I'll have the person come in and talk to them about

19 their issues.

20         102.  102 writes that she has chronic back pain, is

21 concerned about whether she can sit, but she is willing to make

22 an effort.  I think we can do things to accommodate her.  I

23 have had other jurors that have had back problems.  We take

24 breaks when necessary, and if they find it more comfortable to

25 stand for a bit, they can do that, too.  So I'm confident we

1    can address Juror 102's problems.

2            Juror No. 103 says that they're leaving the country

3    February 8th, cannot be changed.

4            I'll have to talk with Juror No. 103.

5            105.  105 has some kind of I guess maybe -- maybe

6    medical exams, I don't know.  She says she's studying for

7    boards currently and will be scheduled to take exam next month.

8            I'll have to talk with her about that.

9            Juror No. 106.  Juror No. 106 says that she's

10   self-employed, has to watch the markets closely throughout the

11   day.  She's a private investor.  Her income depends on the

12   markets.  Two-and-a-half weeks being away from her business

13   would subject her to risk given the current volatility in the

14   market.  She writes, "Loss of income would be a major setback

15   for me."  She writes, "I've been doing this for many years and

16   I've never been away for two-and-a-half weeks.  I'm a one-woman

17   show only."

18           In response to the question have you read anything,

19   she answers yes.  She writes, "His name has come up in a social

20   gathering, and the people who were present there talked about

21   his personal business dealings."

22           Would she be able to put out of her mind what she has

23   heard?  She answers no.  Then she writes:  "I'm not sure I

24   could have been exposed to certain biases."

25           In response to, "Is there anything about the nature of

52

1    the charges or the factual circumstances that would make it

2    difficult to be fair and impartial," she writes, "Yes."  Then

3    she says, "I'm not sure but, as I said, his name was a topic

4    brought up in a social gathering.  I could have been exposed to

5    certain biases about him."

6          What does the government think about 106?

7          MR. PODOLSKY:  This potential juror is being very

8    introspective in acknowledging that she can't be aware of all

9    of her own biases, but I don't think that is a sufficient basis

10   to strike her for cause.  I think we need to follow up with

11   some questions.  She hasn't actually identified any reason that

12   she can't be fair or impartial in this case.

13         As far as the hardship, I just think it is nonspecific

14   and requires additional questions.

15         MR. STABILE:  Your Honor, this juror writes quite

16   extensively in question number 1 about financial hardship.  But

17   if that were not enough, question 3, the juror indicates that

18   she could not follow the Court's instructions to put such

19   information completely out of her mind inside the case based

20   solely on the evidence presented at trial, and then does seem

21   to equivocate and write "I'm not sure."  And for question 4

22   also writes, "I'm not sure as to whether there is anything

23   about the nature of the charges that would make it difficult to

24   be a fair and impartial juror."  I mean, this type of

25   equivocation, coupled with the financial hardship, we think

1  makes this juror unqualified to serve, and we move to dismiss
2  this juror for cause.
3          THE COURT:  Yes.  I don't find persuasive her very
4  vague suggestion that she was exposed to something.  Whatever
5  it was she was exposed to, she can't even tell us what it is.
6  So I'm actually not convinced she was ever exposed to anything.
7  She certainly doesn't want to sit because she feels like it
8  would interfere with her business.  I think I'm going to have
9  to have her come in and ask her more questions.
10         107 writes:  "Generally familiar with name.  No
11 details, though.  Zero knowledge of Nike-related allegations or
12 any other criminal allegations."  So I'll bring in Juror No.
13 107 to talk further, but I don't see any problems with that
14 juror.
15         108 has a flight on Friday, February 1st, go out of
16 town for the weekend.  She says she could try to push it back
17 if the case goes longer.  She is also scheduled to leave the
18 country on vacation February 21.  I don't think that will be a
19 problem.
20         As to what she's read, she writes:  "I've read some
21 top-line headlines and quick summaries about the Nike story,
22 but was not aware of Michael Avenatti specifically or the exact
23 charges I read from a variety of news sources."  She is willing
24 to put that out of her mind.  So I'll bring her in and talk
25 further with her.

1              109.  109 writes:  "I've read newspaper accounts and
2      television reports of this case specifically and of
3      Mr. Avenatti generally."  When asked whether he can put what he
4      has read out of his mind, he answers no and writes:  "That
5      would be challenging given the preconceived ideas and views
6      that I have based on the media accounts of this case."  I won't
7      attempt to be -- "I would attempt to be impartial but it would
8      likely be challenging."

9              The juror goes on to write, in response to the
10     question, "Is there anything about the nature of the charges or
11     the factual circumstances that would make it difficult for you
12     to be fair and impartial," the juror answers yes, and writes:
13     "In addition to seeing media accounts of this case and of
14     Mr. Avenatti, which I have noted previously, I am a registered
15     AAU basketball coach.  I've coached AAU basketball
16     intermittently for the past seven years.  My experiences and
17     observations about AAU and youth basketball generally may make
18     it challenging for me to be an impartial juror."

19             Government's view?

20             MR. PODOLSKY:  I think this is an appropriate strike
21     for cause, your Honor.

22             MR. STABILE:  Consent.

23             THE COURT:  Juror No. 109 is excused.

24             110.  He says that he read the newspaper reports when
25     the story broke in March 2019 and that he reads most stories

1    regarding Nike.  He goes on to write:  "I have biases towards

2    Nike.  I believe Nike is very unethical when it comes to making

3    their products, but this does not stop me from purchasing those

4    products and supporting the company.  I also have difficulty

5    taking preconceived notions out of my mind.  I also find it

6    very believable that a lawyer would try to extort money from a

7    corporation like Nike."

8              In response to the question, "Is there anything about

9    the nature of the charges or the factual circumstances that

10   would make it difficult for you to be fair and impartial," the

11   juror answers:  "Yes, I have preconceived notions that he is

12   guilty from what I previously read."  Also says it would be

13   difficult for him to avoid reading materials about the case.

14             Government's view?

15             MR. PODOLSKY:  There is a little something for

16   everyone here, but I think this juror should be struck for

17   cause.

18             MR. STABILE:  Consent.

19             (Continued on next page)

20

21

22

23

24

25

1          THE COURT:  110 is excused.

2          113.  113 reports that she is a busy physician, has

3    patients scheduled for the next two weeks, and then she is

4    going to be on vacation February 17, February 21.  She has read

5    about the case.  She says she has seen things on the TV news

6    about the charges involving Nike and about Mr. Avenatti's

7    representation of Stormy Daniels, as well as occasional TV

8    interviews of him.  My inclination would be to question her

9    further.

10         114.  114 is an attorney that reports that he is

11   engaged in matters across the State of New York.  Also that he

12   has been exposed to very general information about his arrest

13   and the charges, nothing specific.  I'll bring the juror in and

14   talk more with them.

15         Juror no. 115 reports that two and a half weeks would

16   be a lot of work to miss.  As to what she has read writes:  I

17   have read some New York Times reporting on the matter.  I don't

18   remember the particulars.  I'll speak fourth with the juror.

19         Juror no. 117 reports that the juror has plane tickets

20   to Greece for a 30th anniversary.  Can't be postponed.  Reports

21   that they work as a teacher and there is a set week of vacation

22   in February.  I assume this is President's week, meaning the

23   week of February 17, so it should not be a problem.  But I will

24   confirm that with the juror.  As to what the juror has read,

25   the juror writes:  I only have heard general information about

1   payments paid to basketball prospects.  I'll talk with the

2   juror about the trip to Greece.  The juror also did not answer

3   question No. 4.  I will pursue that as well.

4          Juror no. 118.  Juror no. 118 reports that he has a

5   pending criminal case in the Bronx.  That's in response to the

6   question, would you have any problem sitting from 9:30 to 5

7   every day.

8          What do people think I should do with juror no. 118?

9          MR. PODOLSKY:  Your Honor, I suppose it is somewhat

10  nonspecific, and we can ask him further.  I do think if he has

11  criminal appearances in the Bronx during the pendency of this

12  trial, it may make it difficult for him, A, to attend and, B,

13  to focus on the charges here.  But it is not totally clear what

14  the schedule is there.

15         Frankly, I don't really see a real particular chance

16  that this person is going to serve on this jury, though.

17         MR. STABILE:  We agree.  This is a little vague.  We

18  might as well bring him in.

19         THE COURT:  Juror No. 119 reports that she is a

20  clinical psychologist with responsibility for patients.

21  However, if she were selected, she would make the necessary

22  arrangements.  I don't see any issue with her.

23         Juror no. 120, concern about child care.  With respect

24  to what she has read, is aware of his prior representation of

25  Stormy Daniels, is aware of the current fraud allegations.  In

1    response to the question about whether she could put out of her

2    mind what she has read, She answers no.  She writes:  I would

3    make my best effort to follow the Court's instruction.

4    However, I cannot 100 percent guarantee that my prior knowledge

5    would not impact my thought process when deliberating.

6            So the juror has a five-year-old child.  That's her

7    child care obligation.  And she is worried about whether she

8    can find someone to pick up the child from school for the

9    entire two and a half week period.

10            What does the government say?

11            MR. PODOLSKY:  Your Honor, I think this potential

12    juror should be brought in for further questioning.  I can see

13    the potential hardship.  It's not clear from the answer,

14    though, whether it will be a hardship or to what degree.

15            As far as the response regarding question 3, I see

16    answers like this before.  I don't think the right standard is

17    whether she can 100 percent guarantee that it would not impact

18    my thought process.  I think the question is whether she can be

19    fair and impartial.  We are not asking a guarantee of anything.

20    I think she should be brought in and asked if she can be fair

21    and impartial in this case.

22            MR. STABILE:  Your Honor, she is being asked the

23    question in question 3.  In light of what you may have read,

24    seen, or heard about Mr. Avenatti, would you be able to follow

25    the Court's instruction and put any such information completely

1    out of your mind and decide this case based solely on the

2    evidence presented at trial.  She marks no and then says:  I

3    cannot 100 percent guarantee that my prior knowledge would not

4    impact my thought process when deliberating.  But as a juror I

5    disagree.  She does have to 100 percent guarantee.  If she were

6    to give this answer, your Honor, during live voir dire, she

7    would not be sitting as a juror, and there is no rehabilitating

8    her based on this answer.  She is telling the Court, she is

9    being honest that she cannot guarantee her impartiality to this

10   Court.  She cannot be a juror for that reason.

11          THE COURT:  I will question her further.

12          Is there anything else that we should discuss before

13   we break for the evening?

14          MR. PODOLSKY:  Not for the government, your Honor.

15          MR. S. SREBNICK:  May I inquire.  I think the

16   government, we have a couple of matters that we need to try to

17   work out, one being the California bar, the expert type issue,

18   and then the financial issue with Mr. Regnier.  I think we are

19   going to talk further about that.  I have to talk with

20   Mr. Avenatti.  I have to review in more detail the written

21   submission from the government this morning, which I have not

22   had a chance to digest and speak with him.

23          My question would be to the Court and really I guess

24   to the government is, how soon is that issue going to need to

25   be resolved?

1           THE COURT:  Which issue?

2           MR. S. SREBNICK:  Both the California bar and the

3    financial issue, because there is limited time and we need to

4    talk about it.

5           MR. RICHENTHAL:  Taking them in order, with respect to

6    the California bar, Mr. Sobelman had a prior court obligation

7    and he is the one opening.  I'm confident, I think, in what I'm

8    about to say.

9           I don't believe he intends to open with respect to any

10   matter relevant to the California bar.

11          My understanding is he does intend to open in a

12   limited manner with respect to Mr. Avenatti's debts consistent

13   with what your Honor has ruled is clearly coming in.  The

14   contours of that, I recognize the margins may change.  I don't

15   think he is going to approach those borders.

16          If what Mr. Srebnick is really asking is witness

17   order, we are not entirely sure past the first few, although we

18   have a pretty good sense.

19          What I would propose is that we confer with the

20   defendant, as we have done generally productively, and make

21   sure that things are teed up as they come in.  I think both

22   parties have done a pretty good job trying to do that.

23          MR. S. SREBNICK:  Fair enough.

24          THE COURT:  Anything else?

25          MR. PODOLSKY:  Schedule for tomorrow, your Honor.  110

1    at 10 a.m. again?

2              THE COURT:  I told the jury to be there at 9:30, so we

3    are going to actually start at 9:30.

4              Just to be clear, we will begin by addressing the

5    jurors whose questionnaires has raised questions.  The ones we

6    talked about today that we didn't excuse, I am going to speak

7    with them individually one by one.  That's going to take a

8    while.  And once we complete that, we will pick up with the

9    regular voir dire.

10             MR. H. SREBNICK:  Your Honor, question.  We read your

11   order, but some of us have not had the experience of how you

12   have us apply peremptory challenges.

13             THE COURT:  The government gets six.  The defendant

14   gets 10.  I will qualify all the panel members that have

15   survived this process, and then I will hear any additional

16   challenges for cause up at the bench, and I will rule on those

17   challenges.  And then I will tell the jury that we are going to

18   take a break for about 15 minutes or so, and then I will ask

19   the lawyers to prepare their list of the jurors against whom

20   they wish to exercise peremptory challenges.  So the defense

21   will prepare a list of 10, the government will prepare a list

22   of six.  Those lists will be submitted simultaneously.  I will

23   then read to the lawyers who has been excused.  We will agree

24   on who are the 12 lowest numbered jurors that have survived

25   that process, and then we will turn to the selection of

1    alternates.

2            We are going to be choosing three alternates.  Each

3    side has one peremptory challenge.  So it will be the same

4    process.  You will figure out the one peremptory challenge you

5    have as to alternates, and you both will submit a piece of

6    paper that has the number of that juror on it, and I will tell

7    you who has been excused, and we will agree upon who are the

8    next three lowest number jurors, and they will be our

9    alternates.

10            MR. H. SREBNICK:  Does the Court permit any lawyer

11   voir dire?

12            THE COURT:  No.

13            MR. H. SREBNICK:  Question from the defense table.  If

14   there is overlap in the challenges, so -- I am not great at

15   math, but it could be that defense proposes 10 and they turn

16   out to be the same as the six government.

17            THE COURT:  Which has never happened and is highly

18   unlikely to happen here.  Anyway, the answer is, it has no

19   effect.  It just means the juror is excused by both sides.

20   That's all.  It will have no effect other than that.

21            Anything else?

22            MR. H. SREBNICK:  That's it, Judge.  Thank you.

23            MR. PODOLSKY:  Sorry.  I don't want to belabor this.

24   My understanding is we are going to end the trial day at 4:30.

25   One thing I note about the large courtroom downstairs, there

1   are no witness rooms or breakout rooms for the parties.  In my

2   experience, that often causes the longer breaks.  I was just

3   trying to get a sense of what the Court intends to do so we can

4   prepare our witnesses in terms of breaks and lunch breaks and

5   so on.

6           THE COURT:  We will take a break usually around 11,

7   11:15, something like that.  It will be probably 15 minutes,

8   and then we will break at 12:45 or so.  We will take an hour

9   for lunch, and then we will resume and take a break around 3:15

10  or 3:30, and then we will go until 4:30.

11          MR. PODOLSKY:  Thank you very much, your Honor.

12          MR. STABILE:  Can I ask one more procedural question,

13  your Honor.  The order that the jurors are in, their juror

14  numbers, do they remain in that order or is there going to be

15  another reshuffling?

16          THE COURT:  What is going to happen, I think, and I

17  don't have my deputy here and he is the one that really does

18  this, but I think what we are going to do is, he will seat the

19  jury tomorrow and then we will fill in -- we won't be in this

20  courtroom.  We will be downstairs.  There are three rows of

21  seats downstairs and so he will fill in all those rows.  So

22  there will be no openings.  And then he will go to the pews and

23  he will fill the pews, and so there won't be any spaces.  Even

24  though we have excused all these people, the numbers will be

25  different because we will have holes now.

**K1RMAVEVD4**

1          MR. STABILE:  In other words, I guess my question is,

2     let's just say No. 5 is the first surviving juror.  No. 5 will

3     be first.

4          THE COURT:  Yes.  The order won't change.  No

5     reshuffling.  When we start tomorrow morning he will just read

6     the name and tell the person to take seat No. 1, and then we

7     will go all the way through.  So they will be in the same

8     order.  It's just that obviously we have lost some people along

9     the way.

10          MR. STABILE:  Thank you.

11          MR. RICHENTHAL:  One more final thing.  The parties

12     previously agreed, I think the Court knows this, that we would

13     exchange any visuals or exhibits that we might publish during

14     our opening.  I can represent the government has no such

15     visuals.  Mr. Srebnick has said that he does, both a Power

16     Point and potentially some exhibits.  We have not received them

17     yet.  We understand that maybe because he may be altering it in

18     light of some rulings or commentary this morning.  We respect

19     that.  Hopefully, we receive it promptly.

20          In the event that we have an issue, we will confer

21     with the defense as quickly as we can.  If that issue remains,

22     obviously, that would have to be dealt with before opening.

23          What we would propose, if it's OK with your Honor,

24     maybe we e-mail your Honor's chambers or your Honor's law clerk

25     this evening in the event that there is a dispute.  I hope

**K1RMAVEVD4**

 1    there isn't, and we have been working pretty well together, but

 2    I did want to let the Court know that we have not received

 3    those yet, so we can't fully represent whether we are

 4    comfortable with them.

 5              THE COURT:  I understand.  As a practical matter, we

 6    are going to be spending a lot of tomorrow on the jury

 7    selection process.  But I hear what you are saying.

 8              Yes.  As soon as you know there is an issue, let me

 9    know, and it may be that we can meet a little bit early

10    tomorrow to talk about it.  If there is going to be an issue,

11    please let me know.  It may be that we try to address it even

12    before the jury shows up at 9:30.

13              MR. S. SREBNICK:  May I have until 8 p.m. to submit

14    the revised --

15              MR. RICHENTHAL:  As long as we do, too, we obviously

16    don't object to it.

17              THE COURT:  Yes.  Your application is granted.

18              Anything else?

19              MR. H. SREBNICK:  Judge, are we doing openings

20    tomorrow?

21              THE COURT:  To be quite honest with you, I don't know.

22    That raises a question of how long they are going to be.  Do

23    you know how long Mr. Sobelman is going to be?

24              MR. PODOLSKY:  I think it's in the give or take 20

25    minutes, your Honor.

1          MR. H. SREBNICK:  I think I will be longer than that,

2     probably over 30 minutes.

3          THE COURT:  Given the length of those openings, I

4     think it's realistic to think that we could have the openings

5     tomorrow.  We are going to burn a lot of time tomorrow because

6     I am going to have to -- this whole stack, this represents the

7     jurors I am going to have to talk with.  That's going to take

8     time before I even get to the regular voir dire questions.  We

9     are going to burn through a lot of time tomorrow.  But given

10    that the government's opening is 20 and you think you are

11    around half an hour, I think it's likely we are going to get to

12    the openings tomorrow.

13         MR. PODOLSKY:  Your Honor, we obviously want to make

14    sure we have our first witness available when it's time to

15    start testimony.  Do you think that we should have a witness

16    available tomorrow afternoon?  We certainly can.  It didn't

17    seem realistic to me or likely that we will get there.

18         THE COURT:  I don't think it's realistic, honestly.

19         MR. PODOLSKY:  Thank you, your Honor.

20         THE COURT:  Anything else?

21         We will resume at 9:30 tomorrow unless I hear from you

22    otherwise.

23         (Adjourned to January 28, 2020, at 9:30 a.m.)

24

25