LAEKAVEC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          19 CR 374 (JMF)

5    MICHAEL AVENATTI,

6              Defendant.

7    ------------------------------x

8                                      New York, N.Y.
                                       October 14, 2021
9                                      12:05 p.m.

10

11   Before:

                    HON. JESSE M. FURMAN,
12
                                       District Judge
13
                         APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   ROBERT SOBELMAN
     MATTHEW D. PODOLSKY
17        Assistant United States Attorneys

18   DAVID PATTON
     FEDERAL DEFENDERS OF NEW YORK
19        Attorney for Defendant
     BY:  ANDREW JOHN DALACK
20        TAMARA LILA GIWA

21

     ALSO PRESENT:
22

     RUBY KRAJICK, SDNY Clerk of Court
23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

LAEKAVEC

1           (Case called)

2           MR. SOBELMAN:  Robert Sobelman and Matthew Podolsky,

3    for the United States.  Good afternoon, your Honor.

4           MR. DALACK:  And good afternoon, your Honor.  Andrew

5    Dalack and Tamara Giwa, from the Federal Defenders of New York,

6    on behalf of Michael Avenatti.  Robert Baum was unable to make

7    it today, so we'll be here in his stead.

8           THE COURT:  All right.  And, Mr. Avenatti, are you on

9    the telephone with us?

10          THE DEFENDANT:  Yes, your Honor.  Good afternoon.  I

11   am.

12          THE COURT:  Good afternoon.

13          If at any point, you have any trouble hearing or get

14   disconnected, I understand that my deputy has advised you to

15   text your lawyer so that he can immediately notify us.

16          Understood?

17          THE DEFENDANT:  Yes, sir.  Yes, your Honor.

18          THE COURT:  All right.  Very good.

19          We are joined here by the Clerk of Court and a member

20   of the jury department, and I thank them for being with us.

21          What I want to talk about is a trial date and, in

22   particular, jury selection and complications relating to it in

23   this time of COVID that we are in.

24          Here's the issue:  I think, realistically, if we are

25   going to use a questionnaire — and I will have more to say on

LAEKAVEC

1    that in a moment — I don't think January 10th is a feasible

2    date because, as you know, assuming that COVID protocols remain

3    in place, we can only do jury selection for one case per day,

4    and in a case that requires a questionnaire, it requires

5    multiple days, and given the way that things are working,

6    basically, require sort of stretching it out over a matter of

7    weeks to use days that would otherwise not be allocated to

8    another case, and it's it too late to begin the process in

9    December because Q4 trials are already scheduled.  So,

10   realistically, I think if we were to begin this in early

11   January -- and I should say if the protocols remain in place,

12   this is all contingent on my getting a trial date that I

13   request in the first place.  If I don't, then it's sort of a

14   moot point.  But if we were to begin with a questionnaire in

15   early January, I think, realistically, it would take several

16   weeks for the process to run its course, and the trial,

17   therefore, wouldn't start until a little bit later, even as

18   early as the beginning of February.

19          So I think that presents us with two options, as far

20   as I can see, although part of the reason the Clerk of Court is

21   here, and I asked members of the jury department to be here, is

22   just in case I had questions and there were other ideas that

23   hadn't occurred to me that came up.

24          I think one is not to use a questionnaire, which is,

25   candidly, what I'm leaning toward doing.  I'm leaning toward

LAEKAVEC

1    that for three reasons.

2            One, because it would, I think, solve the problem that

3    I just mentioned and enable us to stick with the trial date,

4    assuming, of course, that I get that trial date, if requested.

5            The second is that I am heavily influenced by the fact

6    that Judge Oetken managed to pick a jury in the case that he

7    began this week in a single day without a jury questionnaire,

8    and that case, obviously, involved high-profile figures and

9    issues not dissimilar to this, and nevertheless, he managed to

10   do it, and I don't think anybody has raised concerns or

11   questions about that process or the speed with which he managed

12   to do it.

13           The third is the passage of time.  Candidly, this case

14   will come to trial, if I get that trial date in January of

15   2022, two to three years after it was originally charged,

16   several years after Mr. Avenatti and Ms. Daniels were sort of

17   prominently in the news, President Trump is no longer President

18   of the United States.  I just think that it's not quite as

19   front and center for many people as it may have been a few

20   years ago.  All of which leads me to think that we can do this

21   without a questionnaire.  I'll obviously engage in

22   appropriately searching oral voir dire, and to the extent that

23   there were concerns about jurors' answers in front of other

24   jurors, we can use, as appropriate, sidebars and the like, but

25   my estimate is that we can selectively pick a jury in that

LAEKAVEC

1    manner without a questionnaire and then stick with the trial

2    date.

3          The other option would be to adjourn the trial or

4    start jury selection at some point perhaps in January and

5    effectively adjourn the beginning of trial until February or

6    even later in the quarter so that we can plan accordingly.

7          So those are sort of the two options.  Again, my

8    strong instinct is that we should just do away with the

9    questionnaire and deal with whatever needs to be dealt with

10   orally in voir dire, but I'm obviously eager to hear your

11   views.

12         I have found that it is, in a time of masks, a lot

13   better if you remain seated and just pull the microphones close

14   to you, speak directly into them.  It would also enable those

15   who were on the public line and also Mr. Avenatti to hear what

16   you're saying.  So I'm happy to hear from the government first

17   or defense counsel, it doesn't really matter to me, but

18   Mr. Sobelman?

19         MR. SOBELMAN:  Thank you, your Honor.

20         The government's comfortable proceeding without a

21   questionnaire, and we would defer to the Court on the timing of

22   the trial.  We are ready to try the case at the Court's

23   convenience.  It has been pending for some time.  We do have a

24   victim interested in proceeding and obtaining justice, and so

25   our preference would be to proceed on the calendar as set, but

LAEKAVEC

1    if the Court found it appropriate to adjourn the trial, we

2    wouldn't object.

3            THE COURT:  All right.

4            Just out of curiosity, does your estimate of the trial

5    length remain the same?  The last we discussed this, the

6    parties estimated up to two weeks, maybe one week for the

7    government's case, one week for defense case.  I think I

8    expressed my view that this could probably be tried even more

9    quickly than that, but, in any event, your thoughts on that?

10           MR. SOBELMAN:  Yes, your Honor, our estimate remains

11   the same.

12           THE COURT:  Okay.

13           Mr. Dalack?

14           MR. DALACK:  Yes, your Honor.  Thank you.

15           Our position is that a questionnaire is still very

16   much necessary in this case, and we are unwilling to proceed

17   without a questionnaire, and so our preference would be to

18   adjourn the trial date and to stick with the questionnaire.  I

19   say this for two reasons:

20           First, understanding the Court's points about the

21   passage of time and the fact that Judge Oetken just picked a

22   jury in a high-profile case without a questionnaire, we think

23   this case is different.  We think this case is different

24   because Mr. Avenatti's legal situation has continued to garner

25   significant media attention.  There are individuals who have

LAEKAVEC

1    made statements about this case in the media and publicly.  We

2    think that that has an effect on the jury pool.

3              And having already had two trials so far in this sort

4    of COVID era, I can say that as difficult as it is to select a

5    jury under normal circumstances, it is very difficult to do so

6    in the sort of large chamber that is available to the Court to

7    select a jury.  So we would have some serious concerns about

8    sort of an oral voir dire process only in this case, where we

9    expect that the jurors are going to arrive to the courthouse

10   with a lot of preconceived notions and strong feelings

11   potentially about Mr. Avenatti, given the fact that he's

12   already been convicted in one case, basically a trial out in

13   California, so we still very much think that a questionnaire is

14   necessary, and if it's a choice between the January 10th date

15   or a questionnaire, we are unquestionably on the side of a

16   questionnaire.

17             THE COURT:  All right.  Let me ask you a few

18   questions.

19             First of all, I assume you don't think it is legally

20   required to use a questionnaire, that that's an issue within my

21   discretion; is that correct?

22             MR. DALACK:  I agree with the Court that it is an

23   issue within the Court's discretion, and it's not legally

24   required, per se.  I think that in the context of this case,

25   the parties originally agreed on a questionnaire because the

LAEKAVEC

1    parties were on the same page that a questionnaire was likely

2    necessary to obtain a fair and impartial jury and to make sure

3    that we were sort of selecting jurors from a pool of people who

4    were not coming into this case with strong preconceived notions

5    about Mr. Avenatti one way or the other.

6            THE COURT:  All right.  Although I would say two

7    things on that score:  One is that agreement was in the spring

8    of 2020, and this case will come to trial almost two years

9    later, and, in that sense, the circumstances are not the same

10   separate and apart from whether it would require an adjournment

11   and raise complications that wouldn't have two years ago.

12            The second is I looked back at the transcript where

13   this issue first arose in February of 2020, and I know

14   Mr. Avenatti, before you were counsel, had filed a motion

15   requesting that jury questionnaire, but I don't think there was

16   any argument a questionnaire was necessary; it was just the

17   parties' position that it might be helpful and sort of left it

18   to me.  I take it you remain of that view.  Is that correct?

19            MR. DALACK:  It's hard, your Honor, because we were

20   not, obviously, the attorneys of record at the time that that

21   decision was made.  So our position at this particular point is

22   that we do think a questionnaire is likely necessary to obtain

23   a fair and impartial jury in this case.

24            Again, your Honor's point about the passage of time is

25   well taken, but I would like to reference, for example, in the

LAEKAVEC

context of the Rule 12 motions that we filed, there was some

media coverage of that, and also statements that were made by

interested individuals about the nature of our motions and

their merits.  When Mr. Avenatti's financial affidavit was

unsealed, that garnered some significant media attention.  When

he obtained the mistrial in California --

THE COURT:  I got it.  I'm not suggesting that he is

an unknown figure — there's no question that he and his cases

are the subject of some media attention — but I also think that

with the passage of time, there's not quite as much attention

or notoriety as there may have been two or three years ago, and

I don't anticipate that this is going to be front page news.

Maybe it will, I don't know.  In any event, I also doubt that

it will garner more attention than Judge Oetken's case has,

which obviously implicates Mr. Giuliani, Mr. Trump, any number

of high-profile figures and has been subject of quite a bit of

coverage and attention as well.

So I hear you.  I'll tell you what, I'll take it under

advisement.  I think I'm strongly inclined, as you can probably

tell, to just doing this orally and not using a written

questionnaire, but, Mr. Dalack, if you want an opportunity to

submit something in writing that persuades me why it's either

legally required or you think appropriate or necessary, I'm

certainly happy to take it under consideration.  I think we

need to do that swiftly because the deadline to request a jury

LAEKAVEC

1    date for Q1 of 2022 is November 15th, so I would need to figure

2    this out sooner rather than later so that I can adjust the

3    trial date if I decide that it is necessary or submit it

4    regardless.

5              MR. DALACK:  Yes, your Honor.

6              Can I address two of those points?

7              THE COURT:  Sure.

8              MR. DALACK:  We would certainly welcome the

9    opportunity to put something before the Court in writing and

10   could get something to your Honor within the next couple of

11   weeks.  I'm happy to set a deadline now, if that's okay with

12   the Court.

13             THE COURT:  Sure.  Can you do it by next Friday?

14             MR. DALACK:  That would be Friday --

15             THE COURT:  The 22nd.

16             MR. DALACK:  The 24th?

17             THE COURT:  22nd.

18             MR. DALACK:  I'm sorry, your Honor.  22nd, yes, we can

19   do that.

20             THE COURT:  Okay, great.

21             If the government wishes to respond, it can respond,

22   let's say, by Tuesday, the 26th, but if you don't take a

23   position on the issue and don't want to file anything, that's

24   fine.

25             Yes?

LAEKAVEC

1              MR. DALACK:  Yes, the second point is, we would also

2      welcome some insight, to the extent the Court's able to provide

3      it, about -- it's not clear to us that there's necessarily a

4      tension, per se, between a questionnaire and selecting a trial

5      date in Q1 of 2022.  Has the Court submitted the January 10th

6      date and it's been denied?  Or what's --

7              THE COURT:  No.  The deadline is November 15th.

8              MR. DALACK:  I see.

9              THE COURT:  So I haven't submitted any requests for

10     Q1, and I genuinely don't know if I request the January 10th

11     date, how likely it is that I would even get it.  As you

12     probably know, there are certain criteria that we use to

13     prioritize certain -- to determine the order of priority, and

14     criminal is usually a higher priority than civil, or it is a

15     higher priority than civil, but detained defendants are higher

16     priority than nondetained and so on and so forth.  So I just

17     don't know what other requests will be made for this date.  I

18     just don't know.

19             MR. DALACK:  If I could propose maybe a compromise or

20     alternative for the Court's consideration?

21             THE COURT:  Sure.

22             MR. DALACK:  I think it would be possible, based on my

23     experience, limited experience, with using jury questionnaires,

24     to have the jury or the pool of prospective jurors come in on a

25     particular date to complete the questionnaires, and then, from

LAEKAVEC

1   that point on, if we were to, for example, request or obtain a

2   trial date in March of 2022, have the pool of jurors come in in

3   January or February to complete the questionnaire, have that

4   all sorted out then, and then proceed to jury selection in time

5   for a March 2022 trial date?  I guess my point is, we don't

6   necessarily think that a questionnaire and the Q1 trial 2022

7   date are in tension.

8        THE COURT:  I generally agree with that.  I didn't

9   mean to suggest, and if you heard me suggesting it, let me

10   correct the misimpression.  I didn't mean to suggest that a Q1

11   date was unrealistic if we use a questionnaire.  I just don't

12   think January 10th is realistic.

13        MR. DALACK:  Understood.

14        THE COURT:  I think at the earliest, we could begin

15   the process of distributing a questionnaire in January, but

16   because it would require multiple days and because of the COVID

17   restrictions, that would basically need to happen over the

18   course of several weeks.  I think, realistically, the earliest

19   the trial could begin would be in February and maybe not even

20   then.

21        I will raise one other concern, which is that, not

22   surprisingly, I have a huge blog of criminal cases, including

23   several very lengthy criminal trials.  I have two of them

24   scheduled to begin on the same day of March 7th.  So moving

25   this to March is not really a -- would not be a welcome

LAEKAVEC

1  development for my purposes, so I'm going to try and avoid

2  that.

3        In any event, I think, if I'm making myself clear, I

4  think the two alternatives -- if you come up with other

5  creative solutions, you can include them in your letter by next

6  Friday.  I think the two solutions are either to proceed

7  January 10th, again, contingent on my getting that date in the

8  COVID request process without a questionnaire, or using a

9  questionnaire and adjudge that trial would actually begin

10  probably sometime in February, perhaps March, perhaps in front

11  of me, perhaps in front of another judge, depending on my

12  conflicts or the like.  So I think those are probably the two

13  options.

14        Any questions, Mr. Dalack?

15        MR. DALACK:  No questions.  And if we come up with

16  other creative alternatives, we'll be sure to front them for

17  the Court in the letter.

18        THE COURT:  Okay.

19        I know the defendant faces two trials still out in

20  California.  I don't know what the latest is on scheduling of

21  those trials.  I think I saw that there was some litigation

22  regarding a retrial.  Anything you can share on that front, to

23  the extent that it might implicate our schedule as well?

24        MR. DALACK:  Just that there is ongoing litigation

25  with respect to the retrial that I believe is currently

LAEKAVEC

1    scheduled for November, and if I'm not mistaken, the second

2    trial might be scheduled for sometime in the spring of 2022,

3    but I'm not a hundred percent sure about that, your Honor.  But

4    all of that is subject to pending litigation in front of the

5    Ninth Circuit concerning a motion that Mr. Avenatti made out

6    there concerning the constitutionality of a retrial in that

7    case.

8                THE COURT:  All right.

9                I have May 2022 in my head as the date of the second

10   trial.  I don't know --

11               MR. DALACK:  That's my understanding as well, your

12   Honor, yes.

13               THE COURT:  Okay.  Very good.

14               Let me just check with the Clerk of Court and see if

15   she has anything she wants to share with me or if we're good?

16               MS. KRAJICK:  We're good.

17               THE COURT:  All right.  I think we're good.

18               So I will reserve judgment on whether to proceed

19   without a written questionnaire until I see what, if anything,

20   the defense submits by next Friday, and then put in a request

21   accordingly.  If we need to reconvene to talk about other

22   dates, we'll reconvene.  The bottom line is the work in

23   progress.

24               To be clear, I think the deadline — the clerk can

25   correct me if I'm wrong about this — the deadline is

LAEKAVEC

1    November 15th.  I don't think the calendar will be set until

2    probably later in the month of November, but whatever we settle

3    on, I'll put in a request by November 15th.  We probably won't

4    know until late November, and as you probably know, if we're

5    not first in the queue, it's contingent on whatever cases are

6    ahead of us going away.  The clerk can tell me if she has

7    anything she wants me to add or correct to that, but I think

8    that's all accurate.

9            MS. KRAJICK:  I do not, your Honor.  You're correct on

10   everything.

11           THE COURT:  Great.  Thank you very much.

12           We are adjourned.

13           MR. DALACK:  Thank you, Judge.

14                              *  *  *

15

16

17

18

19

20

21

22

23

24

25