UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                 :

  UNITED STATES OF AMERICA       :

                                 :

            - *v.* -             :          19 Cr. 374 (JMF)

                                 :

  MICHAEL AVENATTI,          :

                                 :

              Defendant.      :

                                 :
------------------------------------------------------x


## THE GOVERNMENT'S MOTIONS *IN LIMINE*


                                   DAMIAN WILLIAMS
                                   United States Attorney
                                   Southern District of New York

Matthew D. Podolsky
Robert B. Sobelman
Assistant United States Attorneys

  - Of Counsel -

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 3

I.      The Court Should Admit Evidence Regarding the Disposition of Criminal Proceeds ........ 3

      A.   Applicable Law ........................................................................................... 3

      B.   Discussion ................................................................................................... 5

II.     The Court Should Admit Evidence Regarding the Defendant's and His Law Firm's Financial Circumstances ......................................................................................... 7

      A.   Relevant Facts ............................................................................................ 7

      B.   Applicable Law ........................................................................................... 7

      C.   Discussion ................................................................................................... 8

III.    The Court Should Admit Evidence of the Defendant's Failure to File Income Tax Returns… ................................................................................................................... 9

      A.   Applicable Law ........................................................................................... 9

      B.   Discussion ................................................................................................. 11

IV.     The Court Should Preclude Evidence and Argument that Victims of the Defendant's Scheme to Defraud Are to Blame for Having Acted Negligently or Gullibly .................. 13

      A.   Applicable Law ......................................................................................... 13

      B.   Discussion ................................................................................................. 14

V.      The Court Should Preclude Argument that the Defendant Lacked Intent to Defraud Because He Intended that the Victim Would Ultimately Be Repaid ................................................. 15

      A.   Applicable Law ......................................................................................... 15

      B.   Discussion ................................................................................................. 16

VI.     The Court Should Preclude Evidence or Argument Concerning the Potential Punishment or Consequences of Conviction ................................................................................... 17

VII.    The Court Should Preclude Evidence or Argument Concerning the Defendant's Prior Commission of "Good Acts" and/or Failure to Commit Other "Bad Acts" ...................... 18

CONCLUSION ................................................................................................................. 19

## **TABLE OF AUTHORITIES**

**CASES**

*Costantino v. Herzog*, 203 F.3d 164 (2d Cir. 2000) ..................................................... 13

*Neder v. United States*, 527 U.S. 1 (1999)................................................................. 17

*Rogers v. United States*, 422 U.S. 35 (1975) ............................................................. 22

*Shannon v. United States*, 512 U.S. 573 (1994)......................................................... 22

*United States v. Addario*, 662 F. App'x 61 (2d Cir. 2016)......................................... 4, 7

*United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 22, 2021).............. 14

*United States v. Amico*, 486 F.3d 764 (2d Cir. 2007) ................................................ 18

*United States v. Awan*, 607 F.3d 206 (2d Cir. 2010) .................................................. 9

*United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978) ......................................... 23

*United States v. Benton,* 637 F.2d 1052 (5th Cir. 1981)............................................. 8

*United States v. Bergstein*, 788 F. App'x 742 (2d Cir. 2019).......................... 10, 14, 15

*United States v. Binday*, 804 F.3d 558 (2d Cir. 2015)................................................ 16

*United States v. Bold*, 100 F.3d 944, 1996 WL 75833 (2d Cir. 1996)......................... 10

*United States v. Brennan*, 798 F.2d 581 (2d Cir. 1986).............................................. 13

*United States v. Brennerman*, 17 Cr. 337 (RJS) (S.D.N.Y. Nov. 20, 2017)............... 5, 7

*United States v. Buckley*, 101 F.3d 685, 1996 WL 282140 (2d Cir. 1996) ................. 20

*United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000)........................................... 11, 12

*United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992) ........................................ 12

*United States v. Daly*, 842 F.2d 1380 (2d Cir. 1988)................................................. 12

*United States v. Falley*, 489 F.2d 33 (2d Cir. 1983) ................................................. 5

*United States v. Fazio*, No. 11 Cr. 873 (KBF), 2012 WL 1203943 (S.D.N.Y. Apr. 11, 2012).... 23

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980) .................................................... 4

*United States v. Frederick*, 242 F.3d 368, 2001 WL 10364 (2d Cir. 2000) ..................... 5

*United States v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995)....................................................... 4

*United States v. Gonzalez*, 110 F.3d 936 (2d Cir. 1997) ........................................... 11, 12

*United States v. Greenberg*, 835 F.3d 295 (2d Cir. 2016) ............................................ 17

*United States v. Hernandez,* 588 F.2d 346 (2d Cir. 1978)............................................... 9

*United States v. Jabar*, --- F.4th ----, 2021 WL 5406290 (2d Cir. 2021) .................... 19

*United States v. Karro*, 257 F.3d 112 (2d Cir. 2001)...................................................... 20

*United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 815915 (S.D.N.Y. Mar. 5, 2013) ............. 5

*United States v. Li*, 133 F.3d 908, 1997 WL 796149 (2d Cir. 1997)............................................ 10

*United States v. Lillie*, 669 F. Supp. 2d 903 (N.D. Ill. 2009) ......................................... 20

*United States v. Mahmoud Thiam*, No. 17 Cr. 47 (DLC) (S.D.N.Y. April 27, 2017) ................... 5

*United States v. Males*, 459 F.3d 154 (2d Cir. 2006)............................................... 19, 20

*United States v. Masquelier*, 210 F.3d 756 (7th Cir. 2000) ......................................... 21

*United States v. Meszaros*, No. 06 Cr. 290 (JFB), 2008 WL 5113425 (E.D.N.Y. Nov. 25, 2008)

.................................................................................................................. 10

*United States v. Miller*, 626 F.3d 682 (2d Cir. 2010) ................................................... 16

*United States v. Namvar*, 498 F. App'x 749 (9th Cir. 2012) ....................................... 21

*United States v. Neuman*, No. 11 Cr. 247 (BR), 2013 WL 2468254 (D. Or. June 7, 2013)......... 21

*United States v. Ortiz*, 857 F.2d 900 (2d Cir. 1988) ............................................... 12, 13

*United States v. Osarenkhoe*, 439 F. App'x 66 (2d Cir. 2011)................................... 15

*United States v. Paulino*, 445 F.3d 211 (2d Cir. 2006).................................................. 13

*United States v. Peters*, 791 F.2d 1270 (7th Cir. 1986) ................................................ 7

*United States v. Pitre*, 960 F.2d 1112 (2d Cir. 1992) ...................................................... 7

*United States v. Proudfoot*, No. 15 Cr. 427 (SI), 2018 WL 6198274 (D. Or. Nov. 28, 2018) ..... 21

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006) ................................................ 3

*United States v. Radziszewski*, 474 F.3d 480 (7th Cir. 2007) ........................................ 21

*United States v. Ravich*, 421 F.2d 1196 (2d Cir. 1970) .................................................. 4

*United States v. Reed*, 639 F.2d 907 (2d Cir. 1981) ...................................................... 10

*United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1725991 (KAM) (E.D.N.Y. Apr. 15, 2015)…

....................................................................................................................... 23

*United States v. Roldan Zapata*, 916 F.2d 795 (2d Cir. 1990) ...................................... 13

*United States v. Rybicki*, 287 F.3d 257 (2d Cir. 2002) .................................................. 17

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) .................................................... 9

*United States v. Sawyer*, 584 F. App'x 751 (9th Cir. 2014) .......................................... 19

*United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990) .................................................... 23

*United States v. Shyne*, No. S4 05 Cr. 1067 (KMK), 2007 WL 1075035 (S.D.N.Y. Apr. 5, 2007)

....................................................................................................................... 9, 11

*United States v. Siddiqui*, 699 F.3d 690 (2d Cir. 2012) .............................................. 9, 11

*United States v. Spirk*, 503 F.3d 619 (7th Cir. 2007) .................................................... 20

*United States v. Starr*, 816 F.2d 94 (2d Cir. 1987) ...................................................... 19

*United States v. Thomas*, 377 F.3d 232 (2d Cir. 2004) .............................................. 17, 18

*United States v. Valenti*, 60 F.3d 941 (2d Cir. 1995) .................................................... 14

*United States v. Vincent*, 416 F.3d 593 (7th Cir. 2005) ................................................ 19

*United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991) ................................................ 18

*United States v. Weaver*, 860 F.3d 90 (2d Cir. 2017) ................................................ 16, 17

*United States v. Williams*, 205 F.3d 23 (2d Cir. 2000) .................................................................. 13

**OTHER AUTHORITIES**

*Federal Practice and Procedure: Federal Rules of Evidence* § 5240 ........................................... 9

1 *Modern Federal Jury Instructions-Criminal*, Instr. 6-18 ........................................................... 9

**RULES**

Fed. R. Evid. 401 ........................................................................................................................... 3

Fed. R. Evid. 402 ......................................................................................................................... 16

Fed. R. Evid. 403 ............................................................................................................... 4, 16, 20

Fed. R. Evid. 404 ......................................................................................................................... 23

Fed. R. Evid. 405 ......................................................................................................................... 23

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motion for certain rulings in advance of the trial scheduled for January 24, 2021.  The Government moves *in limine* to: (i) admit evidence regarding the disposition of the proceeds of the defendant's scheme to defraud; (ii) admit limited evidence regarding the financial circumstances of the defendant and his law firm at the time of the commission of the charged crimes; (iii) admit evidence of the defendant's and his law firm's failure to file tax returns; (iv) preclude argument that victims of the defendant's scheme to defraud are to blame for having acted negligently or gullibly; (v) preclude argument that the defendant lacked intent to defraud because he repaid or intended to repay the victim; (vi) preclude evidence or argument concerning the potential punishment or consequences that the defendant faces if convicted; and (vii) preclude evidence or argument concerning the defendant's prior commission of "good acts" and/or failure to commit other "bad acts."

## BACKGROUND

On May 22, 2019, a grand jury sitting in this District charged the defendant with wire fraud and aggravated identity theft, in violation of Title 18, United States Code, Sections 1028A, 1343, and 2.  The charges stem from the defendant's efforts to deceive a Manhattan-based literary agent and Manhattan-based publisher, through the use of wires sent to Manhattan, in order to intercept payments intended for the defendant's client ("Victim-1").  As alleged more fully in the Indictment, and as the Government expects to prove at trial, from August 2018 through February 2019, the defendant, then an attorney, engaged in a scheme to defraud Victim-1, who was one of his clients at that time, by diverting money owed to Victim-1 to the defendant's control and use.  (Indictment ¶ 1.)  After assisting Victim-1 in securing a book contract with a publisher in Manhattan, the defendant stole a significant portion of Victim-1's advance on that contract by

sending a fraudulent and unauthorized letter purporting to contain Victim-1's signature to Victim-1's literary agent.  (*Id*.)  That letter instructed the agent to send payments not to Victim-1 but instead to a bank account controlled by the defendant.  (*Id*.)

Specifically, prior to Victim-1's literary agent wiring the second of four installment payments due to Victim-1 as part of the book advance, the defendant sent a letter to Victim-1's literary agent, purportedly signed by Victim-1, that instructed the literary agent to send all future payments to a client trust account in Victim-1's name and controlled by the defendant.  (*Id*. ¶ 15.) The literary agent initiated a wire transfer from Manhattan of $148,750 to the account, which the defendant promptly began spending on his own personal and business expenses, including on airfare, hotels, car services, restaurants and meal delivery, online retailers, payroll for his law firm and another business he owned, and insurance.  (*Id.* ¶¶ 16-17.)  When Victim-1 began inquiring of the defendant as to why Victim-1 had not received the second installment, the defendant lied to Victim-1, telling Victim-1 that he was still attempting to obtain the payment from Victim-1's publisher.  (*Id*. ¶¶ 19-20.)  Approximately one month after diverting the payment, the defendant used funds recently received from another source to pay $148,750 to Victim-1, so that Victim-1 would not realize that the defendant had previously taken and used Victim-1's money.  (*Id*. ¶ 21.)

Approximately one week later, pursuant to the defendant's earlier fraudulent instructions, the literary agent sent from Manhattan another payment of $148,750 of Victim-1's book advance to the client account controlled by the defendant.  (*Id*. ¶ 22.)  The defendant promptly began spending the money on his own personal expenses, including to make payments to individuals with whom the defendant had a personal relationship, to make a monthly lease payment on a luxury automobile, and to pay for airfare, dry cleaning, hotels, restaurants and meals, payroll, and insurance costs.  (*Id*. ¶ 23.)  Moreover, to conceal his scheme, and despite repeated requests from

Victim-1 to the defendant, as Victim-1's lawyer, for assistance in obtaining the book payment that Victim-1 believed was missing, the defendant falsely led Victim-1 to believe that Victim-1's publisher was refusing to make the payment to the literary agent, when, as the defendant knew, the publisher had made the payment to the literary agent, who had then sent the money to the defendant pursuant to the defendant's fraudulent instructions. (*Id*. ¶¶ 24-25.)

## ARGUMENT

## I. The Court Should Admit Evidence Regarding the Disposition of Criminal Proceeds

As described above and charged in the Indictment, the defendant, after routing the proceeds that he stole from Victim-1 through other business accounts, used that money to meet professional and personal obligations.   For example, the defendant spent the stolen money on airfare, hotels, car services, restaurants and meal delivery, online retailers, payroll for his law firm and another business he owned, insurance, individuals with whom the defendant had a personal relationship, a monthly lease payment on a luxury automobile. (*Id*. ¶¶ 16-17, 23.)  The Government intends to offer evidence in the form of bank records, summary charts, and limited testimony regarding those records and charts and the identity of recipients of the funds as (1) direct evidence of the defendant's scheme to defraud; (2) proof that that the defendant controlled the disposition of the fraud proceeds; and (3) evidence of the defendant's motive and intent to commit the charged crimes.

### A. Applicable Law

Under Federal Rule of Evidence 402, "[r]elevant evidence is admissible," and "[i]rrelevant evidence is not admissible."  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  This is generally not a difficult test to meet. *See, e.g., United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) ("so long as a chain of inferences leads the

3

trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry" (citing *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) (Friendly, J.))).

Otherwise admissible evidence is subject to preclusion under Federal Rule of Evidence 403 if its probative value is "substantially outweighed" by the danger of, among other things, unfair prejudice. Fed. R. Evid. 403. The "prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)).

Evidence showing how a defendant spent the proceeds of his crime is routinely admitted in this Circuit as relevant evidence to establish a defendant's motive and intent for committing the crime. *See, e.g.*, *United States v. Addario*, 662 F. App'x 61, 63 (2d Cir. 2016) (summary order) (admitting evidence of defendant's "spending habits," including "information about his substantial gambling activity" and "records of his personal expenditures, such as expensive automobiles, trips, and country club fees" on the ground that "the spending and gambling activity could explain [the defendant's] motive for committing the fraud"); *United States v. Brennerman*, 17 Cr. 337 (RJS) (S.D.N.Y. Nov. 20, 2017) (Tr. 33) (denying defense motion to preclude evidence of defendant's use of wire and bank fraud proceeds because, among other reasons, "it goes to intent . . . , goes to consciousness of guilt, [and] motive"); *cf. also United States v. Frederick*, 242 F.3d 368, 2001 WL 10364, at *1 (2d Cir. 2000) (summary order) (holding that district court did not commit plain error in admitting evidence of defendant's personal expenditures "because evidence of unexplained wealth is admissible where the ordinary motive for a crime is financial gain"); *United States v. Falley*, 489 F.2d 33, 39 (2d Cir. 1983) (upholding admission of evidence of defendant's personal

expenditures because "proof that a defendant is living far above the means provided by his disclosed income is of great probative value in a case involving a crime where the motive is financial gain"); *United States v. Mahmoud Thiam*, No. 17 Cr. 47 (DLC) (S.D.N.Y. April 27, 2017) (Tr. 392-93) (finding that evidence that defendant used bribe money to buy and renovate a home "in a luxurious manner," was "highly relevant," and would not cause unfair prejudice under Rule 403); *United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 815915, at *2 (S.D.N.Y. Mar. 5, 2013) (finding that evidence of how defendants spent their money was admissible to show, among other things, their motive for engaging in criminal conduct).

### B.    Discussion

Evidence regarding the way in which the defendant spent the proceeds of his scheme to defraud is directly relevant, highly probative, and not unfairly prejudicial.  It should be admitted as (1) direct evidence of the defendant's scheme to defraud; (2) proof that that the defendant controlled the disposition of the fraud proceeds; and (3) evidence of the defendant's motive and intent to commit the charged crimes.

*First*, evidence tracing the disposition of the fraud proceeds is necessary to prove that the defendant devised a scheme and intended to deprive Victim-1 of money or property, which the Government has the burden of demonstrating to the jury.  The defendant obtained Victim-1's money by instructing Victim-1's literary agent, under false pretenses, to deliver the funds to what was ostensibly a client trust account.  From there, the defendant transferred the vast majority of the funds to three bank accounts associated with his law firms, and from there spent the money to meet various personal or professional obligations.  Particularly because the defendant did not transfer the money to a personal bank account, it is necessary to prove that the defendant converted the funds to his own use by offering evidence of the manner in which the funds were disposed to benefit the defendant.

*Second*, the manner in which the funds were spent provides important proof and corroboration that the defendant converted the money to his own use.  In other words, the fact that the funds were spent in ways that benefited the defendant both professionally and personally demonstrates that the defendant controlled the money, and intended to deprive Victim-1 of it.

*Third*, the way in which the criminal proceeds were used provides evidence of the defendant's intent.  The fact that the defendant promptly spent the money he stole on both pending obligations and personal luxuries is probative of his intent to defraud, and, as noted above, courts have frequently admitted such evidence for this purpose.  *E.g.*, *Addario*, 662 F. App'x at 63; *Brennerman*, 17 Cr. 337 (RJS) (S.D.N.Y. Nov. 20, 2017) (Tr. 33).  These facts are particularly probative in conjunction with the evidence of the defendant's and his law firm's financial condition discussed below because together they demonstrate the defendant's need to obtain money to meet pending bills and obligations at the time that he defrauded Victim-1.

Nor is there any risk that the probative value of the proffered evidence might be substantially outweighed by any danger of unfair prejudice pursuant to Rule 403.  The evidence the Government seeks to introduce consists of bank records, summary charts, and associated testimony that demonstrate spending that—if it were not for the fact that the funds were stolen—would be routine and largely unremarkable, such as spending on airfare, food, cleaners, insurance, and payroll, and transfers to other client accounts or individuals, and do not, for example, involve the purchase of illegal goods or services.  It is true that the defendant did spend a portion of the proceeds on a payment for a luxury car, but, particularly in the context of a case concerning a formerly high-profile attorney stealing from a high-profile client, this type of evidence is far less sensational than the nature of the charges and certainly would not risk any unfair or inappropriate prejudice.  *See United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (affirming admission of

evidence that "'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged'") (internal quotation marks and citation omitted); *United States v. Peters*, 791 F.2d 1270, 1294 (7th Cir. 1986) (evidence is unfairly prejudicial under Rule 403 if it arouses a sense of horror or otherwise produces an emotional response that would cause the jury to base its decision on something other than the evidence). Accordingly, the Court should admit evidence regarding the way in which the defendant spent the proceeds of his scheme.

## II.   The Court Should Admit Evidence Regarding the Defendant's and His Law Firm's Financial Circumstances

### A.   Relevant Facts

The Government expects that the evidence at trial will show that, at the time of his charged conduct, the defendant and his law firm—in which he was the sole partner—were struggling financially and in significant debt. The Government intends for the evidence of financial difficulties and debts to be presented through documentary evidence and brief testimony from two witnesses: (1) a lay witness who assisted the defendant with managing his finances,[1] and (2) a law enforcement witness who may present one or more summary charts, including regarding financial records.[2]

### B.   Applicable Law

"Motive has been variously defined as 'the reason that nudges the will and prods the mind to indulge the criminal intent,' *United States v. Benton,* 637 F.2d 1052, 1056 (5th Cir. 1981) (internal quotation marks omitted); 'the rationale for an actor's particular conduct,' *United States*

---

[1]    The same lay witness testified in *United States v. Avenatti*, S1 19 Cr. 373 (PGG), about the defendant's law firm's financial condition as of March 2019, which was the relevant point in time for that case. (*See* Trial Tr. 1401-06.)

[2]    The parties may be able to streamline such evidence by agreeing to a stipulation similar to GX S-4 in *United States v. Avenatti*, S1 19 Cr. 373 (PGG) (attached hereto as Exhibit 1), which reflected certain debts owed by the defendant as of March 2019.

*v. Awan*, 607 F.3d 206, 137 (2d Cir. 2010); and 'an emotion or state of mind that prompts a person to act in a particular way,' Charles Alan Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure: Federal Rules of Evidence* § 5240." *United States v. Siddiqui*, 699 F.3d 690, 702 (2d Cir. 2012).  "Although it does not bear directly on the charged elements of a crime, evidence offered to prove motive is commonly admitted." *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998); *see also* 1 *Modern Federal Jury Instructions-Criminal*, Instr. 6-18.  "And unlike issues of knowledge and intent, the defendant's motive—an explanation of *why* the defendant would engage in the charged conduct—becomes highly relevant when the defendant argues that he did not commit the crime." *Siddiqui*, 699 F.3d at 702 (emphasis in original).

"The Second Circuit has long recognized that evidence of indebtedness is admissible in a criminal case to establish motive." *United States v. Shyne*, No. S4 05 Cr. 1067 (KMK), 2007 WL 1075035, at *34 (S.D.N.Y. Apr. 5, 2007) (citing *United States v. Hernandez,* 588 F.2d 346, 348-49 (2d Cir. 1978) (collecting cases)); *see also, e.g.*, *United States v. Reed*, 639 F.2d 907 (2nd Cir. 1981) ("[A] defendant's belief that he is in financial difficulty is admissible to show motive, and not unduly prejudicial.").

C.    **Discussion**

The defendant's desperation for money at the particular time of the offense conduct is highly probative of his motive to engage in the charged conduct.  That desperation provides necessary context for the defendant's conduct, which would appropriately be viewed as shockingly brazen, and is an important factor that the jury should be permitted to consider in assessing the defendant's intent.  For these same reasons, courts routinely admit such evidence.  *See, e.g.*, *United States v. Bergstein*, 788 F. App'x 742, 745 (2d Cir. 2019) (affirming admission of "evidence of [defendant's] casino debts" because it "plainly reflects [defendant's] motive"); *United States v. Li*, 133 F.3d 908, 1997 WL 796149, at *1 (2d Cir. 1997) ("evidence of [defendant's] debt . . . was

properly admissible as evidence of motive"); *United States v. Bold*, 100 F.3d 944, 1996 WL 75833, at *1 (2d Cir. 1996) (affirming admission of evidence of "indebtedness" to show "motive in robbing a bank"); *United States v. Meszaros*, No. 06 Cr. 290 (JFB), 2008 WL 5113425, at *10 (E.D.N.Y. Nov. 25, 2008) ("For example, the problems and expenses that allegedly developed from the defendant's participation in the first fraud scheme, including the alleged hiring of civil and criminal attorneys, would help explain and provide an additional financial motive for the defendant's alleged decision to concoct and participate in the second scheme."); *Shyne*, 2007 WL 1075035, at *34 ("Details of a defendant's financial history are often relevant to the motive of a defendant to commit a crime, especially if that crime involves pecuniary gain.").

In short, the defendant's indebtedness is an inextricable part of the story of the charged offenses. It is an entirely proper for the jury to weigh evidence bearing directly on the defendant's financial motivation and intent, as the Second Circuit and courts in this district have consistently held. As discussed above, "an explanation of *why* the defendant would engage in the charged conduct[ ]becomes highly relevant when the defendant argues that he did not commit the crime." *Siddiqui*, 699 F.3d at 702 (emphasis in original). That is plainly the case here. Accordingly, the Court should admit evidence regarding the defendant's and his law firm's financial circumstances.

## III.   The Court Should Admit Evidence of the Defendant's Failure to File Income Tax Returns

The Government seeks to admit evidence establishing that, for the time period relevant to the charged conduct, the defendant and the law firms with which he was associated filed no federal tax returns and reported no income to the Internal Revenue Service ("IRS").

### A.   Applicable Law

It is well established that evidence of otherwise uncharged conduct is admissible, without regard to Rule 404(b), when it constitutes intrinsic or direct proof of the charged crimes. *See, e.g.*,

*United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997). Indeed, the Second Circuit has frequently observed that such evidence "is not considered other crimes evidence under Rule 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44 (internal quotation marks omitted) (quoting *Gonzalez*, 110 F.3d at 942); *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988) ("[T]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment.  Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.").  In such circumstances, the uncharged conduct evidence is appropriately treated as "part of the very act charged," or, at least, proof of that act. *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992).

Alternatively, "[o]ther acts" evidence may be admitted under Rule 404(b) where the evidence: (1) is advanced for a proper purpose; (2) is relevant to the crimes for which the defendant is on trial; and (3) has probative value that is not substantially outweighed by any unfair prejudicial effect.  *See United States v. Ortiz*, 857 F.2d 900, 903 (2d Cir. 1988) ("[O]ther acts or crimes are admissible under Rule 404(b) to prove matters other than the defendant's criminal propensity"). Rule 404(b)(2) identifies the proper purposes for the admission of other act evidence, including to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  *Id.*

The Second Circuit takes an "'inclusionary' approach" to the admission of other-act evidence, under which "'evidence of prior crimes, wrongs, or acts is admissible for any purpose

other than to show a defendant's criminal propensity,' as long as it is 'relevant to some disputed issue in the trial' and satisfies the probative-prejudice balancing test of Fed. R. Evid. 403." *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (citations omitted).

While any evidence offered pursuant to Rule 404(b) is subject to the balancing test set forth in Rule 403, the Second Circuit has long made clear that "other act" evidence that is neither "more sensational" nor "more disturbing" than the charged crimes will not be deemed unfairly prejudicial. *See, e.g.*, *United States v. Roldan Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000); *see also United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006); *cf. Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("[B]ecause virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair.").

## B.    Discussion

The Government seeks to admit evidence that the defendant and his law firms filed no federal tax returns and reported no income to the IRS for the time period in which he stole Victim-1's book payments.  This evidence is admissible as direct evidence of the charged crimes and, in the alternative, pursuant to Rule 404(b).

The defendant's failure to file tax returns and report income for himself or his law firms, including any income relating to Victim-1's book payments, provides direct evidence that the defendant understood that this money was not legitimate income for him.  This evidence therefore provides direct proof of the defendant's intent to defraud.  *See Bergstein*, 788 F. App'x at 745 ("The government properly introduced [the defendant's] tax returns to show that even though [he] maintained that his income was legitimate, shell companies under his control did not report or pay taxes on [the] income.").  Moreover, the evidence is relevant and critical to rebutting an expected defense—namely, that the defendant was entitled to the money as part of his agreement or

11

understanding with Victim-1.  *See, e.g.*, *United States v. Valenti*, 60 F.3d 941, 946 (2d Cir. 1995) ("The tax returns were obviously probative to refute [the defendant's] defense that the contested funds were legitimate compensation.").

In the alternative, the records are admissible pursuant to Rule 404(b), as they are highly probative of the defendant's intent, plan, knowledge, and absence of mistake or accident in engaging in the charged crimes. The tax records demonstrate, among other things, that the defendant knew that the "income" he derived from Victim-1's book deal was illegitimate and that he sought to conceal it.  *See, e.g.*, *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. Oct. 22, 2021) (Tr. 488) (denying defense motion to preclude IRS testimony at trial regarding failure to file tax returns and report income because "the testimony will be direct evidence of the concealment of the source of the funds").  The tax records also show an absence of mistake or accident in that the defendant took active steps to plan and conceal his fraud and the "income" he earned from it.  The tax returns are therefore important to rebut any defense that the defendant acted in good faith and was lawfully entitled to the proceeds that he received.  *See Bergstein*, 788 F. App'x at 745; *United States v. Osarenkhoe*, 439 F. App'x 66, 68 (2d Cir. 2011) (approving admission of tax return evidence under Rule 404(b)).

Finally, particularly in the context of this case, which involves a lawyer stealing from a client, there is no basis to think that evidence that the defendant failed to pay income taxes would be unfairly prejudicial within the meaning of Rule 403.  As in other cases where such evidence has been approved, there is nothing salacious or unfair about documentary evidence regarding the defendant's payment or non-payment of taxes demonstrating his own view of the proceeds of his crime.  *See Valenti*, 60 F.3d at 946 ("Any arguable prejudice to [the defendant] was *de minimis:* it strains credulity to think that the jury might have believed [the defendant] innocent of transporting

stolen goods, but voted to convict him anyway just because he failed to report income on his tax returns."); *see also Bergstein*, 788 F. App'x at 745; *Osarenkhoe*, 439 F. App'x at 68.

## IV. The Court Should Preclude Evidence and Argument that Victims of the Defendant's Scheme to Defraud Are to Blame for Having Acted Negligently or Gullibly

The federal fraud statutes, including wire fraud, do not require the Government to prove reliance on a defendant's conduct as an element of the offense. The defense should therefore be precluded from suggesting during the trial—whether in jury addresses or witness examinations— that the victims of the defendant's fraud—including Victim-1, Victim-1's literary agent, and Victim-1's publisher—are to blame, either because they failed to conduct sufficient diligence, were negligent, or otherwise acted unreasonably in relying on the defendant's misrepresentations.

### A. Applicable Law

Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible" at trial, Fed. R. Evid. 402, and under Rule 403, a court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. Miller*, 626 F.3d 682, 689 (2d Cir. 2010).

The essential elements of wire fraud—as charged in Count One—are: (1) a scheme to defraud; (2) money or property as the object of the scheme; and (3) use of wires to further the scheme. *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015).

To "prove the existence of a scheme to defraud, the government must also prove that the misrepresentations were material, and that the defendant acted with fraudulent intent." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (internal citations and quotation marks omitted). A "statement is material if the misinformation or omission would naturally tend to lead or is capable of leading a reasonable [person] to change [his] conduct." *Id.* In other words, materiality

13

is an objective standard, and actual reliance is not an element of criminal fraud. *Neder v. United States*, 527 U.S. 1, 24-25 (1999).

In *United States v. Thomas*, the Second Circuit rejected as a matter of law the proposition that a victim's "vigilance (or lack thereof) was relevant." 377 F.3d 232, 241, 243 (2d Cir. 2004); *see also Weaver*, 860 F.3d at 95 ("[T]he unreasonableness of a fraud victim in relying (or not) on a misrepresentation does not bear on a defendant's criminal intent in designing the fraudulent scheme, whereas the materiality of the false statement does."). Just as "justifiable reliance" is not an element of criminal fraud, neither does the Government need to prove damages, because the fraud statutes criminalize the "scheme" rather than the completed fraud. *Weaver*, 860 F.3d at 95; *see also United States v. Rybicki*, 287 F.3d 257, 262 (2d Cir. 2002), *on reh'g en banc*, 354 F.3d 124 (2d Cir. 2003) ("[T]he only significance in a fraud case of proof of actual harm befalling the victim as a result of the scheme is that it may serve as circumstantial evidence from which a jury could infer the defendant's intent to cause harm."). It is enough to show that the defendant "contemplated some actual harm or injury to [the] victims." *Weaver*, 860 F.3d at 95 (quoting *United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016) (emphasis in original)). The pertinent statute therefore focuses on the defendant's statements and intent, not on the state of mind of his victims.

**B.    Discussion**

Because such evidence would be irrelevant under Rules 401 and 402, and unduly confusing under Rule 403, the defendant should be precluded from offering evidence or argument that, had Victim-1, Victim-1's agent, Victim-1's publisher, or anyone else asked more questions of the defendant or been more diligent in some respect, he would have told them the truth, or that the defendant is otherwise innocent because victims of his fraud were unreasonable in their reliance on his misrepresentations or could have been more diligent in their dealings with him. *E.g.*, *United*

14

*States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) ("The majority of circuits to address the issue have rejected this defense, holding that a victim's lack of sophistication is not relevant to the intent element of . . . wire fraud" (citations omitted)).

As part of the defendant's scheme, the defendant lied or caused misleading information to be conveyed to his client (Victim-1), Victim-1's agent, and Victim-1's publisher, in order to direct Victim-1's payments to the defendant. To forestall any of those parties from discovery of his deception, the defendant also worked to prevent them from speaking directly with each other. The diligence and sophistication of those the defendant targeted during this scheme to defraud are not appropriate considerations at trial. *E.g.*, *Thomas*, 377 F.3d at 243 ("We refuse to accept the notion that the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim." (internal quotation marks omitted)). Indeed, in proving a scheme to defraud, the Government is "not required to show that the intended victim was actually defrauded." *United States v. Wallach*, 935 F.2d 445, 461 (2d Cir. 1991) (internal citations omitted). Nor should the defendant be able to use his own ruse against his victims by suggesting that, had they only spoken with each either, they would have known that the defendant was in possession of Victim-1's payments. In short, the defendant should be precluded from blaming his victims—whether through argument or evidence elicited through direct testimony or cross examination—because such evidence is irrelevant and would violate Rule 403.

## V. The Court Should Preclude Argument that the Defendant Lacked Intent to Defraud Because He Intended that the Victim Would Ultimately Be Repaid

### A. Applicable Law

Wire fraud requires proof of, among other things, an intent to defraud. *United States v. Jabar*, --- F.4th ----, 2021 WL 5406290, at *5 (2d Cir. 2021). The intent to defraud must involve "contemplated harm to the victim." *Id.* (quoting *United States v. Starr*, 816 F.2d 94, 98 (2d Cir.

1987)).  However, the requirement of contemplated harm does not require that a defendant intended to permanently deprive a victim of his or her money or property.  *See United States v. Males*, 459 F.3d 154, 159 (2d Cir. 2006) (holding that jury instruction for wire fraud charge that "the requirement of contemplated harm or injury does not require that [defendant] intended to permanently de[p]rive the victim's money or property" "was an accurate statement of the applicable law").  "Nor is it a defense to [wire fraud] that the accused voluntarily returned the funds." *United States v. Vincent*, 416 F.3d 593, 601 (7th Cir. 2005).  Accordingly, any argument concerning a defendant's repayment of victim funds or purported intention to repay a fraud victim is legally improper.  *See United States v. Sawyer*, 584 F. App'x 751, 752 & n.2 (9th Cir. 2014) ("The Ninth Circuit, as well as every other circuit court to address the issue, has determined that a defendant's intent to repay his or her victims is not a defense to criminal fraud charges." (collecting cases)); *United States v. Karro*, 257 F.3d 112, 118 (2d Cir. 2001) ("the defendant's contention that she lacked the intent to fail to repay the money she charged on the fraudulently-obtained credit cards is irrelevant to her guilt" in mail fraud case); *United States v. Buckley*, 101 F.3d 685, 1996 WL 282140, at *2 (2d Cir. 1996) (upholding instruction to jury in embezzlement case that "a good-faith belief by a defendant that somehow or other she will be able to pay back the funds in the future is not a defense of good faith"); *United States v. Lillie*, 669 F. Supp. 2d 903, 908 (N.D. Ill. 2009) (explaining that "district courts can and 'should' exclude evidence of a defendant's intent to repay fraudulently obtained funds because it is 'irrelevant' to the defendant's fraudulent intent" (quoting *United States v. Spirk*, 503 F.3d 619, 621 (7th Cir. 2007)).

## B.    Discussion

The defendant should be precluded from making any argument that he lacked an intent to defraud because he repaid some of the fraud proceeds or that he intended that Victim-1 would ultimately be repaid.  Permitting such an argument, which is contrary to controlling law, *see, e.g.*,

16

*Males*, 459 F.3d at 159, would be improper and only serve to confuse or mislead the jury, *see* Fed. R. Evid. 403.  For those reasons, this Court should preclude such arguments, as courts routinely do in fraud cases.  *See, e.g.*, *United States v. Namvar*, 498 F. App'x 749, 750 (9th Cir. 2012) ("The district court properly excluded evidence of Namvar's intent to repay the victims and good faith effort to fund the exchanges because such an intent is not a defense to fraud."); *United States v. Radziszewski*, 474 F.3d 480, 485-86 (7th Cir. 2007) (upholding district court's exclusion of defendant's purported good-faith defense that he intended to "pay off a debt obtained fraudulently," because "intention to repay . . . can undo neither the fraud nor injury caused by wrongly depriving [the victim] of its funds" in the interim); *United States v. Masquelier*, 210 F.3d 756, 759 (7th Cir. 2000) ("district court was well within its discretion to exclude any evidence of" defendant's good intentions with regard to fraudulently obtained funds, because "[f]raud is complete when the defendant obtains money by false pretenses"); *United States v. Proudfoot*, No. 15 Cr. 427 (SI), 2018 WL 6198274, at *2 (D. Or. Nov. 28, 2018) (excluding "evidence or argument related to Defendant's intent or ability to repay the victims of the alleged fraud"); *United States v. Neuman*, No. 11 Cr. 247 (BR), 2013 WL 2468254, at *1 (D. Or. June 7, 2013) (precluding admission at fraud trial of exhibits relating to defendants' intent to repay).

## VI.    The Court Should Preclude Evidence or Argument Concerning the Potential Punishment or Consequences of Conviction

The defendant should be precluded from offering evidence or argument concerning the potential punishment or consequences, including a mandatory minimum sentence or disbarment, that he faces if convicted.[3]  Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"

---

[3]    The defendant appears to be suspended from practicing law, but has not been disbarred. *See* Attorney Profile for Michael John Avenatti #206929, The State Bar of California, https://apps.calbar.ca.gov/attorney/Licensee/Detail/206929 (last viewed Dec. 8, 2021).

*Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).  This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."  *Id.*  There is no proper basis for the defendant to put these issues before the jury in any form, and the defendant should not be permitted to offer evidence or argument inviting the jury to consider them.

## VII.    The Court Should Preclude Evidence or Argument Concerning the Defendant's Prior Commission of "Good Acts" and/or Failure to Commit Other "Bad Acts"

To the extent that the defendant may seek to present evidence or argument concerning his prior commission of alleged "good acts" or to offer evidence of his non-criminal activities to seek to disprove his guilt, he should be precluded from doing so.  Specific-act propensity evidence is no more admissible to refute a criminal charge than it is to establish one.

It is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions."  *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990).  Similarly, while a defendant may offer general testimony from a character witness about his reputation for a "pertinent trait of character," or the witness's opinion of the defendant as regards that trait, *see* Fed. R. Evid. 404(a)(2)(A) & 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense.  *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249-50 (2d Cir. 1978) (evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts"); *United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1725991 (KAM), at *2 (E.D.N.Y. Apr. 15, 2015) (precluding evidence of charitable giving); *United States v. Fazio*, No. 11 Cr. 873 (KBF), 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012), ("a defendant may not affirmatively

try to prove his innocence by reference to specific instances of good conduct; character is to be proven by reputation or opinion evidence."), *aff'd*, 770 F.3d 160 (2d Cir. 2014).  The defendant should accordingly be precluded from offering evidence or argument, including in his opening statement, concerning any charity, philanthropy, *pro bono* representations, civic or political activism, or any other specific instance or instances of his prior alleged good or public-oriented acts, or the lack of commission of other bad acts, or his lack of criminal history.

Nor should the defendant be permitted to suggest that his alleged prior achievements make it less likely that he committed the charged crimes.  To be sure, the defendant may seek to offer admissible evidence, if any exists, that he experienced financial success during the time period relevant to the charged conduct or had substantial means and thus had less of a financial motive to commit the crimes with which he is charged, just as explained above, the Government may offer evidence of the opposite.  But such evidence is very different from that offered to show an alleged propensity not to commit crimes, which is no more admissible than the reverse.  Accordingly, any such evidence or argument should be precluded.

## CONCLUSION

For the foregoing reasons, the Government's motions *in limine* should be granted.

Dated:  New York, New York
        December 9, 2021

                          Respectfully submitted,

                          DAMIAN WILLIAMS
                          United States Attorney

By:   *Robert B. Sobelman*
                          Matthew D. Podolsky
                          Robert B. Sobelman
                          Assistant United States Attorneys
                          (212) 637-1947/2616