```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
                                :
UNITED STATES OF AMERICA,       :    19 Cr. 374 (JMF)
                                :
        -v-                     :
                                :
MICHAEL AVENATTI,               :
                                :
                Defendant.      :
                                :
-------------------------------x
```

# DEFENDANT'S MOTIONS IN LIMINE

**DAVID E. PATTON, ESQ.**
Federal Defenders of New York, Inc.
Attorney for Defendant
    **MICHAEL AVENATTI**
52 Duane Street, 10th Floor
New York, NY 10007
(212) 417-8700

Of Counsel:

**Robert M. Baum, Esq.**
**Andrew J. Dalack, Esq.**
**Tamara L. Giwa, Esq.**
Assistant Federal Defenders


TO: **DAMIAN WILLIAMS, ESQ.**
    Acting United States Attorney
    Southern District of New York
    One St. Andrew's Plaza
    New York, NY 10007

    Attn: **Robert Sobelman, Esq. & Matthew Podolsky, Esq.**
        Assistant United States Attorneys
        Southern District of New York

**Table of Contents**

Introduction................................................. 1

I.   Specification of Government's Evidence...................... 2

II.  Preclusion of Avenatti's Statements, Generally.............. 5

III. Preclusion of Third-Party Statements, Generally............. 8

IV.  Demand for Prompt Disclosure of Brady Materials............. 8

Conclusion.................................................. 10

**Introduction**

Pursuant to Fed. R. Evid. 103(a), Michael Avenatti submits these motions in limine (MIL).  See, e.g., United States v. Yu-Leung, 51 F.3d 1116, 1121 (2d Cir. 1995) ("[A] motion in limine may preserve an objection when the issue (1) is fairly presented to the district court, (2) is the type of issue that can be finally decided in a pre-trial hearing, and (3) is ruled upon without equivocation by the trial judge").  We respectfully reserve the right to make further evidentiary objections, whether by motion in limine or at trial, as needed.

The government has not provided sufficient specificity regarding its intended trial evidence to enable the defense to move now on all objectionable material.  Thus, we have made general MILs, e.g., regarding statements by the defendant and third parties, and specific MILs, e.g., regarding the admissibility of certain screenshotted communications and government disclosures.

At this juncture, the defense moves:

   I.  For an order directing the government to provide more specificity as to its trial evidence;
  II.  To preclude introduction of Avenatti's statements, generally, on grounds of relevance and prejudice;
 III.  To preclude introduction of third-party statements, generally; and
  IV.  For an order compelling the government to immediately produce all outstanding materials discoverable under Brady.

1

**I.      Specification of Government's Evidence.**

At the threshold, the defense requests that this Court order the government to promptly specify, from the thousands of pages and gigabytes of data produced in discovery, the particular material that the government intends to introduce at trial. Numerous courts have granted such requests. See, e.g., United States v. Chalmers, 474 F. Supp. 2d 555, 572-73 (S.D.N.Y. 2007); United States v. Giffen, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004); United States v. Upton, 856 F. Supp. 727, 748 (E.D.N.Y. 1994); United States v. Turkish, 458 F. Supp. 874, 882 (S.D.N.Y. 1978).

Compelling the government to provide more specific guidance as to the materials—documents, photographs, electronic communications, and electronically stored records—that will comprise its case in chief[1] is consistent with this Court's inherent authority to regulate discovery under Fed. R. Crim. P. 16. See, e.g., Chalmers, 474 F. Supp. 2d at 572-73 (Chin, J.) (ordering pretrial disclosure of government's "preliminary trial exhibit list and copies of those exhibits" in light of "the large volume of documents produced by the Government thus far, a significant portion of which are in Arabic and have yet to be translated by the Government"); Giffen, 379 F. Supp. 2d at 344 (Pauley, J.) (same, in light of government's production of "approximately 450 boxes of documents, containing more than one

---

[1] Short of a formal exhibit list, for which the Court-ordered deadline is January 13, 2022.

2

million pages"); Turkish, 458 F. Supp. at 882 (in case involving 25,000 documents, ordering government "to identify to the defendants those documents which it intends to offer, or to use or to refer to in connection with the testimony of any witness, on its case in chief" and "to identify any other documents when and if a decision is made between now and trial to offer or to use or to refer to such documents").

As Judge Glasser reasoned in Upton, "[t]he purpose of requiring the government to identify which documents it will rely upon at trial in a situation such as this—where there are thousands of documents—is to allow the defendant to adequately prepare his or her defense.  General familiarity with the nature of the documents, as in this case, will not allow defendants to do that."  856 F. Supp. at 748.

This Court also has the authority to order the requested disclosures under Fed. R. Crim. P. 12(b)(4)(B), which provides: "At the arraignment or as soon afterward as practicable, the defendant may, in order to have the opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief in trial) any evidence that the defendant may be entitled to discover under Rule 16."  The 1974 Advisory Committee's Note clarifies that Rule 12(b) "provides a mechanism for ensuring that a defendant knows of the government's intention to use evidence to which the defendant may

3

want to object," in order to promote the efficient pretrial disposition of evidentiary objections. The Note adds that "the committee believes that attorneys for the government will in fact comply and that judges have ways of insuring compliance."

Although Rule 12 by its terms addresses motions to suppress, its rationale—giving defendants notice of the government's evidence to facilitate the litigation of evidentiary matters without disrupting and delaying trial—applies with equal force and a fortiori to motions in limine.

As things currently stand, the government's undifferentiated production of Rule 16 discovery, without further specificity, falls short of Rule 12(b)(4)(B)'s notice requirement. See United States v. De La Cruz Paulino, 61 F.3d 986, 993 (1st Cir. 1995) (open-file policy "does not, in and of itself, satisfy this notice requirement because it does not specify which evidence the government intends to use at trial" (quoting United States v. Brock, 863 F. Supp. 851, 868 (E.D. Wis. 1994)). Thus, disclosure that merely reproduces voluminous discovery "does not satisfy [Rule 12(b)(4)(B)] because 'the defendant is still 'left in the dark' as to exactly what evidence, discoverable under Rule 16, the government intends to rely upon in its case in chief at trial.'" Id. (quoting United States v. Kelley, 120 F.R.D. 103, 107 (E.D. Wis. 1988)). Relying on this Rule, courts have ordered the government to narrow the focus of a massive discovery production.

4

See, e.g., United States v. Jacobs, 650 F. Supp. 2d 160, 171-72 (D. Conn. 2009); United States v. Lujan, 530 F. Supp. 2d 1224, 1246 (D.N.M. 2008) (collecting cases).[2]

**II. Preclusion of Avenatti's Statements, Generally.**

With minimal specificity as to which of Avenatti's statements the government intends to introduce at trial, the defense is constrained to make a general objection to the admission of Avenatti's written or recorded statements on grounds of relevance and prejudice, including some that might otherwise be admissible as a statement by a party opponent.  See Fed. R. Evid. 401-403, 801(d)(2).

Rule 401 provides that evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."  Rule 402 provides that relevant evidence is generally admissible, but "irrelevant evidence is not admissible."  Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

---

[2] This Court also has authority to order the requested disclosures pursuant to Fed. R. Crim. P. 57(b), as well as this Court's inherent authority to regulate discovery, see United States v. Cannone, 528 F.2d 296 (2d Cir. 1975). Avenatti's Fifth Amendment right to due process and the Sixth Amendment right to present a complete defense also require disclosure.

Applying these principles, many of Avenatti's written or recorded statements, including many of those captured by email or text message, are inadmissible. Some are irrelevant to any fact of consequence, some cannot be authenticated, and some are more prejudicial than probative. Consequently, the defense reiterates its MIL No. 1 and demands that the government, as the proponent of any statements purportedly attributable to Avenatti, first identify a relevance theory under 401 and 402 as to each statement so that we can respond accordingly.

In particular, the defense renews its challenge to the screenshots of purported WhatsApp messages between Avenatti and Ms. Clifford. The government has still not produced the actual and complete WhatsApp messages exchanged between Avenatti and Ms. Clifford. Instead, the government has produced photographs that a special agent took of Ms. Clifford's phone, and a text-only printout of the chats that Ms. Clifford provided the government via her attorney. The government's failure to produce the original, electronically stored version of the chats triggers two primary concerns.

First, neither document is an authenticatable version of the purported WhatsApp communications. Indeed, the photographed images of the chats do not reflect all the messages contained in the text-only printout provided by Ms. Clifford's attorney, which itself is incomplete because it omits certain embedded content and

6

media.  The discrepancies between the screenshots and the text-only printout suggest that Ms. Clifford (or someone else with access to her phone) manipulated the chats before the special agent photographed them, or that the special agent (deliberately or negligently) failed to photograph all the messages.  The government may have also allowed Ms. Clifford and/or her counsel to cherry pick which communications Ms. Clifford would disclose.  Both scenarios are incompatible with Avenatti's due process right to disclosure of all information material to his guilt or innocence (Brady) and with the Federal Rules of Evidence.

    Without a forensic copy of the digital data at issue, it is impossible to authenticate and verify the chats cited in the government's indictment and ensure that they are a true and complete reflection of Avenatti and Ms. Clifford's exchanges.

    Separately, the government's deficient disclosures violate Fed. R. Evid. 106 and 1002.  Under Fed. R. Evid. 106, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."  This "rule of completeness" cannot be satisfied in this case without the government's production of all the WhatsApp messages exchanged between Avenatti and Ms. Clifford.  Relatedly, under Fed. R. Evid. 1002, "[a]n original writing, recording or photograph is required

in order to prove its content," but the government has not provided the original communications (or forensic copies).  See also Gordon v. United States, 344 U.S. 414, 421 (1953) ("The elementary wisdom of the best evidence rule rests on the fact that the [original] document is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description….").  Accordingly, the government cannot offer its PDFs to establish the content of and to authenticate any WhatsApp communications between Ms. Clifford and Avenatti, and the files are inadmissible.

**III.  Preclusion of Third-Party Statements, Generally.**

Amongst the government's voluminous Rule 16 discovery are statements by third parties with various roles in the events at issue.  Because the government has not yet specified which, if any, of these third-party statements it intends to introduce, and as with MIL No. 2, the defense objects on grounds of relevance and prejudice to all such statements.  Fed. R. Evid. 401-403.

**IV.  Demand for Prompt Disclosure of Brady Materials.**

To the best of the defense's knowledge, the government has not produced all Brady materials, including emails, text messages, audio and video recordings and documents relating to Stephanie Clifford's book deal, Avenatti's contract with Ms. Clifford, and/or work Avenatti (and his firm) performed on the book deal and for Ms. Clifford, generally.  It is possible the government

8

considers some of this information to be useful for impeachment purposes only, and subject to the Court's January 12, 2022 deadline for the government's Giglio and 3500 disclosures. However, the government's failure to have made any Brady disclosures to this point regarding Ms. Clifford, its key witness, despite the nature of the allegations and the centrality of Ms. Clifford's credibility, suggests that its view of what constitutes Brady is unreasonably conservative.  The defense requires more information from the government to conduct a meaningful investigation into viable defenses.  Accordingly, the Court should compel the government to promptly disclose to the defense all Brady material, including but not limited to:

1. Any evidence the government has that undermines the credibility of Ms. Clifford's anticipated testimony;
2. The identity of any person with whom Ms. Clifford may have spoken about the allegations and/or the book deal;
3. Any evidence tending to show that Ms. Clifford was ever intoxicated, under the influence of medicine or other drugs, or otherwise impaired while interacting with Avenatti;
4. Any evidence of Ms. Clifford's bias or animosity toward Avenatti;
5. Any evidence of Ms. Clifford's personal bias in favor of federal law enforcement and/or the prosecution team in this case;
6. Any evidence reflecting the work performed for Ms. Clifford by Avenatti or his firm; and
7. Any evidence reflecting any expenses or costs incurred by Avenatti or his firm for Ms. Clifford's benefit.

Further, and depending on the outcome of the outstanding subpoena directed at Ms. Clifford, the defense may seek to

challenge Ms. Clifford's testimony under Fed. R. Evid. 601 or seek other appropriate relief.[3]

**Conclusion**

For the foregoing reasons, and for any that arise at a conference, evidentiary hearing, or oral argument, the Court should grant Avenatti's motions in limine.

Dated: New York, New York
       December 9, 2021

                                  Respectfully Submitted,

                                  _____/s/_____
                                  Robert M. Baum, Esq.
                                  Andrew J. Dalack, Esq.
                                  Tamara L. Giwa, Esq.
                                  Federal Defenders of New York, Inc.
                                  (212) 417-8700

                                  Counsel for Michael Avenatti

---

[3] Regarding the subpoena (Dkt. No. 168), undersigned counsel served a copy of it on Ms. Clifford's attorney by email. Upon receipt, Ms. Clifford's attorney indicated that he would need additional time beyond that set by the Court to respond (despite his prior, categorical representations that there exist no records responsive to the defense's request).