```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
                              :
UNITED STATES OF AMERICA,      :    19 Cr. 374 (JMF)
                              :
         -v-                   :
                              :
MICHAEL AVENATTI,              :
                              :
                 Defendant.    :
                              :
------------------------------x
```

**DEFENDANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTIONS IN LIMINE**

> **DAVID E. PATTON, ESQ.**
> Federal Defenders of New York, Inc.
> Attorney for Defendant
>    **MICHAEL AVENATTI**
> 52 Duane Street, 10th Floor
> New York, NY 10007
> (212) 417-8700
>
> Of Counsel:
>
> **Robert M. Baum, Esq.**
> **Andrew J. Dalack, Esq.**
> **Tamara L. Giwa, Esq.**
> Assistant Federal Defenders

TO:  **DAMIAN WILLIAMS, ESQ.**
     United States Attorney
     Southern District of New York
     One St. Andrew's Plaza
     New York, NY 10007

     Attn: **Robert Sobelman, Esq. & Matthew Podolsky, Esq.**
          Assistant United States Attorneys
          Southern District of New York

Table of Contents

Introduction..................................................... 1

I.   How and on what Mr. Avenatti allegedly spent money—in general
     and in connection with his representation of Ms. Clifford—is
     irrelevant and otherwise inadmissible...................... 7

   A.   Evidence concerning the alleged disposition of the proceeds
   Mr. Avenatti retained in connection with his representation of
   Ms. Clifford and her book deal does not tend to make any
   material fact more or less probable and is unduly prejudicial. 7

   B.   Evidence of Mr. Avenatti's spending habits generally and of
   his lifestyle is also irrelevant and unduly prejudicial...... 10

II. The Court should preclude the Government's affirmative
    introduction of evidence regarding Mr. Avenatti's financial
    circumstances and that of his law firm.................... 14

III.   Evidence of Mr. Avenatti's failure to file tax returns in
       2018 and 2019 is not relevant and substantially more
       prejudicial than probative............................... 20

IV. The Court should deny as moot the Government's motion to
    preclude Mr. Avenatti from arguing that Ms. Clifford is at
    fault because of her own negligence or gullibility........ 22

V.   The Court should deny as moot the Government's application to
     preclude argument that Mr. Avenatti lacked intent to defraud
     because he intended that Ms. Clifford would ultimately be
     repaid.................................................... 22

VI. The Court should deny as moot the Government's motion to
    preclude argument concerning the potential punishment or
    consequences Mr. Avenatti faces if convicted.............. 23

VII.   The Court should deny as moot the Government's motion to
       preclude evidence or argument concerning Mr. Avenatti's prior
       "good acts" and/or failure to commit other "bad acts.".... 23

Conclusion..................................................... 24

**Introduction**

The defense respectfully submits this memorandum of law in opposition to the Government's omnibus motion in limine. Dkt. No. 176. The core issue of this case is whether Mr. Avenatti defrauded Ms. Clifford by acting in a manner inconsistent with their written fee agreement and by obtaining proceeds from Ms. Clifford's book deal (on her behalf) without her authorization. But instead of keeping its case confined to this very straightforward factual dispute, the Government's in limine applications make clear that it intends to make this case a referendum on Mr. Avenatti's spending habits and on his law firm's finances. Because these matters have little, if any, relevance to what the Government must prove beyond a reasonable doubt to convict Mr. Avenatti of the two charges contained in the indictment—and risk prolonging the trial by injecting extraneous information that is more prejudicial than probative—the Court should deny the Government's motions in limine.

First, The Court should deny the Government's motion to admit, or otherwise elicit during its case in chief, evidence purporting to reveal how Mr. Avenatti spent money he obtained in connection with his representation of Stephanie Clifford, including remunerations for the book deal he negotiated on her behalf. Such evidence is irrelevant because it does not make any fact material to the fraud and identity theft charges more or less

probable. Fed. R. Evid. 401, 402. Indeed, any information regarding how Mr. Avenatti allegedly spent certain monies has no bearing on whether he obtained that same money fraudulently or without Ms. Clifford's authorization, the gravamen of the Government's allegations. And to the extent "the disposition of the proceeds of the defendant's scheme" could have some probative value, it is substantially outweighed by a danger of unfair prejudice, confusing the issues, and of misleading the jury as to what they must decide to determine whether the Government has proved beyond a reasonable doubt that Mr. Avenatti defrauded his former client.

Second, the Court should deny the Government's motion to admit, or otherwise elicit during its case in chief, evidence regarding Mr. Avenatti's financial circumstances and that of his law firm during the time period in question. Mr. Avenatti's personal financial condition and that of his firm are irrelevant because neither tend to help answer the fundamental question of the case: whether Mr. Avenatti defrauded Ms. Clifford and obtained money on her behalf in connection with her book deal without authorization. Fed. R. Evid. 401, 402. Nothing about Mr. Avenatti's or his firm's financial condition clarifies the scope of Mr. Avenatti's attorney-client relationship with Ms. Clifford, the scope of their written contract, and/or any agreements between them about Mr. Avenatti's compensation for his work on Ms.

Clifford's behalf. And even if Mr. Avenatti's and his firm's financial condition was somehow relevant, the probative value of such evidence is substantially outweighed by the danger of causing Mr. Avenatti undue prejudice, confusing the issues and of misleading the jury.

Relatedly, the Court should also preclude the Government from introducing financial-condition evidence given its failure to disclose all of the records in its possession concerning Mr. Avenatti's and his firm's financial condition and expenses and income, including financial records pertinent to Mr. Avenatti's representation of Ms. Clifford, and financial analyses and documents prepared by Mr. John Drum, a financial expert hired by the Government in the Central District of California and paid over $600,000 to perform an analysis of Mr. Avenatti and his firm's finances across nine years, including the time period at issue in this case.[1] In fact, the Government's withholding of specific financial information recently culminated in a Brady violation and mistrial in the Central District of California (where Mr. Avenatti stands accused of misappropriating the funds of other former clients). Given these circumstances, it would be inapposite to allow the Government in this case to use Mr. Avenatti's or his

---

[1] The Government's failure to produce this Brady material in the Nike-related criminal case (19 Cr. 373 (PGG)) led to Mr. Avenatti filing a motion for new trial in that case earlier this month. See Dkt Nos. 358, 363. The defense has significant concerns that the Government is on the verge of making the same error here.

firm's financial condition as a sword against him while
simultaneously failing to produce (and allowing for sufficient
time to inspect) financial records, which would obviously be
relevant to rebutting any accusation by the Government that Mr.
Avenatti's or his firm's finances influenced his alleged
misconduct in this case. To avoid confusing the issues and
transforming this case into a sideshow referendum on Mr.
Avenatti's and his firm's financial health, the Court should deny
the Government's application and preclude references to Mr.
Avenatti's and his firm's alleged financial condition.

    <u>Third</u>, and similarly, the Court should not permit the
Government to introduce any evidence of Mr. Avenatti's or his
firm's purported failure to file tax returns in 2018 and 2019. The
Government has failed to adequately articulate how this
information bears any relevance to Mr. Avenatti's relationship
with Ms. Clifford or the scope of their agreement regarding the
book deal and Mr. Avenatti's remunerations. Fed. R. Evid. 401,
402. Indeed, none of the information Mr. Avenatti would have been
required to disclose to the Internal Revenue Service tends to shed
any light on the internecine details of his fee agreement with Ms.
Clifford or whether he was entitled to any of the book deal's
proceeds. Put differently, because Mr. Avenatti would not have
been required to parse out his or his firm's income by client

matter on any income tax forms, the failure to file a form reveals nothing relevant about his actions vis-à-vis Ms. Clifford.

More importantly, however, the Government should not be able to affirmatively elicit anything about Mr. Avenatti's tax returns because he was advised by counsel to not make any tax filings for the years in question for multiple reasons, including Mr. Avenatti's arrest in early 2019 on various financial-related charges and the fact that he was divested of his power over the law firm in early 2019 before any tax returns were due. To avoid a complicated side trial about the propriety of this advice and whether the elements of an advice-of-counsel defense can be met— and given the dubious probative value of Mr. Avenatti's failure to file tax returns in the first instance—the Court should deny the Government's motion.

Fourth, the defense respectfully submits that the Court should deny as moot the Government's motion to preclude argument that Ms. Clifford is to blame for Mr. Avenatti's alleged conduct because she acted negligently or gullibly. The matter is moot because the defense agrees to not make any such argument at trial.

Fifth, the Court should deny as moot the Government's motion to preclude argument that Mr. Avenatti lacked intent to defraud Ms. Clifford on the ground that he intended to ultimately repay her. The issue is moot because the defense agrees to not make any such argument at trial. However, and as discussed in more detail

5

below, the defense does intend to make arguments at trial concerning Ms. Clifford's written contract with Mr. Avenatti, which included an express term about Mr. Avenatti's right to proceeds from the book deal. This bears directly on the credibility of Ms. Clifford's accusations against Mr. Avenatti, including whether Mr. Avenatti defrauded Ms. Clifford by acting beyond the scope of their written fee agreement.

Sixth, the Court should deny as moot the Government's motion to preclude argument concerning the potential punishment or consequences Mr. Avenatti faces if convicted, as the defense agrees to not make any such argument at trial. At most, the defense anticipates making a statement or two to the jury in its opening statement and closing argument about Mr. Avenatti's liberty being at stake, generally, without reference to any specific punishments or consequences.

Seventh, the Court should deny as moot the Government's motion to preclude evidence or argument concerning Mr. Avenatti's prior "good acts" and/or failure to commit other "bad acts," because the defense will not make any such argument at trial. However, and as discussed in more detail below, the defense will make arguments regarding the extent and nature of Mr. Avenatti's representation of Ms. Clifford, including his extensive efforts on her behalf to obtain a book deal. Further, in the event Mr. Avenatti takes the stand, the defense reserves the right to

introduce character evidence on re-direct, depending on the scope of cross-examination.

**I.    How and on what Mr. Avenatti allegedly spent money—in general and in connection with his representation of Ms. Clifford—is irrelevant and otherwise inadmissible.**

Fed. R. Evid. 401 provides that evidence is relevant if it tends to make a fact more or less probable and the fact is of consequence in determining the action. Irrelevant evidence is not admissible (Fed. R. Evid. 402) and relevant evidence is excludable if its prejudicial effect substantially outweighs its probative value. Fed. R. Evid. 403. "Unfair prejudice" is defined by 403's Advisory Notes as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." See also Old Chief v. United States, 519 U.S. 172, 180 (1997).

**A. Evidence concerning the alleged disposition of the proceeds Mr. Avenatti retained in connection with his representation of Ms. Clifford and her book deal does not tend to make any material fact more or less probable and is unduly prejudicial.**

At the threshold, to convict Mr. Avenatti of wire fraud (count 1), the Government must prove beyond a reasonable doubt that (1) Mr. Avenatti engaged in a scheme to defraud (2) to obtain money or property (3) through the use of interstate wires. United States v. Pierce, 224 F.3d 158, 165 (2d Cir. 2000). And to establish the first element, the Government must prove (i) the existence of a scheme to defraud, (ii) the requisite fraudulent

7

intent on the part of the defendant, and (iii) the materiality of the misrepresentations. Id. (cleaned up). Crucially, nothing about the Government's burden of proof requires evidence of what a defendant did or did not do with the money or property at issue. Instead, all that matters is that the defendant obtained the money or property under fraudulent pretenses through the use of interstate wires.

United States v. Redcorn, 528 F.3d 727 (10th Cir. 2008) is illustrative. There, the defendants were convicted of wire fraud in connection with their alleged embezzlement of funds from a health care benefit program. Several of the defendants' wire fraud convictions were predicated on how they spent the proceeds of their scheme—i.e., their depositing of the proceeds of their scheme from their personal checking accounts to their investment accounts. In overturning these convictions, the Tenth Circuit explained that these charged transfers were merely "incident to the accomplishment of" a better return on the money the defendants had fraudulently obtained, and that there was no evidence that these transfers were a "step in the plot" to defraud. Redcorn, 528 F.3d at 742 (citing Schmuck v. United States, 489 U.S. 705, 711 (1989)).

Put differently, "[o]nce the defendants deposited the funds into their personal bank accounts, they had accomplished their crime and the funds were available for their personal use." Id. at

739. That the defendants "chose to transfer part of their stolen money to their broker in Florida for the purpose of investments [was] purely incidental to the fraud[.]" Id. "Without a closer connection to the mechanism of their fraud, what they did with the stolen money afterward cannot itself relate to an essential part of the scheme." Id. (cleaned up). "[A]t some point the fraudulent scheme must be complete," and the perpetrator's "subsequent enjoyment of its fruits—buying groceries, going to the movies, redecorating the bathroom—is not an 'essential' part of the scheme." Id. (citing United States v. Altman, 48 F.3d 96, 103 (2d Cir. 1995); United States v. Taylor, 789 F.2d 618, 620 (8th Cir. 1986)).

Similarly, in this case, how Mr. Avenatti spent the money he purportedly obtained in connection with Ms. Clifford's book deal has nothing to do with what he allegedly did to defraud Ms. Clifford and obtain the money without authorization. Indeed, if the book-deal funds were improperly transferred to Mr. Avenatti's accounts, his alleged scheme was complete, and anything Mr. Avenatti did with the money afterwards is evidence of nothing more than how he used his allegedly ill-gotten gains. Because Mr. Avenatti's spending of the funds at issue does not itself relate to his alleged scheme to defraud Ms. Clifford, what Mr. Avenatti may or may not have done with the money is plainly irrelevant. Fed. R. Evid. 401, 402.

Further, even if the Government could contrive some theory of relevance, evidence of what Mr. Avenatti did with the money would still be inadmissible under Fed. R. Evid. 403. Again, given the elements of wire fraud, any discussion of Mr. Avenatti's after-the-fact spending of allegedly ill-gotten gains presents a substantial danger of prejudice, misleading the jury, and confusing the issues. The crux of the Government's case does not turn on Mr. Avenatti's spending habits and whether he spent the money obtained from the book deal on e.g., drugs and booze or donated the money to the poor. Rather, it turns on whether Mr. Avenatti engaged in a scheme to take money that he had no good faith basis to believe belonged to him. Allowing the jury to consider what Mr. Avenatti did with the money would unfairly redirect jurors' attention to extraneous information that is not an "essential" part of the alleged fraud, implicitly encouraging jurors to find Mr. Avenatti guilty because of his spending habits. Of course, this case is not about Mr. Avenatti's predilections, and given the elements of wire fraud, whether Mr. Avenatti donated the money to charity or spent it on luxury goods lacks sufficient probative value to overcome Fed. R. Evid. 403.

### B. Evidence of Mr. Avenatti's spending habits generally and of his lifestyle is also irrelevant and unduly prejudicial.

Separately, and to the extent the Government contemplates introducing testimony of Mr. Avenatti's spending habits generally (which they have yet to provide notice of), including evidence of

Mr. Avenatti's former wealth, cars, jets, clothing, apartment and homes, travel, and spending habits, is also irrelevant and inadmissible.

The fact that an individual "is feckless and poor, or greedy and rich, without more, has little tendency to establish that the person has committed a crime to get more money…." United States v. Nabaie, 226 F. App'x 702, 705 (9th Cir. 2007) ("poverty" evidence including proof of repossession of a vehicle, rent arrears and an unlawful detainer against the defendant's business property were improperly admitted to establish motive for financial crimes) (citing United States v. Mitchell, 172 F.3d 1104, 1110 (9th Cir. 1999)). In Mitchell, the trial court allowed the government to introduce evidence of the defendant's poverty to establish that he committed a bank robbery. Mitchell, 172 F.3d at 1106. The Ninth Circuit reversed finding that this type of poverty evidence was irrelevant to the offense charged and highly prejudicial: "lack of money gives a person an interest in having more. But so does desire for money without poverty. A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value." Id. at 1108-09 (emphasis added). Accordingly, evidence of an individual's "lavish spending habits, without a connection to an individual's participation in criminal activity, is irrelevant." United States v. Holmes, 2021 U.S. Dist.

LEXIS 98060 at *12-13 (N.D. Cal. 2021) (citing United States v. Hatfield, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010) ("[I]t is irrelevant if [defendant] spends his fortune on lavish parties, instead of donating it to starving Malawian orphans.")).

Because the government is not required to prove that Mr. Avenatti personally gained from the charged scheme, evidence of his prior wealth, financial condition and supposed lavish lifestyle is irrelevant and unnecessary for the government's presentation of its case. This includes testimony that Mr. Avenatti resided in an exclusive apartment, drove expensive cars, traveled in a private jet, bought expensive clothes, dined in nice restaurants, had debts, and accumulated personal wealth—none of it has any bearing or logical connection to the allegations made in the indictment. And even if there was some probative value to such evidence, it is substantially outweighed by the danger of injecting class-based bias into the case and causing Mr. Avenatti unfair prejudice.

Indeed, there is a high danger of unfair prejudice when financial condition evidence is placed before the jury. United States v. Bensimon, 172 F. 3d 1121, 1128 (9th Cir. 1999) (holding that the admission of the defendant's bankruptcy filing as evidence of financial motive was reversible error). The fact that a defendant is rich or poor, without more, "has little tendency to establish that the person committed a crime to get more money, and

its probative value is substantially outweighed by the danger of unfair prejudice." <u>Mitchell</u>, 172 F.3d at 1110.

The Supreme Court has made it clear that "appeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them." <u>United States v. Socony-Vacuum Oil Co.</u>, 310 U.S. 150, 239 (1940). "Whether a man be rich or poor, he is entitled to the same considerations" (<u>id.</u> at 238) and courts have routinely determined that evidence of a party's wealth fails Rule 403's balancing test. <u>See</u> <u>United States v. Rothrock</u>, 806 F. 2d 318 (1st Cir. 1986) (arguments that the defendant was living "a lifestyle that most people in America can only dream about" were prejudicial and improperly appealed to class prejudice); <u>Garcia v. Sam Tanksley Trucking Inc.</u>, 708 F. 2d 519 (10th Cir. 1983) ("reference to the wealth or poverty of either party … is clearly improper argument."); <u>United States v. Stahl</u>, 616 F.2d 30 (2d. Cir. 1980) (arguments regarding the defendant's wealth improperly equated success, affluence, and pursuit of business with greed and corruption).

Here, even if evidence of Mr. Avenatti's former wealth, spending habits, debts, financial condition, and lifestyle could somehow be relevant, its probative value is low, and it has the ability to cause him severe prejudice amongst jurors. Evidence of this type is likely to inflame jurors and alienate them from Mr. Avenatti. It will also waste considerable time. Counsel may be

forced to inquire into jurors' views on classism and wealth during

voir dire, taking time away from more substantive issues. Further,

if the evidence is admitted, Mr. Avenatti will have to respond

with evidence establishing his nearly two decades of successes as

a trial lawyer, the details of the cases he worked on, the results

and fees he obtained, etc., which will result in a mini trial

concerning Mr. Avenatti's career, finances, and the thousands of

clients he successfully represented. Because of the low probative

value of this evidence, and the extreme prejudice which will

result if it were introduced, evidence of Mr. Avenatti's former

wealth and lifestyle should be excluded under Rule 403.[2]

## II.   The Court should preclude the Government's affirmative introduction of evidence regarding Mr. Avenatti's financial circumstances and that of his law firm.

The Government seeks to introduce evidence that, at the time

of his charged conduct, Mr. Avenatti and his law firm were

struggling financially and in significant debt. Because the

Government has not yet identified precisely what testimony or

which documents it intends to offer, the defense reserves the

right to supplement its opposition upon further disclosures by the

Government. Nevertheless, the Court should exclude such evidence

---

[2] Notably, Judge James V. Selna, who presided over Mr. Avenatti's recent trial in the Central District of California, precluded evidence of Mr. Avenatti's "lifestyle of luxury, flash, and glamour" as more prejudicial than probative." Order and Opinion at Dkt. No. 512 at 10, United States v. Avenatti, 19 Cr. 61 (JVS) (C.D. Ca. June 28, 2021).

because Mr. Avenatti's motive is not an element of the charged offenses and has no bearing on whether he committed the alleged crimes. And even if Mr. Avenatti's motive was at issue, his general financial condition has no bearing on his motivations under the circumstances of this case and would otherwise unfairly prejudice the jury against him. Further, the Government's failure to disclose materials and Brady information concerning Mr. Avenatti's firm's finances, income, and expenditures, including in relation to Mr. Avenatti's representation of Ms. Clifford, necessarily precludes the Government from affirmatively using Mr. Avenatti's financial condition against him.

As discussed above, the essence of the Government's charges is that Mr. Avenatti defrauded Ms. Clifford by obtaining money belonging to her and without her authorization. Crucially, while the Government must establish Mr. Avenatti's alleged malintent (see supra), nothing about this offense requires the Government to prove why Mr. Avenatti allegedly engaged in the charged conduct.

The Government's argument erroneously conflates intent with motive. But the two are not the same, and there are fundamental differences between "intent" and "motive." Hassan v. City of New York, 804 F.3d 277, 297 (3d Cir. 2015). "[A] defendant acts intentionally when he desires a particular result, without reference to the reason for such desire. Motive, on the other hand, is the reason why the defendant desires the result." Id.

15

(quoting 2 Harry Sanger Richards et al., American Law and Procedure, § 8, at 6 (1922)). Put differently, "intent" asks whether a person acts "intentionally or accidentally," while "motive" asks, "If he did it intentionally, why did he do it?" Id. (cleaned up).

Against this backdrop, there are certainly cases where a defendant's motive is relevant—i.e., where the defendant denies that the conduct occurred, that he or she was the perpetrator of the alleged crime, or that he or she knew about the alleged criminal conduct. In those cases, the "why" is relevant to establish an element of the offense. See, e.g., United States v. Quattrone, 441 F.3d 153, 168, 187 (2d Cir. 2006) (defendant denied knowledge of SEC subpoena and intent to destroy responsive documents so his substantial salary established a motive for him to obstruct the SEC investigation); United States v. Hernandez, 588 F.2d 346, 348 (2d Cir. 1978) (evidence of defendant's financial indebtedness relevant to prove that he knew about the cocaine in his suitcase). Compare with United States v. Sutton, 41 F.3d 1257, 1259 (8th Cir. 1994) (holding that admission of evidence related to defendant's drug use was inadmissible to demonstrate motive to commit robbery when "motive was not a material issue; the defendant did not put his motive in issue; there was no testimony by his co-conspirators about his motive; and the facts which the government used to show motive were not …

16

relevant to identity"). Further, evidence of a defendant's
unexplained wealth may be relevant to proving that he committed
the crime. United States v. Young, 745 F.2d 733, 763 (2d Cir.
1984) (unexplained wealth highly probative of drug trafficking).

Here, Mr. Avenatti does not intend to defend this case on the
basis of mistaken identity, nor will he press an alibi defense.
Mr. Avenatti will not present a defense on the basis that the
conduct at issue was an accident. Thus, there is no basis for the
Government to introduce anything about Mr. Avenatti's purported
motive to establish any material fact. To the contrary, and as set
forth in the indictment, much of this case turns on Ms. Clifford's
representation of certain communications between her and Mr.
Avenatti, including contrasting interpretations of their written
fee agreement.

To be sure, there will be no dispute at trial that Mr.
Avenatti obtained money on Ms. Clifford's behalf and kept a
portion of it. Accordingly, the question for the jury to resolve
is not why Mr. Avenatti kept the money, but instead whether he
deceived Ms. Clifford in doing so through a scheme to defraud her.
Put differently, while Mr. Avenatti's conscious objective or
purpose with respect to the book deal proceeds is at issue, why he
was looking to make money—in the Government's view to pay debts or
spend it on luxury items—does not tend to make any material fact
more or less probable and is otherwise unfairly prejudicial. See,

17

e.g., United States v. Weller, 238 F.3d 1215, 1221 (10th Cir. 2001) (holding that evidence of a defendant's finances is minimally probative to show motive and acknowledging that "even wealthy people may commit financial crimes in hope of amassing still more money).

   Separately, the Government's efforts to introduce evidence of Mr. Avenatti's and his firm's financial condition against him risk creating the same issue that caused a mistrial in the wire fraud prosecution against him in the Central District of California. In that case, like here, Mr. Avenatti stands accused of defrauding various clients by misappropriating their funds, including settlements from various lawsuits. But that case was derailed mid-trial when the judge, The Honorable James V. Selna, determined that the Government had violated its obligations under Brady v. Maryland by failing to disclose to Mr. Avenatti voluminous records in its possession that were probative of the accounting relevant to the clients Mr. Avenatti was accused of defrauding. Following the mistrial, on September 16, 2021 the Government finally produced to Mr. Avenatti 19.86 terabytes of data from his servers that he and his defense team in C.D. Ca. are still reviewing. This electronically stored information includes the financial data for the firm and each of its clients, including Ms. Clifford, which is needed to mount his defense in this case.[3]

---

[3] The facts surrounding Mr. Avenatti's efforts across 30 months to

Here, despite the defense's demand that the same documents and data be produced to undersigned counsel, the attorneys for the Government have represented that they have no obligation to obtain the same financial data from their counterparts in C.D. Ca. and produce it. Instead, the Government has taken the position that even if they were obligated to disclose the information, it is now in Mr. Avenatti's possession. However, this position ignores the Government's independent obligation to comply with <u>Brady</u> and turn over materials relevant to Mr. Avenatti's representation of Ms. Clifford—including records concerning work Mr. Avenatti and his firm undertook on Ms. Clifford's behalf and expenses incurred. It also places an extreme burden on undersigned counsel to sift through thousands of gigabytes of data to find information capable of rebutting the Government's arguments regarding Mr. Avenatti's alleged financial motivations, when the Government has yet to identify what information it expects to introduce.

Further, the Government has also not produced <u>Brady</u> information in the files of the other DOJ lawyers in California relating to analyses completed by Mr. Drum, the $600,000 forensic financial expert the Government hired to perform a detailed analysis of Mr. Avenatti's finances and that of his firm, including for the years 2018 and 2019. This includes documentation

---

gain access to this information and the servers is detailed in his contemporaneously filed motion for an adjournment.

from September 2019, which Mr. Drum prepared and disclosed to the Government in C.D. Ca., opining that Mr. Avenatti's firm "is a profitable business with large Net Flows…." (emphasis added). If the Government intends on placing Mr. Avenatti's financial condition at issue, all of this information must be immediately produced so that Mr. Avenatti can make use of it at trial. Put simply, the Government cannot be allowed to argue that Mr. Avenatti was in a dire financial condition at the time of his alleged fraud of Ms. Clifford while at the same time suppressing information favorable to Mr. Avenatti's financial condition.[4]

### III. Evidence of Mr. Avenatti's failure to file tax returns in 2018 and 2019 is not relevant and substantially more prejudicial than probative.

The Government's contention that Mr. Avenatti's failure to file tax returns in 2018 and 2019 is somehow illustrative of his intent regarding the proceeds he kept from Ms. Clifford's book deal misses the mark. Critically, there is nothing to indicate that, had Mr. Avenatti filed tax returns for those years in question, he would have been required to specify on such a granular level the source(s) of his income to include the clients he represented. For that reason alone, the nonexistence of Mr. Avenatti's tax returns for 2018 and 2019 are not probative of any

---

[4] An individual's financial condition is generally measured using income, cash flow, assets, liabilities, and other relevant factors. Focusing on one factor (i.e., debts) to the exclusion of all others paints a distorted picture for the fact-finder. See, e.g., Patterson v. Balsamico, 440 F.3d 104, 122 (2d Cir. 2006).

material fact; it illustrates nothing about the scope of his representation of Ms. Clifford, nor does it clarify whether Mr. Avenatti had a good faith basis to believe that he was entitled to the portion of Ms. Clifford's book deal that he ultimately kept. To the contrary, any reference to Mr. Avenatti's failure to file tax returns would risk prejudicing jurors against Mr. Avenatti and confusing the issues, improperly suggesting that Mr. Avenatti was under some sort of obligation to specify for the Internal Revenue Service his income from specific clients, as opposed to his income from his firm, generally.

More importantly, and because Mr. Avenatti did not file tax returns upon the advice of counsel, any reference to this issue would trigger a senseless and time-wasting mini trial over the propriety of this advice and whether Mr. Avenatti can meet the strictures of an advice-of-counsel defense, including whether Mr. Avenatti "honestly and in good faith sought the advice of counsel, fully and honestly laid all the facts before his counsel, and in good faith and honestly followed counsel's advice." United States v. Scully, 877 F.3d 464, 476-77 (2d Cir. 2017) (cleaned up). This would create a needless sideshow on an issue that really has no bearing on the discrete and straightforward factual disputes the jury must resolve. Accordingly, the Court should deny the Government's motion to reference at trial Mr. Avenatti's lack of tax returns in 2018 and 2019.

**IV.   The Court should deny as moot the Government's motion to preclude Mr. Avenatti from arguing that Ms. Clifford is at fault because of her own negligence or gullibility.**

The defense will not seek to blame Mr. Avenatti's alleged offense conduct on Ms. Clifford's own negligence or gullibility. Accordingly, the Court should deny this aspect of the Government's motion.

**V.   The Court should deny as moot the Government's application to preclude argument that Mr. Avenatti lacked intent to defraud because he intended that Ms. Clifford would ultimately be repaid.**

Mr. Avenatti does not intend to argue, as a defense to the wire fraud charge, that he lacked intent to defraud Ms. Clifford because he intended to ultimately repay her. Mr. Avenatti agrees that evidence of an intent to repay funds is not relevant as to the question of fraudulent intent. Nonetheless, Mr. Avenatti expects, based on both the indictment and conversations with the Government, that the Government will introduce evidence regarding (1) the terms of Ms. Clifford's book contract, including the schedule of payments, and (2) the receipt of funds to Ms. Clifford. This will include evidence about the number and value of each of those payments.

There is no dispute that it is the Government's burden to prove, beyond a reasonable doubt, that Mr. Avenatti intended actual financial harm to Ms. Clifford. See United States v. Alkins, 925 F.2d 541, 549-50 (2d. Cir. 1991); United States v. Novak, 443 F.3d 150, 156-157 (2d Cir. 2006). Presumably, the

schedule of payments and Ms. Clifford's actual receipt of funds is relevant to the Government's burden to show that Mr. Avenatti intended to cause harm. Mr. Avenatti denies that he had any intent to cause actual harm to Ms. Clifford and will examine witnesses and make argument accordingly. In doing so, Mr. Avenatti will not argue that he lacked an intent to defraud because he planned on ultimately repaying her.

**VI.  The Court should deny as moot the Government's motion to preclude argument concerning the potential punishment or consequences Mr. Avenatti faces if convicted.**

The defense will not make any argument at trial as to the specific consequences or punishments Mr. Avenatti faces should he be convicted. Accordingly, the Government's application to preclude such argument should be denied as moot.

**VII. The Court should deny as moot the Government's motion to preclude evidence or argument concerning Mr. Avenatti's prior "good acts" and/or failure to commit other "bad acts."**

At this stage, before trial and before the Government has made its case-in-chief, the defense does not anticipate making any argument as to Mr. Avenatti's prior "good acts" and/or failure to commit other "bad acts." For this reason, the Government's motion should be denied as moot.

To be sure, Mr. Avenatti may seek to offer evidence of the substantial work he completed on Ms. Clifford's behalf, including in connection with her book deal, and other character evidence of a pertinent character trait. See Fed. R. Evid. 404(a)(2)(A); See

23

United States  v. Han, 230 F.3d 560, 564 (2d. Cir. 2000). He may
further seek to introduce evidence of specific acts for the
purpose of supplying background information or history,
particularly with respect to his representation of Ms. Clifford.
See Fed. R. Evid. 401 Advisory Committee's Notes ("Evidence which
is essentially background in nature can scarcely be said to
involve disputed matter, yet it is universally offered and
admitted as an aid to understanding."), United States v.
Blackwell, 853 F.2d 86, 88 (2d. Cir. 1988). Finally, Mr. Avenatti
may seek to introduce evidence of prior acts to challenge the
Government's evidence of his alleged malintent. See Fed. R. Evid.
404(b)(2) and (b)(3)(A).

Accordingly, the government's motion should be denied as moot
without prejudice, subject to renewal of argument once trial has
commenced.

**Conclusion**

For the foregoing reasons, and for any that arise at a
conference, evidentiary hearing, or oral argument, the Court
should deny the Government's motions in limine.

Dated: New York, New York
       December 23, 2021
                              Respectfully Submitted,

                              _____/s/_____
                              Robert M. Baum, Esq.
                              Andrew J. Dalack, Esq.
                              Tamara L. Giwa, Esq.

                              Federal Defenders of New York, Inc.

24