**Federal Defenders
OF NEW YORK, INC.**

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director
and Attorney-in-Chief*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

December 28, 2021

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

RE:   **United States v. Michael Avenatti**
      **19 Cr. 374 (JMF)**

Dear Judge Furman:

  The Court should preclude the Government from offering so-called expert testimony regarding legal ethics and/or California's rules of professional conduct. See Exhibit A, Government Expert Notice.

  The Government's proffered testimony is not relevant because it has no tendency to make any fact of consequence more or less probable. Fed. R. Evid. 401, 402. The proffered testimony will also not assist the jury in determining any material fact, nor will it aid in understanding issues that are beyond the ken of the average juror. Fed. R. Evid. 702. Perhaps if this case were a state bar proceeding or about Mr. Avenatti's scrupulous compliance with California's rules of professional conduct or the ethics principles governing attorney-client relations, then the proffered testimony might be admissible. But this case is not about Mr. Avenatti's ethics generally, nor is it about his adherence to specific professional rules.

  Rather, the crux of this case is whether Mr. Avenatti engaged in a scheme or artifice to defraud Ms. Clifford of money owed to her and to which Mr. Avenatti had no good-faith basis to believe belonged to him—a question no expert can assist the jury in determining. Fed. R. Evid. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone."). Because testimony about an attorney's ethical obligations would, at best, confuse the issues, mislead the jury, and encourage a conviction based on the misimpression that Mr. Avenatti's guilt turns on his compliance with certain ethical precepts and bar regulations, the Court

should preclude the Government's proffered expert testimony. Fed. R. Evid. 403. In the alternative, the Court should hold an evidentiary hearing pursuant to Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993) so that Mr. Avenatti may properly explore the basis for the proposed expert testimony and challenge its admissibility.[1]

### I. A party may introduce expert opinion testimony only if the proposed expert's specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Under Fed. R. Evid. 702, "A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:

> (a) The expert's scientific, technical, or **other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue**;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702 (emphasis added). Although trial courts have "broad discretion" in determining whether to admit expert testimony, that discretion is cabined not only by the strictures of Fed. R. Evid. 702, but also by Fed. R. Evid. 401, 402, and 403. See generally United States v. Amuso, 21 F.3d 1251, 1263 (2d Cir. 1994). Ultimately, the party seeking to rely on expert testimony bears the burden of establishing that all the requirements of 702 have been met. United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007).

Although "[i]t is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions…" Nimely v. City of New York, 414 F.3d 381, 395 (2d Cir. 2005), a district court must still act as a "gatekeeper" against unreliable expert testimony, see Williams, 506 F.3d at 160, and against testimony that will not assist the trier of fact "to understand the evidence or to determine a fact in issue." Joffe v. King & Spalding LLP, No. 17-CV-3392 (VEC), 2019 WL 4673554, *3 (S.D.N.Y. Sept. 24, 2019) (citing Rule 702). Moreover, Fed. R. Evid. 704

---

[1] It is worth noting that when confronted with similar objections to the same expert testimony proffered in connection with 19 Cr. 373 (PGG), the Government did not call the expert witnesses to testify at trial.

precludes the admission of opinions which would merely tell the jury what result to reach. Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir. 1992); see also Joffe, 2019 WL 4673554, at *3 ("An expert's opinion must be precluded if it 'undertakes to tell the jury what result to reach' and 'attempts to substitute the expert's judgment for the jury's.'") (citing Nimely, 414 F.3d at 397 and United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994)). Indeed, a district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror. Amuso, 21 F.3d at 1263 (cleaned up). And when the tenor of an expert's testimony is closely aligned with the facts of the case, it is inadmissible because it "may create an improper implication that a law enforcement specialist believes the government's witness to be credible and the defendant to be guilty." Id. (cleaned up).

Here, nothing about the proffered expert testimony suggests that it would assist the jury in determining a fact of consequence or in understanding information that is beyond the ken of the average juror. Certainly, any person qualified to sit as a juror is also qualified to assess whether Mr. Avenatti lied to Ms. Clifford with the intent to steal her money and then used interstate wires to accomplish his scheme. To the contrary, the proffered testimony will do little more than transform the expert into the hub of the Government's case, displacing the fact-finding role of the jury by connecting and combining all other testimony and physical evidence into a coherent, discernible, and internally consistent picture of Mr. Avenatti's alleged culpability. The proffered testimony is clearly inadmissible.

**II. The proposed expert testimony will not help the jury understand the evidence or to determine a fact in issue, and unfairly invites a resolution of the ultimate issue based on a Government witness's opinion about Mr. Avenatti's mental state and the propriety of his alleged conduct.**

The Government proposes to have one of two "legal experts" testify about their interpretations of various "legal ethics" and the California Rules of Professional Conduct, and then opine that Mr. Avenatti violated them. This plainly contravenes the strictures of Rule 702 and 704.

At the threshold, the California Rules of Professional Conduct promulgate a comprehensive statutory scheme regulating the practice of law in California. See Birbrower v. Montalbano, Condon & Frank v. Superior Court, 17 Cal. 4th 119 (1998). Under the California State Bar Act, the Board of Trustees of the California Bar formulates the Rules of Professional Conduct, which must be approved by the California Supreme Court. Cal. Bus. & Prof. Code, §§ 6076, 6077. The Rules

incorporate definitions from state statutes, and the California state courts routinely interpret the rules of professional conduct governing lawyers. See, e.g., Howard v. Babcock, 6 Cal. 4th 409, 417 (1993).

Against this backdrop, the Government's proffered testimony runs afoul of Rules 702 and 704 because it essentially invites an expert to opine on the law and on whether Mr. Avenatti lied to Ms. Clifford in violation of his professional responsibilities—one of the ultimate issues in the case and a factual dispute left solely up to the jury's determination. The Second Circuit has "consistently held" that "expert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it, by definition does not aid the jury in making a decision." Nimely, 414 F.3d at 397 (cleaned up). As a result, the Second Circuit has uniformly rejected testimony from experts about legal concepts, ethics, rules of professional responsibility, and fiduciary duties, and precluded experts from providing an opinion that a party did (or did not) violate particular laws, rules or duties. See:

1. Bernstein v. Bernstein Litowitz Berger & Grossman LLP, 814 F.3d 132, 144 (2d Cir. 2016) ("As a threshold matter, we note that defendants rely in large part on the conclusions of their legal -ethics expert made in a declaration filed in the district court. We do not consider arguments based on this declaration because of our longstanding rule that expert testimony on issues of domestic law is not to be considered."); and
2. Amnesty Int'l USA v. Clapper, 638 F.3d 118, 128 n.12 (2d Cir. 2011) (holding that the court was "not compelled to accept" a legal-ethics expert's declaration regarding whether an ethical duty had been triggered, because the question was for the court), rev'd on other grds., ___ U.S. ___, 133 S. Ct. 1138 (2013).

See also, e.g.:

1. Hygh, 961 F.2d at 363-64 (finding error in district court's admission of expert's testimony in excessive force case, where expert provided a definition of deadly physical force and testified that the defendant's conduct was "totally improper" and not "warranted under the circumstances");
2. United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991) (upholding exclusion of defense expert because the proposed testimony "related directly to the issue of whether Bilzerian's actual 13D disclosures complied with the legal requirements;" court noted that the hypothetical questions posed to the expert "included the particular facts alleged in the indictment, blurring the

4

line between testimony regarding industry practice and an opinion on the legality of defendant's conduct");

3. United States v. Scop, 846 F.2d 135, 139-40 (2d Cir. 1994) (holding that the expert's "repeated statements embodying legal conclusions exceeded the permissible scope of opinion testimony under the Federal Rules of Evidence"), rev'd in part on reh'g on other grounds, 856 F.2d 5 (2d Cir. 1988);
4. United States v. Bronston, 658 F.2d 920, 930 (2d Cir. 1981) (upholding exclusion of expert testimony that defendant's conduct did not amount to a breach of fiduciary duty); and
5. Marx & Co. v. The Diners' Club, Inc., 550 F.2d 505, 509-11 (2d Cir. 1977) (holding that it was error for district court to allow testimony from a legal expert interpreting a contract and providing conclusions as to the legal significance of various facts adduced at trial).

Notably, district courts in this Circuit have faithfully applied the above precedent to exclude or limit testimony from so-called legal experts, including about legal ethics, professional duties, and rules governing professional conduct, because the testimony amounts to an improper legal conclusion that effectively tells the jury what conclusion to reach about the defendant's guilt. See:

1. Joffe, 2019 WL 4673554, at *14-18 (excluding defendant's legal ethics expert who would have testified that the conduct of certain lawyers did not violate the New York Rules of Professional conduct);
2. SLSJ, LLC v. Kleban, 277 F. Supp. 3d 258, 288 (D. Conn. 2017) (precluding Yale Law professor from testifying that defendant's conduct constituted a breach of fiduciary duty);
3. United States v. Brooks, No. 06-CR-550 (JS), 2010 WL 291769 (E.D.N.Y. Jan. 11, 2010) ("And, overwhelmingly, courts specifically preclude the expert from offering either legal conclusions or opinions that apply corporate governance concepts to the case's specific facts. Thus, although a corporate governance expert can explain what a CEO does, and what a fiduciary duty is, the expert cannot opine as to whether a specific CEO's acts breached any fiduciary duty.");
4. GST Telecomm., Inc. v. Irwin, 192 F.R.D. 109, 111 (S.D.N.Y. 2000) (stating that "testimony of legal experts on ethics in the profession is hardly an occasion for which credible experts supply legal opinions") (cleaned up);
5. Highland Cap. Mgmt., L.P., v. Schneider, 379 F. Supp. 2d 461, 470-72 (S.D.N.Y. 2005) (excluding testimony from legal expert that securities laws had been violated).

As one district court has noted, "[t]he rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.'" In re Initial Public Offering Securities Litigation, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (quoting Thomas Baker, The Impropriety of Expert Witness Testimony on the Law, 40 U. Kan. L. Rev. 325, 352 (1992)). "In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." In re Initial Public Offering, 174 F. Supp. 2d at 64; see, e.g., In re McKesson HBOC, Inc. Sec. Litig., 126 F. Supp. 2d 1239, 1246 (N.D. Ca. 2000) (striking from the record "three declarations from law professors opining on the ethical propriety of the various solicitation tactics that the firm employed, a purely legal question"); Tockstein v. Spoeneman, No. 4:07-CV-00020-ERW, 2009 WL 2143762, *2 (E.D. Mo. July 14, 2009) (experts' opinions that an attorney who entered into a construction contract with his client violated Missouri ethics rules and breached his fiduciary and ethical duty to his client was "little more than legal conclusions" which should be excluded) (cleaned up).[2]

The Government's proposed expert testimony comes from individuals with no personal or firsthand knowledge of Mr. Avenatti's dealings with Ms. Clifford or of the circumstances surrounding Mr. Avenatti's brokering of Ms. Clifford's book deal. Accordingly, the proposed testimony is necessarily unable to assist the jury in resolving any fact in issue, and is not helpful to the jury's understanding of concepts (like whether Mr. Avenatti lied or not) that are beyond the ken of an average juror.

---

[2] Further, although this case is not an honest-services-fraud prosecution, numerous district courts have excluded expert testimony about ethics and legal duties in honest services fraud prosecutions, whether offered by the Government or the defendant. See, e.g., United States v. Monaghan, 648 F.Supp.2d 658, 662 (E.D. Pa. 2009) ("There is no reason why an expert, instead of the Court, would be needed to explain the laws in this case to the jury. Nor is it appropriate for the Government to ask Contino to opine on whether specific conduct in the indictment violates the Ethics Act and accordingly such questions are precluded."); United States v. Sprouse, No. 3:07-CR-211, 2009 WL 798827 (W.D.N.C. Mar. 23, 2009) (legal expert "may not testify that the Defendant violated an ethical or professional duty…" noting that "such opinion would be so close to testimony of an opinion that the Defendant is guilty of a crime with which she is charged (honest services fraud) that any probative value is substantially outweighed by the danger of unfair prejudice to the Defendant and potential confusion of the jury arising from such testimony"); United States v. Lupton, No. 07-Cr-219, 2008 WL 2224399 (E.D. Wi. May 28, 2008) (in honest services fraud prosecution, excluding defense expert, a law professor, who would have testified that the conduct of defendant, a real estate broker, was appropriate under the rules and practices applicable to brokers in Wisconsin), aff'd 620 F.3d 790 (7th Cir. 2010).

6

Instead, the testimony is helpful for a purely inadmissible purpose: to present the jury with an opinion as to Mr. Avenatti's guilt, particularly with respect to how the jury should infer his allegedly nefarious intentions vis-à-vis Ms. Clifford. Because the Government cannot establish by a preponderance of the evidence compliance with 702 and 704, the Court should preclude its proffered expert testimony.

### III. Any probative value of the proposed expert testimony is substantially outweighed by the danger of unfair prejudice, misleading the jury, and creating confusion as to what the Government must prove to convict Mr. Avenatti.

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" Nimely, 414 F.3d at 397 (quoting Fed. R. Evid. 403). The Second Circuit has cautioned trial courts to consider "the uniquely important role that 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." Id.

Accordingly, expert testimony purporting to clarify the governing law is barred under Rule 403 because it would be a waste of time to duplicate the judge's statement of the law, and it would "intolerably confound the jury to have it stated differently." Specht v. Jensen, 853 F.2d 805, 807 (10th Cir. 1988). In other words, such testimony should be excluded because the jury could be "misled into adopting outright a legal conclusion proffered by the expert." Hygh, 961 F.2d at 364.

Here, even if the Court could determine that the proffered testimony had some relevant, probative value, it would be substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury into a false syllogism: that if an expert on ethics concludes that Mr. Avenatti violated the California Rules of Professional Conduct, then he must have violated the federal criminal statutes at issue in this case.

Given the backgrounds of the proposed experts, there is an unfair risk that the jury would naturally defer to them as super-jurors, adopting outright their testimony that Mr. Avenatti acted untoward and dishonestly in his dealings with Ms. Clifford about her book deal payments—factual questions that go directly to the ultimate legal issues in the case. Further, because the proffered experts' primary basis for their testimony is an assumption that the facts alleged in the indictment are true, without any other examination of the evidence or independent verification, their proffered testimony would "simply recite a factual narrative from [the Government's] perspective, granting it credibility." SLSJ, LLC v. Kleban, 277 F.

Supp. 3d at 280. In essence, the Government seeks to call a witness that would serve as a validating mouthpiece for the prosecution's theory of the case, presenting as dispassionate expert testimony a theory of culpability that aligns neatly with the allegations set forth in the indictment. Again, this case is not a bar or ethics proceeding where the question is whether Mr. Avenatti violated a particular rule of professional conduct or scrupulously adhered to various ethical norms and principles. Therefore, allowing an ethics expert to testify about whether Mr. Avenatti broke certain rules or principles would violate Mr. Avenatti's right to a fair trial because it would confuse jurors into tethering Mr. Avenatti's guilt to whether he acted ethically—and not to whether he lied to Ms. Clifford in order to defraud her of money to which he had no good-faith claim over. Because this case is not about legal ethics or professional rules of conduct, but rather about whether Mr. Avenatti devised a scheme to defraud his client of a discrete amount of money, the proffered expert testimony violates Rule 403 and is inadmissible.

### IV. In the alternative, the Court should hold an evidentiary hearing.

In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999), the Supreme Court held that Daubert's general holding—setting forth the trial judge's general gatekeeping obligation for testimony based on scientific knowledge—applies also to testimony based on "technical" and "other specialized knowledge" under Rule 702. A district court has the "same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." Id. at 142 (emphasis in original).

As noted above, the legal experts base their opinions that Mr. Avenatti violated various duties to Ms. Clifford based on their review of the allegations in the indictment and the blanket assumption that everything in it is accurate. The proposed experts do not appear to have reviewed any other evidence before reaching their opinions. In other words, they propose to tell the jury what result to reach on the scheme-or-artifice-to-defraud element of wire fraud on the basis of the Government's one –sided version of events and "facts." No expert can reliably render an opinion about an attorney's conduct on the basis of the hodgepodge of limited information alleged in the indictment. Cf. Barber v. United Airlines, Inc., 17 F. App'x 433, 437 (7th Cir. 2001) ("Because in formulating his opinion Dr. Hynes cherry-picked the facts he considered to render an expert opinion, the district court correctly barred his testimony because such a selective use of facts fails to satisfy the scientific method and Daubert, and it thus fails to assist the trier of fact.") (cleaned up). In the alternative to precluding the proffered testimony outright, Mr. Avenatti requests that the Court conduct a Daubert/Kumho hearing so that the methodology and reliability of the legal experts' proposed testimony may be properly tested and examined.

**Conclusion**

For the foregoing reasons, and for those that may become apparent at any hearing or oral argument the Court orders, the Court should preclude the Government from offering expert testimony on legal ethics and the California Rules of Professional Conduct at Mr. Avenatti's trial.

Respectfully Submitted,

/s/
Robert M. Baum, Esq.
Tamara L. Giwa, Esq.
Andrew J. Dalack, Esq.
Assistant Federal Defenders

Counsel for Michael Avenatti

Cc: Government Counsel