# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 13, 2021

**BY EMAIL**

Robert M. Baum, Esq.
Tamara L. Giwa, Esq.
Andrew J. Dalack, Esq.
Federal Defenders of New York, Inc.
52 Duane Street, 10th Floor
New York, New York 10007

    Re:    ***United States v. Michael Avenatti*, 19 Cr. 374 (JMF)**

Dear Counsel:

    Based on your request, this letter provides notice, pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure of certain expert testimony that the Government may offer during its case-in-chief at trial. The Government reserves the right to call additional expert witnesses and will promptly provide notice if the Government elects to do so.[1]

    **I.**    **Disclosure by the Government**

    The Government expects to offer testimony from Nora Freeman Engstrom, Esq., or Mark L. Tuft, Esq.

    Professor Engstrom is the Ernest W. McFarland Professor of Law and Co-Director of the Stanford Center on the Legal Profession at Stanford Law School, where she teaches classes in, among other things, legal ethics. She is the author or co-author of numerous publications, including *Legal Ethics* (Foundation Press, 8th ed. 2021). Her *curriculum vitae* is attached hereto as Exhibit 1.

    Mr. Tuft is a partner at Cooper, White & Cooper LLP, who principally focuses on, among other things, professional liability, and counsels lawyers and law firms on professional responsibility. He is a Certified Specialist in Legal Malpractice Law and former President of the Association of Professional Responsibility Lawyers. He is the co-author of *California Practice Guide: Professional Responsibility* (The Rutter Group), which is available on Westlaw, and has

---

[1] The Government has requested that the Court instruct the jury as to certain of the matters set forth herein. *See* Request No. 6, Gov't Requests to Charge (Dkt. No. 175). In the event that the Court indicates it will do so, those instructions may render unnecessary some or all of the anticipated testimony by Professor Engstrom or Mr. Tuft.

given numerous presentations on professional responsibility.  His *curriculum vitae* is attached hereto as Exhibit 2.

The Government expects that, if called to testify, Professor Engstrom and Mr. Tuft would testify about legal duties, ethical rules, and professional responsibility requirements of lawyers admitted to the bar of the state of California.

The Government presently expects that each of Professor Engstrom and Mr. Tuft would testify that, at all times relevant to the charges in this case, the state of California (similar to other states, including the state of New York) imposed a number of legal duties, ethical rules, and professional responsibility requirements on lawyers, including duties of loyalty, honesty, fair dealing, and reasonable communication with respect to all clients.

The Government expects that Professor Engstrom or Mr. Tuft would testify that it has long been understood that an attorney owes a client the highest level of fiduciary duty, as articulated in case law (including, as is most relevant, by the California Supreme Court), California Business and Professions Code Sections 6000 *et seq.*, the State Bar of California Committee on Professional Responsibility and Conduct's opinions, and other sources of authority, including the American Bar Association ("ABA") Model Rules of Professional Conduct and the Restatement (Third) of the Law Governing Lawyers.  This duty encompasses multiple components, including the duty of loyalty, duty of confidentiality, and duty of communication.  A lawyer also has an overarching duty of honesty and fair dealing with respect to his or her client, which cuts across the other duties, including, in particular, the duty of loyalty and the duty of communication.

The duty of loyalty is the most fundamental of these duties.  An attorney owes complete and undivided fidelity to his or her client.  In short, an attorney must put his or her client's interest above the attorney's self-interest.  This means, at bottom, that a lawyer must represent the client's interests without being influenced by the lawyer's actual or perceived personal or financial interests.  A lawyer may violate this duty by, among other things, (a) prioritizing his or her own financial interest above that of the client, including by using the client's confidential information to advance the lawyer's own financial or other interest, (b) seeking to take on other work or another client that creates a conflict of interest or otherwise hinders or prevents the lawyer from focusing fully on advancing the client's interest, or (c) failing to be honest and forthright with the client about the lawyer's views of the client's potential claim(s), the lawyer's actions, or the lawyer's interests.  This duty is explained in and has been developed through cases, bar opinions, commentaries, and other authorities, including Tuft *et al.*, *California Practice Guide: Professional Responsibility* ("*California Practice Guide*"), Chapter 3, Section E(2); *id.* Chapter 4; *Stockton v. Ford*, 11 How. 232, 247 (1850); *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co., Inc.*, 6 Cal. 5th 59, 104 (2018); *Stanley v. State Bar*, 50 Cal. 3d 555, 567 (1990); *Mayo v. State Bar*, 23 Cal. 3d 72, 75 (1978); *Rader v. Thrasher*, 57 Cal. 2d 244, 250 (1962); *Cox v. Delmas*, 99 Cal. 104, 123 (1893); *Betts v. Allstate Ins. Co.*, 154 Cal. App. 3d 688, 715-16 (1984); and *In Matter of Brimberry*, 3 Cal. State Bar Ct. Rptr. 390, 1995 WL 638575, at *14 (1995).

The duty of communication requires an attorney both to respond promptly to inquiries of the client and to keep the client reasonably informed.  This means that a lawyer must keep his or her client informed both about settlement offers and about any other significant developments, and

Page 3

must confer with the client regarding both the client's objectives and the means of achieving those objectives. This duty has also been enacted into law. *See* Cal. Bus. & Prof. § 6068(m). The duty of communication may also implicate the duty of competence. A lawyer may violate the duty of communication by, among other things, failing to advise a client of an offer of settlement, how the lawyer intends to seek or has sought to achieve the client's objectives, or how an opposing party reacted in a pertinent communication or meeting. The duty of communication is explained in and has been developed through cases, bar opinions, commentaries, and other authorities, including *California Practice Guide*, Chapter 3, Section E(4); *Calvert v. State Bar*, 54 Cal. 3d 765, 782 (1991); *Matter of Yagman*, 3 Cal. State Bar Ct. Rptr. 788, 795 (1997); *Nehad v. Mukasey*, 535 F.3d 962, 970-71 (9th Cir. 2008); *In re Clawson*, 434 B.R. 556, 570-71 (N.D. Cal. 2010); and the Restatement (Third) of the Law Governing Lawyers § 20 and Comment c.

The Government expects its expert to describe the nature of the duties owed by a lawyer to his or her client, certain rules elucidating and detailing the application of those duties, and that the duties and rules are public and generally known within the legal community (and indeed, an individual must pass the Multistate Professional Responsibility Examination ("MPRE") to be admitted to the bar of California and elsewhere).[2] *See, e.g.*, *United States v. Kellington*, 217 F.3d 1084, 1098 (9th Cir. 2000) ("It is well settled that in the prosecution of a lawyer for conduct stemming from his or her representation of a client, expert testimony on the lawyer's ethical obligations is relevant to establish the lawyer's intent and state of mind."); *United States v. Brooks*, No. 06 Cr. 550 (JS), 2010 WL 291769, at *4 (E.D.N.Y. Jan. 11, 2010) (appropriate for an expert to describe "corporate governance and accounting concepts, such as the nature of fiduciary duties, [and] a publicly-held corporation's disclosure requirements"); *cf. United States v. Lopez*, No. S1 18 Cr. 6 (DLC), 2019 WL 1570818, at *2 (S.D.N.Y. Apr. 11, 2019) (appropriate for an expert to describe medical standard of care because it "may be relevant to a jury's evaluation of whether a doctor's conduct 'deviated so far from the usual course of professional practice that his actions become criminal.'" (quoting *United States v. Wexler*, 522 F.3d 194, 204 (2d Cir. 2008))). Similarly, the Government intends to ask its expert to provide illustrative examples or to answer hypothetical questions intended to assist the jury in understanding the meaning or scope of pertinent duties or rules. *See, e.g.*, *Barefoot v. Estelle*, 463 U.S. 880, 903 (1983) ("Expert testimony, whether in the form of an opinion based on hypothetical questions or otherwise, is commonly admitted as evidence where it might help the factfinder do its assigned job."); *United States v. Muzaffar*, 714 F. App'x 52, 55 (2d Cir. 2017) (rejecting challenge to expert testimony where only limited hypotheticals "closely matched the facts of the case" and the district court provided a limiting instruction regarding such hypotheticals); *United States v. Offill*, 666 F.3d 168, 176 (4th Cir. 2011) ("It is well established that experts may offer opinions based on hypothetical questions proposed by the attorneys questioning them."); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("The mere use of hypotheticals does not usurp the jury's function of applying the law to the facts of the case." (citing *United States v. Scop*, 846 F.2d 135, 143 (2d Cir. 1988))).

---

[2]    "The purpose of the MPRE is to measure candidates' knowledge and understanding of established standards related to the professional conduct of lawyers." http://www.ncbex.org/exams/mpre/.

Page 4

In addition to the above, Government expects that Professor Engstrom or Mr. Tuft would testify that the California Rules of Professional Conduct (the "California Rules"), the current version of which became effective on November 1, 2018, and which are published publicly by the State Bar of California, are designed to concretize or solidify, that is, make specific and clear, certain aspects and applications of the foregoing and other duties.[3]  The California Rules are intended to regulate the professional conduct of attorneys licensed by the bar of the state of California (the "State Bar") through discipline.  They have been approved by the California Supreme Court, and are designed to protect the public and to promote respect and confidence in the legal profession.  The California Rules are binding on all attorneys licensed by the State Bar. The California Rules have the force of law, and are intended to be a black-and-white exposition of how the duties apply, with the goal of protecting the public and promoting respect for and confidence in the legal profession.  *See, e.g.*, *Sheppard, Mullin, Richter & Hampton, LLP*, 6 Cal. 5th at 74.  The California Rules include commentary on the purpose and meaning of the rules, some of which also contain citations to certain relevant case law or other authority.  As described above, the Government expects that its expert would explain the meaning of pertinent California Rules and their relationship to the foregoing duties, and provide a description or example of how certain such duties/rules are designed to and operate in practice.

These rules include:[4]

Rule 1.0. Purpose and Function of the Rules of Professional Conduct

This rule provides that the California Rules:

> are intended to regulate professional conduct of lawyers through discipline.  They have been adopted by the Board of Trustees of the State Bar of California and approved by the Supreme Court of California pursuant to Business and Professions Code sections 6076 and 6077 to protect the public, the courts, and the legal profession; protect the integrity of the legal system; and promote the administration of justice and confidence in the legal profession. These rules together with any standards adopted by the Board of Trustees pursuant to these rules shall be binding upon all lawyers.

---

[3]   *See* Current Rules of Professional Conduct, *The State Bar of California*, http://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Rules/Rules-of-Professional-Conduct/Current-Rules.  Each of the rules referenced herein had analogs in the prior version of the California Rules of Professional Conduct, which were in effect until October 13, 2018.  *See* Rules of Professional Conduct Cross-Reference Chart, *The State Bar of California*, https://www.calbar.ca.gov/Portals/0/documents/rules/Cross-Reference-Chart-Rules-of-Professional-Conduct.pdf.

[4]   The Government does not expect its expert to opine in detail on all of the following rules, but rather to focus on the foregoing duties, and to describe how the rules generally, and in particular, Rules 1.3, 1.4, 1.15, and 2.1 are specific elucidations of certain of these duties.  The Government may also introduce certain of the rules themselves into evidence.

Cal. R. Prof'l Conduct 1.0(a). The rule further provides that "[t]he prohibition of certain conduct in these rules is not exclusive. Lawyers are also bound by applicable law including the State Bar Act (Bus. & Prof. Code, § 6000 et seq.) and opinions of California courts." Cal. R. Prof'l Conduct 1.0(b)(2). The commentary to the rule states that "a lawyer's violation of a rule may be evidence of breach of a lawyer's fiduciary or other substantive legal duty in a non-disciplinary context." Cal. R. Prof'l Conduct 1.0 cmt. 1.

Rule 1.0.1. Terminology

This rule defines various terms used in the California Rules, including that "'[f]raud' or 'fraudulent' means conduct that is fraudulent under the law of the applicable jurisdiction and has a purpose to deceive"; "'[i]nformed consent' means a person's agreement to a proposed course of conduct after the lawyer has communicated and explained (i) the relevant circumstances and (ii) the material risks, including any actual and reasonably foreseeable adverse consequences of the proposed course of conduct"; and "'[r]easonable' or 'reasonably' when used in relation to conduct by a lawyer means the conduct of a reasonably prudent and competent lawyer." Cal. R. Prof'l Conduct 1.0.1(d), (e), (h).

Rule 1.3. Diligence

This rule provides: "A lawyer shall not intentionally, repeatedly, recklessly or with gross negligence fail to act with reasonable diligence in representing a client." Cal. R. Prof'l Conduct 1.3(a). In this context, "'reasonable diligence' shall mean that a lawyer acts with commitment and dedication to the interests of the client and does not neglect or disregard, or unduly delay a legal matter entrusted to the lawyer." Cal. R. Prof'l Conduct 1.3(b).

A lawyer may violate this rule by missing deadlines or otherwise not acting with sufficient commitment or dedication to achieving his or her client's objectives.

Rule 1.4. Communication with Clients

This rule, which is referred to in Rule 1.2, concerns a lawyer's communication with his or her client, and requires, among other things, that the lawyer reasonably consult with the client about the means through which the client's objectives will be pursued, keep the client reasonably informed about significant developments, and explain developments in the matter so that the client may make informed decisions, including with respect to offers of settlement. As noted above, one client, for example, may be more interested in a financial outcome, while another may be more interested in another party agreeing to undertake or to refrain from undertaking certain conduct. A lawyer must communicate with his or her client about the client's objectives, and the means to accomplish them, abide by the client's decisions regarding the objectives, and keep the client informed about how a matter is proceeding. In short, the client decides the objectives of a representation, and the lawyer must communicate in a manner to understand and seek to further those objectives.

Page 6

This rule provides in pertinent part:

> (a) A lawyer shall:
>
>> (1) promptly inform the client of any decision or circumstance with respect to which disclosure or the client's informed consent is required by these rules or the State Bar Act;
>>
>> (2) reasonably consult with the client about the means by which to accomplish the client's objectives in the representation;
>>
>> (3) keep the client reasonably informed about significant developments relating to the representation, including promptly complying with reasonable requests for information and copies of significant documents when necessary to keep the client so informed; and
>>
>> (4) advise the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.
>
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Cal. R. Prof'l Conduct 1.4. The commentary to the rule explains that, among other things, "Whether a particular development is significant will generally depend on the surrounding facts and circumstances." Cal. R. Prof'l Conduct 1.4 cmt. 1.

### Rule 1.15. Safekeeping Funds and Property of Clients and Other Persons

This rule provides: "All funds received or held by a lawyer or law firm for the benefit of a client . . . shall be deposited in one or more identifiable bank accounts labeled 'Trust Account' or words of similar import, maintained in the State of California . . . ." Cal. R. Prof'l Conduct 1.15(a). "A lawyer shall (1) promptly notify a client . . . of the receipt of funds . . . in which the lawyer knows or reasonably should know the client . . . has an interest; . . . (4) promptly account in writing to the client . . . for whom the lawyer holds funds . . . .; and (7) promptly distribute, as requested by the client . . ., any undisputed funds . . . in the possession of the lawyer or law firm that the client . . . is entitled to receive." Cal. R. Prof'l Conduct 1.15(d).

### Rule 2.1. Advisor

This rule provides: "In representing a client, a lawyer shall exercise independent professional judgment and render candid advice." Cal. R. Prof'l Conduct 2.1.

Page 7

Independent professional judgment means judgment grounded in the lawyer's expertise and experience as to the best way to pursue the client's objectives, which the lawyer, as noted above, is required to seek to understand and achieve, without regard to any personal or financial interest of the lawyer. Candid advice means honest and complete advice.

A lawyer may violate this rule if the lawyer advises a client or acts on the client's behalf in a manner that places the lawyer's personal or financial interests above those of the client. A lawyer may also violate this rule by failing to provide honest and complete advice to a client, including, but not limited to, when a matter may implicate a lawyer's own personal, financial, or professional interests.

Rule 8.4. Misconduct

This rule provides in pertinent part:

> It is professional misconduct for a lawyer to:
>
> (a) violate these rules or the State Bar Act, knowingly assist, solicit, or induce another to do so, or do so through the acts of another;
>
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;
>
> (c) engage in conduct involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation;
>
> (d) engage in conduct that is prejudicial to the administration of justice; [or]
>
> (e) state or imply an ability to influence improperly a government agency or official, or to achieve results by means that violate these rules, the State Bar Act, or other law . . . .

Cal. R. Prof'l Conduct 8.4.

A lawyer may violate this rule by misrepresenting to a client the status of a matter in which the lawyer is representing the client, or deliberately concealing material information from that client in the course of the representation.

Page 8

### III.    Demand for Reciprocal Discovery and Expert Notice

In light of your request for the foregoing notice, the Government hereby requests reciprocal notice under Fed. R. Crim. P. 16(b)(1)(C).  In addition, the Government reiterates its prior request for reciprocal disclosure of any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, or copies thereof, which are in the defendant's possession or control, and which the defendant intends to introduce as evidence or otherwise rely on at trial or which were prepared by a witness whom the defendant intends to call at trial.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    *Robert B. Sobelman*
Matthew D. Podolsky
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-1947/2616

# EXHIBIT 1

## NORA FREEMAN ENGSTROM
559 Nathan Abbott Way
Stanford, CA 94305
(650) 736-8891
nora.engstrom@law.stanford.edu

## LEGAL EXPERIENCE

**STANFORD LAW SCHOOL**
*Ernest W. McFarland Professor of Law*, 2021-present
*Co-Director*, Stanford Center on the Legal Profession, 2021–present
*Professor of Law (with Tenure) and Deane F. Johnson Faculty Scholar*, 2014–2021
*Associate Dean for Curriculum*, 2016–2018
*Associate Professor*, 2012–2014
*Assistant Professor*, 2009–2012
- *Classes Taught*: Tort Law; Legal Ethics: The Plaintiffs' Lawyer; Beyond the Common Law: Tort Reform and Tort Alternatives; Responsibility for Risk: Perspectives on Liability Insurance; Discussions in Ethical and Professional Values
- Reporter, American Law Institute, Third Restatement of Torts (Concluding Provisions)
- Adviser, American Law Institute, Third Restatement of Torts (Remedies)

**GEORGETOWN UNIVERSITY LAW CENTER**
*Research Dean's Scholar*, 2007–2009

**WILMER CUTLER PICKERING HALE & DORR, LLP**
*Litigation Associate*, 2005–2007
*Summer Associate*, 2001 & 2002
- Represented clients before various appellate and trial courts.

**HON. MERRICK B. GARLAND, U.S. COURT OF APPEALS FOR THE D.C. CIRCUIT**
*Law Clerk*, 2003–2004

**HON. HENRY H. KENNEDY, JR., U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
*Law Clerk*, 2002–2003

**U.S. DEPARTMENT OF JUSTICE, TERRORISM AND VIOLENT CRIME SECTION**
*Outstanding Scholar*, 1997–1999
- Worked on domestic terrorism and national security issues.
- Recipient of the Attorney General's Award for Superior Service, 1998.

## EDUCATION

**STANFORD LAW SCHOOL**
J.D. with distinction, 2002; Order of the Coif
- *Stanford Law Review*, 2000–2002; Articles Editor, 2001–2002
- Co-President, Stanford Law School Student Body, 2000–2001

**DARTMOUTH COLLEGE**
A.B. in Anthropology, *summa cum laude*, 1997; Phi Beta Kappa, National Merit Scholar

## CASEBOOKS & RESTATEMENT VOLUMES

TORT LAW AND ALTERNATIVES:  CASES AND MATERIALS (Foundation Press, 11th ed. 2021), *with* Marc A. Franklin, Robert L. Rabin, Michael D. Green, & Mark A. Geistfeld

LEGAL ETHICS (Foundation Press, 8th ed. 2021), *with* Deborah L. Rhode, David Luban, & Scott L. Cummings

LEGAL ETHICS (Foundation Press, 7th ed. 2016), *with* Deborah L. Rhode, David Luban, & Scott L. Cummings

RESTATEMENT (THIRD) OF TORTS: CONCLUDING PROVISIONS (Council Draft 1, Aug. 24, 2020), with Michael D. Green

## SCHOLARLY PUBLICATIONS

*Legal Tech and the Litigation Playing Field* (with David Freeman Engstrom) (book chapter, forthcoming, 2021)

*The Road Not Taken: Perspectives on No-Fault Compensation for Tobacco and Opioid Victims,* 70 DEPAUL L. REV. __ (forthcoming, 2021)

*Pursuing Public Health Through Litigation: Lessons from Tobacco and Opioids,* 73 STAN. L. REV. 285 (2021) (with Robert L. Rabin)

*Lone Pine Orders:  A Critical Examination and Empirical Analysis,* 167 U. PA. L. REV. ONLINE 91 (2020) (with Amos Espeland)

*The Lessons of* Lone Pine, 129 YALE L.J. 2 (2019) (Winner, Best Article Prize, Berkley Law Civil Justice Research Initiative)‡

*The Trouble with Trial Time Limits,* 160 GEO. L.J. 933 (2018) (Recognized for High Distinction in 2021 by the Pound Civil Justice Institute)

*When Cars Crash:  The Automobile's Tort Law Legacy*, 53 WAKE FOREST L. REV. 293 (2018)‡

*The Diminished Trial*, 87 FORDHAM L. REV. 2131 (2018)

*Retaliatory RICO and the Puzzle of Fraudulent Claiming*, 115 MICH. L. REV. 639 (2017)

*A Dose of Reality for Specialized Courts:  Lessons from the VICP*, 163 U. PA. L. REV. 1631 (2015)‡

---

‡ Peer reviewed at Jotwell.com as among "the best new scholarship relevant to the law."

*Exit, Adversarialism, and the Stubborn Persistence of Tort Law*, 6 J. OF TORT LAW 75 (2015)

*Lawyer Lending:  Costs and Consequences*, 63 DEPAUL L. REV. 377 (2014)

*3-D Printing and Product Liability:  Identifying the Obstacles*, 162 U. PA. L. REV. ONLINE 35 (2013)

*Re-Re-Financing Civil Litigation:  How Lawyer Lending Might Remake the American Litigation Landscape, Again*, 60 UCLA L. REV. DISC. 110 (2013)

*Attorney Advertising and the Contingency Fee Cost Paradox*, 65 STAN. L. REV. 633 (2013)

*An Alternative Explanation for No-Fault's "Demise,"* 61 DEPAUL L. REV. 303 (2012)

*Sunlight and Settlement Mills*, 86 N.Y.U. L. REV. 805 (2011) ‡

*Legal Access and Attorney Advertising*, 19 J. OF GENDER, SOC. POL'Y & LAW 1083 (2011)

*Run-of-the-Mill Justice*, 22 GEO. J. OF LEGAL ETHICS 1485 (2009)

## WORKING PAPERS

WHY NO FAULT FAILS (book manuscript)

*Competition and Contingency Fees*

*Trial Time Limits:  Behind the Scenes and Beyond the Statistics* (with David Freeman Engstrom)

## OTHER WRITINGS

*TAR Wars: E-Discovery and the Future of Legal Tech*, TEXAS ADVOCATE (forthcoming, 2021) (with David Freeman Engstrom)

*Coronavirus Vaccines and the Law*, LEGAL AGGREGATE, Dec. 22, 2020 (with Peter H. Meyers), https://law.stanford.edu/2020/12/22/coronavirus-vaccines-and-the-law/

*It's Time to Consider Sanctions for Trump's Legal Team*, SLATE, Nov. 23, 2020 (with Scott Cummings, David Luban, and Deborah L. Rhode), https://slate.com/news-and-politics/2020/11/trump-legal-team-rudy-giuliani-state-bar-sanctions.html

---

‡ Peer reviewed at Jotwell.com as among "the best new scholarship relevant to the law."

*Supplying a Key Piece of the Tort-Decline Puzzle,* Review of Alexandra D. Lahav & Peter Siegelman, *The Curious Incident of the Falling Win Rate: Individual vs System-Level Justification and the Rule of Law*, JOTWELL REV., Mar. 30, 2020, https://torts.jotwell.com/supplying-a-key-piece-of-the-tort-decline-puzzle/

Comments *in* POUND CIVIL JUSTICE INSTITUTE, AGGREGATE LITIGATION IN STATE COURTS: PRESERVING VITAL MECHANISMS, at pages 79-82, http://www.poundinstitute.org/wp-content/uploads/2020/02/Pound-Report-2019_low-res_2.13.2020.pdf

*California Bars the Calculation of Tort Damages Based on Race, Gender and Ethnicity,* LAW.COM, Nov. 12, 2019 (with Robert L. Rabin), https://www.law.com/therecorder/2019/11/12/calif-bars-the-calculation-of-tort-damages-based-on-race-gender-and-ethnicity/

*Stanford Legal Experts on Johnson & Johnson's Product Liability Exposure,* LEGAL AGGREGATE, Oct. 14, 2019 (with Diana Garnet Li), https://law.stanford.edu/2019/10/14/stanford-law-experts-on-johnson-johnsons-product-liability-exposure/

*Project Spotlight:  Restatement of the Law Third, Torts, Concluding Provisions,* 41 ALI REPORTER 4, 8 (2019) (with Michael D. Green)

*Stanford Legal Experts on the Oklahoma Opioids Verdict and Ongoing Litigation,* LEGAL AGGREGATE, Aug. 28, 2019 (with Michelle M. Mello), https://law.stanford.edu/2019/08/28/stanford-legal-experts-on-the-oklahoma-opioids-verdict-and-ongoing-litigation/

*Stanford Law Professors on the Lawsuit Against Gun Manufacturers in the Wake of the Sandy Hook Massacre,* LEGAL AGGREGATE, Mar. 14, 2019 (with David M. Studdert), https://law.stanford.edu/2019/03/14/stanford-law-professors-on-sandy-hook-victims-relatives-lawsuit-against-gun-manufacturers/

*Litigation is Critical to Opioid Crisis Response,* DAILY JOURNAL, Mar. 13, 2019, at 1 (with Michelle M. Mello)

*The Downsizing of the American Civil Trial*, DAILY JOURNAL, Sept. 17, 2018, at 6

*Suing the Opioid Companies*, LEGAL AGGREGATE, Aug. 20, 2018 (with Michelle M. Mello), https://law.stanford.edu/2018/08/30/q-and-a-with-mello-and-engstrom/

*Proceed with Caution:  The Dangers of Trial Time Limits*, JURY MATTERS, May 2018, at 4 (with Nathan Werksman), https://civiljuryproject.law.nyu.edu/wp-content/uploads/2018/05/CJP_Newsletter-May-2018_4_PDF.pdf

*Minding the Gap: Access to Justice Over the Years,* Review of Deborah L. Rhode & Scott Cummings, *Access to Justice: Looking Back, Thinking Ahead*, JOTWELL REV., May 2, 2018, https://legalpro.jotwell.com/minding-the-gap-access-to-justice-over-the-years/

*Measuring Common Claims About Class Actions,* Review of Joanna C. Schwartz, *The Cost of Suing Business*, JOTWELL REV., Mar. 16, 2018, https://torts.jotwell.com/measuring-common-claims-about-class-actions/

*Reforming the Civil Justice System? First, Do No Harm,* STANFORD LAWYER MAGAZINE, Spring 2017, at 38

*Questions and Answers on Soto v. Bushmaster Firearms Int'l LLC,* LEGAL AGGREGATE, Apr. 20, 2017, https://law.stanford.edu/2017/04/20/nora-freeman-engstrom-on-soto-v-bushmaster-firearms-intl-llc/

*ISO the Missing Plaintiff,* Review of DAVID M. ENGEL, THE MYTH OF THE LITIGIOUS SOCIETY: WHY WE DON'T SUE (2016), JOTWELL REV., Apr. 12, 2017, http://torts.jotwell.com/?wptouch_switch=desktop&redirect=/2013/09

*Congressional Tinkering with the Civil Justice System is Misguided and Dangerous,* LEGAL AGGREGATE, Mar. 14, 2017, https://law.stanford.edu/2017/03/14/congressional-tinkering-with-the-civil-justice-system-is-misguided-and-dangerous/

*Trump Travel Ban Shines Light on Litigation Funding,* DAILY JOURNAL, Feb. 14, 2017 (with Nathan Werksman)

*Unresolved Issues in Uber Settlement,* STANFORD REPORT, Apr. 25, 2016, https://law.stanford.edu/2016/04/25/professor-nora-freeman-engstrom-clarifies-unresolved-issues-in-uber-settlement/

*Boilerplate and the Boundary Between Contract and Tort,* Review of MARGARET JANE RADIN, BOILERPLATE: THE FINE PRINT, VANISHING RIGHTS, AND THE RULE OF LAW (2013), JOTWELL REV., Apr. 22, 2016, http://torts.jotwell.com/boilerplate-and-the-boundary-between-contract-and-tort/

*Why Flint May Not Find Justice,* L.A. TIMES, Mar. 10, 2016, *available at* http://www.latimes.com/opinion/op-ed/la-oe-0310-engstrom-flint-water-lawsuits-20160311-story.html

*The Flint Water Crisis,* STANFORD REPORT, Feb. 16, 2016, https://law.stanford.edu/2016/02/16/the-flint-water-crisis-professor-nora-freeman-engstrom-answers-critical-legal-questions/

*Should Med-Mal Cases Be Removed from Court System?*, CONN. L. TRIBUNE, Nov. 16, 2015, *available at* http://www.ctlawtribune.com/id=1202742589571/Should-MedMal-Cases-Be-Removed-From-Court-System?mcode=0&curindex=0

*Heeding the Vaccine Court's Failures: Shortcomings of the Compensation Program do not Bode Well for Other Alternative Tribunals*, NAT'L L.J., June 29, 2015, *available at* http://www.nationallawjournal.com/id=1202730681760/OpEd-Heeding-Vaccine-Courts-Failures?slreturn=2015080819475

*Big Data and Deterrence*, Review of Zenon Zabinski & Bernard Black, *The Deterrent Effect of Tort Law: Evidence from Medical Malpractice Reform*, JOTWELL REV., Mar. 4, 2015, *available at* http://torts.jotwell.com/big-data-and-deterrence/

*What Prop. 46 Would Fix*, L.A. TIMES, Oct. 28, 2014 (with Michelle M. Mello and Robert L. Rabin), *available at* http://www.latimes.com/opinion/op-ed/la-oe-engstrom-prop-20141029-story.html

*"The Only Thing We Have to Fear is Fear Itself": How Physicians' Exaggerated Conception of Medical Malpractice Liability Has Become the Real Problem*, Review of Myungho Paik et al., *The Receding Tide of Medical Malpractice Litigation: Part 1 – National Trends*, JOTWELL REV., Apr. 9, 2014 http://torts.jotwell.com/the-only-thing-we-have-to-fear-is-fear-itself-how-physicians-exaggerated-conception-of-medical-malpractice-liability-has-become-the-real-problem/

*Raise the Cap on Malpractice Awards*, L.A. TIMES, Aug. 13, 2013 (with Robert L. Rabin), *available at* http://articles.latimes.com/2013/aug/13/opinion/la-oe-engstrom-malpractice-damage-caps-20130813

*Bridging the Gap in the Justice Gap Literature*, Review of Joanna Shepherd, *Justice in Crisis: Victim Access to the American Medical Liability System*, JOTWELL REV., May 6, 2013, http://torts.jotwell.com/bridging-the-gap-in-the-justice-gap-literature/

*Damage Caps – and Why* Fein *May No Longer Be Good*, Guest Blog for the Torts Prof Blog, Dec. 5, 2012,  http://lawprofessors.typepad.com/tortsprof/2012/12/nora-freeman-engstrom-damage-caps-and-why-fein-may-no-longer-be-good.html

*Shining a Light on Shady Personal Injury Claims*, 2 J. OF INS. FRAUD OF AM. 13 (2011)

## SELECT APPELLATE BRIEFS

Brief of Legal Ethicists as *Amici Curiae* in Support of Respondents, U.S. Supreme Court, *Nat'l Inst. of Family & Life Advocates v. Bacerra*, Case No. 16-1140 (Feb. 2018)

Brief of Professors of Law as *Amici Curiae* in Support of Petitioners, Conn. Sup. Ct., *Soto v. Bushmaster Firearms Int'l, LLC*, Case No. 19832 (Apr. 2017)

Brief for Human Rights Campaign et al., as *Amici Curiae* in Support of Appellants, Conn. Sup. Ct., *Kerrigan v. Comm'r of Public Health*, Case No. 17716 (Jan. 2007)¥

Brief for Equality Maryland, Inc. et al., as *Amici Curiae* in Support of Appellees, Md. Ct. of App., *Conaway v. Polyak*, Case No. 24-C-04-005390 (Oct. 2006) (Counsel of Record) ¥

Brief for the ACLU et al., as *Amici Curiae* in Support of Petitioners, U.S. Supreme Court, *Lopez v. Gonzales*, Case Nos. 05-547, 05-7664 (June 2006) ¥

Brief for Professors of Law as *Amici Curiae* in Support of Respondents, U.S. Supreme Court, *Gonzales v. Oregon*, Case No. 04-623 (July 2005) ¥

## SELECT PRESENTATIONS

Commentator, 27th Annual Clifford Symposium: Civil Litigation in a Post-Covid World (June 2021, via Zoom)

Presenter, Past and Future Influence of Deborah Rhode, Annual Law and Society Conference (May 2021, via Zoom)

Reflections on Deborah L. Rhode: Pioneer and Pathbreaker, Santa Clara Law Review Symposium on Lawyers, Leadership, and Change (Feb. 2021, via Zoom)

"Legal Tech and the Litigation Playing Field," Conference on Legal Tech and the Future of Civil Justice (Feb. 2021, via Zoom)

Commentator, Robert A. Clifford Scholar-in-Residence at DePaul University College of Law Inaugural Presentation (Feb. 2021, via Zoom)

"Pursuing Public Health Through Litigation: Lessons from Tobacco and Opioids," Northwestern Law School Faculty Workshop (Jan. 2021, via Zoom)

"Pursuing Public Health Through Litigation: Lessons from Tobacco and Opioids," Harvard Law School Private Law Workshop (Dec. 2020, via Zoom)

"Pursuing Public Health Through Litigation: Lessons from Tobacco and Opioids," UCLA Course on Civil Procedure (Oct. 2020, via Zoom)

"The Lessons of Lone Pine," Yale Law Review Workshop (Dec. 2019)

Commentator, Pound Civil Justice Institute Judges' Forum, San Diego (July 2019)

Commentator, 25th Annual Clifford Symposium, DePaul Law School (Apr. 2019)

"Trial Time Limits:  Behind the Scenes and Beyond the Statistics," Civil Jury Project Roundtable, NYU School of Law (Apr. 2019)

---

¥ These four briefs were written while I was an Associate at Wilmer Hale.

"The Lessons of Lone Pine," University of Virginia Faculty Workshop (Mar. 2019)

"The Lessons of Lone Pine," Stanford Law School Faculty Workshop (Mar. 2019)

"The Lessons of Lone Pine," Brooklyn Law School Faculty Workshop (Feb. 2019)

"The Lessons of Lone Pine," Changes in the Nature of Proof: Epidemiology and Mass Torts, MDL at 50, Center on Civil Justice at NYU School of Law (Oct. 2018)

"When Cars Crash: The Automobile's Tort Law Legacy," Wake Forest Law Review Symposium, Wake Forest Law School (Nov. 2017)

"The Diminished Trial," Fordham Law Review Ethics Colloquium, Fordham Law School (Oct. 2017)

"The Trouble with Trial Time Limits," Third Annual Civil Procedure Workshop, University of Arizona, Rogers College of Law (Oct. 2017)

"The Trouble with Trial Time Limits," Stanford Law School Faculty Workshop (Aug. 2017)

"The Trouble with Trial Time Limits," Legal Ethics Schmooze, UCLA School of Law (July 2017)

"Health Courts and the VICP," ABA Section on Dispute Resolution Spring Conference, San Francisco, California (Apr. 2017)

"Civil Justice Under Siege: Tort Reform in its Fourth Decade, Gaining Momentum While Changing Course," University of Michigan Law Review Author Workshop (Mar. 2017)

"The First Thing You Do Is Kill All the Lawyers," The Inner Circle of Advocates, San Francisco (Feb. 2017)

"Retaliatory RICO and the Puzzle of Fraudulent Claiming," North American Workshop in Private Law Theory IV, Fordham Law School (Nov. 2016)

"Retaliatory RICO and the Puzzle of Fraudulent Claiming," Loyola L.A. Law School Faculty Workshop (Oct. 2016)

"Veterans' Courts in Context," Veterans Treatment Court Conference, Stanford Law School (May 2016)

"Retaliatory RICO and the Puzzle of Fraudulent Claiming," Workshop on Courts and the Legal Process, Columbia Law School (Mar. 2016) "Retaliatory RICO and the Puzzle of Fraudulent Claiming," New York Torts Group, NYU Law School (Mar. 2016)

"Retaliatory RICO and the Puzzle of Fraudulent Claiming," Stanford Law School Faculty Workshop (Mar. 2016)

7th Annual Stanford International Junior Faculty Forum, Judge and Commentator, Stanford Law School (Oct. 2015)

"Retaliatory RICO and the Puzzle of Fraudulent Claiming," Legal Ethics Schmooze, Stanford Law School (July 2015)

Participant, Comptroller General Forum on Additive Manufacturing, U.S. Government Accountability Office (GAO), Washington, D.C. (Oct. 2014)
- Culminated in the GAO's publication of REPORT TO THE CHAIRMAN, COMMITTEE ON SCIENCE, SPACE, AND TECHNOLOGY, HOUSE OF REPRESENTATIVES, HIGHLIGHTS OF A FORUM: 3D PRINTING: OPPORTUNITIES, CHALLENGES, AND POLICY IMPLICATIONS OF ADDITIVE MANUFACTURING (2015)

"The Plaintiffs' Bar: Where It's Been, Where It's Going," The Inner Circle of Advocates, Washington, D.C. (Aug. 2014)

"No-Fault's Failure and the Persistent Durability of Tort," AALS Annual Meeting, Insurance Law and Torts Compensation Systems Joint Program, New York, New York (Jan. 2014)

"Medical Malpractice Litigation: How Does It Work? What Do We Know? How Are Radiologists at Risk?," Stanford Medical School (Nov. 2013)

"Lawyer Lending: Costs and Consequences," Works-in-Progress Roundtable for Third-Party Funding Scholars, Washington & Lee Law School (Nov. 2013)

6th Annual Harvard-Stanford International Junior Faculty Forum, Judge and Commentator, Harvard Law School (Oct. 2013)

"Lawyer Lending: Costs and Consequences," Stanford Law School Faculty Workshop (Aug. 2013)

"Lawyer Lending: Costs and Consequences," Legal Ethics Schmooze, Fordham Law School (June 2013)

"Potential Tort Liability for 3-D Printing," Roundtable on 3-D Printing, Stanford Center for Internet and Society (May 2013)

"Lawyer Lending: Costs and Consequences," 19th Annual Clifford Symposium, DePaul Law School (Apr. 2013)

"Attorney Advertising and the Contingency Fee Cost Paradox," Stanford Law Review Author Series (Feb. 2013)

"Re-Re-Financing Civil Litigation:  How Lawyer Lending Might Remake the American Litigation Landscape, Again," UCLA Law Review Symposium (Jan. 2013)

"Attorney Advertising and the Contingency Fee Cost Paradox," Stanford Law School Faculty Workshop (Dec. 2012)

5th Annual Harvard-Stanford International Junior Faculty Forum, Judge and Commentator, Stanford Law School (Nov. 2012)

"Attorney Advertising and the Contingency Fee Cost Paradox," International Legal Ethics Conference, Banff, Alberta (July 2012)

"Run-of-the-Mill Justice," Stanford Center for Ethics in Society, Stanford University (May 2012)

"An Alternative Explanation for No-Fault's 'Demise,'" Berkeley Law School Faculty Workshop (Feb. 2012)

"An Alternative Explanation for No-Fault's 'Demise,'" Stanford Law School Faculty Workshop (Jan. 2012)

4th Annual Harvard-Stanford International Junior Faculty Forum, Judge and Commentator, Harvard Law School (Nov. 2011)

"An Alternative Explanation for No-Fault's 'Demise,'" Faculty Speaker Series, Loyola Chicago Law School (Sept. 2011)

"An Alternative Explanation for No-Fault's 'Demise,'" 17th Annual Clifford Symposium, DePaul Law School (Apr. 2011)

"Sunlight and Settlement Mills," New Voices in Civil Justice Scholarship, Vanderbilt Law School (Apr. 2011)

"Sunlight and Settlement Mills," Bay Area Civil Procedure Forum, Hastings Law School (Mar. 2011)

"Settlement Mills," Lecture in "Cutting-Edge Issues in Professional Responsibility," Berkeley Law School (Mar. 2011)

"Advertising and Access," AALS Annual Meeting, Section on Professional Responsibility, San Francisco (Jan. 2011)

"Run-of-the-Mill Justice," International Legal Ethics Conference (July 2010)

"Run-of-the-Mill Justice," Legal Studies Workshop, Stanford Law School (Jan. 2010)

"Run-of-the-Mill Justice," Junior Faculty Speaker Series, Catholic University's Columbus School of Law (Mar. 2008)

## UNIVERSITY SERVICE

LAW SCHOOL COMMITTEES:

Chair, Admissions Committee, 2015–2016, 2019–2020 (member 2013–2016, 2018–2021)

Chair, Curriculum Committee, 2016–2018 (member 2021–present)

Chair, Clerkship Committee, 2013–2015 (member 2009–2015)

Chair, Ad Hoc Committee, 2020

Member, Public Interest Committee, 2009–2012

OTHER:

Stanford University, Board of Judicial Affairs, 2020–2021

Stanford University Faculty Fellow, 2011–2013

Stanford University Faculty Affordability Task Force, 2018–2020 (Chair of Subcommittee on Non-Housing Affordability)

Member, Stanford University Committee on Lecturers, 2017-2018

Stanford University, Voice and Influence Program Participant, 2011–2012

Member, Advisory Board, Stanford Public Interest Law Foundation, 2010–2012

Guest Lecturer (Torts), LeadAmerica/Envision, 2013–2021

Member, Steering Committee, Stanford Center on the Legal Profession, 2009–2021

Faculty Advisor, William A. Ingram Inn of Court, 2009–2013

Stanford University, Diversifying Academia, Recruiting Excellence (DARE) Faculty Resource Advisor, 2012–2013

Faculty Mentor, Stanford Law Association, 2009–2017

## PROFESSIONAL MEMBERSHIP AND SERVICE

U.S. Representative, World Tort Law Society (selected 2020)

Reporter, American Law Institute's Third Restatement of Torts:  Concluding Provisions (appointed 2019)

Adviser, American Law Institute's Third Restatement of Torts:  Remedies (appointed 2020)

Member, Editorial Board of Foundation Press (2021–present)

Member, American Law Institute (elected 2016)

Fellow, American Bar Foundation (selected 2016)

Academic Advisor, NYU Civil Jury Project (selected 2018)

Academic Fellow, Pound Civil Justice Institute (selected 2017)

Executive Committee Member, William A. Ingram Inn of Court, 2012–2013

Selection Committee, Warren E. Burger Prize of the American Inns of Court, 2016–present

Referee: *Yale Law Journal*, *New England Journal of Medicine*, *American Journal of Law and Medicine*, *Stanford Law Review*, *Journal of Empirical Legal Studies*, *Stanford Journal of Complex Litigation*, *Law & Society Review*, *Law & Social Inquiry*, *Journal of Consumer Policy*, *Journal of Law and Economics*

Co-Editor (Legal Profession), *Jotwell*, 2017–2021

Contributing Editor (Legal Profession), *Jotwell*, 2013–present

Contributing Editor (Torts), *Jotwell*, 2013–present

Admitted to the Bars of California, District of Columbia, and Maryland

*Dated:  July 2021*

EXHIBIT 2



**Mark L. Tuft** is a Certified Legal Malpractice Specialist (California State Bar Board of Legal Specialization) and a litigation partner with Cooper, White & Cooper LLP. He serves as outside counsel to lawyers, law firms, and public and private organizations on professional responsibility and professional liability matters, including law firm mergers and dissolutions, conflicts of interests, attorney sanctions and State Bar admission and disciplinary matters. He also acts as an expert witness and consultant in these matters. His practice includes legal malpractice defense, media law and related first amendment litigation. He also serves as an arbitrator and mediator in lawyer-client and law firm disputes. Mr. Tuft has served on several California State Bar Commissions on revisions to the Rules of Professional Conduct and the State Bar's Task Force on Access Through Innovation of Legal Services. He is a former Chair and special advisor to the California State Bar Committee on Professional Responsibility and Conduct and served on State Bar Task Forces on Multi-Disciplinary Practice and amendments to the rules of professional conduct. Mr. Tuft has taught professional responsibility as an adjunct professor at the University of San Francisco School of Law and has lectured on legal ethics at U.C. Berkeley School of Law and Hastings School of Law. He has served on the Board of Directors of the Bar Association of San Francisco and formerly chaired its ethics committee. Mr. Tuft is a member of the ABA Center on Professional Responsibility and currently chairs its editorial board. He is a past president of the Association of Professional Responsibility Lawyers and a member of the American Law Institute. Mr. Tuft is a frequent lecturer and writer on professional responsibility issues and has received several teaching awards. Mr. Tuft is coauthor of The Rutter Group *California Practice Guide: Professional Responsibility*.

# RECENT PROGRAMS[1]

- Panelist, "Ethical Challenges for California Lawyers 2021-2022" The Rutter Group (3 hour Live Webcast, Los Angeles, CA. November 16, 2021)

- Panelist, "The Do's and Don'ts of Negotiating and Managing Aggregate Settlements: The Rutter Group (1 hour Live Webcast, Los Angeles, CA, November 16, 2021)

- Panelist, PLI's California MCLE Marathon 2021: Current Developments in Legal Ethics-Competence Issue, San Francisco, CA (Live Webcast, November 8, 2021)

- Panelist, The Complex Web of Licensing and Multi-Jurisdictional Practice for External Attorney Investigators – 2021 AWI Annual Conference, (Remote Access, Denver, CO, October 14, 2021)

- Co-Chair, "The Law and Ethics of NewLaw 2021," Practicing Law Institute Webinar, October 7, 2021

- Panelist, Legal Ethics – "At the Intersection of Truth and Free Speech-What Happens When Freedom of Speech and Truth Collide?," The Rutter Group Webinar, Los Angeles, CA, May 7, 2021 (Via Zoom)

- Speaker, California Lawyers Association Webinar, "The Ethical Consequences of Lawyers Engaging in Prohibited Discrimination/Harassment/Retaliation," Oakland, CA, May 6, 2021

- Speaker, CEB/Alameda County Bar Association, "CEB Multi-Jurisdictional Practice Program," Oakland, CA, April, 2021

- Speaker, "CEB 's December Annual Key Developments in Ethics Program with CEB" (Via Zoom)

- Panelist, PLI" California MCLE Marathon – 2020 – The Evolving Profession – Material Limitation Conflicts Under Rule 1.7 (Live Webcast November 16, 2020)

- Panelist, Legal Ethics Webinar, "Collecting or Forfeit? Ethics, Fees and Dividing Fees," The Rutter Group (Thomson Reuters), November 5, 2020

---

[1] Since 2015

- Panelist, Legal Ethics 2020 Webinar "Ethical Challenges for California Lawyers 2020-2021," The Rutter Group (Thomson Reuters), November 5, 2020

- Co-Chair, PLI The Law and Ethics of NewLaw, San Francisco, CA, September 2020

- Speaker, BASF Legal Ethics Program "The Law Governing Lawyers – The Year in Review," San Francisco, CA January 2020

- Speaker, CEB Annual Review Program – Legal Ethics, Oakland, CA, January, 2020

- Panelist, PLI California MCLE Marathon 2019: Current Developments in Ethics, San Francisco, CA. December, 2019

- Panelist, Communicating with Represented and Unrepresented Persons, The Rutter Group, Los Angeles, CA, November 5, 2019

- Panelist, Ethics for California Lawyers, The Rutter Group, Los Angeles, CA, November 5, 2019

- Co-Chair, PLI The Law and Ethics of NewLaw, San Francisco, CA, October 2019

- Panelist, ABA Fall 2019 National Legal Malpractice Conference "Cutting-Edge Conflicts: "Recent Developments in Perilous Times", San Diego, CA, September 2019

- Panelist, "Attorney Advertising and the Search for Plaintiffs," George Mason University Antonin Scalia Law School Thirteenth Annual Judicial Symposium on Civil Justice Issues, Arlington, VA, May 6, 2019

- Speaker, BASF Legal Ethics Program "The Law Governing Lawyers 2019 - The Year in Review," San Francisco, CA  January 2019

- Speaker, CEB Annual Review Program – Legal Ethics, San Francisco, CA, January 2019

- Panelist, PLI  California MCLE Marathon 2018: "Current Developments in Ethics," San Francisco, December 2018

- Speaker, "Legal Ethics for California Lawyers 2018-2019" The Rutter Group, Los Angeles, CA, November, 2018

- Speaker, CEB/Alameda County Bar Association, "Ethics - New rules CLE with the ACBA" Oakland, CA, October, 2018

3

- Panelist, "Mastering California's New Rules of Professional Conduct – What Every Lawyer Needs to Know to be in Compliance" The Rutter Group. Los Angeles, October, 2018

- Panelist, "Mastering California's New Rules of Professional Conduct (What Every Lawyer Needs to Know To Be In Compliance" The Rutter Group, San Francisco, CA, September, 2018

- Speaker, Alameda County Bar Association: "What California Attorneys Need to Know About New Ethics Rules", Oakland, CA, September, 2018

- Panelist, "New Professional Responsibilities of Prosecutors CRPC-5110" The Rutter Group, Universal City, CA, April, 2018

- Speaker, "CEB's January Ethics Live Cast" Oakland, CA, January, 2018

- Speaker, BASF Legal Ethics Program, "The Law Governing Lawyers 2017-2018: The Year in Review," San Francisco, CA, January, 2018

- Panelist, PLI's California MCLE Marathon 2017 Current Developments in Legal Ethics, San Francisco, December, 2017

- Speaker "Representing Clients with Diminished Capacity: Managing Risks and Satisfying Responsibilities," Pilot Legis Annual Conference, New Orleans LA, October 2017

- Moderator, "New and Evolving Attorney Disqualification Issues" California Judges Association/Rutter Group Annual Program, Los Angeles, CA, February, 2017

- Speaker, BASF Legal Ethics Program, "The Law Governing Lawyers 2016-2017: The Year in Review," San Francisco, CA, January, 2017

- Panelist, PLI California MCLE Marathon Program 2016, Current Developments in Legal Ethics, San Francisco, CA, December 2016

- Speaker, "Legal Ethics for California Lawyers 2016-2017" The Rutter Group, Universal City, CA, November, 2016

- Speaker, "Fee-Sharing Fundamentals, Strategies and Trends" The Rutter Group, Universal City, CA, November, 2016

- Panelist, State Bar of California, 89th Annual Meeting, "Really Interesting Legal Ethics Stuff," San Diego, CA, September, 2016,

- Speaker, ABA 42nd Annual Meeting, "Rethinking Advertising Rules," Philadelphia, PA, June, 2016

4

- Panelist, State Bar of California, Ethics Symposium, "Redux: Who's Running the Profession? The Future of Rules-Making and the Disciplinary Process," San Francisco, CA, April, 2016

- Speaker, Hinshaw & Culbertson LMRM Conference, Joint program on "Phantom Clients and How to Exorcise Them," Chicago, IL, March, 2016

- Speaker, BASF Legal Ethics Program, "The Law Governing Lawyers 2015-2016: The Year in Review," San Francisco, CA, January, 2016

- Speaker, NOBC/APRL joint program on the Regulation of Lawyer Advertising, Chicago, IL, July, 2015

- Speaker, 14th Hinshaw & Culbertson LMRM Conference, "Conflicts: Who is Your Client?", Chicago, IL, February, 2015

- Speaker, CEB/Alameda County Bar Association, "FAQs: The Lawyer's Duty of Confidentiality," Oakland, CA, January, 2015

## RECENT ARTICLES [2]

- Paper, "Remote Practice is Here to Stay" Practicing Law Institute, "The Law and Ethics of NewLaw," October 7, 2021

- "A Brief Rundown on Material Limitation Conflicts for California Lawyers." Practice Law Institute (November 18, 2020)

- "Conflicts Based on Personal Relationships with Opposing Counsel," Daily Journal Vol. 126, No. 202 (Oct. 16, 2020)

- "Threats, Extortion and Legitimate Advocacy," California Lawyers Association Journal of the Litigation Section, Vol 33 No. 2 (2020)

- "How Not to Be A Lawyer," Daily Journal, March 22, 2019

- "Recent Developments on Professional Responsibility and the Attorney-Client Privilege" PLI's California MCLE Marathon 2017, September 2017; co-authored with Sarah J. Banola, Esq.

- "De-Unifying California's Integrated Bar," Daily Journal, April 17, 2017

- "Navigating Duties Between Prospective and Former Clients,"    Practicing Law Institute December, 2016

---

[2] Since 2015

- "Rethinking Lawyer Advertising Rules," 23 The Professional Lawyer, 23 (ABA 2016)

- Co-Author, Association of Professional Responsibility Lawyers (APRL), 2016 Supplemental Report of the Regulation of Lawyer Advertising Committee, June 20, 2016

- Co-Author, Association of Professional Responsibility Lawyers (APRL), 2015 Report of the Regulation of Lawyer Advertising Committee, June 22, 2015