UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                               :

  UNITED STATES OF AMERICA          :

                                                :

            - *v.* -                   :               19 Cr. 374 (JMF)

                                                :

  MICHAEL AVENATTI,               :

                                                  :

                    Defendant.       :

                                                  :

------------------------------------------------------- x

## THE GOVERNMENT'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THE GOVERNMENT'S MOTIONS *IN LIMINE*

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

Matthew D. Podolsky
Andrew A. Rohrbach
Robert B. Sobelman
Assistant United States Attorneys

    - Of Counsel -

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ....................................................................................................................... 1

I.     The Court Should Admit Evidence Regarding the Disposition of Criminal Proceeds ........ 1

II.    The Court Should Admit Evidence Regarding the Defendant's and His Law Firm's Financial Circumstances.................................................................................................. 3

III.   The Court Should Admit Evidence of the Defendant's Failure to File Income Tax Returns…................................................................................................................... 11

IV.    The Court Should Preclude Evidence and Argument that Victims of the Defendant's Scheme to Defraud Are to Blame for Having Acted Negligently or Gullibly ................... 13

V.     The Court Should Preclude Argument that the Defendant Lacked Intent to Defraud Because He Intended that the Victim Would Ultimately Be Repaid................................................. 13

VI.    The Court Should Preclude Evidence or Argument Concerning the Potential Punishment or Consequences of Conviction .......................................................................................... 13

VII.   The Court Should Preclude Evidence or Argument Concerning the Defendant's Prior Commission of "Good Acts" and/or Failure to Commit Other "Bad Acts" ...................... 14

CONCLUSION.................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Gist v. United States*, No. 16 Cr. 656 (GHW), 2021 WL 3774289 (S.D.N.Y. Aug. 24, 2021)

.............................................................................................................. …...8, 9, 11

*Shannon v. United States*, 512 U.S. 573 (1994)............................................................... 15

*United States v. Amico*, 486 F.3d 764 (2d Cir. 2007) ................................................... 14

*United States v. Avenatti*, --- F. Supp. 3d ----, No. 19 Cr. 374 (JMF), 2021 WL 4120539

(S.D.N.Y. Sept. 9, 2021)................................................................................................ 7

*United States v. Blaszczak*, 308 F. Supp. 3d 736 (S.D.N.Y. 2018)................................ 8, 9, 11, 12

*United States v. Brennerman*, 818 F. App'x 25 (2d Cir. 2020) ..................................... 8

*United States v. Brik*, No. 15 Cr. 78 (SRN), 2016 WL 3753080 (D. Minn. July 11, 2016)......... 13

*United States v. Carroll*, No. 19 Cr. 545 (CM), 2020 WL 1862446 (S.D.N.Y. Apr. 14, 2020)

........................................................................................................... ….9, 11

*United States v. Colasuonno*, 697 F.3d 164 (2d Cir. 2012) ......................................... 13

*United States v. Collins*, 409 F. Supp. 3d 228 (S.D.N.Y. 2019)......................................... 9, 11, 12

*United States v. Finnerty*, 411 F. Supp. 2d 428 (S.D.N.Y. 2006)..................................... 8

*United States v. Gupta*, 848 F. Supp. 2d 491 (S.D.N.Y. 2012) ....................................... 9

*United States v. Hatfield*, No. 06 Cr. 550 (JS), 2010 WL 183522 (E.D.N.Y. Jan. 8, 2010)......... 13

*United States v. Hutcher*, 622 F.2d 1083 (2d Cir. 1980) ............................................... 8

*United States v. Klump*, 536 F.3d 113 (2d Cir. 2008)..................................................... 8

*United States v. LeRoy*, 687 F.2d 610 (2d Cir. 1982) ................................................... 12

*United States v. Martoma*, 990 F. Supp. 2d 458 (S.D.N.Y. 2014) ............................... 10

*United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018)

.............................................................................................................................. 9, 12

*United States v. Morell*, 524 F.2d 550 (2d Cir. 1975) ................................................... 8

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006)............................................... 2

*United States v. Ravich*, 421 F.2d 1196 (2d Cir. 1970) ................................................. 2

*United States v. Redcorn*, 528 F.3d 727 (10th Cir. 2008)......................................... 3, 4

*United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441 (S.D.N.Y. Jan. 18, 2018)........ 13

*United States v. Siddiqui*, 699 F.3d 690 (2d Cir. 2012)............................................... 5

*United States v. Thomas*, 377 F.3d 232 (2d Cir. 2004).............................................. 14

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) ................................................................. 8

**STATUTES**

18 U.S.C. § 3500 ........................................................................................................................ 8

**RULES**

Fed. R. Crim. P. 12 .................................................................................................................... 7
Fed. R. Crim. P. 16 .................................................................................................................... 8
Fed. R. Evid. 401 ....................................................................................................................... 2

## PRELIMINARY STATEMENT

The Government respectfully submits this reply memorandum in support of its motions *in limine* (Dkt. No. 176 ("Mot.")) and in response to the defendant's opposition to those motions (Dkt. No. 187 ("Opp'n")).[1]  For the following reasons, the Government's motions *in limine* should be granted.

## ARGUMENT

### I.     The Court Should Admit Evidence Regarding the Disposition of Criminal Proceeds

The defendant argues that the defendant's disposition of the criminal proceeds is not relevant under Rule 401 and that evidence of how he spent the proceeds would be unfairly prejudicial under Rule 403.  (Opp'n 7.)  He is wrong.

First, the defendant suggests that the defendant's use of the criminal proceeds cannot be relevant under Rule 401 because "what [the] defendant did or did not do with the money or property at issue" is not an element of the offenses charged.  (Opp'n 8.)  That is not, of course, the test for relevance under Rule 401, which provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  This is generally not a difficult test to meet.  *See, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) ("so long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry" (citing *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) (Friendly, J.))).  As explained in the Government's motion, such evidence is highly probative in this case for at

---

[1]     On December 26, 2021, the Government requested leave to file this reply memorandum, which request remains pending.  (Dkt. No. 193.)  Based on a conversation with defense counsel, the Government understands that the defendant does not object to the Government's request for leave to file.

least three reasons: (1) evidence tracing the disposition of the fraud proceeds is necessary to prove that the defendant devised a scheme and intended to deprive Victim-1 of money or property, which the Government has the burden of demonstrating to the jury; (2) the manner in which the funds were spent provides important proof and corroboration that the defendant converted the money to his own use; and (3) the fact that the defendant promptly spent the money he stole on both pending obligations and personal luxuries is probative of his intent to defraud.  (Mot. 4-6.)  The defendant does not in his opposition respond to any of these points, presumably because they are correct.

In its motion, the Government cited numerous decisions issued by the Second Circuit and in this District demonstrating that evidence showing how a defendant spent the proceeds of his or her crime is routinely admitted in this Circuit as relevant evidence to establish a defendant's motive and intent for committing the crime.  (Mot. 4-5.)  The defendant's opposition ignores those decisions entirely, and instead relies exclusively on the out-of-circuit decision in *United States v. Redcorn*, 528 F.3d 727 (10th Cir. 2008).  (Opp'n 8.)  Even if this Court were applying Tenth Circuit precedent, however, *Redcorn* would be of no assistance to the defendant's argument, as *Redcorn* has nothing whatsoever to do with the admissibility of evidence of disposition of criminal proceeds in a fraud trial.  In *Redcorn*, the Tenth Circuit addressed the entirely separate question of whether wires executed to transfer criminal proceeds after the proceeds had already been converted to the defendants' own bank accounts are sufficient to meet the wire element of a fraud charge. 528 F.3d at 738-40.  Although the defendant here is literally correct that the Tenth Circuit "overturn[ed] the[ ] convictions" (Opp'n 8), the Tenth Circuit's ruling has nothing to do with whether evidence concerning the disposition of crime proceeds may properly be admitted at trial, especially where it bears directly on a defendant's execution of a scheme to defraud, as well as his intent and motive (and is not being offered for the purpose of meeting the wire transmission

2

element of wire fraud), and indeed the Tenth Circuit did not conclude that the evidence was inadmissible.  If anything, *Redcorn* supports the admissibility of the evidence of the disposition of the proceeds here because, unlike in *Redcorn* where the defendants had transferred the criminal proceeds into personal bank accounts prior to the wire further transferring the money, 528 F.3d at 738, the defendant here spent the criminal proceeds directly from law firm bank accounts—a point made in the Government's motion (Mot. 3), to which the defendant does not respond.

Second, the defendant argues that his "spending of allegedly ill-gotten gains presents a substantial danger of prejudice, misleading the jury, and confusing the issues."  (Opp'n 10.) However, he mischaracterizes the scope of the Government's motion as broadly encompassing the defendant's "spending habits," rather than the limited scope of evidence the Government intends to offer: how the defendant disposed of the particular funds stolen as part of the charged scheme. The defendant neither addressed the cases on which the Government relied in its motion to support admissibility of this evidence under Rule 403 (*see* Mot. 6-7), nor did he cite any legal authority in support of his argument (*see* Opp'n 10).   There is no basis to preclude this evidence under Rule 403.[2]

## II.     The Court Should Admit Evidence Regarding the Defendant's and His Law Firm's Financial Circumstances

The defendant argues that evidence concerning his and his law firm's financial circumstances should be precluded because the defendant's "motive . . . has no bearing on whether he committed the alleged crimes."  (Opp'n 14.)  This assertion is wrong in nearly any case and

---

[2]       The defendant speculates that the Government might attempt to "introduc[e] testimony of Mr. Avenatti's [spending] habits generally . . ., including evidence of Mr. Avenatti's former wealth, cars, jets, clothing, apartment and homes, travel, and spending habits."  (Opp'n 10-11.) The Government does not presently intend to adduce such evidence in general form, but rather as tailored in the description above, and, if it does at a later point, will confer with the defendant in advance of doing so to permit any objections to be raised in a timely manner.

particularly so in this one.  "[T]he defendant's motive—an explanation of *why* the defendant would engage in the charged conduct—becomes highly relevant when the defendant argues that he did not commit the crime."  *United States v. Siddiqui*, 699 F.3d 690, 702 (2d Cir. 2012)*.*  In the defendant's opposition, he fails to grapple with the controlling law set forth in the Government's brief (*see* Mot. 7-8) and simply ignores the numerous examples the Government cited of decisions in which the Second Circuit affirmed admission of evidence of a defendant's motive or where a district court found such evidence relevant and admissible (*see* Mot. 8-9).  (*See* Opp'n 14-17.)

Instead of responding to the legal authorities relied upon by the Government, the defendant asks the Court to accept proffered facts and a legal proposition that are ungrounded in either the record or the law.  The defendant contends that "there will be no dispute at trial" that the defendant "obtained money on [Victim-1's] behalf and kept a portion of it."  (Opp'n 17.)  That assertion is inconsistent with the allegations and facts of this case.  As alleged in the Indictment, the defendant used false wire instructions that he provided to Victim-1's literary agent, on which he used Victim-1's signature without her authority, to fraudulently induce the literary agent to redirect Victim-1's book advance payments to himself.  The defendant, who was desperate for money in light of his and his law firm's dire financial condition, then immediately spent *all* of the proceeds, not just "a portion of it."  (Opp'n 17.)  The defendant did not "obtain money on [Victim-1's] behalf"—he fraudulently obtained Victim-1's money on his own behalf.  The defendant then lied, for months, to Victim-1 about the status of those payments.  It is imperative that the jury be provided the context of the defendant's motive in order for it to be able to properly assess the defendant's conduct and intent in determining his guilt.  Absent such context, the jury may be left with the misimpression that there was no or little incentive for the defendant to commit the crimes charged. In short, the defendant's reasons for taking Victim-1's money—to satisfy his own financial

needs—are highly relevant and probative as to whether he had an intent to defraud, as they make it far more likely that the defendant misled Victim-1 and Victim-1's book agent in order to convert Victim-1's money to the defendant's own use.

The defendant also attempts to inject controversy from a trial in the United States District Court for the Central District of California by raising the specter—without actually claiming any discovery violation here—that "the Government's efforts to introduce evidence of [the defendant]'s and his firm's financial condition against him risk creating the same issue that caused a mistrial in the wire fraud prosecution against him in the Central District of California." (Opp'n 18-20.) The defendant refers to the contents of servers of his former law firm that were seized by the United States Attorney's Office for the Central District of California ("USAO-CDCA") (or its law enforcement partner, IRS-CI) and expert financial analysis apparently undertaken by that office in the course of its investigation or in preparation for trial in that district. (*Id.*) None of these materials have been or are in the possession of the Government here, and, in any case, it appears that the materials *are* in the possession of the defendant, and the defendant identifies no actual "issue" with these materials that would prevent the Government from introducing evidence of the defendant's or his law firm's financial condition at the time of the conduct in this case.[3]

Moreover, to the extent that the defendant even hints that the Government has not satisfied its discovery obligations, he is incorrect. With respect to the servers of the defendant's former law firm, the defendant's attorneys in his separate case before Judge Gardephe requested in early 2019 a copy of the data, to which the Government responded and stated on the record in open court that

---

[3]     The Government has issued a subpoena to the Trustee for Eagan Avenatti LLP seeking certain data related to Victim-1, if any exists, that may have been in two databases that the Government understands were maintained on the servers. To the extent the Government receives any materials in response to its subpoena, it will promptly provide a copy of those materials to the defendant (though they appear already to be in his possession).

it did not have possession of the servers and had not reviewed its contents. (No. 19 Cr. 373, Dkt. No. 25 at 7, 9.) The defendant's attorneys in that case did not make any further request to the Government relating to the servers, and the defendant's attorneys here have never made such a request. With respect to certain expert materials apparently created at the direction of the USAO-CDCA, on October 13, 2021, the defendant sent a letter to the Government referencing these materials and requesting that the Government obtain and produce "information about Eagan Avenatti, LLP's finances that is in the possession of the C.D. Ca. prosecutors and/or the C.D. Ca. privilege review team." Although it is not clear whether this language was intended to encompass content on the servers of the defendant's former law firm as well, the Government responded by letter on November 14, 2021, stating, among other things, that "USAO-CDCA conducted a separate investigation into separate conduct, and is not part of the prosecution team for discovery, *Brady*, or *Giglio* purposes in this case," and that the defendant, based on his own representations, appeared to have in his possession the materials he sought in any case. The defendant did not disagree or seek any form of relief from the Court. Indeed, the defendant has never made a motion in this case—and only did so before Judge Gardephe after his conviction at trial in that separate prosecution—arguing in any form that the Government is jointly prosecuting him with the USAO-CDCA or that the Government has any discovery obligations with respect to materials that may be in that office's possession. Indeed, any such claim has now been waived. *See United States v. Avenatti*, --- F. Supp. 3d ----, No. 19 Cr. 374 (JMF), 2021 WL 4120539, at *1 (S.D.N.Y. Sept. 9, 2021) ("The Court would be on firm ground denying Avenatti's 'omnibus' motion as untimely given that he did not seek, let alone obtain, leave of Court to bring another set of motions and there is no reason he could not have made his present arguments earlier."); *see also* Fed. R. Crim. P. 12(b)(3)(E) (motion for discovery under Rule 16 must be included in pretrial motions); *United*

6

*States v. Klump*, 536 F.3d 113, 120 (2d Cir. 2008); *United States v. Yousef*, 327 F.3d 56, 124-25 (2d Cir. 2003).

In any event, any motion claiming that the prosecution team in this case encompasses any representative of the USAO-CDCA would be wholly without merit. Discovery and disclosure obligations under Federal Rule of Criminal Procedure 16, *Brady*, 18 U.S.C. § 3500 (the Jencks Act), and otherwise apply only to the material in the possession of the United States. *See, e.g.*, *United States v. Brennerman*, 818 F. App'x 25, 29 (2d Cir. 2020) (rejecting *Brady* and Jencks Act claim regarding materials allegedly in victim's possession because "government's discovery and disclosure obligations extend only to information and documents in the government's possession"); *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) ("Clearly the government cannot be required to produce that which it does not control and never possessed or inspected." (internal quotation marks and citation omitted)). In this context, "the United States" refers not to any component or member of the federal government, but only to the prosecution team in the case at issue. *See, e.g.*, *United States v. Finnerty*, 411 F. Supp. 2d 428, 432 (S.D.N.Y. 2006). That individuals "fall under the broad umbrella of the Department of Justice" does not thereby render them part of a same prosecution team. *Gist v. United States*, No. 16 Cr. 656 (GHW), 2021 WL 3774289, at *17 (S.D.N.Y. Aug. 24, 2021).

In determining the scope of the prosecution team, the pertinent question is whether the person possessing the material at issue "is an 'arm of the prosecutor.'" *United States v. Blaszczak*, 308 F. Supp. 3d 736, 741 (S.D.N.Y. 2018) (quoting *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975)). Courts in this district generally look to the following factors in determining whether the prosecution conducted a "joint investigation": (1) whether the other agency participated in the prosecution's witness interviews, (2) whether the other agency was involved in

presenting the case to the grand jury, (3) whether the other agency reviewed documents gathered by or shared documents with the prosecution, (4) whether the other agency played a role in the development of prosecutorial strategy, or (5) whether the other agency accompanied the prosecution to court proceedings." *United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018); *see also, e.g.*, *Gist*, 2021 WL 3774289, at *17 (same); *United States v. Carroll*, No. 19 Cr. 545 (CM), 2020 WL 1862446, at *9-10 (S.D.N.Y. Apr. 14, 2020) (citing *Middendorf*); *United States v. Collins*, 409 F. Supp. 3d 228, 239 (S.D.N.Y. 2019) (same); *Blaszczak*, 308 F. Supp. 3d at 741-43.

That certain members of a separate team may have attended interviews conducted by a prosecution team does not render the teams one and the same, particularly where the number of interviews conducted together is relatively small and where the teams do not make joint strategic or prosecutive decisions. *See Collins*, 409 F. Supp. 3d at 241 (no joint investigation where, *inter alia*, two teams "both participated in only 16 of 60 interviews of 37 distinct witnesses"); *see also, e.g.*, *Middendorf*, 2018 WL 3956494, at *4; *Blaszczak*, 308 F. Supp. 3d at 741-43. In any event, "[a]n investigation may be joint for some purposes; it may be independent for others," and therefore even where there are certain joint investigative activities, that does not, without more, give rise to an obligation for the Government to search the entire file of a separate team. *United States v. Gupta*, 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012) (explaining that even where there is some joint fact-finding, the entirety of the other team's file is not subject to *Brady* review, but rather only those files "arising from . . . joint efforts"); *see also Carroll*, 2020 WL 1862446, at *9 ("joint fact gathering" does not "give rise to an obligation by the Government to review [another team's] entire investigative file"); *United States v. Martoma*, 990 F. Supp. 2d 458, 462 (S.D.N.Y.

2014) (ordering production of specific subset of documents in possession of agency involved in joint fact-finding).

Here, the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") and the USAO-CDCA have conducted their respective investigations and prosecuted their respective cases separately with separate agency partners (FBI-NY for this case, IRS-CI for the USAO-CDCA's investigation). The interactions between the two offices principally have involved deconfliction, as well as accommodating a limited number of specific requests for information transfer between the offices and permitting members of the other office to join or listen to a small number of meetings with certain witnesses of mutual interest, so as to avoid duplication and to respect those witnesses' and their counsels' time. Specifically, the USAO-SDNY and USAO-CDCA met, for mutual convenience, approximately four times together with one witness,[4] and one time together with a second witness.[5]

During the course of its investigation of the conduct underlying this prosecution as well as its prosecution of the defendant relating to his extortion and honest services fraud scheme before Judge Gardephe, the USAO-SDNY met at least once with more than approximately 45 other witnesses for a total of more than 120 interviews. No representative of the USAO-CDCA or its prosecution team had any involvement whatsoever with any of those interviews. Similarly, the USAO-SDNY did not attend any other interviews conducted by any representative of the USAO-CDCA or its prosecution team. The USAO-SDNY also conducted its own financial analysis, and,

---

[4]    The USAO-SDNY also met with this witness on approximately three occasions without any representative of the USAO-CDCA, and the USAO-CDCA met with this witness on at least seven occasions without any representative of the USAO-SDNY.

[5]    The USAO-SDNY also met with this witness twice without any representative of the USAO-CDCA, and the USAO-CDCA met with the witness at least once without any representative of the USAO-SDNY.

during the course of its investigation and the trial in that case, had no awareness of or involvement with any expert or consultant of the USAO-CDCA and was not aware of any such analyses.  Nor did the USAO-SDNY have access to or possession of the servers of the defendant's former law firm.

The USAO-SDNY and the USAO-CDCA did not engage in a joint investigation—and certainly not with respect to any of the materials referenced by the defendant here—and the USAO-CDCA was not "an arm of the" USAO-SDNY.  *Blaszczak*, 308 F. Supp. 3d at 741.  Indeed, of the more than 125 interviews the USAO-SDNY conducted of over 45 witnesses relating to both of its prosecutions, the USAO-CDCA attended approximately five interviews involving only two witnesses.  *See Collins*, 409 F. Supp. 3d at 241 (no joint investigation where, *inter alia*, two teams "both participated in only 16 of 60 interviews of 37 distinct witnesses").  The USAO-CDCA also had no role in the presentation of this case to the grand jury, and the two offices did not share documents other than in response to a small number of specific, discrete requests for certain materials.  Further, the USAO-CDCA played no role in the development of the USAO-SDNY's prosecutorial strategy.  Although representatives of the USAO-CDCA were present for the presentment of the defendant upon his arrest on both the USAO-SDNY's and the USAO-CDCA's separate charges in New York, the USAO-CDCA did not "accompan[y] the prosecution to court proceedings" in this case, and the members of the USAO-SDNY prosecution team have never attended a court proceeding in the USAO-CDCA.[6]  These circumstances present even less of a basis for a finding of a joint prosecution team than in other cases where no joint investigation was found.  *See, e.g.*, *Gist*, 2021 WL 3774289, at *17; *Carroll*, 2020 WL 1862446, at *9-10; *Collins*,

---

[6]     The defendant did, for reasons unclear to the USAO-SDNY, call as a witness at his trial in the Central District of California an FBI agent who was formerly part of the prosecution team here.

409 F. Supp. 3d at 239; *Middendorf*, 2018 WL 3956494, at *5; *Blaszczak*, 308 F. Supp. 3d at 741-43.

Finally, to the extent that the defendant suggests that he is in need of materials from the servers of his former law firm or the USAO-CDCA's expert, he has no basis for any form of complaint, inasmuch as he has represented that he has those materials from the USAO-CDCA, and the Government here does not and has never had any of these items. *See, e.g.*, *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982) ("Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence."). Moreover, to the extent that the defendant wishes to offer evidence or argument relating to his or his law firm's finances in the time period relevant to this case, the Government has indeed produced in this case the defendant's own bank records, as well as his law firm's.

In short, the defendant's vague allusions to whatever circumstances might have led to a mistrial in his prosecution in the United States District Court for the Central District of California have no relevance here, much less do they provide a basis to preclude the admission of admissible evidence.

## III.   The Court Should Admit Evidence of the Defendant's Failure to File Income Tax Returns

The defendant argues that evidence of his failure to file income tax returns for the two years during which he engaged in the charged conduct is not relevant and is unfairly prejudicial. (Opp'n 20-21.) He is wrong. The defendant, who cites no legal authority in support of his argument and addresses none of the precedent cited in the Government's motion, suggests that, if he had filed tax returns, that might not have "required [him] to specify on such a granular level the source(s) of his income to include the clients he represented." (Opp'n 20.) The defendant provides

11

no factual or legal support for this contention, and, in any event, is beside the point. The defendant's failure to file income tax returns for himself and his law firm for the relevant time period is admissible to show that the defendant was engaged in the concealment of his and his law firm's finances, which bears on his knowledge and intent. A part of the financial picture that the defendant sought to hide for 2018 and 2019 was the defendant's criminal proceeds resulting from the offenses charged in this case. Such evidence is plainly relevant and admissible. (*See* Mot. 11-12 (citing cases).)

The defendant further argues that he, improbably, has some type of "advice-of-counsel defense" concerning his failure to file tax returns. (Opp'n 21.) To date, the Government has been provided no information about this purported defense beyond the one-sentence reference in the defendant's opposition. (*See id.*) To the extent the defendant wishes to persist in raising such a "defense," he should be directed to promptly provide (i) written notice of any alleged advice-of-counsel defense, including its bases and scope and (ii) any discovery materials in support of this defense, to the extent not already in the Government's possession. *See United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018), *aff'd*, 820 F. App'x 23 (2d Cir. 2020); *United States v. Hatfield*, No. 06 Cr. 550 (JS), 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010). Absent the defendant providing such notice and discovery materials, and establishing an admissible factual basis for the elements of an advice-of-counsel defense, he should be precluded from making any such argument at trial or invoking such a defense in an attempt to preclude the Government's evidence. *See, e.g.*, *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012); *United States v. Brik*, No. 15 Cr. 78 (SRN), 2016 WL 3753080, at *4 (D. Minn. July 11, 2016).

**IV.    The Court Should Preclude Evidence and Argument that Victims of the Defendant's Scheme to Defraud Are to Blame for Having Acted Negligently or Gullibly**

The defendant represents that he will "not seek to blame [his] alleged offense conduct on [Victim-1's] own negligence or gullibility."  (Opp'n 22.)  This representation is insufficient to potentially render the Government's motion moot, as it fails to address, among other things, victims or individuals aside from Victim-1.   As requested in the Government's motion (*see* Mot. 13-15), to which the defendant does not express opposition (*see* Opp'n 22), he should be precluded from suggesting during the trial—whether in jury addresses or witness examinations— that the victims of the defendant's fraud (including Victim-1, Victim-1's literary agent, and Victim-1's publisher) are to blame, either because they failed to conduct sufficient diligence, were negligent, or otherwise acted unreasonably in relying on the defendant's misrepresentations.  *See, e.g.*, *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007); *United States v. Thomas*, 377 F.3d 232, 241, 243 (2d Cir. 2004).

**V.    The Court Should Preclude Argument that the Defendant Lacked Intent to Defraud Because He Intended that the Victim Would Ultimately Be Repaid**

The defendant represents that he will not argue at trial "that he lacked intend to defraud [Victim-1] because he intended to ultimately repay her" and he "agrees that evidence of an intent to repay funds is not relevant as to the question of fraudulent intent."  (Opp'n 22.)  In light of the defendant's representation, and to the extent the defendant abides by the restrictions set forth above, the Government agrees that the motion is moot.

**VI.    The Court Should Preclude Evidence or Argument Concerning the Potential Punishment or Consequences of Conviction**

The defendant represents that he "will not make any argument at trial as to the *specific* consequences or punishments [the defendant] faces should he be convicted" (Opp'n 23) (emphasis added), but admits that his defense team "anticipates making a statement or two to the jury in its

opening statement and closing argument about [the defendant's] liberty being at stake" (Opp'n 6). The defendant's intentions, for which he cites no legal authority, are improper. *Any* evidence or argument concerning the potential punishment or consequences of conviction should be precluded, not just evidence and argument about the "specific" potential punishments or consequences. It similarly would be inappropriate for the defendant to make arguments about his "liberty being at stake"—this a thinly veiled reference to incarceration, a potential punishment and consequence of the defendant's conviction. Such discussion of punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion," *Shannon v. United States*, 512 U.S. 573, 579 (1994), and therefore should be precluded.

## VII. The Court Should Preclude Evidence or Argument Concerning the Defendant's Prior Commission of "Good Acts" and/or Failure to Commit Other "Bad Acts"

The defendant represents that he will not make "any argument as to [the defendant's] prior 'good acts' and/or failure to commit other 'bad acts'" (Opp'n 23), but he proceeds to forecast that he may do just that, by "offer[ing] evidence of the substantial work he completed on [Victim-1's] behalf," of other unnamed "specific acts for the purpose of supplying background information or history, particularly with respect to his representation of [Victim-1]," and of "evidence of prior acts to challenge the Government's evidence of his alleged malintent." (Opp'n 23-24.) These caveats swallow his generalized commitment not to offer impermissible evidence or argument of the type that the Government has moved to preclude. Accordingly, the Government's motion is not moot, and should be granted for the reasons set forth therein (*see* Mot. 18-19).[7]

---

[7]      In addition, the Court should direct the defendant to confer with the Government about the purported "specific acts" and "prior acts" about which he intends to offer evidence at trial in order to identify whether any objections to such evidence are best raised with the Court in advance of trial.

## <u>CONCLUSION</u>

For the foregoing reasons, the Government's motions *in limine* should be granted.

Dated: New York, New York
       December 30, 2021

                                            Respectfully submitted,

                                            DAMIAN WILLIAMS
                                            United States Attorney

By:    /s/
                                              Matthew D. Podolsky
                                            Andrew A. Rohrbach
                                            Robert B. Sobelman
                                            Assistant United States Attorneys
                                            (212) 637-1947/2345/2616