# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

*David E. Patton*
*Executive Director*
*and Attorney-in-Chief*

*Southern District of New York*
*Jennifer L. Brown*
*Attorney-in-Charge*

January 3, 2022

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

RE:    **United States v. Michael Avenatti**
       **19 Cr. 374 (JMF)**

Dear Judge Furman:

We write in further support of our motion to adjourn the trial.

Since the defense's opening motion on December 23, 2021, the Omicron variant of COVID-19 has driven a dramatic surge in cases throughout New York. Statewide hospitalizations stand at 9,563 (290 admissions greater than the peak on January 18, 2021) and deaths are in the triple digits (103) for the first time since vaccinations became widespread. Breakthrough infections are also on the rise. 149.5 of 100,000 fully vaccinated New Yorkers were infected the week of December 20, 2021, compared with a rate of 28.3 breakthrough infections per 100,000 the week of December 6. And in New York City, almost one in three COVID tests are currently coming back positive. Realistically, and as recently affirmed by Governor Kathy Hochul, we should not expect a decline in core viral rates across New York until the first week of February at the earliest.[1] And somewhat ominously, the defense also learned tonight that its lead paralegal on the case tested positive for COVID-19 this evening and may have inadvertently exposed all but one of the other members of the defense team during an in-person meeting earlier this afternoon.

This surge in COVID-19 infections is also a nationwide problem, causing some district courts to suspend jury trials altogether for the month of January. For example, undersigned counsel understand that jury trials are suspended in the

---

[1] See Jennifer Millman, NY COVID Hospitalizations Top 2021 Surge Levels; Omicron Quintuples Risk of Breakthrough Cases, NBC New York (Jan. 3, 2022), available at: https://www.nbcnewyork.com/news/coronavirus/ny-covid-hospitalizations-top-2021-surge-levels-as-omicron-drives-95-of-cases/3476250/.

Central District of California and District of Maryland through January 24, 2022,[2] and they are suspended in the District of New Jersey through January 31, 2022.[3] Of course, preparing for trial in this case will require in-person contact between dozens of prospective jurors and require the attorneys to meet regularly with investigators, paralegals, and prospective witnesses, including some who might have to fly to New York City under an unprecedented wave of flight delays and cancellations.[4] This kind of regular, in-person contact during a high-transmission period not only increases the risk of infection for counsel and the public, but also for Mr. Avenatti, who is at a heightened risk for serious illness or death from the virus. See, e.g., Sentencing Transcript, United States v. Avenatti, 19 Cr. 373 (PGG) (S.D.N.Y. July 8, 2021) ("A variance is also necessary because Mr. Avenatti was held in horrific conditions at the MCC for more than three months, in solitary confinement for much of the time and in lockdown for nearly all of it . . . Conditions were terrible. It's hard to believe they could occur in the United States of America. Mr. Avenatti himself was at risk from the Covid-19 virus as the result of a preexisting medical condition."); see also Dkt. No. 280, Declaration of F. Ramzi Asfour, M.D. (infectious disease specialist), United States v. Avenatti, 19 Cr. 61 (JVS) (C.D. Ca.) (filed under seal).

    The circumstances surrounding Mr. Avenatti's law firm servers also merit a substantial adjournment. In its response, the Government sidesteps the core of Mr. Avenatti's argument as it pertains to the "if, as, and when" subpoena: The Government's subpoenaing of materials that largely reside on Mr. Avenatti's servers (which contain 20 terabytes worth of data) underscores their relevance to this case, and reviewing this amount of data simply cannot occur in time for the trial. See United States v. Ganias, 824 F.3d 199, 217 (2d Cir. 2016) (comparing the capacity of one terabyte of data to that of 12 library floors' worth of books).

    The testimony in the California case established that the forensic copies of the servers were in the possession of Main Justice at the DOJ Cybercrime Lab in Washington, D.C. since the Spring of 2019. See Exhibit A. Mr. Joseph Varani, a DOJ Senior Digital Investigative Analyst with Main Justice, reviewed the data from Mr. Avenatti's laptop, which was seized from his briefcase at the time of his arrest in New York, together with the servers. See id. Accordingly, the Government's claim

---

[2] See Tim Prudente and Christine Condon, Jury trials suspended in Maryland as COVID cases spike, Baltimore Sun (Dec. 27, 2021), available at: https://www.baltimoresun.com/coronavirus/bs-md-coronavirus-federal-court-in-baltimore-20211227-nxiwnphpeffk3ihmp56zd6wdkm-story.html.

[3] See Standing Order 2021-11, In Re: Court Operations Under the Exigent Circumstances Created by COVID-19, (D.N.J. Dec. 29, 2021), available at: https://www.njd.uscourts.gov/sites/njd/files/SO2021-11COVID-19ExigentCircsFinal.pdf.

[4] See generally Gregory Wallace and Matt McFarland, Holiday flight cancellations soar with Covid-19 disruptions and bad weather, CNN Business (Updated Jan. 2, 2022 at 10:23 PM ET), available at: https://www.cnn.com/2022/01/02/economy/holiday-flight-cancellations/index.html.

that it did not have access to the servers from Mr. Avenatti's law firm is simply not accurate.[5]  It is undisputed that Mr. Avenatti was first provided a copy of the servers in mid-September 2021 after repeated requests (and the California mistrial), including requests from Mr. Avenatti's prior counsel in this case for the information on the servers relating to Ms. Clifford and the wire fraud allegations.

In opposing the motion, the Government suggests that because Mr. Avenatti's prior counsel in the Nike-related case before Judge Gardephe did not request the servers, Mr. Avenatti cannot now claim a need for the information on them. This argument fails. The case before Judge Gardephe dealt with different issues and different counsel, and centered on conduct and information across 16 days that were not preserved on Mr. Avenatti's firms' servers. Here, given the length of time Mr. Avenatti represented Ms. Clifford, the servers contain substantial materials responsive to the subpoena and relevant to the charges. These include communications revealing Mr. Avenatti's financial dealings with Ms. Clifford, the book agent, and the publisher; Mr. Avenatti's email communications with Ms. Clifford and others relating to her book deal; accounting details of the costs, expenses and fees incurred by Mr. Avenatti during his work for Ms. Clifford; and financial information relating to Mr. Avenatti's firm. This information has been in the Government's control; it should have been produced years ago but was not.

The Government further states in opposition that it has recently served a subpoena on the bankruptcy trustee for Mr. Avenatti's law firm but fails to include a copy of the subpoena demonstrating what exactly it has requested. There is no indication of what information, if any, the subpoena is likely to produce, nor is there an explanation as to why the Government is only subpoenaing this material now, some 30 months after charging Mr. Avenatti. In any event, this is a red herring because the trustee subpoena does not supplant the Government's discovery obligations and has no bearing on Mr. Avenatti's need to carefully review the data on the servers. Accordingly, the Court should grant a 120-day continuance.

Respectfully Submitted,

/s/
Robert M. Baum
Tamara L. Giwa
Andrew J. Dalack

Cc:   Government Counsel          Assistant Federal Defenders

---

[5] The prosecutors in this case have also acknowledged that they have maintained the ability to access information from their colleagues in the Central District of California. This makes sense seeing as the two offices have consistently coordinated their efforts relating to Mr. Avenatti. See, e.g., Dkts. 358, 363, United States v. Avenatti, 19 Cr. 373 (PGG) (S.D.N.Y.).