**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director
and Attorney-in-Chief*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

January 4, 2022

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

RE:   **United States v. Michael Avenatti**
       **19 Cr. 374 (JMF)**

Dear Judge Furman:

  The Court should deny the Government's motion to preclude expert testimony by Donald Vilfer. Dkt. No. 184.

  Mr. Vilfer is a qualified and experienced expert in computer and digital forensics—with a prolific former career as a supervisory special agent in the Federal Bureau of Investigation—whose opinions about various aspects of the Government's investigation and its evidence are indisputably based on sufficient facts and data. More importantly, Mr. Vilfer's testimony about the forensic extraction tools available to the Government in obtaining and preserving electronically stored information (including electronic communications) would aid the jury's scrutiny of the Government's investigation as permitted under Supreme Court precedent, Kyles v. Whitley, 514 U.S. 419 (1995), and clarify the implications of the Government's failure to obtain a digital forensic copy of Stephanie Clifford's cellular phone. Mr. Vilfer's testimony would also help the jury understand why a forensic copy of WhatsApp messages between Michael Avenatti and Ms. Clifford (the gravamen of the Government's case) is the most accurate, complete, and authentic form of the evidence, in contrast to portable document (PDF) and/or digital image (JPG) formats. In the alternative, the Court should hold an evidentiary hearing.[1]

---

[1] For a fuller discussion of the Government's handling of Ms. Clifford's cell phone, see Mr. Avenatti's Omnibus Rule 12 Motion at Dkt. No. 115.

**Donald Vilfer's proposed testimony satisfies Fed. R. Evid. 702 because it is relevant and reliable.**

"Expert testimony is admissible pursuant to Federal Rule of Evidence 702 if it is both relevant and reliable." Tiffany (NJ) Inc. v. eBay, Inc., 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007). In exercising its broad discretion to admit expert testimony, the Court must determine: "(1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact." Tiffany, 576 F. Supp. 2d at 458 (citing Nimely v. City of New York, 414 F.3d 381, 396-97 (2d Cir. 2005)).

It is beyond dispute that Mr. Vilfer is a qualified expert and that his proposed testimony is based on reliable data and methodology. See Vilfer Expert Notice, Dkt. No. 184-1 at 2-3. Mr. Vilfer is the founder and leader of Vilfer & Associates, Inc., dba Digital Evidence Ventures, a computer forensics and litigation support company. He has worked in this industry for over 30 years and spent almost half of his career as an agent (and supervisory agent) for the FBI, with a focus on digital forensics and data extraction. Mr. Vilfer has also reviewed the evidence that the Government plans to introduce at trial and the investigative steps the Government took (and failed to take) as illustrated by the discovery. And given Mr. Vilfer's extensive experience and familiarity with industry-standard digital forensic tools, including Cellebrite, the principles and methodologies Mr. Vilfer relies upon are unassailable. Id. at 5.

Most importantly, however, Mr. Vilfer's testimony will help the jury understand the significance of the Government's failure to obtain a forensic copy of Ms. Clifford's cellular device, an aspect of the Government's investigation that Mr. Avenatti has a Fifth and Sixth Amendment right to challenge. This includes aiding the jury' s understanding of the key differences between a digital forensic copy of Mr. Avenatti's WhatsApp communications with Ms. Clifford and the PDF files the Government seeks to introduce.

**Mr. Vilfer's testimony will help the jury assess the thoroughness and credibility of the Government's investigation and the implications of its failure to forensically image Ms. Clifford's cell phone.**

In preparing a trial strategy, a defendant is entitled to confront damaging evidence and challenge the caliber of an investigation at trial as part of his due process right to present a defense. See Kyles v. Whitley, 514 U.S. 419, 445 (1995); see also Buie v. Phillips, 298 F. App'x 63, 65-66 (2d Cir. 2008) (recognizing a "defendant's interest in presenting his defense of insufficient [government]

2

investigation"). Many courts have noted that information which undercuts the thoroughness and good faith of a government investigation is an important factor for courts and factfinders to consider. See, e.g., Mendez v. Artuz, No. 98 Civ. 2652 (LMM), 2000 WL 722613, at *19 (S.D.N.Y. Jun. 6, 2000) (citing Kyles, 514 U.S. at 445). "When… the probative force of evidence depends on the circumstances in which it was obtained and those circumstances raise a possibility of fraud, indications of conscientious [investigative] work will enhance probative force and slovenly work will diminish it." Id. at 446 n. 15. Thus, a defendant may introduce evidence that would "raise opportunities to attack not only the probative value of crucial physical evidence and the circumstance in which it was found, but the thoroughness and even the good faith of the investigation, as well." Id. at 445. See also Bowen v. Maynard, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible Brady violation."); Lindsey v. King, 769 F.2d 1034, 1042 (5th Cir. 1985) (awarding new trial of prisoner convicted in Louisiana state court because withheld Brady evidence "carried within it the potential [] for the … discrediting, in some degree, of the police methods employed in assembling the case").

Notably, this also includes the Government's failure to investigate whether Ms. Clifford shared all relevant evidence; withheld critical evidence relating to Mr. Avenatti and his work for her on the book deal; and otherwise fabricated evidence, and/or engaged in "numerous inconsistencies" that would "allow[] the jury to infer that [Ms. Clifford] was anxious to see [Mr. Avenatti] arrested." Kyles, 514 U.S. at 445. Indeed, the defense is permitted to demonstrate to the jury in this case that when it came to investigating and charging Mr. Avenatti, the agents and the prosecutors engaged in a "remarkably uncritical attitude." Id. The defense is also allowed to "throw the reliability of the investigation into doubt and to sully the credibility" of the agents and lay "the foundation for a vigorous argument that the [government is] guilty of negligence." Id. at 447.

Retired Supervisory Special Agent Dilfer's testimony is a critical part of this defense and foundation. Mr. Avenatti intends to call Mr. Vilfer as an expert witness in an effort to challenge and attack the tactics used by the Government in investigating Mr. Avenatti's conduct regarding Ms. Clifford and advance payments related to her book deal. Specifically, Mr. Avenatti will offer Mr. Vilfer's testimony to help the jury understand his challenge to the Government's failure to obtain a forensic copy of Ms. Clifford's cell phone back in 2019—an omission that necessarily failed to capture a digitally authenticatable version of Ms. Clifford's electronic communications with Mr. Avenatti and also her communications about Mr. Avenatti.

If called to testify, Mr. Vilfer would discuss the tools available to federal law enforcement to obtain forensic copies of electronically stored information, including emails, text messages, and other content, from cellular devices. Mr. Vilfer would also testify that in an investigation involving digital evidence, the best way to acquire and preserve data in a manner identical to its original format is to use an industry-accepted and proven digital forensic tool like Cellebrite. Mr. Vilfer will also explain why it is impossible to forensically authenticate the PDF files (created by the Government) purportedly reflecting some of Mr. Avenatti's WhatsApp communications with Ms. Clifford.

In particular, Mr. Vilfer would testify that the Government's failure to forensically image Ms. Clifford's cell phone necessarily meant that it did not obtain or preserve Ms. Clifford's electronic or written communications with third parties <u>about</u> Mr. Avenatti and the book deal—communications that are a likely source of <u>Brady</u> and <u>Giglio</u> material pertinent to the jury's assessment of Ms. Clifford's credibility. Mr. Vilfer will also help explain how the Government could have avoided this error by following industry-standard electronic discovery procedures. Indeed, Ms. Clifford may have sent electronic messages (e-mails, social media chats, SMS texts, etc.) to other friends and confidants lauding Mr. Avenatti's representation of her and his efforts to secure her book deal. Or perhaps Ms. Clifford expressed to others biases against Mr. Avenatti for reasons unrelated to his legal representation—biases that could reveal a motive to lie about their alleged oral agreement regarding the book deal advances and her knowledge about the payments at issue. Simply put, Mr. Vilfer's testimony is important to the jury's understanding of how the Government's investigative tactics deliberately failed to capture a fuller picture of Ms. Clifford's dynamic with Mr. Avenatti and what actually transpired vis-à-vis the book deal.

The Government claims that Mr. Vilfer's testimony will "not assist the trier of fact in determining any fact or otherwise understanding any relevant issue at trial" and that his testimony would "confuse the issues, mislead the jury, and above all, waste time" under Rule 403. Dkt. No. 184, at 3. On the contrary, and as explained above, Mr. Vilfer's testimony is helpful to understanding Mr. Avenatti's legitimate challenges to the propriety and completeness of the Government's investigation and its (mis)handling of Ms. Clifford's cell phone. Given such strong probative value, and the Court's ability to properly instruct the jury about what it can and cannot do with Mr. Vilfer's testimony, there is little risk that Mr. Vilfer's testimony could create confusion or mislead jurors. The Government's vague and nondescript Rule 403 concerns simply cannot overcome a defendant's well-established ability to challenge the Government's investigation and tactics as part of his defense, including through expert testimony that satisfies Fed. R. Evid. 702.

**Conclusion**

      For the reasons set forth herein, the Court should deny the Government's motion to preclude Donald Vilfer's expert testimony. In the alternative, the Court should hold an evidentiary hearing.

                                                            Respectfully Submitted,

                                                            /s/
                                                         Robert M. Baum
                                                         Tamara L. Giwa
                                                         Andrew J. Dalack
                                                        Assistant Federal Defenders

Cc:    Government Counsel                          Counsel for Michael Avenatti