

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 5, 2022

**BY ECF AND EMAIL**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007
furman_nysdchambers@nysd.uscourts.gov

    Re:    *United States v. Michael Avenatti*, 19 Cr. 374 (JMF)

Dear Judge Furman:

    The Government respectfully submits this letter motion pursuant to Rule 15(a)(1) of the Federal Rules of Criminal Procedure seeking an order authorizing the Government to depose ▉ ▉ (the "Office Assistant") in advance of the trial presently scheduled for January 24, 2022. For the reasons explained below, the Government's request is made in light of exceptional circumstances, and permitting the Government to depose the Office Assistant is in the interest of justice. *See* Fed. R. Crim. P. 15(a)(1).[1]

    **A.  Applicable Law**

    Rule 15 of the Federal Rules of Criminal Procedure authorizes any party to "move that a prospective witness be deposed in order to preserve testimony for trial," and a "court may grant the motion because of exceptional circumstances and in the interests of justice." Fed. R. Crim. P. 15(a)(1).

    In this Circuit, it is "well-settled" that "the 'exceptional circumstances' required to justify the deposition of a prospective witness are present if that witness' testimony is material to the case

---

[1]     In light of the sensitive nature of certain of the information contained herein, and at the request of the Office Assistant, the Government has filed a redacted version of the letter motion on ECF that omits the exhibits and will submit an unredacted version with the exhibits to the Court, the defendant, and the Office Assistant's counsel by email, which the Government requests be filed under seal. *See, e.g.*, *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("The privacy interests of innocent third parties should weigh heavily in a court's balancing equation." (cleaned up)); *United States v. Maxwell*, No. 20 Cr. 330 (AJN), 2020 WL 7646891, at *1 (S.D.N.Y. Dec. 23, 2020) (approving proposed redactions to filings based on, "most importantly, [the] third parties' personal privacy interests").

and if the witness is unavailable to appear at trial." *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984); *see also United States v. Grossman*, No. 03 Cr. 1156 (SHS), 2005 WL 486735, at *2 (S.D.N.Y Mar. 2, 2005) ("To demonstrate that exceptional circumstances exist, the movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice" (citing *United States v. Cohen*, 260 F.2d 68, 72 (2d Cir. 2001)); *id.* at *3 ("In general, testimony 'is necessary to prevent a failure of justice' when the witness is unavailable, his testimony is material, and there are no substantial countervailing factors militating against the taking of the deposition."). The burden of satisfying this test is on the party seeking a Rule 15 deposition. *See United States v. Whiting*, 308 F.2d 537, 541 (2d Cir. 1962); *see also United States v. Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994).

A witness's "testimony is material if it is 'highly relevant to a central issue in the case . . . .'" *Grossman*, 2005 WL 486735, at *3 (citing *United States v. Drogoul*, 1 F.3d 1546, 1556 (11th Cir. 1993)); *see, e.g.*, *Drogoul*, 1 F.3d at 1553 (in bank fraud trial involving bank employee, testimony of defendant's superiors that they had not authorized the allegedly fraudulent transaction was material because it rebutted an expected defense); *Johnpoll*, 739 F.2d at 709 (in trial related to transport of stolen securities, testimony of Swiss witnesses involved in arranging the transport was material); *see also United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001) (holding the proposed testimony not material because it was not relevant to the question of the defendant's guilt or innocence).

A witness's "[u]navailability is defined by reference to Rule 804(a) of the Federal Rules of Evidence." *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999); *see also United States v. Ahmed*, No. 14 Cr. 277 (DLI), 2016 WL 3653961, at *1-2 (E.D.N.Y. July 1, 2016) (considering Federal Rule of Evidence 804(a)(4) in determining whether a witness was unavailable for purposes of Federal Rule of Criminal Procedure 15). Thus, a witness is unavailable for trial if, among other reasons, he or she "cannot be present or testify at the trial . . . because of . . . a then-existing infirmity, physical illness, or mental illness." Fed. R. Evid. 804(a)(4); *see United States v. Gigante*, 971 F. Supp. 755, 756 (E.D.N.Y. 1997), *aff'd on other grounds* 166 F.3d 75 (2d Cir. 1999).

"Movants are not necessarily required to present affidavits from proposed witnesses or documentation of their prior statements in order to establish their unavailability or the materiality of their expected testimony." *United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *24 (S.D.N.Y. Jan. 18, 2017) (citing *United States v. Vilar*, 568 F. Supp. 2d 429, 438-440 (S.D.N.Y. 2008) (collecting cases "overwhelmingly" rejecting arguments to the contrary)). "Rather, a moving party's representations, if sufficiently specific, may be enough to establish that both requirements are satisfied." *Id*.

"An order authorizing a deposition to be taken under [Rule 15] does not determine its admissibility." Fed. R. Crim. P. 15(f).

### B. The Office Assistant's Expected Testimony is Material

The Government expects that the Office Assistant will provide material, inculpatory testimony, including with respect to at least the following six topics.

First, the Office Assistant will provide important testimony relating directly to the defendant's guilt, and to his asserted defense that he had a good-faith belief that he was entitled to the money he took from Victim-1. Specifically, the Government anticipates that the Office Assistant will testify regarding communications that she had with the defendant regarding the defendant's agreement with Victim-1. Among other things, the Office Assistant will describe conversations in which the defendant characterized his agreement to represent Victim-1, explained how he intended to monetize his representation of Victim-1, and discussed Victim-1's book contract. In particular, the Office Assistant will testify that the defendant never made reference to expecting any fee from Victim-1's book contract or any agreement between the defendant and Victim-1 regarding Victim-1's book contract, that the defendant only had one retainer agreement with Victim-1, and that the defendant provided legal services to Victim-1 free of charge. These communications are material to the defendant's knowledge and intent, directly responsive to the defense the defendant has asserted that he will raise at trial, and probative of whether numerous statements the defendant made to Victim-1, both in writing and orally, were knowingly false.

Second, the Government anticipates the Office Assistant will testify regarding the defendant's retainer agreement with Victim-1, a document which the Government anticipates offering as evidence at trial. The Office Assistant will describe how the defendant drafted, edited, and finalized retainer agreements during the relevant time period; authenticate the defendant's retainer agreement with Victim-1; verify that the defendant's signature appears on the retainer agreement; and explain, as noted above, that, at least to her knowledge, the defendant did not have a second retainer agreement with Victim-1. The nature, scope, and terms of the defendant's written retainer agreement with Victim-1 is an important piece of evidence in this case, as it shows that, absent a separate agreement, the defendant was not entitled to any portion of Victim-1's book contract payments.

Third, the Government anticipates the Office Assistant will testify about how she opened and managed certain bank accounts at the defendant's direction, including the account referred to in the Indictment as the Avenatti Client Account, to which the defendant fraudulently diverted Victim-1's book advance payments. (*See* Indictment ¶¶ 14-19, 22-24, 28-29.) In addition, the Office Assistant will testify about how, acting at the defendant's direction and without knowledge that Victim-1 had not provided authorization, the Office Assistant created the document referred to in the Indictment as the False Wire Instructions and provided them to the defendant, who then used that document to fraudulently induce the diversion of Victim-1's book advance payments to the Avenatti Client Account. (*See* Indictment ¶¶ 15-16, 22, 28-29, 34.) This testimony is material to demonstrating that the defendant caused the creation of the False Wire Instructions, and to rebutting an apparent defense that the defendant intends to raise. (*See, e.g.*, Def. Requests to Charge, Request No. 12 ("If you find that [Victim-1] authorized Michael Avenatti to send a request to transfer funds to a trust account held for [Victim-1], then the document used for that transfer is not fraudulent and thus not fraudulent means was used to obtain money, and you must find Michael Avenatti not guilty." (Dkt. No. 171).)

Fourth, the Government anticipates the Office Assistant will testify that the defendant had established crowd funding accounts to raise money to cover certain out-of-pocket expenses related to the defendant's representation of Victim-1. The Office Assistant will testify that, on certain occasions when the Office Assistant inquired of the defendant from what account particular law firm expenses or payroll should be paid, the defendant instructed the Office Assistant to transfer money from one of the crowd-funded trust accounts for Victim-1 to pay those expenses. In addition, the Office Assistant will testify about a letter that the defendant sent to Victim-1 in February 2019, in which he purported to list expenses and costs that were associated with his representation of Victim-1. The Office Assistant will testify that she prepared an initial draft of the letter, which included an account of expenses, but that the defendant edited the amounts in the document and added a section related to attorney's fees before it was sent to Victim-1. The Government intends to show, though other evidence adduced at trial, that the contents of this letter were, at least in part, false, which bears on the defendant's intent and knowledge.

Fifth, the Government anticipates the Office Assistant will testify concerning the defendant's management of his law firm's finances and the law firm's financial condition during the time period relevant to the charges in this case. The Office Assistant worked for the defendant's law firm for approximately 11 years, up until he was arrested on March 25, 2019. The Office Assistant was both the defendant's paralegal and office manager. Among other things, the Office Assistant oversaw the financials of the defendant's law firm. The Office Assistant is expected to testify that, during the relevant time period, she updated the defendant on a near-daily basis about the firm's finances, that the defendant was a micromanager with respect to the firm's financials, that the law firm was having substantial difficulties, and that the defendant forbade her to speak with anyone else about the law firm's finances. As explained in the Government's *in limine* briefing (Gov't Mots. *in Limine* 7-9 (Dkt. No. 176); Gov't Reply 3-5 (Dkt. No. 197)), which is incorporated herein by reference, this testimony, among other evidence, will establish that the defendant was desperate for money at the particular time of the offense conduct, which is highly probative of his motive to engage in the charged conduct.

Sixth, the Government anticipates the Office Assistant will testify concerning the defendant's disposition of the crime proceeds. Specifically, the Government expects that the Office Assistant will testify that the use of the crime proceeds to make payments toward the defendant's expenses was generally undertaken by the Office Assistant, acting at the defendant's direction. As explained in the Government's *in limine* briefing (Gov't Mots. *in Limine* 3-7; Gov't Reply 1-3), this testimony, among other evidence, will establish that the defendant directed the spending of the fraud proceeds and the nature of that spending, which is probative of the existence of the defendant's scheme, his intent to defraud, and his knowledge.

Each of the foregoing categories of anticipates testimony is "highly relevant to a central issue in the case," and therefore is "material" for the purposes of authorizing a Rule 15 deposition. *See, e.g.*, *Grossman*, 2005 WL 486735, at *3.[2]

---

[2]   The Office Assistant also testified at the trial in *United States v. Avenatti*, No. S1 19 Cr. 373 (PGG) (S.D.N.Y. Feb. 6, 2020) (Trial Tr. 1398-1408), prior to ▇▇▇▇ ▇▇▇▇▇ and the beginning of the COVID-19 pandemic, and at the trial in the separate prosecution

### C. The Office Assistant is Unavailable to Testify at Trial

The Office Assistant is ▇ years old and resides in ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. She has informed the Government that she is unable to travel to this District to testify at trial, but that she is willing and able to be deposed at a location in the vicinity of her place of residence in advance of the trial in this case.

[redacted]

Accordingly, the Office Assistant's medical conditions and the related risks to her health attendant to the COVID-19 pandemic, especially in the context of the current Omicron variant wave, and the current high rate of transmission in this District, render her unable to travel to this District to testify at trial. *See, e.g., United States v. Jesenik*, No. 20 Cr. 228 (SI), 2021 WL

---

of the defendant pending in the United States District Court for the Central District of California in late July 2021, to which she was able to travel by automobile (rather than by airplane) and which took place when the pandemic's conditions were less severe. [redacted]

5605184, at *2 (D. Or. Nov. 30, 2021) (granting motion for Rule 15 deposition where witness was "at an elevated risk of succumbing to COVID-19 and other age-related infirmities").[3]



In sum, the Office Assistant's medical and mental health conditions, especially in the context of the present circumstances of the COVID-19 pandemic, render her unable to travel to this District. Therefore, she is unavailable to testify at trial. *See* Fed. R. Evid. 804(a)(4) (a witness is unavailable for trial if, among other reasons, he or she "cannot be present or testify at the trial . . . because of . . . a then-existing infirmity, physical illness, or mental illness"); *see also, e.g.*, *United States v. McGowan*, 590 F.3d 445, 454 (7th Cir. 2009) (upholding district court's determination that a witness with "severe and chronic" medical issues that impaired her mobility was unavailable to testify at trial); *United States v. Etoty*, No. S1 20 Cr. 187 (AKH) (S.D.N.Y. June 29, 2021), Dkt. No. 44 (granting motion for Rule 15 deposition, submitted on consent, where government proffered that witness's "current medical condition has rendered him unable to travel to the Southern District of New York due to physical infirmity"); *United States v. Owimrin*, No. S8 17 Cr. 243 (SHS) (S.D.N.Y. Sept. 24, 2018), Dkt. No. 271 (granting motion for Rule 15 deposition, submitted on consent, where witness was "unable to travel due to physical infirmity").

### D. Date, Location, and Manner of Deposition

After conferring with the Office Assistant and the defendant, the Government proposes that the deposition take place on January 16, 2022, or an alternate date to be agreed upon by the parties, at a time and place in the vicinity of the Office Assistant's place of residence to be arranged by the Government. Pursuant to Rule 15(d), the Government is prepared to pay "(1) any reasonable travel and subsistence expenses of the defendant and the defendant's attorney to attend the

---

[3] ████████, the "CDC expects that anyone with Omicron infection can spread the virus to others, even if they are vaccinated or don't have symptoms," and that "breakthrough infections in people who are fully vaccinated are likely to occur." *Omicron Variant: What You Need to Know*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (updated Dec. 20, 2021). In addition, the International Air Transport Association, "which represents almost 300 carriers worldwide," is operating under the assumption that, "[w]hatever the risk [of infection during a flight] was with delta, . . . the risk would be two to three times greater with omicron, just as we've seen in other environments." Angus Whitley, *Omicron May Double Risk of Getting Infected on Planes, IATA Says*, Dec. 21, 2021, https://www.bloomberg.com/news/articles/2021-12-22/omicron-at-least-doubles-risk-of-getting-infected-on-a-plane (quoting David Powell, a physician and medical advisor to the IATA).

deposition; and (2) the costs of the deposition transcript." In addition, pursuant to Rule 15(e)(3), the Government will produce to the defendant any material subject to production under 18 U.S.C. § 3500(b) or *Giglio v. United States*, 405 U.S. 150 (1972), with respect to the Office Assistant, to the extent it has not already been produced, on or before January 12, 2022. (*See* Amended Scheduling Order at 3 (Dkt. No. 160).)

### E. The Defendant's Position

After conferring with the defendant, he asked that the Government include the following: "The defense objects to the Government's application and requests leave to file a response by Friday, January 7, 2022."

### F. Conclusion

Based on the foregoing, the Government respectfully requests that the Court authorize the deposition of the Office Assistant on January 16, 2022, or an alternate date to be agreed upon by the parties, at a location in the vicinity of the Office Assistant's place of residence to be arranged by the Government.[4]

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney

    By: /s/
        Matthew D. Podolsky
        Andrew A. Rohrbach
        Robert B. Sobelman
        Assistant United States Attorneys
        (212) 637-1947/2345/2616

---

[4] In the alternative, the Government requests that the Office Assistant be permitted to testify at trial by live, two-way video. *See, e.g.*, *United States v. Griffin*, No. 11 Cr. 936 (RJS), 2021 WL 3188264, at *2 (S.D.N.Y. July 28, 2021) (granting government's motion for witness to testify at hearing by two-way video where witness's "doctor has advised her not to travel in light of the fact that she gave birth approximately two weeks ago and is not vaccinated against COVID-19"); *United States v. Akhavan*, 523 F. Supp. 3d 443, 451-46 (S.D.N.Y. 2021) (granting witness's motion to testify at trial by two-way video where 57-year-old witness's "hypertension and atrial fibrillation (a heart condition)" "place[d] him at increased risk of serious illness or death if he were to contract COVID-19," and he would have "need[d] to travel by commercial flight [from California] to testify" in person); *United States v. Donziger*, No. 19 Cr. 561 (LAP), 2020 WL 5152162, at *2-4 (S.D.N.Y. Aug. 31, 2020) (granting special prosecutor's motion for witness to testify at trial by two-way video where 72-year-old witness's age and other health conditions "place[d] him at heightened risk of dangerous complications should he contract COVID-19," and he would have needed to travel by commercial flight from Texas to testify in person).

Cc: Robert M. Baum, Esq. (by ECF and email)
    Andrew J. Dalack, Esq. (by ECF and email)
    Tamara L. Giwa, Esq. (by ECF and email)
    Thomas Ambrosio, Esq. (by email) (counsel for the Office Assistant)