

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 5, 2022

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Michael Avenatti*, 19 Cr. 374 (JMF)

Dear Judge Furman:

      The Government respectfully submits this opposition to the defendant's letter motion *in limine* to preclude the Government's proffered expert testimony or, in the alternative, for a *Daubert* hearing ("Mot.") (Dkt. No. 194). As set forth below, the defendant's professional obligations to his client—especially concerning the disposition of client funds—are highly probative evidence of his mental state and provide necessary context for his conduct. The contents of these obligations can and should be provided as part of the Court's instructions to the jury, as occurred at the defendant's prior trial in this District.[1] Should the Court decline to include these instructions, however, the Government should be permitted to offer into evidence through the testimony of one or more experts the applicable duties and rules for attorneys.

**I.**      **Background**

      As the Court is aware, the Government has alleged, and expects to prove at trial, that the defendant defrauded his client—Victim-1—by stealing a significant portion of Victim-1's advance on a book contract. (*See* Indictment ¶¶ 1-2.) The defendant instructed Victim-1's book agent, without authorization and with the use of a fraudulent letter, to send payments not to Victim-1, but instead to a bank account controlled by the defendant. (*See id*. ¶¶ 15, 29.) In furtherance of this scheme, the defendant misled Victim-1 about the status of these book payments, including in electronic messages. (*See, e.g.*, *id*. ¶¶ 19, 24-25, 27.)

      The defendant has repeatedly warranted to the Court that the key to his defense—indeed, "the crux of this case"—is that he had a good-faith belief that the money the Government alleges he stole in fact belonged to him. (Mot. 1 ("the crux of this case is whether [the defendant] engaged in a scheme or artifice to defraud [Victim-1] of money . . . to which [the defendant] had no good-

---

[1]     To that end, the Government has attached as Exhibit A a supplemental request to charge, to replace Request 6 previously submitted by the Government (*see* Dkt. No. 175 at 9-10), in order to capture the relevant rules of professional conduct expected to be relevant at this trial.

faith basis to believe belonged to him"); *see also* Def. Opp'n to Gov't Mot. *in Limine* 10 (same) (Dkt. No. 187).) However, the Government expects to offer evidence showing, among other things, that the defendant did not, as would be required by the rules governing the defendant's professional conduct, (1) enter into a written agreement for fees related to Victim-1's book deal, (2) provide an accounting of expenses to which he might purport to be entitled, (3) discuss with and provide written information to Victim-1 regarding any trust account created or funds purportedly held on Victim-1 behalf, or (4) communicate with Victim-1 with respect to important decisions concerning Victim-1's interests. As explained in greater detail below, the defendant's repeated failures to comply with the rules applicable to his conduct as Victim-1's then-attorney are highly probative of his intent and knowledge, and are important to place in context the defendant's claim of good faith.

On December 13, 2021, the Government provided notice, pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, that it may offer testimony from Professor Nora Freeman Engstrom or Mark L. Tuft, Esq., in the Government's case-in-chief at trial. (Mot. Ex. A (Dkt. No. 194-1).) That notice made clear that "[t]he Government ha[d] requested that the Court instruct the jury as to certain of the matters" to which the Government expected Professor Engstrom or Mr. Tuft to testify, and that "[i]n the event that the Court indicates it will do so, those instructions may render unnecessary some or all of the anticipated testimony by Professor Engstrom or Mr. Tuft." (*Id.* at 1 n.1.) The notice also explained, that, if called to testify, Professor Engstrom or Mr. Tuft would explain legal duties, ethical rules, and professional responsibility requirements of lawyers admitted to the bar of the state of California, including those made concrete by the California Rules of Professional Conduct, such as duties of loyalty, honesty, fair dealing, and reasonable communication, and rules applicable to the safe keeping of client funds. (*Id.* at 2-7.) The Government does not intend to ask its experts to apply these duties to the facts of this case, hypothetically or directly, as is evident from the notice.

## II. Legal Standard

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

A district court is responsible for "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "Although Rule 702 sets forth specific criteria for the district court's consideration" in performing this task, "the *Daubert* inquiry is fluid and will necessarily vary from case to case." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002). The inquiry's purpose is "to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact." *Id.* at 267.

## III.     Discussion

The defendant's professional obligations to his client—and especially concerning the disposition of client funds—are highly probative evidence of his mental state and provide critical context for his conduct. The Government respectfully submits that the Court should instruct the jury on those obligations, as occurred at the defendant's prior trial in this District. But whether through jury instructions or the Government's proffered expert testimony, the jury should be informed of the content of those obligations.

### A.     California Professional Obligations for Attorneys Are Relevant and Beyond the Ken of the Average Juror

At trial, the Government will be required to prove beyond a reasonable doubt that the defendant engaged in a scheme to defraud and intended to defraud Victim-1. Despite the defendant's suggestions to the contrary (*see* Mot. 1, 3), the Government is entitled to offer evidence that makes these facts more probable, *see* Fed. R. Evid. 401, 402; *Lippe v. Bairnco Corp.*, No. 96 Civ. 7600 (DC), 2002 WL 15630, at *2 (S.D.N.Y. Jan. 7, 2002) ("An expert may properly testify as to the customs and standards of an industry, and opine as to how a party's conduct measured up against such standards." (internal quotation marks and brackets omitted)); *see also Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 459 (S.D.N.Y. 2007) ("In assessing the relevance of proffered expert testimony, the Court looks to whether the testimony has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

Evidence that the defendant did not (1) enter into a written fee agreement with respect to any assistance provided in relation to Victim-1's book deal, (2) provide any form of accounting for expenses relating to that deal or that would otherwise explain the money he took from Victim-1, (3) provide information regarding the purported trust account created for Victim-1 and money deposited into that account, or (4) communicate with Victim-1 regarding decisions important to her interests—despite being required to do so by applicable professional rules, if the defendant in fact had any entitlement to the money he took—is highly probative of the defendant's scheme to defraud and his intent.

Indeed, the defendant's own arguments demonstrate how important this evidence is to enable the jury to understand the facts in this case. As noted above, the defendant has stated that he intends to offer evidence and argument that he was entitled to the money he took as a form of payment or remuneration. That the defendant did not take the steps required of an attorney who believed himself to be entitled to the stolen funds makes it less probable that the defendant had the

belief he now claims, and more probable that he devised a scheme to defraud and had the intent to defraud.

To appreciate the import and relevance of these facts and the relevance of the defendant's conduct with respect to his fee agreements (or lack thereof) with Victim-1 and his failure to provide certain information to Victim-1, it is necessary for the jury to understand the applicable rules of professional conduct, which is precisely the purpose of expert testimony under Rule 702. The professional and ethical rules that apply to attorneys in these circumstances are beyond the ken of an average juror, and the defendant does not argue otherwise.

To the extent that the defendant suggests that the Government intends for an expert to opine as to whether the defendant is guilty, lied to anyone, or even violated any rule of professional responsibility (*see, e.g.*, Mot. 4, 7-8), the argument is merely a distraction, as the Government intends to do none of those things. Instead, as noted above, the Government intends for its expert to explain certain professional rules of conduct so that the jury can understand the context in which to place certain evidence. *See, e.g.*, Fed. R. Evid. 702 Committee Notes (describing the "venerable practice of using expert testimony to educate the factfinder on general principles").

In short, the professional and ethical rules applicable to attorneys practicing in California are relevant and beyond the ken of the average juror, and the defendant makes no objection to the proposed witnesses' qualifications, methods, or reliability. Accordingly, the proposed testimony is admissible under Rule 702.

### B. The Court Should Instruct the Jury Regarding California Professional Duties in Lieu of Expert Testimony

The defendant suggests that the Government's proffered expert testimony should be excluded because it would usurp the role of the Court in instructing the jury. (*See* Mot. 4.) As the Government referenced in its expert notice (Mot. Ex. A at 1 n.1) and its request to charge (Dkt. No. 175 at 9-10), it has no objection to the Court instructing the jury on the relevant professional rules applicable to attorneys in California. In the defendant's prior trial on extortion and honest service fraud charges, that court instructed the jury on relevant provisions of the rules governing attorney conduct in California in lieu of proffered testimony by the Government's proposed experts, and the same process would be sufficient here, and the Court should similarly include relevant instructions in its jury charge here.[2]

### C. The Proffered Expert Testimony Is Admissible

Should the Court decline to instruct the jury regarding applicable professional and ethical rules, it should admit the Government's proposed expert testimony.

The defendant claims that "the Second Circuit has uniformly rejected testimony from experts about legal concepts, ethics, rules of professional responsibility, and fiduciary duties."

---

[2] The defendant oddly characterizes what transpired at his prior trial as follows: "when confronted with similar objections to the same expert testimony proffered in connection with 19 Cr. 373 (PGG), the Government did not call the expert witnesses to testify at trial." (Mot. 2 n.1.) While literally true that the Government did not call its expert witnesses to testify, it did not

(Mot. 4.) The defendant is wrong, and the cases he cites do not stand for that proposition. For example, in *United States v. Bilzerian*, the defendant was charged with securities fraud and the making of false statements arising from his failure to disclose the nature of certain purchases on a Schedule 13D form filed with the Securities and Exchange Commission. 926 F.2d 1285, 1289-90 (2d Cir. 1991). The Second Circuit upheld the district court's admission of testimony offered by the government from a law professor who explained the "general background on federal securities regulation and the filing requirements of Schedule 13D." *Id.* at 1294. In fact, both the district court and the Second Circuit rejected the argument—which the defendant makes here—that the expert's testimony "constituted an impermissible legal instruction," particularly in light of a limiting instruction explaining that "Professor Coffee is here to furnish you with background concerning the meaning of terms, the procedures which are followed and his opinion as to the reason for these procedures," and that "[h]e is not here to give his opinion as to what the law requires." *Id.* at 1295; *see also United States v. Mandell*, 752 F.3d 544, 551 (2d Cir. 2014) (government expert testimony admissible because "the witnesses at issue did not testify that the defendants violated a statute, but merely explained why, in their opinion, certain commissions had been referred to as 'bonuses'").

Indeed, in the cases cited by the defendant, many of which are neither criminal nor involved facts or questions like those of this case, the expert sought to provide an opinion on the law to be applied to the issue at hand or the ultimate issue to be decided by the fact-finder—neither of which the Government intends to do. For example, in *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, the Second Circuit explained that it would not consider arguments by a legal expert as to whether a complaint should be maintained under seal, which was the legal issue under consideration by the court itself. 814 F.3d 132, 144 (2d Cir. 2016). Similarly, in *Amnesty Int'l USA v. Clapper*, the Second Circuit and district court accepted expert opinion on the ethical duties of attorneys, but the Second Circuit explained that the question of whether "it is reasonable" for attorneys to take certain actions under the relevant circumstances was for the court, rather than an expert, to determine. 638 F.3d 118, 128 & n.12 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 398 (2013); *see also United States v. Scop*, 846 F.2d 135, 139-40 (2d Cir. 1994) (expert may not testify as to legal conclusions on ultimate issue); *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992) (expert may not express legal conclusion or effectively tell jury what result to reach); *United States v. Bronston*, 658 F.2d 920, 930 (2d Cir. 1981) (expert precluded from testifying as to whether defendant breached fiduciary duty where expert was a member of defendant's firm, had post-hoc conversation with defendant who made self-serving exculpatory statements to which the expert testified, and "would in substance have conveyed nothing more to the jury than his general belief as to how the case should be decided" (internal quotation marks omitted)), *abrogated on other grounds by McNally v. United States*, 483 U.S. 350 (1987); *Marx & Co. v. The Diners' Club, Inc.*, 550 F.2d 505, 509-11 (2d Cir. 1977) (in action regarding, among other things, a breach of contract claim, district court should not have permitted expert testimony on meaning of contract at issue and the legal significance as to the ultimate issue of facts adduced at trial). Other cases

---

decline to call the witnesses in light of the defendant's objections. Rather, Judge Gardephe held that the professional obligations and duties of lawyers licensed to practice in California, as well as ethical rules, were relevant to that case and "beyond the ken of the average juror," but that these rules and obligations had to be addressed in the jury charge, rather than by expert testimony. (*United States v. Avenatti*, No. 19 Cr. 373 (PGG) (S.D.N.Y. Jan. 22, 2020), Dkt. No. 235 at 25-26, 37.)

Case 1:19-cr-00374-JMF   Document 210   Filed 01/05/22   Page 6 of 8

Page 6

relied upon by the defendant stand merely for the proposition that an expert should not be permitted to opine on the ultimate question for a fact-finder, not that expert testimony regarding relevant duties, rules, and standards is—as the defendant broadly asserts—always inadmissible. *See SLSC, LLC v. Kleban*, 277 F. Supp. 3d 258, 288 (D. Conn. 2017); *United States v. Brooks*, No. 06 Cr. 550 (JS), 2010 WL 291769, at *4 (E.D.N.Y. Jan. 11, 2010); *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470-72 (S.D.N.Y. 2005); *GST Telecomm., Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y. 2000).

Notably, "[i]t is well settled that in the prosecution of a lawyer for conduct stemming from his or her representation of a client, expert testimony on the lawyer's ethical obligations is relevant to establish the lawyer's intent and state of mind." *United States v. Kellington*, 217 F.3d 1084, 1098 (9th Cir. 2000) (citing *United States v. Cavin*, 39 F.3d 1299, 1309 (5th Cir. 1994) and *United States v. Kelly*, 888 F.2d 732, 743 (11th Cir. 1989)). In short, expert testimony explaining the standards and practices in the legal industry is both relevant and admissible to assist the jury in understanding the defendant's scheme and intent.[3]

Nor would the probative value of the testimony proposed by the Government be substantially outweighed by any risk of unfair prejudice, as the defendant contends. (Mot. 7-8.) As observed above, the testimony would be highly probative as it would assist the jury in understanding critical evidence regarding the defendant's scheme to defraud and criminal intent. To the extent that the defendant contends that any expert witness will opine that the defendant in fact violated a rule based on allegations in the Indictment (Mot. 7), as noted above, this is simply not the case. To the extent that the defendant suggests that the jury will in some way be confused by testimony regarding professional or ethical duties, he provides no basis for this concern. To the contrary, the Court will instruct the jury on the elements of the offenses, and there is no reason to believe that the jury will not be able to follow the Court's instructions, and there is even less reason to think (and the defendant does not argue to the contrary) that a jury could not follow an appropriate limiting instruction, should one be necessary. *See United States v. Agrawal*, 726 F.3d 235, 258 (2d Cir. 2013) (the law presumes "that juries follow the instructions they are given").

Finally, the defendant's assertion that "the Government seeks to call a witness that would serve as a validating mouthpiece for the prosecution's theory of the case, presenting as dispassionate expert testimony a theory of culpability that aligns neatly with the allegations set forth in the indictment" (Mot. 8) finds no support in Government's notice or anywhere else. Professor Engstrom and Mr. Tuft are established professionals who are plainly—indeed, overwhelmingly—qualified, and would testify, under oath, regarding the nature of the duties, rules, and standards applicable to lawyers in California. Moreover, to the extent that, in the defendant's view, their retention by the Government creates an incentive for them to shade their testimony, the

---

[3] It should be noted, as observed above, that Judge Gardephe ruled, contrary to the arguments advanced above by the Government, that an explanation of the meaning of the rules applicable to attorneys is not a suitable topic for expert testimony, but instead should come in the form of jury instructions. (*Avenatti*, No. 19 Cr. 373 (PGG), Dkt. No. 235 at 30-37.) Unlike in the defendant's prior trial, however, the Government does not intend here to offer testimony regarding the application of these rules to this case, but merely to provide a description of the rules and practices applicable to attorneys licensed in California. (*Avenatti*, No. 19 Cr. 373 (PGG), Dkt. No. 235 at 30-37.)

defendant will be entitled to vigorously cross-examine them within the bounds of the Federal Rules of Evidence. He will also be entitled to seek to offer contrary testimony, to the extent it exists and is otherwise admissible (though he has not given notice of an intent to offer any such testimony). In short, the defendant cannot, by objecting that the proposed testimony might be favorable to Government, avoid the jury fairly evaluating the facts of this case and his arguments by learning that his claim that he had a good faith belief that he was entitled to the money he took from Victim-1 is in conflict with applicable professional and ethical rules.

### D.     The Defendant Is Not Entitled to a *Daubert* Hearing

In the alternative, the defendant also requests a hearing to assess Professor Engstrom's and Mr. Tuft's testimony. (Mot. 8.) This request is no more than a thinly-veiled attempt to cross-examine witnesses in advance of trial, and should be rejected.

While district courts must exercise the gatekeeping function regarding expert testimony, a hearing is generally not required, because the purpose of such a hearing, or similar inquiry, is limited to assessing reliability—not to determining the admissibility of subject matter. *See, e.g.*, *Amorgianos*, 303 F.3d at 267 (the purpose is "to ensure that the courtroom door remains closed to junk science").

Were the rule otherwise, a hearing would be required in every case in which a defendant challenges admissibility; that is not the law, nor would it be practicable. Indeed, even where reliability is challenged, a hearing does not necessarily follow. *See United States v. Williams*, 506 F.3d 151, 161-62 (2d Cir. 2007) (district courts possess "latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability"); *United States v. Diakhoumpa*, 171 F. Supp. 3d 148, 152-53 (S.D.N.Y. 2016) (denying *Daubert* hearing where challenge to expert was nothing more than attempt to re-argue previously denied motion to preclude); *United States v. Santiago*, 199 F. Supp. 2d 101, 112 (S.D.N.Y. 2002) (denying *Daubert* hearing where reliability could be established through testimony and/or *voir dire*).

The defendant cannot credibly and does not in fact assert that the expected testimony of Professor Engstrom and/or Mr. Tuft is "junk science." Indeed, the defendant's entire basis for requesting a hearing is the wholly incorrect assertion that "the legal experts base their opinions that [the defendant] violated various duties to [Victim-1] based on their review of the allegations in the indictment and the blanket assumption that everything in it is accurate." (Mot. 8.) The Government does not intend to elicit such an opinion from these witnesses. Rather, the Government simply intends to elicit testimony regarding nature, meaning, and scope of relevant professional and ethical rules. (*See* Mot. Ex. A 2-4.)

In sum, the Government's proffered expert testimony "does not involve so-called 'junk science' and thus *Daubert*'s strictures are not implicated." *Safrani v. Werner Co.*, No. 95 Civ. 1267 (LBS), 1997 WL 729110, at *1 (S.D.N.Y. Nov. 24, 1997); *see also, e.g.*, *McBeth v. Porges*, No. 15 Civ. 2742 (JMF), 2018 WL 5997918, at *6 (S.D.N.Y. Nov. 15, 2018) (denying request for hearing where it "boils down to a challenge to the [expert's] qualifications and the basis for his testimony").

## IV. Conclusion

For the foregoing reasons, the Court should instruct the jury regarding applicable professional and ethical rules or, in the alternative, admit the Government's proposed expert testimony.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   s/ Matthew D. Podolsky
Matthew D. Podolsky
Andrew A. Rohrbach
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-1947/2345/2616

cc:   Robert M. Baum, Esq. (by ECF)
      Andrew J. Dalack, Esq. (by ECF)
      Tamara L. Giwa, Esq. (by ECF)