**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director
and Attorney-in-Chief*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

January 6, 2022

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

RE:   **United States v. Michael Avenatti**
       **19 Cr. 374 (JMF)**

Dear Judge Furman:

The Court should deny the Government's motion to compel Michael Avenatti's production of materials under Fed. R. Crim. P. 16(b). Dkt. No. 206.

**Mr. Avenatti is under no obligation to produce documents and other items under Rule 16(b) unless the Government has first complied with Rule 16(a), which it has not.**

The Government, upon a defendant's request, "must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). The Government must also produce any written or recorded statements attributable to a defendant in its possession, custody, or control, and that the attorneys for the Government know—or through due diligence could know—to exist. 16(a)(1)(B). These requirements are unequivocal and (for the most part) absolute, and the Government must comply with them upon a defendant's request. In contrast, and as a threshold matter, any obligation on a defendant to produce documents and other material items is triggered only if the Government first complies with Rule 16(a). See Rule 16(b)(1)(A). If the Government fails to comply with 16(a), then there is no reciprocal discovery obligation on a defendant under Rule 16(b)(1).

Here, because the Government has not complied with Rule 16(a), Mr. Avenatti is not required to affirmatively produce documents discoverable under

Rule 16(b), subject to the Court's January 18, 2022 deadline for the defense to disclose its working exhibit list.

Repeatedly throughout this case, Mr. Avenatti has asked the Government to produce all written or recorded statements attributable to him—and all documents, files, and other electronically stored information relevant to his defense—in its possession, custody, or control. The Government has failed to do so. By way of example only, the Government has failed to comply with its obligations under Rule 16 and produce materials from Mr. Avenatti's law firm's servers, which the Government seized more than two years ago. These servers have been in the possession of the Government, including Main Justice, for over two years and yet the Government has disavowed any responsibility to search the servers and produce discovery. This failure to comply with Rule 16(a) precludes the Government from enforcing reciprocal discovery rules under Rule 16(b)(1).

Since the Spring of 2019, the Government has ignored its possession of 19.86 terabytes of data from Mr. Avenatti's law firm's servers—servers that unquestionably contain electronically stored statements made by Mr. Avenatti and other information relevant to the Government's intended case-in-chief, including arguments concerning Mr. Avenatti's and his law firm's financial condition and his dealings with Ms. Clifford. Worse, in addition to not searching the servers for Rule 16 material, the Government also withheld the servers from Mr. Avenatti until after a mistrial was declared in his Central District of California prosecution.

The facts are beyond dispute.[1] On April 3, 2019, the Government obtained the servers from Mr. Brian Weiss (a receiver previously appointed to manage Mr. Avenatti's law firm, Eagan Avenatti, LLP ("EA")) and later made a complete forensic copy of them. On the morning of April 11, 2019, the Government docketed an Indictment in California. 9-ER-2111-2171.[2] That same day, Mr. Avenatti's counsel wrote the prosecutors assigned to the case and informed them that the defense needed urgent access to the information from the servers in order to defend Mr. Avenatti. 2-ER-266. The attorneys for the Government committed to defense counsel during a subsequent conversation that all relevant documents from the servers would be promptly produced to Mr. Avenatti during discovery. The prosecutors confirmed this agreement in writing the next day: "To the extent the

---

[1] Given the importance of the timeline and facts regarding the servers to the Government's motion, and in the interest of preserving the best possible record, the defense respectfully restates in this response much of the same information it previously set forth in its motion to adjourn trial (Dkt. No. 190) and corresponding reply (Dkt. No. 201).

[2] References to "ER" are to the excerpts of record filed at docket number 24 in U.S. v. Avenatti, Case No. 21-50225 (9th Cir. Nov. 30, 2021).

servers contain evidence relevant to the prosecution of Mr. Avenatti, as we mentioned yesterday, such materials will be produced to the defense during the discovery process." Id. (emphasis added). In the weeks that followed, however, no such information was produced.

On May 15, 2019, the District Court in C.D. Ca. conducted a status conference, during which the court inquired about the Government's discovery production, including materials seized from Mr. Avenatti and his law firm. 9-ER-2104-2105. After the Government informed the court that a privilege review process was underway, the court directed: "To the extent that his files don't involve materials to which he is arguably not entitled to access, I think the Government ought to move forward promptly and provide mirror images. There's no need to do a privilege review in terms of giving him back his own files." Id. The Government responded, "Your Honor, we would agree with that." 9-ER-2106.[3]

Following the status conference, Mr. H. Dean Steward, Mr. Avenatti's counsel, sent the Government a letter demanding that it comply with Rule 16, Brady, and Giglio. Among other items, Mr. Avenatti specifically requested "all documents, information, materials, electronic information, etc., obtained from Brian Weiss and/or Eagan Avenatti, LLP or any corresponding search including but not limited to forensic copies of all electronic files, computers, servers, drives, USB keys, cell phones and iPads." 2-ER-269. The word "servers" was mentioned ten times in the letter, as were the words "computers" and "drives." 2-ER-269-273.

On May 22, 2019, the Indictment in this case was filed. See Dkt. No. 1. That same day, having not received any response to his May 15 letter, Mr. Steward sent another letter to the Government addressing the importance of obtaining a copy of the servers and the prejudice to the defense in not having received the withheld materials. 2-ER-275-277.

On May 24, 2019, the Government submitted a search warrant application in California to search the entirety of the law firm's servers, which were already in the Government's possession. 3-ER-280-566; 4-ER-567-703; 3-ER-286-290. The application was granted that afternoon, permitting the Government broad access to seize and search for a myriad of documents and materials, including financial and accounting information. 4-ER-732-754.

Later that day, the prosecutors in California provided a response to defense

---

[3] Under California law, Mr. Avenatti was individually entitled at all times to a copy of the materials and information relating to his prior representation of his clients. See, e.g., Cal. R. Prof. Cond. 1.16(e)(1), comment [6]; State Bar of Calif., Opn. No. 1994-134.

3

counsel's letters. 4-ER-763-765. The Government promised, "We will produce any relevant evidence seized from the EA LLP server once the Government completes the review protocols set forth in the search warrant." 4-ER-759-760. Weeks passed by and no information from the servers was produced.

In early June 2019, Mr. Steward entered his formal appearance in this case. See Dkt. No. 8. Within weeks, on June 25, 2019, Mr. Steward sent the California prosecutors a letter itemizing the Government's failures to produce "all data – emails, pleadings, settlement agreements, accounting information, etc. from the servers and computers relating to Mr. Avenatti's law firm." 4-ER-765-766.

On July 1, 2019, the parties submitted a joint report to the District Court in California. 9-ER-2074-2100. Mr. Avenatti challenged the inadequacies of the Government's discovery productions: "The Government's production to date has been woefully inadequate … the information produced to date is far less than five percent (5%) of what is required…. [T]he Government now refuses to produce millions of pages of documents and huge amounts of electronic data (likely well over 20 terabytes) that Mr. Avenatti needs to defend himself-including potentially Brady and Giglio material." 9-ER-2081.

The district court in C.D. Ca. held another status conference on July 8, 2019. The Government represented that, "At this point we have been primarily focused on the server, because that's the largest device. It's what Mr. Avenatti and his counsel have indicated is most important to them." 9-ER-2056 (emphasis added). The Government added, "[T]he way that we have processed the data is that the initial review and processing of the data is being conducted by the DOJ Cyber Crime Lab." 9-ER-2058. The court subsequently issued an Order directing the Government to submit "a report re privilege review and a timetable to produce documents to Mr. Avenatti including how the documents will be produced." 9-ER-2073.

On July 28, 2019, in an effort to gain access to the servers, Mr. Avenatti filed a motion to compel discovery in C.D. Ca. 8-ER-1977-1985. The motion requested "immediate and unfettered access to the [EA] servers." 8-ER-1979. Mr. Avenatti specifically requested access to various materials including, "(2) client files", "(3) time records" and "(7) accounting information relating to the clients at issue, including documents showing client costs and expenses, and associated fees." Id.

On August 12, 2019, the Government filed its opposition. Under a heading entitled, "The USAO Has Complied With and Will Continue to Comply with its

4

Obligations Under *Brady* and *Giglio*" the Government stated, "the USAO is aware of its obligations under Brady and Giglio. The USAO has already made, and will continue to make timely disclosures of any such materials to [Mr. Avenatti], including any such documents that are located on and seized from the EA Devices." 8-ER-1794. In addition, the Government procured the support of Mr. Weiss, the receiver, in opposing Mr. Avenatti's efforts to gain access to the servers. On August 29, 2019, the court denied Mr. Avenatti's motion.

In September 2019, Mr. Avenatti and his counsel were permitted minimal access to certain emails and client pleadings stored on the servers by visiting the IRS-CI's Los Angeles office, but were not permitted access to any other files, data or software programs on the servers (e.g., financial data showing costs expended for various clients, including Ms. Clifford). On September 13, 2019, Mr. Steward specifically requested that the Government provide the emails and documents from the servers relating to Mr. Avenatti's representation of Ms. Clifford. On September 20, 2019, the Government refused to produce the materials relating to Ms. Clifford from the servers.

Between September 2019 and July 2021, Mr. Avenatti repeatedly requested access to the servers and that the Government produce all Brady and Rule 16 material they contain. The Government did not comply, and instead gave Mr. Avenatti access to 19.86 terabytes of raw data only recently, in mid-September 2021, after a mistrial was declared in California due to a Brady violation.

Further, the testimony in the California case established that the forensic copies of the servers were in the possession of Main Justice at the DOJ Cybercrime Lab in Washington, D.C. since the Spring of 2019. See Exhibit A to Reply Motion to Adjourn (Dkt. No. 201). Mr. Joseph Varani, a DOJ Senior Digital Investigative Analyst with Main Justice, reviewed the data from Mr. Avenatti's laptop, which was seized from his briefcase at the time of his arrest in New York, together with the servers. See id. Accordingly, the Government's claim that it did not have access to the servers from Mr. Avenatti's law firm is simply inaccurate.[4]

Presently, the Government seeks to use Rule 16(b)(1) as a sword to force Mr. Avenatti to comb through the servers for responsive information, even though it refused to do the same for years (and even though the servers contain an enormous

---

[4] The prosecutors in this case have also acknowledged that they have maintained the ability at all times to access information from their colleagues in the Central District of California. This makes sense seeing as the two offices have consistently coordinated their efforts relating to Mr. Avenatti. See, e.g., Dkt. Nos. 358 and 363, United States v. Avenatti, 19 Cr. 373 (PGG) (S.D.N.Y.).

amount of data that Mr. Avenatti cannot possibly review before trial).[5] See United States v. Ganias, 824 F.3d 199, 217 (2d Cir. 2016) (comparing the capacity of one terabyte of data to that of 12 library floors' worth of books). This plainly violates Rule 16 and the Court should deny the Government's motion.

**The Government erroneously equates Mr. Avenatti's discovery obligations with its own, in violation of basic Fifth and Sixth Amendment principles.**

Although defendants have some reciprocal discovery obligations under Rule 16(b), the nature of those obligations is fundamentally different from those imposed on the Government by Rule 16(a). For example, Rule 16(a) requires (without more than a defendant's mere request) the production of documents "which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the government." Fed. R. Crim. Proc. 16(a)(1)(C) (emphasis added). The rule takes an expansive position on what the Government must disclose because it has a fundamental duty to "contribute[] to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at the trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence." Fed. R. Crim. P. 16 Advisory Committee Note—1974 Amend. Of course, this duty also includes the disclosure of exculpatory material and impeachment evidence, core aspects of the constitutional guarantee to a fair trial. See Brady v. Maryland, 373 U.S. 83, 87 (1963); Giglio v. United States, 405 U.S. 150, 154 (1972).

In contrast, Rule 16(b) requires a defendant requesting discovery, "upon compliance with such request by the government," to produce documents only "within the possession, custody, or control" of the defendant "***and*** [which] the defendant intends to use [] in [his] case-in-chief at trial." 16(b)(1)(A) (emphasis added). "The use of the conjunctive word indicates that the documents the defendant must produce consist of a single category, namely, the defendant's trial exhibits." United States v. Weissman, No. S2 94 Cr. 760 (CSH), 1996 W 725385, at *1 (S.D.N.Y. Dec. 26, 1996).

Against this backdrop, and particularly given its failure to comply with Rule 16(a) in its handling of Mr. Avenatti's law firm servers, the Government cannot persuasively argue that Mr. Avenatti must disclose what he intends to affirmatively introduce at trial before the January 18, 2022 deadline for defense exhibits. And

---

[5] A diligent search for relevant materials from the servers is underway, but it is a herculean task, however, due to the amount of data (i.e., well over one million emails alone).

although the defense has indicated Mr. Avenatti is likely to testify, we are still determining the scope of a defense case-in-chief. Indeed, until the Government provides 3500 material for its witnesses, and gives the defense a witness list, it is difficult to envision how the defense could be expected to make any conclusions about what we intend to use in our case-in-chief at trial. See 16(b)(1)(A).

Notably, the Government's accusation that the defense is "facilitating gamesmanship" falls short, and is a failed effort to make it appear as if the law firm servers are Mr. Avenatti's problem. But they are not, and it is the Government that is not taking the issue seriously. By not searching the servers—which have been in the Government's possession for over two years—and now demanding that Mr. Avenatti produce information from the servers, the Government is engaged in a game of deflection. Cf. United States v. Pollock, 417 F. Supp. 1332 (D. Mass. 1976) (the purpose of the rule requiring prosecutor to provide evidence to the defense is "not to foster theoretical gamesmanship between prosecution and defense, but to ensure that a trial is indeed a search for the truth based on all relevant material, much of which, as a practical matter, will be in the hands of the government").

Given the length of time Mr. Avenatti represented Ms. Clifford, the servers contain substantial materials responsive to the Government's discovery obligations and yet they were never examined. These include communications revealing Mr. Avenatti's financial dealings with Ms. Clifford, the book agent and the publisher; Mr. Avenatti's email communications with Ms. Daniels and others relating to her book deal; accounting details of the costs, expenses and fees incurred by Mr. Avenatti during his work for Ms. Clifford; and financial information relating to his firm. Instead of taking on its responsibility to review the servers, the Government is attempting to divert attention from its own failures and scapegoat Mr. Avenatti.

**Conclusion**

For the reasons set forth herein, the Court should deny the Government's motion to compel.

Respectfully Submitted,

/s/
Robert M. Baum, Esq.
Andrew J. Dalack, Esq.
Tamara L. Giwa, Esq.
Assistant Federal Defenders

Cc:   Government Counsel                              Counsel for Michael Avenatti