

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 7, 2022

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:   *United States v. Michael Avenatti*, 19 Cr. 374 (JMF)

Dear Judge Furman:

The Government respectfully submits this reply in support of its motion to preclude the proffered expert testimony of Donald Vilfer. (Dkt. No. 184 ("Mot.").) Although the defendant's opposition (Dkt. No. 202 ("Def. Opp.")) fails specifically to address the fact that the Government intends to offer evidence of the text communications between the defendant and Victim-1 obtained directly from the defendant's own iCloud account, it appears to abandon the goal of offering Vilfer's testimony to suggest that the communications obtained from Victim-1 are inaccurate or inauthentic.[1] (*See* Dkt. No. 184-1 at 2.) Instead, the defendant now seeks to elicit testimony from Vilfer for a second, entirely improper purpose: to testify about investigative steps taken and not taken by the Government in an effort to turn the trial into a review of the Government's investigation, apparently to be undertaken by Vilfer. But it is well settled that such testimony is not proper evidence for a defense case. As explained further below, what matters to the factual question before the jury is whether the evidence at trial proves the defendant's guilt beyond a reasonable doubt. Whether the Government had other investigative steps available to it that might, according to a defense expert's speculation, have yielded other evidence is irrelevant to that question.

**I.     Applicable Law**

It is elementary that "the Government is not on trial in this case, and the jury will not be asked to pass on the adequacy of its investigation." *United States v. Carton*, No. 17 Cr. 680 (CM),

---

[1] Despite persisting for more than six months with his claim that the versions of the messages provided by Victim-1 are somehow inaccurate or inauthentic, he has still failed to identify any alleged discrepancy. "That failure is especially noteworthy because, as the Government notes, Avenatti has access to the contents of his iCloud account, which includes thousands of records of WhatsApp calls and messages between him and Ms. Clifford, including, presumably, most, if not all, of the messages at issue here." *United States v. Avenatti*, --- F. Supp. 3d ----, No. 19 Cr. 374 (JMF), 2021 WL 4120539, at *3 (S.D.N.Y. Sept. 9, 2021) (internal quotation marks omitted).

January 7, 2022
Page 2

2018 WL 5818107, at *3 (S.D.N.Y. Oct. 19, 2018); *see, e.g.*, *United States v. Knox*, 687 F. App'x 51, 54-55 (2d Cir. 2017) (instructing jury that the "government is not on trial" is "appropriate" (internal quotation marks omitted)).  The issue before the jury is simply whether, "in light of [the] evidence or lack of evidence, the jury [is] convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he has been charged."  *United States v. Saldarriaga*, 204 F.3d 50, 52 (2d Cir. 2000) (per curiam).  To decide that question, the jury should "base its decision on the evidence or lack of evidence that had been presented at trial."  *Id.*

Evidence about the Government's investigatory decisions is irrelevant and inadmissible. The Government's "failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged."  *Id.* at 53; *see, e.g.*, *United States v. Ngono*, 801 F. App'x 19, 24 (2d Cir. 2020) ("We have held that a district court does not commit error in instructing the jury that the Government has no legal obligation to use any particular investigative technique in preparing its case.").  Accordingly, while a defendant "may comment on the failure of proof in the record, such as the absence of forensic evidence in the form of voice, handwriting, or fingerprint analysis," such comment becomes improper when it encompasses the further argument that "the government had failed to undertake to procure such evidence."  *United States v. Londono*, 175 F. App'x 370, 375 (2d Cir. 2006) (affirming a district court that sustained an objection during a defense summation); *see United States v. Aleynikov*, 785 F. Supp. 2d 46, 65 (S.D.N.Y. 2011) ("As a general matter, the quality and scope of the Government's investigation are not appropriate lines of examination . . . ."), *rev'd on other grounds by* 676 F. 3d 71 (2d Cir. 2012).

## II.   Discussion

The defendant intends to elicit testimony from Vilfer about the investigative steps not taken by the Government.  For instance, the defendant proposes to have Vilfer testify about "forensic extraction tools available to the Government." (Def. Opp. at 1.)  Based on his review of "the investigative steps the Government took (and failed to take) as illustrated by the discovery," he will "help the jury understand the significant of the Government's failure to obtain a forensic copy of [Victim-1]'s cellular device."  (*Id.* at 2.)  More broadly, Vilfer will "challenge and attack the tactics used by the government in investigating Mr. Avenatti's conduct regarding [Victim-1]" (*id.* at 3).  Apparently, the defendant intends for Vilfer to opine that it was an "error" for the Government not to have preserved and obtained all of Victim-1's communications with anyone she has ever communicated with because, Vilfer would speculate, Victim-1 "may have sent electronic messages . . . to other friends and confidants lauding [the defendant's] representation of her and his efforts to secure her book deal," "[o]r perhaps [Victim-1] expressed to others biases against [the defendant] for reasons unrelated to his legal representation."  (*Id.* at 4.)

As the Government explained in its motion, this testimony is unreliable: Vilfer is unqualified to opine on the "best" methods to gather evidence in this case.  (*See* Mot. at 3-4.)  The defendant's opposition brief further demonstrates that point.  For instance, Vilfer is not qualified to "help the jury understand the significance of the Government's failure to obtain a forensic copy of [Victim-1]'s cellular devices." (Def. Opp. at 2.) Indeed, the claim—that Vilfer is apparently prepared to make (*id.* at 4)—that the Government errs when it does not preserve and obtain all communications that a victim or witness has had with any other individual (at any time and using

January 7, 2022
Page 3

any means of communications) is unreliable and unqualified on its face. Similarly, testimony that claims that the Government failed to investigate whether a witness withheld or fabricated evidence as a basis to suggest that such evidence exists (*id.* at 3-4), is neither based on sufficient facts and data nor the product of reliable principles and methods, as required by Rule 702.

This line of questioning is also barred by controlling Second Circuit precedent. The Government's "failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged." *Saldarriaga*, 204 F.3d at 53. The alleged failure here is the failure to make a forensic copy of a device that was never in the Government's lawful possession. *See United States v. Avenatti*, --- F. Supp. 3d ----, No. 19 Cr. 374 (JMF), 2021 WL 4120539, at *3 (S.D.N.Y. Sept. 9, 2021) ("[The defendant] does not dispute that the cellphone was in the Government's possession only fleetingly and, presented with an argument much like Avenatti's here, the Second Circuit has explicitly 'reject[ed] . . . a notion of 'possession' which is so elastic as to embrace materials that the prosecution never had in its files, never inspected, and never knew about.'" (alterations in original) (quoting *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980))). That choice, and whatever evidence it may or may not have uncovered, is irrelevant to the question whether the evidence presented at trial proves the defendant's guilt beyond a reasonable doubt. The defendant is free to "comment on the failure of proof in the record," but not to attack the Government's alleged "fail[ure] to undertake to procure such evidence." *Londono*, 175 F. App'x at 375.

To avoid this settled line of precedent, the defendant argues that this evidence is part of a defense challenging the "caliber of an investigation," relying on cases which he says permit evidence undercutting "the thoroughness and good faith of a government investigation." (Def. Opp. at 2-3). In support, he relies principally on *Kyles v. Whitley*, 514 U.S. 419 (1995), *Bowen v. Maynard*, 799 F.2d 593 (10th Cir. 11986), and *Lindsey v. King*, 769 F.2d 1034 (5th Cir. 1985). These decades-old cases all arise under a very particular set of circumstances unlike those here, and none address evidentiary rulings. Instead, these cases concern *Brady* errors involving the withholding of exculpatory information, such as a statement in which a witness at trial stated that he "did not see the perpetrator's face," *Lindsey*, 769 F.2d at 1036, or evidence pointing toward an alternative perpetrator, *Bowen*, 799 F.2d at 612. *See also Kyles*, 514 U.S. at 445-46 (confidential informant "essential to [the Government's] investigation" made statements "replete with inconsistencies"). In addition to the obvious exculpatory value of this information, the courts explained that it could be used to "attack[] the reliability of the investigation." *Kyles*, 514 U.S. at 446.

As the Second Circuit has held, *Kyles* "provides *no guidance* about what evidence must be admitted at trial or what lines of questioning must be permitted to ensure a meaningful opportunity to cross-examine adverse witnesses." *Watson v. Greene*, 640 F.3d 501, 512 n.11 (2d Cir. 2011) (emphasis added, alteration in original, citation omitted). The same is true of *Bowen* and *Lindsey*. These opinions—which address actual evidence that was not disclosed—certainly do not permit defendants to introduce whatever evidence they wish in order to attack the decision-making of agents or prosecutors involved in the case, much less do they authorize so-called expert testimony encouraging the jury to speculate about evidence that might have been found had particular steps been taken—evidence which neither the defendant nor anyone else has a basis to believe exists.

January 7, 2022
Page 4

The reason is that it is not a defense to a crime to show simply that the investigators failed to be thorough. And the defendant's attack on the Government's thoroughness here is just a suggestion that the Government should have taken some investigative step. But the Government is not on trial, and the law does not permit the defense to offer evidence solely to attack the Government's motives or thoroughness. *See* 11/01/21 Tr. at 17, *United States v. Maxwell*, No. 20 Cr. 330 (AJN) (S.D.N.Y.) (precluding "affirmative evidence by the defense that goes to the thoroughness of the investigation") (excerpt attached as Exhibit A). To the extent the defendant wishes to identify failures in the evidence, he may do so in closing argument and through relevant cross-examination. *See, e.g.*, *United States v. Mickens*, Nos. 20-258 (L), 20-462, 20-630, 2021 WL 3136083, at *9 (2d Cir. July 26, 2021) (summary order) (describing a defense that "emphatically and repeatedly" attacked the Government's over-reliance on a key witness's uncorroborated narrative "to determine the scope of the investigation" in "cross-examinations and closing statements"); *Watson*, 640 F.3d at 510-11 (agreeing that cross-examination about a rumor of a possible alternative perpetrator was probative); 11/01/21 Tr. at 17-21, 27-28, *United States v. Maxwell*, No. 20 Cr. 330 (AJN) (S.D.N.Y.) (distinguishing *Kyles*, *Bowen*, and *Lindsey* as providing examples of "focused cross-examination to impeach a witness that testified to the defendant's guilt and thereby throw the product of the government's investigation into doubt," among other reasons; identifying similar examples; and permitting cross-examination showing that a witness "allegedly changed her story to law enforcement"). He may also use evidence that is otherwise admissible. *See Kyles*, 514 U.S. at 445, 453 (defense could have called informant whose "behavior raised suspicions that he had planted both the murder weapon and the victim's purse in the places they were found"). But that is all. *See Saldarriaga*, 204 F.3d at 53.[2]

Finally, even if the defendant's evidence on the thoroughness of the Government's investigation were proper, it is inadmissible under Rule 403. First, the defendant's explicit goal is to encourage a verdict based on improper considerations—that is, speculation about evidence not in the record. (Def. Opp. at 4.) Indeed, the defendant seeks to put before the jury, in the guise of expert testimony, that Victim-1 "*may* have sent electronic messages . . . to other friends and confidants lauding [the defendant's] representation of her and his efforts to secure her book deal," and that "*perhaps* [Victim-1] expressed to others biases against [the defendant] for reasons unrelated to his legal representation." (*Id.* (emphasis added).) Similarly, the defendant, without any basis to believe that Victim-1 withheld or fabricated evidence, wishes an "expert" to inform the jury of "the Government's failure to investigate whether [Victim-1] shared all relevant evidence; withheld critical evidence relating to [the defendant] and his work for her on the book deal; and otherwise fabricated evidence, and/or engaged in 'numerous inconsistencies' that would 'allow[] the jury to infer that [Victim-1] was anxious to see [the defendant] arrested.'" (*Id.* (quoting *Kyles*, 514 U.S. at 445).) This attempt to offer purely speculative, irrelevant testimony to encourage the jury to reach conclusions based on theoretical evidence which there is no reason to think even exists, is barred by Rule 403. *See United States v. Nieves*, No. 19 Cr. 354 (JSR),

---

[2] The defendant also relies on *Mendez v. Artuz*, No. 98 Civ. 2652 (LMM), 2000 WL 722613, at *19 (S.D.N.Y. June 6, 2000), another *Brady* case, and *Buie v. Phillips*, 298 F. App'x 63 (2d Cir. 2008), in which a habeas petitioner alleged error because he was precluded from cross-examining a prosecution witness "on the fact that the police knew that other witnesses had given different descriptions of the shooter," *id.* at 65, much like *Watson*, *supra*. Neither case provides a basis for the principle the defendant asserts here.

January 7, 2022
Page 5

2021 WL 1535338, at *1 (S.D.N.Y. Apr. 19, 2021) (barring under Rule 403 government expert whose testimony "invites ungrounded speculation and confusion" and observing that "dressing up this evidence of very limited relevance in the guise of an expert opinion gives it a prominence that only invites further confusion and prejudice").

Second, Vilfer's testimony is likely to confuse the jury "about the proper standard for determining [the defendant]'s guilt by suggesting that the government's choices of investigative techniques are relevant to whether guilt is proved beyond a reasonable doubt." 11/01/21 Tr. at 21, *Maxwell*, No. 20 Cr. 330 (AJN) (S.D.N.Y.).  Third, if the defendant offers Vilfer's testimony in service of a defense argument that the Government's investigation was sloppy (*see, e.g.*, Def. Opp. at 3 (arguing that the defense may show the jury that "the agents and the prosecutors" in this case "engaged in a 'remarkably uncritical attitude'")), the Government is entitled to rebut that argument with evidence of the Government's thoroughness and care, elicit testimony from law enforcement witnesses regarding the likely impact on victims and witnesses if the Government followed Vilfer's purported best practices in investigations, and seek jury instructions from the Court regarding the limitations of the Fourth Amendment.  *See Avenatti*, 2021 WL 4120539, at *3 ("Avenatti cites, and the Court has found, no authority for the proposition that where, as here, a government official is in possession of a person's cellphone, that official even has authority to access or copy the contents of the cellphone without a warrant or the person's consent.  Such a rule would not be consistent with the Fourth Amendment, *see, e.g.*, *Riley v. California*, 573 U.S. 373, 400 (2014), and would undoubtedly discourage victims and witnesses alike from coming forward and cooperating with law enforcement investigations.").  The resulting sideshow would be entirely orthogonal to the defendant's guilt or innocence.  Last, evidence attacking the thoroughness of the Government's investigation is "at best repetitive of the defense's arguments that the government collected insufficient evidence of guilt," a point "made most clearly and directly by focusing on the evidence or lack of evidence." 11/01/21 Tr. at 21, *Maxwell*, No. 20 Cr. 330 (AJN) (S.D.N.Y.).

January 7, 2022
Page 6

### III.    Conclusion

For the foregoing reasons, the Court should preclude the proffered expert testimony of Vilfer based on the record.

<div style="margin-left: 50%;">

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    __s/_____
Matthew D. Podolsky
Andrew A. Rohrbach
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-1947/2345/2616

</div>

cc:    Robert M. Baum, Esq. (by ECF)
       Andrew J. Dalack, Esq. (by ECF)
       Tamara L. Giwa, Esq. (by ECF)