# EXHIBIT A

LB1TMAX1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          20 CR 330 (AJN)

GHISLAINE MAXWELL,

            Defendant.

------------------------------x

                             New York, N.Y.
                             November 1, 2021
                             11:05 a.m.

Before:

                HON. ALISON J. NATHAN,

                           District Judge

                    APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
ALISON MOE
MAURENE COMEY
ANDREW ROHRBACH
LARA POMERANTZ
    Assistant United States Attorney

COHEN & GRESSER
    Attorneys for Defendant
CHRISTIAN EVERDELL

HADDON MORGAN FOREMAN
    Attorneys for Defendant
JEFFREY PAGLIUCA
LAURA MENNINGER

BOBBI C. STERNHEIM
    Attorney for Defendant

to rehabilitate a witness attacked on another ground. It's 801(d)(1)(B)(ii). For example, the statement could be admitted to explain what would otherwise appear to be an inconsistency in the witness's statement and rebut a charge of faulty memory. *United States v. Purcell*, 967 F.3d 159, (2d Cir. 2020).

If it becomes relevant, the government may offer prior statements before the witness testifies if the defense attacks the credibility in opening statements and it's clear that the witness will be subject to cross-examination. *United States v. Flores*, 945 F.3d 687, (2d Cir. 2019). That's restating the applicable law here that the parties appear to agree to in the briefs. The government doesn't anticipate any such effort to offer such statements at this time and won't mention any in opening beyond that.

Is there anything specific to flag or discuss here, from the government's perspective?

MS. MOE: No, your Honor, thank you.

THE COURT: Ms. Sternheim?

MS. MENNINGER: Your Honor, Laura Menninger. None for the defense at this time. Thank you.

THE COURT: All right. Thank you.

The government's 3 and 4, which I'm going to group, the government seeks to preclude evidence and arguments by the defense, (1) about the investigation in Florida, including the non-prosecution agreement, (2) that Ms. Maxwell was not charged

by the U.S. Attorney's Office in the Southern District of Florida, (3) about the scope and timeline of investigation in New York, and (4) other evidence that demonstrates the government's motives for investigating Ms. Maxwell.

The Court's analysis here is guided by four principles set by the Second Circuit and the Supreme Court.

First, because the government has no duty to employ, in the course of a single investigation, any particular investigative technique, the failure to utilize some particular technique does not tend to show that a defendant is not guilty of the crime of which he's been charged and is therefore irrelevant. *United States v. Saldarriaga*, 204 F.3d 50, (2d Cir. 2000). That's the first legal principle that frames the discussion here.

Second, arguments that the government had an improper motive generally must be directed to the Court rather than the jury. *United States v. Regan*, 103 F.3d 1072, (2d Cir. 1997); *see also*, *United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011).

Third legal principle: There is no per se bar on admitting evidence of the government's charging decisions. Rather, the Court must -- I will quote here -- "inquire into its relevance and probative value to the respective case." *United States v. White*, 692 F.3d 235 (2d Cir. 2012); *see also*, *United States v. Ngono*, 801 F.App'x. 19 (2d Cir. 2020).

1          Fourth, the confrontation clause of the Sixth
2    Amendment guarantees a criminal defendant the right to
3    meaningful cross-examination of government witnesses at trial.
4    *United States v. Figueroa*, 548 F.3d 222, (2d Cir. 2008).
5    Indeed, cross-examination is the principal means by which the
6    believability of a witness and the truth of his testimony are
7    tested.  *Davis v. Alaska*, 415 U.S. 308, 316, (1974).
8          With this legal framework in mind, and in light of the
9    parties' extensive briefing on these issues, I think the
10   admissibility of some of the proposed evidence can be
11   determined now, but the admissibility of other evidence will
12   require additional facts and the context of trial to decide,
13   but I think it's important for me to give guidance.
14         Based on the papers before me, I provide the following
15   guidance:  First, the Court will preclude affirmative evidence
16   by the defense that goes to the thoroughness of the
17   investigation.  Although evidence that goes to the thoroughness
18   of the government's investigation can in some cases be relevant
19   and may in some cases be admissible, it's not relevant or
20   admissible if not probative of the defendant's guilt of the
21   crimes charged.
22         In its briefing, the defense relies heavily on *Kyles*
23   *v. Whitley*, 514 U.S. 4 (1995), in which the Supreme Court held
24   that an informant's statements to police were material for
25   purposes of *Brady* disclosures because the statements could be

used to "attack the thoroughness and even the good faith of the investigation."

That holding has only limited relevance here.  First, the statement at issue in *Kyles* was probative because it suggested the defendant's innocence, not because it was evidence of the reasons for the charging decision or the investigation's timeline.

Second, the Second Circuit in *Watson v. Greene* narrowly construed the holding in *Kyles* by clarifying that it "addresses only the prosecution's obligations to disclose *Brady* material" and "provides no guidance about what evidence must be admitted at trial or what lines of questioning must be permitted to ensure a meaningful opportunity to cross-examine adverse witnesses."  *Watson v. Greene*, 640 F.3d 501, 512, n. 11 (2d Cir. 2011).

Now the Second Circuit's decision in *Watson* does, however, suggest that some arguments about the thoroughness of the investigation are probative of guilt in some circumstances. In that case, law enforcement had received a tip that the defendant was innocent because another individual shot the victim.  The Second Circuit stated that cross-examination of the lead investigating officer on that tip was probative because the jury could conclude that law enforcement had prematurely concluded the defendant was the shooter and it failed to investigate diligently the possibility that it was

1   the other individual.  *Watson*, 640 F.3d, 511-12.

2         Other courts in this Circuit have described challenges
3   to the thoroughness of the investigation as a "common method of
4   undermining a prosecution" by, for example, cross-examining
5   officers on which leads they followed and which they did not.
6   *See, for example, Gray v. Ercole* -- I don't have that full
7   quote -- 2011 WL 5082868 (E.D.N.Y 2008).  Or defense counsel
8   may, on cross, examine investigating officers if they
9   considered alternative suspects.  *United States v. Birbal*, 92
10  CR 98, 1996 WL 192924 at *7, that's the District of the
11  Vermont, 1996.  That was affirmed by the Second Circuit at 113
12  F.3d 1230.  And I will quote here, "The length of the
13  investigation, the investigative techniques used, and the fact
14  that the defendant was not initially a target of the
15  investigation are all irrelevant pursuant to" the principle
16  that the government's failure to use particular investigative
17  techniques does not tend to show that the defendant is not
18  guilty.  *See*, *for example*, *United States v. Duncan*, No. 18 CR
19  289, 2019 WL 2210663 (S.D.N.Y. 2019); see also, *United States
20  V. Aleynikov*, 785 F.Supp.2d 46, 65 (S.D.N.Y. 2011).

21        The other two cases the defense cites, neither of
22  which is binding on the Court, don't suggest anything different
23  than the law I just referred to.  In *Bowen v. Maynard*, the 10th
24  Circuit held that *Brady* evidence in the government's possession
25  was material because it suggested that another likely suspect

did not have an alibi and suggested that a photo lineup was unduly suggestive. 799 F.2d 593, (10th Cir. 1986). The court stated that, if disclosed, "the defense could have cross-examined the detectives about their decision to use the photographs" that they did as well about their failure to corroborate the other suspect's alibi.

And the defense cites another *Brady* violation in *Lindsey v. King* where the Fifth Circuit found that a police report was material under *Brady* because it showed key witnesses to a murder had changed their story, which on cross-examination would have meant the destruction of the witness's identification and the discrediting in some degree of the police methods employed in assembling the case against the defendant. *Lindsey v. King*, 769 F.2d 1034, (5th Cir. 1985).

These two examples of focused cross-examination to impeach a witness that testified to the defendant's guilt and thereby throw the product of the government's investigation into doubt are far afield from the specifics of what the defense proposed here. In its brief, the defense seeks to affirmatively -- and I will quote from their brief -- "call FBI case agents as witnesses" to ask who they talked to, what documents they subpoenaed, and when. *See*, defense's response at 40. But as the Second Circuit explained in *Saldarriaga*, the government's use or non-use of certain investigative techniques does not tend to show the defendant's innocence of the charges.

1   　　　　　The defense also seeks to elicit evidence of the
2   public outcry and scrutiny that preceded the decision to charge
3   the defendant.  The defense refers to public statements made by
4   assistant United States attorneys -- not those appearing in the
5   case -- to suggest that Ms. Maxwell was charged for improper
6   reasons.
7   　　　　　The Court finds that this specific proffered evidence
8   is irrelevant to the charged conduct and, therefore,
9   inadmissible.
10  　　　　　To the extent that the defense's affirmative evidence
11  in this regard would have some marginal probative value, it is
12  substantially outweighed by 403 prejudice.  *See*, *for example*,
13  *United States v. Hill*, 12 CR 214, 2014 WL 198813 (E.D.N.Y.
14  2014), affirmed by the Second Circuit, 658 Fed. Appx. 600.
15  　　　　　Here's the reason for that 403 analysis:
16  　　　　　First, investigative details are likely to confuse the
17  jury about the proper standard for determining Ms. Maxwell's
18  guilt by suggesting that the government's choices of
19  investigative techniques are relevant to whether guilt is
20  proved beyond a reasonable doubt.  Moreover, I will instruct
21  jurors, as is standard, to the effect that the government is
22  not on trial.  And that standard charge can be found in many
23  cases.  Admitting testimony on the investigation would confuse
24  the jury once it's received that instruction.
25  　　　　　Second, these lines of argument are likely to

1    substantially confuse and delay the trial.  The evidence
2    outlined in the defense's papers, including who was interviewed
3    and when, what documents were subpoenaed and other details of
4    investigations in two different states and different time
5    periods would substantially expand the scope of the trial.
6    Exactly what steps investigators took is not a simple question,
7    of course.  The government would likely present a contrary
8    account of events, leading to trials within trials on what law
9    enforcement did over the course of years.  This prejudice would
10   substantially outweigh any minimum probative value that might
11   be gained from such a far-flung endeavor.
12           Third, as to prejudice, the evidence would be
13   cumulative, demonstrating that an investigation was "hasty" and
14   not thorough is at best repetitive of the defense's arguments
15   that the government collected insufficient evidence of guilt.
16   That point is made most clearly and directly by focusing on the
17   evidence or lack of evidence and credibility or lack of
18   credibility of the witnesses presented at trial.
19           The second piece of guidance I can provide now is that
20   the Court will exclude much of the evidence outlined in the
21   defense's papers of the government's alleged motives for
22   investigating and charging Ms. Maxwell.  This evidence includes
23   but is not limited to the Miami Herald article, statements from
24   Attorney General William Barr and the like.
25           The evidence presented by the government in this trial

is the relevant basis for the jury's determination of guilt or innocence. Why and when the government conducted the investigation is not relevant. If the defense believes the government has a legally improper motive for prosecuting Ms. Maxwell or somehow fabricating evidence or suborning perjury or the like, the Second Circuit has made clear that the proper remedy is to file a motion for the Court to consider. *See*, *Regan*, 103 F.3d 1082. Absent that, the law is clear that for purposes of the jury, "the government is not on trial." *United States v. Knox*, 687 F.App'x 51, (2d Cir. 2017).

Moreover, evidence of motive would be highly prejudicial. For the reasons I explained a moment ago, it would confuse jurors as to the proper standard of guilt to be applied in the case. Indeed, the defense's outlined evidence of improper motives is strongly suggestive of jury nullification because it suggests a vindictive or political prosecution which is rightly a matter reserved to the Court.

Calling witnesses to testify to the government's motive would substantially expand the scope of trial, rely likely on hearsay and other inadmissible evidence. So what motivated a particular investigative step or charging decision of course doesn't have a black or white answer, and the defense would have one story and the government another, neither of which would assist of the jury in deciding Ms. Maxwell's guilt or innocence of the charges here based on of the government's

1    ability to prove its case beyond a reasonable doubt.

2              Third piece of guidance:  The Court will exclude from
3    evidence the non-prosecution agreement, both its existence and
4    its particular terms.  The defense argues the NPA is relevant
5    to the bias and financial interest of two witnesses.  One
6    anticipated witness received immunity from criminal prosecution
7    under the NPA.  Additionally, under the NPA, Epstein agreed to
8    pay for a lawyer for an alleged victim who was anticipated to
9    testify and agreed not to contest her civil suit against him.
10   The civil suit ended in a settlement with respect to an alleged
11   victim.

12             Of course, defendants are always able to cross-examine
13   witnesses about relevant bias.  For example, cross-examination
14   about civil litigation or civil claims against Epstein or
15   others and related financial incentive are fair grounds.
16   Moreover, cooperating witnesses are commonly cross-examined
17   about how testimony may affect the sentence that they receive.
18   And if it were the case that any witness were to receive
19   testimonial immunity in this case, the defense may
20   cross-examine about that.  But the defense has not explained
21   any bias or incentive to fabricate that results from or relates
22   to the NPA.  Regardless of how the witness covered by the NPA
23   might testify, that witness will remain protected under the NPA
24   in the Southern District of Florida, and as I already ruled,
25   the NPA does not provide protection in the Southern District of

1  New York.

2  Similarly, no matter how a witness who has a
3  settlement or financial incentive testifies, those benefits are
4  not received under the NPA, so I don't see any theory of bias
5  that would be relevant that the defense has articulated with
6  respect to the NPA.

7  Moreover, even if there were some relevance, it would
8  be substantially outweighed by a significant risk of 403
9  prejudice from introducing the NPA. The jury would need to be
10 instructed on what the non-prosecution agreement is, and would
11 need to have its terms explained. In particular, NPA, of
12 course, is controversial and complicated and has a complicated
13 background. There's a risk of undue delay, juror confusion,
14 and improper suggestions of sympathy or nullification made to
15 the jury on the basis of the NPA.

16 I will be clear, it's not clear to me the NPA could
17 never be admitted, but the rationale now provided by the
18 defense in its papers does not justify admission based on the
19 balancing of 401 and 403 factors.

20 Fourth guidance: The government's charging decisions
21 are likely not relevant and therefore inadmissible. The
22 government didn't indict Ms. Maxwell by the end of the Florida
23 investigation, and the government didn't indict Ms. Maxwell
24 when it indicted Jeffrey Epstein originally in New York. As
25 the Second Circuit stated in *White*, charging decisions can be

admissible under the usual rules of relevance.  In *White*, the court determined that a prior charging decision was admissible because it bore directly on the credibility of a witness that testified at the defendant's trial.

As currently proffered by the defense, the rationale doesn't apply here.  For example, according to the defense, an alleged victim's statement to the FBI previously did not implicate or exculpate Ms. Maxwell, but her statement today does implicate her.  On the basis of that statement, and assumedly other evidence available to them and a host of reasons, officials in the Southern District of Florida decided to not indict Ms. Maxwell at that time.  That charging decision could be understood as a determination that in 2008 the government lacked sufficient evidence of Ms. Maxwell's guilt, but the decision not to charge -- or it could mean any number of a host of reasons, but the decision not to charge has little probative value that the Court can see as to this case.

Charging decisions, as I said, are made for a host of reasons.  Trying to sort through those reasons would be prejudicial pursuant to 403 both because they would require significant time to explore and because juror confusion would be likely.  Any consideration of the government's decisions would also likely rely on hearsay or other inadmissible evidence.  More importantly, unlike in *White*, those officials' assessments of the evidence in Florida in 2008 is not relevant

to the jury's decision now, which is whether there is evidence of Ms. Maxwell's guilt beyond a reasonable doubt as the government will put its case to the jury.

Now there is a difference between admitting a witness' prior statements for impeachment purposes, which is protected by the confrontation clause, and admitting prior charging decisions. In a case analogous to this one on this issue, *United States v. Borrero*, another district court judge held that a defendant could permissibly cross-examine a witness about their prior statement to law enforcement in which they accused a different individual of the crime for which the defendant was later charged. 2013 WL 6020773 (S.D.N.Y. 2013). That case docket is 13 CR 58. But the court there did not admit the charging decision that the early investigation had ended in a nolle, because it would confuse jurors, require extended factual disputes, and was, at best, cumulative of the witness's statement. As I have explained, the same would appear to be true here.

Fifth piece of guidance: In contrast to what I indicated may not come in, the Court will permit relevant cross-examination of the government's witnesses. Defense seeks to impeach the credibility of some witnesses by admitting those witnesses' prior statements to the government that purportedly did not implicate Ms. Maxwell. This use of cross-examination to impeach a witness that has allegedly changed her story to

1  law enforcement is exactly the kind of attack on the
2  thoroughness of the government's investigation that the Fifth
3  Circuit approved in *Lindsey v. King*. Provided that the rules
4  for admitting prior inconsistent statements are satisfied, the
5  Court concludes that this line of evidence is relevant and
6  admissible.
7           The defense may also cross-examine about witnesses'
8  motives or biases for testifying, including, for example, the
9  witnesses' motives for implicating Ms. Maxwell after Jeffrey
10 Epstein's death. Admitting prior statements on
11 cross-examination may require providing the jury some
12 background information about the prior investigations so that
13 the prior statements are understood in the proper context and
14 the jury is provided necessary background to understand that
15 evidence.
16          (Continued on next page)

1                THE COURT:  (Continuing)

2                I imagine this can be done through cross-examination

3     questions if the witness has personal knowledge.  I would also

4     encourage the parties to discuss stipulations in this regard to

5     provide the jury any necessary and non-prejudicial context or

6     background, or other proposals for permitting the jury to

7     understand the background or context without crossing over into

8     the 403 prejudice line.

9                I also would permit the defense to cross-examine law

10    enforcement officers about the investigative steps that were

11    taken if the government puts the thoroughness of the

12    investigation into issue as this, too, would be permissible

13    impeachment and cross.

14               These articulated lines of cross-examination of

15    government witnesses would be relevant to impeach a witness by

16    suggesting bias or otherwise implicating their credibility.

17    Moreover, denying Ms. Maxwell these lines of questioning would

18    have implications under the confrontation clause.  The Court

19    expects that the probative value would not be substantially

20    outweighed by 403 prejudice if done along the lines of what I

21    have indicated, especially if accompanied by a limiting

22    instruction by the Court that, for example, prior inconsistent

23    statements are to be considered for their impeachment value and

24    the like.

25               Similarly, the Court may instruct the jury that

1    counsel made only a good faith -- actually, I will retract that
2    last sentence.
3              At base, the Court encourages the parties to confer on
4    appropriate process for putting background information in front
5    of the jury, as necessary, to allow the kinds of
6    cross-examination that would be permissible and required under
7    the relevant law.
8              Let me pause and ask counsel if they have any
9    questions with respect to the guidance I have offered at this
10   time.  Obviously there may be issues we will need to take up as
11   we go.
12             Ms. Moe?
13             MS. MOE:  Not from the government, your Honor.  Thank
14   you.
15             MR. EVERDELL:  Your Honor, Christian Everdell.
16             Not at this time, your Honor.
17             THE COURT:  Thank you.
18             No. 6, evidence that goes to consent issues.
19             The government requests to exclude evidence or
20   argument regarding consent.  Now let me ask counsel, it seems
21   to me the issues implicated in this motion overlap, at least
22   potentially, to the issues raised and to be discussed in the
23   412 motion and I am wondering if we should at least begin by
24   taking it up at that time, as necessary.
25             MS. MOE:  Your Honor, the government agrees that makes