**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

January 7, 2022

**Via ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:   *United States v. Michael Avenatti,* 19 Cr. 374 (JMF)

Dear Judge Furman:

On the eve of trial, relying on information known for over one and a half years, the government has taken the extraordinary step of moving for the deposition of Judy Regnier. Rule 15(a)(1) of the Federal Rules of Criminal Procedure requires both a showing that exceptional circumstances exist, and that it is in the interest of justice to allow such a deposition to be taken. The government's motion fails to satisfy the high bar established by Rule 15 and should be denied in its entirety.

**The government has failed to show that Judy Regnier is unavailable to testify at trial as a result of any medical condition**

To justify the deposition of Judy Regnier, the government must demonstrate, *inter alia,* that she is unavailable to appear at trial. *See United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984). Here, although the government states that Ms. Regnier is unavailable because of her medical and mental health conditions, the record does not support this conclusion.

The government represents that Ms. Regnier was diagnosed with ▇▇▇▇ in March of 2020. Following her diagnosis, she engaged in a series of treatments and surgeries. Just a few months ago, in late July of 2021, Ms. Regnier testified for over eight hours across multiple days at trial in *United States v.*

*Avenatti*, 19 Cr. 61 (JVS) (C.D. Ca.). The government does not deny that Ms. Regnier, who resides in Lake Havasu City, Arizona, was available *and indeed did* travel to Southern California to appear at trial. The government incorrectly states that this "took place when the pandemic's conditions were less severe" (Dkt. No. 205 at fn 2), as the virulent Delta variant was in full surge at the time.[1] The government further acknowledges that Ms. Regnier ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇

Neither the government nor Ms. Regnier's primary care physician claim that Ms. Regnier is currently receiving ▇▇▇▇▇▇▇▇ or any other medical treatment that would make her unavailable to appear at trial. Instead, the government's representation is that Ms. Regnier ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇. (Dkt. 205 at 5). Further, the government's request includes a letter from Dr. Kiana Nouri, a family medicine physician with no apparent specialty in infectious diseases. (Dkt. 205, Ex. 1). Dr. Nouri's letter, which merely states ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ fails to sufficiently demonstrate why Ms. Regnier is *unavailable* to travel. Dr. Nouri's letter does not state how long Ms. Regnier has been under her care, or whether her medical condition has changed since Ms. Regnier testified at trial in California this past July. Ms. Regnier's therapist, Timothy Schlensker, states that Ms. Regnier ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Dkt. 205, Ex. 2). This too fails to show that Ms. Regnier is *unavailable* to appear at trial. Mr. Schlensker indicates that he has been treating Ms. Regnier since June of 2020, but does not state that Ms. Regnier's mental health conditions arose after she testified in person at Mr. Avenatti's previous trial. To the contrary, per Ms. Schlensker, Ms. Regnier's conditions existed at the time she traveled to California. Ms. Regnier's mental health condition does not appear to be any different today than it was in July of 2021 when she traveled to California to testify.

The government's explanations about Ms. Regnier's medical and mental health conditions fail to show that she has an infirmity that would make her unable to travel. In arguing that Ms. Regnier's conditions render her unable to travel to



---

[1] *See, e.g. Delta Variant: What we Know About the Science*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (updated Aug. 26, 2021).

New York, the government cites to cases involving witnesses whose mobility was impaired, and thus could not travel. The witness in *United States v. McGowan,* 590 F.3d 446, 454 (7th Cir. 2009) had spent a year in a full body cast, and had such impaired mobility that it was "almost impossible for her to visit her local doctors every few months for the treatment of her conditions." The witness in *United States v. Etoty*, No. S1 20 Cr. 187 (AKH) (S.D.N.Y. June 29, 2021), Dkt. 44, was 84 years old, had previously traveled only when accompanied by medical professionals who could accommodate his mobility issues, but whose medical conditions at the time of the trial made even that type of accompanied travel impossible. The witness in *United States v. Owimrin*, No. S8 17 Cr. 243 (SHS) (S.D.N.Y. Sept. 24, 2018), Dkt. 271, was 89 years old, could no longer live alone, had relocated to an assisted living facility, and was unable to travel due to physical infirmity.

The same is not true for Ms. Regnier. Unlike the witnesses in the cases cited by the government, Ms. Regnier has no impairment that affects her mobility. Indeed, both of Ms. Regnier's doctors are located in California, over 275 miles from Ms. Regnier's residence in Lake Havasu City, AZ. The defense does not deny that Ms. Regnier has medical and mental health conditions. However, the government has not met its burden of showing that these conditions prevent Ms. Regnier from traveling. Like so many of us, Ms. Regnier certainly may not want to travel, in the midst of a new wave of the COVID-19 pandemic. But that does not make her *unable* to travel.

**The government has failed to show that Ms. Regnier is a material witness**

The government has identified six topics that Ms. Regnier is expected to cover in her testimony. The government argues that the testimony will be material to Mr. Avenatti's guilt and will be "directly responsive to the defense" that Mr. Avenatti may raise at trial. (Dkt. 205 at 3). Based on the government's representations, it is expected that much of Ms. Regnier's testimony will be either duplicative of testimony provided by other witnesses or will be deemed inadmissible. For example, the government intends to elicit testimony from Ms. Regnier about the "nature, scope, and terms" of Mr. Avenatti's retainer agreement with Ms. Daniels. Certainly, the government will elicit all of that testimony from Ms. Daniels herself at trial. Further, as explained in the defense's *in limine* briefing (Dkt. 187), much of Ms. Regnier's expected testimony is inadmissible. For example,

the government intends to elicit testimony from Ms. Regnier about how Mr. Avenatti spent his money, as well as the financial circumstances of Mr. Avenatti and his law firm. Such testimony is irrelevant and unduly prejudicial. After accounting for the portions of Ms. Regnier's expected testimony that will be either duplicative or inadmissible, Ms. Regnier is no longer a material witness for the government.

**The deposition is not in the interest of justice**

Ms. Regnier was diagnosed with ████ 22 months ago. She has been under the care of her therapist for 17 months. The government has known that this matter is proceeding to trial since at least October of 2019. Despite all this, the government waited until the trial was just two weeks away to move for this deposition. The government has failed to explain why this motion was not made months ago. The government's diligence and timing in making this request is a relevant consideration under Rule 15(a). *See e.g., United States v. Milian–Rodriguez,* 828 F.2d 679, 686; Fed. R. Crim. P. 15 Advisory Committee's note on 1974 amendment ("An obviously important factor is whether a deposition will expedite, rather than delay, the administration of criminal justice.").

The government's delay in moving for a deposition that they propose to schedule on January 16, 2022 (two days before the final pre-trial conference), denies Mr. Avenatti sufficient time to review what is expected to be a voluminous quantity of 3500, *Brady,* and *Giglio* materials. To date, Mr. Avenatti has not received (1) all written or recorded statements made by Ms. Regnier, (2) all communications, including emails and text messages, between the government and Ms. Regnier, (3) all communications with Ms. Regnier related to the subject matter of her anticipated testimony, (4) all communications with Ms. Regnier regarding her medical conditions and her ability or willingness to testify, and (5) all interview notes made by the government related to contact with Ms. Regnier. These materials are not limited solely to those in the possession of prosecutors and agents in the Southern District of New York, and include information contained on Mr. Avenatti's law firm servers, and in Ms. Regnier's electronic devices. The government intends to produce at least some of these materials by January 12, 2022, merely four days before the proposed date for the deposition. That is an insufficient amount of time to allow Mr. Avenatti and the defense team to effectively prepare.

Further, in its motion, the government raised the issue of Ms. Regnier's ███████████████████████████████ for the first time. The government represents that Ms. Regnier ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ms. Regnier's use of both treatments raises significant concerns about her competency and credibility as a witness. The government maintains that she is a critical part of the case against Mr. Avenatti. The government also seeks to obtain her testimony in a manner that will deny the jury a firsthand opportunity to adequately assess her credibility, based on observation and scrutiny of her demeanor, body language, and facial expression. In order to both effectively cross-examine Ms. Regnier, and to affirmatively address the issues related to her credibility, the defense intends to seek an expert who can testify as to the effects of ██████████████████████████████████████████ The defense will be unable to locate and retain an expert who would be prepared to testify on this issue within the timeframe currently set for both a proposed deposition and for trial.

**The Court should order an adjournment**

The concerns raised by the government about Ms. Regnier's travel to New York highlight the risks attendant with proceeding to trial at this moment in time. Since the defense first requested an adjournment on December 23, 2021, daily new cases in New York have increased dramatically to approximately 39,000.[5] This past Wednesday, January 5, 2021, marked the highest number of COVID deaths in New York since mass vaccinations began.[6] Although the government previously referenced the "robust protocols to safeguard the health and safety" in this District

---

[2] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[4] In light of the government's recent disclosure, the defense also intends to promptly submit a subpoena application for Ms. Regnier's medical and mental health records. The defense will need to review these records before Ms. Regnier testifies.

[5] *Tracking Coronavirus Cases in New York: Latest Map and Case Count,* New York Times, https://www.nytimes.com/interactive/2021/us/new-york-covid-cases.html (updated Jan. 7, 2022).

[6] *NY Reports Highest Single-Day COVID Deaths Since Mass Vaccinations Began*, Fox 5 NY, https://www.fox5ny.com/news/ny-reports-highest-single-day-covid-deaths-since-mass-vaccination-began (Jan. 7, 2022).

(Dkt. 196), the government now acknowledges the risks to Ms. Regnier of the COVID-19 pandemic, "especially in the context of the current Omicron variant wave, and the current high rate of transmission in this District" (Dkt. 205 at 5). The government recently reiterated this view, just a few miles across the river, in an application for an adjournment of trial based entirely on the state of the COVID-19 pandemic. *United States v. Hwa*, No. S2 18 Cr. 538 (MKB) (E.D.N.Y. Dec. 31, 2021) Dkt. 108. The government described the risk of trial disruptions, travel delays for both witnesses and jurors, the unavailability of prospective jurors, the inability of litigants and court staff to handle the trial, and the resulting possibility of a mistrial. Today, Chief Judge Brodie granted the government's request for an adjournment of trial. (Minute Entry, Jan. 7, 2022).[7] Citing similar concerns, Judge Gardephe adjourned trial just this week in *United States v. Saab,* 19 Cr. 676 (PGG), Dkt. 167, noting the increasing infection rates, the risk to the jury, litigants, and his own court staff, and the risk of mistrial. As Judge Gardephe stated, "[T]he fact of the matter is that we are not properly equipped to deal with the pandemic. We have done the best we can under the circumstances." (Tr. 37 – 40).

      Mr. Avenatti shares Ms. Regnier's concerns about traveling to New York in the midst of this new wave of the pandemic. As the Court is aware, Mr. Avenatti is at a heightened risk for serious illness or death from the virus. *See e.g.*, Sentencing Transcript, *United States v. Avenatti*, 19 Cr. 373 (PGG) (S.D.N.Y. July 8, 2021). Members of the defense team have age and health-related underlying conditions that make them vulnerable. Indeed, one member of the defense team recently tested positive for COVID-19. These same risks will be faced by the 100 to 150 prospective jurors who must appear in the courthouse, witnesses flying in from around the country, and the litigants and staff in our courthouse. The defense is currently in the process of serving subpoenas on approximately ten potential defense witnesses, all of whom reside outside of New York and will be required to travel to New York for trial. It is expected that each of these potential witnesses will express the same concerns about traveling that have been expressed by Ms. Regnier.

      The government is seeking, at the very last minute, to take a deposition to protect a prospective witness from the risk associated with travel to this District. In

---

[7] Chief Judge Brodie also noted that if defense counsel in that matter requires additional time to prepare based on the timing of the government's 3500 and *Giglio* disclosures, the Court will entertain an application to delay the trial.

response, the Court should not take the extraordinary step of permitting this. The appropriate remedy is an adjournment of trial until the current wave of the Omicron wave has subsided. An adjournment will allow Ms. Regnier to safely travel to New York, as she did recently for trial in California. An adjournment will afford Mr. Avenatti sufficient time to receive and review 3500, *Brady,* and *Giglio* materials, and to retain an expert to address Ms. Regnier's credibility issues that the defense has only just become aware of. An adjournment will also protect against the risks of proceeding to trial at the height of a dramatic surge in COVID-19 cases.

Respectfully submitted,

/s/
Robert M. Baum
Andrew J. Dalack
Tamara L. Giwa
Counsel for Mr. Avenatti
Federal Defenders of New York
(917) 890-9729

Cc:   Counsel of record (via ECF)