M1BsAVEc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              19 CR 374 ( JMF)

MICHAEL AVENATTI,

           Defendant.

------------------------------x

                             New York, N.Y.
                             January 11, 2021
                             2:45 p.m.

Before:

               HON. JESSE M. FURMAN,

                             District Judge

                    APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  ROBERT SOBELMAN
     MATTHEW D. PODOLSKY
     ANDREW ROHRBACH
     Assistant United States Attorneys

FEDERAL DEFENDERS OF NEW YORK
     Attorneys for Defendant
BY:  ROBERT M. BAUM
     ANDREW J. DALACK
     TAMARA L. GIWA

M1BsAVEc

```
 1              (The Court and all parties appearing telephonically)
 2              THE COURT:  Good afternoon.  This is Judge Furman.
 3              Before I take appearances, couple quick reminders.
 4    Please mute yourself when you're not speaking to avoid
 5    background noise distraction.  And when you wish to speak, make
 6    sure you unmute yourself, and then make sure that the first
 7    thing you say is your name so that the court reporter and I are
 8    clear on who is speaking.
 9              Reminder that this is a public conference, just as it
10    would be if we were in open court.  We have a public line up
11    and running that has been merged with this line.  I confirmed
12    that it is operational.
13              And, finally, a reminder that the conference may not
14    be recorded or rebroadcast by anyone.
15              With that, I'll take appearances beginning with
16    counsel for the government.
17              MR. PODOLSKY:  Good afternoon, your Honor.
18              Matthew Podolsky, Robert Sobelman, and Andrew Rohrbach
19    for the government.
20              THE COURT:  Good afternoon.
21              Counsel for Mr. Avenatti.
22              MR. BAUM:  Good afternoon, your Honor.
23              This is Robert Baum on behalf of Mr. Avenatti.  I'm
24    joined by my co-counsels, Tamara Giwa and Andrew Dalack.
25              THE COURT:  Good afternoon to you as well.
```

M1BsAVEc

|    |                                                                     |
|----|---------------------------------------------------------------------|
| 1  | Can I confirm that Mr. Avenatti is on the line?                     |
| 2  | THE DEFENDANT:  Yes, your Honor.  Good afternoon.                   |
| 3  | THE COURT:  Good afternoon.  All right.  I don't                   |
| 4  | actually think that Mr. Avenatti's consent is required for us      |
| 5  | to proceed by telephone today, given the nature of the issues     |
| 6  | that we will be discussing, but out of an abundance of caution,   |
| 7  | I would be inclined to just confirm that he does consent.         |
| 8  | Mr. Baum, any objection to that or any views on that              |
| 9  | issue?                                                              |
| 10 | MR. BAUM:  No objection, your Honor.                               |
| 11 | THE COURT:  All right.  Mr. Avenatti, as I'm sure you             |
| 12 | know, you may have a right under Federal Rules of Criminal        |
| 13 | Procedure to appear in person with counsel by your side in this   |
| 14 | conference.                                                         |
| 15 | Do you consent to proceed by telephone today?                     |
| 16 | THE DEFENDANT:  Yes, your Honor.                                   |
| 17 | THE COURT:  At any point if you wish to consult with             |
| 18 | your lawyers for any reason, let me know, and we will make       |
| 19 | whatever arrangements we need to make for you to be able to       |
| 20 | confer with them privately.                                        |
| 21 | Understood?                                                         |
| 22 | THE DEFENDANT:  Understood.                                        |
| 23 | THE COURT:  All right.  Does counsel for the                      |
| 24 | government agree that we can proceed by telephone,                |
| 25 | Mr. Podolsky?                                                       |

M1BsAVEc

1          MR. PODOLSKY:  Yes, your Honor, we do.

2          THE COURT:  Mr. Baum, do you agree?

3          MR. BAUM:  Yes, your Honor.

4          THE COURT:  All right.  Terrific.  I agree as well.

5          We have a final pretrial conference scheduled in court

6     for next Tuesday, at which time I plan to deal with issues

7     relating to the trial itself, perhaps some outstanding

8     substantive issues.

9          The purpose of today's conference is primarily to

10    discuss the logistics surrounding the jury questionnaire that

11    will be administered on Thursday.  Before we get to that,

12    however, let me briefly address the defendant's motion from

13    earlier today to access the jury selection records.  That's ECF

14    number 223.

15          By text only order, I advised the government that it

16    should be prepared to address the issue at the conference.  My

17    understand from the law cited in the defense brief is that the

18    defendant is basically entitled to the records he is seeking if

19    he wishes to have them, and I know that the government has

20    consented to that relief in other criminal cases.

21          I guess my question, Mr. Podolsky, is whether the

22    government opposes the relief being sought at this time?

23          MR. PODOLSKY:  Thank you, your Honor.  We do not

24    oppose the request for the information.  I think it may be

25    helpful, just for a little bit of context on process here, if

M1BsAVEc

1    I may.

2           As the court is likely aware, these claims have been

3    made a number of times in the last two years, including

4    recently in the case United States v. Hossain, a case before

5    Judge Stein, which is 19 CR 606.  I believe counsel for the

6    defendant was counsel, at least one of his attorneys was

7    counsel on that case as well.

8           The reason I raised this is for two reasons.  The

9    first is, as I understand it, perhaps 80 percent or more of the

10   information sought by the defendant here was already provided

11   to the same attorneys in that case.  I think we could speed up

12   matters if we enter an amended protective order for that

13   information to allow them to use it in this case.

14          That would, I believe, relieve the burden on the jury

15   administrator, as well I believe the delta.  The outstanding

16   information would be information relating to jury summons and

17   questionnaires since that time, so I think since September of

18   2021.

19          As I say, we don't object to the defense getting that

20   information, but I do want to make a comment, which is that in

21   that case, and I believe uniformly in these cases, the courts

22   have denied these claims based on the third prong of the

23   inquiry which doesn't really relate to statistics.  It is

24   whether there was a systemic exclusion of the group in the jury

25   selection process.

M1BsAVEc

```
 1              I suggest that, perhaps, we could brief that issue
 2     ahead of time, particularly because what happened in Hossain
 3     was that defense counsel, I believe, filed the motion perhaps
 4     the night before jury selection was supposed to start seeking
 5     to stay jury selection.
 6              I think it would be in everyone's interest to avoid a
 7     scenario like that here, when we think the motion could be
 8     resolved without this data, frankly, perhaps ahead of time.
 9              THE COURT:  OK.  Mr. Baum, for starters, I will grant
10     the motion that was filed earlier today without objection.
11     That motion merely seeks the records, and my reading of the law
12     is that the defendant is entitled to it for the asking.
13     Whether there is a more efficient means of ensuring that the
14     defendant gets those records, I'll, frankly, leave to counsel.
15              I think you guys should discuss that offline, and if
16     there is an amended protective order that could be signed and
17     entered that would expedite that, great.  Otherwise, the
18     defense will have an order and the jury department will provide
19     whatever records the order covers.  So that much is done.
20              Mr. Baum, happy to hear from you in response to
21     Mr. Podolsky's remarks.  What I would add to that, certainly in
22     any motion that you file, I think that you should be prepared
23     to address and you should address the timeliness of the motion
24     apropos what Mr. Podolsky said.  My understanding is that
25     Federal Defenders have been regularly seeking these sorts of
```

M1BsAVEc

1    records and, indeed, has made various substantive motions based

2    on them in the past year or two.  I suppose it raises the

3    question under subsection A of the statute whether that means

4    that the defendant here either discovered or could have

5    discovered by the exercise of due diligence the grounds for a

6    motion.

7         But I think, at a minimum, you need to address whether

8    any motion at this point would be untimely given the

9    possibility that this should have been raised earlier.

10        So, Mr. Baum?

11        MR. BAUM:  Yes, Judge.  Do you want us to address that

12   today or in writing?

13        THE COURT:  Well, I was just raising that as, if you

14   were to make a substantive motion, you should certainly address

15   the timeliness of the motion.  I don't think you should address

16   that today, because I'm not going to presume that you will file

17   a substantive motion.  I'm just saying, if or when you do, I

18   guess the question I would like you to address today is, I

19   guess, two things.

20        One is Mr. Podolsky's suggestion that you have earlier

21   briefing on the non-statistical components of the test, and

22   second, perhaps alternatively or additionally, whether I should

23   set a deadline for any motion because, quite frankly, I'm not

24   going to be happy if next Wednesday evening I get a motion of

25   this sort when we're supposed to start voir dire on Thursday.

M1BsAVEc

1          MR. BAUM:  Judge, also as to the timeliness --

2          THE COURT:  Also, before I turn it over to you, I

3   think you should also be prepared to address whether the voir

4   dire examination begins within the meaning of the statute this

5   Thursday, when the questionnaire administrator next Thursday

6   when voir dire is conducted.  I think there is a fair argument

7   to be made that the questionnaire is part of the voir dire

8   process, and in that sense, part of the voir dire examination.

9          But, again, you can address that if or when you file a

10  written motion.  So the two issues that I flagged, if you can

11  address those.

12         MR. BAUM:  Yes, Judge.  We're happy to address those.

13  And yes, we understand about the timeliness issue on the jury

14  data.  Also, we, to the extent that I interpret your comments

15  as the fact that the jury questionnaire extends to the voir

16  dire, it's part of the voir dire, we totally agree with that

17  conclusion, and we're going to raise that issue.

18         But I'm going to defer to my colleague, Mr. Dalack, to

19  respond to your questions.

20         THE COURT:  All right.  Mr. Dalack.

21         MR. DALACK:  Hi, your Honor.  This is Andrew Dalack.

22         So with respect to the court's first question about

23  Mr. Podolsky's suggestion that we sort of bifurcate the

24  briefing and address the third prong first, I just want to note

25  that our position is that it sort of puts the cart before the

M1BsAVEc

1    horse and could be interpreted as some sort of a waiver of our

2    unqualified right to the data.

3            So with the acknowledgment that your Honor just

4    granted our motion to obtain the data, I want to say that we

5    have no objection or problems working with the government to

6    streamline the process for collecting the data from the jury

7    administrator and will endeavor to minimize any sort of

8    reproduction of materials that are already in our possession.

9            I wish to note, Mr. Podolsky was referring to me.  I

10   was counsel of record in Hossain and have also dealt with this

11   issue once before at trial before Judge Rakoff in United States

12   v. Nieves, 19 CR 354.

13           In that case, and in both 19 CR 354 and in Hossain,

14   explicitly in the Nieves case, and implicitly in Mr. Hossain's

15   case, the court rejected this idea of bifurcating the issues

16   because we take a different position with respect to the

17   significance of the third prong, and what our burden is to

18   show, discrimination or a violation of the fair cross-section

19   rights that Mr. Avenatti is entitled to.

20           So we would object to sort of briefing the issue

21   separately.  It's all part and parcel to one fair cross-section

22   challenge.  And, again, the legal arguments are sort of

23   well-trodden.  At this point, but what isn't is the new data.

24   I just want to take a moment to explain and brief kind of the

25   complication here, which is that in my experience litigating

M1BsAVEc

1    these issues, it is difficult to anticipate when the jury

2    administrator is going to receive all of the data that is

3    responsive to the various COVID-related questionnaires that are

4    questions seminated by the jury administrator in summoning

5    prospective jurors to the courthouse.

6         I have encountered problems in the past with obtaining

7    up-to-date data because sometimes the responses come in right

8    up until, you know, the day before, two days before the jurors

9    arrive at the courthouse, and that presents difficulty.

10        So I think what I would sort of suggest to the court

11   is that you allow the parties to, in short order, propose to

12   the court an amended protective order governing the acquisition

13   of the jury selection data.  We'll work with the jury

14   administrator rather quickly to figure out what is already in

15   our possession.  I'll work with my expert statistician on that

16   point and what still needs to be collected.

17        I submit it is primarily the data of the jury

18   selection data for trials that have either been impaneled or

19   commenced between September of this year and the present,

20   postdating Mr. Hossain's trial in October, along with the

21   responses to the COVID questionnaires that were issued in

22   connection with this case.

23        So with that said, we would oppose, again, bifurcating

24   it because we think that that could be construed in the record

25   as some sort of a waiver of our right to inspect the data first

M1BsAVEc

before making any determination about whether we're going to

follow a motion.  And, in fact, the case law that I cited to,

I think, is pretty clear that we need not even make any

representation about whether a motion challenging the fair

cross-section of the venire and is necessary for us to obtain

the data in the first instance, and that is sort of what the

government is alluding to here.

It would be essentially a tacit acknowledgment on our

point, on our behalf.  We would agree to bifurcating the issue

that there is a way in which we can deal with the,

quote-unquote, merits of the fair cross-section challenge

before inspecting the data, and we don't think that that is

proper under the terms contemplated by the Jury Selection

Service Act or the Sixth Amendment strictures.

Then, forgive me, your Honor, if you could just repeat

your second question about was it with respect to setting a

schedule for any sort of briefing?

THE COURT:  Yes.  I'm reserving judgment on whether a

motion would have to be filed before this Thursday in order to

be timely under subsection A of the statute.  But putting that

aside, I certainly want to avoid a situation where one has

filed, you know, on the eve of the beginning of jury selection.

So I'm open to your suggestions on that front, but

what I don't want is to arrive at the courthouse, planning to

conduct voir dire and find out that a motion was filed minutes

M1BsAVEc

1    before that I am expected to deal with before voir dire starts.

2            MR. DALACK:  Understood, your Honor.  I think that I

3    have two responses to that concern.

4            The first is that we are taking the position that the

5    written questionnaires are a part of voir dire.  And I am

6    familiar, obviously, with the limitation within the Jury

7    Selection Service Act, that that states that we have seven days

8    within which to file a motion for a fair cross-section motion,

9    seven days from when we could have reasonably due diligence

10    discovered the basis for it.

11            I submit that, you know, notwithstanding the fact that

12    we litigated this issue previously, it is our position that

13    we're not in a position to assess the merits of any fair

14    cross-section motion until we get the data for this venire.

15            THE COURT:  Can I interrupt for a second, Mr. Dalack?

16            MR. DALACK:  Yes.

17            THE COURT:  Maybe I'm misreading the statute.

18    Subsection A of Section 1867 says, in criminal cases, before

19    the voir dire examination begins or within seven days after the

20    defendant discovered or could have discovered by the exercise

21    of due diligence the grounds therefore, comma, whichever is

22    earlier, comma.

23            I read that to mean if the voir dire begins, again,

24    you're out of luck.  Am I wrong about that?  I don't think that

25    is a drop-dead deadline to make any such motion.

M1BsAVEc

1              MR. DALACK:  I think under the terms, I'm not prepared

2        to completely agree with the court on that position.  I think

3        that is a fair reading of the JSSA of 1867(a).  However, I know

4        that there are different standards with respect to, we can make

5        arguments with respect to the different standards for the

6        timeliness of the motion on Sixth Amendment grounds versus JSSA

7        grounds.

8              I'm just not prepared on this particular call to agree

9        that if we filed a fair cross-section motion that also sought

10       to vindicate Mr. Avenatti's right under the Sixth Amendment,

11       as opposed to just the JSSA, that it would be untimely if it

12       happened to be filed after the voir dire commenced through the

13       written questionnaires.

14             That being said, I think that we're happy to work with

15       the government to obtain the records in short order as quickly

16       as possible, and then as I represented in the application, we

17       can get those over to our expert and get the analysis turned

18       around pretty quickly, and then we would be in a position to

19       take up any timeliness issues in the briefing.

20             As an alternative, too -- and I think that it is

21       incumbent upon me to make this argument for the sake of the

22       record at the risk of coming before the court for a third time

23       to ask for the same relief, I understand that that might

24       irritate the court -- so at the risk of irritating your Honor,

25       I would be derelict in my duties if I didn't ask for the

M1BsAVEc

opportunity for an adjournment of the proceedings in order to
see this through.  So I'm making that application as well, part
and parcel to any concerns about timeliness.

But all of that said, I think we'll obviously do what
the court instructs.  We'll obtain the data from the jury
administrator in short order, and if and when we file any fair
cross-section motion, assuming the court does not grant an
adjournment now, at this moment, then we'll take up timeliness
issues in the motion itself.

THE COURT:  OK.  That's a lot to unpack and respond to
in there, but I'm not sure you ultimately answered the
bottom-line question, whether any motion is timely at this
point.

Is there a drop-dead deadline by which you are
prepared to file any such motion, or you want to just leave it
open and address whether it's timely whenever you file it, if
you file it?

MR. DALACK:  So, thank you, your Honor.  I didn't mean
to avoid the ultimate question there.  I could do one of two
ways.  I suppose that it might make sense, assuming that the
court -- it doesn't sound like the court will consider any
adjournment on this basis -- would like to confer with the
government, get the amended protective order in place, confer
with the jury administrator, and then put in a letter motion
either on consent or not with respect to a drop-dead deadline

M1BsAVEc

1   for any motion, depending on when the jury administrator can

2   represent to us she can get the data over to us, which I'm

3   hoping to be in a day or two, given that the data that we need

4   that is sort of new is rather, I think, limited.

5          THE COURT:  Number one, to the extent that the

6   deposition seeks adjournment on the basis of this motion, that

7   request is definitively denied.  I'm not irritated by it, but

8   there is absolutely no basis for it.

9          I'll address COVID separately.  The fact of the matter

10  is, I see zero reason this motion couldn't have been filed long

11  before today, and I'm a little bit flabbergasted that a few

12  days before jury selection is set to begin, that the request

13  for these records is being made.

14         The fact that the defendant waited until the tenth or

15  eleventh hour to make that request is absolutely not a basis

16  for adjournment of trial, and I'm not going to adjourn trial on

17  that basis.

18         Again, I'll address the COVID question separately and

19  later.  I certainly think counsel should confer promptly to

20  figure out if there is a more efficient means by which the

21  defense can get the data that they seek, and then the defense

22  can work with the jury department to get whatever it is that --

23  whatever the delta is, whatever other data they don't have from

24  Hossain, whatever the case may be.

25         I also think it would make sense -- I'm sorry.  Can I

M1BsAVEc

1  remind folks not speaking to place yourself on mute if you can,

2  just so there is no background noise distraction.

3           I also think that it's fine, I'm happy to leave it

4  open when any such motion would need to be filed, and let

5  counsel confer about that.  And if there is agreement on a

6  drop-dead deadline, that would probably make sense, but I also

7  want to make clear that by setting that deadline, I'm not

8  suggesting that it renders any motion that would be untimely,

9  as of today timely, because it is being made by that deadline.

10          Frankly, I'm skeptical any motion would be timely at

11 this point.  And to the extent it would be timely -- I'm sorry,

12 it would be untimely -- by setting a drop-dead deadline, I'm

13 not telling you that it becomes timely.  I'm simply saying that

14 for case management purposes, it would be imprudent not to set

15 a drop-dead deadline for me to address it.

16          Finally, I guess I'm inclined not to bifurcate

17 briefing in part because I don't want to presume that the

18 defense will make a motion given this discussion.  If they do

19 make a motion, I think there is an argument for all of it being

20 briefed together, so I can consider it all together and

21 consider the most efficient means to resolve it.

22          But I'm certainly open to hearing from Mr. Podolsky on

23 that.  Mr. Podolsky, I don't know if there is anything in there

24 that you need to respond to, but I'll give you an opportunity

25 to be heard.

M1BsAVEc

1          MR. PODOLSKY:  No, your Honor.  Thank you.

2          Certainly, we will confer with defense counsel and try

3     to be efficient about getting the records.  But other than

4     that, I have nothing to add.

5          THE COURT:  All right.  So we'll leave it there.

6          I'll grant the motion, as I said, and you guys should

7     confer immediately after this conference about the most

8     effective and efficient means to get the defense the data that

9     it is entitled to.

10          And, Mr. Dalack, I'll leave you to coordinate with the

11     jury department to get whatever it is that is not in your

12     possession through some other case.

13          MR. DALACK:  Your Honor, if I may.  This is Andrew

14     Dalack again.

15          On that point, with respect to the data itself, I just

16     want to understand the court's preferences.  Assuming that

17     we're able to get the amended protective order over to the

18     court in short order and then have your Honor formally endorse

19     the letter motion that I filed, would it be the court's

20     preference for us to transmit that endorsed letter motion to

21     the jury administrator, or would the court prefer to on its

22     own?

23          I had it done two ways.  Want to be clear on what the

24     court's preference is.

25          THE COURT:  I would say both.  I plan to advise the

M1BsAVEc

1    head of the jury department I granted the motion, but I will

2    leave it to you to contact them and make whatever arrangements

3    are needed for you to get whatever it is you need, in part

4    because I don't know what you have from the other case and what

5    you'll need to get from the jury department.  I'll say both.

6            MR. DALACK:  OK.  Thank you, Judge.

7            THE COURT:  All right.  Other housekeeping matters.

8    Earlier today, I answered an order with respect to the three

9    motions that were filed either today or yesterday, all under

10   seal, directing any opposition be filed by Thursday, 5:00 p.m.,

11   for avoidance of doubt, and no replies may be filed with

12   respect to those prior leave is granted.  Otherwise, I assume

13   there is nothing to discuss there.

14           Unless either side has something to discuss with

15   respect to that or otherwise, I want to turn to the jury

16   questionnaire process.

17           Mr. Podolsky?

18           MR. PODOLSKY:  Nothing further on that topic.

19           THE COURT:  Mr. Baum, or whoever?

20           MR. BAUM:  Nothing further, Judge.

21           THE COURT:  All right.  As you know, under the order

22   at ECF number 160, the jury questionnaires are to be

23   administered on Thursday.  I docketed a draft of the

24   questionnaire that I propose to use earlier today, and any

25   objections or suggestions are due to 10:00 a.m. tomorrow.

M1BsAVEc

1          Per the same order, it's the government's

2     responsibility to make the necessary copies and deliver them to

3     the jury department, provided you have contact information and

4     instruction on that.  My understanding is that the government

5     is to make 160 copies, single-sided and stapled, and we

6     provided information when it is to be delivered.

7          Mr. Podolsky, can we confirm we're on the same page

8     there?

9          MR. PODOLSKY:  Yes, your Honor.  I think we have been

10    in contact with your chambers on the logistics and understand.

11         THE COURT:  All right.  Great.

12         On Thursday morning, my plan is to address the jury

13    pool before they complete the questionnaires.  Nothing

14    particularly exciting, just standard sort of commemorating

15    instructions.  Each side is certainly welcome to attend in

16    whole or in part.

17         As far as I'm concerned, you're not required to

18    attend.  I would think if one side is there, both sides should

19    be there.  In any event, we need to know in advance so we can

20    make the necessary arrangements, particularly given the social

21    distancing protocols that are in place.

22         So I guess the question I have is whether you wish to

23    be present for any remarks or would waive your presence and

24    allow me to address the jury pool without anyone there.  I will

25    have a court reporter, so it will be on record, obviously, and

M1BsAVEc

1   open to the public as well.

2          But let me check with you, Mr. Baum, first.

3          MR. BAUM:  Yes, Judge.  On behalf of Mr. Avenatti, we

4   intend and certainly wish to be present during your remarks and

5   the completion of the questionnaires.

6          THE COURT:  All right.  Mr. Podolsky, I assume, in

7   light of that, the government will have someone present as

8   well?

9          MR. PODOLSKY:  Yes, your Honor.

10         THE COURT:  All right.  So we will be in touch with

11  both sides offline.  I think what will make sense is to have a

12  sort of staging area where everybody is waiting until the

13  appointed hour.  I think the jury department has some

14  preliminary orientation type things.  The jurors, my

15  understanding is that I will be called to give my remarks at

16  approximately somewhere between 10:00 and 10:30.

17         So bottom line is, we'll communicate to you offline

18  where and when you should be so that, at the relevant hour, we

19  can all enter the jury assembly room for me to give my remarks.

20  We'll make sure that there is space for you to be there.

21         My plan is to leave after I complete my remarks and

22  allow the jurors to complete the questionnaire and turn them in

23  to the jury department.  I suppose you're welcome to stay as

24  well, but I'm not quite sure whether you would want to sit

25  there for that duration.  Again, might be helpful to know in

M1BsAVEc

1   advance.

2       Mr. Baum, any thoughts on whether you intend to stay

3   for the duration, or leave with me when I'm done with my

4   remarks?

5       MR. BAUM:  We intend to stay for the duration, your

6   Honor.

7       THE COURT:  All right.  Mr. Podolsky?

8       MR. PODOLSKY:  Thank you, your Honor.  I think given

9   that the defense counsel intends to stay, we would at least

10  like to have the sort of ability to remain, whether or not one

11  or more of us does, if that would be all right with the court.

12      THE COURT:  That's fine.  I would encourage you guys

13  to talk to one another.  I don't know if it's worth having

14  three lawyers on each side present for all of Thursday's

15  proceeding.  It may make more sense for you to stand down on

16  both sides and have just one lawyer rather than all three.

17      I'll leave it to you guys to decide.  We'll be

18  prepared for both sides to be there in force, and if you choose

19  to subject yourself to the duration, so be it.

20      When the jurors complete the questionnaires under

21  order 160, it's the government's responsibility to promptly

22  make electronic copies, scanned copies of the completed

23  questionnaires, for both sides and for me.  I understand,

24  again, that we have provided information on that stage and how

25  you're to get the copies and so forth.

M1BsAVEc

1          Mr. Podolsky, you'll be on the same page there, too?

2          MR. PODOLSKY:  Yes, your Honor.  Thank you.

3          THE COURT:  All right.  Great.

4          Certainly, we would ask that you provide electronic

5    copies as expeditiously as you can, since the clock will be

6    ticking on at least the defense strikes to be done and both

7    sides.  As soon as they are in everyone's hands, the better.

8          On that score, just a reminder that under the

9    scheduling order, both sides have until Monday at three p.m. to

10   file their strikes.  Reminder that the government has to file

11   its joint letter or a letter with the juror numbers that both

12   sides agree should be excused for cause.  All of those jurors

13   will be excused without any further inquiry or review by me.

14         But at that same date and time, each side is to file a

15   letter listing any jurors as to which they believe should be

16   struck for cause, but the other side doesn't, and a brief

17   explanation of why.  Those letters should reference the juror

18   numbers, not the juror's names.  Just the numbers.  I will then

19   review the list of single-strike jurors and decide who to call

20   back for the oral voir dire, which, again, will begin on

21   January 20 at 9:30 in the morning.

22         Any questions about any of that, Mr. Podolsky?

23         MR. PODOLSKY:  No.  Thank you very much, your Honor.

24   I think we understand.

25         THE COURT:  Mr. Baum?

M1BsAVEc

1          MR. BAUM:  No, your Honor.  No questions.

2          THE COURT:  All right.  As I said, oral voir dire will

3   pick up on the morning of the 20th at 9:30.  I do have, as you

4   know, January 21 for the backup, if we're not done by the end

5   of the 20th.  Given the nature and length of the questionnaire,

6   I'm sort of hoping that we will complete jury selection in that

7   first day of oral voir dire and won't need the second day.

8          I guess the only question I have for you, we can

9   certainly play that by ear, if that is the case, my inclination

10  would be to at least end on Friday and beginning the trial

11  proceedings Monday morning rather than start a trial on Friday.

12  I'm certainly open to doing otherwise if both sides wish to get

13  started promptly.

14          Mr. Podolsky?

15          MR. PODOLSKY:  No, your Honor.  I think your proposal

16  of starting Monday will help keep everything organized and on

17  track.  We would agree with that.

18          THE COURT:  Mr. Baum?

19          MR. BAUM:  Yes, your Honor.  We were hoping to start

20  on Monday as well.

21          THE COURT:  All right.  Great.

22          And then public access, I'm not planning to arrange

23  for an overflow courtroom for the jury questionnaire session.

24  We can't really imagine many members of the public want to come

25  watch people fill out a questionnaire.  I certainly imagine

M1BsAVEc

1    that there may be a handful of journalists otherwise there.

2    But I'm guessing we can accommodate them even if it is just

3    standing room in the back.

4    I do plan to have an overflow courtroom for the oral

5    voir dire on January 20, and if need be on January 21, and will

6    provide for one or more overflow courtrooms during the trial

7    proceedings themselves.

8    Number one, any objection to that?

9    Number two, does either side have any sense of sort of

10    the needs on that front, at least with respect to openings?

11    Should I plan on having multiple overflow courtrooms?

12    Would one suffice?

13    What are your thoughts, mindful of course of the

14    social distancing rules that are in effect, Mr. Podolsky?

15    MR. PODOLSKY:  Well, as to the first question, no

16    objection to the plan you've outlined.

17    As far as the number of overflow courtrooms, candidly,

18    your Honor, I'm really not sure.  I would hope that one is

19    enough, but I think, at this moment, it's a little hard for me

20    to predict how many folks from, for example, the U.S.

21    Attorney's office and public will hope to attend.  Apologies

22    for not providing more assistance in that front.

23    THE COURT:  Mr. Baum, any guess on your end?

24    MR. BAUM:  Judge, regarding the size, I think it

25    depends on the size of the overflow courtroom.  If it's not one

M1BsAVEc

1    of the large courtrooms, I think you may need two to ensure

2    proper spacing.  I can assure the court that once witnesses

3    start coming in, I think we will need to, on particular days

4    and more than others.

5         THE COURT:  Tell you what.  I'll have two for the

6    openings.

7         I would like you guys to be attentive to this and let

8    my staff know if you anticipate we will need more than that,

9    with respect to any witness or witness days, you think there

10   will be particular interest, the more heads-up you can give us

11   the better.  You know better than I what the schedule will be,

12   who the witnesses are, what interest in them may be, so on and

13   so forth.  The more heads-up on that the better.

14        I will certainly ensure there is meaningful public

15   access, recognizing even in the best of times, nobody is

16   entitled to get into a courtroom.  There is limited capacity.

17   The same is true today, even if it's a function of social

18   distancing as well.

19        I should note on this score that I do plan to provide

20   a press room for the in-house press.  So to the extent that any

21   folks are listening in who might have an interest in that, they

22   should be aware of that.  That will also alleviate the need.

23        Bottom line is, I'll have two overflow courtrooms for

24   the openings, and we'll play it by ear for the witnesses.  To

25   the extent that the parties anticipate any particular or

M1BsAVEc

1    greater needs, you should let us know as early as possible so

2    that we can make appropriate arrangements.

3        All right.  Final pretrial conference is next Tuesday,

4    now at 11:15 in the morning.  My deputy will correct me by

5    direct message if I'm wrong about this.  It will be in

6    courtroom 318 in the Thurgood Marshall courthouse, which I

7    think is the courtroom that we will be trying the case in, but

8    I will certainly confirm that next week to make sure everyone

9    knows where we're going.  But, again, next Tuesday, 11:15 a.m.,

10   courtroom 318.

11       Finally, before I ask if you have anything else to

12   address, let me just briefly mention and address the COVID

13   situation and adjournment on that ground, since I said that I

14   would have something separate to say there.

15       The defense has obviously now twice made a request to

16   adjourn on the basis of, in part, the COVID situation and the

17   Omicron surge.  As I noted in my orders, I'm closely monitoring

18   the situation and I certainly am prepared to revisit it, in the

19   event that there is reason to do so, that being either a

20   concern that we couldn't try the case safely, that trying the

21   case couldn't be done consistent with the need to provide a

22   fair trial, or frankly, that it would just be a waste of

23   everybody's resources because the odds of a mistrial are just

24   too high.

25       Right now, I am not convinced that any of those

M1BsAVEc

1    circumstances are present.  One of my colleagues picked a jury

2    last week and is on trial now and another picked a trial on

3    Monday.  I believe another is picking a jury tomorrow.  I am

4    monitoring their progress and any pitfalls they have.  They are

5    certainly in a more challenging situation than one would like.

6    But, in my view, it is absolutely critical for the public's

7    interest, for the defendant's interest, for the government's

8    interest to keep the system going as much as we can.  And I

9    think the protocols that the court has in place have, to date,

10    been quite effective in ensuring that there is no spread within

11    the court.

12         So in that sense, I think the most material question

13    is just whether we can get the trial in without losing an

14    indispensable part of the parties.  I do plan to have more than

15    the average number of alternate jurors just to ensure that we

16    have a sufficient number by the time we reach deliberations.

17         I would ask all of the parties and counsel to do their

18    best to take care, between now and when the trial is scheduled

19    to start, be careful not to expose yourself to more risk than

20    you need to.  The bottom line is that, right now, I am

21    persuaded that we can proceed and that, while there is

22    certainly risks, that the risks are not sufficiently high to

23    throw in the towel just yet.

24         As I said, I'm closely monitoring the situation, and

25    if things change, I am fully prepared to revisit it, even if it

M1BsAVEc

  1    is at the last minute.  My hope is that we can and will

  2    proceed.

  3              Now, anything else from either side, Mr. Podolsky?

  4              MR. PODOLSKY:  No, your Honor.  Nothing for the

  5    government.

  6              THE COURT:  Mr. Baum?

  7              MR. BAUM:  Judge, just briefly on your last comments.

  8    The court was not aware of this.  I think it is just something

  9    for the court to consider in the upcoming days before the trial

 10    and certainly related to selection of the jury.

 11              In the Eastern District of New York, the Chief Judge

 12    adjourned a case of a bailed defendant after testimony by an

 13    expert who is an epidemiologist about the dangers inherent to

 14    conducting a trial at this time.  It turns out that the

 15    epidemiologist who testified with Judge Brody, certainly

 16    listened to and took their advice, his advice, is the same

 17    epidemiologist that has been consulted in the Southern District

 18    of New York.  I just wanted to bring that to the court's

 19    attention.

 20              THE COURT:  I think you had cited Judge Brody's

 21    adjournment in your most recent request for adjournment.  I

 22    don't think it mentioned the expert.  I don't know if you're

 23    referring to the expert that our court has been consulting in

 24    connection with the protocols that are in place, but I will

 25    certainly look into that.

M1BsAVEc

1          Bottom line is, my impression from consulting the

2     court personnel is that the person we have been consulting with

3     believes that we do not need to call a halt to jury trials and

4     we can proceed safely.  In that regard, I would note that I

5     think the protocols in place in the Southern District are

6     different from those in the Eastern District.  So it is

7     perfectly reasonable to draw a different conclusion in a

8     different district.

9          I appreciate your bringing it to my attention.  It

10    doesn't change my view of where things stand today.  It doesn't

11    shape my view.  If things change and I come to a different

12    conclusion between now and the beginning of trial, we will

13    revisit it, but I hope that doesn't happen.

14         All right.  With that, everybody stay safe and

15    healthy, not just because you should be safe and healthy.  But,

16    again, I want to ensure that the trial goes off without a

17    hitch.

18         With that, we are adjourned.  Thank you very much.

19         (Adjourned)

20

21

22

23

24

25