**Federal Defenders
OF NEW YORK, INC.**

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

*David E. Patton*
Executive Director
and Attorney-in-Chief

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

January 20, 2022

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

RE:   **United States v. Michael Avenatti
      19 Cr. 374 (JMF)**

Dear Judge Furman:

The Court should compel the Government to produce forthwith all Brady, Giglio, and 3500 materials in the possession of individuals at Main Justice and the U.S. Attorney's Office for the Central District of California (C.D. Ca. USAO).[1]

The prosecutors in this case, individuals at Main Justice, and the prosecutors in California have coordinated various aspects of their investigations into Mr. Avenatti, including witness interviews, since early 2019. These efforts have spanned three cases – 19-cr-373 (PGG) (S.D.N.Y.); 19-cr-374 (JMF) (S.D.N.Y.) and 19-061 (JVS) (C.D. Ca.) (the "California case"). Notably, the prosecution team in this case is essentially the same team used in 19-cr-373 (PGG) (the "Nike case").

Ms. Clifford's 3500 materials indicate that she first met with the Government in late February 2019, which triggered an investigation. See 3501-02. Weeks later,

---

[1] Requests for this information have been repeatedly made to the prosecutors here and in California with no success. See, e.g., Exhibit A. The S.D.N.Y. prosecutors tell the defense that they have no obligation to produce the information, and to raise it with the prosecutors in California. Meanwhile, the C.D. Ca. prosecutors tell the defense that they have no obligation to produce the information and that it must be raised with the S.D.N.Y. prosecutors.   This is inconsistent with Mr. Avenatti's fair trial rights.

the facts relating to the Nike case first became known to the Government and another investigation was opened using the same prosecutors and agents.

The significance of the coordination between S.D.N.Y. and C.D. Ca. has been fully briefed via two motions for a new trial brought before Judge Gardephe in 19-cr-373 regarding the Government's failure to timely produce 3500, Brady and Giglio materials. One was filed on June 4, 2021 (Dkts. 315, 318, 323, 330, 331, 333, 336 (Opinion and Order)) and the other, which is still pending, was filed on December 2, 2021, Dkts. 358, 360, 363, 368, 369, 370. The facts set forth in that briefing carry equal weight here, in which there is even stronger proof of coordination between S.D.N.Y. and C.D. Ca. Indeed, 3500 materials recently produced in this case demonstrate that agents and prosecutors from both C.D. Ca. and S.D.N.Y. jointly participated in the interviews of Ms. Judy Regnier (3514) and Mr. Sean Macias (3565).

In connection with his July 6, 2021 decision on Mr. Avenatti's first new trial motion (Dkt. 336), Judge Gardephe specifically noted that both the C.D. Ca. and S.D.N.Y. "offices are components of the same agency," namely the U.S. Department of Justice. Dkt. 336, p. 85. The court also found: "the two prosecution teams, at least as to Regnier, engaged in joint and coordinated fact gathering," including as to joint interviews. Id. "On November 20, 2019, the S.D.N.Y. prosecution team and the C.D. Ca. prosecution jointly interviewed Regnier. 3514-003. And on January 9, 2020, February 4, 2020, and February 5, 2020, when Regnier met with members of the S.D.N.Y. prosecution team in New York, the C.D. Ca. prosecution team was present and participated in those interviews. 3514-0005; June 4, 2021 Def. Ltr. (Dkt. No. 315) at 4; June 17, 2021 Def. Reply Ltr., Ex. A (Dkt. No. 323) at 11-12). Moreover, at an interview in which S.D.N.Y. prosecutors were not present, the C.D. Ca. prosecutors asked Regnier questions pertaining to Avenatti's interactions with Nike. 3514-001 at 14. Finally, the C.D. Ca. prosecution team provided the S.D.N.Y. prosecution team with a copy of certain text messages between Regnier and Avenatti, which the C.D. Ca. prosecution team had obtained by search warrant. 3514-003 at 7." Id.

Despite Judge Gardephe's prior ruling, and the fact that the S.D.N.Y. prosecutors, C.D. Ca. prosecutors, and individuals at Main Justice are all part of one Department of Justice, the prosecution team in this case are taking the extraordinary position that they are under no obligation to look for or produce 3500, Brady and Giglio material in the possession of their colleagues in California or at Main Justice. The Government's position is untenable, inconsistent with the law, and against Mr. Avenatti's fundamental rights to a fair trial and an effective defense.

**Legal Standard**

The Government is affirmatively obligated to produce Brady material sufficiently in advance of trial for the defense to investigate effectively. See United States v. Agurs, 427 U.S. 97, 110 (1976). Brady imposes an obligation on the Government to produce favorable material regardless of request. This Court's Rule 5(f) Order reinforces the Government's obligations. Dkt. 95. Prosecutors have "a duty to learn of any favorable evidence known to the others acting on the Government's behalf in the case." Kyles v. Whitley, 514 U.S. 419, 437 (1995); United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) (same). Judge Gardephe touched on precisely this issue in his July 6 ruling: "the inquiry is not whether the United States Attorney's Office physically possesses the discovery material . . . . [T]he inquiry is the extent to which there was a 'joint investigation' with another agency" because, where there is a joint investigation, "the prosecutor's duty extends to reviewing the materials in the possession of that other agency for *Brady* evidence." Avenatti, 2021 WL 2809919, at *44 (internal quotation marks and citations omitted).

In the Second Circuit, the inquiry is not whether the United States Attorney's Office physically possesses the discovery material: the question is the extent to which there was a "joint investigation" with another agency. United States v. Martoma, 990 F. Supp. 2d 458, 460 (S.D.N.Y. 2014) (quoting United States v. Upton, 856 F. Supp. 727, 750 (E.D.N.Y. 1994)). "'Where the USAO conducts a "joint investigation" with another state or federal agency, courts in this Circuit have held that the prosecutor's duty extends to reviewing the materials in the possession of

3

that other agency for Brady evidence.'" Id. (quoting United States v. Gupta, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012)). Multiple prosecution teams "'are engaged in joint fact-gathering, even if they are making separate investigatory or charging decisions,'" when the "'degree of cooperation between agencies' . . . [involves] their coordination in conducting witness interviews and otherwise investigating the facts of the case." Martoma, 990 F. Supp. 2d at 461 (quoting Gupta, 848 F. Supp. 2d at 495 ("A 'joint investigation' also does not require a coterminous investigation. . . . An investigation may be joint for some purposes; it may be independent for others.") (determining that the USAO and the SEC were engaged in joint fact-gathering where they had conferred about their parallel investigations and had jointly conducted interviews, and where the SEC had provided the USAO with documents it had obtained during its investigation)).

In the Ninth Circuit, Brady places "an affirmative duty on the prosecutor to seek out information in the Government's possession that is favorable to the defendant." United States v. Grace, 401 F. Supp. 2d 1069, 1075 (D. Mont. 2005). "'Possession' is not limited to what the prosecutor personally knows." United States v. Cano, 934 F.3d 1002, 1023 (9th Cir. 2019). "Documents held by another executive branch agency are deemed to be 'in the possession of the Government' if the prosecutor has 'knowledge of and access to' the documents." Id. (quoting Bryan, 868 F.2d at 1036). "Knowledge and access are presumed if the agency participates in the investigation of the defendant. Id. ('The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant.')." Id. "The obligation under *Brady* and *Gilgio* is an obligation of the Government, not merely the obligation of the prosecutor. … To repeat, Brady and Giglio impose obligations not only on the prosecutor, but on the Government as a whole." United States v. Blanco, 392 F.3d 382, 393-394 (9th Cir. 2004). "As a matter of law, the prosecution is 'deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant.'" United States v. Bundy, 968 F.3d 1019, 1037 (9th Cir. 2020); quoting United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989).

4

Further, the "prosecution team" concept has been rejected by courts in the Circuit. See United States v. Lacey, 2020 U.S. Dist. LEXIS 112853, *18, n. 15 (D. Az. June 2020) ("It is unclear exactly what the 'prosecution team' concept means… In the Ninth Circuit, there is no 'prosecution team' requirement. Instead, the scope of the Government's obligation in regard turns on 'the extent to which the prosecutor has knowledge of and access to the documents' in question."); citing Grace, 401 F. Supp. 2d. at 1078 ("The 'prosecution team' concept upon which the Government relies is a product of case law from other circuits; it has not been embraced by the Ninth Circuit. In my view, the Ninth Circuit prohibits adoption of the flawed 'prosecution team' idea."). See also United States v. Wood, 57 F.3d 733, 737 (9th Cir. 1995).

The District of Columbia Circuit has found in a Brady context that documents maintained by other components of the Government which are "closely aligned with the prosecution" must be produced. United States v. Brooks, 966 F.2d 1500 (D.C. Cir. 1992) (quoting United States v. Fairman, 769 F.2d 386, 391 (7th Cir. 1985)). As the court in Brooks noted, the "bureaucratic boundary [between agencies is] too weak to limit the duty" to disclose. Id.; see also United States v. Haldeman, 559 F.2d 31, 74 (D.C. Cir. 1976).

Under the law of any of these three Circuits, the Government in this case must produce all 3500, Brady and Giglio material in its possession and in the possession of C.D. Ca. USAO and Main Justice.

**The Government Should Be Compelled to Produce all 3500, Brady and Giglio Material in the possession of Main Justice**

During the course of its investigation, and beginning in the Spring of 2019, the Government utilized Mr. Joseph Varani, a DOJ Senior Digital Investigative Analyst with Main Justice, to review certain electronic data relating to Mr. Avenatti. Mr. Varani works at the DOJ Cybercrime lab in Washington, D.C.

Mr. Varani recently testified that he reviewed and analyzed a forensic image of Mr. Avenatti's laptop, which was seized from Mr. Avenatti's briefcase upon his

5

arrest in New York, as well as a forensic image of the servers from Mr. Avenatti's law firm. See Exhibit B. The Government subsequently produced materials from the laptop in this case, but did not produce any from the servers, including 3500, Brady, and Giglio. The Government has placed a document (GX 608) purportedly extracted from the laptop on its exhibit list and have requested that Mr. Avenatti stipulate that it came from the forensic copy of the laptop. Accordingly, there can be no credible argument that Mr. Varani did not "engage in joint fact-gathering" with the prosecutors in this case or is not functionally a member of the prosecution team. As a result, the prosecutors here are under an obligation to search for and produce all 3500, Brady, and Giglio material from all materials and data in the possession of Main Justice.[2]

**The Government Should Be Compelled to Produce all 3500, Brady and Giglio Material in the possession of the C.D. Ca. USAO**

Judge Gardephe's findings relating to the joint fact-gathering and investigation are entitled to just as much, if not more, deference in this case. This is especially true considering that (a) both offices coordinated their fact gathering as to at least two Government witnesses, Judy Regnier and Sean Macias, (b) S.D.N.Y. prosecutors obtained documents and information from their counterparts in California as part of their investigation into Mr. Avenatti, including financial documents, and (c) S.D.N.Y. prosecutors had the ability at all times to request and obtain, and in certain instances did request and obtain, certain interview notes from the prosecutors in the Central District of California.[3]

---

[2] The Government is likewise not relieved of its discovery obligations under Brady by "merely providing access to 600,000 documents [here, 19.86 terabytes of data] and then claiming that [the defendant] should have been able to find the exculpatory information in the haystack." United States v. Hsia, 24 F. Supp. 2d 14, 29 (D.D.C. 1998); United States v. Thomas, 981 F. Supp. 2d 229, 239 (S.D.N.Y. Oct. 2013) (the Government "cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials").

[3] As Judge Gardephe found: "Finally, in producing Regnier statements obtained by C.D. Ca. prosecutors at interviews not attended by S.D.N.Y. personnel, the Government appears to have acknowledged that its discovery and Brady/Giglio obligations extended to interviews of Regnier in which the S.D.N.Y. prosecution team played no part. (See June 4, 2021 Def. Ltr. (Dkt. No. 315) at 4-5)." The same

As established above, the S.D.N.Y. and C.D. Ca. prosecutors coordinated their fact gathering as to Government witness Ms. Judy Regnier. See infra. In addition, the Government likewise coordinated their fact-gathering as to Mr. Sean Macias. For instance, on November 20, 2018, the S.D.N.Y. prosecution team travelled to their colleagues' office in Santa Ana, California for an interview with Mr. Macias. The interview notes indicate that the lead prosecutor from C.D. Ca., AUSA Brett Sagel, and lead investigator from C.D. CA., SA Remoun Karlous, were present for the interview. See 3565-05. In addition, the Government has recently produced some, but not all, of the 3500 materials relating to Mr. Macias from the files of their counterparts in California.[4] See, e.g., 3565-03, 3565-08. As with Ms. Regnier's 3500 materials and the other documents obtained from California, this demonstrates that the Government here can obtain documents from California when it wants to. As explained in United States v. Wood, 57 F.3d 733, 737 (9th Cir. 1995), for Brady purposes, the offices are one: "The government cannot with its right hand say it has nothing while its left hand holds what is of value."

Moreover, the facts relating to the coordination and interactions between S.D.N.Y. and C.D. Ca. as detailed in Mr. Avenatti's pending motion before Judge Gardephe (Dkt. 358), together with the reply (Dkt. 363) and the exhibits, lead to the inescapable conclusion that beginning in early 2019, the two offices were engaged in joint fact gathering and a joint investigation as it related to Mr. Avenatti. In the interest of brevity, the defense will not repeat those same facts again here, but instead incorporates them by reference to Dkts. 358 and 363 filed in 19-cr-373 (PGG).

**Conclusion**

For each of the reasons set forth above, Mr. Avenatti respectfully requests that the Court direct the prosecutors in this case to promptly provide to Mr. Avenatti all 3500, Brady, and Giglio material in their possession or in the

---

rationale would hold true for the Government's production of materials relating to one or more interviews of Mr. Macias. See infra.

[4] Certain 3500 materials appear to be missing, including emails from Ms. Regnier, and handwritten and typed notes relating to Ms. Regnier and Mr. Macias.

possession of the U.S. Attorney's Office for the Central District of California or Main Justice, so that he may use such material in connection with his defense, including at trial.

Respectfully Submitted,

/s/
Robert M. Baum, Esq.
Andrew J. Dalack, Esq.
Tamara L. Giwa, Esq.
Assistant Federal Defenders

Cc: Government Counsel                                      Counsel for Michael Avenatti