

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 21, 2022

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Michael Avenatti*, 19 Cr. 374 (JMF)

Dear Judge Furman:

      The Government respectfully submits this letter to join in the motions to quash the subpoenas directed to Stormy Daniels and her counsel, Clark Brewster. (Dkt. Nos. 262, 266.) The defendant's subpoenas and letter in opposition to the motions to quash (Dkt. No. 282 ("Opp'n")) make clear that the defendant seeks to call a victim's counsel as a witness against that victim, and to prevent the victim's counsel from providing legal advice to the victim during trial. The Court should not permit this unusual and intrusive burden on the attorney-client relationship absent a substantial showing of relevance and admissibility of the attorney's testimony, which the defendant has not made here. The defendant also fails to demonstrate entitlement to any of the materials he requests in the subpoenas. Accordingly, the subpoenas should be quashed.

      *First*, the defendant argues that the materials he seeks are relevant as impeachment material for Mr. Brewster in connection with his expected testimony. (Opp'n 2.) But the defendant has not explained what relevant and admissible testimony Mr. Brewster can provide. At the final pretrial conference, defense counsel explained that the defendant intended to call Mr. Brewster to testify regarding a "recorded phonecall that he had with Michael Avenatti in which he questioned Michael Avenatti about the charges in this case." (01/18/2022 Tr. 56-57.)[1] To the extent the defendant's false exculpatory statements are relevant at all, they are inadmissible hearsay. *See, e.g.*, *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."). If the defendant wishes to place his own statements before the jury, he must testify so the Government may cross-examine him. *See United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) (holding that defendant "could have testified to everything asserted in his statement, [but] he could not offer the document itself for the truth of the matter asserted"), *overruled on other grounds by Montejo v. Louisiana*, 556 U.S. 778 (2009).

---

[1]     The Government does not presently intend to offer the recording and has not marked it as an exhibit. The defense has marked the recording as Defense Exhibit J.

Honorable Jesse M. Furman
United States District Judge
January 21, 2022
Page 2

The defendant also suggests that Mr. Brewster's testimony is relevant because he "brought information to the United States Attorney's Office that led to this prosecution." (Opp'n 4.) The fact that Ms. Daniels's counsel brought information to this Office on her behalf does not in itself bear on the defendant's guilt or innocence and is entirely irrelevant. To the extent it bears at all on Ms. Daniels's credibility, the defendant can elicit her knowledge of and role in those events, if any, during their cross-examination of Ms. Daniels, at least insofar as doing so would not implicate privileged communications.

Any potentially relevant testimony that Mr. Brewster might offer is also significantly outweighed by the prejudice of calling a victim's attorney to testify. The defendant's decision to subpoena Mr. Brewster "immediately drive[s] a chilling wedge between the attorney/witness and his client." 1 *Attorney-Client Privilege in the United States* § 3:24 (2021) (quotation marks omitted) (describing Government subpoenas); *cf. United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975) (holding that the defendant may not call Government counsel as a witness unless "required by a compelling and legitimate need"); *Edebali v. Bankers Standard Ins. Co.*, 14 Civ. 7095 (JS) (AKT), 2017 WL 3037408, at *9 (E.D.N.Y. July 17, 2017) ("[T]here is a presumption disfavoring attorney depositions which is based on the recognition that even a deposition of counsel limited to relevant and non-privileged information risks disrupting the attorney-client relationship and impeding the litigation." (alterations and internal quotation marks omitted)). To the extent the defense hopes to identify and elicit testimony that differs from Ms. Daniels' interests, it poses conflict-of-interest concerns for Mr. Brewster and Ms. Daniels. *See* ABA Model Rule 3.7 cmt. (noting potential conflict of interest issues that arise if, for instance, "there is likely to be substantial conflict between the testimony of the client and that of the lawyer").[2]

The negative and unjustified impact on the attorney-client relationship in this case is made plain by the defendant's letter. The defendant seeks an order sequestering Mr. Brewster from observing *his own client's trial testimony*. That is, the defendant seeks to prevent Ms. Daniels from being able to obtain the advice of counsel during any breaks in her testimony, or between the time of her testimony during the Government's case-in-chief and Mr. Brewster's proposed testimony during the defendant's case-in-chief. That directly harms Ms. Daniels's right to counsel. And it is especially damaging in this case, where the defendant has indicated that he intends to cross-examine Ms. Daniels on her relationships with other attorneys who have represented her previously, including Keith Davidson. That cross-examination may reach into potentially privileged communications, and Ms. Daniels—the primary victim in this case—may need the assistance of her counsel, who has been representing her with respect to this matter for nearly three years, in recognizing and protecting her rights. *See* 18 U.S.C. §3771(a)(8) (providing crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy").

---

[2] As the Government will explain in greater detail in its opposition to the defendant's motion regarding Sean Macias's anticipated testimony, to be filed later today, the same concerns are not implicated with respect to Mr. Macias because, among other reasons, he is not currently representing the defendant, his prior representation of the defendant was entirely unconnected to the facts at issue in this trial, and he will not be questioned about any potentially privileged matters.

Honorable Jesse M. Furman
United States District Judge
January 21, 2022
Page 3

In addition, Rule 615 appears to preclude Mr. Brewster's exclusion. As an initial matter, Rule 615 permits the presence of "a person whose presence a party shows to be essential to presenting the party's claim or defense." Fed. R. Evid. 615(c). Courts apply six factors to evaluate whether a person was essential: "(1) how critical is the sought-to-be-excluded witness's testimony; (2) whether that testimony is ordinarily subject to tailoring; (3) whether the testimony is likely to cover the same issues as other witnesses; (4) in what order will the witnesses be called; (5) whether any potential for bias exists that could incline a person to tailor his testimony; and (6) whether the witness's presence is essential or simply desirable." *Bruneau ex rel. Schofield v. S. Kortright Cent. Sch. Dist.*, 163 F.3d 749, 762 (2d Cir. 1998), *abrogated on other gronds by Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009). These factors weigh against sequestration here. Mr. Brewster's proposed testimony is not critical, testimony about an extant recording is not subject to tailoring, and in the event the Court actually permits the defendant to call Mr. Brewster as a witness (and it should not), he can be sequestered for most of trial, mitigating any risk of tailoring. Most significantly, however, his presence during Ms. Daniels's testimony is absolutely essential to Ms. Daniels's right to counsel. Indeed, it cannot be the law that a witness may be deprived of the assistance of counsel if an opposing party serves that witness's counsel with a subpoena for testimony, even if that counsel has some marginally relevant (though not admissible) testimony, and the defendant has cited no case in which that has occurred.

Mr. Brewster's presence is also authorized by statute. *See* Fed. R. Evid. 615(d) (excepting from the rule "a person who is authorized by statute to be present"). The Crime Victim's Rights Act permits victims the "right not to be excluded" from public court proceedings except where the court determines by "clear and convincing evidence" that "testimony by the victim would be materially altered if the victim heard other testimony at that proceeding." 18 U.S.C. § 3771(a)(3). And that right may be asserted by the victim's "lawful representative," such as her attorney, as well as the victim herself. *Id.* § 3771(d)(1). Accordingly, the subpoena seeking to compel Mr. Brewster to testify should be quashed and the defendant's request for sequestration of Ms. Daniels from her attorney should be denied.

*Second*, the defendant's document requests to Mr. Brewster do not seek relevant evidence because they rely on erroneous factual premises. Specifically, the defendant seeks (1) "all of Mr. Brewster's communications with law enforcement that led him to record a phone call with Mr. Avenatti at the end of February 2019 (concerning the very events at issue in this case) and to disclose that same recording to the United States Attorney's Office," and (2) Mr. Brewster's communications with Ms. Daniels's book agent and publisher "after Mr. Avenatti terminated his attorney-client relationship with" Ms. Daniels. (Opp'n 2.)

As to the former, the Government's first law enforcement contact with Mr. Brewster occurred *after* Mr. Brewster made the recorded call to the defendant, as the Government explained to the defendant's counsel prior to the filing of his opposition. Accordingly, the Government is aware of no good-faith basis to believe that any "communications with law enforcement" might have "led" Mr. Brewster to make the recorded phone call, and it is not clear what "communications" the defendant believes exist beyond what has already been produced to the

defendant. As the defense is aware, Mr. Brewster's substantive communications with the Government have been disclosed as Jencks Act material for Ms. Daniels—although doing so far exceeds the Government's discovery obligations. (*See, e.g.*, 3501-031). As Mr. Brewster observes in his motion, a subpoena should be quashed where it seeks communications which are otherwise obtainable—and have been obtained—from the Government. (Mot. 5-6, Dkt. No. 262.)

As to the latter, communications between Mr. Brewster and the publishing company or book agent *after* the defendant terminated his relationship with Ms. Daniels are irrelevant. "[W]hat was said about him and his conduct vis-à-vis Ms. Clifford" after his involvement (Opp'n 2) says nothing about his knowledge and intent to defraud her. Further, the Government has already disclosed the communications involving the publishing company and book agent in its possession, and the defendant provides no basis to conclude that any communications that were not provided to the Government are potentially relevant and admissible.

*Third*, more generally, the defendant's document requests are classic, impermissible fishing expeditions. *See United States v. Nixon*, 418 U.S. 683, 699-700 (1974) (explaining that the proponent of a subpoena must show "that the application is made in good faith and is not intended as a general 'fishing expedition'"). The defendant cannot demonstrate that the materials he seeks from Mr. Brewster and Ms. Daniels "contain admissible evidence or impeachment material." *United States v. Avenatti*, No. 19 Cr. 373 (PGG), 2020 WL 508682, at *6 (S.D.N.Y. Jan. 31, 2020). The defendant fails to identify what material he speculates may be contained in the communications he seeks, if they exist, and what evidentiary or impeachment value those communications might have. Instead, he seeks simply to "review" broad categories of potential communications in the hope that they contain impeachment material. (*See* Opp'n 2 ("Mr. Avenatti must be able to review all of Mr. Brewster's communications with law enforcement that led him to record a phone call . . . ."); *id.* at 4 (seeking "communications—including, but not limited to, WhatsApp messages, emails, text messages, and voicemails" because Mr. Avenatti has a right to review all of those communications and use them as impeachment material, if necessary"); *id.* at 5 ("Mr. Avenatti has a right to review and understand what transpired between Ms. Clifford, Mr. Janklow, and Ms. Richardson, including written or recorded communications in her possession . . . .")). As Mr. Brewster explains in his motion to quash, these "requests are simply an attempt to see *what might be* available." (Mot. 7, Dkt. No. 262.)

It does not aid the defendant's argument that these communications would purportedly help him "understand" the events underlying this case. (Opp'n 2, 5.) Rule 17(c) subpoenas may be employed to seek relevant evidence that can be admitted at trial, not as a discovery device. *See, e.g.*, *United States v. Purin*, 486 F.2d 1363, 1368 (2d Cir. 1973) ("A subpoena duces tecum in a criminal case is not intended as a means of discovery."); *United States v. Gross*, 24 F.R.D. 138, 141 (S.D.N.Y. 1959) (Rule 17(c) cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case. This type of discovery, permissible under the Federal Rules of Civil Procedure, has not been authorized for criminal trials."). The question is not whether the subpoena returns would aid the defendant's understanding; it is whether the documents sought are identified with specificity and themselves *are relevant and admissible evidence* he can use at trial. These subpoenas, therefore, are far afield

Honorable Jesse M. Furman
United States District Judge
January 21, 2022
Page 5

from the subpoena for Ms. Daniels' mental health records, which the Court authorized. (*See* Mem. Op. & Order, Dkt. No. 168.) In that instance, the Court found that the defendant's request for such records—had they existed—was "as specific as can be." (*Id.*). Mental health conditions that bear on a witness's ability to testify accurately are permissible grounds for impeachment, so the Court concluded that a maximally specific subpoena for such records was permissible. That degree of specificity, however, is entirely absent from the overbroad subpoenas that Mr. Brewster and Ms. Daniels seek to quash.

For the foregoing reasons and the reasons set forth in Mr. Brewster's and Ms. Daniels's motions to quash, the Court should quash the defendant's subpoenas and deny his motion to sequester Mr. Brewster during Ms. Daniels's testimony.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/_____
Matthew D. Podolsky
Andrew A. Rohrbach
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-1947/2345/2616

cc: Robert M. Baum, Esq. (by ECF)
Andrew J. Dalack, Esq. (by ECF)
Tamara L. Giwa, Esq. (by ECF)
Clark Brewster, Esq. (by ECF)