

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 21, 2022

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    ***United States v. Michael Avenatti*, 19 Cr. 374 (JMF)**

Dear Judge Furman:

      The Government respectfully submits this letter in opposition to the defendant's motions (1) to require production of certain purported materials "in the possession of individuals at Main Justice and the U.S. Attorney's Office for the Central District of California" (Dkt. No. 279 ("Disc. Mot.")), and (2) to "preclude or restrict" the testimony of Sean Macias (Dkt. No. 280 ("Macias Mot.")).  For the reasons set forth below, both motions should be denied.

    **I.**       **The Defendant's Discovery Motion Should Be Denied**

      The defendant argues that the Government—that is, the United States Attorney's Office for the Southern District of New York ("USAO-SDNY")—is required to take possession of and review materials in the possession of the United States Attorney's Office for the Central District of California ("USAO-CDCA") and "Main Justice."  (Disc. Mot. 5.)  The defendant's motion should be denied because it has no basis in fact or law.

      **A.**    **Factual Background**

        **1.**       **The Separate Prosecution Teams**

      As the Court is aware from prior briefing in this matter (Gov't Opp'n to Adjournment 1-4 (Dkt. No. 196); Gov't Reply in Supp. of Mots. *In Limine* 5-11 (Dkt. No. 197)), the USAO-SDNY and the USAO-CDCA have conducted their respective investigations and prosecuted their respective cases separately with separate agency partners (the Federal Bureau of Investigation's New York Field Office ("FBI-NY") for this case, Internal Revenue Service-Criminal Investigations ("IRS-CI") for the USAO-CDCA's investigation).  The USAO-SDNY became aware of the nature and scope of the USAO-CDCA's investigation only a few days before the defendant was arrested on March 25, 2019, in the context of deconfliction discussions concerning the place and timing of the defendant's arrest.  The interactions between the two offices principally have involved such deconfliction efforts, as well as accommodating a limited number of specific

Honorable Jesse M. Furman
United States District Judge
January 21, 2022
Page 2

requests for information transfer between the offices and permitting members of the other office to join or listen to a small number of meetings with two witnesses of mutual interest, so as to avoid duplication and to respect those witnesses' and their counsels' time. In particular, the USAO-SDNY and USAO-CDCA met, for mutual convenience, approximately four times together with Judy Regnier[1] and one time together with Sean Macias.[2] The USAO-SDNY has also met with Ms. Regnier on approximately nine occasions without any representative of the USAO-CDCA,[3] and the USAO-CDCA met with Ms. Regnier on approximately 12 occasions without any representative of the USAO-SDNY.[4] Similarly, the USAO-SDNY has met with Mr. Macias on approximately three occasions without any representative of the USAO-CDCA,[5] and the USAO-CDCA met with Mr. Macias without any representative of the USAO-SDNY on approximately one occasion.[6]

With respect to both Ms. Regnier and Mr. Macias, the USAO-SDNY requested from the USAO-CDCA, and has produced to the defendant, documentation of the USAO-CDCA's meetings with Ms. Regnier and Mr. Macias that the USAO-SDNY did not attend. *See supra* nn. 4 & 6.

During the course of its investigation of the conduct underlying both of the USAO-SDNY's prosecutions of the defendant, the USAO-SDNY has met at least once with more than approximately 45 other witnesses for a total of more than 120 interviews. No representative of the USAO-CDCA or its prosecution team had any involvement whatsoever with any of those interviews. Similarly, the USAO-SDNY did not attend any other interviews conducted by any representative of the USAO-CDCA or its prosecution team.

## 2. The Separate Execution of Two Different Search Warrants

The defendant's motion suggests that one potential link between the USAO-SDNY prosecution team and the USAO-CDCA prosecution team might be the forensic processing of his laptop. (Disc. Mot. 5-6.) As the Government explained to his counsel shortly before he filed his motion, that is factually incorrect.

---

[1]     *See* 3514-003 & 3514-004 (Nov. 20, 2019); 3514-005 (Jan. 9, 2020); 3514-024 (Feb. 4, 2020); and 3514-025 (Feb. 5, 2020).

[2]     *See* 3565-005 (Nov. 20, 2019).

[3]     *See* 3514-010 (Jan. 16, 2020); 3514-011 (Jan. 17, 2020); 3514-034 (Dec. 10, 2021); 3514-038 (Jan. 5, 2022); 3514-041 (Jan. 12, 2022); 3514-042 (Jan. 13, 2022); 3514-043 (Jan. 16, 2022); 3514-044 (Jan. 17, 2022); 3514-065 (Jan. 19, 2022).

[4]     *See* 3514-001 (Mar. 25, 2019); 3514-014 (Mar. 26, 2019); 3514-017 (June 4, 2019); 3514-019 (July 25, 2019); 3514-020 (Oct. 24, 2019); 3514-012 (Nov. 19, 2019); 3514-021 (Dec. 5, 2019); 3514-056 (June 14, 2021); 3514-057 (July 6, 2021); 3514-058 (July 8, 2021); 3514-059 (July 19, 2021); 3514-060 (July 22, 2021).

[5]     *See* 3565-004 (June 5, 2019); 3565-009 (Dec. 17, 2021); 3565-010 (Jan. 12, 2022).

[6]     *See* 3565-008 (July 24, 2019).

Honorable Jesse M. Furman
United States District Judge
January 21, 2022
Page 3

On April 9, 2019, the Honorable Stewart D. Aaron, United States Magistrate Judge for the Southern District of New York, issued a warrant authorizing law enforcement agents to search the defendant's laptop, which was seized from the defendant by Special Agents of the USAO-SDNY at the time of the defendant's arrest on March 25, 2019.  The laptop was subsequently processed by FBI-NY IT Specialist/Forensic Examiner Jessica Volchko, who the Government currently intends to call as a trial witness.[7]  The Government produced the contents of the laptop to the defendant more than two years ago.

Separately, the USAO-CDCA obtained its own court-authorized search warrant for the contents of the defendant's laptop, which the USAO-SDNY understands from the defendant's motion was later processed by a forensic analyst at "Main Justice."  (*See* Disc. Mot. 5-6.)  The USAO-SDNY has not communicated with nor utilized the services of that forensic analyst in relation to its investigations and prosecutions of the defendant.

### 3.  The Belated Timing of the Defendant's Motion

For at least two-and-a-half years, the Government has been consistent and clear in its communications to the defendant that the USAO-SDNY and the USAO-CDCA are separate prosecution teams for the purposes of both of the USAO-SDNY's prosecutions against the defendant, and that the USAO-SDNY was therefore was not obtaining and producing material that might be in the possession of the USAO-CDCA.  The following are some of the occasions on which this was made apparent, as the issue was addressed repeatedly in both of the USAO-SDNY's prosecutions of the defendant:

- On June 18, 2019, at a status conference in the Extortion Case, the USAO-SDNY stated that the servers obtained by the USAO-CDCA were not in the possession of the USAO-SDNY and it had never reviewed their contents.  (No. 19 Cr. 373, Dkt. No. 25 at 7, 9.)

- On June 11, 2021, the USAO-SDNY filed its response to a post-trial motion in the Extortion Case in which it explained that "the claim that the two teams prosecuting the defendant, in different districts, are really one team is meritless."  (No. 19 Cr. 373, Dkt. No. 318 at 9.)

- On November 14, 2021, the USAO-SDNY sent a letter to the defendant, responding to a request for certain materials, reminding the defendant that the "USAO-CDCA conducted a separate investigation into separate conduct, and is not part of the prosecution team for discovery, *Brady*, or *Giglio* purposes in this case."

- On December 10, 2021, the USAO-SDNY filed a response to a post-trial motion in the Extortion case in which it explained that, throughout the duration of the USAO-SDNY's prosecutions of the defendant, "the USAO-SDNY understood that it was

---

[7]      The defendant declined to enter into a stipulation as to the authenticity of the one-page document that is marked for identification as GX 608.

Honorable Jesse M. Furman
United States District Judge
January 21, 2022
Page 4

> a separate prosecution team from the USAO-CDCA and therefore the USAO-SDNY was not obtaining and producing material that might be in the possession of the USAO-CDCA." (No. 19 Cr. 373, Dkt. No. 360 at 4.)

- On December 30, 2021, the USAO-SDNY filed two submissions in this case in which it explained that the USAO-SDNY and the USAO-CDCA were separate prosecution teams, and outlined the facts and law supporting that conclusion. (*See* Gov't Opp'n to Adjournment 1-4 (Dkt. No. 196); Gov't Reply In Supp. of Mots. *In Limine* 5-11 (Dkt. No. 197).)

- On January 6, 2022, the USAO-SDNY sent a letter to the defendant, responding to a request for certain materials, in which the USAO-SDNY reminded the defendant that, "[t]o the extent your letter claims that the two separate teams prosecuting the defendant in this District and in the Central District of California—that is, in different districts, concerning different conduct—are really one team, it is incorrect, as we have repeatedly explained. In short, the [USAO-CDCA] conducted a separate investigation into separate conduct, and is not part of the prosecution team for discovery, *Brady*, or *Giglio* purposes in this case."

- On January 9, 2022, the USAO-SDNY sent a letter to the defendant, responding to a request for certain materials, in which the USAO-SDNY again reminded the defendant that: "the Government's discovery obligations apply only to material in the possession of the prosecution team in this case. Accordingly, the Government has no obligation to produce materials in the possession of other components of the Department of Justice."

Although the defendant has been aware for years that the USAO-SDNY understood that it was a separate prosecution team from the USAO-CDCA and therefore the USAO-SDNY was not obtaining and producing material that might be in the possession of the USAO-CDCA, the defendant waited to make a joint prosecution team motion to obtain discovery after jury selection had begun and a mere four days before opening statements are scheduled to be delivered.

### B.  Applicable Law

Discovery and disclosure obligations under Federal Rule of Criminal Procedure 16, *Brady*, 18 U.S.C. § 3500 (the Jencks Act), and otherwise apply only to the material in the possession of the United States. *See, e.g.*, *United States v. Brennerman*, 818 F. App'x 25, 29 (2d Cir. 2020) (rejecting *Brady* and Jencks Act claim regarding materials allegedly in victim's possession because "government's discovery and disclosure obligations extend only to information and documents in the government's possession"); *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) ("Clearly the government cannot be required to produce that which it does not control and never possessed or inspected." (internal quotation marks and citation omitted)). In this context, "the United States" refers not to any component or member of the federal government, but only to the prosecution team in the case at issue. *See, e.g.*, *United States v. Finnerty*, 411 F. Supp. 2d 428, 432 (S.D.N.Y. 2006). That individuals "fall under the broad umbrella of the Department of

Honorable Jesse M. Furman
United States District Judge
January 21, 2022
Page 5

Justice" does not thereby render them part of a same prosecution team. *Gist v. United States*, No. 16 Cr. 656 (GHW), 2021 WL 3774289, at *17 (S.D.N.Y. Aug. 24, 2021).

      In determining the scope of the prosecution team, the pertinent question is whether the person possessing the material at issue "is an 'arm of the prosecutor.'" *United States v. Blaszczak*, 308 F. Supp. 3d 736, 741 (S.D.N.Y. 2018) (quoting *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975)).  Although the Second Circuit has not spoken directly to the question, the majority of district courts have concluded that, standing alone, joint fact gathering is not sufficient to trigger an extension of the Government's discovery obligations.[8]  Instead, "[a] number of factors are relevant in determining whether the prosecution conducted a 'joint investigation,' including whether the other agency: (1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *United States v. Middendorf*, 18 Cr. 36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (citing *United States v. Blaszczak*, 308 F.Supp.3d 736, 741-42 (S.D.N.Y. 2018)); *see also United States v. Collins*, 409 F. Supp. 3d 228, 241 (S.D.N.Y. 2019) (finding no joint investigation where SEC and Government participated in some joint interviews); *United States v. Chow*, No. 17 Cr. 667 (GHW), ECF No. 69, at 87 (S.D.N.Y. Feb. 9, 2018) (finding no joint investigation where agencies shared information but made their own determinations regarding what documents to obtain and what facts to ask a witness); *accord SEC v. Stanard*, No. 06 Civ. 7736 (GEL), 2007 WL 1834709, at *3 (S.D.N.Y. June 26, 2007) (FBI and SEC did not conduct a joint investigation despite participating in joint interviews during which only FBI took notes); *Rigas*, 2008 WL 144824, at *2 (finding that parallel civil and criminal investigations were not "joint").  Asking the Government to review the entire investigative file of a parallel investigating agency merely because the agencies sought to maximize the efficiencies of investigation would "inappropriately require [the Court] to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998).

---

[8]    In two cases, judges in this District have concluded that certain types of joint fact gathering may trigger a limited obligation on the Government to review the files of another agency.  In *United States v. Gupta,* 848 F. Supp. 2d 491 (S.D.N.Y. 2012), Judge Rakoff ordered the Government to review for *Brady* SEC documents memorializing witness interviews that were conducted jointly by the SEC and the Government. In so doing, however, Judge Rakoff made clear that his finding did "not mean that all of the documents the SEC prepared and accumulated in its investigation are part of the joint investigation" such that they would need to be reviewed for *Brady*. *Id.* at 495.  In *United States v. Martoma*, 990 F. Supp. 2d 458 (S.D.N.Y. 2014), Judge Gardephe ordered the Government to review a narrow subset of SEC memoranda relating to cooperating witnesses. *Id*. at 462. In neither case did the court conclude that joint fact gathering would give rise to an obligation by the Government to review the SEC's entire investigative file.

Honorable Jesse M. Furman
United States District Judge
January 21, 2022
Page 6

## C. Discussion

During jury selection for trial, more than two-and-a-half years after being indicted, the defendant has brought a motion claiming that the Government is jointly prosecuting him with the USAO-CDCA and "Main Justice" and that the Government has discovery obligations with respect to materials that may be in their possession. As a threshold matter, the defendant's claim should be denied as untimely because, as explained above, he has had ample notice and opportunity to raise this issue long ago. *See United States v. Avenatti*, --- F. Supp. 3d ----, No. 19 Cr. 374 (JMF), 2021 WL 4120539, at *1 (S.D.N.Y. Sept. 9, 2021) ("The Court would be on firm ground denying Avenatti's 'omnibus' motion as untimely given that he did not seek, let alone obtain, leave of Court to bring another set of motions and there is no reason he could not have made his present arguments earlier."). Indeed, this issue was evident to the defendant years before he filed his latest round of pretrial motions on May 1, 2021 (Dkt. No. 115). *See* Fed. R. Crim. P. 12(b)(3)(E) (motion for discovery under Rule 16 must be included in pretrial motions); *United States v. Klump*, 536 F.3d 113, 120 (2d Cir. 2008); *United States v. Yousef*, 327 F.3d 56, 124-25 (2d Cir. 2003).

In any event, the defendant's claim that the prosecution team in this case encompasses any representative of the USAO-CDCA or "Main Justice" is wholly without merit. That certain members of a separate team may have attended interviews conducted by a prosecution team does not render the teams one and the same, particularly where the number of interviews conducted together is relatively small and where the teams do not make joint strategic or prosecutive decisions. *See Collins*, 409 F. Supp. 3d at 241 (no joint investigation where, *inter alia*, two teams "both participated in only 16 of 60 interviews of 37 distinct witnesses"); *see also, e.g.*, *Middendorf*, 2018 WL 3956494, at *4; *Blaszczak*, 308 F. Supp. 3d at 741-43. In any event, "[a]n investigation may be joint for some purposes; it may be independent for others," and therefore even where there are certain joint investigative activities, that does not, without more, give rise to an obligation for the Government to obtain and search the entire file of a separate team. *United States v. Gupta*, 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012) (explaining that even where there is some joint fact-finding, the entirety of the other team's file is not subject to *Brady* review, but rather only those files "arising from . . . joint efforts"); *see also Carroll*, 2020 WL 1862446, at *9 ("joint fact gathering" does not "give rise to an obligation by the Government to review [another team's] entire investigative file"); *United States v. Martoma*, 990 F. Supp. 2d 458, 462 (S.D.N.Y. 2014) (ordering production of specific subset of documents in possession of agency involved in joint fact-finding).

Here, the USAO-SDNY and the USAO-CDCA have conducted their respective investigations and prosecuted their respective cases separately with separate agency partners (FBI-NY for this case, IRS-CI for the USAO-CDCA's investigation). The interactions between the two offices principally have involved deconfliction, as well as accommodating a limited number of specific requests for information transfer between the offices and permitting members of the other office to join or listen to a small number of meetings with certain witnesses of mutual interest, so as to avoid duplication and to respect those witnesses' and their counsels' time. Specifically, the

Honorable Jesse M. Furman
United States District Judge
January 21, 2022
Page 7

USAO-SDNY and USAO-CDCA met, for mutual convenience, approximately four times with Ms. Regnier and one time together with Mr. Macias.  *See supra* nn. 1 & 2.[9]

During the course of its investigation of the conduct underlying this prosecution as well as its prosecution of the defendant relating to his extortion and honest services fraud scheme before Judge Gardephe, the USAO-SDNY met at least once with more than approximately 45 other witnesses for a total of more than 120 interviews.  No representative of the USAO-CDCA or its prosecution team had any involvement whatsoever with any of those interviews.  Similarly, the USAO-SDNY did not attend any other interviews conducted by any representative of the USAO-CDCA or its prosecution team.  FBI-NY handled the forensic analysis of the defendant's laptop pursuant to the USAO-SDNY's search warrant, while, according to the defendant's motion, a forensic analyst at "Main Justice" handled the forensic analysis of that device's contents pursuant to USAO-CDCA's search warrant.

The USAO-SDNY and the USAO-CDCA did not engage in a joint investigation and the USAO-CDCA was not "an arm of the" USAO-SDNY.  *Blaszczak*, 308 F. Supp. 3d at 741.  Indeed, of the more than 125 interviews the USAO-SDNY conducted of over 45 witnesses relating to both of its prosecutions, the USAO-CDCA attended approximately five interviews involving only two witnesses.  *See Collins*, 409 F. Supp. 3d at 241 (no joint investigation where, *inter alia*, two teams "both participated in only 16 of 60 interviews of 37 distinct witnesses").  The USAO-CDCA also had no role in the presentation of this case to the grand jury, and the two offices did not share documents other than in response to a small number of specific, discrete requests for certain materials.  Further, the USAO-CDCA played no role in the development of the USAO-SDNY's prosecutorial strategy, and the USAO-SDNY played no role in the development of the USAO-CDCA's prosecutorial strategy.  Although representatives of the USAO-CDCA were present for the presentment of the defendant upon his arrest on both the USAO-SDNY's and the USAO-CDCA's separate charges in New York, the USAO-CDCA did not "accompan[y] the prosecution to court proceedings" in this case, and the members of the USAO-SDNY prosecution team have never attended a court proceeding in the USAO-CDCA.[10]  Indeed, just days before trial in the Extortion Case, the USAO-CDCA moved to remand the defendant for violating the terms of his pretrial release, without any prior notice or consultation with the USAO-SDNY, which resulted in an adjournment of the trial.  (*See* No. 19 Cr. 373, Dkt. Nos. 145, 152, 157.)  These circumstances present even less of a basis for a finding of a joint prosecution team than in other cases where no joint investigation was found.  *See, e.g., Gist*, 2021 WL 3774289, at *17; *Carroll*, 2020 WL

---

[9]    The Court need not determine whether the USAO-SDNY "engaged in joint and coordinated fact gathering" as to Ms. Regnier (or Mr. Macias), *United States v. Avenatti*, No. S1 19 Cr. 373 (PGG), 2021 WL 2809919, at *45 (S.D.N.Y. July 6, 2021), because the USAO-SDNY has obtained from the USAO-CDCA documentation of the USAO-CDCA's separate meetings with those witnesses and produced them to the defendant.

[10]    The defendant did, for reasons unclear to the USAO-SDNY, call as a witness at his trial in the Central District of California an FBI agent who was formerly part of the prosecution team here.

Honorable Jesse M. Furman
United States District Judge
January 21, 2022
Page 8

1862446, at *9-10; *Collins*, 409 F. Supp. 3d at 239; *Middendorf*, 2018 WL 3956494, at *5; *Blaszczak*, 308 F. Supp. 3d at 741-43.

In short, the defendant's motion should be denied because the USAO-SDNY prosecution team in this case is not joint with the USAO-CDCA prosecution team or any individuals at "Main Justice." [11]

## II.     The Defendant's Motion to "Restrict or Preclude" Sean Macias's Testimony Should Be Denied

The defendant argues that the Court should preclude or in some unspecified manner restrict the testimony of Sean Macias "[b]ecause it is very difficult to disentangle Mr. Macias's knowledge of Mr. Avenatti's affairs from their attorney-client and professional relationship (and Mr. Macias's current representation of Mr. Avenatti's estranged wife)." (Macias Mot. 1.)  The defendant does not actually contend that any of the testimony that Mr. Macias would offer at trial is protected by any privilege, and offers no basis to preclude otherwise relevant and admissible testimony.  The motion should be denied.

Under Federal Rule of Evidence 402, "[r]elevant evidence is admissible," and "[i]rrelevant evidence is not admissible."  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  This is generally not a difficult test to meet.  *See, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) ("so long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry" (citing *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) (Friendly, J.))).

---

[11]     To the extent the defendant's motion suggests that the Government is required to specifically identify *Brady* information within materials already provided to the defendant (*see* Disc. Mot. 6 n.2), he is wrong.  Courts in this District recognize that "[i]n the *Brady* context, the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence, even when that larger mass is enormous . . . ." *United States v. Parnas*, No. 19.Cr. 725 (JPO), 2021 WL 2981567, at *6 (S.D.N.Y. July 14, 2021) (quoting *United States v. Healey*, 860 F. Supp. 2d 262, 269 (S.D.N.Y. 2012)); *see also, e.g.*, *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 457 (S.D.N.Y. 2011) ("The Government is under no general obligation to identify or sort *Brady* material within even an extremely voluminous disclosure[.]"); *United States v. Ohle* ("*Ohle I*"), No. 08 Cr. 1109 (JSR), 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011) (While "'the Government may not properly conceal exculpatory evidence from a defendant, [the rule] does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case.'" (quoting *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990))).

Honorable Jesse M. Furman
United States District Judge
January 21, 2022
Page 9

Otherwise admissible evidence is subject to preclusion under Federal Rule of Evidence 403 if its probative value is "substantially outweighed" by the danger of, among other things, unfair prejudice. Fed. R. Evid. 403. The "prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)).

The defendant makes no claim that Mr. Macias's testimony would be irrelevant under Rule 401 or inadmissible under Rule 403. Instead, the defendant invokes generally the fact that Mr. Macias represented the defendant on discrete matters at certain points in time.[12] Notably, however, and notwithstanding the fact that the Government has produced both documents obtained from Macias and Jencks Act material for him, the defendant has never and does not now point to anything that Macias has discussed with the Government and might form the basis of his testimony that is covered by any form of privilege.[13] Instead, the defendant vaguely suggests that "he has a complicated history with Mr. Macias" (Macias Mot. 3), which is not a form of privilege and does not provide a ground for preclusion. Nor, for that matter, does the defendant point to anything that might be actually derived from any privilege or make any serious claim that such a privilege exists. In fact, as the Government has proffered, Macias's expected testimony concerns matters for which there is no plausible claim of privilege by the defendant, including how Macias facilitated the introduction of the defendant to Victim-1, statements made by the defendant to Macias regarding the defendant's representation of Victim-1, and Macias's assistance in procuring a personal loan for the defendant.

Finally, to the extent the defendant suggests generally that a defendant's former attorney may not be called to testify on even non-privileged matters, there is no such rule. Indeed, the cases that the defendant relies on do not stand for that principle, and are irrelevant in any event, insofar as they concern circumstances where a defendant's attorney is called to testify on matters relating to the attorney's representation of the defendant—which is not the case here. (*See* Macias Mot. 2 (relying on *United States v. Doyle*, No. 16 Cr. 506 (ALC), 2018 WL 1902506, at *19 (S.D.N.Y. 2018) (internal citations omitted).) To the contrary, testimony by an attorney on nonprivileged matters is perfectly admissible. *See United States v. Gasparik*, 141 F. Supp. 2d 361, 370 (S.D.N.Y. 2018).

In short, the defendant has made no claim that Mr. Macias's testimony is barred by any rule of evidence, and has pointed to no potentially privileged material that might actually be implicated by Mr. Macias's anticipated testimony. Accordingly, the motion should be denied.

---

[12]     The Government understands that Mr. Macias does not currently represent the defendant in any matter and has not done so at least since the defendant's arrest on March 25, 2019. The defendant does not suggest otherwise.

[13]     Much of the same Jencks Act material was produced to the defendant's counsel more than two years ago in advance of his trial in *United States v. Avenatti*, S1 19 Cr. 373 (PGG), and no assertion of privilege was made by the defendant in that case either.

Honorable Jesse M. Furman
United States District Judge
January 21, 2022
Page 10


Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney


By:    s/ _____
       Matthew D. Podolsky
       Andrew A. Rohrbach
       Robert B. Sobelman
       Assistant United States Attorneys
       (212) 637-1947/2345/2616


cc:    Robert M. Baum, Esq. (by ECF)
       Andrew J. Dalack, Esq. (by ECF)
       Tamara L. Giwa, Esq. (by ECF)