**Federal Defenders
OF NEW YORK, INC.**

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
Executive Director
and Attorney-in-Chief

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

January 22, 2022

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    RE:    **United States v. Michael Avenatti**
             **19 Cr. 374 (JMF)**

Dear Judge Furman:

      The defense seeks an Order directing the Department of Justice to provide to the defense the Tabs and FileSite data in their possession relating to Ms. Stephanie Clifford in a usable, readily accessible format. This data, which is Brady and Giglio material,[1] resides in the files seized from Mr. Avenatti's former firm, is in the possession of Main Justice and the U.S. Attorney's Office for the Central District of California and contains records concerning (a) Mr. Avenatti's representation of Ms. Clifford under the terms set forth in their fee agreement and (b) the costs and expenses Mr. Avenatti incurred on her behalf, for which he was entitled to reimbursement (including, as he will argue at trial, from any book proceeds).

      On January 12, 2022, the prosecution team produced notes it took from an interview of Judy Regnier earlier that same day. Ms. Regnier was Mr. Avenatti's office manager and was responsible for inputting entries in QuickBooks and Tabs— the two accounting programs used for some (but not all) of Mr. Avenatti's former clients. During that interview, Ms. Regnier told the Government that information relating to the Mr. Avenatti's firm's representation of Ms. Clifford was kept in QuickBooks and Tabs (3514-041).

      Upon receiving the notes, Mr. Avenatti sought the assistance of his expert in the Central District of California to access the relevant data from the copy of the servers that were produced to Mr. Avenatti in mid-September 2021. Unfortunately,

---

[1] See also Motion to Compel Production of All Brady, Giglio and 3500 Materials in the Possession of Main Justice and C.D. Ca., Dkt. No. 279.

the expert was unable to access the information without the assistance of Software Technology, LLC (see below). Mr. Avenatti subsequently filed an emergent application with the court in the Central District of California seeking its assistance in compelling the Government to produce the accounting data. See Dkt. 903. The application was denied yesterday without prejudice to Mr. Avenatti's ability to obtain relief before this Court. See Dkt. 909. The defense promptly raised the issue the morning of January 21, 2022 with the Court.

During that discussion, the Court requested a more detailed explanation of why Mr. Avenatti has been unable to access the Tabs data from the copy of the servers produced to him in the Central District of California in mid-September 2021. Preliminarily, it bears emphasizing that although Mr. Avenatti was the managing attorney of Eagan Avenatti, LLP, he was not responsible for installing or maintaining the firm's servers or for inputting accounting data. Beyond his familiarity with how to use a computer as a practicing attorney, Mr. Avenatti has never possessed a technical knowledge of how the servers work. He does not know how to identify where on a forensic copy of the servers certain data is stored, nor has he ever known how to access data on the servers that is not in its native state (e.g., accessible via a shared network).

The defense further submits the following timeline in response to the Court's inquiry:

1. After years of demanding that the Government provide a copy of his own law firm's servers, Mr. Avenatti received a forensic copy of the servers on September 16, 2021. The servers total 19.86 terabytes, which is roughly twice the data necessary to hold the entire Library of Congress.[2] It is especially important to note that the forensic copy of the servers is not

---

[2] See, e.g., Schwartz v. United States, 828 F. App'x 628, 634 n.3 (11th Cir. 2020):

> According to the conversion rate found in McNulty v. Reddy Ice Holdings, Inc., 3 terabytes would equal approximately 660 million pages of "printed text." 271 F.R.D. 569, 570 n.1 (E.D. Mich. 2011). Without delving into the distinctions between "plain" text and "printed" text, let's just say a terabyte is more than a little information. Three terabytes would hold 3,000 copies of the Encyclopedia Britannica, or 30% of the printed collection of the Library of Congress. United States v. Salyer, Cr. No. S-10-0061-LKK, 2011 WL 1466887, at *1 n.2 (E.D. Cal. Apr. 18, 2011) (quotation omitted), report and recommendation adopted, Cr. No. S-10-061-LKK, 2011 WL 1811211 (E.D. Cal. May 12, 2011).

   readily searchable like an external hard drive or thumb drive, which is why Judge Selna has directed the Government to prepare and provide a complete FTK index of the servers to Mr. Avenatti, a process that began in August 2021 and, according to the Government, is still not complete.

2. Prior to receiving the servers, Mr. Avenatti retained a computer expert, Mr. Ernest Koeberlein. A copy of his CV is attached as Exhibit A.

3. Mr. Avenatti and Mr. Koeberlein have worked diligently since September 2021 to (a) extract the data from the servers in a form where at least some of it is searchable and (b) access the data relevant to Mr. Avenatti's representation of Ms. Daniels. These efforts have been hampered by, inter alia, the Government's failure to provide to Mr. Avenatti the index ordered by Judge Selna and the fact that the nearly 20 terabytes of data are not in an operational format that is readily searchable.[3]

4. On October 13, 2021, the C.D. Ca. prosecution team filed an emergent application for an Order "Requiring Software Technology, LLC to facilitate the Government's Restoration of Tabs Software Files Seized from the Eagan Avenatti LLP Servers…." See Dkt. 855. This was filed after the Government served a subpoena on Software Technology, LLC (the maker of the Tabs software) requesting assistance loading the Tabs files. The subpoena was served after Government agents who, like Mr. Avenatti and his expert were unable to access the Tabs data on their own. Concerned with the confidential and privileged nature of the Tabs materials, Software Technology, LLC indicated that it would not comply absent an agreement between the parties.

5. On October 15, 2021, a status conference was held with Judge Selna where the parties were ordered to prepare a joint stipulation that would allow for Software Technology, LLC to provide the requested assistance only in connection with the former clients of Eagan Avenatti, LLP named in the C.D. Ca. Indictment. After the parties were unable to come to an agreement regarding the language of the stipulation, an emergent application was filed by the Government on October 27, 2021. See Dkt. 873. This application was granted by Judge Selna on November 1, 2021. See Dkt. 877. The court indicated that Software Technology, LLC, was permitted to provide technical assistance to both parties.

6. On November 1, 2021, Mr. Avenatti forwarded Judge Selna's Order to the

---

[3] The defense can provide a declaration from Mr. Koeberlein regarding his efforts and the technical challenges with searching the servers if the Court so desires.

3

    Privilege Review Team ("PRT") and counsel for Software Technology, LLC. On November 9, 2021, a conference call occurred with the defense, the PRT, and Software Technology, LLC personnel. During this conference call, a solution was proposed to effectively sever the data relating to the five clients named in the California Indictment from the client data not at issue in any of the cases against Mr. Avenatti. Software Technology, LLC asked that the PRT and the defendant enter into a stipulation.

7. On November 12, 2021, the defense sent the PRT points to be included within the stipulation. On November 17, 2021, Mr. Avenatti and the PRT came to an agreement on a protocol that would allow for the production of the data to both Mr. Avenatti and the PRT. The stipulation addressed confidentiality concerns and otherwise complied with Judge Selna's Order.

8. On November 22, 2021, Mr. Avenatti memorialized the terms of segregation of the Tabs data into a stipulation. This stipulation included the agreements made between the defense and the PRT. The PRT then approved the language within the stipulation. On November 23, 2021, Mr. Avenatti provided the signed stipulation to Software Technology, LLC for its review. On November 24, 2021, Software Technology, LLC proposed some minor edits for the stipulation.

9. On December 6, 2021, the PRT proposed three consecutive dates (December 7 through 9). Software Technology, LLC was available on December 8 only, but Mr. Avenatti's expert was not and proposed dates the following week. Unfortunately, the PRT otherwise unavailable the remaining three weeks of December. The PRT indicated it would propose new dates in January 2022.

10. On January 11, 2022, a conference call took place between the PRT, Mr. Avenatti, and Software Technology, LLC. The parties discussed the logistics of segregating the data and scheduled the in-person segregation to take place on January 18, 2022, which was ultimately rescheduled to January 24, 2022.

11. Mr. Avenatti subsequently raised with the PRT the need to also acquire the Tabs data related to Ms. Clifford (which Ms. Regnier specifically referenced in the 3500 materials produced in this case on January 12, 2022). The PRT indicated that in order to facilitate the segregation of the Tabs data related to Ms. Clifford, it would need to be directed to do so by the court and took no other position on the matter. Accordingly, Mr.

4

Avenatti filed an emergent application with Judge Selna requesting that the court issue an Order permitting the Privilege Review Team to assist in segregating the data relating to Ms. Clifford. See Dkt. 903. This request was denied without prejudice on January 20, 2022, with the following statement from Judge Selna: "Denied without prejudice to any relief which defendant may be entitled to in the Southern District of New York."

As set forth above, Mr. Avenatti has endeavored to work with the PRT in C.D. Ca. and Software Technology, LLC to obtain the data located on the servers related to his firm's accounting across various client accounts. Through no fault of his own, the data has been inaccessible for months and the company responsible for the Tabs program has required multiple court orders to even assist the parties in obtaining the data. Thus, even if Mr. Avenatti had specifically requested the Tabs data for Ms. Clifford on September 16, 2021, the day the servers were first produced, he would still be in the exact same position he is in now: waiting for Software Technology, LLC to conduct the Tabs data segregation with the agreement of the Government. And because the data segregation will occur on the copy of the servers in the possession of the Government in C.D. Ca., which Mr. Avenatti submits is a part of the same prosecution team as the S.D.N.Y., the Court should compel the Government's production of the Tabs data for Ms. Clifford.

Respectfully Submitted,

/s/
Robert M. Baum, Esq.
Andrew J. Dalack, Esq.
Tamara L. Giwa, Esq.
Assistant Federal Defenders

Cc: Government Counsel                                        Counsel for Michael Avenatti