# Skadden, Arps, Slate, Meagher & Flom LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
212-735-2100
DIRECT FAX
917-777-2100
EMAIL ADDRESS
DAVID.MEISTER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

January 26, 2022

Hon. Jesse M. Furman
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

                RE:     *United States v. Avenatti*, 19-cr-374 (JMF)

Dear Judge Furman:

      On behalf of our client, Lucas Janklow, we respectfully request permission to intervene in this matter for the limited purpose of moving to quash a testimonial trial subpoena served on January 25, 2022 by the defendant Michael Avenatti on Mr. Janklow. As set forth in detail below, the subpoena should be quashed because the testimony Mr. Avenatti seeks is cumulative, marginally relevant or irrelevant, because Mr. Avenatti was given ample opportunity to establish the points he claims require Mr. Janklow's return to the stand, and because the subpoena places an undue burden on Mr. Janklow.

      The subpoena, served after the Court already concluded that Mr. Avenatti did not have grounds to recall Mr. Janklow, seeks his testimony as early as this Friday, January 28. On Thursday January 27, however, Mr. Janklow is scheduled to leave New York on a long-planned nonrefundable trip with his family. Given the timing and the serious burden imposed by the subpoena, we also respectfully request that the Court address our motion to quash today, January 26, if at all possible. Counsel can be available if the Court wishes to hear from us.

Hon. Jesse M. Furman
January 26, 2022
Page 2

We are informed by AUSA Matthew Podolsky that the Government supports our application.[1]

**Background**

As the Court is aware, Mr. Janklow is a nonparty witness. He testified at trial on January 24 for several hours on direct (Tr. 100-221) and cross (Tr. 221-301), and then returned on January 25 so that the defense could complete its cross examination (Tr. 324-358). Mr. Janklow was questioned in detail by both sides concerning his recollection of all of the relevant events and concerning numerous exhibits.

On the morning of January 25 prior to the beginning of the day's proceeding, Mr. Avenatti's counsel first indicated to counsel for Mr. Janklow that the defense might wish to call Mr. Janklow in their case. Defense counsel asked us to find out if Mr. Janklow had any travel scheduled. After then conferring with Mr. Janklow, we told defense counsel that Mr. Janklow in fact had nonrefundable travel planned, beginning on January 27. We therefore asked that any questions they needed to put to Mr. Janklow be handled during cross-examination.

After Mr. Janklow's testimony concluded on January 25 and Mr. Janklow was excused, the Court addressed the factors that amply supported the Court's

---

[1] Although the Federal Rules of Criminal Procedure do not address a motion to intervene, the Second Circuit has recognized that federal courts are authorized to create procedural rules "'not specifically required by the Constitution or Congress to implement a remedy for violation of recognized rights.'" *United States v. Aref*, 533 F. 3d 72, 81 (2d Cir. 2008)) (citation omitted). In this vein, courts have granted motions to intervene in criminal proceedings "where in limited circumstances 'a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case.'" *United States v. Collyard*, Cr. No. 12-0058 (SRN), 2013 WL 1346202, at *2 (D. Minn. Apr. 3, 2013) (citing *United States v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004)). For example, courts have granted a motion to intervene from the press where closed criminal proceedings posed a challenge to the public's First Amendment rights, *see Carmichael*, 342 F. Supp. 2d at 1072 (citing *United States v. Hernandez*, 124 F. Supp. 2d 698, 701 (S.D. Fla. 2000), and *United States v. Baez-Alcaino*, 718 F. Supp. 1503 (M.D. Fla. 1989)), and have granted a motion to intervene where a third-party has sought to challenge a subpoena for documents in a criminal case on the basis of privilege. *See Carmichael*, 342 F. Supp. 2d at 1072 (citing *United States v. Bergonzi*, 216 F.R.D. 487, 492 (N.D. Cal. 2003) (allowing third-party to whom the privilege belonged to intervene in criminal trial to challenge the production of privileged documents in response to subpoena)).

The Court has entertained at least one other motion to quash a subpoena issued by the defendant to a third party (Mr. Brewster) in the instant case. *See* Dkt. No. 262. We respectfully request that the Court similarly hear our motion to quash.

Hon. Jesse M. Furman
January 26, 2022
Page 3

decision to end Mr. Avenatti's cross examination pursuant to Rule 611, Fed. R. Ev. (Tr. 371-375). The Court noted that if Mr. Avenatti wished to recall Mr. Janklow, the defense would have to persuade the Court via a proffer why Mr. Avenatti would want him recalled. (Tr. 372). Mr. Avenatti, through counsel, then proffered as follows:

> I had a whole other chapter dedicated to discussing with Mr. Janklow how poorly the book did as a result of Ms. Daniels' failures to adhere to various aspects of her promotional obligations under the contract, which is a significant issue in this case. Because, as we established through Mr. Janklow, the $800,000 book advance was a floor. It was not a ceiling.
>
> So, had the book sold better, both she and Mr. Janklow would have made more money. And that goes into motive for Ms. Daniels to, as we submit, fabricate that Mr. Avenatti orally abandoned his interest in the book deal. The motive being because the sales tanked and because she didn't make any royalties, as Mr. Janklow stated yesterday, from the book deal that she was upset about that and perhaps she blamed Avenatti for those failures, even though the failure of the book to sell well was because, as we were going to establish through Mr. Janklow, was through had her own failings in adhering to the promotional obligations. I think we do have strong grounds for re-calling Mr. Janklow in our direct case to establish that fact and to illustrate that for the jury.

(Tr. 373-74).

Lastly, Mr. Avenatti proffered that he wanted to again "delve into with a little bit more detail…the chaos that was surrounding the final moments surrounding the signing of the actual book contract" and establish that the publisher had made the first installment of the advance prior to all parties signing the final contract. (Tr. 374).

The Court then determined for a number of reasons that the information so proffered was insufficient, concluding, "I don't see any grounds for you to re-call him. If you have an application on that, I will hear from the government on that later. But since your defense case is not going to be anytime soon, we don't need to take that up now." (Tr. 374-75).

Hon. Jesse M. Furman
January 26, 2022
Page 4

On the evening of January 25, the Federal Defenders, who had by that time become standby counsel, informed us that Mr. Avenatti had instructed them to serve the instant subpoena on Mr. Janklow. We accepted service on his behalf.

Mr. Janklow is scheduled to travel to Florida on Thursday, January 27, in the morning, and to leave the country from Florida on Sunday January 30. He is scheduled to return to the country on February 3. The trip is expensive for Mr. Janklow and nonrefundable. He is traveling with his wife and young children and very close friends to, among other things, celebrate a special occasion. Like many of us, he and his family have lost such opportunities due to COVID, and he has promised his children that this one would not be missed. He rearranged work, school and personal schedules to make this trip happen. The trip cannot be deferred, due to Mr. Janklow's and his family's other obligations.

**Applicable Law**

The Court has discretion to quash a subpoena for testimony served pursuant to Fed. R. Crim. P. 17(a). *See generally United States v. Khan*, No. 06-cr-255 (DLI), 2009 WL 152582 (E.D.N.Y. Jan. 20, 2009) (addressing motion to quash subpoena issued pursuant to Rule 17 of the Federal Rules of Criminal Procedure compelling testimony from government employees). When faced with a challenge to a subpoena, a court may apply the same standard to Rule 17(a) subpoenas for testimony as they apply to Rule 17(c) subpoenas for documents. *See Stern v. U.S. Dist. Ct. D. Mass.*, 214 F.3d 4, 17 (1st Cir. 2000) ("Although Rule 17(a), which governs . . . subpoenas [for testimony], does not provide explicitly for quashal or modification, courts routinely have entertained motions seeking such relief and decided them by reference to comparable principles."). Rule 17(c) prescribes a procedure and a standard for challenging such subpoenas: "The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c). The Supreme Court elucidated the meaning of this standard in *United States v. Nixon*, 418 U.S. 683 (1974), holding that a subpoena duces tecum is not "'unreasonable or oppressive' if the proponent establishes relevancy, admissibility, and specificity." *Stern*, 214 F. 3d at 17 (citing *Nixon*, 418 U.S. at 700)).

**Argument**

The Court should quash the subpoena. Mr. Janklow's second session of testimony would be cumulative of his first, or of other evidence, and would be either marginally relevant or irrelevant, and therefore would be inadmissible under Rule 403, Fed. R. Ev. Moreover, the questions that the defense purportedly wants to put

Hon. Jesse M. Furman
January 26, 2022
Page 5

to Mr. Janklow could have been posed when Mr. Janklow was on the stand on January 24 and 25.

      Mr. Avenatti had ample time to examine Mr. Janklow, having questioned him for hours, over nearly as many transcript pages as the Government covered on direct. He questioned Mr. Janklow about all material aspects of the matter, and certainly had the opportunity to elicit whatever he believed he needed to elicit to establish his defense. He asked numerous questions concerning communications and discussions with Mr. Avenatti, Stephanie Clifford a/k/a "Stormy Daniels," and the publisher, as well as about the book contract, the promotion and success of the book or lack thereof, Mr. Avenatti's contributions to the project and purported advocacy for Ms. Daniels' interests, and Mr. Janklow's views of Mr. Avenatti and of Ms. Daniels.[2]

      Moreover, the Court has already concluded that the defendant's proffered examination is insufficient. The proffer makes clear that Mr. Avenatti seeks to elicit information that has already been the subject of Mr. Janklow's testimony, such as Ms. Daniels' promotion of the book, how royalties work, potential profits from book sales, and the book's lack of success. Furthermore, topics such as book royalties, sales, and marketing, and reasons the book was unsuccessful can also be addressed, indeed more directly, through examination of the publisher, who, as has been established, handles such matters in the book business. *See* Tr. 101. To the extent that Mr. Avenatti is seeking to recall Mr. Janklow to ask yet again about Mr. Janklow's discussions with Ms. Daniels, which Mr. Janklow testified occurred on a relatively limited basis, the defense had the opportunity to explore that subject, and did explore it, at length, during cross examination.[3] To be sure, a second session of Mr. Janklow's testimony is unnecessary and would only be cumulative of

---

[2] Mr. Avenatti's opening statement made it quite clear that his defense rests on his claim that he had a "fee dispute" with Stormy Daniels, which has nothing to do with Mr. Janklow. *See* Defense Opening Statement, Tr. 95-96 ("The Government's case lives and dies on one thing and one thing alone: Ms. Daniels' claim that Mr. Avenatti orally, without documentation and any writing whatsoever, told Ms. Daniels that he would not accept any money from the book deal, only to then later accept those same book payments on her behalf without authorization and then keep one for himself.").

[3] Mr. Avenatti contended in the proffer that he will argue Ms. Daniels was motivated to blame Mr. Avenatti for poor book sales and therefore is lying about their fee arrangement, and to make that argument he wants to prove through Mr. Janklow that the book's lack of success was Ms. Daniels' fault. But even if Mr. Janklow's opinion concerning the reasons for the book sales figures were somehow relevant admissible evidence, which it is not, it is not at all clear why his opinion makes a difference. Mr. Avenatti's has his motive argument regardless of who was actually to blame for the lack of success of the book.

information he has already provided, and the defendant's proffer does not establish otherwise.

On the other side of the scale, the subpoena imposes an enormous and here, unnecessary, burden on Mr. Janklow and his family, as we explain above. He of course very much understands his obligations, but in these circumstances he has already fully satisfied them. No more should be required.

**Conclusion**

For the reasons set forth above, we respectfully request that the Court promptly quash the subpoena served on Mr. Janklow.

Respectfully submitted,

*/s/ David Meister*

David Meister

cc:  Robert Baum, Federal Defenders
     Andrew Daleck, Federal Defenders
     Tamara Giwa, Federal Defenders
     Assistant U.S. Attorney Robert Sobelman
     Assistant U.S. Attorney Matthew Podolsky
     Assistant U.S. Attorney Andrew Rohrbach