RICHARD KAPLAN
NINA MARINO*
JENNIFER A. LIESER
CODY ELLIOTT
ALLEN G. WEINBERG, Of Counsel



KAPLAN | MARINO
kaplanmarino.com

kaplan@kaplanmarino.com
marino@kaplanmarino.com
lieser@kaplanmarino.com
elliott@kaplanmarino.com
weinberg@kaplanmarino.com

January 31, 2022

**<u>Via ECF Only</u>**

The Honorable Jesse E. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

RE:    **Motion to Quash Trial Subpoena as to Analysis Group c/o John Drum**
       **<u>*United States v. Michael Avenatti*</u>, 19 Cr. 374 (JMF)**

Dear Judge Furman:

On January 11, 2022, John Drum, a consultant with Analysis Group (AG"), an economic consulting firm, was served by Defendant Avenatti with a trial appearance subpoena in the above captioned case. The subpoena also requested the production of certified copies of the following:

<u>Request 1:</u> Produce all communications relating to, in whole or in part, the finances of Michael Avenatti, Avenatti and Associates, APC, and/or Eagan Avenatti, LLP during the time period January 1, 2018 to May 15, 2019. This should include all text messages, instant messages, emails, letters, cards, voicemails, Facebook messages, WhatsApp messages, Instagram messages, and messages on similar platforms such as Signal or Telegram, sent by or to John Drum, Evan Carter, Stacey Chan, Ryan Keithahn, Luke Wilder, or Christopher Borek.

<u>Request 2:</u> Produce all slides, charts, presentations, decks, summaries, narratives, and exhibits relating to, in whole or in part, the finances of Michael Avenatti, Avenatti and Associates, APC, and/or Eagan Avenatti, LLP during the time period January 1, 2018 to May 15, 2019.

(Ex. A, subpoena.)

The requested records are by in large duplicative of records Avenatti already has in his possession which were produced to him by the United States Attorney's Office for the Central District of California ("USAO-CDC") in the matter of *United States v. Avenatti*, Case No. 19-cr-

1546 N. Fairfax Avenue
Los Angeles, CA 90046

T  310.557.0007
F  310.861.1776

*Certified Specialist Criminal Law
CA Board of Legal Specialization



00061 (C.D.C.A.). Nonetheless, undersigned counsel made good faith efforts to reach an agreement regarding the parameters of the subpoena. Despite undersigned counsel's best efforts to negotiate in good faith, Avenatti chose instead to cease communications with counsel a full eight days before trial was scheduled to begin and then wait until the eve of his presentation of evidence to seek to compel AG's document production and John Drum's testimony. (Dkt. No. 336.) Compliance with the subpoena on a moment's notice would not only be unduly unreasonable and oppressive, it would be virtually impossible. Fed. R. Crim. P. 17(c)(2). For these reasons, as well as those further outlined below, undersigned counsel asks that this Court quash Avenatti's subpoena.

## I.    BACKGROUND

AG and John Drum were retained as a summary witness by the USAO-CDC in the matter of *United States v. Avenatti*, Case No. 19-cr-00061 (C.D.C.A.). That matter charged Avenatti with 36 counts including wire fraud, tax fraud, obstruction, bank fraud, aggravated identify theft, and false testimony under oath. The allegations were based in relevant part on the alleged embezzlement of client funds belonging to five Avenatti clients between January 2015 and March 2019. None of those clients alleged to be victims in the Central District of California ("CDC") Indictment were Victim 1 as alleged in this Indictment.

AG specifically reviewed bank statements, QuickBooks records for Avenatti's law firm entities, settlement agreements, client payments specific to the five victim clients, and other materials relevant to the allegations in the CDCA matter. AG prepared reports and analyses specifically geared towards the payments made (or lack or payments made) by Avenatti entities to those victim clients. Neither John Drum, nor anyone at AG, have reviewed financial records with an eye towards the allegations in this present matter or Victim 1, provided any analyses, or prepared any reports in connection with Victim 1 as identified in the Indictment in this matter.

Despite all of this, undersigned counsel negotiated in good faith with Avenatti to limit the parameters of his subpoena. As previously outlined in undersigned counsel's response letter to the court (Dkt. No. 337), two days after willingly accepting service on behalf of Mr. Drum, on January 14, 2022, undersigned counsel spoke telephonically with Andrew Dalack, Robert Baum, and Investigator Anna Finkel, and later that day again with Mr. Dalack, concerning the subpoena and how the parties might come to a mutually agreeable resolution. That same day, undersigned counsel also filed a notice of appearance in this matter for purposes of filing a motion to quash should counsel and Avenatti be unable to reach a resolution. (See. Dkt. No. 250.)



Avenatti's counsel explained the reason for the issuance of the subpoena and what they sought as responsive. Undersigned counsel expressed concerns with the requests as made, specifically noting that the requested documents were likely not admissible, that production of communications would be unduly oppressive and burdensome, and that Avenatti could, and already has, obtained the documents from the USAO-CDC. Undersigned counsel indicated that she was prepared to file a motion to quash pursuant to *Nixon* if the parties could not reach agreement.

Acting in good faith, undersigned counsel proposed a negotiated resolution to the subpoena subject to approval by the client, Mr. Drum and Analysis Group as follows: Counsel proposed that Mr. Drum would provide to Avenatti the same documents he provided to the USAO-CDC but would not provide any requested communications. Undersigned counsel explained that production of these documents would require sufficient lead time and that production of communications would be too burdensome and oppressive. In response, Mr. Dalack stated that he believed to an "80%" certainty that the proposal would be an acceptable resolution to the subpoena.

On January 16, 2022, undersigned counsel again spoke with Mr. Dalack. In this call, counsel indicated she had approval from her client to offer the following negotiated resolution to the subpoena: (1) Mr. Drum would provide Avenatti the same documents he provided to the USAO-CDC after giving the USAO-CDC an opportunity to object to the production as attorney work product; (2) Counsel would be inclined to make Mr. Drum available for interview by Avenatti and his legal team; (3) Mr. Drum would be available to testify with proper notice if, after interviewing Mr. Drum, Avenatti still wished to call him as a witness; and (4) Mr. Drum would not provide any communications. At the conclusion of this call, Mr. Dalack stated he was "99%" sure his client would agree to this negotiated resolution to the subpoena, and he would call counsel back to confirm.

Neither Mr. Dalack nor anyone from the Avenatti team ever called back. Neither did he or anyone else email, text, or write a letter. Not hearing back from Mr. Dalack or anyone from the Avenatti team, counsel reasonably assumed that Avenatti no longer wished to pursue the subpoena. Instead, on the eve of Avenatti's presentation of his defense, Avenatti moved this Court for an Order compelling the testimony of Mr. Drum and requested that he be held in contempt. (Dkt. No. 336.)

Avenatti understands Mr. Drum lives and works in Denver, Colorado and could not, under any circumstances, appear before this Court on a moment's notice. Avenatti also understands - because undersigned counsel already represented to his team - that production of the requested



records would take significant lead time because AG would need to cull and review tens of thousands of communications sought in Request 1 and allow the USAO-CDC an ample opportunity to object to production of the analyses as attorney work product (a privilege AG cannot itself waive) sought in Request 2. Finally, Avenatti also understands that undersigned counsel engaged in good faith negotiations to resolve the subpoena and that it was Avenatti who failed to either accept or reject the proposed resolution. Instead, Avenatti did nothing for more than two weeks.

## II.    LEGAL STANDARD

A Rule 17 subpoena is invalid if compliance "would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). It is "not intended to provide [a] means of discovery" for criminal cases. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). Nor is it an "investigatory tool" or a "fishing expedition to see what may turn up." *United States v. Pereira*, 353 F. Supp. 3d 158, 160 (D.P.R. 2019); *Bowman*, 341 U.S. at 221.

The Supreme Court articulated the standard to require production of documents pursuant to Rule 17 as follows: the party seeking production must show "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699 (1974); *see also United States v. Skelos*, 988 F.3d 645, 661 (2d Cir. 2021) (reciting *Nixon* standard as the showing required for a subpoena to comport with Rule 17); *see also United States v. Tagliaferro*, 2021 WL 980004, at *3 (S.D.N.Y. Mar. 16, 2021) (quashing subpoena that did not comport with *Nixon* standard). In order to satisfy this standard, the moving party must "clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon*, 418 U.S. at 700. The party seeking the production of documents bears the burden to clear each of these three hurdles. *See Skelos*, 988 F.3d at 661.

Further this Court has discretion to quash a subpoena for testimony served pursuant to Fed. R. Crim. P. 17(a). *See generally United States v. Khan*, No. 06-cr-255 (DLI), 2009 WL 152582 (E.D.N.Y. Jan. 20, 2009) (addressing motion to quash subpoena issued pursuant to Rule 17 of the Federal Rules of Criminal Procedure compelling testimony from government employees). When faced with a challenge to a subpoena, a court may apply the same standard to Rule 17(a) subpoenas for testimony as they apply to Rule 17(c) subpoenas for documents. *See*



*Stern v. U.S. Dist. Ct. D. Mass.*, 214 F.3d 4, 17 (1st Cir. 2000) ("Although Rule 17(a), which governs . . . subpoenas [for testimony], does not provide explicitly for quash or modification, courts routinely have entertained motions seeking such relief and decided them by reference to comparable principles.").

### III.    ARGUMENT

Avenatti was indicted in May 2019. (Dkt. No. 1.) He has had over two and half years to prepare his defense. Despite this, only two weeks before his trial was set to commence, Avenatti served AG – a company who has played no part whatsoever in this trial or its preparations – with an overly broad and oppressive subpoena for records which could take months to comb through, identify and redact as needed; for records the Defendant already possesses; and for personal presence at trial. Despite this, undersigned counsel engaged in good-faith negotiations with Avenatti. Counsel was willing to produce certain records and even make Mr. Drum available for an interview. Avenatti has had ample opportunity to continue in good-faith negotiations with undersigned counsel or to timely reject those negotiations. Avenatti chose to do neither. Instead, he has waited until it was time to call his witnesses to compel Mr. Drum's testimony and production of documents. The burden of production and of testimony is therefore especially pronounced and should be taken into consideration when weighing the *Nixon* factors outlined below. Fed. R. Crim. P. 17(c)(2).

(1) <u>Relevance</u>

Avenatti's subpoena seeks testimony and analyses not relevant to the matter before this Court. Specifically, Avenatti seeks the testimony of John Drum, a consultant hired in a different case, communications and documentary analyses applicable to a different set of facts impacting entirely different victims, that have no relevance to the matters before this Court or the consideration of facts by a jury. In addition, the time periods at issue in the CDC matter and SDNY matter are not the same. In the CDC matter, the financial analyses comprised a time period beginning in January 2015 and ending March 2019. In the SDNY matter, the relevant time period begins January 2018 and ends May 2019. The volume of material irrelevant to the issues before this Court comprise records spanning more than three years. *Nixon*, 418 U.S. at 710 (relevance as one of three factors a moving party must satisfy in order to compel production). Most important, the analyses sought in Request 2 are summaries of Avenatti's financials as they relate to the five victim clients in the CDC matter – not Victim 1 in the SDNY matter. Since AG's data review was for the purpose of determining to what extent the victim clients in the CDC matter were cheated out of their rightful settlement proceeds, both Mr. Drum's testimony



and the categories of items requested by Avenatti by their very nature have no relevance to the allegations concerning Victim 1. Finally, and of perhaps greatest significance, AG did not analyze the financial health of the Avenatti entities. AG identified only inflows into the Avenatti entities and outflows directly to Avenatti.

Further, Request 2 (analyses) seeks from AG analyses that Avenatti already has in his possession. The USAO-CDC "produced an initial draft of the summary charts on March 1, 2020, and produced updated drafts of the summary charts on May 26, 2020." (Ex. B, Gov. Opp. at 7, fn. 1, *United States v. Avenatti*, Case No. 19-cr-00061 (C.D.C.A.) (Dkt. No. 299). Subsequently, Judge Selna of the CDC ordered the complete production of and USAO-CDC produced to Avenatti the same AG analyses Avenatti requests in his subpoena. (Ex C, Avenatti December 2, 2021 letter (relevant portions highlighted).) Additionally, as to Request 1, the USAO-CDC has already produced the emails between Mr. Drum and the USAO-CDC as *Jencks* which are the only communications which could somehow be perceived as relevant. (Ex. D, Excerpt of 08.13.2021 Trial Transcript at 5, 82 (annotated), *United States v. Avenatti*, Case No. 19-cr-00061 (C.D.C.A.).) The burden to AG therefore cannot be justified as the requested records are not only otherwise procurable but have already been procured by Avenatti in another criminal matter. *Nixon*, 418 U.S. at 699. Requesting that AG drop everything to produce the same records once again is both unreasonable and oppressive. Fed. R. Crim. P. 17(c)(2).

Finally, in an abundance of caution, AG would need to obtain the consent of the USAO-CDC before it produced the analyses sought in Request 2 because those analyses were prepared for USAO-CDC counsel in anticipation of litigation and thus counsel for the government should be given an opportunity to assert any work product privileges. Fed. R. Civ. P. § 26 (b)(3).

(2) Admissibility

Further tipping against production, Request 1 (communications) would be considered hearsay to which no readily apparent exception would apply making their admissibility in trial unlikely. *Nixon*, 418 U.S. at 699 (admissibility is one of three factors a moving party must satisfy in order to compel production); Fed. R. Evid. §801. *See also United States v. Louis*, No. 04-203, 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005) (holding that the purpose of a 17(c) subpoena is "trial-focused" and may be used "only to obtain materials admissible as evidence at trial"). Even if Avenatti is seeking these communications for impeachment purposes, which it does not make sense that he is because his request is for six different individuals' communications even though only one has been called to testify, subpoenaing evidence to impeach a witness is "insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701-02; *see also see also United*



*States v. Weissman*, No. 01 CR. 529 (BSJ), 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) ("several cases articulate an absolute prohibition on the use of a Rule 17(c) subpoena solely for impeachment purposes."); *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) ("Courts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment.").

Avenatti also cannot substantiate the admissibility of the analyses sought in Request 2 nor Mr. Drum's testimony. Since the analyses prepared by AG to which Mr. Drum would testify encompass a time period not relevant to the allegations here (January 2015 to December 2017) and focus specifically on Avenatti's theft from the five victims identified in the CDC matter, neither the analyses nor Mr. Drum's testimony are relevant and only relevant evidence is admissible at trial. Fed. R. Evid. § 401.

<u>Specificity</u>

To satisfy the specificity prong under *Nixon*, the moving party "must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hope that something useful will turn up." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 512-13 (S.D.N.Y. 2013) (internal citations omitted) (finding that the defendant's request for "any and all writings and records" related to police contacts with a witness was "'unreasonable or oppressive' as defined by Rule 17(c)(2) and Nixon"). Request 1 expects AG to search through six different people's communications over a 17-month period for any mention of finances which is nothing more than a "hope" – a shot in the dark – that "something useful might turn up." *Id.* Based on a preliminary data review, the number of potentially relevant communications AG would be required to search through is ***close to 50,000.***

Two years ago, Judge Gardephe quashed Avenatti's similar Rule 17 subpoenas to third parties for the same sort of fishing expeditions that Avenatti engages in here, holding that "[b]lanket requests of this sort violate the specificity requirement set forth in Nixon, which bars 'fishing expeditions to see what may turn up.'" *United States v. Avenatti*, No. (S1) 19 CR. 373 (PGG, 2020 WL 86768, at *6 (S.D.N.Y. Jan. 6, 2020) (*citing United States v. Libby*, 432 F. Supp. 2d 26, 32 (D.D.C. 2006); *see also United States v. Avenatti*, No. S119CR373PGG, 2020 WL 508682, at *5 (S.D.N.Y. Jan. 31, 2020) (holding that "[i]n seeking all communications that reference Avenatti over a nine-month period following Avenatti's March 25, 2019 arrest, sweeps too broadly. His request has the earmarks of a "fishing expedition" premised on a mere hope that something useful will turn up." (internal citations omitted).)



Similarly, here, demanding that AG conduct massive searches spanning multiple platforms for all financially related communications about Avenatti to "see [if it] turn[s] up" some "potential" evidence is the exact fishing expedition that was rejected by Judge Gardephe (and by the Supreme Court). *Bowman Dairy*. 341 U.S. at 221 (invalidating a Rule 17(c) subpoena because it was "not intended to produce evidentiary material but [was] merely a fishing expedition to see what may turn up"). Avenatti has provided no specificity whatsoever as to what exactly he is looking for or what he expects to find. Nor has Avenatti explained how his purported need for these communications outweighs the unreasonable and oppressive burden, both in terms of time and money, that would be imposed on AG to search for, identify, potentially redact and produce the communications sought – especially in a moment's notice. *See* 418 U.S. at 700.

Request 2 likewise fails to articulate with any sort of specificity what exactly Avenatti seeks to find and "sweeps too broadly[,]…premised on a mere hope that something useful will turn up." *Avenatti*, No. S119CR373PGG, 2020 WL 508682, at \*5. Avenatti should be able to articulate what he expects to find considering the analyses are nothing more than summaries of his own financials. But he hasn't. His document production requests should therefore be quashed. And because Avenatti cannot satisfy the threshold *Nixon* factors, the testimony of Mr. Drum should also likewise not be permitted by this Court.

## IV.    CONCLUSION

For the foregoing reasons, Analysis Group respectfully requests that this Court grant this Motion to Quash Subpoena in a Criminal Case and deny Avenatti's unreasonable request for documents and Mr. Drum's testimony.

Sincerely,
KAPLAN MARINO, P.C.

_____/s/_____
NINA MARINO
Counsel for Third Party Witness
John Drum