**Exhibit C**

LAW OFFICE OF

# BENJAMIN SILVERMAN

224 WEST 30TH ST., SUITE 302
NEW YORK, NY 10001

TEL (212) 203-8074
FAX (646) 843-3938
Benjamin@bsilvermanlaw.com

December 2, 2021

**By ECF**
Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re: *United States v. Michael Avenatti*, 19 Cr. 373 (PGG)

Your Honor:

    On August 24, 2021, after almost six weeks of trial against Michael Avenatti, the Honorable James V. Selna of the United States District Court for the Central District of California (CDCA) found a "*Brady* violation with respect to a very important range of documents relating to the financial affairs of Mr. Avenatti's firm" and declared a mistrial. 10/15/21 Transcript, *United States v. Avenatti*, 19 Cr. 61 (JVS) (C.D.C.A. Oct. 15, 2021), Dkt. 867 at 4. We have since discovered a similar *Brady* violation in this case, one that altered the outcome of the trial and requires a new one.

    The government argued throughout the trial – in its opening and both summations, and through its witness examinations – that Mr. Avenatti was in "desperate" financial condition and that "facing a mountain of debts, [he] saw a light at the end of the tunnel." Trial Transcript (T.) 2127. This supposed "desperation" was a cornerstone of the government's case to establish Mr. Avenatti's motive and intent to extort and defraud.

    Yet, at the same time, the government suppressed analyses by an expert, Mr. John Drum, who it had paid over $600,000, and who concluded (1) that Mr. Avenatti owned and ran a law practice that received hundreds of millions of dollars from 2009-2018 and generated millions of dollars in annual revenues, a practice that Drum described as "a profitable business with large Net Flows" and (2) Mr. Avenatti enjoyed financial circumstances that were far from "desperate." *See* Ex. A (Drum Reports excerpts) at

1144299, 1144320.[1]  The government first revealed these analyses in October 2021 – eighteen months after the verdict was returned in this case, three months after Mr. Avenatti was sentenced, and six weeks after the government's suppression of Brady material led to the mistrial in California.

The suppressed materials powerfully undercut the government's trial theory that Mr. Avenatti acted with intent to extort and defraud. While it told the jury over and over that Mr. Avenatti was "desperate" and had no other way out, it withheld its expert's contrary opinion that Mr. Avenatti's practice was profitable and generated positive cash flow, meaning that he would have been able to generate the cash required to manage his debts without a penny from Nike; thus, the $12 million debt, while appreciable, was manageable given the millions in positive net flows that his firm consistently generated.[2] There is no question that these analyses – directly contradicting the government's trial theory about Mr. Avenatti's motive and intent – are Brady that should have been disclosed before the trial.

We therefore respectfully move for an indicative ruling under Rules 33 and 37(a) addressing the Brady violation and informing the Second Circuit that a new trial is necessary. Although Mr. Avenatti's case is presently on direct appeal, which ordinarily precludes the Court from addressing a Rule 33 motion, see Fed. R. Crim. P. 33(b)(1), the Court is empowered under Rule 37 to assist the Second Circuit by providing an indicative ruling addressing how it would rule if the case were to be remanded. For the reasons set forth herein, the Brady violation warrants a new trial and an indicative ruling is appropriate.

---

[1]  The Drum Reports are filed under seal because the government has designated them as "Sensitive" under the governing protective order. We see no reason why Mr. Avenatti should be disallowed from publicly filing the government's analyses of his own finances, but we nonetheless respectfully file the Drum Reports under seal to comply with the government's designation.

[2]  Included among the materials were spreadsheets showing Mr. Avenatti's firm received over $250 million during the years 2011 to 2018, with some years totaling more than $40 million in cash inflow. Ex. A at 1144346-1144353, 114420-114427.

Hon. Paul G. Gardephe
December 2, 2021
Page 3

## I.    **John Drum was retained by the government in February 2019. His relevant analyses were sent to prosecutors on a rolling basis throughout 2019, but they were suppressed until two months ago.**

The government retained John Drum in February 2019 to examine Mr. Avenatti's and his firms' finances.[3] It ultimately paid him over $640,000 for his reports and analyses. Ex. B (8/12 transcript excerpts) at 52-53. Drum produced detailed charts and graphs that he provided to the government in 2019, well in advance of this case's January and February 2020 trial. The government did not, however, even disclose that it retained Drum until March 1, 2020, two weeks after it secured Mr. Avenatti's conviction in this case. And that disclosure was in the California case, not this one.

Drum ultimately testified for the government at Mr. Avenatti's July/August 2021 trial in CDCA. Under cross-examination, he disclosed for the first time that he had over two years of written communications between him and the government that had not been produced as required. *See* Motion for Mistrial, *United States v. Avenatti*, No. 19 Cr. 61 (JVS) (C.D.C.A. Aug. 14, 2021), Dkt. 705 at 4-5. When Mr. Avenatti raised this matter to the Court, the government claimed – falsely – that it had "virtually nothing" in its files from Drum, while simultaneously asserting that his materials were protected by the work product doctrine even though the Supreme Court established 45 years before that work product must be produced if it is covered by the Jencks Act, *Goldberg v. United States*, 425 U.S. 94 (1976). Ex. C (8/13 transcript excerpts) at 5. Mr. Avenatti, in turn, filed a motion to strike the Drum testimony and for a mistrial. *See* Motion for Mistrial, *United States v. Avenatti*, No. 19 Cr. 61 (JVS) (C.D.C.A. Aug. 14, 2021), Dkt. 705 at 4-5.

On August 15, the government filed 389 pages of undisclosed Drum documents for *in camera* review. *See* Ex. D. The next day, the defense received an email from a government lawyer stating: "Per the Court's order this afternoon, please see attached our *in camera* filing from this weekend. The Court directed us to file this under seal, which we will be doing shortly, and provide a copy to defendant." *Id.* The production contained hundreds of pages of undisclosed *Brady* and Jencks Act material. The court then deferred

---

[3] The Court has held that the United States Attorney's Offices in the Southern District of New York (SDNY) and the Central District of California (CDCA) were jointly prosecuting Mr. Avenatti at least as to a witness testifying about Mr. Avenatti's finances. *United States v. Avenatti*, 2021 WL 2809919, at *44-45 (S.D.N.Y. July 6, 2021). "The government" is therefore used to describe both offices of the Department of Justice.

Hon. Paul G. Gardephe
December 2, 2021
Page 4

ruling on the mistrial motion pending the government's opposition.

On August 24, the court granted a different mistrial motion relating to the government's failure to produce other financial information relating to Mr. Avenatti's firm, finding "a Brady violation with respect to a very important range of documents relating to the financial affairs of Mr. Avenatti's firm." 10/15/21 Transcript, *United States v. Avenatti*, 19 Cr. 61 (JVS) (C.D.C.A. Oct. 15, 2021), Dkt. 867 at 4 (attached hereto as Exhibit F). During the hearing, the court found that Mr. Avenatti suffered substantial prejudice due to the government's suppression of evidence:

> I find that prejudice occurred here in a number of ways. I think the defendant was denied an opportunity to craft his overall theory of the case and presentation, including the opening statement, by not having this additional material. I believe that the defense was prejudiced in its ability to cross-examine certain witnesses, in particular, Mr. Drum.
>
> At page 5 of his most recent report at Docket 775, Mr. Avenatti outlines a number of things that he could have done had he had the Tabs information, including cross-examination of certain witnesses, ability to question the government's preparation techniques generally, and so on. I won't repeat those.

Ex. E (8/24 transcript excerpts) at 62-63.

In October, following repeated demands by Mr. Avenatti and failures by the government to produce additional Drum materials, the government finally acquiesced and produced the Drum Reports – an additional 443 pages of information, including charts and tables that Drum created for the government throughout 2019. The previously unproduced documents include charts illustrating Mr. Avenatti's substantial net positive cash flow from 2009-2018, which often times was many millions per year, leading Drum to conclude as of September 4, 2019 – four months before this case's trial – that Mr. Avenatti's firm "is a profitable business, with large Net Flows . . ." Ex. A at 1144299.

## II.     The Drum Reports reveal Mr. Avenatti's access to enormous cash flow.

The Drum Reports include charts illustrating that Mr. Avenatti's firm, Eagan Avenatti LLP (EA), netted over $75 million in the five years before Mr. Avenatti was arrested and that almost all of that money was transferred either to Mr. Avenatti

Hon. Paul G. Gardephe
December 2, 2021
Page 5

personally or to entities under his direct control.[4] Ex. A at 1144299, 1144399. One chart illustrates that EA had net cash flow of over $20 million annually from 2016 through 2018.

## III. The Drum Reports undercut the government's trial argument about Mr. Avenatti's motive and intent.

The Drum Reports contradict the government's core argument to the jury in this case that Mr. Avenatti acted with intent to extort and defraud. The government argued that Mr. Avenatti had to extort Nike because he was mired in debt, desperately seeking $12 million to cover expenses, with no way out. T. 2166. It told the jury during its opening that Mr. Avenatti extorted and defrauded others because "the scheme stood to make him the very millions he needed." T. 151 The government claimed the jury would "learn how desperate the defendant was for money at the time he committed these offenses" because of "the debts the defendant owed, many millions of dollars." T. 153.

It told the jury in summation that Mr. Avenatti was "[d]esperately in need of money," in "desperate times" and therefore approached Nike "to line his pockets." T. 2180, 2186-2187. It made this a centerpiece of its summation, telling the jury:

> And that is why we are here today. Because Michael Avenatti, facing a mountain of debts, saw a light at the end of the tunnel.

T. 2127

It then argued in its rebuttal summation that Mr. Avenatti faced "desperate times" and was "desperately in need of money – and, by the way that's undisputed." T. 2280, 2286-2287.

But it knew that the undisclosed Drum Reports indicated just the opposite – that Mr. Avenatti's practice had a history of positive cash flow, thus easily enabling him to manage these debts and establishing a state of mind consistent with this fact.

The government similarly argued in an *in limine* motion that if Mr. Avenatti were

---

[4] At all relevant times, Mr. Avenatti owned between 75-100% of his law practice and generated nearly all of the firm's business and revenues. EA was an established firm co-founded in 2007.

Hon. Paul G. Gardephe
December 2, 2021
Page  6


to testify, cross examination about his finances would be vital to proving his criminal intent:

> [I]t is notable that, to date, the defendant has repeatedly – and falsely – suggested to the jury, through the cross-examination of others, that at the relevant time, he had easy access to substantial sums of money. . . . [I]t is an entirely proper subject for cross-examination, including with respect to contemporaneous debts not in evidence, because these facts rebut any suggestion of an innocent explanation for the defendant's conduct.

Dkt. 252 at 3. Yet while the government derided as "false" Mr. Avenatti's claims that he was able to manage his debts and claimed that Mr. Avenatti had no other way out, it suppressed its own expert's reports and graphs concluding that Mr. Avenatti's practice generated enormous annual cash flow sufficient to manage even $12 million in debts.

The Court was persuaded by the government's argument and, accordingly, ruled that Mr. Avenatti could be cross examined about his finances if he testified:

> [E]vidence of Mr. Avenatti's desperate financial condition – the more than $11 million in debt he had accrued in the months immediately preceding March 2019 – is relevant to his motive for committing the charged offenses. As I have ruled multiple times, evidence of Mr. Avenatti's desperate financial condition – the more than $11 million in debt he had accrued in the months immediately preceding March 2019 – is relevant to his motive for committing the charged offenses. Indeed, the testimony of his office manager – Judy Regnier – indicates that in [a] conversation with her, Mr. Avenatti linked his allegedly criminal activity in March 2019 with his desire to "clear the decks" of his debt.

T. 1821-1822 (internal citations omitted). At the same time the government persuaded the Court that Mr. Avenatti's situation was "desperate" – implying that his debts were substantially greater than he could reasonably be expected to repay or manage – it kept to itself Drum's $640,000 charts and analyses revealing just the opposite.

The Drum Reports do not minimize Mr. Avenatti's debts; but they make clear that the cash flow that he received from his law practice prior to his indictments was

Hon. Paul G. Gardephe
December 2, 2021
Page 7

sufficient to manage them and that Mr. Avenatti was hardly in "desperate" shape or lacking means to pay his debts without extorting or defrauding Nike. Drum's analyses undermine the cornerstone of the government's argument about Mr. Avenatti's motive and intent when he approached Nike.

## IV.     The Court should issue an indicative ruling providing that a new trial would be ordered under Rule 33 if this case is remanded.

### A.     The remedy for material *Brady* violations is a new trial.

"The government has a duty to disclose evidence favorable to the accused when it is material to guilt or punishment." *United States v. Avenatti*, 2021 WL 2809919, at *41 (S.D.N.Y. July 6, 2021) (Gardephe, J.) (quoting *United States v. Madori*, 419 F.3d 159, 169 (2d Cir. 2005)). A new trial should be granted under Rule 33 when the government violates *Brady v. Maryland*, 373 U.S. 83, 87 (1963) where (1) the government engaged in "suppression" of evidence that (2) is favorable to defendant and (3) the evidence is material. *Moore v. Illinois*, 408 U.S. 786, 794–95 (1972); *United States v. Payne*, 63 F.3d 1200, 1208 (2d. Cir.1995). The government has an affirmative duty to disclose exculpatory evidence known to it even absent a specific request. *United States v. Agurs*, 427 U.S. 97, 108–110 (1976); *United States v. Bagley*, 473 U.S. 667, 682 (1985).). A Rule 33 motion is appropriate in "the most extraordinary cases," *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001), like the instant one in which the government suppressed expert analyses directly undercutting its jury argument.

### B.     The Court is empowered to issue an indicative, or advisory, ruling while the appeal is pending.

Generally, a Rule 33 motion cannot be granted while an appeal is pending. Fed. R. App. P. 33(b)(1). Rule 37, however, provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a).[5]

---

[5] Even absent an indicative ruling, the Rule 33 motion needs to be filed at this time to be entered within three years of the verdict and therefore timely under Fed R. Crim. P. 33(b)(1).

Hon. Paul G. Gardephe
December 2, 2021
Page 8

    **C.**    **The government suppressed material *Brady* documents and a new trial is necessary.**

    The government suppressed expert analyses that would have pulled the rug out from underneath its trial argument about Mr. Avenatti's state of mind – his motive and intent. The Drum Reports were emailed to government lawyers in May and September 2019 – well in advance of the 2020 trial in this case. Ex. A at 1144299, 1144399. Yet the government did not disclose them until after Mr. Avenatti was sentenced. In the interim, it made trial arguments that were directly contradicted by the undisclosed analyses. It argued to the jury that Mr. Avenatti was in a "desperate" situation because his debt was so large; but the undisclosed Drum Reports reveal that Mr. Avenatti regularly had access to huge sums of positive cash flow. The suppressed evidence is clearly favorable to the defense: it powerfully undercuts the government's argument about Mr. Avenatti's intent and state of mind when he approached Nike.

    Critical charts were emailed to Assistant United States Attorney Julian Andre on May 16, 2019 – seven months before the trial in this case began. Ex. A at 1144272. Other charts were sent to Andre and AUSA Brett Sagel on November 4, 2019. *Id.* at 1144388. Both AUSAs are at the center of the *Brady* violation in California and they were at Saint Andrew's Plaza working on witness prep during the trial in this case and seated at times in the courtroom; they were firmly within the government's trial team. Yet the government told the Court at that time, in the middle of the trial, that Mr. Avenatti lacked "easy access to substantial sums of money." Dkt. 252 at 3. It argued to the jury that his conduct should be viewed through a skeptical lens because he acted out of desperation without any other way to pay his debts. T. 151, 2180, 2186-2187. It knew when making these arguments that its own expert had concluded the opposite was true, but it did not disclose that analysis – a plain *Brady* violation. *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (a prosecutor is "presumed . . . to have knowledge of all information gathered in connection with his office's investigation of the case and indeed has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case.") (internal quotation marks omitted).

    The government did not even provide notice that it had retained Drum until after the trial, even though he had been forwarding his analyses to the government throughout the discovery period in this case. There is therefore no way that counsel could have requested these materials or gained them through due diligence – the defense did not even know that Drum existed until after the trial was over and had no inkling about his

Hon. Paul G. Gardephe
December 2, 2021
Page 9

conclusions about Mr. Avenatti's positive cash flow until after sentence was imposed in July and after the mistrial was declared in the CDCA case in August. *See United States v. Alessi*, 638 F.2d 466, 479 (2d Cir. 1980).

The suppressed evidence is material because it "creates a reasonable doubt that did not otherwise exist." *United States v. Agurs*, 427 U.S. 97, 112 (1976). The government told the jury that Mr. Avenatti's "desperate" situation proved that he acted with criminal intent. T. 151, 2280, 2286-87. It told the Court that evidence that he could not repay his debts was foundational to its proof of intent because it "rebut[ted] any suggestion of an innocent explanation for the defendant's conduct." Dkt 252 at 3. It was a cornerstone of the government's case. Undermining this argument using the government's own $640,000 expert analyses and charts would have been powerful and created strong doubts that were not before the jury. Thus, "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the [trial] would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995).[6]

Moreover, the suppressed evidence affected Mr. Avenatti's decision to testify. The government won an *in limine* ruling permitting cross examination about his financial situation. T. 1821-1822. This would have permitted the government to use their warped presentation of his finances against him at the same time that it withheld information showing the opposite. New trials are necessary when suppressed documents affect a defendant's decision to testify. *United States v. Thomas*, 239 F.3d 163, 168 (2d Cir. 2001) (new trial ordered where government withheld impeachment document until after defendant took the stand); *United States v. Lam Lek Chong*, 544 F.2d 58, 69 (2d Cir. 1976) (new trial unnecessary because defendant could not show that suppressed evidence affected decision to testify).

---

[6] The Supreme Court holds that the materiality test is not a matter of sufficiency and a defendant is not required to show "that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Id*. at 434–35.

Hon. Paul G. Gardephe
December 2, 2021
Page 10


**V.      The Court should re-affirm its *Brady* Order.**

The government's Drum disclosures two months ago demonstrate that it remained in substantial non-compliance with its *Brady* obligations well after this Court's October 30, 2020 *Brady* Order (Dkt. 305) and even after this Court opined that the SDNY and CDCA prosecutors "are components of the same agency – the U.S. Department of Justice" who "engaged in joint and coordinated fact gathering . . . at least as to" a witness called to testify about Mr. Avenatti's finances. *Avenatti*, 2021 WL 2809919, at *45. We of course do not know what other *Brady* material the government possesses but has failed to produce. We therefore respectfully request that the Court re-issue its *Brady* order and admonish the government to comply with its obligations promptly.


**VI.     Conclusion**

For the foregoing reasons, the Court should issue an indicative ruling that a new trial would be ordered if the case is remanded from the Second Circuit.

Respectfully submitted,

/s/ Benjamin Silverman
Benjamin Silverman
*Attorney for Michael Avenatti*

cc: Counsel of record (by ECF)

# Exhibit A

**REDACTED**

# Exhibit B

1          **UNITED STATES DISTRICT COURT**

2     **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

3        **HONORABLE JAMES V. SELNA, U.S. DISTRICT JUDGE**

4

5   UNITED STATES OF AMERICA,          )
                                       )    **CERTIFIED TRANSCRIPT**
6                   Plaintiff,         )
                                       )    Case No.
7          vs.                         )    SACR-19-00061-JVS
                                       )
8   MICHAEL JOHN AVENATTI,             )    **PUBLIC VERSION**
                                       )
9                   Defendant.         )    **TRIAL DAY 19**
                                       )    **VOLUME 2**
10

11

12

13

14

15          REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

16              THURSDAY, AUGUST 12, 2021

17                    1:25 P.M.

18              SANTA ANA, CALIFORNIA

19

20

21

22

23

24          **DEBBIE HINO-SPAAN, CSR 7953, CRR**
            FEDERAL OFFICIAL COURT REPORTER
25          411 WEST 4TH STREET, ROOM 1-053
                SANTA ANA, CA 92701
                dhinospaan@yahoo.com

1          **APPEARANCES OF COUNSEL:**

2

3     **FOR THE PLAINTIFF:**

4          NICOLA T. HANNA
           United States Attorney
5          BY:  BRETT SAGEL
                Assistant United States Attorney
6          411 West 4th Street
           Suite 8000
7          Santa Ana, California 92701
           714-338-3598
8          brett.sagel@usdoj.gov

9          NICOLA T. HANNA
           United States Attorney
10         BY:  ALEXANDER WYMAN
                Assistant United States Attorney
11         312 North Spring Street
           Suite 1100
12         Los Angeles, California 90012
           213-894-2435
13         alex.wyman@usdoj.gov

14    **FOR THE DEFENDANT IN PRO SE:**

15         MICHAEL JOHN AVENATTI, ESQ.

16

      **STANDBY COUNSEL FOR MR. AVENATTI:**
17
           H. DEAN STEWARD LAW OFFICES
18         BY:  H. DEAN STEWARD, ESQ.
           17 Corporate Plaza
19         Suite 254
           Newport Beach, California 92660
20         949-481-4900
           deansteward7777@gmail.com
21

22

23

24

25

**UNITED STATES DISTRICT COURT**

3

```
 1                    I N D E X

 2    WITNESSES                                      PAGE

 3    MICHELLE PHAN, CALLED BY THE GOVERNMENT
          Cross-Examination by Mr. Avenatti (resumed)   10
 4        Redirect Examination by Mr. Sagel             18
          Recross-Examination by Mr. Avenatti           22
 5
      GEFFREY CLARK, CALLED BY THE GOVERNMENT
 6        Direct Examination by Mr. Wyman               24
          Cross-Examination by Mr. Avenatti             31
 7        Redirect Examination by Mr. Wyman             37
          Recross-Examination by Mr. Avenatti           37
 8
      ROBERTO AMENTA, CALLED BY THE GOVERNMENT
 9        Direct Examination by Mr. Wyman               39
          Cross-Examination by Mr. Avenatti             42
10
      JOHN DRUM, CALLED BY THE GOVERNMENT
11        Direct Examination by Mr. Wyman               49

12

13

14

15
                         EXHIBITS
16
                                              WITHDRAWN
17                                   IN          OR
      EXHIBIT                     EVIDENCE    REJECTED
18
      457      Summary Exhibit of Wire          28
19             Transfers in Indictment

20    420-450  Summary Financial Tracing        56
               Analysis documents
21
      456      Summary Financial Tracing        56
22             Analysis

23    384      Statements - EA 2851 -           58
               1.30.2015-3.30.2015
24

25
```

```
 1              You did not have any knowledge of any evidence as to

 2    whether these ten wire transfers constitute any crime.  Am I

 3    correct about that?

 4    A    Correct.

 5    Q    You don't know one way or the other; is that right?

 6    A    Correct.

 7              THE REPORTER:  I'm sorry, can you get closer to the

 8    mic, please.

 9              THE WITNESS:  I'm sorry.  Correct.  My apologies.

10    Q    BY MR. AVENATTI:  You were simply asked to confirm that

11    the ten transfers went through the Fedwire system.  Do I have

12    that correct?

13    A    That's right.

14              MR. AVENATTI:  One moment, Your Honor.

15              Nothing further, Your Honor.  Thank you.

16              MR. WYMAN:  No further questions.

17              THE COURT:  May the witness be excused?

18              THE WITNESS:  Thank you.

19              THE COURT:  No, I'm not asking you.  Hang on a

20    second.

21              May the witness be excused?

22              MR. AVENATTI:  Your Honor, I'm going to reserve the

23    right to recall him, actually.

24              THE COURT:  Sir, you're excused for now but you're

25    subject to recall.
```

02:37PM (line 5)
02:38PM (line 10)
02:38PM (line 15)
02:38PM (line 20)
02:38PM (line 25)

<pre>
  1              THE WITNESS:  Okay.

  2              THE COURT:  Thank you.  You may step down.

  3              MR. WYMAN:  Your Honor, the United States calls John

  4   Drum.

02:39PM 5        THE COURTROOM DEPUTY:  If you can stand behind the

  6   court reporter and raise your right hand.

  7          **JOHN DRUM, GOVERNMENT WITNESS, WAS SWORN**

  8              THE COURTROOM DEPUTY:  If you'll please state and

  9   spell your first and last name.

02:40PM 10       THE WITNESS:  My name is John Drum, J-o-h-n,

 11   D-r-u-m.

 12              THE COURTROOM DEPUTY:  Thank you.

 13              THE COURT:  Mr. Wyman.

 14              MR. WYMAN:  Thank you, Your Honor.

02:40PM 15                     **DIRECT EXAMINATION**

 16   BY MR. WYMAN:

 17   Q    Good afternoon, Mr. Drum.  Where do you work?

 18   A    I work for Analysis Group.

 19   Q    What is Analysis Group?

02:40PM 20   A    Analysis Group is an economic consulting company.  They

 21   perform financial analyses in various settings.

 22   Q    What is your title at Analysis Group?

 23   A    Vice president.

 24   Q    As vice president, what are your general job

02:40PM 25   responsibilities?
</pre>

**UNITED STATES DISTRICT COURT**

1 A  I oversee financial analyses primarily in some sort of

2 dispute setting.

3 Q  Are you regularly hired to conduct financial analysis in

4 connection with litigation?

02:41PM 5 A  Yes.

6 Q  Let's discuss your background and financial analysis.

7 Starting with your educational background, where did you attend

8 college?

9 A  I received undergraduate and graduate degrees from the

02:41PM 10 Ohio State University.

11 Q  And what degrees did you receive?

12 A  Bachelor of Science in Accounting and Finance, and a

13 Master of Accounting.

14 Q  After you received those degrees, did you obtain any

02:41PM 15 professional licenses?

16 A  Yes.

17 Q  Which licenses did you obtain?

18 A  I'm a licensed certified public accountant in Illinois.  I

19 also hold and am designated a Chartered Financial Analyst.

02:41PM 20 Q  When did you obtain those licenses?

21 A  The CPA in 2012, and the CFA in 2013.

22 Q  Do you continue to hold those licenses today?

23 A  Yes.

24 Q  Let's briefly discuss your work history now.  After

02:41PM 25 graduating, where did you work?

```
 1   A     I worked for the Financial Accounting Standards Board,

 2   which is a rulemaking organization that creates accounting

 3   standards.

 4   Q     What was your title there?

 5   A     Postgraduate technical assistant.

 6   Q     And in that role, what type of work did you perform?

 7   A     I assisted the board and the staff in researching and

 8   creating new accounting standards.

 9   Q     How long did you work there?

10   A     One year.

11   Q     After that, where did you work?

12   A     I worked for KPMG.  It's a large public accounting firm.

13   Q     What was your title at KPMG?

14   A     Senior associate.

15   Q     And what kind of work did you do there?

16   A     I assisted companies with complex transactions and how to

17   account for them, as well as perform business and intangible

18   asset valuation services.

19   Q     How long did you work at KPMG?

20   A     Approximately three years.

21   Q     After you left KPMG, where did you go?

22   A     I worked for Analysis Group.

23   Q     And that's where you currently work?

24   A     Yes.

25   Q     What year was it when you started at Analysis Group?
```

```
 1    A     2011.
 2    Q     And in the past ten years, have you held other titles
 3    besides senior vice president or vice president?
 4    A     Yes.
 5    Q     And what other titles -- well, let me ask, how, if at
 6    all, have your job responsibilities changed in the past ten
 7    years?
 8    A     My job responsibilities have evolved from conducting one
 9    aspect of one analysis to overseeing the entirety of many
10    analyses.
11    Q     Sorry about that.
12          Has your job at Analysis Group always involved
13    conducting financial analysis?
14    A     Yes.
15    Q     Over the past ten years, what types of matters have you
16    performed financial analysis on?
17    A     I perform financial analyses in bankruptcy disputes,
18    commercial disputes, contract disputes, regulatory matters,
19    shareholder litigations.
20    Q     Now, were you and your company, Analysis Group, hired by
21    the Government to conduct financial analysis as part of the
22    Government's case against the defendant, Michael Avenatti?
23    A     Yes.
24    Q     And has the -- has Analysis Group been paid approximately
25    $640,000 by the Government?
```

02:43PM 5
02:43PM 10
02:43PM 15
02:44PM 20
02:44PM 25

| | |
|---|---|
| 1 | A     Yes.  We've been approved for approximately 640,000. |
| 2 | Q     Does that payment include work that Analysis Group has |
| 3 | done on other matters as well as this one? |
| 4 | A     Yes. |
| 02:44PM 5 | Q     As part of your work for the Government, were you asked |
| 6 | to analyze financial records related to the defendant's |
| 7 | handling of funds concerning various clients of his? |
| 8 | A     Yes. |
| 9 | Q     Was one of these clients Geoffrey Johnson? |
| 02:44PM 10 | A     Yes. |
| 11 | Q     Was another Alexis Gardner? |
| 12 | A     Yes. |
| 13 | Q     Gregory Barela? |
| 14 | A     Yes. |
| 02:44PM 15 | Q     And Michelle Phan and Long Tran? |
| 16 | A     Yes. |
| 17 | Q     What kinds of records did you review in conducting your |
| 18 | analysis with respect to these clients? |
| 19 | A     I reviewed bank records, QuickBooks data, settlement |
| 02:45PM 20 | agreements primarily. |
| 21 | Q     When you say "QuickBooks data," what is that? |
| 22 | A     QuickBooks is a software used by firms to record |
| 23 | accounting transactions. |
| 24 | Q     And you said you reviewed settlement agreements as well? |
| 02:45PM 25 | A     Yes. |

```
 1   Q     Did you also review fee agreements with the defendant?

 2   A     Yes.

 3   Q     And the materials you reviewed, who provided those to

 4   you?

 5   A     The government.

 6   Q     Now, the records you reviewed, were they voluminous in

 7   nature?

 8   A     They were.

 9   Q     How many pages would you say the bank records spanned,

10   approximately?

11   A     Many thousands of pages.

12   Q     As part of your review of these bank records, did you

13   also review spreadsheets produced by the bank reflecting wire

14   transfers?

15   A     I did.

16   Q     And how many rows would you say those spreadsheets

17   contained?

18   A     Again, thousands.

19   Q     Did it take a significant amount of time to review these

20   records?

21             MR. AVENATTI:  Objection.  Leading.

22             THE COURT:  Overruled.

23             THE WITNESS:  Yes, it took a significant amount of

24   time.

25   Q     BY MR. WYMAN:  Based on your review of these voluminous
```

The time stamps 02:45PM appear at lines 5 and 10, and 02:46PM at lines 15, 20, and 25.

# Exhibit C

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

**HONORABLE JAMES V. SELNA, U.S. DISTRICT JUDGE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **CERTIFIED TRANSCRIPT** |
| Plaintiff, | ) | |
| | ) | Case No. |
| vs. | ) | SACR-19-00061-JVS |
| | ) | |
| MICHAEL JOHN AVENATTI, | ) | |
| | ) | **TRIAL DAY 20** |
| Defendant. | ) | **VOLUME 2** |

REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

FRIDAY, AUGUST 13, 2021

1:27 P.M.

SANTA ANA, CALIFORNIA

**DEBBIE HINO-SPAAN, CSR 7953, CRR**
FEDERAL OFFICIAL COURT REPORTER
411 WEST 4TH STREET, ROOM 1-053
SANTA ANA, CA 92701
dhinospaan@yahoo.com

```
 1                    APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFF:

 4           NICOLA T. HANNA
             United States Attorney
 5           BY:  BRETT SAGEL
                  Assistant United States Attorney
 6           411 West 4th Street
             Suite 8000
 7           Santa Ana, California 92701
             714-338-3598
 8           brett.sagel@usdoj.gov

 9           NICOLA T. HANNA
             United States Attorney
10           BY:  ALEXANDER WYMAN
                  Assistant United States Attorney
11           312 North Spring Street
             Suite 1100
12           Los Angeles, California 90012
             213-894-2435
13           alex.wyman@usdoj.gov

14   FOR THE DEFENDANT IN PRO SE:

15           MICHAEL JOHN AVENATTI, ESQ.

16

17   STANDBY COUNSEL FOR MR. AVENATTI:

18           H. DEAN STEWARD LAW OFFICES
             BY:  H. DEAN STEWARD, ESQ.
18           17 Corporate Plaza
             Suite 254
19           Newport Beach, California 92660
             949-481-4900
20           deansteward7777@gmail.com

21

22

23

24

25
```

3

```
 1                      I N D E X

 2   WITNESSES                                        PAGE

 3   JOHN DRUM, CALLED BY THE GOVERNMENT
         Cross-Examination by Mr. Avenatti (resumed)     7
 4       Redirect-Examination by Mr. Wyman              68
         Recross-Examination by Mr. Avenatti            77
 5

 6   In-camera hearing transcribed in a separate volume  87

 7

 8

 9

10

11

12

13

14

15                          EXHIBITS

16                       (None offered.)

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

4

SANTA ANA, CALIFORNIA; FRIDAY, AUGUST 13, 2021

1:27 P.M.

- - -

01:27PM    (Out of the presence of the jury.)

MR. AVENATTI:  I have an issue to raise before he takes the stand, please.

THE COURT:  Mr. Avenatti.

MR. AVENATTI:  Yes, Your Honor.  Following up on 01:27PM what I raised before the break, I'm entitled to these e-mails and these statements from Mr. Drum.  I was entitled to them before I started my cross-examination.  I'd like them produced immediately, and I would like an adjournment so that I can review them before I continue my cross-examination of Mr. Drum.

01:27PM    During the break we had occasion to look for any case law that provides that an expert called by the Government, that somehow that exempts the Government from complying with 26.2 and *Jencks*.  We can find no such case and no such statute.

I also -- and I'll represent I placed calls to three 01:28PM attorneys with a collective of about 100 years criminal law experience who never heard such a thing.

There's no question that the materials exist.  The witness's testimony could not be more clear.  And none of the information was produced, Your Honor.  I was entitled to that 01:28PM information before I began my cross-examination so I could

```
 1  tailor my cross-examination accordingly.

 2          THE COURT:  No, sir.  You were entitled to it by

 3  statute after he finishes his direct.

 4          MR. AVENATTI:  Yes.  If I misspoke, I apologize,

 5  Your Honor.  I thought I said before I started my

 6  cross-examination.

 7          THE COURT:  All right.

 8          Mr. Wyman.

 9          MR. WYMAN:  Your Honor, over the lunch break we

10  looked for any e-mails of substance relating to his testimony

11  for Mr. Drum.

12          And, again, I haven't had a chance research the

13  issue.  My understanding with an expert is that substantive

14  work product like the exchange of drafts, for example, falls

15  within the work product exception.  But with regard to

16  substantive e-mails, what we were able to find was virtually

17  nothing, and the stuff that we had found was like -- you know,

18  I was asking for the extent of their payment and the breakdown

19  of what that payment was for, and we had copied and pasted that

20  and put that into a disclosure letter to the defense.

21          We're happy to provide in camera what we were able

22  to find, which was, as I said, virtually nothing that I don't

23  think has already been disclosed.  We're happy to provide that

24  in camera to the Court.

25          THE COURT:  Why don't you do that.  We're not going
```

**UNITED STATES DISTRICT COURT**

# Exhibit D



SA19CR00061JVS-In Camera Under Seal Doc.pdf
8 MB

**From: Wyman, Alex (USACAC)** <Alex.Wyman@usdoj.gov>
Date: Mon, Aug 16, 2021 at 2:21 PM
Subject: Avenatti
To: Dean Steward <deansteward7777@gmail.com>, emma hernandez <workingwitheh@gmail.com>
Cc: Sagel, Brett (USACAC) <Brett.Sagel@usdoj.gov>

Dean and Emma,

Per the Court's order this afternoon, please see attached our in camera filing from this weekend. The Court has directed us to file this under seal, which we will be doing shortly, and provide a copy to defendant.

Thanks,

Alex

## Alex Wyman | Assistant United States Attorney

## Major Frauds Section

United States Attorney's Office | Central District of California

312 N. Spring St. | Los Angeles, California  90012
T: 213.894.2435 | Alex.Wyman@usdoj.gov

# Exhibit E

1

                    UNITED STATES DISTRICT COURT

                   CENTRAL DISTRICT OF CALIFORNIA

                         SOUTHERN DIVISION

                             - - -

          THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

     UNITED STATES OF AMERICA,      )CERTIFIED TRANSCRIPT
                        Plaintiff,  )
          vs.                       )
                                    )  SACR-19-00061-JVS
     MICHAEL JOHN AVENATTI,         )
                        Defendant.  )    TRIAL DAY 26
     -----------------------------)

              REPORTER'S TRANSCRIPT OF PROCEEDINGS

                     Santa Ana, California

                       August 24, 2021

                    SHARON A. SEFFENS, RPR
                    United States Courthouse
                    411 West 4th Street, Suite 1-1053
                    Santa Ana, CA  92701
                    (714) 543-0870

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     ALEXANDER WYMAN
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25
```

09:58 **1**     I also think Tabs data would have been of

09:58 **2** assistance to the government even with respect to the two

09:58 **3** other victims, Tran and Phan.

09:58 **4**     MR. AVENATTI:  Your Honor, you said "government"

09:58 **5** the last two times.  Was that purposeful, or did you mean to

09:58 **6** say the "defense"?

09:58 **7**     THE COURT:  I meant to say the defense.

09:58 **8**     MR. AVENATTI:  I'm sorry to interrupt.

09:58 **9**     THE COURT:  Thank you for the correction.

09:58 **10**     **The documents would have been of assistance to the**

09:58 **11** **defense in questioning the appropriate amount that**

09:58 **12** **Mr. Avenatti drew down for himself, even though with respect**

09:58 **13** **to Tran and Phan, no costs were relevant because their fee**

09:59 **14** **contracts simply provided for a straight net percentage out**

09:59 **15** **of the amounts recovered.**

09:59 **16**     I believe that the data would have been useful in

09:59 **17** an overall showing that the government's accounting records,

09:59 **18** the methods of Mr. Drum in particular, weren't accurate.  He

09:59 **19** wasn't accurate in part of his analysis.  I think the jury

09:59 **20** could question the accuracy of his methods and results with

09:59 **21** respect to other clients.

09:59 **22**     It is no answer that the government is not

09:59 **23** required to prove the exact amount that Mr. Avenatti

09:59 **24** misappropriated.  The government put forth a number, and I

09:59 **25** believe the defendant was entitled to challenge that number

09:59 **1** and to show that it was not accurate. It may have shown

09:59 **2** that the amount was appropriated was lesser or greater, or

10:00 **3** it would have put a question mark there, and I think the

10:00 **4** defendant was entitled to have the ability to put that

10:00 **5** question mark there.

10:00 **6** I think the testimony -- the factual presentations

10:00 **7** this morning indicate to me that out of the identified Tabs

10:00 **8** material it would likely have been relevant material to

10:00 **9** assist the defense in its cross-examination.

10:00 **10** Mr. Fitzgerald indicated to me that if the

10:00 **11** additional materials for Tabs and QuickBooks were identified

10:00 **12** as part of the initial process of screening the search

10:00 **13** warrant materials, he would have reviewed these materials,

10:00 **14** and if anything were relevant, he would have passed them on

10:00 **15** to the Prosecution Team. We'll never know the answer to

10:00 **16** that question because it didn't occur. It seems to me given

10:00 **17** the volume of Tabs and the representations I have received

10:00 **18** from the defense this morning that there would have been at

10:01 **19** least some data passed on.

10:01 **20** The question then is is there a violation of

10:01 **21** Brady? I focus on Brady because I think the analysis of

10:01 **22** Brady is sufficient, even though there may be other grounds

10:01 **23** which would call for the government's production of

10:01 **24** materials from the Tabs data at least be identified.

10:01 **25** Brady versus Maryland, 373 U.S. 83-87 (1963),

10:01 **1** requires production of materials that are advantageous to

10:01 **2** the defendant or that tend to call into doubt -- call the

10:01 **3** government's case into doubt.

10:01 **4** Brady establishes three requirements: One, the

10:01 **5** evidence at issue must be favorable to the accused. I find

10:02 **6** that the Tabs and other accounting data that was not

10:02 **7** produced would have been favorable to the defendant.

10:02 **8** Two, the evidence must have been suppressed by the

10:02 **9** government willfully or inadvertently. I find that it was,

10:02 **10** quote, "suppressed," although I don't think that's the

10:02 **11** appropriate word in the context. But it wasn't produced

10:02 **12** through inadvertence and a failure to appreciate what was

10:02 **13** there.

10:02 **14** I find no willful conduct on the part of the

10:02 **15** Prosecution Team. I find no willful conduct on the part of

10:02 **16** the Privilege Review Team. I think the Taint Team has

10:02 **17** fairly acknowledged that there may have been some

10:02 **18** shortcomings in the review process.

10:02 **19** Finally, there must be a finding that prejudice

10:03 **20** must have ensued. I find that prejudice occurred here in a

10:03 **21** number of ways. I think the defendant was denied an

10:03 **22** opportunity to craft his overall theory of the case and

10:03 **23** presentation, including the opening statement, by not having

10:03 **24** this additional material. I believe that the defense was

10:03 **25** prejudiced in its ability to cross-examine certain

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:03 **1** witnesses, in particular, Mr. Drum.

10:03 **2** At page 5 of his most recent report at Docket 775,

10:03 **3** Mr. Avenatti outlines a number of things that he could have

10:04 **4** done had he had the Tabs information, including

10:04 **5** cross-examination of certain witnesses, ability to question

10:04 **6** the government's preparation techniques generally, and so

10:04 **7** on. I won't repeat those.

10:04 **8** The question is what remedy should I adopt? I do

10:04 **9** not believe that an adjournment is an appropriate remedy.

10:04 **10** First of all, an adjournment would not solve the problem

10:04 **11** that Mr. Avenatti didn't have this material at the front end

10:04 **12** to craft his theory of the case, his opening statement, and

10:04 **13** examining of the witnesses. He might have done something

10:04 **14** different, or he might not have done something different if

10:04 **15** he had this data. The point is he didn't have the

10:04 **16** opportunity to make that choice.

10:04 **17** I believe that any adjournment wouldn't be a

10:04 **18** short-lived affair but would require a significant amount of

10:05 **19** time (a) to complete the production to the defendant of the

10:05 **20** newly described materials and then allow the defendant

10:05 **21** adequate time to assimilate and craft a strategy based on

10:05 **22** the newly produced material. I am not prepared to say that

10:05 **23** that would be a short-lived effort. Given the volume of new

10:05 **24** material, it seems unlikely that effort would be

10:05 **25** short-lived.

```
10:05   1        The representation to the jury was our best
10:05   2   estimate the case would be concluded by August 20.
10:05   3   Obviously, we are past that date, and the defense is still
10:05   4   on the defense's case-in-chief.  I do not believe it would
10:05   5   be appropriate to hold the jury for an extended period of
10:05   6   time to allow the defense adequate time to assimilate and
10:05   7   prepare in light of the newly produced material.
10:06   8        I want to go back and emphasize two points.  I
10:06   9   repeat my findings that I find no misconduct on the part of
10:06  10   the Prosecution Team and no misconduct on the part of the
10:06  11   Taint Team.  Shortcomings there may have been, but I find no
10:06  12   misconduct, intentional or otherwise, on the part of the
10:06  13   Taint Team in carrying out its activity.
10:06  14        For all those reasons, I grant a new trial.  The
10:06  15   matter will proceed to trial on October 12, 2021, at 8:30
10:06  16   a.m.  That's the current date that we ought to have in place
10:06  17   our severed portion of the case.  I set a status conference
10:06  18   for September 27, 2021, at 9:00 a.m.  I set a further
10:07  19   interim status conference for September 2 at 8:30 a.m. to
10:07  20   discuss the overall timing of the case.
10:07  21        In terms of a retrial, you should be aware that I
10:07  22   will be away from October 17th to October 24th.  If we
10:07  23   proceed on October 12th on the victim counts, we could
10:07  24   impanel a jury I believe the week before I leave and then
10:07  25   start the trial probably the week I come back.  I want to
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:07 **1** give the parties an opportunity to assimilate the schedule

10:07 **2** that I have put out there and come back to me with their

10:07 **3** thoughts.  That's what we will do on September 2.

10:07 **4** All pending motions are denied or moot at this

10:07 **5** time.

10:07 **6** **Anything further?**

10:08 **7** MR. AVENATTI:  Your Honor, from the defense, I

10:08 **8** believe that the Motion for Mistrial should be with

10:08 **9** prejudice.  I have heard Your Honor's directives this

10:08 **10** morning, but I would like to have an opportunity to at least

10:08 **11** submit briefing for consideration by the Court on that point

10:08 **12** once I have had a chance to look at some of the data.  So

10:08 **13** what I would like to do is collect my thoughts and then

10:08 **14** propose a briefing schedule to the government and to the

10:08 **15** Court.

10:08 **16** THE COURT:  That's fine.  I think we would like to

10:08 **17** resolve that issue.  The strong presumption is that when a

10:08 **18** mistrial is granted at the request of the defendant, the

10:08 **19** grant of a new trial is proper.  But I will afford you an

10:08 **20** opportunity to move for whatever relief you want.  I don't

10:08 **21** think we should do it on an expedited basis, but we

10:08 **22** shouldn't drag it out either.

10:08 **23** MR. AVENATTI:  I agree, Your Honor.  I'm going to

10:08 **24** need some time to look at the data, but I agree that it's

10:09 **25** going to have to be dealt with on a measured approach.

66

| | | |
|---|---|---|
| 10:09 | 1 | THE COURT: Anything further from the government? |
| 10:09 | 2 | MR. SAGEL: No, Your Honor. |
| 10:09 | 3 | THE COURT: Okay, we will be adjourned. Thank |
| 10:09 | 4 | you. |
| 10:09 | 5 | MR. AVENATTI: Your Honor, are you bringing the |
| 10:09 | 6 | jurors in? Are they here? |
| 10:09 | 7 | THE COURT: No, they're not here. I plan to send |
| 10:09 | 8 | them the usual certificate for service, and I plan to send |
| 10:09 | 9 | each one a personal letter indicating that I concluded the |
| 10:09 | 10 | trial and thanking them for their service. |
| 10:09 | 11 | MR. AVENATTI: Understood. |
| 10:09 | 12 | THE COURT: I'm not going to get into the merits |
| 10:09 | 13 | of anything. They put in a significant amount of time, and |
| 10:09 | 14 | I watched these folks. By and large, they were on time |
| 10:09 | 15 | every day. They were diligent. They were watching what was |
| 10:09 | 16 | going on. I think that the parties' efforts to help the |
| 10:09 | 17 | Court in seating a fair and impartial jury were achieved. |
| 10:09 | 18 | They were diligent, and they should be told that. |
| 10:10 | 19 | Thank you. |
| 10:10 | 20 | **(Whereupon, the proceedings were concluded.)** |
| 10:10 | 21 | *     *     * |
| 10:10 | 22 | |
| 10:10 | 23 | |
| 10:10 | 24 | |
| 10:10 | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:10
10:10
10:10
10:10
10:10
10:10
10:10
10:10
10:10
10:10
10:10
10:10
10:10
10:10
10:10
10:10
10:10
10:10
10:10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**CERTIFICATE**


            I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  August 25, 2021



                        /s/   Sharon A. Seffens  8/25/21
                        _____
                        SHARON A. SEFFENS, U.S. COURT REPORTER

# Exhibit F

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

```
UNITED STATES OF AMERICA,      )CERTIFIED TRANSCRIPT
                    Plaintiff, )
      vs.                      )
                               )  SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,         )
                    Defendant. )
-----------------------------)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

October 15, 2021

```
            SHARON A. SEFFENS, RPR
            United States Courthouse
            411 West 4th Street, Suite 1-1053
            Santa Ana, CA  92701
            (714) 543-0870
```

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     ALEXANDER WYMAN
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | SANTA ANA, CALIFORNIA; FRIDAY, OCTOBER 15, 2021; 9:01 A.M. |
| 2 | THE CLERK:  Calling Item No. 3, SACR-19-00061-JVS, |
| 3 | United States of America versus Michael John Avenatti. |
| 4 | Appearances on behalf of the government, please. |
| 5 | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel |
| 6 | on behalf of the United States, and on the phone is AUSA |
| 7 | Alex Wyman. |
| 8 | THE COURT:  Good morning. |
| 9 | THE CLERK:  Appearance on behalf of the defendant, |
| 10 | please. |
| 11 | MR. AVENATTI:  Good morning, Your Honor. |
| 12 | defendant Michael Avenatti present by telephone, along with |
| 13 | Ms. Cummings-Cefali, and my understanding is that Advisory |
| 14 | Counsel, Mr. Dean Steward, is there in the courtroom. |
| 15 | THE COURT:  Good morning. |
| 16 | MR. STEWARD:  I'm here, Your Honor.  Dean Steward, |
| 17 | Advisory Counsel, for Mr. Avenatti. |
| 18 | THE COURT:  Good morning. |
| 19 | I received the parties' briefs with respect to the |
| 20 | issue of the Court's continuing jurisdiction in light of the |
| 21 | Notice of Appeal that Mr. Avenatti has filed. |
| 22 | I also note that the government has brought in the |
| 23 | Ninth Circuit a Motion for Dismissal of Summary Affirmance. |
| 24 | It appears there is going to be a fairly quick briefing |
| 25 | schedule on that motion. |

1    As far as my role as district judge, I find that I

2  have been diversed of jurisdiction by virtue of the Notice

3  of Appeal.  Double jeopardy is a unique issue that makes it

4  appropriate for an interlocutory appeal, and it's fairly

5  clear in the case law and not really contested.  The only

6  exception to that is if the District Court determines that

7  the appeal is frivolous.

8    I do not make such a finding as part of entering

9  my ruling on the double jeopardy motion, and I'm unable to

10  make such a finding now.  I found a Brady violation with

11  respect to a very important range of documents relating to

12  the financial affairs of Mr. Avenatti's firm.  I think that

13  conclusion alone would indicate that the appeal is not

14  frivolous.

15    Mr. Avenatti raises a number of other issues

16  besides the financial data relative to his argument that the

17  Court should not exercise its discretion to conduct a new

18  trial.

19    I think there is also a substantial question as to

20  with what the term "goading" means.  I found that the

21  government did not take any action to provoke the defendant

22  into seeking a mistrial.  Other courts have interpreted the

23  term "goading" more extensively such that an intent to

24  provoke a Motion for Mistrial is not required to establish

25  "goading."

1          Accordingly, given the Brady violation that the

2    Court found and the somewhat undeterminate definition of the

3    term "goading," I find that the appeal is not frivolous.

4    For that reason, the Court vacates the November 2 trial

5    date.  The Court also vacates all pending motions to be

6    renoticed once jurisdiction is restored to this Court if

7    jurisdiction is restored to this Court.

8          I believe that I still have jurisdiction to

9    consider nonsubstantive matters that do not affect in any

10   way the Notice of Appeal and the issues raised by

11   Mr. Avenatti on appeal.  Among those ministerial matters is

12   continued document production.

13         I had asked for a report yesterday, Thursday, the

14   14th, by noon with respect to what TABS or QuickBooks

15   material with respect to the four or five individual clients

16   appeared in the production and subsequent to August 23.  I

17   received a day early -- maybe it was on time.  I received a

18   response from Mr. Avenatti filed in-camera.  I also received

19   an application from the government to continue the date for

20   its response.

21         I grant the government a continuance of 30 days to

22   prepare its response.  I'm prepared to address the rest of

23   the government's ex parte application with regard to its

24   Rule 17 subpoena.

25         First, I will ask is there any objection on