M1K8AVE1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                            19 Cr. 374 (JMF)

MICHAEL AVENATTI,

            Defendant.
                                Trial
------------------------------x

                                    New York, N.Y.
                                    January 20, 2022
                                    9:15 a.m.

Before:

                 HON. JESSE M. FURMAN,

                                    District Judge
                                    -and a Jury-

                     APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  MATTHEW D. PODOLSKY
     ROBERT B. SOBELMAN
     ANDREW A. ROHRBACH
     Assistant United States Attorneys

DAVID E. PATTON
     Federal Defenders of New York, Inc.
     Attorney for Defendant
BY:  ROBERT M. BAUM
     ANDREW J. DALACK
     TAMARA L. GIWA
     Assistant Federal Defenders

Also Present:  Emily Abrams
               Christopher de Grandpre
                Paralegal Specialists
               Juliet Vicari, Paralegal
               DeLeassa Penland, Special Agent

1
2              (Case called)
3              THE DEPUTY CLERK:  Counsel, please state your name for
4    the record.
5              MR. PODOLSKY:  Matthew Podolsky, Robert Sobelman, and
6    Andrew Rohrbach for the government.  With us at counsel table
7    is Special Agent DeLeassa Penland and Paralegal Specialist
8    Christopher de Grandpre.
9              MR. BAUM:  Robert Baum, Tamara Giwa, Andrew Dalack,
10   and our paralegal, Juliet Vicari.
11             THE COURT:  And your client is present I see.
12             Good morning, everyone.
13             All right.  A few housekeeping matters before we head
14   downstairs when they alert us that they are ready.
15             First, there are two jurors who are not going to be
16   here today, both of whom have reported symptoms and therefore
17   are not going to be present.  One is Juror No. 54 and the other
18   is Juror No. 91.  So you can remove them from your list, so we
19   are down to 67 for today's purposes.  I have my fingers
20   crossed.  I am a little concerned given the weather about some
21   jurors, especially those from the northern county, not making
22   it or making it on time.  So we may have to make some decisions
23   on that score, but I am keeping my fingers crossed.
24             Number two, I got a request yesterday, that was then,
25   I gather, withdrawn, from a reporter to attend sidebars during

1  jury selection.  So in light of the fact that it was withdrawn,
2  I have not received any other requests on that score.  So
3  unless you have heard otherwise, I am going to assume that
4  there will be no members of the media at sidebars, and we will
5  proceed accordingly.
6           Having said that, I still don't think we have room for
7  more than one counsel per side.  Again, recognizing that I will
8  give you an opportunity to confer with your co-counsel, you
9  should designate one lawyer from each side to represent you at
10 sidebars.
11          There were two motions filed this morning, unless any
12 has been filed since then.  I entered an order indicating that
13 we would discuss a briefing schedule this morning.  But unless
14 and until I said otherwise, the government should file its
15 responses to each motion tomorrow.  So I will hear from the
16 government on that.  I don't know if counsel conferred about a
17 briefing schedule.  I didn't see any indication in the motions
18 that you had, but in any event.
19          Mr. Podolsky.
20          MR. PODOLSKY:  We did confer.  Candidly, I read the
21 motions, and I think they could just be denied, but we are
22 certainly prepared to put in our papers by midnight tomorrow
23 night.
24          THE COURT:  Very good.  Obviously, if the defense,
25 upon seeing the responses, feels that a reply is necessary, you

1  can make the request, but as of now, I will not allow any
2  replies and I will decide it on the basis of that opposition
3  and the motions.
4       Any other motions that anyone anticipates filing?
5  Obviously, we also have the motion to quash filed by
6  Mr. Brewster and a briefing schedule already set there.  There
7  was also a pro hac vice motion filed by a Nina Marino, on
8  behalf of Analysis Group, care of John Drum.  I sort of assumed
9  that that meant a motion was forthcoming, but no motion has
10 been filed other than the pro hac motion.  I don't know if
11 anyone knows more on that front.
12      Mr. Dalack.
13      MR. DALACK:  With respect to the pro hac motion for
14 Mr. Drum, I don't know -- I communicated with counsel for
15 Mr. Drum, and was aware of her intent to file a motion to
16 quash, but I don't know if one is forthcoming and we are still
17 discussing Mr. Drum's subpoena with his counsel.
18      With respect to motions, Judge, I just want to make
19 the Court aware of this, and I don't have a solution or a
20 suggestion, but I just want to say it for the record.
21      MR. BAUM:  Judge, may we have a moment?
22      THE COURT:  Yes.
23      (Defense confers)
24      MR. DALACK:  Thanks for your indulgence, Judge.
25      We are not asking for any particular remedy now, and I

don't have a solution to propose.  I just wanted to make the Court aware that we have not received the jury selection data.  I just wanted to announce that.  If it comes, we will deal with it, but at this particular point we haven't received it.  I was in touch twice last week with the jury administrator -- I copied all the parties -- and was assured by the jury administrator that they would be in touch when it was ready.  I haven't heard back.  So I just wanted to alert the Court to that fact.

THE COURT:  Have you been in touch with the jury administrator this week or just last week?

MR. DALACK:  Just last week.  Candidly, the response I received was, from the administrator, I will be in touch with you when it's ready.  And that was my second follow-up.  I didn't get the sense that she wanted to hear from me again, which is not an unusual feeling for me these days.

THE COURT:  I am pretty confident that she didn't want to hear from you again.  That being said, you have to do what you have to do on behalf of your client.  I will look into it as well and see if I can tweak the wheels, so to speak, but certainly you should let her know that you're still waiting.  And since this is the first I am hearing about it, obviously, I couldn't do anything prior to today.  But thank you for letting me know and keep me posted and we will deal with it when it comes.

MR. DALACK:  There is one related issue with respect to media.  We understand that your Honor has instructed that no cell phones be used in the courtroom.  We want to know, one, if that applies to any media that is in the courtroom, and two, that applies to any media that is in the overflow rooms.  Our concern is about any live tweeting or live broadcasting of the proceedings, and we would want to make efforts to prevent that from happening.

THE COURT:  So it certainly applies in my courtroom.  I candidly don't care as much about the overflow courtrooms in the sense it's not going to be disruptive to the trial, and I don't think that that rule applies in the press room where there will be a live feed of the proceedings.  So on what grounds would I prohibit live tweeting or what have you with respect to the trial?

MR. DALACK:  I think we object to it on the fact that it's a live broadcast that we understand is generally against the rules in federal court, as far as live broadcasting of proceedings.  And at least with respect to the live broadcasting of voir dire, I guess it's sort of a moot point since there is not going to be a reporter at the sidebar.  The concern is just about prejudicing the prospective jurors, but again, if there is not going to be a reporter at the sidebar, that point is mitigated.

THE COURT:  I would say not just mitigated, but moot.

1   In any event, I think there is something called the First
2   Amendment and I can't really prohibit a reporter from
3   reporting.  I don't think a reporter is reporting even if it's
4   in something close to realtime as a broadcast within the
5   meaning of Rule 53.  So I recognize your interest and your
6   concern, but I just don't think that it's appropriate for me to
7   restrict it.
8            MR. DALACK:  Yes, Judge.
9            THE COURT:  I will not allow cell phones in my
10  courtroom because it may interfere with trial and that's my
11  general rule.  But outside of my courtroom, I am not sure that
12  I particularly care, and certainly not prepared to tell the
13  press room that they can't use electronic devices there.
14           Anything else on the sort of motion-type front?
15           Mr. Podolsky.
16           MR. PODOLSKY:  Yes, your Honor.
17           I don't have a concrete proposal, but I do want to
18  flag for the Court that we have received some defense exhibits.
19  We did confer with defense on them last night, and we
20  understand it will be a rolling production.  So we may, to tee
21  things up for the Court, rather than just take them in the
22  morning right before the jury comes in, file some motions
23  regarding inadmissibility or appropriateness of certain
24  exhibits for cross-examination, and we will certainly do that
25  as quickly as we can as we are considering the exhibits.

THE COURT:  I would urge you to confer with the other side.  I guess it's not, strictly speaking, a discovery issue, but confer with the other side, only to discuss a briefing schedule if that's appropriate.  But there is a balance between honoring my request to bring things to my attention in advance so they can be resolved outside the presence of the jury and overdoing it, but I trust both sides that you will strike the right balance.

MR. PODOLSKY:  To be clear, I think both sides worked well together on this.  We spoke last night as a first conference.  So we are certainly trying to do both things.

THE COURT:  Try to remember to speak into the microphones.  If sitting facilitates that, that's fine with me.

MR. PODOLSKY:  One other item, your Honor.  Not quite in the vein of motions, but following the conference on Tuesday, and your Honor's allocution of the defendant, there was some re-engagement about a potential resolution to the case and some discussions back and forth with defense counsel.  We understand those discussions were relayed to the defendant.  They did not result in a formal offer being extended, but we did think it was appropriate, given the allocution on Tuesday, to mention that to your Honor and make sure the defendant was appropriately allocuted on that as well.

THE COURT:  All right.  I suppose in light of that, it might make sense for me to do a supplemental allocution.  Is

1  that what you are proposing, Mr. Podolsky?

2  MR. PODOLSKY:  Yes, your Honor, exactly.

3  THE COURT:  Any objection from the defense?

4  MR. DALACK:  No sort of substantive objection.  I
5  guess I am happy to clarify and provide a record for what was
6  extended.  Our understanding is it was not a formal offer.  We
7  were discussing a potential plea to 1028A in satisfaction of
8  the case.  There were other interests at stake and we couldn't
9  reach an agreement, and that's the long and short of it.

10  THE COURT:  Did you share those discussions?  Again,
11  recognizing there was no formal offer made, did you share those
12  discussions with Mr. Avenatti?

13  MR. DALACK:  I did.

14  THE COURT:  As with the other day, I don't want to
15  know the substance of anything you said, but did you give him
16  your views and recommendations with respect to whether to
17  proceed to trial or continue to negotiate a plea?

18  MR. DALACK:  Yes.

19  THE COURT:  Mr. Avenatti, if I could inquire of you.

20  First of all, how are you feeling this morning?

21  THE DEFENDANT:  Fine, your Honor.  Thank you.

22  THE COURT:  In the last 48 hours, have you consumed
23  any alcohol or had any medicine, pills or drugs?

24  THE DEFENDANT:  No, sir.

25  THE COURT:  Is your mind clear today?

1              THE DEFENDANT:  Yes, sir.
2              THE COURT:  Do you understand what is happening here
3     today?
4              THE DEFENDANT:  Yes, your Honor.
5              THE COURT:  You heard my discussion with counsel?
6              THE DEFENDANT:  Yes.
7              THE COURT:  Is that accurate, did your lawyers speak
8     with you about their discussions and negotiations with the
9     government regarding a potential plea?
10             THE DEFENDANT:  Your Honor, I want the record to be
11    clear I had discussions with my counsel about a potential
12    resolution of the case.  No offer, formal or informal, has ever
13    been made by the government in this case.  The government wants
14    me to make them an offer, and I have asked the government --
15             THE COURT:  Mr. Avenatti, I understand.  I just want
16    to make sure that you had a discussion with your lawyers about
17    their discussions with the government.
18             THE DEFENDANT:  Yes, your Honor.
19             THE COURT:  And it's your decision at this time to
20    proceed to trial?
21             THE DEFENDANT:  Yes, your Honor.
22             THE COURT:  Thank you very much.
23             Mr. Podolsky, any additional questions you think I
24    should pose on that score?
25             MR. PODOLSKY:  Your Honor, I don't want to get in a

1  back and forth on this.  I don't want the record to be unclear

2  on this for potential issues later.  We did have a discussion

3  about a potential resolution that included the government

4  informally discussing a specific offer.  We understand, based

5  on the colloquy we just had, that the defendant was aware of

6  that, and we want to make sure that's the case.

7          THE COURT:  OK.

8          MR. DALACK:  There might just be some

9  ships-passing-in-the-night situation, in the sense of what

10 informal offer means.  Our understanding is that there was an

11 informal offer that had to be approved up the chain that was

12 being discussed in good faith between the parties.

13         THE COURT:  Let me just be unambiguous about it.  Did

14 you share with Mr. Avenatti what that, quote unquote, informal

15 offer was?

16         MR. DALACK:  Indeed.

17         THE COURT:  Mr. Avenatti, is that accurate, was that

18 informal offer, quote unquote, shared with you, putting aside

19 whether it was technically an offer or not?

20         THE DEFENDANT:  Your Honor, honestly, I don't know how

21 to answer that question.

22         THE COURT:  I think it's a yes or a no.  The

23 government extended what is being described as an informal

24 offer because it wasn't approved by supervisors within the U.S.

25 Attorney's Office.  What I want to just make sure is that that

1     offer, whether it was formalized or not, was shared with you
2     and that you had full information when you made your decision
3     to proceed to trial?
4             THE DEFENDANT:  It was not shared with me as an offer,
5     your Honor, and I did not have full information.
6             THE COURT:  Was the number shared with you?
7             Mr. Podolsky, you want to share precisely what the
8     informal offer was?
9             MR. PODOLSKY:  I am happy to do that.  I am also happy
10    to have a five-minute recess and have a discussion with counsel
11    right now so we can clear this up.
12            For the record, as Mr. Dalack represented, we had
13    specific discussions about a potential resolution with a plea
14    to Count Two, which is a plea to the charge of aggravated
15    identity theft under 1028A.  We indicated that if the defendant
16    was interested in taking that offer, we likely would be able to
17    extend it.  We were trying to negotiate and understand his
18    position.  We understood that that position, our position, was
19    relayed to him, and that's what we want to make sure is
20    confirmed for the record, because we did have those discussions
21    with counsel and we understood that they were relayed to the
22    defendant.
23            THE COURT:  All right.
24            MR. DALACK:  Can we take a quick recess, your Honor?
25            THE COURT:  Sure.  I will stay on the bench, but why

1   don't you take your time to confer and then we will pick up
2   where we left off.
3            (Recess)
4            MR. BAUM:  Your Honor, would you like to take up a
5   logistics question I have or would you like to wait for Mr.
6   Avenatti?  It's just pure logistics.
7            THE COURT:  You can pose it and if I think he should
8   be here, I will wait.  What is the question?
9            MR. BAUM:  The question is about examining from the
10  glass booth.  Is there a way to turn the booth so that the
11  examiner can face the witness?
12           THE COURT:  I believe the answer to that is no.
13           MR. BAUM:  That's what I thought.
14           The second question is, and I have had this experience
15  with other courts of this nature, once the examiner is in the
16  booth, may we remove our masks so it's easier?
17           THE COURT:  That's the whole point of the booth.
18  Everybody outside the booth has to remain masked, but the
19  witness once in the booth and counsel once in the booth can
20  remove masks.  Obviously, if you have a need to leave the booth
21  to confer with the defendant or with counsel or to retrieve
22  something, you should put the mask on before you leave.  But
23  they are fully enclosed, they are HEPA filtered, and that's the
24  point.
25           MR. BAUM:  That's what I thought.  I just wanted to

1  clarify.  Thank you.

2           THE COURT:  No worries.

3           Mr. Dalack.

4           MR. DALACK:  However the government wants to

5  characterize it -- formal, informal, whatever -- Mr. Avenatti

6  is aware of the offer and rejects it.

7           THE COURT:  Very good.

8           Mr. Avenatti, is that accurate?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Very good.

11          I am advised as of a minute ago we have 61 of the 67

12 jurors that we are expecting this morning.  I think we are

13 checking on the status of the other six, but we are getting

14 close.

15          I got three additional names from the defense to

16 include in the jury voir dire.  Obviously, it would have been

17 better to get those the other day so I can include them in the

18 questionnaire itself that has already gone to press, so to

19 speak.  So I will just add those orally and emphasize to the

20 jury that they should listen carefully.  But anything aside

21 from those three names to add or change?

22          MR. PODOLSKY:  Not from the government, your Honor.

23          MS. GIWA:  Nothing further from us, and I apologize

24 for providing them so late.

25          THE COURT:  Anything else?  Hopefully, I will get an

M1K8AVE1

1  update of the status downstairs and then we can head down there
2  at the appropriate time.
3         MR. PODOLSKY:  Nothing from the government, your
4  Honor.
5         MR. BAUM:  Nothing further from us, your Honor.
6         THE COURT:  All right.  So they are continuing to try
7  and track down the six errant jurors.  While they do that, I
8  don't see any reason for me to stay on the bench.  I think what
9  I will do is go to the robing room.  You should stay here.  My
10 clerk will advise you when it's time to go downstairs, at which
11 point, why don't you all go down and we will convene in front
12 of the, what I refer to as Justice on Ice sculpture, the
13 sculpture in front of 500 Pearl in the atrium.  We will convene
14 there and then we can go into the jury assembly room from
15 there.
16        Just so everybody knows where they are headed, if you
17 don't know, my understanding is the government sits at the
18 table closer to the exit, that is to my left looking down from
19 the bench, the defense is at the table to my right looking down
20 from the bench, and as I said the other day, the middle table
21 will be empty and that's where the two jurors who are either
22 speaking or on deck will be seated.
23        Any questions about any of that?
24        MR. PODOLSKY:  No, your Honor.
25        MR. BAUM:  No, your Honor.

THE COURT:  So remain here and when it's time to go down, my clerk will alert you and then I will meet you downstairs.

Thank you very much.

(Recess)

THE COURT:  All right.  Here is where I understand things are downstairs.  A couple of things.

First of all, I am told that two of the jurors, Juror Nos. 41 and 42, actually were erroneously sent to this room and may have walked in.  I don't know if anyone wants to make a record of what happened.  I assume that they didn't see anything that would be problematic that would require them to be excused, but let me just confirm that from both sides.

MR. PODOLSKY:  Honestly, your Honor, we weren't even aware there were two jurors in here.  So as far as we know they didn't see anything, but we didn't notice them.

MS. GIWA:  Just to make it perfectly clear, they walked in after your Honor had left while we were on a break.  They sat down in the audience.  Mr. Baum immediately noticed them.  He notified your clerk that they were here, who approached them, found out they were jurors, and sent them downstairs.  I don't believe they heard anything.  I don't believe there is a reason that they should be struck.

THE COURT:  Great.  So that is a nonissue.

Number two, I think you have been advised of this, but

M1K8AVE1

1  I understand that Juror No. 75 will not be coming this morning,
2  I think due to inclement weather and an inability to get here.
3  As of the last I had heard, we were missing four other jurors,
4  numbers 15, 21, 67, and 116.
5            It's now 10:03.  My inclination would be to proceed.
6  If they get here between now and when we get to the jury
7  assembly room, great.  If not, I think that would leave us with
8  62, by my count, and I think we just plow ahead.
9            Anyone think otherwise?
10           MR. PODOLSKY:  We defer to the Court.  That's fine.
11           MR. BAUM:  No, your Honor.  I don't think otherwise.
12           THE COURT:  I understood that's what you meant.
13           All right.  In that case, why don't you head
14  downstairs.  Again, we will convene by the statue in the atrium
15  and then we will enter from there.  And I will let folks
16  downstairs know that we are on our way.
17           (Adjourned to Monday, January 24, 2022, at 9:00 a.m.)