M21Wave1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        19 Cr. 374 (JMF)

 5   MICHAEL AVENATTI,

 6              Defendant.
                                         Trial
 7   ------------------------------x

 8                                       New York, N.Y.
                                         February 1, 2022
 9                                       9:00 a.m.

10   Before:

11
                      HON. JESSE M. FURMAN,
12
                                         District Judge
13                                       —and a Jury—

14                      APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     BY:  MATTHEW D. PODOLSKY
17        ROBERT B. SOBELMAN
          ANDREW A. ROHRBACH
18        Assistant United States Attorneys

19   MICHAEL AVENATTI, Defendant Pro Se

20   DAVID E. PATTON
          Federal Defenders of New York, Inc.
21        Attorney for Defendant
     BY:  ROBERT M. BAUM
22        ANDREW J. DALACK
          TAMARA L. GIWA
23        Standby Assistant Federal Defenders

24   Also Present:  Special Agent DeLeassa Penland
                    U.S. Attorney's Office
25                  Christopher de Grandpre, Paralegal Specialist
                    Juliet Vicari, Paralegal
```

M21Wave1

1      (Trial resumed; jury not present)

2      THE COURT:  Good morning, everyone.

3      The government is here.  Mr. Avenatti and standby

4  counsel are here.

5      All right.  Mr. Avenatti gave my staff a letter that I

6  gather will be filed shortly on ECF regarding certain jury

7  instruction issues.  I don't want to get into that now since

8  we'll have an opportunity later.  It does point to an issue I

9  just want to flag so that you can think about it in advance of

10  the charge conference, where we will discuss this, which is, I

11  think, depending on where I land on our discussion yesterday, I

12  think we should think hard -- well, I don't think we'll all end

13  up on the same page, but I want to make sure we have a

14  discussion before closings about what Mr. Avenatti can and

15  cannot argue in his closing so that he understands the line and

16  I don't need to interrupt him and sustain objections if he

17  crosses the line.  But again, we'll defer that until later.

18      Mr. Avenatti, can you tell me what witnesses are here

19  and what your defense case is going to entail?

20      MR. AVENATTI:  Your Honor, at present, I do not have

21  any witnesses here.  Mr. Loupe was delayed due to a travel

22  issue.  He's supposed to land at Newark at 9:49 a.m. this

23  morning.

24      THE COURT:  All right.

25      MR. AVENATTI:  Mr. Loupe is the witness who was under

M21Wave1

1  subpoena here in New York, left New York and flew back to New

2  Orleans despite our position that he needed to be here to

3  testify.  We immediately informed him that he needed to be in

4  court this morning, back here in New York, and evidently, due

5  to a travel issue, he's not able to get here until 9:49 a.m.

6  He's on a flight right now into Newark.

7          THE COURT:  OK.  Mr. Karbley is not testifying?

8          MR. AVENATTI:  No.

9          THE COURT:  And Mr. Crain and Mr. Nicks are not

10  testifying.

11          MR. AVENATTI:  We were not able to serve them despite

12  our efforts over the last month.

13          THE COURT:  OK  so that would be a no as well.  Given

14  my ruling last night, Mr. Marshack and Mr. Drum are not

15  testifying.

16          All right.  I think it might make sense to get

17  Mr. Palma, Mr. Loupe's lawyer, on the phone to find out

18  precisely what the nature and circumstances of what happened

19  over the weekend were in order to determine whether we should

20  wait for him or just proceed with the next phase of the case.

21          Mr. Avenatti, in the meantime, since it may have some

22  bearing on it, what's your decision with respect to whether you

23  intend to testify?

24          MR. AVENATTI:  Your Honor, I do not intend on

25  testifying because the government has not proven its case

M21Wave1

1    against me.

2             THE COURT:  All right.  And I take it -- obviously,

3    you don't have counsel; you have standby counsel, but you've

4    thought long and hard about that decision and you began

5    thinking about it as early as last week, and it is your

6    decision not to testify.  Is that correct?

7             MR. AVENATTI:  For the reasons I've stated, yes, sir.

8             THE COURT:  And government, obviously, if Mr. Loupe

9    doesn't appear and there's no defense case beyond the

10   stipulation, I assume there's no rebuttal case.  Is that

11   correct?

12            MR. ROHRBACH:  That's correct, your Honor.

13            THE COURT:  And if Mr. Loupe does appear, do you

14   anticipate a rebuttal case?

15            MR. ROHRBACH:  No, your Honor.

16            THE COURT:  Do you have a view on how we should handle

17   the Mr. Loupe situation?

18            MR. ROHRBACH:  We defer to the Court; that is to say,

19   we have no specific view on that.

20            THE COURT:  All right.  Give me one moment.

21            Counsel and Mr. Avenatti, bear with me.  We're going

22   to try and reach Mr. Palma.  I would like to find out more

23   about the circumstances surrounding this weekend before I make

24   a decision on whether we're going to wait.  Bear with me.

25            Actually, while we wait, I'd like to make a record

M21Wave1

1      from Mr. Avenatti's perspective.

2                First, tell me what communication, if any, you had

3      with either Mr. Palma or Mr. Loupe yesterday regarding his need

4      to be here today to testify.

5                MR. AVENATTI:  Your Honor, me personally, none.

6      Advisory counsel handled the communications with Mr. Loupe's

7      counsel as well as his travel arrangements.

8                THE COURT:  OK.  Is one of them in a position to speak

9      to it?

10               MR. AVENATTI:  Yes.  Mr. Baum can speak to that, your

11     Honor, if so permitted.

12               THE COURT:  Go ahead.

13               MR. BAUM:  Judge, I had text-message communications

14     with Mr. Palma on Sunday.  With the Court's permission, I can

15     read some of those messages to you.

16               THE COURT:  I don't know if there's something wrong

17     with your microphone.

18               MR. BAUM:  I'm sorry.  I turned to face you, your

19     Honor, and the microphone didn't capture everything I said.

20               THE COURT:  Gotcha.

21               MR. BAUM:  I said with the Court's permission, I can

22     read some of those text messages to you.

23               THE COURT:  Sure.  I'd like to know, first of all, did

24     you have any communication with Mr. Palma yesterday?

25               MR. BAUM:  If I did, it's by text message.  Let me

M21Wave1

1   review my messages.

2           My recollection is that yesterday I told him that we

3   would bring Mr. Loupe in as soon as possible.

4           THE COURT:  At what time did you tell him that?

5           MR. BAUM:  I think it's important to note before that

6   that Mr. Palma told me in the text message on Sunday that he

7   sent Loupe home and that I objected to that and told him that

8   he had to be in court.  So I think it's appropriate if we do

9   this chronologically, Judge.

10          THE COURT:  OK.

11          MR. BAUM:  So here's a message from Sunday evening.

12          THE COURT:  What time?

13          MR. BAUM:  Let me get to it.

14          THE COURT:  And I take it from the fact that you're

15  text messaging him, that you have his cell phone number.  Is

16  that correct?

17          MR. BAUM:  I do.

18          THE COURT:  Great.  Can I ask you to write that down

19  on a piece of paper and give it to my deputy so that we can try

20  and reach him.

21          MR. BAUM:  Of course.  Of course.

22          THE COURT:  Oh, excuse me.  I'm told that we actually

23  have it.

24          MR. BAUM:  OK.

25          THE COURT:  So let's go back to the chronology.

M21Wave1

1          MR. BAUM:  OK.  This is Sunday at 4:38 p.m.  This is

2    Mr. Palma texting me:

3          "Based on Judge Furman's ruling, I told Loupe he's

4    free to leave New York City."

5          This is my response:

6          "He should stay because I did not see a final decision

7    on the motion to quash the subpoena.  Avenatti has to file

8    something by 7 p.m. and then the judge will decide.  Otherwise,

9    he may have to return tomorrow."

10          THE COURT:  And what time was your response?

11          MR. BAUM:  It doesn't indicate the time, but it was

12    immediately following his text to me at 4:38 p.m.

13          THE COURT:  If you swipe left, it will probably tell

14    you the time.

15          MR. BAUM:  5:33 was my response.

16          THE COURT:  All right.

17          The advantages of having a new generation of counsel

18    at Federal Defenders office.

19          MR. BAUM:  You should only know, Judge.

20          THE COURT:  All right.

21          MR. BAUM:  Mr. Palma's response was:

22          "ECF 323 and 324 state Avenatti can't call.  Recall my

23    motion to quash is not to be considered.  I sent it to the

24    judge but did not file it as a motion."

25          Don't think -- and this is my response:

M21Wave1

1          "Don't think that is correct.  Judge said that Loupe

2   can't testify on Monday until Avenatti files a response to a

3   motion to preclude.  Avenatti will file at 7 p.m.  He may rule

4   that Loupe can testify Tuesday."

5          And this is Mr. Palma's response:

6          "Based on ECF order 325, I told Loupe he was no longer

7   needed to testify.  I texted him at 4:35 p.m. after I got your

8   text at 5:33 and 5:37.  I immediately texted him at 5:37 and

9   told him to stay.  He replied at 6:47, saying he was on a plane

10  headed back home."

11         And then the rest is about him returning as soon as

12  possible.

13         THE COURT:  OK.  And then yesterday.

14         MR. BAUM:  Yesterday, at 12:22 a.m. -- this is Sunday

15  night, Monday morning:

16         "Loupe just called me.  He's back in New Orleans.

17  He's aware that he may have to return to SDNY Monday.  I told

18  him I'd be in touch with you for his plane ticket.  Please send

19  me the name and number of the person in your office who will

20  coordinate his trip to New York City.  Thanks.  Richard."

21         My response, yesterday, at 6:26 a.m.:

22         "I will after the judge rules that he has to return."

23         Mr. Palma's response:

24         "OK.  Thanks.  Please let me know as soon as

25  possible."

M21Wave1

```
1              Then he made a comment about the defense, Judge, which
2     I don't think is necessary.  This is Mr. Palma's comment, not
3     mine.
4              THE COURT:  I don't need substantive commentary, just
5     logistics.
6              MR. BAUM:  OK.  Then Mr. Palma said:
7              "Tell Judge Furman he ran out of money and could not
8     stay."
9              And then I responded:
10             "Yes.  May have to bring him early today."
11             And again, who should he contact?  This is Mr. Palma:
12             "Who should he contact?"
13             And then he said:  "BTW, I read the docket report
14    after 10 p.m.  I did not see this order."
15             And then he gave me his email address, and then he
16    gave me a phone number.  And then thereafter, we contacted him
17    and I can tell you that we could not get a flight back to New
18    York any time Monday.
19             THE COURT:  I would like to know what time you
20    contacted him to advise him that his client needed to be here.
21             MR. BAUM:  At 11:50 a.m., I had the text from
22    Mr. Palma:
23             "Hi, Bob.  Any update?  Richard."
24             I texted him back at 12:58 p.m.:
25             "The Court has not addressed it yet but will do so
```

M21Wave1

1    within one hour."

2              This is yesterday before we discussed the witnesses.

3              "OK.  Let me know.  I got him on standby."

4              This is me texting him back:

5              "The Court just ruled he has to come.  Can we contact

6    him directly?"

7              THE COURT:  What time?

8              MR. BAUM:  1:36 p.m.

9              Mr. Palma wrote:

10             "Yes.  I'll let him know."

11             Then he wrote:

12             "I will give him a heads-up that you will call."

13             And I wrote back:

14             "Still in court."

15             And then he wrote back at 3:14 p.m.:

16             "At 2:55 p.m., I got a text from Sobelman asking to

17   talk to Loupe at 5 p.m.  I said he would be on a plane at that

18   time.  I then said I'd let him know the itinerary.  Who should

19   I talk to about his flight and hotel?  Richard."

20             I wrote back:

21             "Still in court."

22             And then I wrote again:

23             "We are going to try and get him here on a flight.  We

24   can get him giving him reasonable notice before the flight.

25   Both people who make the arrangements are here in court with

M21Wave1

1    me."

2              He wrote back:

3              "I'm away from my phone for the next two hours, so

4    communicate directly with Loupe.  He's waiting for your call."

5    Signed Richard.

6              My answer:

7              "OK.  He'll get a call from Juliet Vicari or Anna

8    Finkel."

9              He wrote back:

10             "I'll be away from my phone for the next two hours, so

11   communicate directly with him."

12             I sent a message.  And then there are no further

13   texts.

14             After that we contacted him directly.  We tried our

15   best to make arrangements, and I was told that there are no

16   flights available until this morning.

17             Judge, I would just add that I never released

18   Mr. Loupe from the subpoena.  My efforts -- in fact, I told him

19   not to go back to New Orleans on Sunday.  Mr. Palma advised

20   him, misinterpreting what was happening on the docket sheet, to

21   go back.  We never told him to go back.  I told him he would

22   have to come back immediately on Monday, and we just couldn't

23   get him a flight.

24             THE COURT:  All right.  Well, my understanding is

25   Mr. Palma is on his way down to the courthouse now, so I prefer

M21Wave1

1    that we wait at least until he gets here and I can find out his

2    side of the story.  It certainly does seem to me from your text

3    exchange that he blatantly and egregiously misinterpreted my

4    orders.  I think as I made clear yesterday, I made no ruling

5    over the weekend.  Until I made a ruling he was subject to

6    subpoena, and he absolutely should not have sent his client

7    outside of New York.  He should have been here waiting to

8    testify, contingent on my ruling.

9             I really don't understand why when I took the bench

10   yesterday and made clear that that was the state of play that

11   you didn't immediately advise Mr. Palma that he had to get his

12   client here yesterday so that if I ruled in your favor on this

13   he would be here ready to go at 9 a.m.  I certainly warned you

14   before trial that if you didn't have a witness available, you'd

15   be deemed to rest.  I reiterated that yesterday, albeit maybe

16   later in the day, and given that, I would have thought that you

17   would have immediately sent him a message at 9 a.m., Get your

18   client on a plane; he needs to be here ready to go tomorrow if

19   the judge says he can testify.

20            But having said all that, we'll wait for Mr. Palma so

21   I can get his side of the story, and in the meantime, perhaps

22   we'll get a better read on where Mr. Loupe is.

23            Does anyone know what flight he's on?

24            MR. AVENATTI:  One moment, your Honor, please?

25            Your Honor, I am informed that Mr. Loupe was booked on

M21Wave1

1    flight No. 674, United Airlines, departing New Orleans at 6

2    a.m., arriving into, or scheduled to arrive into Newark

3    originally at 9:49 a.m.  I do not have a current flight status,

4    but I believe we can probably look it up.

5         THE COURT:  I looked it up.  I'm pleased to say it's

6    due to arrive early, at 9:38 a.m.  So let's wait for Mr. Palma.

7    In the meantime, perhaps Mr. Loupe will land and we'll get an

8    update on his arrival time.

9         MR. BAUM:  Judge, if I may add one fact?

10        I believe on Saturday or Friday, I advised Mr. Palma

11   that Mr. Loupe should report to the courthouse yesterday at 1

12   p.m., which I estimated would be an appropriate time for him to

13   testify and that Ms. Finkel of my office would meet him outside

14   the courthouse and escort him to a location where he could wait

15   until the time he could testify.  That was either on Friday or

16   Saturday.

17        THE COURT:  OK.  Thank you.

18        Give me a moment, please.

19        MR. AVENATTI:  Your Honor, could I have a moment to

20   chat with my advisory counsel?

21        THE COURT:  You may.

22        MR. AVENATTI:  Your Honor --

23        THE COURT:  Yes.

24        MR. AVENATTI:  -- I'm going to alleviate the problem

25   by not calling him.

M21Wave1

1            THE COURT:  All right.  Well, then -- all right.

2            Maybe I can connect with my deputy, who went down to

3      tell the jury to just bear with us.  We'll get the jury up, and

4      I take it you'll rest in front of them.  Is that correct?

5            MR. AVENATTI:  Yes, your Honor.

6            I'm not aware of whether you wanted to address

7      Mr. Marshack and Mr. Drum on the record before that or not, but

8      I'd potentially like to be heard on that -- well, not

9      potentially.  I would like to be heard on that.

10           THE COURT:  Well, you've already been heard in

11     writing, so I'm not going to hear anything further.  I've given

12     you my bottom-line ruling and I'll give you my reasoning.

13     Having said that, I'm going to get the jury up here and dismiss

14     them first, since there's no reason to make them sit in the

15     jury room and we may as well send them on their way.

16           While we do that, I will give you my ruling on GX-804,

17     since they'll be here in a few minutes.

18           As I said last night, that motion is denied.  The text

19     of Rule 1006 doesn't require a preparer to be the witness who

20     authenticates it.  Mr. Avenatti cites no Second Circuit

21     precedent requiring that a preparer must testify.  He cites two

22     cases from within the Second Circuit for the proposition that a

23     summary "can be properly introduced through the testimony of a

24     witness who supervised its preparation."  *UPS Store, Inc. v.*

25     *Hagan*, 2017 U.S. Dist. LEXIS 121352, at *5 (S.D.N.Y. Aug. 2,

M21Wave1

1    2017); and also *John Wiley & Sons v. Book Dog Books*, 2018 U.S.

2    Dist. LEXIS 229142, at *5, which simply quotes *UPS Store*, so

3    really it's just one case.  The fact that a chart,

4    quote/unquote, can be introduced through the testimony of a

5    witness who supervised its preparation doesn't mean that it

6    must, and I would also note that "supervise" doesn't

7    necessarily mean it's the preparer and doesn't preclude that

8    multiple people are involved in the preparation.

9             As the case cited by Mr. Avenatti himself makes plain,

10   to justify admission of a summary chart under the rule, the

11   proponent must present "foundation testimony connecting it with

12   the underlying evidence summarized" and showing that it is

13   "based upon and fairly represents competent evidence already

14   before the jury." *Fagiola v. National Gypsum Co.*, 906 F.2d 53,

15   57, (2d Cir. 1990).  Mr. Medrano's testimony did precisely

16   that.  Put simply, there is no requirement in this circuit that

17   the preparer be the witness who authenticates the chart.

18   Instead, charts are routinely admitted through someone involved

19   in the preparation of the chart and who is competent to

20   testify, as Mr. Medrano did, that it fairly and accurately

21   represents the underlying evidence.  *See, e.g., United States*

22   *v. Blackwood*, 366 F.App'x 207, 212 (2d Cir. 2010), affirming

23   admission of a chart through a witness who was "personally

24   involved in compiling the charts."

25             Mr. Medrano was personally involved in the preparation

M21Wave1

of the charts.  The fact that his role was lesser than Agent

Penland's or someone else's is of no moment.  And finally, of

course, I gave a limiting instruction consistent with *United*

*States v. Ho*, *United States v. Blackwood*, and *United States v.*

*Miller*, making clear that what weight, if any, the jury gives

is up to them, and it should be given only the weight that it

deserves in light of the underlying evidence.

For those reasons, the motion was denied.

I'll make a record on the Marshack and Drum rulings

when we have dismissed the jury, and at that time I will also

give both sides a copy of the draft jury charge.  It obviously

was prepared prior to receiving Mr. Avenatti's submission of

this morning, so I will consider that and decide what, if any,

additions or changes should be made in light of that at the

charge conference, but we'll go from there.

To make use of the time, since I'm waiting on the

jury, let me speak to that, the charge conference.  The

proposed charge, as you will see, includes line numbers.  It

also includes annotations with respect to each charge.  That's

for the benefit of the charge conference.  Those will all be

removed from the final version, copies of which will be

distributed to the jury to follow along when I instruct them.

I just want you to be aware of what the basis for each charge

is, and the line numbers will facilitate our discussion.

On that score, what we will do is I'll hear first from

M21Wave1

1    the government with respect to any objections or suggestions.

2    We'll go through in order from beginning to end.  I expect you

3    to cite a page and a line number or numbers.  That's the point

4    of the line numbers, so that there is no ambiguity or confusion

5    what instruction or language you're referring to.  And to the

6    extent that you have an objection or suggestion, I expect that

7    you will have a proposal for how to fix it.  In other words, I

8    don't just want you to raise problems; I want you to propose a

9    solution if you think there's a problem.  And then we'll do the

10   same, starting with the beginning, with Mr. Avenatti's

11   objections and suggestions.

12            Any questions about that?

13            MR. ROHRBACH:  No, your Honor.

14            MR. AVENATTI:  No, your Honor.

15            What is the time that you anticipate us doing the

16   charge conference?

17            THE COURT:  Let's see what time we get out of here.

18   The jury's about to arrive, so we'll take that up when they're

19   gone.

20            (Continued on next page)

21

22

23

24

25

M21Wave1

1           (Jury present)

2           THE COURT:  You may be seated.

3           All right.  Good morning, ladies and gentlemen.

4    Welcome back.  Thank you for being here on time, and I

5    appreciate your patience and apologize for the fact that we

6    have kept you waiting this morning.  We were taking care of a

7    few matters that we needed to deal with before we brought you

8    up.

9           With that, it is my understanding, Mr. Avenatti, that

10   you intend to rest your case.  Is that correct?

11          MR. AVENATTI:  That is correct, your Honor.

12          The defense rests.

13          THE COURT:  All right.

14          Ladies and gentlemen, you have now heard all of the

15   evidence in the case, which is to say that there will be no

16   more witnesses at trial, and the next phase of the case will be

17   the closing arguments of the lawyers.  We're not going to do

18   that today, though.

19          Trial management is sort of more art than science.  In

20   the last day or two, last two days, I would say I have not been

21   painting a masterpiece, which is to say that I take

22   responsibility for the fact that we didn't get a full day in

23   yesterday, and I take responsibility for the fact that I'm

24   about to dismiss you and brought you in just to do that.  So

25   don't hold it against either side and certainly don't consider

M21Wave1

1    it in your consideration of the evidence and your

2    deliberations; that is to say, these things happen.  I

3    apologize.  I take responsibility for it, but hopefully, you'll

4    see it as a free day and be relieved rather than annoyed.

5        Be that as it may, we're not going to do anything

6    further today because there are certain matters that we need to

7    take care of before we proceed to closings, and rather than

8    make you wait for an extended period of time in the jury room,

9    I think it just makes more sense to send you on your way, and

10   we'll start promptly tomorrow morning and get a full day in

11   tomorrow.

12       On that score, let me say I've warned you a few times

13   that I might extend the schedule when it comes time for

14   closings and your deliberations, and I am going to say to do

15   that, which is to say I'm going to ask you tomorrow to plan to

16   be here past three, presumably until five, just to give us a

17   little bit more flexibility with respect to closings, to make

18   sure that we get those done and hopefully get to my

19   instructions, and hopefully, you can begin your deliberations.

20       Again, tomorrow, please be here at the same time, no

21   later than 8:30, 8:45, ready to go promptly.  We might even

22   bring you up earlier than we have throughout trial if we're

23   ready to go.  And in any event, we'll proceed with the

24   summations and then hopefully my instructions and get you

25   started on your deliberations.

M21Wave1

1            My usual instructions apply.  You have now heard all

2       of the evidence in this case.  That being said, you have not

3       heard the parties' arguments about that evidence and the

4       conclusions that you should draw from it.  You also haven't

5       heard my instructions about the law and the issues that you are

6       to decide, and for those reasons, it is critical that you still

7       keep an open mind.  Relatedly, it is critical that you not

8       discuss the case with each other or with anyone else -- with

9       your employers, friends, etc.  And as you know, please don't do

10      any research about the case, google anything about the case,

11      anything of that sort.  And it's your obligation, since you

12      remain jurors, to avoid any news or discussion about the case.

13            With that, and with my thanks for your understanding

14      and patience with the fact that these are complicated matters

15      and it's important to ensure a fair trial to both sides, to

16      take care of certain things, you're dismissed for the day.

17      We'll see you same time tomorrow morning and hopefully get a

18      full day in.

19            And with that, I will wish you a wonderful day.  Get

20      home or to work safely.  And thank you very much.

21            (Continued on next page)

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M21Wave1

1          (Jury not present)

2          THE COURT:  You may be seated.

3          All right.  Let me give you my rulings on Marshack and

4   Drum, and then we'll discuss the charge conference and other

5   matters.

6          First -- well, as noted, I denied the motion to

7   compel.  I granted the motion to quash.  To the extent that Mr.

8   Avenatti suggests or argues that the motions to quash should be

9   denied as untimely, I disagree.

10         With respect to the Marshack subpoena, Mr. Marshack

11  reasonably believed that he was relieved of his obligation to

12  comply, given the bankruptcy court order on January 26.  It

13  wasn't until Sunday night that he learned about the motion to

14  compel that Mr. Avenatti had filed, and he promptly moved to

15  quash by the 3 p.m. deadline yesterday.  If anything, Mr.

16  Avenatti is to blame for any delay.  His counsel was present in

17  bankruptcy court on January 26 when the bankruptcy court ruled

18  that Mr. Marshack could not comply with his subpoena as well as

19  the government's subpoena, and it was incumbent upon him to

20  pursue timely relief given that order.  The bottom line is I

21  exercised my discretion to treat the motion as timely.

22         The situation with respect to Mr. Drum is somewhat

23  less compelling, but ultimately, given the circumstances, I

24  think it would be unjust to deny an otherwise meritorious

25  motion to comply based on timeliness.  Counsel for Mr. Drum was

in touch with Mr. Avenatti's prior counsel and believed,

whether correctly or not, that Mr. Avenatti had decided not to

pursue the matter and not to call Mr. Drum or seek his

evidence.  Yes, counsel probably should have moved to quash

when she didn't hear back from Mr. Avenatti, but I conclude

that she reasonably believed that the matter had gone away and

that there was no need to do so, particularly after January 24,

the date of compliance, came and went.

Once again, therefore, I exercised my discretion to

consider the motion.  *See, e.g.*, *Concord Boat Corp. v.*

*Brunswick Corp.*, 169 F.R.D. 44, 52 (S.D.N.Y. 1996).

Turning to the merits, Mr. Marshack's motion is

granted substantially for the reasons set forth in his motion

at ECF No. 341.  For starters, service probably wasn't proper

since he was not personally served, but even if it was proper,

compliance would be unreasonable and oppressive since it would

be contrary to the order of the bankruptcy court.  Mr. Marshack

reasonably sought approval from the bankruptcy court when

confronted with both sides' subpoenas.  The bankruptcy court

held that compliance would run afoul of the Barton doctrine --

I confess I hadn't heard of that doctrine until yesterday --

and prohibited him from complying.

That may or may not be correct.  As I said, I heard of

the doctrine for the first time yesterday myself.  But to the

extent Mr. Avenatti thought it was incorrect, as he argues in

M21Wave1

1    his reply here, his remedy was to appeal the bankruptcy court

2    order, not to disregard it or assume that Mr. Marshack could

3    disregard it.  Put simply, it would be unreasonable and

4    oppressive to require Mr. Marshack to comply with the subpoena

5    when doing so could subject him to contempt for violation of

6    the bankruptcy court order.  On top of that, in light of my

7    ruling yesterday on *quantum meruit* -- namely, that Mr. Avenatti

8    cannot argue to the jury that he was entitled to take

9    Ms. Daniels's money because he was entitled, under *quantum*

10   *meruit*, to a reasonable fee based on the quantity and quality

11   of the work that he did, most, if not all, of the evidence that

12   Mr. Marshack could provide is irrelevant.  Any minimal

13   probative value is substantially outweighed by various Rule 403

14   issues, including cumulativeness, confusion of issues, waste of

15   time, and misleading to the jury.

16          Finally, to repeat something that I have said many

17   times, to the extent that Mr. Avenatti sought to call

18   Mr. Marshack in order to secure the contents of the Egan &

19   Avenatti servers, he has them himself and has had them since

20   September.  In short, with respect to Mr. Marshack, the issue

21   is not even close.  His testimony and any evidence he has is

22   almost certainly irrelevant, and to the extent it is relevant,

23   there are major 403 issues, and enforcement of the subpoena

24   would be unreasonable and oppressive.

25          As for Mr. Drum, his testimony has minimal relevance

M21Wave1

 1    and is largely, if not entirely, inadmissible.  He analyzed

 2    records relating to a different criminal case for a different

 3    prosecution team involving different victims of different

 4    crimes and different financial transactions that have no

 5    connection or relationship to this case.  As the charts

 6    attached to Mr. Avenatti's motion -- I think they were filed

 7    under seal, but nevertheless filed with his motion -- make

 8    clear, Mr. Drum engaged in an analysis of the defendant's and

 9    his firm's financial -- really, his firm's financial --

10    condition from 2011 to 2018.  The period relevant to this case

11    begins in the summer, perhaps spring, of 2018 through 2019.

12    The financial condition prior to that period is, in my view,

13    totally irrelevant, and to the extent that it has any

14    relevance, any probative value of that evidence is

15    substantially outweighed by the same 403 considerations that I

16    referenced a moment ago.

17         Moreover, the subpoena, as written, is overly broad

18    and thus requiring compliance -- for instance, its request for

19    any and all communications of certain types -- would be

20    unreasonable and oppressive, substantially for the reasons set

21    forth in Mr. Drum's motion at ECF No. 342.

22         Finally, and not for nothing, to the extent that

23    Mr. Drum's testimony would be admissible, it would have to have

24    been on the ground that Mr. Drum is an expert witness, since he

25    has no firsthand or percipient knowledge of anything relevant

M21Wave1

1  to this case, and his analysis certainly requires technical and

2  specialized expertise.  Mr. Avenatti did not provide notice of

3  his intent to offer such expert testimony pursuant to Rule

4  16(b)(1)(C), and even if he had, the testimony would fail the

5  *Daubert* fit test given the facts at issue in this case.

6          The bottom line is the evidence has little or no

7  relevance to this case.  Any minimal probative value is

8  substantially outweighed by 403 considerations, including waste

9  of time, confusion of the issues, and misleading the jury, and

10 compliance with the subpoena, as written, would be unreasonable

11 and oppressive.  And for those reasons, I denied the motion to

12 compel and granted the motion to quash.

13         All right.  I'll ask my clerk to print two copies of

14 the charge.  We will, not for nothing, also be docketing a copy

15 just so it is on the public record, and for that reason, you'll

16 have access to additional copies if you wish.

17         Again, just to stress, since Mr. Avenatti filed his --

18         Are you Mr. Palma?

19         MR. PALMA:  Yes, your Honor.

20         THE COURT:  All right.  You are free to go.  Mr.

21 Avenatti has decided not to call your client, so thank you for

22 coming down here.  My apologies for any inconvenience, and have

23 a good day.

24         Again, to get back to what I was saying, since I got

25 his letter only this morning, I have not had a chance to read

M21Wave1

1  it, let alone make any changes to the charge.  So you should

2  not construe the draft to mean that I have rejected or ruled on

3  his proposals.  We'll take them up at the charge conference

4  along with any suggestions or objections, as we discussed

5  shortly ago.

6          Let's talk about closings tomorrow.

7          First, who is going to be closing for the government?

8          MR. SOBELMAN:  I will, your Honor.

9          THE COURT:  And do you have an estimate on how long

10  your closing is likely to be?

11          MR. SOBELMAN:  Probably somewhere in the nature of an

12  hour and a half.

13          THE COURT:  All right.

14          Mr. Avenatti, do you have an estimate on the length of

15  your closing?

16          MR. AVENATTI:  Approximately two hours, your Honor.

17          THE COURT:  All right.  Let's just say that I don't

18  expect either side to go over two hours, and hopefully, you can

19  prepare accordingly.

20          The government will obviously have a rebuttal, and

21  it's hard to predict how long that will be.  Less is more.  As

22  I told Mr. Avenatti, don't be greedy.  And I will not hesitate

23  to cut you off if I think it's going on too long, but we'll

24  take that as it comes.

25          As I said, at the charge conference, I do want to

M21Wave1

1   discuss what the ground rules for the closings -- Mr.

2   Avenatti's closing in particular -- are; that is to say, what

3   arguments he can and can't make just so he has notice going in

4   and we don't have to do that in front of jury.  I think that

5   would make abundant sense.

6           Other than the time of the charge conference, anything

7   else that you want to raise or discuss?

8           MR. ROHRBACH:  Nothing from the government.

9           THE COURT:  Mr. Avenatti.

10          MR. AVENATTI:  No, sir.

11          THE COURT:  All right.  It's 9:52.  Why don't we

12  reconvene at 1:00.  Does that make sense?  I assume you have

13  nothing else you have planned at that time.

14          MR. PODOLSKY:  That's fine for the government.

15          MR. AVENATTI:  Yes, your Honor.  Thank you.

16          THE COURT:  Again, we'll provide you with one printed

17  copy for each side any moment, and it will be docketed in short

18  order so you can print as many copies as your heart desires.

19          I'll see you at 1:00, and we'll take it from there.

20          Thank you very much.

21          (Recess)

22

23

24

25

M21NAVE2

AFTERNOON SESSION

(1:20 p.m.)

THE COURT:  Be seated.  All right.

We are here for the charge conference.  Sorry to start late, but as I think my staff told you, I decided to make some changes to the draft based on Mr. Avenatti's submissions both this morning and also about a half hour ago or hour ago with respect to my draft, so I thought it was more productive to give you those he proposed changes, the redlines, so that you could consider them and then we could discuss them now.

I am trying to think of the most productive way to do this.  It seems to me that some of the issues, particularly the issues flagged in Mr. Avenatti's submissions, really go to the heart of what can and can't be argued here, and it might make sense to sort of start there before we discuss the particulars of the charge.  But I am open to suggestions.

So let me start with the government.

MR. ROHRBACH:  That's fine, your Honor.

THE COURT:  All right.

Let me I guess give you my general reactions to Mr. Avenatti's submissions and where I think that leaves us and him.

First, with respect to his submission of earlier this morning, he makes four requests.  I may as well just address them.

M21NAVE2

1           The first one I am not going to give that instruction.

2    I do not think there is either a legal or a factual basis for

3    it.  I don't know what testimony he's referring to, but to the

4    extent he's referring to her testimony that they had a later

5    agreement that he not take any money with respect to the book

6    contract, I don't even think there was an enforceable written

7    contract on that point.  So it misstates the law, and I don't

8    think there is a factual basis for it either.  But I will

9    certainly hear from Mr. Avenatti if he thinks otherwise.

10          Let me jump to the fourth.  Unless Mr. Avenatti can

11   persuade me that my instruction on assessing the credibility of

12   witnesses is legally incorrect, I am inclined to just leave my

13   charge and disregard his.

14          Let me address the other -- so actually let me, sorry,

15   I'm sort of thinking out loud here.

16          The second proposal is with respect to reasonable fee.

17   As you probably saw, I have incorporated a portion of that into

18   my proposed charge, namely, with a paragraph that does discuss

19   the sort of factors that a court or arbitrator could consider

20   in connection with a quantum meruit claim.  Again, we will get

21   to whether that should be included, what can and can't be

22   argued in a moment, but I just want to underscore that I did

23   make a change in response to Mr. Avenatti's proposal on that

24   score.

25          The first part of the proposed instruction, namely,

M21NAVE2

1    that under the law and the terms of the fee agreement that

2    Mr. Avenatti and his firms were entitled at all relevant times

3    to a reasonable fee for all the services they provided

4    Ms. Daniels is a misstatement of the law.  I do not think it is

5    accurate, and I am not going to include that.

6        I think I am not going to address the defense theory

7    of the case for a moment because that's the sort of big item.

8        With respect to the two things that Mr. Avenatti

9    addressed in his recent filing, his objections to my charge,

10   I'm certainly inclined to -- but will hear from both sides --

11   to think that including the professional responsibilities

12   professional duties instructions is well justified.  I

13   precluded the government from calling an expert on that,

14   because it is my task to instruct the jury on relevant

15   principles of law.

16       These are principles of law, not fact, and I do think

17   they are relevant for the reasons that I think I made clear in

18   the instructions, namely, that the jury could consider them in

19   evaluating whether the government has proved the first two

20   elements of wire fraud.

21       Having said that, and I think my initial proposal made

22   adequately clear that the jury could not rely on an ethical

23   violation without more to find that those first two elements

24   were met, that is to say that an ethical violation does not

25   necessarily mean that there is a criminal violation, but that

M21NAVE2

being said, in response to Mr. Avenatti's submission and his

citation to *People v. Stein*, I decided to underscore the point

by reiterating it at the close of the instruction on

professional duties in the manner that you have before you.

So I thought it made sense to just leave no doubt

about that and make sure that the jury adequately understands

that an ethical violation does not necessarily mean -- or a

lawyer can commit an ethical violation without having criminal

intent.

I am happy to hear Mr. Avenatti's objections to the

particulars of my charge. He adverts to thinking that they're

wrong, but doesn't specify in what ways, so I am happy to hear

those in due course, but that's my general view on including

them all together.

Similarly, I am not persuaded by his objection to my

proposed instructions on attorney's fees and costs. I will say

I am not firmly wedded to including any instruction on this,

and it may be that the result of our discussion here is that

there shouldn't be any instruction. My concern is that there

has already been argument -- or not argument but suggestion

made in the opening about entitlement under the contract, this

being a fee dispute, no reference to quantum meruit

specifically, but sort of in the abstract.

A lot of questions of the witnesses have sort of gone

to similar type things, so those issues are percolating.

M21NAVE2

1    They're in the air.  I think it is my obligation to ensure that

2    the jury is correctly instructed as to the relevant principles

3    of law, and my concern is if they're left to believe, for

4    instance, that that last sentence in paragraph 4 of the

5    contract was an enforceable contract, then, you know, that is a

6    mistaken impression, and they ought to understand what a

7    contract is and what an agreement to agree is.

8        By the same token, I don't want them to be left with

9    the misimpression that, you know, just because there are

10   circumstances in which a lawyer can recover a reasonable fee

11   for work that he or she did on behalf of a client, that that

12   means that the lawyer can disregard his ethical obligations and

13   misappropriate the client's money without telling the client.

14       So my concern is that it is almost inevitable that

15   these issues are going to be injected -- in what way precisely

16   is the issue we are going to discuss in a moment -- and that it

17   is incumbent upon me to ensure that the jury has an accurate

18   understanding of the background principles.  So that's sort of

19   where I was coming from in that regard.

20       I think that they are an accurate statement of

21   California law, indeed including the law that Mr. Avenatti has

22   cited in his various submissions to me on quantum meruit.  If

23   you look at the annotations, it cites some of the very same

24   authorities, statutes, and cases.  So I don't think that it is

25   incorrect.

M21NAVE2

1          Let me say that to the extent that Mr. Avenatti says

2     that either or both of these instructions -- you know, if he

3     persuades me that they misstate the law, I will certainly

4     revise them to make sure that they accurately state the law.

5     But assuming that they accurately state the law and they're

6     relevant and should be included, the fact that it leaves him

7     with not much of a defense and, in his words, directs a verdict

8     against him is neither here nor there.  Sometimes if you have

9     no legal defense, you have no legal defense.  I am not going to

10    allow him to make an argument that has no basis in the law or

11    the record in this case.  So the fact that that may strengthen

12    the government's hand is not a problem if it's an accurate

13    statement of the law and an accurate reflection of what's in

14    the record in this case.

15         So that brings me to sort of the heart of the matter,

16    which is what can Mr. Avenatti argue, given California law,

17    given the state of the record in this case.

18         Let me try to articulate some principles here.  I

19    think some of these issues and some of these lines are nuanced

20    and complicated, and in that sense I am very much not firm on

21    this.  I am just framing the discussion by sharing my current

22    thinking.  You, one or both sides, may persuade me to think

23    about this differently.

24         Number one, I do not think that Mr. Avenatti can argue

25    that he subjectively believed that he was entitled to take

1  Ms. Daniels' book money because he didn't testify, and as far

2  as I can tell, there is absolutely no evidence in the record to

3  support a jury inferring that he had that subjective belief.

4       I think that principle is all the more important to

5  police since Mr. Avenatti is doing the closing himself.

6  Needless to say, I will ensure that he does not treat the

7  closing as an opportunity to testify before the jury without

8  facing cross-examination.  But, again, I don't think there is

9  any evidence in the record with respect to Mr. Avenatti's

10  subjectively believing the arguments that he has made to me and

11  in that regard I don't think he should be permitted to argue

12  that to the jury.

13       Second, I do not think that he can argue that it is a

14  defense or that the jury must acquit if the jury concludes that

15  he was legally entitled to the money or legally entitled to a

16  reasonable fee and that the money he took was a reasonable fee.

17  That is to say, I don't think he can make the argument that he

18  was therefore entitled to the money and therefore could not

19  have committed the crime.

20       It may well be that he would have had a valid legal

21  claim in quantum meruit or for breach of contract, but as he

22  conceded yesterday, there is no authority for the proposition

23  that a lawyer with a claim to a client's proceeds can simply

24  take a client's money for himself as opposed to bringing a

25  claim in court or an arbitration, that is, in the absence of

1    Ms. Daniels' agreement or the absence of a judgment.

2           I do not believe that it is legally correct to say

3    that the money he took was his property and therefore he didn't

4    have an intent to deprive Ms. Daniels of her property.  That is

5    to say maybe he had some potential future entitlement to that

6    money, but until it's reduced to judgment and she agrees to it,

7    it is not his money; and it is fraud if he takes it and

8    deprives her of the use of it for whatever time there is

9    between that moment and his securing a judgment.

10           I think that is a deprivation of her property even if

11    it is only a temporary entitlement to the money, and I think

12    it's legally inaccurate to say that because he was entitled to

13    a reasonable fee and/or that he was entitled to a reasonable

14    fee that this was a reasonable fee and if the jury agrees then

15    it must acquit.  I think that is legally incorrect.

16           What I think he can do -- and, again, I want to

17    emphasize that these are preliminary thoughts and nuanced

18    issues, so I am thinking out loud here -- is argue something

19    along the following lines:  You will hear from Judge Furman

20    that you can only convict if you find that the government has

21    proved beyond a reasonable doubt that I had a fraudulent

22    intent.

23           And let me underscore that obviously the government

24    does bear the burden of proving his fraudulent intent and in

25    that sense good faith is not an affirmative defense.  It is the

1    government's burden to essentially disprove good faith.

2         You will also hear from Judge Furman that under

3    California law a lawyer is entitled to a reasonable fee for

4    work that he or she does on behalf of a client or may bring a

5    claim for a reasonable fee for work that he she does for a

6    client, something of that nature.

7         You heard evidence that I am a member of the

8    California bar.  The government has not proved beyond a

9    reasonable doubt that I didn't believe that I was entitled to

10   the money in light of that California law.

11        Obviously, the government can get up and say you are

12   also going to hear Judge Furman tell you that under California

13   law a lawyer can't simply take that money but has to bring a

14   claim and what have you.  But the fact that it is a weak

15   argument doesn't mean that it isn't an argument he can make.

16        The nuance being I don't think he can argue that he

17   had the subjective intent of -- you know, that he subjectively

18   believed in good faith that he had this money, but I think he

19   can say that the government hasn't carried its burden of

20   proving that he had a fraudulent intent and rely on California

21   law as an aspect of that argument.

22        That's sort of where I am at the moment.

23        Let me hear from the government.

24        MR. ROHRBACH:  If we can have just a minute to discuss

25   your Honor's --

M21NAVE2

1        THE COURT:  Let me say -- sorry, one final point and

2   then I will give you a minute.  I think it is clear that if I'm

3   correct in what I just said that Mr. Avenatti's proposed

4   instruction regarding a defense theory of the case is legally

5   and factually wrong, and therefore, he is not entitled to that

6   instruction.

7        That being said, in order to accommodate his interest

8   in a defense theory of the case instruction, I did propose one

9   additional change which is reflected in the redline of page 20,

10  which just sort of articulates succinctly, more succinctly than

11  I did, the argument that I said he perhaps could make; namely,

12  that, you know, the government has to prove that he had

13  fraudulent intent and so forth and so on.

14        Now, why don't you talk amongst yourselves and I will

15  hear from the government in a minute or two.

16        MR. ROHRBACH:  Thank you.

17        THE COURT:  Are we almost ready?

18        MR. ROHRBACH:  We are almost ready, your Honor.

19        THE COURT:  All right.

20        MR. ROHRBACH:  I think we're ready, your Honor.

21        THE COURT:  All right.

22        Mr. Avenatti, are you ready?

23        MR. AVENATTI:  Yes, I'm ready.

24        THE COURT:  The government?

25        MR. ROHRBACH:  So we are in agreement with, beginning

M21NAVE2

1    with the question of what the defendant can argue, which we

2    think is the sort of the principal guide, what instruction

3    should be given.  We are in agreement with the second and third

4    of the Court's three principles.

5         The first one, about whether the defendant can argue

6    about his subjective beliefs, we think Mr. Avenatti may be able

7    to point to circumstantial evidence that he could then argue to

8    the jury they can infer good faith from.  So he might be able

9    to point to the contract provision -- though it's

10   unenforceable -- to say, you know, that evidence supports the

11   notion that I was acting in good faith.

12        What he can't say are two things:  One is, you know, I

13   myself had that subjective belief, because that would be

14   testifying, for which there's no evidence in the record.  He

15   also can't say that the law entitles me as a matter of contract

16   or the principles of quantum meruit from the kinds of claims I

17   could be able to bring to that fee.

18        We think those both run afoul of both the law and the

19   second principle that the Court has articulated, but we are at

20   least open, and I suspect Mr. Avenatti is about to argue that

21   there is some evidence in the record to support a more

22   affirmative good faith argument.  In those sort of, in those

23   narrow bounds, without reference to a legal entitlement of any

24   kind or direct evidence of his intent, we think that argument

25   may be available to him.

M21NAVE2

1          THE COURT:  Okay.

2          Definitely scratching my head a bit at what that

3     evidence might be.  But certainly, to the extent there is any

4     such evidence, I think he would be entitled to make the

5     argument from that evidence, but not from, you know, certainly

6     not argue that he had a subjective intent except to the extent

7     it can be inferred from that evidence.

8          Okay.  Anything else you wish to say on this?  Or

9     would that --

10          MR. PODOLSKY:  Maybe turning to the instruction on

11     attorney's fees and costs.  Briefly, your Honor, honestly, let

12     me just say first I think this is tricky.  I am not --

13     hopefully in this discussion we can kind of reach the right

14     resolution, but one proposal or concept we wanted to raise

15     is -- and I'm looking at page 26 of the full version that you

16     circulated and put on the docket -- the section begins with an

17     introduction and a paragraph about sort of agreements to agree.

18          That language seems applicable and correct to make

19     clear that the defendant can't try to point to the contract as

20     a legal defense.  I think once -- we start at line 18, and then

21     you have added a paragraph, your Honor, about -- in the version

22     you circulated just before the beginning of our conference

23     about determining what constitutes a reasonable fee.  Our

24     concern about particularly the additional language, but perhaps

25     all of it is why I raise it, is I don't want to confuse the

M21NAVE2

1    jury into believing that part of their job is to be the

2    arbitrator, is to determine what a reasonable fee was.  If it

3    was reasonable for him to take $148,750, then that is a

4    defense.

5            Particularly with the addition of "in determining what

6    constitutes a reasonable fee," I worry that a juror will be

7    confused that part of their job is to try to essentially be the

8    judge of a contract dispute when that is really not the issue

9    here.  It's simply what the defendant's intent was.

10           THE COURT:  I certainly agree with that as a general

11   proposition.  I guess my question is what you're proposing.

12   Are you proposing I take it out altogether?  Are you proposing

13   the addition of language that says, to be clear, you know, your

14   task is not to determine what fees, if any, Mr. Avenatti was

15   entitled to, but I merely include this for you to consider in

16   deciding whether he had the necessary intent to commit wire

17   fraud?  I mean, what's your suggestion?

18           MR. PODOLSKY:  I think we're trying to work that

19   through.  But I think my initial thought, our first proposal

20   would be not to include the new language "in determining what

21   constitutes a reasonable fee."  We think that invites the kind

22   of quantum meruit argument, in fact if not in name, that the

23   defendant shouldn't be able to make.

24           Second, if your Honor doesn't agree with that, I think

25   our position would probably be to take out all of this after

M21NAVE2

the paragraph about agreement to agree simply to avoid the jury
being confused.

I think that would also -- the defendant would be
precluded from making arguments about, well, I could have
brought an action and start talking about that. There's no
evidence in the record about what the defendant believed as far
as his legal rights and remedies. I think at most what he
could say is look at the contract, the contract says you will
be entitled to a reasonable percentage, and try to make
inferences from that.

THE COURT: Okay, so just to be explicit about it, if
I did that, I take it your position would be that Mr. Avenatti
should be precluded from basically making any quantum meruit
argument whatsoever, making no reference to the quality or
quantity of the work he did, except to the extent that it may
relate to that third sentence, which I am instructing the jury
as to the principles of contract law. Is that your --

MR. PODOLSKY: It is, your Honor. I mean, I suppose
he could try to make some inference, look there is a lot of
evidence about how hard I worked, but I don't think he could
suggest to the jury that there's some legal basis that that
entitles him to any money. So I don't think he could make a
quantum meruit type argument, whether he calls it quantum
meruit or anything else.

THE COURT: My concern is, and I'm thinking out loud

here, my concern is that omitting that is misleading to the

jury because Mr. Avenatti may be right that -- I mean, let me

not beat around the bush. I think that last sentence of the

fourth paragraph of the agreement is unenforceable. It is an

agreement to agree. I don't see how in any action for breach

of contract for that provision Mr. Avenatti could prevail. It

seems to me quite clear.

Having said that, Mr. Avenatti may well be right

that -- I mean, he did help. He may be right that under

California law he could have after the termination of his

relationship with Ms. Daniels brought a claim for quantum

meruit saying I did a substantial amount of work on the book.

The contract is not enforceable, but I have a claim in quantum

meruit given the amount of time and energy and the work that I

did to successfully bring the book about.

That may be true. I think it probably is true, but

for the possibility that he disclaimed any interest, but that's

a question for the jury to decide.

If that's the case, then it's not really accurate to

leave the jury with a misimpression and say essentially -- I am

not going to tell them that the contract is unenforceable, but

to give them an instruction from which I think they could only

reach that conclusion and leave them with the impression that,

because of that, in essence they're finding he had no valid

contract claim. Ergo he had no entitlement to the money, ergo

M21NAVE2

1    he must have committed a crime I think is not accurate.  That

2    would be my concern.

3           I guess, to connect it to your concession of a few

4    minutes ago, to the extent that there is any evidence in the

5    record from which he could argue the jury should infer good

6    faith, I would think it is sort of dependent on them

7    understanding that there may be circumstances in which a

8    lawyer -- I don't know if you want to spell out what you think

9    that evidence is or what you think the good faith argument

10   would be, but it seems to me it is necessary to give the jury a

11   complete picture of sort of, you know, how lawyers can obtain

12   money and on what basis.

13          MR. PODOLSKY:  On that last question I think our

14   concern, and I think it was a very small one, is just not to

15   prevent Mr. Avenatti from making any commentary about the

16   contract language at all.  We want to be careful about what he

17   can say about what the evidence shows.

18          I think the daylight we were suggesting between what

19   your Honor said and what we think he could say is very minimal.

20   Just trying to pretend in a hypothetical world, where

21   Mr. Avenatti wasn't representing himself, what his lawyer would

22   say.  Could he say affirmatively, the evidence shows my client

23   had good faith.  Read the contract.  I think probably Mr. Baum

24   or somebody else, Mr. Dalack or Ms. Giwa, could say something

25   along those lines, even if it is not particularly persuasive to

1    us.

2          To go back, though, to the question I think your

3    Honor -- or to focus on the language and your Honor's concern

4    that maybe there's something misleading about the -- if we omit

5    that there's the possibility of recovery, I suppose two

6    comments.

7          One, we don't have to resolve this, but I think it's

8    relevant to say -- I think it may be more complicated than he's

9    a lawyer, he could recover the reasonable value.  It is not

10   even clear to me he was acting as a lawyer at that point.

11         I think our number one concern about the way that this

12   section is drafted with the revision, that is, with the

13   insertion about what constitutes a reasonable fee, is now we

14   are into quantum meruit in substance if not in name, and

15   suggesting to the jury that they may -- they should evaluate

16   how much work he did and so on.

17         Whereas the preceding paragraph of that instruction

18   says, in certain circumstances a lawyer may be able to recover

19   the reasonable value of his or her legal services rendered to a

20   client.  I think that is sufficient for the jury to understand

21   that in some circumstances the lawyer could seek the reasonable

22   value of his services.  They don't need to know, and I don't

23   they should be told that what that means is a calculation of

24   reasonable hourly rate, the nature of the work performed, its

25   difficulty, the amount of work involved and the specifics that

M21NAVE2

are contained in the next paragraph.  Because the jury doesn't
need that information, and I'm concerned it will lead them into
an inquiry that is not relevant to their job.  It still may be
useful to add the sort of cautioning language that your Honor
suggested a few moments ago about what the true province of the
jury is on these matters.

THE COURT:  Okay.  Putting aside the possibility of
adding something about what they're being asked to decide and
not asked to decide, your proposal is not to take out the sort
of *sub silentio* reference to quantum meruit, but to take out
the new paragraph that discusses the factors, just to avoid any
possibility of confusion that their job is to evaluate those
factors.

MR. PODOLSKY:  I think, given our colloquy, that is
what makes the most sense in this instance, yes.

THE COURT:  All right.

Let me ask you to think about something while I turn
to Mr. Avenatti.  I will have more to say on summations in due
course, but I am very, very concerned I think I intimated about
policing Mr. Avenatti's closing and ensuring that he does not
testify through his closing without subjecting himself to
cross-examination.

I will be vigilant.  I am not averse to sustaining
objection even when an objection isn't made, and I trust that
you will be vigilant and object when you think one is

M21NAVE2

1     warranted.

2             One small measure that I think might assist in that

3     regard is I'm inclined to require Mr. Avenatti to refer to

4     himself in the third person in the summation.  I did not

5     require that in his questions to the witnesses, but I feel like

6     it might underscore the point that I will make to the jury,

7     that what he says in his closing is not evidence and they

8     should not consider it in that regard.  I don't know if you

9     want to speak to that now or later, but --

10             MR. PODOLSKY:  Maybe we can give a little more thought

11    to the particular proposal, but we agree that our number one

12    concern in this closing is the following sentence:  I believed,

13    or I didn't think or I didn't -- etc., etc.  I think you are

14    exactly right, your Honor, that is when we would likely object.

15    So perhaps your Honor's suggestion is a solution to that up

16    front.

17             THE COURT:  All right.

18             Mr. Avenatti?

19             MR. AVENATTI:  Yes, your Honor.  A few points.

20             Number one, I object to any requirement that I have to

21    refer to myself in the third person now.  I did not have to

22    refer to my third person during the trial up to this point in

23    time.  It is prejudicial to now require me to refer to myself

24    in the third person for closing argument.

25             Among other things, it reflects or could be seen as a

M21NAVE2

1    level of arrogance by the jury, which is certainly not --

2              THE COURT:  Let me interrupt to make clear my

3    proposal.  I would explain to the jury beforehand that I am

4    requiring you to refer to yourself in the third person, just to

5    ensure that there's no ambiguity that you are making these

6    arguments as a lawyer and therefore referring to yourself as

7    the defendant rather than testifying.  So I don't think there

8    would be any concerns about arrogance, because I would make

9    clear that I ordered you to do it that way.

10             MR. AVENATTI:  Despite that instruction, your Honor,

11   because there is such a connotation that goes along with

12   referring to oneself in the third person, I still don't believe

13   that that would cure the prejudice, your Honor, and I don't

14   think it's necessary.  That is number one.

15             Number two, if the Court was that concerned about it,

16   I would be happy to allow Mr. Baum to give the closing argument

17   if that would alleviate certain concerns that the Court and the

18   government has relating to me testifying in my closing

19   argument.  I would be happy to permit that if the Court would

20   permit it, and Mr. Baum is prepared to do it.

21             (Continued on next page)

22

23

24

25

M21Wave3

1          THE COURT:  All right.  I will not.  You waived your

2   right to counsel, and I told you you couldn't proceed in a

3   hybrid fashion.  You don't have a lawyer anymore.  So they may

4   not speak on your behalf.

5          MR. AVENATTI:  All right.

6          The other thing -- I want to be clear about this, your

7   Honor -- is your Honor took the bench and your Honor made a

8   number of comments about a lot of different things and then

9   turned to the government.  I just want to make sure, for the

10  purposes of this charge conference, of course --

11         THE COURT:  Can you slow down a little bit.

12         MR. AVENATTI:  Sure.

13         I want to make sure, for the purposes of the charge

14  conference, because it's so important and because, in my view,

15  these issues are fraught with significant danger to the

16  government and they proceed at their own risk, that we have a

17  clean record as to each of these issues and each of my

18  objections and each of my comments on the record.  So let me

19  turn, with that, if I could, to the following.

20         First of all, for the benefit of the record --

21         THE COURT:  Slow, please.

22         MR. AVENATTI:  For the benefit of the record, I

23  reiterate and reaffirm my objections and requests as set forth

24  in the filings at Dkt. 350 and 352.  While some of the changes

25  proposed by the Court in response to those filings may be a

M21Wave3

1    step in the right direction, I do not believe that they

2    adequately address the concerns and objections set forth in 350

3    and 352, nor do they cure the prejudice.

4         Now, turning to the issue of restricting my closing,

5    as proposed by the Court, I object to each of those

6    restrictions as highly prejudicial and interfering with my

7    ability to mount a defense and exercise my rights under the

8    Constitution and the Sixth Amendment.

9         Taking them in order, I object to the restriction

10   proposed by the Court which would prevent me from arguing that,

11   for instance, the contract provided adequate evidence to

12   suggest or to instill a subjective belief that I could take the

13   book money.

14        Furthermore, the Court made a statement on the record

15   that seemed to suggest that every time there's a deposit into a

16   trust account without the express approval of the client, you

17   cannot take money out of the trust account.  That is a complete

18   misstatement of California law.  It's just not accurate.  When

19   there's a deposit into the trust account, you don't have to get

20   client approval every time you remove money or spend money out

21   of the trust account.

22        Separate and apart from the law, Ms. Daniels testified

23   under oath that I had the sole authority to spend any money out

24   of the trust account without authorization from her, any

25   further authorization.  The government had an opportunity to

1    redirect.  They declined to do so.  So the testimony's in the

2    record.  I don't have the page number handy.  I'd be happy

3    to --

4        THE COURT:  But Ms. Daniels is not instructing the

5    jury on the law.  To the extent that Ms. Daniels has an

6    understanding of what you could or couldn't do with the trust

7    accounts is not a relevant thing.  We can discuss the

8    particulars of my charge rather than some abstraction.  If you

9    think that there's something in the proposed charge that's

10    inaccurate on that front, I'm certainly happy to entertain it,

11    but I don't think there's any principle of California law that

12    says that a lawyer can simply take money from the trust fund

13    for his own fees without advising the client or where there's a

14    dispute over those fees.  In fact, I think California law is

15    directly contrary to that.  But I don't want to discuss this in

16    the abstract -- I don't want to discuss that in the abstract.

17    I'm happy to hear your specifics with respect to the

18    professional duties discussed in the charge, but carry on.

19        MR. AVENATTI:  The other statement I'd like to make

20    for the benefit of the record is, your Honor, if that last

21    sentence is found to be void or invalid as a matter of law, I

22    believe that under California law it negates the entire

23    contract, certainly as it relates to compensation, at which

24    point under 6147 and 6148 and the law that I've cited, the

25    attorney is entitled to a reasonable fee.  So I'm perplexed as

M21Wave3

1    to how we're proceeding as if that one sentence is excised,

2    which results in me not being able to argue, according to the

3    Court, to the jury that that contract entitled me to a fee from

4    the book at the same time the Court is precluding me from

5    arguing that I was entitled to a reasonable fee.  I don't

6    understand.

7        THE COURT:  Because there's a difference between

8    saying I have a valid claim to a fee, that if I had filed it in

9    court or brought in arbitration I might have been able to

10   obtain a portion of the book advance that she received as

11   payment for my services and saying that I could simply steal

12   that money from her without even telling her and indeed with

13   lying to her.  Those are two very different principles, and I

14   asked you directly yesterday, do you have any authority for the

15   proposition that under California law, where you have a

16   subjective belief -- and I'm going to assume for the sake of

17   argument, and there's nothing in the record that I think really

18   supports this -- assume for the sake of argument that it was

19   your subjective belief that you were entitled to a portion of

20   her book fees because, under *quantum meruit*, I asked you to

21   cite me anything in California law that entitled you to simply

22   take it without telling her, and you could not cite anything.

23   And I think that in that regard my instruction is an accurate

24   statement of California law.  It actually does, contrary to the

25   government's desires, include an instruction about the idea of

M21Wave3

1    *quantum meruit* so they understand that there is such an idea

2    under California law.

3            What it doesn't do is tell them that if you have a

4    valid *quantum meruit* claim you can simply take the money for

5    your own.  You can't.  I'm certainly still open to your

6    bringing authority to my attention that suggests you can, but

7    in the absence of that authority and given the authority that I

8    cited elsewhere in the charge, it would be misleading and wrong

9    to suggest to this jury that because you might have believed

10   that you had an entitlement to a portion of her book fees

11   pursuant to *quantum meruit* -- and I want to be clear, I don't

12   expect to hear those words in front of the jury -- that you

13   were entitled to simply take the money.  That is wrong.

14   Inaccurate.  Baseless.

15           So I have ample authority to preclude you from making

16   an argument to this jury that misstates the law and has no

17   basis in the record, and I intend to exercise that authority

18   and ensure that you do not.  I would do that if Mr. Baum were

19   making the closing arguments, and I will certainly do that if

20   you are because I think the necessity of ensuring that the jury

21   does not misunderstand and think that you're providing

22   testimony is absolutely paramount.

23           MR. AVENATTI:  Understood, your Honor.

24           For the record, you stated earlier that that was a

25   conceded point by me.  It is not conceded by me.  I do not

M21Wave3

1  think that that is --

2         THE COURT:  I don't think I said it was a conceded

3  point.  I said you conceded that you didn't have any authority

4  to support the point.  That was a conceded point.

5         MR. AVENATTI:  Yes, as of yesterday.  Correct.

6         THE COURT:  I'm going to ask you again.  Do you have

7  any authority for the proposition that where a lawyer has a

8  potentially valid *quantum meruit* claim that could be filed in

9  court or brought in arbitration, that instead of bringing it in

10  court or in arbitration, you can simply take that money for

11  yourself, let alone lie to your client to take it?  Do you have

12  any authority?

13         MR. AVENATTI:  Your Honor, I don't have any authority

14  as I sit here today, but what I do know is that if the client

15  has agreed to pay costs, by contract, you are certainly

16  entitled to be reimbursed your costs upon receipt.

17         THE COURT:  And the provision that you're relying on,

18  which I think is unenforceable, does not include any reference

19  to costs.  Once again, you're shifting ground.  You're now

20  talking about the second clause, which relates to the

21  CrowdJustice fund, not to the book advances.

22         MR. AVENATTI:  No.  I'm talking about --

23         THE COURT:  You're not going to confuse me, and Mr.

24  Avenatti, I am going to do everything in my power to ensure

25  that you don't confuse the jury, because I want the jury to

M21Wave3

1    understand what the issues are in this case, what the law is in

2    this case, and make a decision about whether you committed a

3    crime and whether the government has proved beyond a reasonable

4    doubt that you committed the charged crime.  You can make any

5    valid argument you want, and I'm not going to prevent you from

6    doing so, but you cannot invoke the Sixth Amendment of the

7    Constitution to say that you were entitled to make a defense

8    that is baseless as a matter of law or baseless as a matter of

9    the record.  There is no authority that allows you to do that.

10        MR. AVENATTI:  Your Honor, paragraph 3 of the contract

11   expressly states that she agrees to pay costs.  It's in

12   paragraph 3 of the contract.  Period.  The government wants to

13   ignore paragraph 3.  I'm not going to ignore paragraph 3 of the

14   contract.  So paragraph 3 expressly provides that the client,

15   Ms. Daniels, is to pay costs.  On time.  So to prevent me from

16   arguing that I was entitled to take the money and apply it to

17   costs is error.

18        THE COURT:  OK.  What else do you want to say?

19        MR. AVENATTI:  Well, at this point --

20        THE COURT:  Actually, it also says to pay bills for

21   reasonably incurred costs on time.

22        Did you send her a bill for that money?

23        MR. AVENATTI:  Your Honor, I'm entitled to make --

24        THE COURT:  Is there any evidence in the record that

25   you sent her a bill for that money?

M21Wave3

1          MR. AVENATTI:  Your Honor, I believe I'm entitled

2    to --

3          THE COURT:  Yes or no.

4          MR. AVENATTI:  Your Honor, that's the government's

5    argument.

6          THE COURT:  I don't know what the government's

7    argument is or not.  I asked you a question.  Is there any

8    evidence in the record that you sent her a bill for the money

9    that you took from the book advance?

10         MR. AVENATTI:  Well, your Honor, it depends on how you

11   define bill, but I think there is some evidence in the record

12   on that.

13         THE COURT:  All right.  I will await your argument to

14   see what that is.  Do you want to proceed with the other

15   principles that I've tried to articulate?

16         The government conceded, by the way, that there may be

17   evidence from which you could argue or infer good faith.  Do

18   you disagree with the proposition that you should not be

19   permitted to say that you had subjectively a belief that you

20   were entitled to the money?

21         MR. AVENATTI:  Do I disagree with that restriction on

22   my closing?

23         THE COURT:  Yes.

24         MR. AVENATTI:  Yes, I disagree with that restriction

25   on my closing, because I should be able to point to the fee

M21Wave3

1    contract, the course of dealing with Ms. Daniels, the amount of

2    work that was involved, the costs that were expended, all of

3    which would support a subjective belief as well as an objective

4    belief and an inference that I was entitled to the money.

5         THE COURT:  OK.  Well, objective, you're wrong for the

6    reasons we've discussed.

7         Subjective, I think it may be, as the government seems

8    to acknowledge, that you can point to those things and say that

9    the jury could infer from those things that Mr. Avenatti had a

10   subjective belief that he was entitled to treat this money as

11   his own.  But I don't think that you can get -- let me put it

12   differently.

13        You're not going to get up and say Michael Avenatti or

14   I, whatever the case may be, subjectively believed that I was

15   entitled to this money.  You didn't testify.  There is no

16   direct evidence in the record regarding your subjective belief.

17   I will allow you, if you clearly articulate that you are urging

18   the jury to draw inferences from evidence that is in the

19   record, to draw the inference that you had a subjective belief.

20   The that is one thing, but I will absolutely police the line

21   and prevent you from saying anything that suggests that you had

22   that subjective belief in a way that suggests that -- in the

23   way that you could have done if you testified.  OK?

24        MR. AVENATTI:  Fine.  Understood, your Honor.

25        Just for the benefit of the record, also, I want to

M21Wave3

1    state that the government brought out evidence that Ms. Daniels

2    had a conversation with me about the fee that I would receive

3    for the book contract.  I should be permitted to ask the jury

4    to draw reasonable inferences from that conversation, for

5    example, that she believed that there was a fee for the work

6    performed due.

7            THE COURT:  It would be helpful if you cited a

8    transcript page, but be that as it may, I think I've

9    articulated the line there.  And proceed as you would and with

10   caution, understanding that there is a line between saying I

11   subjectively believed this and there is evidence from which you

12   can infer that I subjectively believed this.

13           The second proposition, as I said, was that you cannot

14   make the argument that they must acquit if they find that you

15   were entitled, under the contract or otherwise, to a reasonable

16   fee and that the amount of money that you allegedly took was a

17   reasonable fee, because that is a misstatement of the law.

18           Do you disagree with that proposition?

19           MR. AVENATTI:  Yes, I do, your Honor, because I

20   believe that it negates the good faith defense.  It effectively

21   operates to render the good faith defense null and void,

22   illusory.

23           THE COURT:  We just discussed the good faith defense.

24   The good faith defense turns on your subjective intent, and for

25   the reasons that we just discussed, I will allow you to make an

1    argument that you can infer from the record, evidence in the

2    record, that you believed that you were entitled to take the

3    money or that the money was yours.  That is different from

4    arguing that if the jury finds that you had a legal entitlement

5    to the money, you can't be convicted because it was not

6    Ms. Daniels's property or money.  That's the second point, the

7    objective point, not the subjective point.

8           MR. AVENATTI:  Your Honor, now I'm confused, and I

9    want to clarify because I don't want any problems tomorrow.

10          The Court is not permitting me to state that I

11   believed that I had an entitlement to the money because of the

12   contract.  Am I correct about that?

13          THE COURT:  I'm not going to permit you to say that

14   you believed anything.  I'm going to permit you to say that the

15   jury can infer -- I'm going to permit you to say one of two

16   things.  One is the government hasn't proved that you didn't

17   believe that you had an entitlement to the money.  I certainly

18   think that it is the government's burden to do that, and you

19   can certainly rely on the burden and argue that the government

20   didn't carry its burden.

21          MR. AVENATTI:  I can argue --

22          THE COURT:  In part, based on the government's

23   concession, I will permit you to argue that you can infer from

24   this evidence in the record or that evidence in the record that

25   I had good faith in taking the money because I did a bunch of

M21Wave3

1    work, and as it says in the contract, I would be entitled to a

2    reasonable percentage to be agreed upon, etc., etc., and that

3    you can infer from that that I have good faith.

4            This conversation is underscoring to me why I should

5    require you to refer to yourself in the third person, but we'll

6    bracket that for the moment.

7            What I will not let you do is stand up and say I

8    believe I had entitlement to this money, ergo, you can't

9    convict me, because that is allowing you to testify, through

10   your closing, without subjecting yourself to cross-examination.

11   Do you understand?

12           MR. AVENATTI:  I think I do.  I hope I do.

13           THE COURT:  OK.  Let me turn back to the second

14   proposition, which, again, doesn't turn on your subjective

15   belief or intent but is a statement that because you were

16   entitled, that you had a legal entitlement or a legal claim to

17   the money as a reasonable fee, if they agree with that

18   proposition, that they cannot convict you.  I think that is a

19   misstatement of the law, and you should not be permitted to

20   make that argument.

21           Do you disagree?

22           MR. AVENATTI:  I do disagree for the reasons

23   previously stated on the record.

24           THE COURT:  Can you reiterate those, because I don't

25   know what they are.

M21Wave3

1        MR. AVENATTI:  Because as I previously stated, your

2   Honor, if I was entitled to the money, whether it be fees or

3   costs, if there was an entitlement to the money, I don't

4   believe I can then have the requisite intent -- for the

5   reasons, again, that I've previously stated -- necessary to

6   convict me.

7        THE COURT:  No.  You would have to subjectively

8   believe that you were entitled to simply take the money for

9   your own, and there's certainly no evidence to support that in

10  the record.

11       MR. AVENATTI:  But the Court --

12       THE COURT:  But again, I'm not precluding you from

13  making an argument, within bounds, as long as you don't cross

14  the line and testify.  I'm not precluding you from making an

15  argument about your good faith and subjective intent.  What I

16  am saying here is that you cannot make the argument that this

17  was a reasonable fee, that the law entitled you to a reasonable

18  fee, and ergo, this wasn't even Ms. Daniels's property, so you

19  couldn't be convicted of wire fraud because not only was there

20  no intent but there was no deprivation of her property at all.

21  That is a misstatement of the law.

22       MR. AVENATTI:  And I disagree.  I don't think that is

23  a misstatement of the law, your Honor, and for that reason,

24  that's why I'm objecting to the Court curtailing that argument

25  in my closing argument.

M21Wave3

```
1              THE COURT:  All right.

2              Mr. Podolsky, do you think I have misstated the law on

3    that?  Anything you want to add on that?

4              MR. PODOLSKY:  No, your Honor.  I think you're

5    absolutely accurate on that, and it's not a proper argument to

6    the jury to say that if you find now that the fee is reasonable

7    I can't be convicted of the crime.  I think that should be

8    precluded.

9              THE COURT:  All right.  I agree, and I'm prepared to

10   sustain any objection to that argument.  Mr. Avenatti, you've

11   preserved your objection, but you should be forewarned not to

12   cross that line.

13             My third proposition, I think, we have adequately

14   covered.  Again, I think it's quite clear that the

15   government -- Mr. Avenatti can argue that if the government

16   hasn't proved that he didn't have good faith -- that is, the

17   government hasn't proved bad faith, because there are all these

18   reasons to think that a reasonable lawyer or that Mr. Avenatti

19   might have thought that he could take this money.  But only if

20   it's actually in the record and inferable from what's in the

21   record.

22             All right.  Anything else you want to discuss in the

23   sort of general proposition portion of the discussion?  Then we

24   can talk about your particular objections and turn to the

25   charge itself.
```

M21Wave3

1          MR. AVENATTI:  There was one other item I wanted to

2     raise, your Honor.  You had discussed the "theory of the case"

3     proposed instruction.  I don't know if you want to talk about

4     it now or if you want to wait until --

5          THE COURT:  Well, let's walk through your two letters

6     and then each item there, and then we'll turn to the charge

7     itself.

8          I already gave you my inclinations.  Let's talk about

9     350, the letter that you filed early this morning.

10          You requested an instruction regarding the contract.

11     As I indicated, I think it is wrong as a matter of both fact

12     and law.  Do you wish to be heard on that?

13          MR. AVENATTI:  Beyond what I've already said on the

14     record and submitted in the letter, which I reiterate, no, your

15     Honor.

16          THE COURT:  OK.  So I will not include that

17     instruction.

18          Do you wish to be heard as to the beginning of the

19     second proposed instruction regarding a reasonable fee?  For

20     now, I have included some language along the lines of the

21     second portion, but do you wish to be heard further on the

22     first line?

23          MR. AVENATTI:  Again, just for the benefit of the

24     record, I reiterate the request, and I'll address the Court's

25     proposed language at the appropriate time in the charge, if

M21Wave3

1    that's acceptable to your Honor.

2            THE COURT:  That is acceptable.

3            Let's switch to the instruction regarding "interest in

4    the outcome."

5            As I said, I'm inclined to use my standard charge on

6    witness credibility.  If you can tell me why it would be

7    incorrect or doesn't adequately do the job, I'm open to your

8    suggestions, but otherwise, I'll leave it there.

9            MR. AVENATTI:  Well, I believe, your Honor, I cited to

10   *United States v. Gaines*, 457 F.3d 238 at 240.

11           THE COURT:  I see the citation, and I'm familiar with

12   *Gaines*, but tell me what is wrong in my instruction.

13           MR. AVENATTI:  Well, I think that this instruction is

14   a more robust, full, and complete instruction, your Honor,

15   addressing the potential bias, etc., of a witness, especially

16   due to interest in the outcome.  So this is the instruction

17   that I'm requesting.

18           My understanding is that's the Second Circuit

19   recommended instruction.

20           THE COURT:  Actually, *Gaines* involved the testimony of

21   a defendant and argued that the standard instruction given

22   until then with respect to a defendant's testimony was error

23   and they should just give the same charge with respect to all

24   witnesses, including the defendant.  So you're wrong, but be

25   that as it may, on page 10, lines 3 to 4, I include precisely

M21Wave3

1   the proposition that you would like me to include, so I won't

2   make any changes in response to that.

3         With respect to the defense theory of the case, I

4   think we've adequately covered that.  For reasons that I've

5   made clear, I think the proposed instruction by Mr. Avenatti is

6   wrong both as a matter of law and as a matter of record and

7   what arguments can be made.  I have made a more limited

8   proposed change to accommodate his request for a defense theory

9   instruction, and we'll take that up when we turn to my proposed

10  charge.

11        All right.  I think, Mr. Avenatti, you've been

12  adequately heard on the "professional duties" instruction and

13  on the "fees and costs" instruction writ large.  So I think

14  I'll entertain any specific objections with respect to those,

15  but I think we've otherwise covered your objections in Dkt. No.

16  352.

17        Given that, let's turn to the actual draft.  And why

18  don't you assume that it is as modified by the redline so we'll

19  have to switch back and forth in terms of page and line number.

20        But let me start with the government, if you can go

21  through from beginning to end citing me by page and then line

22  and then whatever your suggestion or objection is.

23        MR. ROHRBACH:  Yes, your Honor.

24        We only have a few suggestions.  First is on page 3,

25  line 11.  We certainly agree with the proposition that the

M21Wave3

1    conduct of counsel and Mr. Avenatti in his capacity as counsel

2    are irrelevant to this case.  But the proposed instruction

3    suggests that Mr. Avenatti's conduct in general is not in any

4    way at issue.

5            THE COURT:  Let me stop you.  I struggled over this a

6    little bit because of precisely the point that I think you're

7    getting at.  Obviously his conduct is very much at issue in

8    this case, and my intention was not to suggest otherwise in the

9    instruction.  So I'm open to there being a better way.  How

10   about "personalities and the conduct of both counsel and Mr.

11   Avenatti," or "to the extent that he acted as his own counsel

12   in this case"?

13           MR. ROHRBACH:  That would be fine, your Honor.  Our

14   proposal was in this courtroom, or something along those lines.

15           MR. AVENATTI:  The defendant prefers the suggestion by

16   the government and objects to any additional reference to the

17   fact that the defendant is representing himself.

18           THE COURT:  All right.  I like your use of the third

19   person there, Mr. Avenatti.

20           How about "personalities and the conduct of both

21   counsel and Mr. Avenatti, in this courtroom, are not in any way

22   at issue"?

23           MR. AVENATTI:  Or "during the trial."

24           THE COURT:  Maybe that's even better.

25           MR. ROHRBACH:  That's fine, your Honor.  And we would

M21Wave3

1  ask for the same change, just for clarity, on line 13.  It's

2  the next sentence and has similarly broad language.

3          THE COURT:  All right.  What I would propose is adding

4  the words "during this trial" but after conduct:  "The

5  personalities and the conduct during this trial of both counsel

6  and Mr. Avenatti are not in any way at issue.  If you formed

7  opinions of any kind about the personalities or conduct during

8  this trial of any of the lawyers in the case or of Mr.

9  Avenatti," etc., etc.

10         MR. ROHRBACH:  Thank you, your Honor.

11         THE COURT:  Mr. Avenatti.

12         MR. AVENATTI:  No objection.

13         THE COURT:  Very good.

14         Next.

15         MR. ROHRBACH:  The government's next (inaudible) is on

16 page 4, line 9.  The "presumption of innocence and burden of

17 proof instruction" is accurate to the government's

18 understanding, but at the end of it, where it says he carries

19 the presumption with him "during the course of your

20 deliberations in the jury room," the government would propose

21 adding "unless and until you determine that the government has

22 proven its case beyond a reasonable doubt," at which point the

23 presumption is overcome and no longer obtains.

24         MR. AVENATTI:  Your Honor, I object to the change.

25 It's self-evident.

M21Wave3

1          THE COURT:  All right.  I will make the following

2     change:  "Unless and until the government proves beyond a

3     reasonable doubt that he committed one of the charged crimes."

4          MR. ROHRBACH:  Thank you.

5          THE COURT:  Next.

6          MR. ROHRBACH:  Our last proposed change actually

7     arises in two places.  The first is page 20, line 13.

8          THE COURT:  OK.

9          MR. ROHRBACH:  They are both places in which the

10    proposed instruction, the phrase that if the defendant in good

11    faith believed he was entitled to the money or property, and in

12    our view, it's more accurate to say that he needs to believe he

13    was entitled to take the money or property.  So we would

14    propose adding the word "take."

15         THE COURT:  Sorry.  When you say page 20, line 13,

16    that's in the redline.

17         MR. ROHRBACH:  That's in the redline, yes, your Honor.

18         In the Court's proposed, at the bottom of that

19    paragraph, it uses that same phraseology, on line 18, so we

20    would propose using that throughout, and we've noticed two

21    places.

22         THE COURT:  This is in the redline, the few pages I

23    gave you earlier, page 20, line 13.

24         MR. ROHRBACH:  It says "good faith belief that he was

25    entitled to," and we would add the word "take" there.

M21Wave3

1            THE COURT:  OK.  And where does it appear elsewhere?

2            MR. ROHRBACH:  The other is not on the redline, page

3    21, line 1.  Actually, that may even be the same location, just

4    in the non-redline version.

5            THE COURT:  I think it is.

6            MR. ROHRBACH:  Those are the government's only

7    suggestions to the charge, your Honor.

8            THE COURT:  All right.

9            Mr. Avenatti.

10            MR. AVENATTI:  Yes.  Let me address those two, your

11    Honor.

12            THE COURT:  It's just one, turning back.

13            MR. AVENATTI:  OK.  Turning back to 20, line 13, the

14    government's proposal to add the word "take" behind "that he

15    was entitled to," and then "take the money or property," it

16    then says "that he deprived the victim of."  So it's

17    duplicative.  It should either be "take" or "deprived the

18    victim of."  There's no need to reinforce the concept twice in

19    that sentence, and I prefer "take."

20            MR. ROHRBACH:  Well, your Honor, the phrase at the end

21    is a description of the money or property, and the point of the

22    word "take" is to distinguish between the act of taking the

23    property and the fact that he may have had a legal entitlement,

24    in his view, to the property.  So the phrases serve different

25    purposes in the sentence.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M21Wave3

1          THE COURT:  All right.  What if we just said "entitled

2    to take the money or property from the victim"?

3          MR. ROHRBACH:  That would be fine, your Honor.

4          THE COURT:  I take it that's your suggestion, Mr.

5    Avenatti.

6          MR. AVENATTI:  Yes, sir.

7          THE COURT:  That avoids a dangling participle, so all

8    the better as far as I'm concerned.

9          All right.  Nothing else from the government?

10          MR. PODOLSKY:  One other suggestion, which is for the

11    purpose of efficiency, on page 36.  This is in the instruction

12    on "right to see exhibits and hear testimony."

13          THE COURT:  Yes.

14          MR. PODOLSKY:  I wondered if, after line 17, we might

15    consider a sentence to the effect of "it will be more

16    efficient, should you want any testimony, to ask for the

17    testimony of particular witnesses rather than particular

18    topics."

19          The reason I'm mentioning that is, in my experience,

20    when the jury comes back and says I want all the testimony on

21    X, we spend hours, if not days, trying to figure out what that

22    means.

23          THE COURT:  Mr. Avenatti.

24          MR. AVENATTI:  So, just so I understand and we have a

25    clean record, what is the exact language being proposed?

1          MR. PODOLSKY:  My sentence, although I'm not married

2     to the precise wording, was "it would be more efficient, should

3     you want any testimony, if you ask for the testimony of

4     particular witnesses rather than particular topics."

5          MR. AVENATTI:  So, I object because it seems to

6     suggest to the jury that they can't ask for particular topics

7     and have to ask only for specific witness testimony.  I think

8     it should be left the way it is.

9          THE COURT:  All right.  I'll leave it as is.

10          I don't disagree with you, Mr. Podolsky, that that can

11     be time-consuming and frustrating, but that's the point I'm

12     underscoring to them, that they should be as precise as

13     possible, and beyond that and telling them that it may be

14     time-consuming, I think we shouldn't put our thumb on the

15     scales of what they might request.  So I'll decline the

16     otherwise helpful suggestion.

17          MR. PODOLSKY:  Trying to save everyone a lot of pain,

18     that's all, but I understand, your Honor.

19          THE COURT:  I take it no objections to the verdict

20     form as proposed.

21          MR. PODOLSKY:  No, your Honor.

22          THE COURT:  So the record is clear, I will be

23     docketing the additional redline pages, by the way, just so

24     that they're part of the record and the record is clear.  But

25     any objections to the proposed redline changes that I gave you

M21Wave3

1    just before this?

2           MR. ROHRBACH:  The only one is the one before we

3    discussed on page 27, the description of the *quantum meruit*

4    factors.

5           THE COURT:  And your suggestion or proposal would just

6    be to delete paragraph 1, 8 through 15?

7           MR. ROHRBACH:  Yes, your Honor.

8           THE COURT:  All right.  I will ponder that.  In the

9    meantime, why don't you ponder whether there's an alternative

10   or additional approach of adding some language in here that

11   makes clear that their task is not to decide what a reasonable

12   fee would be or whether it was reasonable but, rather, whether

13   Mr. Avenatti committed wire fraud.  I'm not suggesting that's

14   the right language.  I'm just adverting to the proposition.

15          All right.  Mr. Avenatti, let's go through it in order

16   as well.

17          MR. AVENATTI:  Do you want me to address that last

18   point first, your Honor?

19          THE COURT:  No, because it's not yet ripe.  So going

20   through the charge as proposed, let's start with the clean

21   version.  Any objections or suggestions there?  Obviously, you

22   should keep in mind the proposed amendments that I've made and,

23   in that sense, don't need to lodge an objection to something

24   that I've proposed to change already.

25          So go ahead.  Page and line number.

M21Wave3

1              MR. AVENATTI:  Yes, your Honor.

2              Page 2, line 21 through line 4 on page 3.  Well,

3        actually, let me be a little more finite.

4              Page 2, line 22 to line 23, I do not want the jury

5        reminded that I was represented by a lawyer when the trial

6        began.  It's unnecessary.  I believe the instruction should

7        start with a sentence that basically states, "as I previously

8        advised you" --

9              THE COURT:  How about I just strike the entire first

10       sentence of that instruction and simply say "a criminal

11       defendant has a constitutional right under the Sixth

12       Amendment," etc., and go from there.

13             MR. AVENATTI:  I would prefer to state, "Mr. Avenatti

14       has a constitutional right under the Sixth Amendment to the

15       United States Constitution to represent himself."

16             THE COURT:  All right.  I'm not going to do that.

17       I'll do what I proposed, but I think your other point is

18       well-taken.  There's no reason to remind them that you

19       exercised that right in the middle of trial.

20             Next.

21             MR. AVENATTI:  Page 3, line 17.  Before the word

22       "evidence," I would propose the words "testimony and" -- or

23       "testimony or," I should say.  So it would read "objection to

24       any testimony or evidence."

25             THE COURT:  Fine.

M21Wave3

1          Next.

2          MR. AVENATTI:  Same change on line 18.

3          Same change on 19.

4          THE COURT:  All right.  I do explain elsewhere that

5    testimony is evidence, but regardless, I'm happy to make those

6    changes.

7          Next.

8          MR. AVENATTI:  Page 5, line 3 through 7.  With the

9    exception of the words "on the other hand," I'm requesting that

10   that paragraph be moved above the paragraph beginning on page

11   4, line 21, and the reason is because of the presumption of

12   innocence, your Honor.

13         THE COURT:  In other words, you want the "not guilty"

14   paragraph to precede the "guilty" paragraph.

15         MR. AVENATTI:  Yes.

16         THE COURT:  Any objection from the government?

17         MR. ROHRBACH:  No objection, your Honor.

18         THE COURT:  All right.

19         Next.

20         MR. AVENATTI:  Page 8.

21         Your Honor, one other change on page 4 -- I'm sorry --

22   line 16.

23         THE COURT:  Yes.

24         MR. AVENATTI:  After "or the lack of evidence," I'm

25   requesting that the words "and inconsistencies in the evidence"

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M21Wave3

1    be added.

2              THE COURT:  No, I will not do that.

3              Next.

4              MR. AVENATTI:  And on page 4, line 20, I'm asking for

5    the words "not all possible doubt" to be deleted.

6              THE COURT:  All right.  Next.  I'm not going to do

7    that.

8              Next.

9              MR. AVENATTI:  Page 8, lines 13 through 17, I'm asking

10   that this paragraph be eliminated, your Honor.  This

11   instruction has been given a number of times to the jury.  At

12   this point it's excessive and prejudicial.

13             THE COURT:  How is it prejudicial if it's an accurate

14   statement of the law?

15             MR. AVENATTI:  Well, just merely because, your Honor,

16   you've already reminded the jury at least, I think, five or six

17   or seven times that my questions are not evidence and that I

18   was acting as my own representative.  You have not done the

19   same as it relates to the government.  Now, obviously they're

20   counsel.  I understand that.

21             THE COURT:  Yes, and they didn't participate in any of

22   the events, and they didn't reference themselves in any

23   questions given.

24             All right.  The objection is rejected.  I would have

25   included this in the instruction regarding self-representation,

M21Wave3

1    which is actually where it appears in the standard instructions

2    in most circuits, but I thought it made more sense to put it in

3    this instruction, which reminds them what is and isn't

4    evidence.  So I think the fact that you represented yourself

5    really raises the danger that that distinction is obscured, and

6    it is critical to remind them of it.

7         Next.

8         MR. AVENATTI:  Page 8, your Honor, line 20 and 21.

9    You make the statement "any questions that I asked or

10   instructions that I gave were intended only to clarify the

11   presentation of evidence," and then the sentence continues.

12        There are key, there are a couple key moments during

13   this trial where your Honor asked a question and there was an

14   answer elicited in response to that or provided in response to

15   that.  I don't want the jury left with the impression that

16   somehow that question and answer carries less weight than a

17   question or answer involving either me or one of the government

18   lawyers.  I understand the Court doesn't want to give it any

19   heightened importance; I don't want to give it any less

20   importance.  The testimony's the testimony.

21        THE COURT:  All right.  I think it is not an

22   inaccurate statement of the law.  I think they should

23   understand that I'm not asking questions because I think that

24   some point is particularly important.  They should understand

25   that I'm only doing that when I think the record needs to be

M21Wave3

1    clarified.

2            Next.

3            MR. AVENATTI:  Page 9, your Honor.

4            THE COURT:  Yes.

5            MR. AVENATTI:  I would ask that before line 22 the

6    following be added:  "If you find that a witness has lied as to

7    any material fact, you are entitled to disregard that witness's

8    entire testimony."

9            THE COURT:  All right.  I think that point is

10   adequately conveyed in lines 17 to 21.

11           Next.

12           MR. AVENATTI:  The Court's indulgence one moment, your

13   Honor?

14           Page 10, after line 12, at the end of that, I'm

15   requesting the following, from Sand, as it relates to witness

16   credibility:  "How much you choose to believe a witness may

17   also be influenced by the witness's bias.  Does the witness

18   have a relationship with the government or the defendant that

19   may affect how he or she testified?  Does the witness have some

20   incentive, loyalty, or motive that might cause him or her to

21   shade the truth?  Does the witness have some bias, prejudice,

22   or hostility that may cause the witness to give you something

23   other than a completely accurate account of the facts he or she

24   testified to?"

25           THE COURT:  Do you have any authority for the

M21Wave3

1    proposition that it would be error not to include that, given

2    what I do cover in my instruction on witness credibility?

3            MR. AVENATTI:  Your Honor, I think that is a more

4    robust and accurate statement of the law, and I'm asking that

5    the request be given.

6            THE COURT:  Mr. Rohrbach.

7            MR. ROHRBACH:  The government's view is that your

8    Honor's statement accurately states the law and captures the

9    relevant point.

10           THE COURT:  I agree, and you can certainly argue what

11   you wish to the jury.

12           Next.

13           MR. AVENATTI:  Immediately below that, your Honor, I'm

14   requesting -- again from Sand -- the following instruction as

15   to bias and hostility:

16           "In connection with your evaluation of the credibility

17   of the witnesses, you should specifically consider evidence of

18   resentment or anger that some government witnesses may have

19   towards the defendant.  Evidence that a witness is biased,

20   prejudiced, or hostile toward the defendant requires you to

21   view that witness's testimony with caution, to weigh it with

22   care, and subject it to close and searching scrutiny."

23           And the further authority is *United States v. Masino*,

24   275 F.2d 129 (2d Cir. 1960).

25           Your Honor, this instruction is especially applicable

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    in this case due to the testimony of Ms. Daniels that was

2    elicited on both direct and cross-examination, including her

3    statements about wanting to see me raped in prison.

4            THE COURT:  OK.  Does *Masino* or any other authority

5    suggest that it would be error not to include that language?

6    Because again, it seems like my instruction provides an

7    accurate and sufficient statement with respect to how they can

8    evaluate credibility and leaves you ample room to argue the

9    point you just made to the jury.

10           MR. AVENATTI:  Again, your Honor, I think this

11   instruction is a more -- well, it is more detailed and nuanced

12   and applicable, especially in light of the testimony of

13   Ms. Daniels.  I don't believe the other instruction is adequate

14   in light of the testimony.

15           THE COURT:  OK.  I disagree.  You can argue it to the

16   jury.

17           Next.

18           MR. AVENATTI:  In connection with, I believe it was

19   352, we made the other request relating to evaluating the

20   credibility of witnesses, etc.  Your Honor's already dealt with

21   it.  I just wanted us to have a clean record that I'm

22   requesting that.

23           THE COURT:  I understand.  It was 350.  We did address

24   it.

25           Next.

1          MR. AVENATTI:  Page 11, lines 4 through 10, beginning

2    with "although you may consider" and ending with "pretrial

3    interview," I object to that inclusion in the instruction, your

4    Honor.

5          No. 1, I don't think it is entirely accurate for the

6    statements -- or for the reasons we previously stated during

7    the trial.

8          THE COURT:  You said No. 1.  Is there a No. 2?

9          MR. AVENATTI:  There is, your Honor.  I'm trying to

10    read a note here.  I'm sorry.

11          The jury should be permitted, your Honor, to decide

12    for themselves the importance or nonimportance of how many

13    times witnesses met with the government, who was present,

14    whether they thought they had liability, or the like.

15          THE COURT:  All right.  I agree, and that's why the

16    last sentence says that.  The sentences that you're pointing to

17    are accurate, necessary to avoid any misimpression and

18    confusion.  So denied.

19          Next.

20          MR. AVENATTI:  And just so we have an accurate record,

21    as it relates to the sentence, "Additionally, as I told you

22    during trial," your Honor, I think certainly witnesses have

23    lawyers with them sometimes, but there's many, many witnesses

24    that do not have lawyers with them.  So I don't think it's

25    accurate to say that it's not unusual.  That suggests that it's

M21Wave3

1    usual or more often than not.

2            THE COURT:  Actually, it just says not uncommon, which

3    is a brilliant lawyer's way of saying it happens.  So it's an

4    accurate statement.  We'll leave it as is.

5            Next.

6            MR. AVENATTI:  I was referring to line 9, just for the

7    record, but I'm going to move on.

8            THE COURT:  It says not unusual.

9            Next.

10           MR. AVENATTI:  Page 12, line 15.  The words "on the

11   other hand," that transition, your Honor, is -- I don't know

12   that it's contrary to the preceding sentence, so I think the

13   sentence should just start with "the government."

14           And then at the end of that paragraph, line 18, I'm

15   asking for the inclusion of the following sentence:  "The

16   testimony of a single witness may also be enough to convince

17   you that reasonable doubt exists and the defendant is not

18   guiltily."

19           THE COURT:  All right.  I'm not going to take the

20   first change, but --

21           Well, let me ask the government.  Any objection to the

22   second?

23           MR. ROHRBACH:  We think the Court's instruction is a

24   correct statement of the law, but if the Court prefers, we

25   don't object.

1           THE COURT:  I'll throw Mr. Avenatti a bone and add

2    that sentence:  "The testimony of a single witness may also be

3    enough to convince you that reasonable doubt exists."  I'm

4    going to change it slightly just to make, I think, the point

5    actually clearer, "in which case you must find the defendant

6    not guilty."

7           Any objection to that, Mr. Avenatti?

8           MR. AVENATTI:  No, sir.

9           THE COURT:  Next.

10          MR. AVENATTI:  Page 13, after the "limited purpose

11   evidence instruction," your Honor.

12          THE COURT:  Yes.

13          MR. AVENATTI:  I request that the Court instruct the

14   jury as to what was meant by the Court admitting certain

15   evidence or testimony over hearsay objections but not for the

16   truth of the matter asserted.

17          THE COURT:  No.  I did that at the time, and the point

18   of this is to remind them of those instructions.

19          Next.

20          MR. AVENATTI:  Line 19, same page, the sentence that

21   begins with "they are."  I am requesting that it read, "They

22   are not evidence and are no better than the testimony or the

23   documents."

24          THE COURT:  Mr. Rohrbach, I'll confess that I'm

25   completely befuddled by the case law under Rule 1006, because

M21Wave3

1  my understanding of the rule is that something that qualifies

2  under the rule is evidence, which is why I draw the distinction

3  here between things that were not in evidence and merely shown

4  as aids and things that are in evidence. *Ho*, *Blackwood*, and

5  *Miller* are the cases on which I relied to overrule the

6  objection, but Government Exhibit 804 seemed to confuse the

7  issue and suggest that an instruction should be given to the

8  jury that it's not evidence. And for that reason, I did give

9  them that instruction with respect to Government Exhibit 804,

10 but it was a little bit intentioned with the instructions I

11 gave the jury with respect to certain charts that were admitted

12 earlier in the case.

13        I think that there is probably some imprecision -- I

14 say this with all due respect -- on the Second Circuit's part

15 because, again, I think my understanding is that a Rule 1006

16 chart or summary is technically evidence. But I've tried to

17 sort of clarify things here. So I don't think it's accurate to

18 say that they're not evidence.

19        Mr. Rohrbach.

20        (Continued on next page)

21

22

23

24

25

M21nave4

1          MR. ROHRBACH:  Yes.  We agree with your Honor

2    completely, that this is a befuddling issue.  We agree they are

3    in evidence.  They are evidence in the case.  They are not

4    independent evidence.  So I think your Honor's instruction

5    accurately captures the fact that they are not better than the

6    testimony or documents on which they are based.

7          THE COURT:  I agree.  I will leave it as is.

8          Next, Mr. Avenatti.

9          MR. AVENATTI:  Page 15, line 16.

10         The first sentence that reads, "You may not attach any

11   significance to the fact that the defendant did not testify."

12   I am requesting that that sentence be excised and replaced with

13   the following:  You may not hold it against the defendant in

14   any way that he did not take the stand and testify.  I am

15   instructing you that it should not be discussed at all during

16   your deliberations.  And Mr. Dalack has some evidently

17   background information to the Court if the Court is so inclined

18   to hear from him.

19         THE COURT:  All right.  I will throw him a bone.

20         Mr. Dalack, do you wish to be heard?

21         MR. DALACK:  Thanks, Judge.

22         We have encountered this issue in the trial that I had

23   in October before Judge Stein that a juror had written to us

24   after the trial disclosing that, despite Judge Stein's

25   instructions, that the jury did discuss, had a pretty robust

M21nave4

1    discussion about the client's decision not to testify.  We put

2    it before Judge Stein in a posttrial motion, and he I think

3    determined that, because we couldn't point to any sort of

4    consideration of external information or evidence, that it was

5    improper for him to further probe the jury deliberations.

6         But that being the case, we are concerned that, given

7    the sort of widely publicized, or I guess widely publicized

8    instances of defendants in other high-profile cases taking the

9    stand that we want to guard against any possibility that the

10   jury would consider or mention in their deliberations

11   Mr. Avenatti's decision not to testify.  So we think that a

12   stronger admonishment from the Court is appropriate.

13        THE COURT:  Okay.  I am a little puzzled because I

14   just read the rest of the paragraph and it seems to say pretty

15   much exactly that, ending "you may not consider this in any way

16   in your deliberations in the jury room."

17        MR. DALACK:  Can I take a look at the proposed charge

18   again, your Honor?

19        THE COURT:  Sure.

20        MR. DALACK:  Thanks.

21        THE COURT:  Sure, page 15, line 18.

22        In the meantime, let's continue on.

23        Next, Mr. Avenatti?

24        MR. AVENATTI:  Your Honor, page 18, line 20, through

25   page 19, line 2.  I object to the inclusion of this instruction

M21nave4

1    for the same reasons outlined in my submission at Docket 352.

2            THE COURT:  Okay.  Next?

3            MR. AVENATTI:  Assuming that the Court overrules that

4    objection.

5            THE COURT:  Sorry.  Let me be unambiguous about it.  I

6    overrule that objection.

7            Next?

8            MR. AVENATTI:  I am standing on the prior objection,

9    but in the alternative in the light of Court's ruling, I am

10   asking for the inclusion of following words on page 18, line

11   21:  Before the word "defendant" beginning at the line, "knew

12   of such information" and "defendant was under."

13           THE COURT:  Isn't that point made with the second

14   item, that the defendant actually knew such disclosure was

15   required?  It seems to me that one can't know what disclosure

16   is required if one doesn't know that one has information.

17           MR. AVENATTI:  Your Honor, I think somebody could know

18   that a disclosure was required, but didn't necessarily know of

19   the information.  It's ambiguous, your Honor, and it is --

20           THE COURT:  I don't think it's ambiguous.

21           Next?

22           MR. AVENATTI:  Page 20, line 22, through page 21, line

23   4.  We are requesting a standalone good faith instruction, your

24   Honor, as opposed to having the good faith instruction buried

25   one the second element.

M21nave4

1          THE COURT:  All right.  Can you cite any authority for

2     the proposition that as long as it is covered in the charge

3     that standalone instruction is required?

4          MR. AVENATTI:  Your Honor, I don't have any authority

5     for that exact proposition, but it is obviously a critical

6     issue in the case, and I see no harm in setting it off on its

7     own.  Again, it emphasizes the importance of the good faith

8     instruction, and it's critical to the defense.

9          THE COURT:  All right.  I think I am inclined to leave

10    it as it is.

11          Mr. Rohrbach?

12          MR. ROHRBACH:  Yes, your Honor.  We agree it is a

13    limitation on this element, so including it inside this element

14    makes sense.

15          Given the expected defense closing, there's little

16    right that this will not be noticed by the jury.

17          THE COURT:  If Mr. Avenatti had testified and put his

18    subjective belief before the jury in a more substantial way,

19    then it may well be that a separate discussion would be

20    warranted, but really it's relevant only in reference to the

21    government's burden with respect to the second element.

22          So I think it makes sense to include it in the second

23    element.  Mr. Avenatti, let me ask you to just look at the

24    redline for a moment and ask if you have any objection.  This

25    is where I propose to include your defense theory of the case.

M21nave4

1    I recognize that you are standing on your request for the

2    request that you made at Docket No. 350, but I'm not going to

3    give that instruction.  This is the one that I propose to

4    include.

5              Any objection to this?

6              MR. AVENATTI:  One moment, your Honor.  I'm sorry.

7              MR. DALACK:  Your Honor, if I may, while Mr. Avenatti

8    is dealing with that other point, on the failure to testify

9    point?

10             THE COURT:  All right.

11             MR. DALACK:  Thanks.

12             THE COURT:  We are in tag team mode.  Go ahead.

13             MR. DALACK:  Sorry.  I will shut up after this.

14             But your Honor's point is well taken with respect to

15   the language that the Court proposes.  I think that we have a

16   very intelligent jury, but sometimes I fear that use of the

17   terms "adverse inference" or "you may not consider" don't

18   always drive the point home.  So we would just propose that the

19   Court just be completely sort of clear and concrete and say

20   that, you know, you may not hold it against the defendant in

21   any way that he did not take the stand.  Pardon the double

22   negative.  I am instructing you not to discuss it at all during

23   your deliberations.

24             THE COURT:  All right.  If all I said is "no adverse

25   inference," I would be inclined to agree, but "you may not

M21nave4

1    attach any significance to the fact and you may not consider

2    this in any way" certainly don't seem like complicated concepts

3    or language to me.  So I will leave it as is.

4                    MR. DALACK:  Okay.

5                    THE COURT:  Thank you.

6                    Mr. Avenatti, back to you.

7                    MR. AVENATTI:  Yes, your Honor.

8                    Going back to the redline, line 20, I understand that

9    the Court is declining to instruct on the defense theory of the

10   case as submitted.  But I would request that the theory of the

11   case, at least as it relates to everything on the first page as

12   submitted and then the last paragraph, "at all times

13   Mr. Avenatti acted" --

14                    THE COURT:  I don't know what document you are looking

15   at.

16                    MR. AVENATTI:  I am looking at the theory of the case.

17   I'm sorry.

18                    THE COURT:  Not docket 350?  A different document?

19   You don't seem to have 350 in your hand.

20                    MR. AVENATTI:  It is 350, your Honor.  I have a

21   different version of it.

22                    THE COURT:  Okay.  So telling me what is on the first

23   page if you have a different version doesn't really help me.

24                    MR. AVENATTI:  Fair enough, your Honor.  You're right.

25                    THE COURT:  Okay.

M21nave4

1          MR. AVENATTI:  So what I am requesting is, in light of

2     your Honor's decision not to include the theory of the case as

3     submitted, is that your Honor instructs beginning with "the

4     defense contends" all the way down to "had advised him."  In

5     light of your Honor's comments, the "any subsequent payment"

6     paragraph all the way down to "paying these fees and costs,"

7     not be included.

8          And then the last statement be included, beginning

9     with "at all times," down to "harm to Ms. Daniels."

10          MR. ROHRBACH:  Your Honor, though we disagree with

11     defendant's proposal, because the defendant doesn't get to

12     import his closing into the instructions, we do agree that, to

13     the extent the defense wants to make clear that there is an

14     instruction of the defense's contention, we don't object to the

15     Court's instruction beginning with the words like "the defense

16     contends" that or "the defense theory of the case is,"

17     something like that.

18          THE COURT:  Okay.  So I certainly understand, in light

19     of *Durham* and *Dove* that if it is an accurate statement of the

20     law there is a basis in the record to make an argument that the

21     defense may be entitled to a defense theory of the case or may

22     be entitled for the defense theory of the case to be included

23     in the instructions.

24          It seems to me that I don't know if -- I don't think

25     anything in the law requires that I use the phrase "the defense

M21nave4

1      theory of the case is," so long as the theory is present.  I

2      guess my inclination is to leave it as I have proposed it,

3      because it gives a succinct encapsulation of what the defense

4      theory is.  Then Mr. Avenatti can marshal the evidence in

5      support of that theory in his closing.  That's what a closing

6      is for.  I really don't think I should be marshaling the

7      evidence for either side in my jury instructions.

8              Thoughts?

9              MR. ROHRBACH:  Your Honor, I don't think it would be

10     error do it the way the Court proposes.  We just want to be

11     sure that the record is clear that the Court is giving a

12     defense theory instruction.  So we want it to be clear that the

13     government has no objection if the Court and the defense wants

14     to use the magic words "the defense theory" or "the defense

15     contends."

16             THE COURT:  Mr. Avenatti?

17             MR. AVENATTI:  Your Honor, I object because the

18     proposed theory of the case is not a complete theory of the

19     case.  It is certainly not as complete as what I have proposed

20     and then subsequently proposed even in light of the Court's

21     comments.

22             But the redline at 17 through 20 is not an adequate

23     statement of the defense theory of the case.  That is why I

24     then proposed the alternative.

25             THE COURT:  Let me ask the government the following:

M21nave4

1    I think until now we have focused really almost exclusively on

2    Count One.  The problem with including -- what I proposed is

3    buried in the instruction with respect to Count One, and

4    obviously Count Two is contingent on Count One and in that

5    sense it would provide a defense as to Count Two as well.

6         But Mr. Avenatti is proposing sort of a different

7    theory with respect to Count Two, namely, that he had

8    authorization.  So I guess, I am thinking out loud, but

9    wondering if maybe it does make more sense to have a standalone

10   defense theory of the case instruction and to have it come

11   after Count One and Count Two.  I think what we would do, if

12   everyone is in agreement on that or if I decide that, is I

13   would probably go back to chambers and try to come up with one

14   that I think accurately reflects the record and the law and

15   docket it and let you guys have at it.

16        Your thoughts?

17        MR. ROHRBACH:  That does seem to make sense, given

18   that the defendant does seem to have a slightly different

19   theory as to Count Two.

20        THE COURT:  Anything you wish to say with respect to

21   that theory on Count Two?  Obviously, I assume you think it's

22   wrong, but --

23        MR. ROHRBACH:  Yes.  Yes, your Honor.

24        All we would say, your Honor, and I don't think it

25   would require a significant revision to the Court's instruction

M21nave4

```
1    to add a sentence expressing that view and that we don't think

2    there's a need to, you know, have an extensive discussion.

3    It's just that he believes he had authority to use the

4    information, which can be captured succinctly.

5            THE COURT:  I think I will take it under advisement,

6    try to docket something later this afternoon, and give you a

7    very short amount of time to respond to it and then give you a

8    final ruling later this evening.

9            So I'll take that one under advisement.  All right.

10           MR. AVENATTI:  As it relates to the order, your Honor,

11   I would ask that it go before the two counts.

12           THE COURT:  Okay.  Well, that makes no sense, because

13   the jury won't understand what the counts are.  It doesn't make

14   sense to give them the theory of your defense before explaining

15   what the charges are, so definitely no.

16           One option would be to give your theory as to Count

17   One after the instructions for Count One and your theory as to

18   Count Two after the instructions for Count Two, but I will

19   ponder, particularly since the two counts are connected as

20   well.  So it may make more sense to do it just once.

21           Next, Mr. Avenatti?

22           MR. AVENATTI:  Page 21, line 11.  I am proposing the

23   first sentence read, "Direct proof of knowledge and fraudulent

24   intent is not required."  And then eliminate the next two

25   sentences.
```

M21nave4

1                THE COURT:  All right.  Denied.

2                Next?

3                MR. AVENATTI:  Again, your Honor, I reiterate my

4      objections relating to the instructions concerning professional

5      duties beginning on page 22 of the instructions.

6                THE COURT:  All right.  So you have preserved for the

7      record your objection to the inclusion of instructions on

8      professional duties.

9                MR. AVENATTI:  Okay.

10               THE COURT:  That has been overruled.  What I deferred

11     until now is any specific objection.  So if you have any

12     specific objections, I'm happy to hear them.

13               MR. AVENATTI:  My first additional objection relating

14     to this section is my objection to this discussion concerning

15     professional duties occurring at this particular place in the

16     instructions, before the third and final element of wire fraud.

17               I believe all the elements should be instructed on

18     together, and if the instructions are going to be given

19     relating to professional duties, they should not be dropped

20     into the middle of the instructions about, or on the elements

21     of wire fraud.

22               THE COURT:  Okay.  I disagree.  Since it pertains to

23     the first and second elements, I think it makes sense to pause

24     and include this.

25               Next?

M21nave4

            MR. AVENATTI:  The bottom of page 22, line 21 through

23, I cannot state for the record how strongly I object to this

language.  It is commentary.  It is unnecessary.  It's highly

prejudicial.  It appears to seek to provide the jury with the

Court's view of the case and the allegations in the case and

the seriousness of the allegations.  For that reason, I'm

asking that it be precluded or excluded from the instruction.

I think it is clear error to include this language in these

instructions.

            THE COURT:  Okay.  I assume you don't dispute that it

is an accurate statement of the law since it is more or less a

directed quote from *McKnight*, which appears on the bottom of

page 23.  I assume you agree it is a correct statement of the

law?

            MR. AVENATTI:  Your Honor, I believe that it may

sometimes be a correct statement of the law.  First of all --

and I think that this lends credence to my argument -- *McKnight*

*v. State Bar* is a state bar case.  It is a disciplinary matter.

            THE COURT:  Mr. Avenatti, we are not rearguing the

propriety of including instructions on professional duties.

These instructions are a summary of ethical duties of a lawyer.

So if you concede that it is an accurate statement of

California law with respect to the ethical obligations of a

lawyer, I think you're conceding that it is an accurate

statement of the law.

1          MR. AVENATTI:  For the record, your Honor, I am not

2    conceding that.  As a general proposition relating to these

3    instructions, and as set forth in my submission at 352, if the

4    Court is going to be instructing on the duties, the Court

5    should instruct using the language of the actual bar rule in

6    effect at the time and nothing more.

7          THE COURT:  Mr. Rohrbach?

8          MR. ROHRBACH:  I guess I want to be careful if what

9    Mr. Avenatti is saying that the bar rule has changed in some

10   way that makes these an inaccurate statement of the law.

11   Otherwise, the government's view is that it is clearer and a

12   better aid to the jury and in fact more accurate for the Court

13   to give these instructions rather than simply handing the bar

14   rules to the jury and asking them to decipher them, the same

15   way the Court gives instructions on wire fraud rather than

16   simply handing the jury 18 U.S.C. 1343.

17         MR. AVENATTI:  I want to make one other point for the

18   record.  The first sentence on 22, line 21, reads:  "The

19   misappropriation of client funds has long been viewed as a

20   particularly serious ethical violation for a lawyer."

21         Again, this case deals with -- meaning the case that

22   the Court is relying on, *McKnight* -- it deals with ethical

23   violations, not the violation of federal criminal statutes.

24   And this inclusion at the bottom of 22 further transforms this

25   case into whether I violated a bar rule.  It is highly

M21nave4

1    prejudicial.

2            THE COURT:  All right.  So I think Mr. Avenatti's

3    objection is sort of conflating two issues.  One is the

4    relevance of instructions with respect to professional duties

5    at all, and we've already discussed that ad nauseam.  I am not

6    going to revisit it.  I disagree.

7            Having said that, and notwithstanding the fact that

8    this is a direct quotation from a California Supreme Court

9    case, I think I am inclined to tone it down a little bit, just

10   lest, you know, the jury see it as my commentary, as editorial

11   commentary.

12           So what I would propose is striking the second

13   sentence beginning at "breaches" and moving the first sentence

14   to the end of the first paragraph and simply saying the

15   misappropriation of client funds is a particularly serious

16   violation of a lawyer's ethical duty of loyalty.

17           Mr. Rohrbach, any objection to that?

18           MR. ROHRBACH:  No objection.

19           THE COURT:  Mr. Avenatti, recognizing that you're

20   preserving the objections you've already made, any objections

21   to that particular change?

22           MR. AVENATTI:  Yes, your Honor.  It's still

23   objectionable.  It's still highly prejudicial.  It is

24   irrelevant and it presupposes that there is a misappropriation,

25   which is what --

M21nave4

1          THE COURT:  It doesn't.  That's the jury's province to

2    find whether there is or there isn't.

3          MR. AVENATTI:  I believe the inclusion of that would

4    still constitute serious error, your Honor.

5          THE COURT:  Okay.  You have preserved that argument

6    for the record.

7          Next?

8          MR. AVENATTI:  Page 23, line 2 through 3.  "A lawyer

9    cannot act without the client's authorization and a lawyer may

10   not take over decision making for a client unless the client

11   has authorized the lawyer to do so."  I object to the inclusion

12   of that sentence, your Honor.  It is not an accurate statement

13   of the law, nor is it an accurate statement as to the authority

14   of an attorney.

15         THE COURT:  As to the authority what?

16         MR. AVENATTI:  As to the authority of an attorney.  So

17   I have a current proposal.

18         California Rule 1.2 provides that "a lawyer shall

19   abide by a client's decisions concerning the objectives of the

20   representation and shall reasonably consult with the client as

21   to the means by which they are to be pursued.  Subject to rules

22   on confidentiality, a lawyer may take such action on behalf of

23   the client as is impliedly authorized to carry out the

24   representation.  This means that a lawyer begins with broad

25   authority to make choices advancing the client's objectives.

M21nave4

That broad authority may be limited by an agreement between the

lawyer and the client or by the client's instructions.  In the

absence of an agreement or instruction, however, a lawyer has

the authority to take any lawful measure within the scope of

representation that is reasonably calculated to advance a

client's objectives as defined by the client."

    And the support for that proposed instruction your

Honor is California Rule of Professional Conduct 1.2,

Restatement of the Law Third, the law governing lawyers,

Sections 21, 22, at pages 175 and 181 of the American Law

Institute Edition; *Williams v. Saunders*, 1997 case, 64 Cal.

Rptr. 2d 571, as well as California Code of Civil Procedure

664.6.

    THE COURT:  And what do you think is wrong in what I

have written, that comes in part from Rule 1.2?

    MR. AVENATTI:  What you have written states a lawyer

cannot act without the client's authorization, which suggests

that the client has to authorize every action of the lawyer.

    THE COURT:  Well, but then the next paragraph it says,

"A lawyer he may take such action on behalf of the client as is

impliedly authorized to carry out the representation."  And the

paragraph after that, "The lawyer is authorized to act

independently on behalf of the client in making routine or

tactical decisions."

    In other words, I think the instruction as a whole

1    makes clear that the lawyer can take actions on behalf of a

2    client, but ultimately I assume you agree that the lawyer is

3    bound by the client's authorization, though some of it can be

4    implied from the fact of representation in and of itself.

5            MR. AVENATTI:  Again, your Honor, I am making a

6    request for the instruction that I made because I think it is

7    clearer and a more fulsome statement of the law.

8            THE COURT:  Okay.  I don't think you've submitted

9    that, filed that on the docket, that request, is that correct?

10           MR. AVENATTI:  I have not, but I will be happy to do

11   so.

12           THE COURT:  All right.  So why don't you file it.  The

13   point of pretrial requests to charge is precisely to give me an

14   opportunity to consider these things in the fullness of time.

15   So it is a little hard for me to ponder that one on the fly.

16   If you file it after this conference, I will take it under

17   advisement, but I think that the concepts that you described

18   are covered in my instruction and for that reason I don't think

19   it's error.  But I will certainly give it consideration if you

20   file it.  Go ahead.

21           MR. AVENATTI:  Same page, 23, line 12 through 13.

22           The parenthetical "(such" down to "itself."  I'm

23   requesting that be excised, as it's irrelevant to this case.

24           THE COURT:  I don't.  I disagree that it is

25   irrelevant.  My concern was just the use of the term

M21nave4

1    "substantial rights" is not self-defining, and I wanted to give

2    the jury some sense of what that meant.  So I think it is just

3    as an example.  I don't think there's anything prejudicial

4    about it, and I certainly think they do qualify.  So I will

5    leave it unless you -- I will leave it.

6        Next?  For the record that also comes directly from

7    *Blanton v. Womancare Inc.*, 696 P.2d 645 (1985).

8        MR. AVENATTI:  As a general proposition, your Honor, I

9    will note for the record that a number of these statements

10   appear to come from the California Rules of Professional

11   Conduct, which were adopted I think in late 2018 or early 2019.

12   There were different rules that governed the conduct of lawyers

13   in California before these rules were adopted.  I am not

14   certain as I sit here today as to whether there is any changes

15   between the two sets of rules, but to the extent there are, I

16   object.

17       THE COURT:  Mr. Avenatti, you can't just raise a

18   general objection and expect that to be preservation of any

19   argument on appeal.  If you can identify something -- first of

20   all, your proposal was that if I include these at all I simply

21   quote the rules.  Now you are telling me that those rules might

22   not have been in effect at the relevant time.  So, once again

23   some inconsistency in the arguments you are making to me.

24   Number two, you can't simply say I object to the extent that

25   these are inconsistent with the law.  You need to make an

M21nave4

1    specific identified objection and tell me how it's inconsistent

2    with the law.  If you do that and you persuade me, I'm happy to

3    make a change.  But I am not going to simply say -- you can't

4    preserve an objection by saying, I object to the extent that

5    you're wrong.  That's not the way this works.

6              Next?

7              MR. AVENATTI:  I understand the Court's position, your

8    Honor.  Just for the record, I said quote the language of the

9    rule --

10             THE COURT:  Mr. Avenatti, you had months of

11   opportunity to propose charges on these issues.  You had an

12   opportunity once I ruled on your motion to preclude the

13   government from calling experts to propose instructions on

14   these issues.  You had an opportunity during trial to propose

15   instructions on these issues.  To date, other than orally doing

16   it a moment ago, you haven't presented me with any instructions

17   on these issues.  I have done my best with a combination of the

18   government's charge, Judge Gardephe's charge, and my own

19   research and my law clerks' research into California law.

20             If you can identify something that is wrong, I am

21   happy to make a change and make sure it is accurate.  But you

22   can't simply raise a general objection and expect that I can

23   make a change.

24             You have made your record.  If the Court of appeals

25   disagrees with me and thinks that that's preserving the issue

M21nave4

1    if you're convicted, then so be it.  But in my opinion that's

2    not how this process and system work.

3         Next?

4         MR. AVENATTI:  Page 24, lines 12 to 14.  I ask that

5    that be excised, as I don't believe that it is an adequate

6    statement of the law.  A lawyer does not owe a client a duty of

7    disclosure of all relevant information.

8         THE COURT:  All right.  I am going to strike the last

9    sentence of that instruction.  I think the point is adequately

10   covered earlier and arguably differently.  So, to avoid any

11   confusion, I will strike that last sentence.  I certainly do

12   think it requires a definition of "reasonably," and I think

13   that is an accurate definition.

14        Next?

15        MR. AVENATTI:  Page 25, your Honor, lines 3 through 5.

16        I am asking that that be excluded, as I don't know

17   that that is a complete and accurate statement of the law.

18        THE COURT:  All right.  Can you tell me what is not

19   complete or inaccurate about it.

20        My law clerk is pulling the language, but I think this

21   comes from Section 6148 itself, which you have relied on

22   repeatedly in this proceeding.

23        MR. AVENATTI:  Can I come back to that momentarily,

24   your Honor?

25        THE COURT:  Sure.

M21nave4

1          MR. AVENATTI:  Okay.

2          THE COURT:  For the record, when you look at it, it's

3     subsection (b) of 6148, which I think requires a lot more than

4     this would suggest, but I think this probably is enough.

5          MR. AVENATTI:  Page 26, lines 1 through 5.

6          Two statements about this, your Honor.

7          First of all, this is irrelevant to this case, this

8     language, at least as the case has been described by your

9     Honor.

10          And then, second, I will note the following:  "If the

11     lawyer becomes entitled to funds in the client trust account,

12     the client must" -- I'm sorry -- "the lawyer must withdraw the

13     funds at the earliest reasonable time."

14          There is no obligation under California law to get

15     signoff from a client, your Honor, under those circumstances.

16     As soon as the lawyer reasonably believes he is entitled to the

17     money, he can withdraw it from the trust account.  In fact,

18     he's obligated to do so.

19          THE COURT:  A couple of problems with your argument:

20          Number one, it seems to me that this paragraph is spot

21     on for this case and totally appropriate to include.  Any

22     suggestion that it is irrelevant borders on preposterous.

23          Number two, this comes almost directly out of the

24     language of Rule 1.15.  Section (c) provides that "funds

25     belonging to the lawyer or the law firm shall not be deposited

M21nave4

or otherwise commingled with funds held in a trust account

except:"

And then subsection (2) of that section says, "funds

belonging in part to a client or other person and in part

presently or potentially to the lawyer or the law firm, in

which case the portion belonging to the lawyer or law firm must

be withdrawn at the earliest reasonable time after the lawyer

or law firm's interest in that portion becomes fixed.  However,

if a client or other person disputes the lawyer or law firm's

right to receive a portion of trust funds, the disputed portion

shall not be withdrawn until the dispute is finally resolved."

That seems to -- which is to say that my language

seems to come straight from the rule.

What am I missing?

MR. AVENATTI:  Your Honor, where is the evidence that

I deposited or otherwise commingled funds belonging to me or my

law firm?

THE COURT:  Mr. Avenatti, I am not telling the jury

anything about the evidence.  I am telling the jury the

principles of law that they can consider in considering the

evidence.  It is up to you and government to make arguments

about the evidence, and it is up to the jury and only the jury

to make findings about the evidence.

MR. AVENATTI:  In order for this instruction to be

relevant, there has to be some factual basis for the situation

M21nave4

1    described by way in the paragraph.

2            THE COURT:  And there is.  But I am not speaking to

3    that, and I am not commenting on that.  I am simply giving them

4    a statement of the law.  If you can demonstrate to me that it

5    is an inaccurate statement of the law, I will certainly take

6    that under advisement, but nothing you have said suggests that.

7            Am I missing something?

8            Anything further you want to say on that?

9            MR. AVENATTI:  There is nothing further I want to put

10   on the record, your Honor.

11           THE COURT:  Okay.  Next?

12           MR. AVENATTI:  With the Court's indulgence, your

13   Honor, one moment, please.

14           Your Honor, at the conclusion of the professional

15   rules section, I am asking --

16           THE COURT:  This is in the redline or in the clean

17   version, because the conclusion is different in the redline?

18           MR. AVENATTI:  Your Honor, the proposed instruction on

19   26, again I've already preserved my objections in general to

20   this, but in light of your Honor's prior rulings I believe that

21   this proposed instruction should be broader in that it should

22   say, "without more" -- I am on line 9 of the redline -- "mean

23   that he is guilty of any crime."

24           The next sentence:  "that is, a lawyer can violate his

25   ethical duties under California law without having the intent

M21nave4

1    required to commit a crime."

2                    That is fine.

3                    The balance of the proposed instruction is fine,

4    subject of course to my objections previously stated.

5                    THE COURT:  All right.  So I think the only suggestion

6    you had there was changing the word "wire fraud" to "any

7    crime."

8                    Is that correct?

9                    MR. AVENATTI:  Yes, your Honor.

10                   THE COURT:  I will make that change.

11                   Going back to the clean version, what's next?

12                   MR. AVENATTI:  No further objection, your Honor.

13                   THE COURT:  All right.

14                   MR. AVENATTI:  Oh, actually I spoke too soon.  I have

15   one, your Honor.  I'm sorry.

16                   Your Honor, I'm sorry.  I am just trying to find one

17   piece of paper.  I have one proposed instruction that I'm

18   requesting.  I'm sorry.

19                   I found it.

20                   Your Honor, I am requesting the following jury

21   instruction relating to written fee agreements.

22                   In California the absence of a signed written fee

23   agreement between a lawyer and client does not subject a lawyer

24   to discipline, nor does it mean that the lawyer cannot be paid

25   for his or her services.  Even in the absence of a written fee

M21nave4

1    agreement, a lawyer is still entitled to reasonable fees for

2    his legal work performed on behalf of a client.  And I am

3    relying on 6148(c), *Matter of Harney,* 3 Cal. State Bar Ct.

4    Rptr., 266, 280 (1995); WL 170223 *7 (1995).  And then *Leighton*

5    *v. Forster* (2017) 213 Cal.Rptr. 3d 899.

6              THE COURT:  All right.  I mean, my inclination is to

7    think that that is precisely what I already have in my

8    instruction to the jury about contracts and the ability to

9    recover a reasonable fee in the absence of a contract.

10             Having said that, I think there's one point in what

11   you just recited that might be well taken, which is in my

12   instruction -- and I am now looking at the redline, this is

13   page 27, lines 4 and 5 -- it states that in certain

14   circumstances a lawyer may be able to recover the reasonable

15   value of his or her legal services rendered to a client even if

16   the fee agreement is found to be invalid or unenforceable.

17             Perhaps let me float the suggestion of adding the

18   following, "Rendered to a client in the absence of a fee

19   agreement or if a fee agreement is found to be invalid or

20   unenforceable."  I am not sure it's necessary in this case

21   since there's no ambiguity.  There was a fee agreement, but I

22   suppose it doesn't hurt.

23             Mr. Rohrbach?

24             MR. ROHRBACH:  We have no objection to that change.

25             THE COURT:  Mr. Avenatti?

M21nave4

1           MR. AVENATTI:  Well, I would like my change made, but

2      secondarily I'll certainly take that change, your Honor.

3           Thank you.

4           THE COURT:  All right.  So I will make that change.

5           Just for clarity, Mr. Avenatti, first of all, you said

6      you might want to circle back momentarily on the written fee

7      agreement language on page 25 that I said came from 6148.  I

8      just wanted to make sure you didn't have anything further to

9      say on that.

10          MR. AVENATTI:  Nothing further, your Honor.

11          THE COURT:  Okay.  I think we've covered all the

12     redline changes in the redline pages, but any objections to any

13     of those redline items?

14          MR. ROHRBACH:  Not from the government.

15          THE COURT:  I'm sorry.  From Mr. Avenatti.

16          MR. AVENATTI:  Nothing beyond what I have already

17     said.

18          THE COURT:  Okay.  And then, just to be absolutely

19     clear about it, I don't believe you made any objections or

20     suggestions with respect to page 28 and beyond or to the

21     verdict form.  I just want to make sure and absolutely

22     unambiguous that you have no objections or suggestions to any

23     of that.  Is that correct, Mr. Avenatti?

24          MR. AVENATTI:  Page 28, my understanding was the only

25     change was a citation change at the bottom.  Am I right about

M21nave4

1    that or wrong about that?

2            THE COURT:  Sorry.  I was back on the clean version.

3    Sorry for the confusion.

4            So from page 28 in the clean version I understand that

5    you are making no objections or suggestions beyond whatever

6    we've already addressed?

7            MR. AVENATTI:  That is correct.

8            THE COURT:  All right.

9            Let me circle back to the government.  Did you have

10   any alternative suggestions on additional language with respect

11   to the -- I'm going to refer to it as the quantum meruit

12   concept for lack of an easier way to describe it, but I want to

13   reiterate that I don't expect to hear those words tomorrow.

14           MR. PODOLSKY:  So, first, as I mentioned earlier, I

15   think we do oppose this paragraph, but as far as the additional

16   language, I was trying to write quickly, your Honor.  I think

17   you had a fairly good suggestion.  I am not sure I captured it

18   all, but I think the concept that we had in mind is something

19   to the effect of, of course, your task --

20           THE COURT:  Let me make a different proposal.

21           MR. PODOLSKY:  Sure.

22           THE COURT:  Mr. Avenatti is going to submit something

23   on the California professional responsibilities front.  I have

24   the task of trying to come up with a theory of defense

25   instruction for you to consider.  How about I give you some

M21nave4

1     homework and you make whatever suggestion you want in writing

2     and with more consideration than you have been able to do here.

3              MR. PODOLSKY:  I think it's fair for each of us to

4     have one assignment tonight.  So we will happily do that.  Just

5     so we know, are you taking under advisement the continued

6     inclusion of the addition on lines 8 to 15 of page 27?

7              THE COURT:  Yes.

8              MR. PODOLSKY:  Okay.

9              THE COURT:  I understand your view is that that should

10     be omitted, and I will consider that.  My plan is to await your

11     submissions.  It is now almost 4 o'clock.  Can you both get me

12     your submissions by 5 o'clock?  Is that reasonable?

13              MR. PODOLSKY:  Yes, for the government.

14              MR. AVENATTI:  Your Honor, I would like until 5:30 if

15     possible.  I'm happy to do it by 5.  No problem, your Honor.

16              Just for the record, I object to the excising of the

17     language on 8 through 15 that the government has requested be

18     removed for the reasons I've already stated.

19              THE COURT:  I understand.

20              Okay.  So good.  I'll get your proposals by 5.

21              Just to be clear, Mr. Avenatti, it's just the one that

22     you read to me, and I just want that with the sources for it so

23     I can consider that.

24              In the meantime, I'll make the changes that I have

25     accepted and also take a stab at a defense theory of the case

M21nave4

1    at some point later this evening after I get your changes.  I

2    think what I will likely do is docket a revised and

3    presumptively final version of the charge and give you an

4    opportunity on relatively short turnaround to make any

5    objections or suggestions in writing on that so that we're good

6    to go tomorrow.

7              Any questions?

8              MR. PODOLSKY:  Just one point.

9              There are references here to the indictment.  I think

10   we had raised this earlier.  I don't think the government has

11   strong feelings about whether we send back a version of the

12   indictment or not, but we want to be prepared if we should.

13             THE COURT:  You are not going to.

14             MR. PODOLSKY:  Okay.

15             THE COURT:  All right.

16             Anything else from you, Mr. Avenatti?

17             MR. AVENATTI:  Yes, I had a question, your Honor.

18             THE COURT:  Okay.

19             MR. AVENATTI:  I had intended on referring to the

20   Court's instructions during my closing argument, including by

21   displaying portions of them to the jury in a PowerPoint

22   presentation.

23             I want to make sure that there's no objection to that,

24   provided that obviously they are the exact language of the

25   instructions.  I've never had an issue in any of the other

M21nave4

1    trials before, but I don't want to run afoul of your Honor

2    tomorrow or at any other time by the way.

3         THE COURT:  I understand.  I appreciate your asking.

4    I will say that I have had trials where lawyers have done that

5    without asking and it has sort of irked me, so perhaps I should

6    have raised the issue myself, but thank you for asking.

7         I mean, I guess my initial reaction is I don't have

8    any objection with the understanding that I will advise the

9    jury and may interrupt you to advise the jury if appropriate

10   that they are to listen to my instructions, and it's my

11   instructions that govern.

12        But, that being said, to the extent that either side

13   intends to make reference to my instructions, I do think there

14   is an argument to be made that the closer they adhere to my

15   instructions the better, and no better way to do that than to

16   actually show my instructions on the screen.

17        So I guess my thought is fine.

18        Mr. Podolsky?

19        MR. PODOLSKY:  That's fine, your Honor.  As long as

20   it's couched as far as what the defendant expects and not what

21   he's instructing, we have no objection to that.

22        MR. AVENATTI:  I don't think there's anyone here that

23   will ever think I am going to be instructing the jury, your

24   Honor.

25        THE COURT:  I don't disagree with that statement,

M21nave4

1    Mr. Avenatti.  That's fine.  But more to the point, as is

2    appropriate, you should couch any reference to my instructions

3    with something to the effect of you expect that the judge will

4    tell you X.

5              MR. AVENATTI:  Of course.

6              THE COURT:  With that understanding, no objection if

7    you want to show on the screen mine.

8              All right.  There's one thing that I said we would

9    circle back to, which is whether Mr. Avenatti should be

10   required to refer to himself in the third person.  I don't know

11   if the government wishes to be heard on that or has a view.  I

12   think you said you were going to defer to me on it.

13             MR. PODOLSKY:  We were able to consult briefly with

14   appeals, your Honor.  We don't have any authority that would

15   suggest it would be -- we are not aware of any reason your

16   Honor can't do it.  We would also be comfortable, however, if

17   the defendant referred to himself in the first person so long

18   as he couched all of it as the evidence showed or in reference

19   to the evidence, to avoid the appearance that he is testifying.

20             MR. AVENATTI:  That would be my preference, your

21   Honor.  I am confident that if I run afoul at any point in time

22   I will pay a price.

23             THE COURT:  All right.  Well, let me be clear about

24   what that price may be.  If you run afoul of that and I feel

25   that you are crossing the line into testifying in front of the

M21nave4

1    jury, number one, I will not hesitate to give a curative

2    instruction and make sure there is no ambiguity or confusion.

3    Number two, I may require you from that point forward to refer

4    to yourself in the third person.  So consider it a sort of

5    looming possibility if you don't draw the appropriate line even

6    using the first person pronoun.

7            Do you understand that?

8            MR. AVENATTI:  I do.  Let me give you an example,

9    because I want to make sure that is all ironed out now.

10           Would the following statement be acceptable:  The

11   evidence shows that on February 27, 2018, or thereabouts,

12   Ms. Daniels and I entered into this contract.  And GX 3 goes up

13   on the screen.  I am assuming there's nothing wrong with that.

14           THE COURT:  I think that is an unobjectionable

15   statement, particularly because it makes reference to the

16   evidence and what it shows.

17           MR. AVENATTI:  Okay.

18           THE COURT:  Yes.

19           MR. AVENATTI:  All right.  As opposed to, I believed I

20   was entitled to the money.

21           THE COURT:  Yes.  I would say, although I don't think

22   the proposition is disputed, I don't think you should say on

23   February 27, 2018, I entered into a contract with Ms. Daniels,

24   because it obscures the distinction between the testimony they

25   have heard and the evidence that is in the case and your

M21nave4

1    closing.

2                MR. AVENATTI:  I could put up the exhibit and say,

3    This document shows on February 27 --

4                THE COURT:  Correct.

5                MR. AVENATTI:  -- Ms. Daniels and I entered into this

6    agreement.

7                THE COURT:  Correct.

8                MR. AVENATTI:  Okay.

9                THE COURT:  But I would err on the side of making

10   reference to the evidence showing this, the evidence showing

11   that, the government exhibit shows this, the testimony revealed

12   that.

13               MR. AVENATTI:  I had no intention of doing the other,

14   but I am glad we clarified this.

15               THE COURT:  Good.  As am I.

16               All right.  I want to share one strange development

17   during this conference, because I honestly don't know what to

18   make of it and -- well, I don't know what to make of it.  I

19   don't know if it pertains to this case at all.

20               At some point during this conference somebody

21   apparently approached one of my law clerks who was sitting in

22   the back saying that they were from the jury department and

23   asked what time we were getting started with the jurors

24   tomorrow.  It was not a name that anyone on my staff

25   recognized, so we asked for her business card, and she provided

M21nave4

1    a business card with a name that I won't put on the record but

2    identifying her as a supervising jury clerk from the New York

3    County Jury Division, *i.e.*, the state court across the street.

4            That is all I know.  I don't know who the person was,

5    what interest or possible business they have in inquiring about

6    it, but it certainly is an odd turn, and I thought I would

7    share it so you know what I know.

8            Anything you wish to say?

9            MR. PODOLSKY:  No.  Thank you, your Honor.

10            THE COURT:  If you would like a copy of the photograph

11    of the business card, I'm happy to provide it to both sides.  I

12    am not going to make it part of the public record since I don't

13    know who this person is or if it even was the person whose name

14    appears on the business card.

15            Mr. Avenatti?

16            MR. AVENATTI:  I am assuming we are going to show up

17    here as opposed to across the street tomorrow, your Honor.

18            THE COURT:  You will not be in state court tomorrow.

19    Yes.

20            MR. AVENATTI:  If I am, I'm in trouble.  I get it.

21            THE COURT:  Hang on one quick second.  Let me just

22    check something.

23            MR. AVENATTI:  Michael Avenatti will be in state

24    court, but I will be here.

25            THE COURT:  All right.  Thank you, all, for taking

M21nave4

1    time to work through these things.  We all have some homework

2    to do.  I want to make sure you can comply with the 5 p.m.

3    deadline, so you are excused.  I will see you tomorrow morning

4    no later than 9:00, and I expect that we will start with the

5    jury even before 9:15.

6           So see you in the morning.

7           (Adjourned to February 2, 2022 at 9:00 a.m.)