M238AVEF

```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA,

 4            v.                          19 Cr. 374 (JMF)

 5  MICHAEL AVENATTI,

 6               Defendant.
                                         Trial
 7  ------------------------------x

 8                                       New York, N.Y.
                                         February 3, 2022
 9                                       9:00 a.m.

10  Before:

11
                     HON. JESSE M. FURMAN,
12
                                         District Judge
13                                       -and a Jury-

14                        APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BY:  MATTHEW D. PODOLSKY
17       ROBERT B. SOBELMAN
         ANDREW A. ROHRBACH
18       Assistant United States Attorneys

19  MICHAEL AVENATTI, Defendant Pro Se

20  DAVID E. PATTON
         Federal Defenders of New York, Inc.
21       Attorney for Defendant
    BY:  ROBERT M. BAUM
22       ANDREW J. DALACK
         TAMARA L. GIWA
23       Standby Assistant Federal Defenders

24  Also Present:  Special Agent DeLeassa Penland
                   U.S. Attorney's Office
25                 Christopher de Grandpre, Paralegal Specialist
                   Juliet Vicari, Paralegal
```

M238AVEF

```
 1                  (Trial resumed; jury not present)
 2                  THE COURT:  You may be seated.
 3                  Good morning.  Welcome back, everyone.
 4                  MR. AVENATTI:  Good morning.
 5                  THE COURT:  The government is here.  Mr. Avenatti is
 6       here.  Standby counsel is here.
 7                  As I think you know, we have received a note.  I will
 8       read it into the record.  I already had a copy given to both
 9       sides.  The note reads as follows:
10                  "We are unable to come to a consensus on Count One.
11       What are our next steps?"
12                  It is dated today, February 3, at 10:37 a.m., signed
13       by one of the jurors who is apparently the foreperson.
14                  All right.  I did provide, through my deputy, a
15       proposed answer to the question, a modified Allen charge, so to
16       speak.  I think you have each received a copy of that.  I did
17       bracket the middle paragraph in the instruction because I am
18       not persuaded that it should be included at this juncture.  The
19       jury has only been deliberating for just over four hours.  They
20       have not sent any notes requesting any evidence or testimony.
21       Part of me thinks we should simply tell them, keep at it, and
22       leave it at that.  But I am also open to including it and
23       wanted to include it for your consideration.
24                  So what is the government's view?
25                  MR. SOBELMAN:  We are comfortable proceeding in either
```

M238AVEF

1    manner, either the Court giving a limited direction or the

2    longer instruction.  We think both would be appropriate.

3            THE COURT:  Mr. Avenatti.

4            MR. AVENATTI:  Your Honor, I object to the inclusion

5    of the bracketed language and request that the *Allen* charge

6    include lines 2 through 8 and 18 through 20.

7            THE COURT:  And just that, I take it?

8            MR. AVENATTI:  Yes, sir.

9            Your Honor, one moment.

10           I am going to modify that position and request that

11   the Court give the entirety of the charge, lines 2 through 20,

12   including the bracketed language.

13           THE COURT:  OK.  Interesting.

14           All right.  Anyone have a view, I could simply send a

15   written response to the jury and provide this in writing to

16   them and not bring them up, or I could bring them up and we

17   could orally instruct them.

18           MR. AVENATTI:  Your Honor, you're asking what our

19   position is on bringing the jurors up as opposed to just giving

20   them this in writing, am I correct?

21           THE COURT:  Yes.  I would be inclined to bring them up

22   and give it to them orally.

23           MR. AVENATTI:  The defense requests that they be

24   brought up, your Honor.

25           THE COURT:  Government.

M238AVEF

1          MR. SOBELMAN:  That's fine with the government.

2          THE COURT:  So given the defense request, I will

3    include the middle paragraph as well.  I take it no objections

4    to the instruction as I have drafted it, including that middle

5    paragraph?

6          MR. SOBELMAN:  That's correct, your Honor.

7          THE COURT:  All right.  Very good.  We will get the

8    jury, and I will read the instruction to them and send them

9    back.

10          (Jury present; time noted:  11:17 a.m.)

11          THE COURT:  You may be seated.

12          Good morning welcome back.  Hope you had a pleasant

13    evening last night.

14          I received your note, which reads as follows:

15          "We are unable to come to a consensus on Count One.

16    What are our next steps?"

17          As I instructed you yesterday, in order to return a

18    verdict in this case, each juror must agree as to each count.

19    In other words, your verdict must be unanimous.  You should,

20    therefore, consider all the evidence in the case and fully

21    deliberate upon that evidence in a conscientious manner.

22    Remember to follow all of my instructions, including my

23    instruction that, at all times, the government has the burden

24    of proof beyond a reasonable doubt.  Also remember your oath,

25    when you were sworn in as jurors, that you should try this case

M238AVEF

1    and attempt to renter a true verdict according to the evidence

2    and the law.

3              Although each juror must decide the case for him or

4    herself, this should be done after an impartial consideration

5    of all the evidence with your fellow jurors.  In the course of

6    your deliberations as a juror, you must examine everybody's

7    point of view.  You should not hesitate to reexamine your own

8    views and to change your opinion if you are convinced that it

9    is erroneous.  There is no reason to believe that if this case

10   were to be tried again that another jury would be any more

11   intelligent, more impartial or more competent to decide than

12   you are.  At the same time, no juror should surrender his or

13   her honest conviction as to the weight or the effect of the

14   evidence to his fellow or her fellow jurors or for the purpose

15   of returning a verdict; it is your right to fail to agree if

16   your honest conviction requires it.

17             I would like to suggest at this time that you return

18   to the jury room and reflect upon what I've said and resume

19   your deliberations for such time as you, in your judgment, feel

20   to be reasonable.

21             With that, I will excuse you to continue your

22   deliberations.

23             (Jury resumes deliberations)

24             THE COURT:  You may be seated.

25             All right.  I will mark the note as Court Exhibit 1.

M238AVEF

1    My plan and practice is to docket all jury notes and the

2    verdict form, if or when we get one, at the conclusion of the

3    case.

4            Anything else to discuss at this time?

5            MR. SOBELMAN:  Nothing from the government, your

6    Honor.

7            THE COURT:  Mr. Avenatti.

8            MR. AVENATTI:  Nothing from the defense.  Thank you,

9    your Honor.

10           THE COURT:  So if you're not in the courtroom, and

11   therefore accessible, make sure we know where you are and don't

12   go far, and I will see you when I see you.

13           Thank you very much.

14           (Recess pending verdict)

15           THE COURT:  You may be seated.

16           As I gather you know, we have received is a second

17   note.  It reads as follows:

18           "1.  We are requesting the full transcript for the

19   full testimony of Stormy Daniels (Stephanie Clifford) that

20   began on Thursday, Jan. 27 arrow Friday, January 28.

21           "2.  Please define 'good faith' as mentioned in the

22   judge's instructions."

23           So with respect to item 1, what I will do is send them

24   a copy of the transcript.  What I would like you to do is agree

25   on what that means -- that is to say, it should not include any

M238AVEF

```
 1    sustained objections, since if I sustained an objection or
 2    struck testimony, then that is not in evidence and they
 3    shouldn't consider it.  So it should redact all of those
 4    portions of the transcript.  I would hope and assume that you
 5    could agree on what that means, and therefore figure this out
 6    sooner rather than later.  But if there's disagreements, then I
 7    would resolve them.
 8         In the meantime, though -- first, any comments,
 9    thoughts on that?  And given the social distancing rules in
10    place, I propose that when we figure out what we are sending
11    them, that we make 12 copies and send it to them so each can
12    have their own copy.
13         Mr. Podolsky.
14         MR. SOBELMAN:  Your Honor, I think we have an
15    agreement in principle with the defense on how to go about
16    doing this, and we actually have already made some redactions,
17    some proposed redactions in preparation for this potentiality.
18    So we are hopeful we can have something to the Court soon.  We
19    are working as quickly as we can.
20         THE COURT:  Great.  My deputy also reminds me or
21    advises me that we can include it on the folder that they can
22    access it in the jury room electronically.  So that's another
23    option.  I guess we can do that along with providing printed
24    copies so that they can do whatever they want with it, I
25    suppose.
```

1          Mr. Avenatti.

2          MR. AVENATTI:  Yes, your Honor.  I object to the

3     entirety of the transcript being placed before the jurors in

4     the jury deliberation room.  I believe the testimony should be

5     read to the jurors.  The reason for my objection is

6     multifaceted.  Number one, not all of the jurors are able to

7     read the transcript at the same time in the jury deliberation

8     room.  They may have other people within the jury deliberation

9     room read the transcript aloud.  And I think that the proper

10    way to handle a request for testimony is to have it read back

11    in open court for the benefit of the jury; and therefore, for

12    that reason, I object.

13         THE COURT:  Can you cite any authority for the

14    proposition that that's the way to handle it?  Because in my 18

15    years as a judge or prosecutor I have never seen it done that

16    way.

17         MR. AVENATTI:  I have been involved in a number of

18    trials -- strike that.

19         I have never seen it done where the transcript is

20    actually given to the jury.

21         THE COURT:  That's not my question.  Because I

22    understand that it can be read back and that's one form of

23    doing it.  But I think the standard practice, certainly my

24    standard practice, is to send the transcript.  I will also note

25    that they actually asked for the transcript.  They don't ask

M238AVEF

1    for a readback, they ask for a transcript.  And number three,

2    the premise of your objection is not accurate.  If we give them

3    12 copies and provide it to them electronically, then they can

4    all review it simultaneously.  It just seems like an enormous

5    waste of everybody's time to bring them up here and read what

6    amounts to a full day's testimony.

7        So if you can cite authority that it's error to do it

8    this way, then I am open to that.

9        MR. AVENATTI:  Your Honor, I just saw the note four

10   minutes ago.  So I haven't had a chance to research or do any

11   research for authorities.  I understand the Court is asking for

12   authority, but I literally just got the note.

13       THE COURT:  While you agree on the redactions, you can

14   see if you can find authority, and if you persuade me, then we

15   will read it.  Otherwise, my plan is to send the transcript,

16   honor the jury's explicit request and send the full transcript

17   in the manners that I have described.

18       As for number two, because if we can figure out how to

19   handle that, one option is to bring them up, tell them that we

20   are working on their first request while we answer the second

21   one.  Any thoughts on how to handle that?

22       One option is for me to simply read the paragraph from

23   the jury instructions that pertains to good faith.

24       MR. AVENATTI:  Your Honor, the defense requests that

25   the answer be exactly as what you have just proposed -- namely,

1    the answer to question number two, that the Court merely reread

2    only the good faith instruction.

3                THE COURT:  Government.

4                MR. PODOLSKY:  Well, two thoughts.

5                One, I think that if we are going to refer them back

6    to the instructions, we should include the instruction on

7    intent to defraud because that is what the good faith defense

8    is, it is an explanation of what the government has to prove as

9    far as intent to defraud.

10               I think, and we don't want to slow things down, but it

11   would be helpful if we could take a few minutes to think if

12   there is another instruction to give.  The reason I say that is

13   this jury seems very attentive.  They each have their own copy

14   of the charge, and I think they are looking for some guidance

15   as to the term "good faith."  And I just don't want -- I don't

16   think it's in anyone's interest to leave them with sort of no

17   additional guidance if there is some guidance to provide.

18               I have quickly been trying to find some Second Circuit

19   law that might provide a more succinct definition of what the

20   phrase "good faith" might mean, and candidly we may not find

21   something that will help us, but I thought it might be worth a

22   few extra minutes to see if we can provide the jury with some

23   additional guidance on this question.

24               THE COURT:  I am certainly open to other suggestions.

25   I gather that -- well, you may want to *United States v. Alkins*,

M238AVEF

1     925 F.2d 541, at 550, a Second Circuit decision from 1991.

2              MR. PODOLSKY:  Our realtime is not working for some

3     reason, if you wouldn't mind repeating the citation.

4              THE COURT:  925 F.2d at 541, at 550.

5              The Second Circuit stated, "The instruction given by

6     the district court here adequately stated the good faith

7     defense.  The court stated the meaning of good faith, when it

8     instructed the jury, that an honest belief in the truth of the

9     representations made by defendant is a good defense, however

10    inaccurate the statement may turn out to be."  So no further

11    elaboration was necessary.

12             MR. PODOLSKY:  That was the case I was looking at.

13    That is a simple statement, that we could direct them back to

14    the jury instructions and perhaps add that sentence that has

15    been approved by the Second Circuit, would be one option.

16             THE COURT:  Why don't you ponder and discuss it

17    amongst yourselves and in the meantime I will consider this in

18    conjunction with what I already told them, figure out if I

19    think there is a way to handle this.

20             MR. PODOLSKY:  I am just going to stand up and see if

21    I can consult and see if I can get some additional comments

22    here.

23             (Pause)

24             THE COURT:  Counsel, I am printing out a copy of a

25    proposed instruction to give us something to work off of.  I

M238AVEF

1    will give each side a copy to review and then we will discuss.

2                THE COURT:  Counsel, can we discuss my proposal?

3    Government.

4                MR. PODOLSKY:  We are OK with this instruction, your

5    Honor.

6                THE COURT:  Mr. Avenatti.

7                MR. AVENATTI:  Your Honor, I object to the

8    instruction, and I have an alternative instruction to provide.

9                THE COURT:  Can you first tell me the basis of your

10   objection?

11               MR. AVENATTI:  I don't believe that this definition of

12   good faith is appropriate in this case under the facts and

13   evidence, your Honor.

14           I am proposing requesting that the Court reread the

15   good faith instruction previously provided to the jury in the

16   charge and add the following instruction:  In this case, good

17   faith means Mr. Avenatti believed he was owed money even if he

18   wasn't owed any money.

19               THE COURT:  That is not accurate.  If you were owed

20   money, that doesn't constitute good faith.  You had to have a

21   good faith belief that you were entitled to take the money.  So

22   that request is denied.

23           The proposal that I have made, Mr. Avenatti, is pretty

24   much consistent with what you had initially proposed -- namely,

25   that I reread the instructions that I gave them yesterday.  The

only real change to it is adding the sentence, good faith means

an honest belief in the truth of the representations made by a

defendant -- I would propose that we say "the defendant" --

however inaccurate the statement may turn out to be, which is a

direct quote from the *Alkins* decision that the Second Circuit

approved that precise language.  So I don't quite understand.

MR. AVENATTI:  Your Honor, in this case, it's not

about the representations that were made.  This case is about

whether I had a good faith belief that I was entitled to the

money.  *Alkins* was a case about representations.  And so by

inserting or by defining good faith in the way your Honor is

proposing, you are transforming this case into one about

representations as opposed to my actual belief.  That is the

issue, your Honor.  The issue is not whether I believed the

representations that were made were accurate.  The issue is

whether I actually had a good faith belief that I was owed the

money, and entitled to the money.

THE COURT:  Entitled to take the money, Mr. Avenatti.

That's the key that your proposal is obscuring.  Having said

that -- well, Mr. Podolsky.

MR. PODOLSKY:  I don't agree.  This case is about

representations and the question of whether the defendant had

an intent to defraud when he made them.  The instruction that

your Honor has proposed is precisely accurate.  In fact, it's a

quote from the circuit law.  Then the instruction explains,

M238AVEF

1    thus, if the defendant in good faith believed that he was

2    entitled to take the money or property from the victim, even if

3    that belief was mistaken, then you must find him not guilty

4    even if others were injured by the defendant's conduct.  This

5    is an accurate statement of the law, and it also applies it to

6    the facts in this case in precisely the way the defendant would

7    like, except for the change that your Honor pointed out, which

8    is the way the defendant would want it is not quite an accurate

9    statement.

10            MR. AVENATTI:  Your Honor, I am struggling to

11   understand why we are going to provide a further instruction to

12   the jury beyond what we have already instructed the jury on.

13   The government did not seek any further instruction relating to

14   good faith.  Any objection to the good faith instruction by the

15   government, the initial good faith instruction has been waived.

16   And I object to any further instruction relating to good faith

17   other than a reread of what was already provided to the jury.

18            THE COURT:  Mr. Avenatti, that's different from what

19   you literally said to me 30 seconds ago.  So I don't

20   understand.  And there is no waiver issue.  We are responding

21   to a jury note.  So we are dealing with a new situation.

22            Having said that, if your proposal is that I simply

23   reread the portion of the instruction, which would essentially

24   be what I have given you, but minus the new section between

25   lines 8 and 10, I am certainly open to that.  It doesn't really

M238AVEF

```
1    give the jury much to work with because they already have that
2    in the jury charge that they heard yesterday and a printed copy
3    of which they have in the jury room.
4              MR. AVENATTI:  That is my request in the first
5    instance, your Honor, that you reread what was previously
6    provided to them as it relates to good faith and nothing more.
7              MR. PODOLSKY:  Your Honor, they specifically asked for
8    help.  They heard you read the instructions.  They read the
9    instructions.  The jury has asked for help.  I have seen this
10   in other cases.  The jury is clearly trying to deliberate and
11   asking for help.  Giving them an accurate statement of the law
12   to help them deliberate is the purpose of a jury note, and we
13   should be willing to do that so that they can continue their
14   deliberations.  And to be clear, my point is simply rereading
15   the same instruction that was given is not helpful to the jury
16   and doesn't respond to their note.
17             THE COURT:  All right.  I think my inclination is to
18   do the following, which is take out the new proposed sentence,
19   notwithstanding my agreement with Mr. Podolsky that it doesn't
20   really give the jury much beyond what they already have, but to
21   say at the end that if that does not adequately answer your
22   question, you can send us a new question.  And if they tell us
23   it doesn't do it, then we will decide what to do then.
24             MR. PODOLSKY:  My hesitation on that is the following,
25   your Honor.  I think if they feel that it doesn't quite answer
```

1    their question and they ask for a further definition, we are

2    not going to have a great deal more.  And to my mind the

3    simplest way to approach this is simply to provide the

4    instruction that you have given here, which will give them

5    something to work, again, accurately states the law, again,

6    applies it, in the last sentence of the second paragraph, to

7    the facts of this case in precisely the way that the defendant

8    has advocated, and that way we frankly don't risk another note

9    and a series of sort of frustrations.  We are obviously limited

10   in the way we do jury instructions by the fact that we have to

11   accurately relay the law to them, but they also are laypeople

12   who are trying to understand how to apply the law to the facts

13   in this case.  So I think it would be useful to them to simply

14   provide additional content when they have asked for it.

15         THE COURT:  Here is the concern I have, Mr. Podolsky,

16   and why I think maybe buying time, even if that's all we do, is

17   the right thing.  I think Mr. Avenatti's point is well taken,

18   which is -- and apropos to *Rossomando*, the case he gave me

19   earlier during the trial -- it is not accurate to say that the

20   jury can convict Mr. Avenatti if they find that he lied in his

21   e-mails to Ms. Daniels, and I am not sure there is any real

22   dispute that he did; they would have to find that he lacked a

23   good faith belief that he could take the money.  I think

24   *Rossomando* does say that the jury could not convict based

25   solely on a finding that the defendant lied and as a result

1    kept the money or property that he obtained.  It has to be lied

2    with the intent to defraud the victim of the money or property.

3         So I think my concern, and again, I think Mr.

4    Avenatti's point is well taken, is that the definition from

5    *Alkins* -- and I haven't read *Alkins*, I have just read the

6    portion that has that definition -- might not do the trick and

7    might inject some or the danger that the jury here finds that

8    he lied in his e-mails and WhatsApp messages to Ms. Daniels and

9    convict him on that basis, and that wouldn't actually be

10   proper.  So I think buying time makes sense because it would

11   give both sides an opportunity to read *Alkins*, myself as well,

12   read other applicable case law, and see if there is a

13   definition of good faith that can be crafted that fits the

14   facts of this case better and addresses the *Rossomando* concern,

15   and would urge both sides to think about that on the theory

16   that we may well hear back from the jury that they want further

17   guidance.  But that is sort of where I come down and why I

18   think giving them a nonanswer answer may be the right approach

19   in the first instance.

20        MR. PODOLSKY:  Very well, your Honor.

21        THE COURT:  Mr. Avenatti, I assume you don't object to

22   that.

23        MR. AVENATTI:  I do not, your Honor.  I actually was

24   able to find some authority on this issue of the transcripts.

25        THE COURT:  OK.  Why don't you give me that.

1          Well, let me make sure we are in agreement on the good

2    faith.

3          So what I will read to them is just what I have given

4    you there, minus the sentence that says good faith, in quotes,

5    from *Alkins*, and just goes from "because an essential element

6    of wire fraud is the intent to defraud, it follows that good

7    faith on the part of a defendant is complete defense to the

8    charge of wire fraud.  Thus, if the defendant in good faith

9    believed," and so on from there.

10          All right.  Everybody is in agreement with that

11    answer?

12          MR. AVENATTI:  The defense is, your Honor.  I wasn't

13    clear or it was not clear to me as to whether the Court was

14    going to tell the jury if they needed further information to

15    inform the Court.  If so, I would object to that because we

16    have already instructed the jury that they have the ability to

17    send notes, and they have already demonstrated their

18    familiarity with the process, and they are not shy about doing

19    so.  So I request that simply the instruction be read and

20    nothing more as it relates to responding to question two.

21          THE COURT:  I am going to add at the end, If that does

22    not answer your question adequately, you can of course send us

23    another request.  I think there is no harm in reminding the

24    jury of that and making clear that we are trying, but may not

25    have gotten it.

1          Yes, Mr. Podolsky.

2          MR. PODOLSKY:  With apologies, I do have an additional

3     request.

4          I think, and we can simply use the language from the

5     charge, but I think in the first paragraph we should explain

6     what intent to defraud means.  And the reason I emphasize that

7     is I think as given this is somewhat unbalanced, in the sense

8     that it's important to realize that good faith is simply a

9     flip-side or an explanation of a lack of intent to defraud.

10    What the government really has to prove here is an intent to

11    defraud, and the good faith instruction is essentially an

12    explanation to the jury to help them better understand what

13    that means.  So I think it would be useful to include the full

14    definition of intent to defraud up front.

15         THE COURT:  I am not going to do that.  I think it

16    gets further and further afield from answering their question.

17    But I think it might make sense to add at the end of the first

18    paragraph, "as I defined those terms for you yesterday," and

19    that will make clear that it references back that there are

20    definitions in the instruction.

21         MR. AVENATTI:  No objection from the defense to that.

22         MR. PODOLSKY:  Understood.

23         THE COURT:  So I think we are settled on question two.

24         Lets talk about question one, and then we will go from

25    there.

M238AVEF

1          Mr. Avenatti, what is your authority that it would be

2     error to send a copy of the transcript to the jury?

3          MR. AVENATTI:  *United States v. Escotto*,

4     E-S-C-O-T-T-O, Second Circuit case 1997, 121 F.3d 81, pincite

5     84-85, your Honor.  It's not that it would be error to send the

6     transcripts, your Honor.  It is that there is a preference for

7     readbacks; and also, when transcripts are provided, there are

8     to be instructions that go along with them.

9          THE COURT:  What are those instructions?

10          MR. AVENATTI:  The court notes in the decision, your

11     Honor, that other courts have found that allowing the jury to

12     have unsupervised access to written transcripts poses an

13     enhanced danger that jurors may unduly emphasize discrete

14     sections of the trial testimony.  And the court further notes

15     that -- one moment, I'm sorry.

16          The decision notes that when a court permits readbacks

17     or sends transcripts, appropriate cautions should be given to

18     the jury to minimize the particular risks associated with

19     either technique.  For example, a jury instruction reminding

20     the jury to consider all the evidence, without unduly

21     emphasizing any portion of it, would be appropriate in most

22     cases where the court sends transcripts into the jury room.  In

23     the event the Court does so in this instance over our

24     objection, we would ask for that instruction.

25          THE COURT:  Well, give me a moment to read *Escotto*.

1          MR. AVENATTI:  I would finally note, in that decision,

2     the court noted that some explanation would have been helpful

3     as to why the court had decided to supply transcripts rather

4     than permit a readback.  The court also noted that when a trial

5     court decides to provide written transcripts, a cautionary

6     instruction is advisable, and further noted that doing so

7     appeared to run counter to the jury instructions that had been

8     given to the jury.  Off the top of my head, I don't recall in

9     the jury instructions in this case whether your Honor had

10    informed the jury that they could request transcripts or a

11    readback.  I just don't recall.

12          THE COURT:  I said readback.

13          Give me a moment.  My initial reaction is that *Escotto*

14    confirms that it's within my discretion to submit a transcript,

15    and my reason is that it would be a massive waste of

16    everybody's time to sit here and read a full day's testimony to

17    the jury, not the least a waste of their time.  So let me

18    review this.  I am certainly open to giving appropriate

19    instructions with any transcript, but let me read this.

20          All right.  So, first, I have now read the relevant

21    portions of *Escotto*, and as I said, it confirms that it is well

22    within my discretion to send copies of the transcript.  Indeed,

23    emphasizes two things that I think are of particular note here.

24    One is that the judge should generally honor the jury's

25    request.  As I noted, the request here is explicitly for the

1    transcript, not for a readback, notwithstanding the language of

2    my instructions yesterday.  And, number two, the Second Circuit

3    agreed with Judge Trager that a transcript in that case was far

4    more efficient than providing a readback.  Both of those

5    principles support my decision here.

6            That said, I am prepared to give a cautionary

7    instruction as *Escotto* recommends.  That makes sense.  Here is

8    what I would propose.  I would propose that we bring them up

9    now, that I provide the answer to the good faith instruction,

10   but also tell them the following with respect to their first

11   request:  We are working on getting you copies of the full

12   transcript of Ms. Daniels' testimony.  When it is ready, we

13   will send 12 copies of the relevant portion of the transcript

14   to you in the jury room.  That said, let me remind you that you

15   should consider all the evidence in the case without unduly

16   emphasizing any portion of it.  That is almost verbatim from

17   *Escotto*.

18           Any objection from the government?

19           MR. PODOLSKY:  Not to that, your Honor.  I have one

20   other thing to raise when we are done with this.

21           THE COURT:  Mr. Avenatti.

22           MR. AVENATTI:  One moment, your Honor.

23           Just to clarify for the record, I object to the

24   transcripts going to the jury.  But seeing that that has been

25   overruled, I do not object to the further instruction as

M238AVEF

1    proposed by your Honor.

2            THE COURT:  I would also add the line "and please be

3    patient with us" so that they don't get annoyed if it takes us

4    longer than they would like or think it should.

5            Yes, Mr. Podolsky.

6            MR. PODOLSKY:  Just one more, back on the good faith

7    instruction.  I was rereading it.  If we take out the middle

8    line that I think your Honor concluded, it essentially doesn't

9    define good faith at all.  So here is my proposal.  It's only a

10   maybe two- or three-word difference.

11           On line 7 it says, "Because an essential element of

12   wire fraud is the intent to defraud --"

13           THE COURT:  Slow down.

14           MR. PODOLSKY:  I am just reading the same sentence.

15           THE COURT:  I know, but the court reporter doesn't

16   know what you're reading.

17           MR. PODOLSKY:  Let me then just go to the sentence

18   that I am really pointing to.

19           On line 10, which would be the next sentence, it says,

20   as written, "Thus, if the defendant in good faith believed."

21   So it just assumes an understanding of good faith.  We could

22   take the definition from *Alkins* above and simply change it to,

23   "Thus, if the defendant held an honest belief that he was

24   entitled to take the money," and so on.  And that way we have

25   at least not provided any further definition of good faith.

1    MR. AVENATTI:  Your Honor, I object.  We have already

2  plowed this ground.  The instruction should be exactly as what

3  I have requested and what your Honor has proposed, which is to

4  reread the good faith instruction as previously provided to the

5  jury.  If they want further information they will ask for it.

6    THE COURT:  All right.  I am going to adopt the

7  suggestion.  I think at least it nods in the direction of

8  giving them an answer to their actual question as opposed to

9  simply reading what they already have; and, given *Alkins*, there

10  is no question that's a proper instruction and doesn't pose the

11  problems that I alluded to earlier.

12    MR. AVENATTI:  Just so I understand, because I don't

13  understand, what exactly are you proposing to read now?

14    THE COURT:  So you're objecting notwithstanding that

15  you don't understand what you're objecting to.

16    MR. AVENATTI:  No, your Honor.  I am objecting because

17  we arrived at a solution that I thought was appropriate and

18  applicable under the law.  That's why I am objecting.

19    THE COURT:  I have got it.  What I am planning to

20  instruct the jury is the sentence that begins "thus."  It would

21  read, "Thus, if the defendant held an honest belief that he was

22  entitled to take the money or property from the victim," and

23  continue from there.

24    MR. AVENATTI:  Your Honor, I object to that because I

25  don't believe it's consistent with *Rossomando*.  And I object as

M238AVEF

1          it relates to honest belief.

2                   THE COURT:  Well, I think the law is pretty clear that

3          honest belief is a fair definition.  I don't think it's

4          inconsistent with *Rossomando*.  So I will make that change and

5          overrule the objection.

6                   Where do we stand on the transcript?

7                   MR. ROHRBACH:  Both parties have reviewed the

8          transcript, and we have made a few changes.  So we are now

9          circulating a final version to the defense for final review and

10         then we will have a version ready.

11                  THE COURT:  Let's do the following.  I have a 3:30

12         sentencing in this room.  So time is a little bit of the

13         essence.  We are going to get the jury.  I will give them these

14         two answers, which will tell them that we are working on the

15         transcript, and in the meantime you should try to reach

16         agreement on it.  If you reach agreement on it, you don't need

17         to come back to me, you can make 12 copies, give it to my staff

18         and we will deliver it to the jury.  If there is any

19         disagreement, you should let me know and we will take it up as

20         soon as the sentencing proceeding is done.

21                  Yes.

22                  MR. PODOLSKY:  Will you give them a written version of

23         the supplemental definition of good faith?

24                  THE COURT:  I wasn't planning to.

25                  MR. PODOLSKY:  It might make it easier for them rather

M238AVEF

1    than hear it once, but we obviously defer to the discretion of

2    the Court.

3              THE COURT:  Mr. Avenatti, do you have a view?

4              MR. AVENATTI:  Yes, your Honor.  I object.

5              THE COURT:  I will just stick with the oral answer,

6    and if they want a written answer I am sure they will ask.

7              I will mark this note, which, by the way, was signed

8    and dated today at 2:10 p.m., Court Exhibit 2, and as noted,

9    will docket it at the conclusion of the case.

10              Can I go on the record briefly.  I am also going to

11   discuss with the jury the schedule, which is to say at 5:00, as

12   with yesterday, they can leave if they have not reached a

13   verdict; they don't need to come back to the courtroom.  If we

14   are not done with making copies by then, I will advise them

15   that we will make them available first thing in the morning,

16   and that they should resume their deliberations tomorrow, same

17   cautionary instructions on that score.

18              Tomorrow I am going to tell them that if they have not

19   reached a verdict, that we will stop at 4.  That I will bring

20   them up here at 4, a couple of minutes before 4, because I

21   can't stay past that.  So I just want to give you a heads-up

22   about that.

23              (Jury present; time noted:  3:21 p.m.)

24              THE COURT:  You may be seated.

25              Good afternoon, ladies and gentlemen.  Welcome back.

M238AVEF

1    We are in receipt of your second note, which I will

2    take each question in turn.

3    First, we are requesting the full transcript of the

4    full testimony of Stormy Daniels (Stephanie Clifford) that

5    began on Thursday, January 27, continued on Friday, January 28.

6    We are working on getting you copies of the full

7    transcript of Ms. Daniels' testimony.  When it is ready -- and

8    please be patient with us, it does take some time to prepare --

9    we will send 12 copies of the relevant portion of the

10    transcript to you in the jury room.  That said, let me remind

11    you that you should consider all the evidence in the case

12    without unduly emphasizing any portion of it.

13    With respect to your second question, which asks,

14    "Please define good faith as mentioned in the judge's

15    instructions," as I instructed you yesterday, the second

16    element that the government must establish beyond a reasonable

17    doubt before you can find the defendant guilty of wire fraud,

18    the offense charged in Count One, is that the defendant devised

19    or participated in the fraudulent scheme knowingly, willfully,

20    and with specific intent to defraud, as I defined those terms

21    for you yesterday.

22    Because an essential element of wire fraud is the

23    intent to defraud, it follows that good faith on the part of a

24    defendant is a complete defense to the charge of wire fraud.

25    Thus, if the defendant held an honest belief that he was

M238AVEF

1   entitled to take the money or property from the victim, even if

2   that belief was mistaken, then you must find him not guilty

3   even if others were injured by the defendant's conduct.

4        The defendant has no burden to establish good faith.

5   The burden is on the government to prove fraudulent intent and

6   the consequent lack of good faith beyond a reasonable doubt.

7        If that does not answer your question adequately, you

8   can, of course, send us another request.

9        With that, let me give you some instructions, just

10  logistical and timing instructions.

11       First, in a moment I will excuse you to continue your

12  deliberations.  You should continue until 5:00, as you did

13  yesterday, but when 5:00 comes, if you have not reached a

14  verdict, you are free to go and don't need to return to the

15  courtroom, in fact, will not return to the courtroom.  In that

16  event, you should be back in the jury room tomorrow morning

17  same time, same place -- that is to say, no later than 8:45,

18  certainly no later than 9:00, so you can start your

19  deliberations at that time.

20       I want to remind you that you cannot continue your

21  deliberations unless all 12 of you are present.  So if anyone

22  is late or missing, and I know it's raining today and I know

23  there is other weather forecasts for tomorrow, if anyone is

24  late, you cannot continue your deliberations until all 12 of

25  you are present.  So please make your best efforts to be here

M238AVEF

1    on time so that you can continue your deliberations if you have

2    not reached a verdict today.

3           Looking forward to tomorrow, again, you should just go

4    directly to the jury room.  I won't bring you here in the

5    morning.  If you have not reached a verdict, then tomorrow we

6    will end up stopping at 4 p.m.  I just want to give you a

7    heads-up about that.  Obviously, if you have any notes or

8    reached a verdict before that time, you should let us know.

9           With that, I will excuse you to continue your

10   deliberations.  We will send the portions of the transcript

11   that you have requested to you when it is ready for you, and

12   with that you are excused.  Thank you.

13           (Jury resumes deliberations)

14           THE COURT:  You may be seated.

15           Anything else from the government?

16           MR. PODOLSKY:  No, your Honor.

17           THE COURT:  Mr. Avenatti.

18           MR. AVENATTI:  No, your Honor.

19           THE COURT:  So please try to reach agreement as

20   quickly as possible on the transcript.  If there is agreement,

21   the government should make 12 copies as quickly as possible.

22   For the sake of the environment, I would say double-sided.  Get

23   them to us, and we will get them to the jury.  I would love for

24   that to all happen before the end of the day so that they have

25   it in the jury room before they leave today.  If there is any

M238AVEF

1   disagreement over portions to be redacted, you can let my staff

2   know, and as soon as the sentencing is over I will take that

3   up.  I will leave the bench in a moment.  When I do, please

4   vacate counsel table so that the parties in the sentencing can

5   assume their places.

6           I will see you when I see you.  Thank you.

7           (Recess pending verdict)

8           THE COURT:  First and foremost, where do the

9   transcripts stand?

10          MR. PODOLSKY:  They are being printed right now, your

11  Honor, and then brought up.

12          THE COURT:  So hopefully -- well, the jury is not

13  going to get them today, so we will provide them first thing

14  tomorrow when they are all here, but please get them to my

15  staff as soon as they are ready.

16          The government e-mailed a case to me, *United States v.*

17  *Gole*, G-O-L-E, 158 F.3d 166 (2d Cir. 1998), and requested to be

18  heard.  I have read the case, and I don't really know what to

19  say.  It kind of distinguishes *Rossomando* into oblivion in some

20  respects and seems to stand for the proposition that Mr.

21  Avenatti's defense in this trial is no defense at all.  Having

22  said that, I am inclined to say it's too little too late -- or

23  not too little, but it's too late.  It is certainly not too

24  little, and it would have been rather significant had this been

25  brought to my attention earlier, but I just don't know what you

M238AVEF

1    want me to do at this point.

2                MR. PODOLSKY:  Let me try to articulate how we see

3    this.

4                At the charge conference, we made the distinction

5    between entitlement to money and entitlement to take money,

6    which is how the charge was written and given to the jury.  But

7    the jury has evident confusion about the meaning of that good

8    faith instruction.  We think it would be a defense under *Gole*

9    and under the law of this circuit, and as we understood the

10   defendant's arguments, if he had an honest good faith belief

11   that he was authorized to take the money, and therefore the

12   representations made in order to obtain it were true.  We don't

13   think it is a defense, and we don't think it's a defense under

14   your current instructions, if he lied to get the money, the

15   wire instructions were false, he wasn't authorized, but he

16   thought he was ultimately entitled to the money.  We think

17   that's the distinction that was made, or at least attempted to

18   be made to the jury in the instructions, and we think the jury

19   should be entitled to a clearer articulation of that

20   distinction so that they don't have the misimpression that it

21   is a defense to take money under false pretenses simply because

22   you think that ultimately that money is yours.

23                THE COURT:  Clarification and then reaction.

24                One, your view is that my instructions are consistent

25   with this decision and just should clarify that entitlement to

M238AVEF

1    the money is distinct from entitlement to take the money; that

2    to establish good faith, it has to be good faith to take it,

3    which is definitely the issue that I focused on the other day.

4         MR. PODOLSKY:  Correct.  And just to put a gloss on

5    that, your Honor, that the representations made in furtherance

6    of obtaining the money, you have to believe them to be true.

7    Which I don't say that to disagree with what your Honor said, I

8    am just providing a further explanation.

9         THE COURT:  That may be right, and maybe if the

10   jury -- this is, I guess, the reaction portion of my

11   commentary.  Maybe if the jury comes back and says, please give

12   us further instructions on what good faith means, then it might

13   make sense to be clearer on that point.  But I guess my

14   reaction is that you had an opportunity to bring this case to

15   my attention before the charge conference, and you didn't.  You

16   had an opportunity to bring it to my attention before we

17   responded to the jury's note, and you didn't.  I recognize

18   these things are fast-paced, and I am sure it's just that it

19   came to your attention after we responded, but there is no note

20   pending and it would certainly be unorthodox, if not error, for

21   me to basically seek to clarify when the jury has not asked for

22   any further clarification.

23        So I guess my reaction is, while it may not be too

24   little, it's certainly too late, and if the jury asks another

25   question to which this is responsive, then we can consider at

M238AVEF

1  that time whether an instruction that makes the point clearer

2  is appropriate.

3      MR. PODOLSKY:  Your Honor, I am certainly happy to

4  look tonight.  I don't think it would be error.  In fact, I

5  think it would be appropriate to clarify an instruction that

6  was obviously done in the moment in an attempt to respond

7  quickly to the jury's question that we think could provide a

8  misleading picture of the law to a jury that is requesting

9  assistance on it.  In effort to bring this issue to your

10  Honor's attention, we haven't researched in what circumstances

11  a corrective or additional instruction responsive to a prior

12  note might be appropriate, and we are happy to do that this

13  evening, but we did want to bring this to your Honor's

14  attention because we are concerned, given the jury's note, that

15  they are confused about the distinction that the cases make

16  here.  I think that's the point I want to make.

17      THE COURT:  I guess two further comments, and then Mr.

18  Avenatti, if you wish to be heard, you can, but I am not sure

19  it will be necessary.

20      Number one, I am not sure that the instruction that I

21  gave them is inconsistent with this, in a sense that it says,

22  if the defendant held an honest belief that he was entitled to

23  take the money or property from the victim, etc. etc.  And

24  again, that's the sort of critical distinction that we have

25  fixed on.  It's not, in my view, sufficient to establish a

M238AVEF

1    defense in good faith to say that he believed he was entitled

2    to that money.  If he had brought it to a court or an

3    arbitrator and filed a quantum meruit claim or a contract claim

4    or any kind of claim, as the circuit says in *Gole*, they want to

5    encourage that form of resolution and not lying to get

6    something that you think you are otherwise entitled to.  But I

7    think the instruction is accurate in that regard and focusing

8    on the taking as the central question.  That's number one.

9        Number two, as I have said to Mr. Avenatti, if you can

10   provide me with authority that it is appropriate to clarify

11   when there is no pending question, and you had an opportunity

12   to bring this up not only at the charge conference, but also at

13   the conference we held earlier today in contemplating a

14   response to the second note, I am happy to consider it.  But my

15   current inclination is that without a note pending, having

16   answered the jury's question and having given you an

17   opportunity to be heard in providing that answer, that it's

18   just too late absent another note.

19       MR. PODOLSKY:  Understood, your Honor.  Since the jury

20   has gone home for the day, I will take your sort of half

21   invitation as, if we find authority that we think supports the

22   request, we will put it in tonight.  Obviously, if we don't, we

23   can take up the issue if the jury has another note that

24   implicates these matters.  So we will work on it tonight.  If

25   there is something that we think warrants additional discussion

M238AVEF

1    with the jury in the morning, we will let you know.

2            THE COURT:  I would also encourage you, if you think a

3    more pointed instruction is appropriate in light of *Gole*, maybe

4    take a stab at drafting one.  And I can't imagine that Mr.

5    Avenatti is going to agree, but certainly if you show it to him

6    in anticipation of our discussing it, whether because you come

7    up with authority that suggests I should do that without

8    another note or because we end up getting another note.  But

9    the bottom line is you may as well be prepared and arm

10   yourselves for whatever may happen.

11           To that end, I have no idea if the jury will request

12   any additional testimony, but I wonder if you all should

13   undergo, if you haven't already, the exercise of redacting

14   other witnesses' testimony.  I will leave it to you to discuss.

15   It seems to me that there are some witnesses in this case who

16   the jury would be more likely to request than others, that is,

17   more critical fact or percipient witnesses rather than summary

18   chart witnesses or the sort of custodial witnesses, and it

19   might make sense to just anticipatorily agree on redactions to

20   those, so that if they make a request we can honor it more

21   quickly than we were able to this afternoon.

22           MR. PODOLSKY:  We actually had undertaken those

23   efforts.  The defendant, without getting into the nitty-gritty,

24   he wanted additional things redacted, overruled objections.  So

25   that's what took the additional time.  So we can continue to

1    work on that.

2              THE COURT:  I am just suggesting that you do that with

3    respect to some of the other witnesses, Mr. Macias, perhaps, or

4    Ms. Regnier.

5              MR. PODOLSKY:  Absolutely.

6              THE COURT:  Mr. Avenatti, I am not sure that leaves

7    anything for you to address, but do you wish to be heard?

8              MR. AVENATTI:  Briefly, your Honor.

9              For the record, I do object to any further

10   supplemental instruction to the jury for the reasons that your

11   Honor has stated, as well as others, which I will reserve the

12   right to comment on in the event the jury asks for further

13   instruction.  Beyond that, your Honor, I am going to refrain

14   from snatching victory from the jaws of defeat, or, I should

15   say, snatching defeat from the jaws of victory.

16             THE COURT:  I think you got it backwards, but

17   regardless, it is wise to quit while you're ahead, a different

18   way of putting it.

19             Very good.  Anything else either side needs to raise?

20             Government.

21             MR. PODOLSKY:  No, your Honor.  We will respond in

22   writing as appropriate.

23             THE COURT:  Only if there is something else you wish

24   to say or you think there is authority that I should consider.

25   And again, if you draft something, I would urge you to run it

M238AVEF

1    by the defense, not because I expect that they will agree, but

2    at least so that they have an opportunity to review it and

3    propose any edits if they think that's appropriate.

4              Yes, Mr. Avenatti.

5         MR. AVENATTI:  There is one other point that I have

6    wanted to make.  I think this is self-evident, but I am going

7    to make it for the benefit of the record.

8              Following the instruction that your Honor gave when

9    the jury returned to the courtroom, following that instruction,

10   the jury, from what I understand, returned to the deliberation

11   room and continued deliberating until approximately 5:00, to

12   the best of our knowledge.  So I just want the record to be

13   clear that the jury was not in a holding pattern unable to

14   deliberate pending receipt of the transcript.

15        THE COURT:  I think that was self-evident, but now

16   duly noted.

17             I expect, again, like this morning, that you will be

18   nearby tomorrow, if not in the courtroom, certainly easily

19   accessible in the event that we get additional communications

20   from the jury.

21             I think my law clerk will wait here for the copies.

22   Is that what she should do, Mr. Podolsky?

23        MR. PODOLSKY:  Yes.  That would work, your Honor.

24        THE COURT:  Please try to get them to her as quickly

25   as possible.  Otherwise, have a good evening, and I will see

M238AVEF

1   you at some point tomorrow.  Thank you.

2           (Adjourned to February 4, 2022, at 9:00 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25