MANDATE

1:19-cr-00374-JMF-1

22-1242(L)
*United States v. Avenatti*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of March, two thousand twenty-four.

PRESENT:   Steven J. Menashi,
          Eunice C. Lee,
          Sarah A. L. Merriam,
               *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

      *Appellee*,

   v.                                        Nos. 22-1242(L), 22-2550(Con)

MICHAEL AVENATTI,

      *Defendant-Appellant*.

_____

MANDATE ISSUED ON 06/28/2024

*For Appellee*:  MATTHEW PODOLSKY, Assistant United States Attorney (Robert Sobelman, Andrew Rohrbach, Hagan Scotten, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

*For Defendant-Appellant*:  KENDRA L. HUTCHINSON, Federal Defenders of New York, Inc., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Furman, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Michael Avenatti was convicted of wire fraud in violation of 18 U.S.C. § 1343 and of aggravated identity theft in violation of 18 U.S.C. § 1028A. On appeal, Avenatti advances four arguments. First, he argues that the district court erred by providing confusing and prejudicial jury instructions about the professional obligations of lawyers. Second, he argues that the district court wrongly pressured the jury into returning a verdict when it appeared deadlocked. Third, he argues that, following his conviction, the trial court unlawfully modified the sequence of his restitution payments. Fourth, he argues that the Supreme Court's recent decision in *Dubin v. United States*, 599 U.S. 110 (2023), mandates that his conviction for aggravated identity theft be vacated.[1]

---

[1] Additionally, Avenatti previously argued that the district court wrongly calculated the loss amount for purposes of his sentencing, but he withdrew this argument. *See* Letter, *United States v. Avenatti*, No. 22-1242 (2d Cir. Apr. 21, 2023), ECF No. 88.

We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

# I

Prior to trial, the government requested that the district court instruct the jury on certain professional obligations of attorneys. In a pretrial order, the district court stated that it would provide that instruction if, after hearing the evidence, it determined that the instruction would be relevant. Based on the trial evidence, the district court determined that it was relevant and provided an instruction that began as follows:

> Before we turn to the third and final element of wire fraud, I want to explain certain professional duties of lawyers that you may consider in connection with the first two elements of Count One. As you know, during most of the events relevant to this case, Mr. Avenatti served as Ms. Clifford's lawyer. During that time, the defendant was a member of the California Bar and therefore, under California law owed certain duties to Ms. Clifford as his client. In considering the first two elements of Count One, you may consider whether the defendant breached any of these professional obligations to Ms. Clifford. You should keep in mind that proof that the defendant violated one or more of his professional duties under California law does not, without more, mean that he committed wire fraud. Nevertheless, such proof may be considered by you in determining whether the defendant engaged in a scheme to defraud and whether he did so with knowledge and an intent to defraud.

S. App'x 6-7. The district court emphasized that the ethical duties of lawyers were relevant to the jury's decision only insofar as that background aided the jury in deciding whether Avenatti knowingly and intentionally engaged in a scheme to defraud:

> Let me stress again: Proof that the defendant violated one or more of his professional duties under California law does not, without more, mean that he is guilty of any crime. That is, a lawyer can violate his

3

> ethical duties under California law without having the intent required to commit a crime. The question you must decide with respect to the first two elements of Count One is whether the defendant knowingly, willfully, and with the intent to defraud, devised or participated in a scheme or artifice to defraud or obtain money or property by materially false and fraudulent pretenses, representations or promises as alleged in Count One of the indictment—not whether he violated his ethical obligations.

*Id.* at 10. Avenatti argues that the instruction was irrelevant in certain parts, confusing, and prejudicial. "A harmless error standard of review applies if the defendant objected to the instruction." *United States v. Zhong*, 26 F.4th 536, 550 (2d Cir. 2022). Accordingly, we will affirm a judgment of conviction—even assuming that the jury was erroneously instructed—if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Neder v. United States*, 527 U.S. 1, 15 (1999) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). Reversal is not warranted if "the defendant suffered no prejudice as a result of the District Court's instruction," *United States v. Gansman*, 657 F.3d 85, 91-92 (2d Cir. 2011), making any claimed error harmless. *See* Fed. R. Crim. P. 52(a).

In this case, we conclude that any error in the jury instructions was harmless. The evidence against Avenatti was overwhelming. *See United States v. Dhinsa*, 243 F.3d 635, 650 (2d Cir. 2001) ("The strength of the government's case against the defendant is probably the most critical factor in determining whether an error affected the verdict.") (quoting *United States v. Colombo*, 909 F.2d 711, 714 (2d Cir. 1990)). The evidence showed that Avenatti diverted funds that were owed to his client to his own bank account, App'x 102-04, and then sought to prevent his client from learning of the diversion so that he could conceal his fraud, *id.* at 110-13. Avenatti "forceful[ly]" instructed his client's literary agent not to speak with her, *id.* at 117-18, insisting that only he communicate with his client, *id.* at 386-88, 825-30. Avenatti diverted his client's funds by instructing an employee to forge her signature, *id.* at 168-69, 818-19, and testimony confirmed that he never asked his client for permission to sign on her behalf, *id.* at 316. After he obtained his

4

client's funds, Avenatti spent those funds on his own expenses. *Id.* at 235-40. He then repeatedly lied to his client to conceal his fraud by, for example, falsely stating that the funds had not yet been disbursed, *id.* at 297-99, and falsely stating that he had threatened to sue the publisher for not making payments, *id.* at 714. Avenatti's conduct also demonstrated that he was aware that he was stealing client funds. He purchased a cashier's check, for example, to make it appear to his client that money he had borrowed from a friend had been paid by his client's publisher. *Id.* at 172-73. We conclude that any purported "error was harmless in light of the overwhelming evidence introduced." *United States v. Montague*, 67 F.4th 520, 525 (2d Cir. 2023). Because the evidence was overwhelming, "the error complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24.

## II

Following trial, and after deliberating for approximately four hours, the jury sent a note to the district court that read: "We are unable to come to a consensus on Count 1. What are our next steps?" App'x 586. In response, the district court gave the jury a modified *Allen* charge and told the jury to continue its deliberations. *Id.* at 565-66. The following morning, the jury sent another note that stated:

> We have one juror who is refusing to look at evidence and is acting on a feeling. We need assistance on moving forward. She does not believe she needs to prove her side using evidence and refuses to show us how she has come to her conclusion. *Please* help us move forward. Not going on any evidence, all emotions and does not understand this job of a jury.

*Id.* at 588. The district court then gave a supplemental jury instruction that emphasized the duty of jurors to deliberate but explained that jurors have the right to adhere to a minority position if they conclude it is correct:

> At the beginning of this case, you each took an oath to well and truly try this issue and a true verdict give according to the law and the evidence. Pursuant to that oath, each of you has a duty to deliberate.

5

> That entails a duty to consult with one another, to consider each other's views with an open mind, and to discuss the evidence with the objective of reaching a just verdict if you can do so. Under your oath as jurors, you are not to be swayed by sympathy or emotion. You should be guided solely by the evidence presented during the trial and the law as I gave it to you, without regard to the consequences of your decision. … If you let sympathy or emotion interfere with your clear thinking, there is a risk that you will not arrive at a just verdict. … I remind you the defendant has no burden to present any evidence. As I have told you many times, the burden of proof lies solely with the government. As you deliberate, you should examine the questions put to you with candor and with a proper regard and deference to the opinions of each other. If, after listening to your fellow jurors, and if, after stating your own view, you become convinced that your view is wrong, do not hesitate because of stubbornness or pride to change your view. On the other hand, if you have honest convictions and beliefs based on the evidence presented at trial, you should not surrender those convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered.

*Id.* at 580-81. The jury resumed deliberations. A few hours later, the jury returned a unanimous verdict of guilty on both counts. *Id.* at 582, 593.

Avenatti argues that the district court's instruction "singled out [a] holdout juror and was impermissibly coercive." Appellant's Br. 48-49. But the challenged instruction was a "modified *Allen* charge," App'x 580, that "carries with it a lesser threat of coercing jurors to abandon their conscientious beliefs" than a traditional *Allen* charge, *United States v. Calderon*, 944 F.3d 72, 93 (2d Cir. 2019).[2] "[C]ritically, the district court's oral instruction included a caution to jurors that they did not

---

[2] The traditional *Allen* charge urges jurors in the minority to consider whether the majority might be correct, without a reciprocal suggestion to the majority. *See Allen v. United States*, 164 U.S. 492, 501 (1896). The district court's instruction, by contrast, urged all jurors to consider opposing views. App'x 580-81.

6

have to relinquish individual beliefs." *United States v. Melhuish*, 6 F.4th 380, 392 (2d Cir. 2021). The district court expressly stated that "if you have honest convictions and beliefs based on the evidence presented at trial, you should not surrender those convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered." App'x 581. This language resembles other jury instructions that we have judged permissible. *See, e.g., Spears v. Greiner*, 459 F.3d 200, 206 (2d Cir. 2006) (concluding that an instruction telling the jury "to continue deliberations 'with a view toward arriving at a verdict *if that's possible*'" was not coercive).

Nor was there anything improper, in these circumstances, about the district court's decision to instruct the jury twice. "[A] repeated *Allen* charge [is not] inevitably coercive." *United States v. Ruggiero*, 928 F.2d 1289, 1299 (2d Cir. 1991); *see also United States v. Roman*, 870 F.2d 65, 77 (2d Cir. 1989) (noting that "even a second charge imploring a decision would not be *per se* error"); *United States v. O'Connor*, 580 F.2d 38, 44 (2d Cir. 1978) ("[W]e find no merit to the objection to the giving of two modified *Allen* charges."); *United States v. Robinson*, 560 F.2d 507, 517-18 (2d Cir. 1977) (concluding that a district court did not abuse its discretion in giving a second *Allen*-type charge).

"[J]urors have a duty to deliberate. Jurors 'should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other.'" *United States v. Baker*, 262 F.3d 124, 130 (2d Cir. 2001) (quoting *Allen*, 164 U.S. at 501). "It is their duty to decide the case if they can conscientiously do so, and thus they should listen, with a disposition to be convinced, to each other's arguments." *Id.* (internal quotation marks and alterations omitted). The district court did not abuse its discretion in this case by reminding the jury of those duties in response to the jury's two notes.

### III

At sentencing on June 2, 2022, the district court directed that Avenatti pay restitution to his client in the amount of $148,750. *See* App'x 640. To avoid

7

simultaneous restitution obligations, the district court granted Avenatti's request that his repayment to his client begin after he had fulfilled a prior restitution obligation to Nike, Inc., which was related to a previous conviction. *See id.*

On September 22, 2022, the government proposed a restitution order that would require Avenatti to provide restitution to his client before he paid Nike. *See id.* at 652. Prior to proposing that order, the government conferred with Avenatti's counsel, who raised no objection.[3] The district court issued the restitution order on September 23, 2022.

On appeal, Avenatti argues that we should vacate the restitution order because it directs restitution payments to be paid in this case before the previous one. Because the government consulted with Avenatti prior to proposing the restitution order, and because Avenatti's counsel "made a considered decision *not* to object," Avenatti has waived this objection. *United States v. Bodnar*, 37 F.4th 833, 844 (2d Cir. 2022). Even if he had not, the objection would be meritless. Though "a district court may not alter an imposed sentence," *United States v. Kyles*, 601 F.3d 78, 83 (2d Cir. 2010), a "modification of the terms of payment of restitution is not a modification in sentence," *United States v. Lochard*, 555 F. App'x 94, 96 (2d Cir. 2014) (citing *Kyles*, 601 F.3d at 83-84). To the contrary, "as long as [the] amount of restitution remains [the] same, alteration in terms of repayment does not alter [the] sentence." *Id.*[4] For that reason, the change in the schedule of payments was not an impermissible alteration of the sentence.

---

[3] *See* Letter Motion at 1, *United States v. Avenatti*, No. 19-CR-00374 (S.D.N.Y. Sept. 22, 2022), ECF No. 450.

[4] "Although we decided [*Lochard*] by nonprecedential summary order, rather than by opinion, our '[d]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases.'" *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) (quoting Order dated June 26, 2007, adopting 2d Cir. Local R. 32.1).

## IV

Finally, Avenatti argues that his conviction for aggravated identity theft must be vacated in light of the Supreme Court's recent decision in *Dubin v. United States*, 599 U.S. 110 (2023). In *Dubin*, the Supreme Court vacated a conviction for aggravated identity theft because identity theft did not play a "key role" in the criminal conduct. *Id.* at 129 (explaining that "§1028A(a)(1)'s enhancement is not indiscriminate, but targets situations where the means of identification itself plays a key role").

In *Dubin*, the "crux" of the criminal conduct did not involve identity theft. *Id.* at 114. Here, by contrast, identity theft was an essential part of Avenatti's criminal conduct. Avenatti initially sought to divert money from his client without forging her signature, but his client's literary agent refused to allow the diversion unless the client authorized it. *See* App'x 103-04. Only then did Avenatti instruct an employee to forge his client's signature for the purpose of wrongfully obtaining her money. *Id.* at 168-69, 818-19. Identity theft played a key role in Avenatti's crime; it was not impermissibly "ancillary." *Dubin*, 599 U.S. at 114. For that reason, *Dubin* does not require vacating Avenatti's conviction.

\* \* \*

We have considered Avenatti's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

9